# REDACTED
# To Be Filed Under Seal

# EXHIBIT 88

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

-----------------------------------x
Y.Y.G.M. SA d.b.a. BRANDY MELVILLE,
a Swiss Corporation

Plaintiff,

v. Case No.
2:19-cv-04618-RGK (FFMx)

REDBUBBLE, INC., a Delaware
Corporation

Defendant.
-----------------------------------x

NEW YORK, NEW YORK
FEBRUARY 27, 2020

VIDEO RECORDED DEPOSITION OF Y.Y.G.M.

BY ITS CORPORATE REPRESENTATIVE

SALVATORE RIANNA

AND IN HIS INDIVIDUAL CAPACITY

Reported by:

MARK RICHMAN, CCR, RPR, CM

JOB NO: 177881

NEW YORK, NEW YORK

11:11 A.M.

VIDEO RECORDED 30(B)(6) DEPOSITION of Y.Y.G.M. SA d.b.a BRANDY MELVILLE, by its Corporate Representative SALVATORE RIANNA and in his individual capacity, held at the offices of Zuber Lawler & Del Duca LLP, 1 Penn Plaza New York, New York, before Mark Richman, a Certified Shorthand Reporter, Registered Professional Reporter and Notary Public within and for the State of New York

APPEARANCES:

BROWNE GEORGE ROSS
Attorneys for Plaintiff
5 Penn Plaza
New York, NY 10001
BY: JEFFREY MITCHELL, ESQ.

ZUBER LAWLER & DEL DUCA
Attorneys for Defendant
350 South Grand Avenue
Los Angeles, CA 90071
BY: ZACHARY DAVIDSON, ESQ.

PRESENT:
LEM LATTIMER, Videographer

THE VIDEOGRAPHER: This is the start of media labeled number 1 of the video recorded deposition of Salvatore Rianna in the matter of Y.Y.G.M. SA d/b/a Brandy Melville versus Redbubble, Inc. on February 27, 2020 at approximately is 11:11 a.m.

My name is Lem Lattimer, I'm the legal video specialist from TSG Reporting. Court reporter is Mark Richman from TSG Reporting.

Counsels, please introduce yourselves.

MR. DAVIDSON: On behalf of the defendant, I'm Zachary Davidson from Zuber Lawler & Del Duca.

MR. MITCHELL: Jeffrey Mitchell, Browne George Ross, for the plaintiff.

THE VIDEOGRAPHER: Will the court reporter please swear the witness in.

SALVATORE M. RIANNA, called as a witness, having been first duly sworn by the Notary Public (Mark Richman),

was examined and testified as follows:

EXAMINATION BY MR. DAVIDSON:

Q. Good morning, Mr. Rianna. Would you please spell your name for the record.

A. Sure, Salvatore, S-A-L-V-A-T-O-R-E, middle initial M, last name Rianna, R-I-A-N-N-A.

Q. Have you ever been deposed before, sir?

A. I have.

Q. How many times?

A. Twice.

Q. When was the most recent time?

A. Probably about approximately four months ago.

Q. Okay. So you probably are somewhat familiar with the process, but I'm still going to go over some of the ground rules here just to sort of refamiliarize yourself with what's going to happen today.

So this is a slightly informal setting compared to being in court. But


Page 84


Page 85


Page 106


Page 107


Page 108


Page 109

referring to having reviewed before?

A. Yes.

Q. Let me direct your attention, sir, to paragraph 11 on page 2 of the complaint.

A. Okay.

Q. You see that paragraph 11 mentions three specific trademark registrations, first number 5,373,397, number 5,238,856, and number 5,748,883?

A. I do.

Q. Do you understand those to be among the trademarks that Brandy Melville is asserting in this case?

A. I do.

MR. MITCHELL: Among? I thought they were the only ones.

MR. DAVIDSON: That's what I'm driving at, counsel.

Q. Are they the only ones from your understanding?

A. Brandy Melville and LA Lightning. Yes.

Q. Okay. If you flip the page to page 3. You see depicted at the top of

the page an image that I'm going to describe, and it says Los Angeles, has an underscore that looks like a lightning bolt and it says "California 1984."

Does that depict, per your understanding, one of the trademarks at issue in this case?

