BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Ryan Q. Keech (State Bar No. 280306)
  rkeech@bgrfirm.com
Jason Y. Kelly (State Bar No. 274144)
  jkelly@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Y.Y.G.M. SA d.b.a. Brandy
Melville

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>                Plaintiff,<br><br>        vs.<br><br>REDBUBBLE, INC., a Delaware corporation,<br><br>                Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br>Judge:   Hon. R. Gary Klausner<br><br>**PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    June 1, 2020<br>Time:    9:00 a.m.<br>Crtrm.:  850<br><br>Pre-Trial Conference:   June 15, 2020<br>Trial Date:                   June 30, 2020 |

## REDACTED VERSION OF

## DOCUMENT PROPOSED TO BE FILED UNDER SEAL

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, June 1, 2020, at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable R. Gary Klausner, in Courtroom 850 – Roybal of this Court located at 255 East Temple Street, Los Angeles, CA 90012, Plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville ("Plaintiff" or "Brandy Melville") will move, and hereby does move, pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment against Defendant Redbubble, Inc. ("Redbubble") with respect to liability on all five claims in the Complaint (Dkt. No. 1)—(1) trademark infringement and counterfeiting, (2) false designation of origin, (3) common law unfair competition, (4) contributory trademark infringement, and (5) vicarious trademark infringement—as to two registered trademarks.

The grounds for this Motion are as follows:  based on the undisputed facts and conclusions of law, Brandy Melville is entitled to judgment as a matter of law that Redbubble's use—including its advertisement, offer for sale, and sale—of two of Brandy Melville's trademarks registered with the U.S. Patent and Trademark Office ("USPTO"), bearing Registration No. 5,238,856 (the "Brandy Melville Mark") and Registration No. 5,748,883 (the "LA Lightning Mark") (collectively, the "Marks"), is likely to cause confusion, cause mistake, or to deceive, thereby constituting trademark infringement and counterfeiting, false designation of origin, and common law unfair competition.  Alternatively, Brandy Melville is also entitled to judgment as a matter of law, based on the undisputed facts, that Redbubble's use of the Brandy Melville Mark and the LA Lightning Mark constitutes contributory trademark infringement and vicarious trademark infringement.  Brandy Melville does not raise or address in this Motion, *inter alia*, the issue of damages regarding Redbubble's infringement of the Brandy Melville Mark or the LA Lightning Mark.

This Motion is based on this notice; the accompanying memorandum of points and authorities; the separate statement of uncontroverted facts and conclusions of law (the "SUF"); the request for judicial notice, exhibits attached thereto, and its proposed

order; the declaration of Jamie Goldberg Gerson and exhibit attached thereto (the "Gerson Dec.");  the declaration of Keith J. Wesley and exhibits attached thereto (the "Wesley Dec."); the declaration of Phillip Paley and exhibits attached thereto (the "Paley Dec."); the declaration of Jason Y. Kelly and exhibits attached thereto (the "Kelly Dec."); the proposed order; notice of lodging; application for leave to file under seal, as well as the accompanying declaration and proposed order; the record in this matter; and such other further papers, evidence, and oral and written argument as may be submitted in connection with this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on Monday, April 27, 2020 and continued over the following days.

DATED:  May 4, 2020                          BROWNE GEORGE ROSS LLP
                                             Keith J. Wesley
                                             Ryan Q. Keech
                                             Jason Y. Kelly

                                             By:    */s/ Keith J. Wesley*
                                             Keith J. Wesley
                                             Attorneys for Y.Y.G.M. SA d.b.a. Brandy Melville

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................1

II.   STATEMENT OF FACTS ......................................................3

    A.   Brandy Melville and Its Valuable Marks..............................3

    B.   Redbubble and Its Infringement of the Marks ......................4

        1.   The Redbubble Sales Process......................................5

        2.   Redbubble's Infringement of the Marks.....................6

III.  LEGAL STANDARD............................................................7

IV.   ARGUMENT........................................................................7

    A.   Redbubble Is Liable for Direct Infringement.......................8

        1.   The Marks Are Valid, Registered Trademarks. ...........8

        2.   Redbubble's Infringing Use of the Marks Is Likely to
           Cause, and Actually Has Caused, Confusion.............8

           a.   Redbubble Is Engaged in Extensive Use of Brandy
              Melville's Marks that Amounts to Counterfeiting. ............9

           b.   Redbubble's Counterfeiting Creates a Likelihood of
              Confusion. ..................................................................12

    B.   Redbubble Is Also Contributorily and Vicariously Liable..................17

        1.   Redbubble Is Liable for Contributory Infringement .................17

        2.   Redbubble Is Liable for Vicarious Infringement .......................19

V.    CONCLUSION .................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) .......................................................... 13, 14, 15, 16

*C & L Intern. Trading Inc. v. Am. Tibetan Health Institute, Inc.*,
   No. 13-cv-2638, 2015 WL 1849863 (S.D.N.Y. Apr. 22, 2015) .......................... 12

*Conversive, Inc. v. Conversagent, Inc.*,
   433 F. Supp. 2d 1079 (C.D. Cal. 2006) ........................................................ 15, 16

*Country Floors, Inc. v. P'ship Composed of Gepner & Ford*,
   930 F.2d 1056 (3d Cir. 1991) ............................................................................ 14

*DC Comics v. Towle*,
   989 F. Supp. 2d 948 (C.D. Cal. 2013) ....................................................... 9, 14, 17

*FAZE Apparel, LLC v. Faze Clan, Inc.*,
   No. 18-cv-2052-RGK, 2018 WL 3830027 (C.D. Cal. May 22, 2018) ............... 13

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir. 1996) ............................................................................... 18

*GMA Accessories, Inc. v. BOP, LLC*,
   765 F. Supp. 2d 457 (S.D.N.Y. 2011) ............................................................... 12

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) .................................................................. 13, 15, 16

*Greg Young Publishing, Inc. v. Zazzle, Inc.*,
   785 Fed. App'x 417 (9th Cir. Nov. 20, 2019) .................................................... 17