A. Yes, it does.

Q. And then I have the same question with respect to the other image on this page which reads "Brandy Melville" and there is a heart interposed between the two words.

Does that also depict one of the trademarks at issue in this case?

A. Yes, it does.

Q. Is it Brandy Melville's contention that each product that it accuses of infringement in this case bears one of those two images?

A. Yes. As well as other images sold within the Brandy Melville trademarked retail stores.

Q. So any product sold in a Brandy

Melville retail store is covered by one of these two marks per your understanding?

A. Any product sold in the Brandy Melville has at least one of these two trademarks on it.

Q. Okay, you can put that aside for now. Keep it in front of you because we're going to refer to it again soon.

But I'm going to put another document in front of you, this will be defendant's 4.

(Defendant's Exhibit 4, Plaintiff Y.Y.G.M. SA d/b/a Brandy Melville's responses and objections to defendant Redbubble, Inc.'s first set of interrogatories to plaintiff was marked for identification.)

MR. DAVIDSON: You know what? I want to do this in a different order. I'm going to put defendant's 4 in front of you but it's going to be a set of discovery responses.

Q. Sir, please take a moment to review, let me know when you're ready to

description are limited to different colors?

A. What do you mean by that, limited to the --

Q. I mean are there other variations of that logo besides different colors that Brandy Melville contends are at issue in this case?

A. Not to my knowledge.

Q. So sitting here today and having discussed this list at some length, your understanding is that this is a complete account of the trademarks that are at issue in this case; is that correct?

A. Yes, I believe so.

Q. Do you believe any of these marks to be famous?

A. I do.

Q. Which?

A. All.

Q. Do you believe them all to be equally famous?

MR. MITCHELL: I'm sorry?

Q. Do you believe them all to be equally famous?

MR. MITCHELL: Object to the form of the question.

A. Well, in the case of -- yes, I do. Because even in the form of LA Lightning which has less years of exposure in our retail stores, it carries the Brandy Melville brand.

Q. Do you believe the LA Lightning logo to be independently famous? Do people seeing just that logo associate it with Brandy Melville as a source?

A. I do.

Q. What's your basis for that understanding?

A. It's been, it's been a focal point in social media marketing.

Q. Do you -- is it your understanding that consumers within the United States generally recognize the LA Lightning logo and associate it with Brandy Melville?

MR. MITCHELL: Object to the form of the question.

A. Could you say that again? Apologies.

Q. Do you believe that across demographics consumers in the United States generally recognize the LA Lightning logo and associate it with Brandy Melville?

MR. MITCHELL: Object to the form of the question.

A. I believe that our target customer group associates LA Lightning with Brandy Melville.

Q. Is it a fair interpretation that you don't believe other groups associate LA Lightning with Brandy Melville?

MR. MITCHELL: Object to the form of the question.

A. Yes, could you, could you rephrase that?

Q. What you said is I believe that our target customer group associates LA Lightning with Brandy Melville. And what I want to know is that statement and that belief limited to your target customer group?

MR. MITCHELL: Note my objection to you asking this witness that

you heard parents to be mothers only I would say that you're not listening.

MR. DAVIDSON: No, let me be clear.

Q. I was not asking you to explain what you meant by parents. I'm asking a related question about whether or not you think male consumers in the United States generally recognize that logo and associate it with Brandy Melville?

MR. MITCHELL: Continuing objection on this line of questioning.

MR. DAVIDSON: You're welcome to have it. Please stop disrupting in exchange.

A. I think males certainly can, can relate and connect it to.

Q. You said earlier, you used the expression target customer, right?

A. Mm-hmm.

Q. What do you mean by target customer?

A. The customer for which we aim to

provide products to.