*H-D U.S.A., LLC v. SunFrog, LLC*,
   311 F. Supp. 3d 1000 (E.D. Wis. 2018) ................................................... 9, 11, 16

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
   955 F.2d 1143 (7th Cir. 1992) ........................................................................... 18

*HM Elecs., Inc. v. R.F. Techs., Inc.*,
   No. 12-cv-2884, 2013 WL 12074966 (S.D. Cal. Oct. 3, 2013) .............. 13, 15, 16

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  810 F. Supp. 2d 1013 (C.D. Cal. 2011) ............................................................16

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ..........................................................................13

*Johnson & Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*,
  No. 08-cv-1297, 2014 WL 12558573 (E.D.N.Y. Apr. 4, 2014) ........................11

*Kythera Biopharms., Inc. v. Lithera, Inc.*,
  998 F. Supp. 2d 890 (C.D. Cal. 2014) ................................................................8

*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997) .....................................................................11, 12

*Lockheed Martin Corp. v. Network Sols., Inc.*,
  194 F.3d 980 (9th Cir. 1999) ............................................................................18

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) ......................................................................17, 18

*Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*,
  452 F. Supp. 429 (W.D.N.Y. 1978) ...................................................................11

*Nat. Ass'n of Realtors v. Champions Real Estate Servs. Inc.*,
  812 F. Supp. 2d 1251 (W.D. Wash. 2011) .....................................................14, 15

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ............................................................................19

*Phillip Morris USA Inc. v. Shalabi*,
  352 F. Supp. 2d 1067 (C.D. Cal. 2004) ...................................................7, 8, 9, 12

*Pom Wonderful LLC v. Hubbard*,
  No. 13-cv-6917-RGK, 2016 WL 3621281 (C.D. Cal. June 29, 2016) ...........8, 14

*Rissetto v. Plumbers & Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996) ..............................................................................18

*S. Cal. Darts Ass'n v. Zaffina*,
  762 F.3d 921 (9th Cir. 2014) .......................................................................7, 13

# TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Starbucks Corp. v. Amcor Packaging Dist.*,
  No. 13-cv-1754, 2016 WL 3543371 (E.D. Cal. June 24, 2016) .........................12

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
  875 F.3d 426 (9th Cir. 2017) ................................................................. 2, 3, 13, 14

*Synoptek, LLC v. Synaptek Corp.*,
  309 F. Supp. 3d 825 (C.D. Cal. 2018) ....................................................................15

*Thane Intern., Inc. v. Trek Bicycle Corp.*,
  305 F.3d 894 (9th Cir. 2002) ................................................................................15

*The Ohio State Univ. v. Redbubble, Inc.*,
  No. 17-cv-1092, Dkt. No. 1 (S.D. Ohio Dec. 14, 2017).......................................17

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010)....................................................................................18

*Transamerica Corp. v. Moniker Online Servs., LLC*,
  672 F. Supp. 2d 1353 (S.D. Fla. 2009) .................................................................10

*UL LLC v. Space Chariot Inc.*,
  250 F. Supp. 3d 596 (C.D. Cal. 2017) ...............................................................9, 13

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
  602 F.3d 1108 (9th Cir. 2010) ...........................................................................8, 13

**FEDERAL STATUTES**

15 U.S.C. [Lanham Act] ...................................................................................... 12, 18
  § 1114(1)(a) ............................................................................................................9
  § 1114(1)(b) ............................................................................................................9

**STATE STATUTES**

Cal. Com. Code
  § 2206(1)(b) ..........................................................................................................12

Cal. Rev. & Tax Code
  § 6203(a) ...............................................................................................................12

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

## OTHER AUTHORITIES

4 *McCarthy on Trademarks and Unfair Competition*
    § 23.20 (4th ed. 2017) ........................................................................................14
    § 25:26 (5th ed. 2020) ........................................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a case of knowing, obvious trademark counterfeiting.

Plaintiff Brandy Melville—an apparel and lifestyle brand especially popular with teenage girls and young women—is the owner of the following two registered trademarks (the "Marks"):

 

Defendant Redbubble commissioned designs of exact duplicates of Brandy Melville's trademarks from its users (sometimes called "artists") and then advertised, offered for sale, and sold several products bearing those marks.  Below are just a few examples of Redbubble's counterfeit products:

 

 

To ensure Brandy Melville enthusiasts are driven to such counterfeits, Redbubble's online marketing directs customers seeking Brandy Melville products to the "Brandy Melville" page on the Redbubble website.  Redbubble also ensures those visitors are constantly reminded of the Brandy Melville designs hosted on Redbubble's website—even after the visitor already left the Redbubble website—through advertisements that "pop up" on their computer screen:



Redbubble has no legitimate defense.  It will attempt to justify the hundreds of millions of dollars it pockets every year—much of which is made from intellectual property infringement—by masquerading as a "passive intermediary" that simply provides a platform through which users can connect with customers and manufacturers.  But the undisputed evidence—from Redbubble's own documents and witnesses—exposes this as nothing more than a self-serving falsehood.

Redbubble cannot plausibly deny that its conduct amounts to counterfeiting Brandy Melville products.  As detailed below, Redbubble directs and controls every aspect of the advertising, offering for sale, and sale of the counterfeit goods.   In exchange for a "service fee," Redbubble operates the website where the products are bought, processes the customer's payment, fields all communications with the customer, and decides which of its "partner" fulfillers manufactures the product that is shipped to its customers in Redbubble packaging, tags, and hangtags.   Indeed, Redbubble itself has admitted in recent disclosures to its investors that it is "*the principal in the sale*."  (SUF ¶¶ 114, 115 (emphasis added).)  As one Australian court correctly concluded, Redbubble's infringement-dependent business model "derives revenue from each transaction and controls *every step* of the transactional engagement between [a user] and a buyer." (*Id.* ¶ 130 (emphasis added); *see also id.* ¶ 129.)  And Brandy Melville, unsurprisingly, gets paid nothing.