Q. And how do you define that subset of customers?

A. By age.

Q. And what is the age-based definition of target customer that you're using?

A. Could be anywhere between 12 and 30.

Q. Are there any other characteristics of Brandy Melville's target customers besides age?

A. No, that's primary.

Q. But are there others that are nonprimary?

A. Gender. Female.

Q. What about geographic?

A. No, not to my knowledge.

Q. Does Brandy Melville conduct or commission any research regarding its brand recognition?

A. No, not to my knowledge.

Q. Okay. I'm going to put in front of you defendant's 5.

(Defendant's Exhibit 5, Bates


Page 173


Page 174

Q. Is it your contention that this logo is used in connection with all of the goods sold at the Brandy Melville stores?

A. I believe this logo is, from my understanding and my observations, is on all the products sold in our stores.

Q. Physically on all the products?

A. In the form of a hangtag as well, yes. Attached to or on.

Q. Okay, then what about with respect to the Brandy flag logo, is it your contention that every product sold in the retail store at least since you started using that logo has been sold in connection with the Brandy Melville flag logo?

A. It may have been used for hangtags as well.

Q. If it weren't used for hangtags, wouldn't your contention be goods and services were not sold in connection with it?

MR. MITCHELL: Sorry?

Q. Is what you're saying a good is

goods or the allegedly infringing goods, and degree of care likely to be exercised by purchasers of your goods or licensed goods or the allegedly infringing goods."

Do you see what I'm referring to?

A. I do.

Q. Do you understand you're here to testify on that topic today?

A. I do.

Q. Did you do anything in particular to prepare for your testimony on that topic today?

A. No.

Q. How would you describe Brandy Melville's image?

A. Brandy Melville's image is, in my opinion, one of the most well respected in the fashion industry.

Q. Is there a particular look that Brandy Melville markets that you can describe for me?

A. I would say our look is very unique, detail oriented, and trendy.

Q. What do you mean when you say

A. I'm not sure exactly how many times.

Q. Is this the first document of this nature that you're aware of Brandy Melville having created?

A. I believe so, yes.

Q. What sort of data did you draw on to create this document?

A. This -- this was information that was readily available to us or on the Internet.

Q. So I want to direct your attention to the third page first, the third page of the document which is Bates stamped Brandy_59. Let me know when you're there, please. It's headed Brand DNA.

A. I'm here.

Q. Did you author the contents of this slide?

A. Yes, along with CEO.

Q. Is, reviewing it now, is it accurate as far as you know?

A. I believe it to be.

Q. Is it still the case that the

product line consists of the complete line of affordable, average $20 US top sweaters, dresses, bottoms and in a variety of extraordinary colors?

A. The average price maybe has changed since then. That's what it was at the time.

Q. Do you know roughly what it is now?

A. Maybe 22.

Q. So is it fair to say that Brandy Melville is a relatively affordable brand?

A. It is.


Page 225


Page 226

Q. And when you say supplier system, does that mean they outsource the actual production of the apparel?

A. I believe so.

Q. Do you know whether or not they impose obligations on the supply chain to produce goods at a certain quality?

A. I'm not certain about the obligations to my knowledge quality is certainly a, a request and desire.

Q. But you're not sure whether any steps are taken to, for example, enforce a quality desire?

A. From the CEO I've heard of, you know, suppliers being let's say swapped or changed because of quality issues. Many of the products are also manufactured in the country of Italy which is known for artisan higher quality products which is very different in a fast fashion context.

Q. Can you explain what is very different in a fast fashion context? I didn't totally understand.

A. Well, if you, I'll bring up other


Page 252

Q. When did Brandy Melville first learn of Redbubble?

A. I don't know exactly when, but I would say probably a few weeks before the legal letter was sent.

orders?

A. I did not personally inspect them.

Q. Did anyone at Brandy Melville?

A. I'm not sure.

Q. So can you say with certainty that there were any noticeable differences in quality in the products received from Redbubble versus what Brandy Melville produces itself, sells itself?

A. Could you be more specific? I'm sorry.

Q. Is it your belief that there's a noticeable difference in quality between the Brandy Melville items offered for sale on Redbubble versus the Brandy Melville items sold in, for example, a Brandy Melville store?

A. I've not viewed them side by side. I could -- I don't want to necessarily speculate. But as I aforementioned, our products, most are them are made in Italy. There are unique tailored bodies. Many of our

garments are washed and treated a specific way. So it isn't just, you know, a Chinese blank t-shirt stamped with a logo.

that were designs, whether or not the design itself is protected, but designs that are available in Brandy Melville's stores, correct?