No reasonable juror could find anything other than trademark counterfeiting based on Redbubble's advertising, offering for sale, and selling of products bearing exact or near-exact copies of Brandy Melville's registered marks. *Stone Creek, Inc. v.*

*Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) ("[C]ases involving identical marks on competitive goods are rare and 'hardly ever find their way into the appellate reports' because liability is '***open and shut***.'") (emphasis added).  Partial summary judgment should be entered on liability, and the issues for trial on the Marks should be narrowed to Redbubble's intent and damages.

## II.   STATEMENT OF FACTS

### A.   Brandy Melville and Its Valuable Marks

Brandy Melville is a fashion and lifestyle brand that has long been known in the minds of the consuming public for selling high-quality, unique, and trendy clothing. (SUF ¶¶ 1, 11-13.)  Its target customers are girls and women between the ages of 12 and 30.  (*Id.* ¶ 2.)  Brandy Melville has retail locations worldwide, including in the United States, and also sells its products online.  (*Id.* ¶ 6.)  ████████████████  ████████████████████████████  (*Id.* ¶ 35.)

Brandy Melville and its products are popular nationwide.  (*Id.* ¶¶ 3-8, 21-23.) The brand is particularly popular with celebrities who wear the brand.  (*Id.* ¶¶ 20-22.) Several websites that track celebrity outfits include Brandy Melville products and indicate where customers can buy the products.  (*Id.*)  ████████████████  ████████████████████.  (*Id.* ¶ 17.)  ███████████  ██████████████████████  connects with customers almost exclusively through social media.  (*Id.* ¶¶ 16-19.)  For example, Brandy Melville has 3.9 million followers on Instagram.  (*Id.* ¶ 23.)

Brandy Melville's product line consists of a complete line of apparel, including very popular graphic T-shirts, with an average price of $22.  (*Id.* ¶¶ 7-8)  Brandy Melville also markets itself through stickers that reflect graphic designs from Brandy Melville's T-shirts.  (*Id.* ¶¶ 14-15.)  Brandy Melville makes its own products.  (*Id.* ¶ 9.) Many of these products are manufactured in Italy, which is known for higher-quality products and is an important distinguishing feature of the brand, and are washed and treated in a specific way.  (*Id.* ¶¶ 11-13.)

Brandy Melville owns several registered trademarks, including the distinctive Brandy Melville Mark and LA Lightning Mark. (*Id.* ¶¶ 24-28.) The Brandy Melville Mark (below) bears the Registration No. 5,238,856:



(*Id.* ¶ 24.)    And the LA Lightning Mark (below), which bears the Registration No. 5,748,883, is a popular seller that has been featured in apparel appearing on, *inter alia*, television:



(*Id.* ¶¶ 26-30.)    The Marks are well known amongst Brandy Melville's core demographic, having been used extensively by Brandy Melville in connection with its sale of apparel and distribution of stickers for many years. (*E.g.*, *id.* ¶¶ 3-5, 24-32.)

   **B.    Redbubble and Its Infringement of the Marks**

Redbubble owns ███████ a website (www.redbubble.com) that solicits users to upload designs—often, as here, straight counterfeits—████████ ████████████████████████████████████ (*Id.* ¶¶ 36-38, 201.) ████████████████████ (*Id.* ¶¶ 39-40, 52.) Redbubble advertises its website and the designs thereon on third-party websites, including on and through Google. (*Id.* ¶¶ 104-107, 165, 172.) These advertisements, ████████████████████ feature designs available on Redbubble's website. (*Id.*;

1 | *see also id.* ¶ 102.)  Redbubble ███████████████████████

2 | ███████████████████████  (*Id.* ¶ 103, 163-164.)

### 1.    The Redbubble Sales Process

Redbubble is the moving force behind every aspect of its sales process:

**Solicitation.**  Redbubble solicits infringing designs from users, ███████████ ███████████ and creates a detailed online listing on Redbubble website for the design.  (*Id.* ¶ 37, 41, 43-47, 201.)

**Advertising and Offer to Sell.**  On Redbubble's website, ███████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████  (*Id.* ¶ 42.)  Redbubble also advertises these designs on third-party websites.  (*Id.* ¶¶ 104-107, 165, 172.)  The retail price that the customer pays includes a baked-in "service fee" that Redbubble charges for every product sold.  (*Id.* ¶¶ 48-51.)

**Orders and Sales.**  ███████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████  (*Id.* ¶¶ 55-69, 179-180.)  Redbubble also collects and remits the sales taxes, is the principal in the sale, and acts as the fulfiller's principal.  (*Id.* ¶¶ 71, 114-118.)

**Manufacturing.**  Redbubble manufactures the counterfeit products through its network of fulfillers that it "partner[s] with to produce [its] goods."  (*Id.* ¶ 82.) Redbubble relies on this "network of partners" and ensures the goods they create "fit to the Redbubble standard" by, *inter alia*, having Redbubble's "quality manager physically visit every single fulfiller and perform quality controls at the location of printing to make sure that . . . the printing performs to our expectations."  (*Id.* ¶¶ 83-89.)  Redbubble, alone, selects the fulfiller for the order.  (*Id.* ¶¶ 61-70.)

**Delivery and Payment.**  The counterfeit products are delivered to the customer with Redbubble-themed packaging, stickers, and tags.  (*Id.* ¶¶ 74-76.)  ███████████

1   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ per agreements it has with shippers.  (*Id.*

2   ¶¶ 77-80.)  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* ¶¶ 55, 73.)

4   **Contact and Communications.**  All communications related to the transaction

5   go through Redbubble.  (*Id.* ¶¶ 53-60, 69-72, 78-79.)  ▓▓▓▓▓▓▓▓▓▓▓

6   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.*

7   ¶ 56 (emphasis added).)  Redbubble also tells the customer when the product has been

8   shipped ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* ¶¶ 78-79,

9   90-95.)