A. Correct.

Q. Now is it fair to say, let's start with Brandy Melville. Brandy Melville makes its own products, right?

A. Mm-hmm. That is correct.

Q. Right. And there's a certain quality standard that Brandy Melville requires for its products, correct?

A. There is, yes.

Q. And its customers come to know that quality?

A. Correct.

Q. And Brandy Melville would never use Redbubble to manufacture products that it would sell, would it?

A. No.

Q. Can you think of would any -- take Nike. Would Nike use a company like Redbubble to have products manufactured?

MR. DAVIDSON: Objection, it

[redacted]

Q. Are there any other brands that you're aware of at your price point manufactured in Italy?

A. I am not aware of other fast fashion, if we want to label it as that.

Q. And do you consider that one of the important distinguishing features for the Brandy Melville brand?

A. Absolutely.

Q. Thank you.

MR. MITCHELL: I have nothing else.

MR. DAVIDSON: I have a couple more inside the scope of that. Won't

Couldn't Care Less About the Average Female?

A. I'm not sure.

[redacted]

MR. DAVIDSON: Okay, that's it.

MR. MITCHELL: Thank you.

THE VIDEOGRAPHER: Time is 8:12 p.m., we're off the record.

(Time noted: 8:12 p.m.)

_______________________________

SALVATORE RIANNA

___________________________

Subscribed and sworn to before me this __________ day of ________________, 2020.

__________________________

Notary Public

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| EXHIBIT 1 | Plaintiff's Initial Disclosures | 52 |
| EXHIBIT 2 | Brandy Melville's responses and objections to Redbubble's notice of deposition under Rule 30(B)(6) | 130 |
| EXHIBIT 3 | Complaint in this matter | 143 |
| EXHIBIT 4 | Plaintiff Y.Y.G.M. SA d/b/a Brandy Melville's responses and objections to defendant Redbubble, Inc.'s first set of interrogatories to plaintiff | 146 |
| EXHIBIT 5 | Bates stamp BRANDY_0002185 | 165 |
| EXHIBIT 6 | Bates stamp | 176 |

| | | |
|---|---|---|
| | BRANDY_0002175 | |
| EXHIBIT 7 | Bates stamp BRANDY_0002195 | 189 |
| EXHIBIT 8 | Bates stamp Brandy_57 | 217 |
| EXHIBIT 9 | Bates stamp Brandy_99 | 261 |
| EXHIBIT 10 | Bates stamp Brandy_100 | 261 |
| EXHIBIT 11 | Bates stamp Brandy_103 | 268 |
| EXHIBIT 12 | Bates stamp Brandy_105 | 268 |
| EXHIBIT 13 | Bates stamp Brandy_424 | 289 |
| EXHIBIT 14 | Bates stamp Brandy_656 | 309 |
| EXHIBIT 15 | Bates stamp Brandy_2455 | 329 |


PREVIOUSLY MARKED EXHIBITS


| | | |
|---|---|---|
| EXHIBIT | (Instruction not to answer.) | 29 |
| EXHIBIT | (Instruction not to answer.) | 39 |
| EXHIBIT | (Instruction not to answer.) | 49 |
| EXHIBIT | (Instruction not to answer.) | 337 |

I N D E X

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| RIANNA | | |
| | DAVIDSON | 5, 361 |
| | MITCHELL | 339 |

REQUESTS

| Page | Line |
|---|---|
| NONE | |

CERTIFICATION

STATE OF NEW YORK )
: ss.
COUNTY OF NEW YORK )

I, MARK RICHMAN, Certified Shorthand Reporter, Registered Professional Reporter and Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony is herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 5th day of March, 2020.

___________________________

MARK RICHMAN, CSR, RPR, CM

* * *

ERRATA SHEET

CASE NAME: Y.Y.G.M. v. REDBUBBLE
DATE OF DEPOSITION: FEBRUARY 27, 2020
WITNESS' NAME: SALVATORE RIANNA

PAGE/LINE(S)/ CHANGE REASON

_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________
_____/_________/_____________________/__________

_____________________________
SALVATORE M. RIANNA

SUBSCRIBED AND SWORN TO
BEFORE ME THIS______DAY
OF_______________, 2020.

_______________________
NOTARY PUBLIC

MY COMMISSION EXPIRES__________________