10              **2.      Redbubble's Infringement of the Marks**

11   Redbubble's infringement of intellectual property rights is well documented.

12   (*E.g.*, *id.* ¶¶ 129, 130, 152, 193-195.)  It instructs users not to report infringement on

13   its website and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14   ▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* ¶¶ 121-123, 142.) Many of the designs on the Redbubble website

15   contain keyword tags that contain identifying terms (*e.g.*, "Brandy Melville").  (*E.g.*,

16   *id.* ¶¶ 149, 151, 160-162, 182, 202.)  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*Id.* ¶¶ 182-189.)

18   Redbubble has advertised on its website and third-party websites, offered for

19   sale, and sold counterfeit products bearing marks identical—or, at least, substantially

20   similar—to the Marks.  (*E.g.*, *id.* ¶¶ 160-162, 202.)  For example:

  

1    Redbubble labors tirelessly to preserve the illusion that it is unaware of its large-

2    scale infringement operation. (*E.g.*, *id.* ¶¶ 132-158.)  Although Redbubble receives

3    hundreds of takedown notices each week ████████████████████████████████████

4    ██████████████████████████  Redbubble only reviews an insignificant number of its

5    designs for infringement ████████████████████████████████████████████████

6    ██████████████████  (*Id.* ¶ 125-126, 135-145, 152-153.)  Redbubble claims to

7    proactively police infringement, but that has not occurred. (*Id.* ¶ 160-162, 170-174,

8    199, 202.)  Brandy Melville first informed Redbubble of infringement in May *2018*,

9    but Redbubble did not begin to "police" for Brandy Melville trademarks and designs

10   until May *2019*.  (*Id.* ¶¶ 170, 174.)  Redbubble recently continued to counterfeit the

11   LA Lightning Mark. (*Id.* ¶ 202.)

12       As a result, Redbubble has profited from its conduct, ██████████████████████

13   ████████████████████████████████████████████████████████████████████████

14   ██████████████████  (*Id.* ¶¶ 109, 196, 197, 200.)  ████████████████████████

15   the fact that Redbubble advertises and sells—without distinction—counterfeits and

16   products legitimately licensed by other intellectual property owners. (*Id.* ¶¶ 96-101.)

17   **III.   LEGAL STANDARD**

18       Summary judgment is appropriate if "'the movant shows that there is no genuine

19   dispute as to any material fact'" and it "'is entitled to judgment as a matter of law.'"

20   *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).  The non-movant

21   "'must set forth specific facts showing that there is a genuine issue for trial.'"  *Phillip*

22   *Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1071 (C.D. Cal. 2004).

23   **IV.   ARGUMENT**

24       Redbubble engaged in trademark infringement and counterfeiting, false

25   designation, and unlawful competition through extensive and unlawful use of the

26   Brandy Melville Marks. (Dkt. No. 1 (first through third claims).)  Redbubble is also

27   liable, in the alternative, for contributory and vicarious infringement. (*Id.* (fourth and

28   fifth claims).)

### A.   Redbubble Is Liable for Direct Infringement.

The "essential elements" of Plaintiff's first and second claims "are identical": Redbubble is liable if (1) Plaintiff "owns a valid and protectable interest/trademark" and (2) Redbubble "subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake." *Shalabi*, 352 F. Supp. 2d at 1072-73.[1]  There is no genuine dispute of material fact as to these elements.

### 1.   The Marks Are Valid, Registered Trademarks.

"[F]ederal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010) ("[T]he presumption of validity is a strong one, and the burden on the defendant necessary to overcome that presumption at summary judgment is heavy.").  Here, that presumption is more than justified.  Brandy Melville has strong, valid trademark rights in both of the Marks.  (SUF ¶¶ 24-27.)  Each of the Marks is inherently distinctive and well-known to Brandy Melville's millions of customers, and thus represents the Brandy Melville brand and quality in the minds of relevant customers.  (*Id.* ¶¶ 3-4, 9-13, 21-32.)  Every product that Brandy Melville sells features at least one of the Marks.  (*Id.* ¶ 31.)  And the LA Lightning Mark is uniquely popular with Plaintiff's customers, being featured on several different products that are available on the website and in its physical stores.  (*Id.* ¶¶ 28-30.)  Each of the Marks is valid and protectable.  *Pom Wonderful LLC v. Hubbard*, No. 13-cv-6917-RGK, 2016 WL 3621281, at *10 (C.D. Cal. June 29, 2016) (granting plaintiff summary judgment where the registered trademark "clearly" demonstrated "ownership of a valid, protectable mark").

### 2.   Redbubble's Infringing Use of the Marks Is Likely to Cause, and Actually Has Caused, Confusion.

The second element is "that Defendant's use of a similar mark is likely to cause

---

[1]  Trademark infringement also amounts to common law unfair competition.  *E.g.*, *Kythera Biopharms., Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014).

confusion." *DC Comics v. Towle*, 989 F. Supp. 2d 948, 955 (C.D. Cal. 2013); *see also Shalabi*, 352 F. Supp. 2d at 1072-73.  The record demonstrates that Redbubble not only uses the Marks in connection with its advertising and sale of products, but has done so in such an extensive and intentional way as to constitute counterfeiting.

### a. Redbubble Is Engaged in Extensive Use of Brandy Melville's Marks that Amounts to Counterfeiting.

"Counterfeiting," which Redbubble is engaged in with respect to Brandy Melville's products, "is a more specialized case of trademark infringement because a counterfeit 'is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 608 (C.D. Cal. 2017) (granting plaintiff partial summary judgment). Although "most classic cases of counterfeiting involve a famous mark being applied to a shoddy product," "[t]he more pertinent question is whether the marks, not the goods, are substantially identical." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1027 (E.D. Wis. 2018) (concluding case against online print-on-demand company "is a counterfeiting case").

To be sure, Redbubble's counterfeiting "use" of the Marks is not limited to its sale of counterfeit goods.  It also includes "offering for sale, distribution, or advertising" of counterfeit goods (15 U.S.C. § 1114(1)(a)), as well as using counterfeit marks in any "advertisements intended to be used in commerce" (15 U.S.C. § 1114(1)(b)).  Such counterfeiting "use" for an online print-on-demand company like Redbubble includes electronically maintaining an infringing design, advertising an infringing design, selling products bearing an infringing design, and processing the payment for those products.  *SunFrog*, 311 F. Supp. 3d at 1029-30 ("This is use in commerce.").

In all of the following ways, Redbubble engages in counterfeiting through its use of the Marks in its solicitation, offer for sale, manufacture, sale, and delivery of, *inter alia*, clothing, stickers, and cellphone cases.  (*E.g.*, SUF ¶¶ 44-47, 159-162, 176-

180, 202.)  Any one of these provides an independent basis to find Redbubble liable for counterfeiting.

**Redbubble Commissions the Design and Manufacturing of Its Counterfeit Goods.**  Redbubble owns ▮▮▮▮▮ the website where users can upload counterfeit designs and customers can purchase counterfeit Brandy Melville products.  (*Id.* ¶ 36-38, 201.)  Redbubble is at the center of this counterfeiting enterprise:  it provides, *inter alia*, "payment processing, customer services, third party product manufacturing," and "arrange[s] for the deliver[y] of the physical product."  (*Id.* ¶ 176; *see also id.* ¶¶ 179-180.)  Redbubble concedes it is "the party primarily responsible for" the sale of counterfeit goods because it "controls a substantial part of the process."  (*Id.* ¶¶ 114, 115.)  Redbubble ▮▮▮▮▮▮▮▮▮ decides which one of Redbubble's "global network of fulfillers," whom it "partner[s] with to produce [its] goods," creates the counterfeits.  (*Id.* ¶¶ 61-70, 82.)  Redbubble also ensures these knockoffs "fit to the Redbubble standard" of knockoffs by, *inter alia*, having the "quality manager physically visit" each fulfiller to ensure "the printing performs to our expectations."  (*Id.* ¶¶ 85, 89.)

**Redbubble Advertises Its Counterfeit Goods Outside Its Website.**  Redbubble purchases advertising space on third-party websites, which are intended to direct customers to Redbubble's counterfeit designs.  (*Id.* ¶¶ 104-108.)  The advertisements promote these designs—including the LA Lightning Mark—that Redbubble offers to put on its knockoff goods.  (*Id.* ¶¶ 104-108, 159-162, 202.)  *See Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1362 (S.D. Fla. 2009) ("use of a trademark to draw consumers to a particular website not belonging to the trademark holder constitutes use").[2] ▮▮▮▮▮▮▮

---

[2] *See also* 4 *McCarthy on Trademarks and Unfair Competition* § 25:26 (5th ed. 2020) ("[M]erely advertising an infringing mark itself is an act of infringement, apart from any manufacturing or sale. . . . [T]he defendant need not be proven to be in possession of infringing or counterfeit goods at the time of the offer to sell or that the defendant made an actual sale.").

1 ██████████████████████████████ (SUF ¶ 103, 164-164.)  This,

2 too, amounts to counterfeiting.  *E.g.*, *SunFrog*, 311 F. Supp. 3d at 1030 ("[Defendant]

3 vigorously advertised and offered for sale goods bearing those marks."); *Miller*

4 *Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*, 452 F. Supp. 429, 443

5 (W.D.N.Y. 1978) ("televised commercials alone" amount to "use of an infringing

6 mark in interstate commerce").

7    **Redbubble Advertises and Offers for Sale Its Counterfeit Goods on Its**

8 **Website.**  Redbubble advertises and offers for sale products bearing counterfeit

9 Brandy Melville designs on its website.  (SUF ¶¶ 44, 160-162, 202.)  It uses a

10 customer-friendly layout to promote the infringing products' characteristics and

11 features, as well as their delivery options and customer reviews, in order to lure

12 customers to purchase the counterfeit designs on the website.  (*Id.* ¶¶ 43-47, 202.)

13 ████████████████████████████████ (*Id.* ¶ 41.)  *SunFrog*,

14 311 F. Supp. 3d at 1029 (finding "use" where defendant "maintains the [ ] database"

15 that housed the user-uploaded designs).  Such "[a]n offer to sell [infringing goods]

16 without more will suffice to establish liability."  *Levi Strauss & Co. v. Shilon*, 121 F.3d

17 1309, 1312 (9th Cir. 1997).

18    **Redbubble Profits From the Sale of Counterfeit Goods.**  Redbubble also sells

19 the knockoff Brandy Melville goods. ████████████████████

20 ████████████████████████████████████████

21 ████ (SUF ¶¶ 42-43, 48, 55, 108, 114, 115, 130, 176.)  Redbubble ████████

22 ████████████████████████████████████ (*Id.* ¶¶ 56-57

23 (emphasis added).)  When the product is shipped, Redbubble ████████████

24 ██████████████████████████████ (*Id.* ¶ 79.)  Redbubble

25 provides ████████████████████ (*Id.* ¶¶ 93-95.)  *See Johnson &*

26 *Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*, No. 08-cv-1297, 2014 WL

27 12558573, at *19 (E.D.N.Y. Apr. 4, 2014) (concluding defendant was not a

28 "transactional intermediary" where customers "had no knowledge about the source of

1   the [infringing products] other than that they were acquired from [defendant]").

2       Redbubble has publicly disclosed that it is the "principal in the sale." (SUF

3   ¶¶ 114, 115.) It also collects and remits sales tax to the State of California for each

4   transaction. (*Id.* ¶ 116.) In California, "every retailer engaged in business in this state

5   and ***making sales of tangible personal property*** . . . shall, at the time of making the

6   sales . . . collect the tax from the purchaser[.]" Cal. Rev. & Tax Code § 6203(a)

7   (emphasis added). And, in California, "[a]n order . . . to buy goods for prompt or

8   current shipment shall be construed as inviting acceptance either by a prompt promise

9   to ship or by the prompt or current shipment of conforming or nonconforming

10  goods[.]" Cal. Com. Code § 2206(1)(b); *see also Starbucks Corp. v. Amcor Packaging*

11  *Dist.*, No. 13-cv-1754, 2016 WL 3543371, at *5 (E.D. Cal. June 24, 2016). This, too,

12  is an independent basis to hold Redbubble liable for its counterfeiting of the Marks.

13  *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011)

14  ("direct sale of an infringing product is sufficient to create liability").

15      Each of these forms of use warrants finding liability regardless of any blame

16  Redbubble may throw at its fulfiller "partners."[3]

17          **b.**   **<u>Redbubble's Counterfeiting Creates a Likelihood of</u>**

18              **<u>Confusion.</u>**

19      Because Redbubble is a counterfeiter, likelihood of confusion is presumed, and

20  a step-by-step *Sleekcraft* examination is unnecessary. *Shalabi*, 352 F. Supp. 2d at 1073

21  ("'[I]n cases involving counterfeit marks, it is unnecessary to perform the step-by-step

22  examination . . . because counterfeit marks are inherently confusing.'"). Even were

23  that not the case, each *Sleekcraft* factor confirms this Motion should be granted.[4]

---

24
25  3   *E.g.*, *C & L Intern. Trading Inc. v. Am. Tibetan Health Institute, Inc.*, No. 13-cv-2638, 2015 WL 1849863, at *5 (S.D.N.Y. Apr. 22, 2015) ("'It is no defense that a
26  distributor did not actually affix the infringing mark to the goods[.]'"); *Levi Strauss*, 121 F.3d at 1312 ("[The Lanham Act] does not require that the defendant be in
27  possession of counterfeit goods at the time of the offer[.]").

4   The eight *Sleekcraft* factors "determine whether confusion is likely: (1) the strength
28  of the mark; (2) the proximity of the goods; (3) the similarity of the marks;

**Strength of the Marks.**  The more likely a mark "is to be remembered and associated in the public mind with the mark's owner . . . the greater the protection it is accorded by the trademark laws." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999).  A trademark's "strength" is evaluated based on its commercial and conceptual strength.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).  "Commercially, the strongest marks are those with a high degree of marketplace recognition," and "[c]onceptually, the strongest marks are arbitrary or fanciful marks that 'have no relevance to any feature or characteristic' of the product."  *FAZE*, 2018 WL 3830027, at *4 (quoting *UL LLC*, 250 F. Supp. 3d at 609-10); *see also JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (marks that "employ words and phrases with no commonly understood connection to the product . . . 'trigger the highest degree of trademark protection'").

Brandy Melville is a global brand with an incredible online presence, popularity with celebrities, and strong retail presence.  (SUF ¶¶ 1-23.)  Each of the Marks is inherently distinctive and every item sold at Brandy Melville bears at least one of the Marks.  (*Id.* ¶¶ 24-32.)  The Brandy Melville Mark contains the Brandy Melville name and is featured prominently at the brand, and the LA Lightning Mark has been displayed and sold on several different products online and in retail locations.  (*Id.*) The Marks are also strong because they are registered.  (*Id.* ¶¶ 24, 26.)  *Zobmondo*, 602 F.3d at 1121 (a registered mark "'is strong evidence that the mark satisfies the statutory requirements for distinctiveness necessary for trademark protection'").

**Similarity of the Marks.**  "'[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion.'"  *HM Elecs., Inc. v. R.F. Techs., Inc.*,

---

(4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines."  *S. Cal. Darts*, 762 F.3d at 930.  These factors are "'not a rote checklist,'" *FAZE Apparel, LLC v. Faze Clan, Inc.*, No. 18-cv-2052-RGK, 2018 WL 3830027, at *3 (C.D. Cal. May 22, 2018), and "[n]ot all factors are created equal," *Stone Creek*, 875 F.3d at 431.

No. 12-cv-2884, 2013 WL 12074966, at *4 (S.D. Cal. Oct. 3, 2013) (finding "a high similarity of the marks" despite the two marks having "slight differences in appearance" in size and color).

The LA Lightning Mark.  The infringing designs on Redbubble's website are counterfeits, extremely similar—if not identical—to the LA Lightning Mark. Redbubble used an identical design, as well as versions in different colors—including red, which Brandy Melville also uses—in advertisements, stickers, and clothing.  (SUF ¶ 14, 28-30, 46, 159-161.)  There is a "very strong likelihood" of confusion in this case.  *Nat. Ass'n of Realtors v. Champions Real Estate Servs. Inc.*, 812 F. Supp. 2d 1251, 1260 (W.D. Wash. 2011); *see also Stone Creek*, 875 F.3d at 432 ("liability is 'open and shut'" in "cases involving identical marks on competitive goods") (quoting 4 *McCarthy on Trademarks and Unfair Competition* § 23.20 (4th ed. 2017)).

The Brandy Melville Mark.  Like the Brandy Melville Mark, Redbubble's marks display the brand's name in black font with a pink heart between the two words.  (SUF ¶¶ 24-25, 31-32, 47, 160, 162.)  The infringing design is identical to the Brandy Melville Mark in capital letters and is nearly identical to the Brandy Melville Mark in lowercase letters.  (*Id.*)  Confusion is likely because "dominant portions of the two marks are the same."  *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1065 (3d Cir. 1991).[5]  Redbubble publicly concedes the same.  (*See id.* ¶ 124.)

**Proximity or Relatedness of the Goods.**  "Goods are proximate if they are 'similar in use and function' and 'would be reasonably thought by the buying public to come from the same source if sold under the same mark.'"  *DC Comics*, 989 F. Supp. 2d at 959 (infringer's replica cars were "the same" as markowner's "full-size and toy versions" of car).  Proximity is high in this case.  Brandy Melville is in the

---

[5]   *See also Brookfield*, 174 F.3d at 1055 (similarity despite "differences in capitalization and the addition of '.com'"); *Pom Wonderful*, 2016 WL 3621281, at *11 (infringement as a matter of law despite, *inter alia*, differences in capitalization).

apparel and lifestyle brand business.   (SUF ¶¶ 1, 7-13.)   Brandy Melville and Redbubble both sell clothing on the Internet at similar price points and both offer stickers as part of brand awareness. (*E.g.*, *id.* ¶¶ 7, 14, 29, 38, 160-162.)  Indeed, the fact that the parties are in the same business—(*i.e.*, companies that sell, *inter alia*, apparel online)—further favors "a strong likelihood of confusion."  *See Champions Real Estate*, 812 F. Supp. 2d at 1260; *see also Brookfield*, 174 F.3d at 1056 (proximity "is actually quite high" where "both companies offer products and services relating to the entertainment industry generally, and their principal lines of business both relate to movies").

**Marketing Channels Used.**  "'Convergent marketing channels increase the likelihood of confusion.'"  *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1092 (C.D. Cal. 2006) (both parties marketed goods by telephone and the Internet).  Here, confusion is likely because ███████████████████████ ███████████████████████ (SUF ¶¶ 18-20, 102-104.)  *Brookfield*, 174 F.3d at 1057 (recognizing courts "consistently" find likelihood of confusion where both companies "utilize the Web as a marketing and advertising facility").[6]

**Evidence of Actual Confusion.**   "'Evidence of actual confusion constitutes persuasive proof that future confusion is likely.'"  *Conversive*, 433 F. Supp. 2d at 1092 (quoting *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002)).  But such evidence "is not necessary for the court to find a likelihood of confusion." *Champions Real Estate*, 812 F. Supp. 2d at 1261; *see also Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 839 (C.D. Cal. 2018) ("'[D]ifficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.'").[7]  Here,

---

[6]  *See also HM Elecs*, 2013 WL 12074966, at *4 (factor favored plaintiff where "both parties utilize an online website to market their products"); *see also GoTo.com*, 202 F.3d at 1207 (Internet "is particularly susceptible to a likelihood of confusion" as "it allows for competing marks to be encountered at the same time, on the same screen").

[7]  "[T]rademark law protects against confusion both at the point of sale and in the post-sale context." *SunFrog*, 311 F. Supp. 3d at 1029.  Accordingly, even if a consumer knows a product sold by an online print-on-demand company "is a knockoff, other

1    actual confusion exists: ████████████████████████████████

2    ████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████

5    ████████████████    (SUF ¶¶ 196, 197.)[8]   Such actual confusion is particularly

6    troubling for Brandy Melville.

7         **The Degree of Consumer Care.**   This factor favors Brandy Melville for two

8    reasons.   *First*, "when dealing with inexpensive products, customers are likely to

9    exercise less care, thus making confusion more likely."   *Brookfield*, 174 F.3d at 1060.

10   The average price of Brandy Melville clothing is $22, and the price of the infringing

11   products on Redbubble's website is comparable.   (SUF ¶¶ 7, 160-162.)   *Hokto Kinoko*

12   *Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1030-31 (C.D. Cal. 2011) (holding

13   factor favored infringement where a "low-cost consumer good" was at issue).   *Second*,

14   Redbubble infringes the Marks on the Internet.   (*E.g.*, SUF ¶¶ 36-47, 102-104, 159-

15   162.)   *GoTo.com*, 202 F.3d at 1209 (rejecting argument that "Web users exercise a

16   great deal of care before clicking on hyperlinks").   This factor further favors Brandy

17   Melville because Redbubble's website sells several designs that are properly licensed,

18   which can lead customers to believe they are buying actual Brandy Melville products.

19   (SUF ¶¶ 96-101.)

20        **Defendant's Intent in Using Brandy Melville's Trademarks.**   "The Ninth

21   Circuit has emphasized 'the minimal importance' of this factor because trademark

22   infringement does not require an intent to confuse customers."   *HM Elecs*, 2013 WL

23   12074966, at *5 (quoting *GoTo.com*, 202 F.3d at 1208).   Nevertheless, Redbubble's

24   use of counterfeit marks confirms its infringement is no accident.   Further, Redbubble

25   concedes it more than tolerates infringing products on its website.   (*E.g.*, SUF ¶ 121

26   ─────────────────────

27   potential consumers of [the plaintiff's] products who see him wearing that shirt would
     have no reason to suspect a fake[.]"   *Id.*

28   [8]  Statements from customers evidencing confusion are admissible.   *E.g.*, *Conversive*,
     433 F. Supp. 2d at 1091.

¶ 122 (advising users not to report "something on Redbubble that I think may infringe another's rights"); *see also id.* ¶¶ 123, 128, 142.)   Indeed, Redbubble does not always disable an account when a user "repeatedly infringe[s] . . . trademark rights."   (*Id.* ¶ 123.)   Under these circumstances, no reasonable person could conclude that Redbubble has an innocent intent.   *See Greg Young Publishing, Inc. v. Zazzle, Inc.*, 785 Fed. App'x 417, 418 (9th Cir. Nov. 20, 2019) (reversing district court's finding of non-willful infringement where print-on-demand website exhibited a "knowing reliance on obviously insufficient oversight mechanisms").

**Likelihood of Expansion.**   This factor is "relatively unimportant" because both parties "sell related products and use similar marketing channels."   *DC Comics*, 989 F. Supp. 2d at 960 (granting trademark plaintiff summary judgment).

Accordingly, there is no genuine dispute of material fact that Redbubble's counterfeiting renders it liable on Brandy Melville's trademark infringement, counterfeiting, false origin, and unfair competition claims.

### B.   Redbubble Is Also Contributorily and Vicariously Liable.

Redbubble is also liable, as a matter of law, for contributory and vicarious trademark infringement—two theories not pled in *The Ohio State* litigation.   *The Ohio State Univ. v. Redbubble, Inc.*, No. 17-cv-1092, Dkt. No. 1 (S.D. Ohio Dec. 14, 2017).

### 1.   Redbubble Is Liable for Contributory Infringement

Redbubble conceded to the Sixth Circuit in *Ohio State* that it engages in contributory infringement.   (SUF ¶ 198.)   And for good reason.   Redbubble has "continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement" and it "had '[d]irect control and monitoring of the instrumentality used by a third party to infringe' [Plaintiff's] marks."   *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011) (affirming liability where defendants provided and operated servers and internet services for

infringing websites).  Even "a flea market could be liable for contributory infringement if it 'suppl[ied] the necessary marketplace' for the sale of infringing products." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). Redbubble is thus judicially estopped from denying its liability for such infringement here. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) ("Judicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.").

Critically, an "express finding of intent is not required." *Louis Vuitton*, 658 F.3d at 943.  "[A]ctual or constructive knowledge that the users of [defendant's] services were engaging in trademark infringement" is sufficient.  *Id.*  And "'willful blindness is equivalent to actual knowledge for purposes of the Lanham Act.'" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109-10 (2d Cir. 2010) (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992)).

The record is fatal to Redbubble.  A cursory review of Redbubble's website shows substantial infringement.  (SUF ¶¶ 44-47, 148-151, 160-162, 202; *see also* Paley Dec.)  Redbubble regularly receives take-down notices from intellectual property owners, but fails to timely remove infringing designs. (SUF ¶¶ 127, 131, 152, 170-174, 194, 195.)  Redbubble also more than tolerates infringing designs on its website and actively discourages users from reporting infringement. (*Id.* ¶¶ 121-123, 142.)  Redbubble is also well aware that users upload infringing designs onto the website and that its manufacturers create infringing products: ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ publicly featured on Redbubble's website, and sent by Redbubble to "partner" fulfillers to manufacture infringing products. (*E.g.*, *id.* ¶¶ 41, 44-47, 82-89, 125-127, 148-151, 160-162.)

Redbubble ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* ¶¶ 36-42.)  Like a flea market that supplies a marketplace for the sale of infringing products, Redbubble owns, monitors, and profits from its website that serves as a hotspot for pervasive and ongoing trademark infringement.

1 | (*E.g.*, *id.* ¶¶ 49-50, 109-113, 130, 132, 153, 200.)

2 |      The infringement on Redbubble's website is obvious.  (*Id.* ¶¶ 44-47, 127, 148-
3 | 151, 160-162; *see also* Paley Dec.)  Any contention that Redbubble is "unaware" is
4 | the fruit of willful blindness facilitated by understaffing its content-moderation team
5 | and reviewing a meager number of designs for infringement.  (SUF ¶¶ 127, 131-158.)
6 | Indeed, Brandy Melville gave Redbubble notice of its infringement of the Brandy
7 | Melville Mark on May 14, 2018, but that mark was still on Redbubble's website in
8 | September 2018.  (*Id.* ¶¶ 44, 45, 170.)  And Redbubble was still selling counterfeits of
9 | the LA Lightning Mark last week.  (*Id.* ¶¶ 159-161; *see also* Paley Dec.) ▮▮▮▮▮

10 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SUF ¶¶ 174, 199.)  Redbubble's counsel

13 | is absolutely correct that this is contributory infringement.  (*Id.* ¶ 198.)

14 |         **2.**    **<u>Redbubble Is Liable for Vicarious Infringement</u>**

15 |      Liability for vicarious trademark infringement arises where "'the defendant and
16 | the infringer have an apparent or actual partnership, have authority to bind one another
17 | in transactions with third parties *or* exercise joint ownership or control over the
18 | infringing product.'"  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807-08
19 | (9th Cir. 2007) (emphasis added).  Redbubble is liable as a matter of law in all three
20 | respects, any one of which is sufficient.

21 |      *First*, Redbubble partners with the fulfillers who create the infringing products
22 | purchased on Redbubble's website:  "It's actually really important for us to have a
23 | global network of fulfillers.  ***These are companies that we partner with to produce***
24 | ***our goods***."  (SUF ¶ 82 (emphasis added); *see also id.* ¶¶ 83-89, 177.)  Redbubble also
25 | serves as their principal for each transaction.  (*Id.* ¶¶ 114, 115, 118; *see also id.* ¶ 117
26 | (publicly disclosing that Redbubble "is acting as a principal with respect to fulfillers
27 | as opposed to as an agent").)

28 |      *Second*, Redbubble acts as its users' "agent specifically in relation to the sales

transaction between" the user and the customer.  (*Id.* ¶ 178; *see also id.* ¶¶ 90-95.) Redbubble's users also "authorize Redbubble to collect, hold and distribute the retail price" from customers and to "complete any transactions in progress in relation to [their] products . . . ." (*Id.* ¶¶ 179, 180; *see also id.* ¶¶ 176, 178.)

*Third*, Redbubble exercises joint and substantial control over the infringing products that the fulfillers create.  (*E.g.*, *id.* ¶¶ 114, 115, 130.)  Redbubble controls their quality with "different metrics" that "measure every single step of the experience" so that Redbubble can "take action in the field whether it's with a better carrier or better printing partners." (*Id.* ¶ 88.)  Redbubble even has "our quality manager physically visit every single fulfiller and perform quality controls at the location of printing to make sure that the blank products, whether it's a T-shirt or a phone case, or the printing performs to our expectations." (*Id.* ¶ 89.)  At bottom, Redbubble's "team of product developers" are tasked with "mak[ing] sure that all Redbubble products fit to the Redbubble standard." (*Id.* ¶ 85.)  Redbubble's control is no secret: the products purchased on Redbubble's website are packaged and delivered in Redbubble-branded materials upon Redbubble's instruction.  (*Id.* ¶¶ 74-76.)  And any returns of the products go to Redbubble, which decides whether to donate or destroy the item.  (*Id.* ¶ 91; *see also id.* ¶¶ 93-95.)

# V.   **CONCLUSION**

Accordingly, this Court should grant this Motion and find Redbubble liable for counterfeiting and infringing the Brandy Melville Mark and the LA Lightning Mark.

DATED:  May 4, 2020          BROWNE GEORGE ROSS LLP

Keith J. Wesley
Ryan Q. Keech
Jason Y. Kelly

By:   ___*/s/ Keith J. Wesley*___
Keith J. Wesley
Attorneys for Y.Y.G.M. SA d.b.a. Brandy Melville