1  BROWNE GEORGE ROSS LLP
   Keith J. Wesley (State Bar No. 229276)
2    kwesley@bgrfirm.com
   Ryan Q. Keech (State Bar No. 280306)
3    rkeech@bgrfirm.com
   Jason Y. Kelly (State Bar No. 274144)
4    jkelly@bgrfirm.com
   2121 Avenue of the Stars, Suite 2800
5  Los Angeles, California 90067
   Telephone: (310) 274-7100
6  Facsimile: (310) 275-5697

7  Attorneys for Y.Y.G.M. SA d.b.a. Brandy
   Melville

8

9              UNITED STATES DISTRICT COURT

10           CENTRAL DISTRICT OF CALIFORNIA

11 | Y.Y.G.M. SA d.b.a. BRANDY        | Case No. 2:19-cv-04618-RGK (JPRx)
   | MELVILLE, a Swiss corporation,   | Judge:  Hon. R. Gary Klausner
12 |                                  |
   |              Plaintiff,          | **PLAINTIFF'S SEPARATE
13 |                                  | STATEMENT OF
   |       vs.                        | UNCONTROVERTED FACTS AND
14 |                                  | CONCLUSIONS OF LAW IN
   | REDBUBBLE, INC., a Delaware      | SUPPORT OF MOTION FOR
15 | corporation,                     | PARTIAL SUMMARY JUDGMENT**
16 |              Defendant.          | Date:    June 1, 2020
   |                                  | Time:    9:00 a.m.
17 |                                  | Crtrm.:  850
18 |                                  |
   |                                  | Pre-Trial Conference:   June 15, 2020
19 |                                  | Trial Date:             June 30, 2020

20

21            <u>**REDACTED VERSION OF**</u>

22  <u>**DOCUMENT PROPOSED TO BE FILED UNDER SEAL**</u>

23

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 56, Local Rule 56-1, and this Court's Standing Order, Plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville ("Plaintiff" or "Brandy Melville") hereby submits the following Statement of Uncontroverted Facts and Conclusions of Law, together with references to supporting evidence, in support of its motion for partial summary judgment.

# I.   UNCONTROVERTED FACTS

| Uncontroverted Fact | Supporting Evidence |
| --- | --- |
| 1.     Brandy Melville is a clothing brand that sells unique and trendy clothing, representing classic Italian fashion elements, combined with California lifestyle and vintage details. | Declaration of Jason Y. Kelly ("Kelly Dec."), Ex. 88 (Rianna Dep.) at 216:15-24; Declaration of Keith J. Wesley ("Wesley Dec."), Ex. 20 at BRANDY_0000059. |
| 2.     Brandy Melville's target customer is girls and women between the ages of 12 and 30. | Kelly Dec., Ex. 88 (Rianna Dep.) at 164:23-165:16. |
| 3.     Brandy Melville is popular nationwide. | Kelly Dec., Ex. 89 (Elkins Dep.) at 116:13-18. |
| 4.     Brandy Melville frequently sells out of its products. | Kelly Dec., Ex. 89 (Elkins Dep.) at 65:4-24. |
| 5.     Several websites on the Internet track celebrity outfits that include Brandy Melville products and indicate where customers can buy the products. | Wesley Dec., Exs. 51, 52. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 6.     Brandy Melville has retail locations worldwide, including the United States and Canada, and sells its products on its website. | Wesley Dec., Ex. 20 at BRANDY_0000072-74); *see also* Kelly Dec., Ex. 89 (Elkins Dep.) at 116:19-24, 143:8-12. |
| 7.     Brandy Melville's product line consists of a complete line of affordable apparel with an average price of $22. | Kelly Dec., Ex. 88 (Rianna Dep.) at 220:25-221:10; Kelly Dec., Ex. 89 (Elkins Dep.) at 142:23-143:1. |
| 8.     Brandy Melville's graphic T-shirts, which are T-shirts featuring a graphic design, are very popular sellers. | Kelly Dec., Ex. 89 (Elkins Dep.) at 66:5-10, 86:10-87:5. |
| 9.     Brandy Melville makes its own products. | Kelly Dec., Ex. 88 (Rianna Dep.) at 346:6-9. |
| 10.    Brandy Melville requires its products to meet a quality standard that its customers have come to know. | Kelly Dec., Ex. 88 (Rianna Dep.) at 346:6-16. |
| 11.    Many of Brandy Melville's products are manufactured in Italy, which is known for artisan higher-quality products and distinguishes Brandy Melville's brand. | Kelly Dec., Ex. 88 (Rianna Dep.) at 235:11-21. |
| 12.    Brandy Melville's ability to manufacture products in Italy and to sell them at the current price point is a distinguishing feature of Brandy Melville's brand. | Kelly Dec., Ex. 88 (Rianna Dep.) at 360:12-20. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 13.    Many of Brandy Melville's products are washed and treated a specific way that is different than, for example, a blank T-shirt manufactured in China that was stamped with a logo. | Kelly Dec., Ex. 88 (Rianna Dep.) at 255:14-256:4. |
| 14.    Brandy Melville markets itself through stickers that are available to customers at Brandy Melville's physical stores. | Kelly Dec., Ex. 89 (Elkins Dep.) at 34:10-23; Kelly Dec., Ex. 86. |
| 15.    The Brandy Melville stickers reflect designs from Brandy Melville's T-shirts. | Kelly Dec., Ex. 89 (Elkins Dep.) at 35:2-8, 48:2-15. |
| ███████████████ | Kelly Dec., Ex. 88 (Rianna Dep.) at 109:4-16. |
| ███████████████ | Kelly Dec., Ex. 88 (Rianna Dep.) at 106:10-22, 108:10-17. |
| ███████████████ | Kelly Dec., Ex. 88 (Rianna Dep.) at 173:19-174:20. |
| 19.    Brandy Melville's advertising approach connects with consumers almost exclusively through social media. | Wesley Dec., Ex. 20 at BRANDY_0000060; Wesley Dec., Ex. 41. |
| ███████████████ | Kelly Dec., Ex. 88 (Rianna Dep.) at 225:23-226:16. |

1546331 1

-4-

Case No. 2:19-cv-04618-RGK (JPRx)

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 21.    Brandy Melville is a brand that is popular with celebrities. | Wesley Dec., Exs. 20, 50, 51, 52. |
| 22.    Several celebrities, fashion bloggers, and music artists have promoted Brandy Melville by wearing the brand. | Kelly Dec., Ex. 89 (Elkins Dep.) at 133:1-7, 133:13-18; Wesley Dec., Ex. 20 at BRANDY_0000065-66; Wesley Dec., Ex. 50. |
| 23.    On the Instagram app, which plays a large role in Brandy Melville's marketing efforts, Brandy Melville has 3.9 million followers despite following 0 accounts. | Wesley Dec., Ex. 41; Kelly Dec., Ex. 89 (Elkins Dep.) at 31:6-16. |
| 24.    Brandy Melville owns the "Brandy Melville Mark," bearing United States Patent and Trademark Office Registration No. 5,238,856 and registered on July 11, 2017.  | Wesley Dec., Ex. 5. |
| 25.    The Brandy Melville Mark "consists of the wording 'BRANDY MELVILLE' in black with a pink heart between 'BRANDY' and 'MELVILLE'" and the "color(s) black and pink is/are claimed as a feature of the mark." | Wesley Dec., Exs. 5, 56. |

PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 26. Brandy Melville owns the "LA Lightning Mark," bearing United States Patent and Trademark Office Registration No. 5,748,883 and registered on May 14, 2019.  | Wesley Dec., Exs. 6, 26. |
| 27. The LA Lightning Mark consists of the "word 'LOSANGELES' as one word without a space. The first letter of the word is stylized to resemble a lightning bolt. Below 'LOSANGELES' is the word 'CALIFORNIA' and the number '1984.'" | Wesley Dec., Exs. 6, 26. |
| 28. The Brandy Melville Mark and the LA Lightning Mark are distinctive and popular. | Wesley Dec., Exs. 32, 56; Kelly Dec., Ex. 88 (Rianna Dep.) at 84:24-85:8, 158:10-160:10; Kelly Dec., Ex. 89 (Elkins Dep.) at 80:19-24, 105:4-12; Kelly Dec., Ex. 85-86. |
| 29. Brandy Melville has used the LA Lightning Mark on several different products, including T-shirts, crop tops, hooded sweaters, and stickers. | Kelly Dec., Ex. 89 (Elkins Dep.) at 80:10-24, 128:10-17; Kelly Dec., Ex. 86; Wesley Dec., Exs. 26, 32. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 30.    Brandy Melville sold clothing with the LA Lightning Mark on its website and in its physical stores. | Wesley Dec., Ex. 26; Kelly Dec., Ex. 89 (Elkins Dep.) at 105:4-12; *see also* Kelly Dec., Ex. 86. |
| 31.    Every product that Brandy Melville sells bears the LA Lightning Mark or the Brandy Melville Mark. | Kelly Dec., Ex. 88 (Rianna Dep.) at 144:24-146:6, 184:1-10; Wesley Dec., Exs. 26, 56. |
| 32.    Brandy Melville uses the Brandy Melville Mark on decorative wall hangings. | Wesley Dec., Ex. 41; Kelly Dec., Ex. 85. |
| ███████████████████████ ████████████ | Kelly Dec., Ex. 88 (Rianna Dep.) at 252:23-253:1. |
| ███████████████████████ ███████████████████████ ██████████████ | Kelly Dec., Ex. 88 (Rianna Dep.) at 253:2-8. |
| ███████████████████████ ██████████████ | Kelly Dec., Ex. 87. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 36.   Redbubble, Inc. ("Redbubble") is a for-profit business that owns and operates the website, www.redbubble.com (the "Redbubble Website"). | Kelly Dec., Ex. 90 (Toy Dep.) at 17:16-18; Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 25:18-20, 30:21-23; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 12:2-4. |
| ███ ████████ ████████████████ ████████████████ ██████ | Kelly Dec., Ex. 90 (Toy Dep.) at 94:15-21; Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 30:18-20, 34:23-35:1; *see also* Dkt. No. 11 ¶ 13. |
| ███ ████████████ ████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 17:23-18:9. |
| ███ ████████ ████████████████ ███ | Kelly Dec., Ex. 90 (Toy Dep.) at 19:4-7. |
| ███ ████████ ██████ | Kelly Dec., Ex. 90 (Toy Dep.) at 18:17-19:3. |

1546331 1

-8-

Case No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| [redacted] | Kelly Dec., Ex. 90 (Toy Dep.) at 162:12-23, 163:20-164:5. |
| [redacted] | Kelly Dec., Ex. 90 (Toy Dep.) at 95:12-97:11. |
| 43.   The Redbubble Website uses a customer-friendly layout—rich with multiple images and features that highlight the various options for purchase—to promote the products' characteristics and features, as well as their delivery options and customer reviews. | Declaration of Phillip Paley ("Paley Dec."), Exs. 57-61; Wesley Dec., Exs. 27-31. |
| 44.   Exhibit 33 (BRANDY_0001740) shows the results for searching "brandy melville" on the Redbubble website on September 10, 2018. | Wesley Dec., Ex. 33; Kelly Dec., Ex. 90 (Toy Dep.) at 68:14-69:12. |
| 45.   Exhibit 33 (BRANDY_0001740) contains designs that were available for sale on the Redbubble Website on September 10, 2018. | Wesley Dec., Ex. 33; Kelly Dec., Ex. 90 (Toy Dep.) at 72:2-13. |
| 46.   Exhibit 33 (BRANDY_0001740) features two designs that, besides being in different colors, look similar to the LA Lightning Mark. | Wesley Dec., Exs. 6, 33. |
| 47.   Exhibit 33 (BRANDY_0001740) features one design that looks the same as the Brandy Melville Mark. | Wesley Dec., Exs. 5, 33. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 48.    The price that a customer pays for an item listed on the Redbubble Website is the "retail price," which is comprised of two parts: the "base price" and the "artist margin." | Wesley Dec., Ex. 9; Kelly Dec., Ex. 90 (Toy Dep.) at 55:12-25, 56:8-16. |
| 49.    The "base price" is comprised of two parts:  the cost of manufacturing the product and Redbubble's service fee. | Wesley Dec., Ex. 9; Kelly Dec., Ex. 90 (Toy Dep.) at 56:24-57:14. |
| ███████████████████████ ███████████████████ ████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 58:7-19. |
| 51.    The "artist margin" is the portion of the retail price that is paid to the user who uploaded the design on the Redbubble Website. | Wesley Dec., Ex. 9; Kelly Dec., Ex. 90 (Toy Dep.) at 57:15-24. |
| 52.    A customer's purchase of a product occurs on the Redbubble Website. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 55:1-7, 62:1-18. |
| 53.    The user and the customer do not communicate directly in connection with a purchase on the Redbubble Website. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 56:7-10. |
| 54.    For essentially every order, Redbubble communicates the status of the order with the customer. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 49:11-18. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
|  | Kelly Dec., Ex. 90 (Toy Dep.) at 75:2-16, 106:9-107:13. |
| | Kelly Dec., Ex. 81; Kelly Dec., Ex. 90 (Toy Dep.) at 155:2-18, 156:7-12, 221:16-222:5; Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 62:19-23. |
| | Kelly Dec., Ex. 90 (Toy Dep.) at 155:20-156:6. |
| | Kelly Dec., Ex. 70; Kelly Dec., Ex. 90 (Toy Dep.) at 104:23-105:24. |
| | Kelly Dec., Ex. 70. |

PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 70; Kelly Dec., Ex. 90 (Toy Dep.) at 104:23-105:24. |
| 61.    Once a purchase is made on the Redbubble Website, the customer's order—including the customer's address—flows through Redbubble's software to a fulfiller. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 43:22-44:1, 49:19-22. |
| 62.    At Redbubble, a "fulfiller" is the manufacturer of the product that Redbubble features on the Redbubble Website for customers to purchase. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 27:21-28:3. |
| 63.    The software Redbubble uses was developed by its engineers. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 51:7-52:1. |
| 64.    Through its software, Redbubble decides to which fulfiller the customer's order is routed ▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 44:2-6, 91:4-14; Kelly Dec., Ex. 90 (Toy Dep.) at 98:19-99:19, 100:2-15. |
| 65.    Redbubble works with multiple fulfillers throughout the United States in order to get products delivered to customers more quickly. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 36:8-16, 37:11-13. |
| 66.    The user does not have input into which fulfiller manufactures the product. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 50:24-51:4. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 67.    The user who uploaded the design onto the Redbubble Website would not interact with the fulfiller. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 50:12-15. |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | Kelly Dec., Ex. 90 (Toy Dep.) at 100:18-22. |
| 69.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the customer does not interact with or place the order with the fulfiller. | Kelly Dec., Ex. 90 (Toy Dep.) at 98:4-13; Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 49:23-25. |
| 70.    If a fulfiller has a question about an order, the fulfiller contacts Redbubble, not the user or the customer. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 50:7-11. |
| 71.    Redbubble's customers are the same people who are customers of the users who upload their work on the Redbubble Website. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 31:25-32:4. |
| 72.    A customer would not know which fulfiller was making the product purchased on the Redbubble Website. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 62:24-63:3. |
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ | Kelly Dec., Ex. 78; Kelly Dec., Ex. 90 (Toy Dep.) at 107:16-108:15. |

PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 74.    Fulfillers put several types of Redbubble-branded packaging on products that were sold on the Redbubble Website, including poly bags, stickers, tags, and hang tags bearing the Redbubble name or Redbubble logo. | Wesley Dec., Exs. 18, 21, 22, 23; Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 64:12-14, 65:3-11. |
| 75.    Redbubble asks fulfillers to include Redbubble-branded hang tags or stickers on products shipped to consumers. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 65:7-14. |
| 76.    Redbubble uses various packaging houses to create packaging for products sold on the Redbubble Website. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 64:7-16. |
| ████ ████████████████████ ████████████████████ ██████████ | Kelly Dec., Ex. 78; Kelly Dec., Ex. 90 (Toy Dep.) at 107:16-108:15. |
| ████ ████████████████████ ████████████████ | Kelly Dec., Ex. 72. |
| ████ ████████████████████ ██████████████████ ████████████████ ████████ | Kelly Dec., Ex. 83. |
| 80.    Redbubble has agreements with the shippers— FedEx, UPS, and other overseas shippers—used to ship products to customers. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 45:15-24. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ▋▋ ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ ▋▋▋▋▋▋▋▋▋▋▋▋▋▋ | Kelly Dec., Ex. 90 (Toy Dep.) at 134:25-135:21; Wesley Dec., Exs. 38-40. |
| 82.  In one Redbubble TV video, Kate McBride (Senior Strategy Manager) states: "It's actually really important for us to have a global network of fulfillers. These are companies that we partner with to produce our goods." | Wesley Dec., Ex. 38. |
| 83.  In one Redbubble TV video, Vicki Stirling (GM, Products) states: "We work really closely with our suppliers to make sure the product is suitable to the local market." | Wesley Dec., Ex. 39. |
| 84.  In one Redbubble TV video, Vicki Stirling (GM, Products) states: "The suppliers of Redbubble products are based all around the world, in the U.S., in Canada, the U.K., Europe, and Australia.  And we work with them to design and develop the product because they know their local market best and they will ensure that the products that we launch in their market suit that relevant consumer." | Wesley Dec., Ex. 39. |
| 85.  In one Redbubble TV video, Vicki Stirling (GM, Products) states: "And we have a team of product developers whose job it is to make sure that all Redbubble products fit to the Redbubble standard." | Wesley Dec., Ex. 39. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 86.   Redbubble has a chief supply chain officer, named Arnaud Deshais, who is the highest ranking person at Redbubble responsible for the supply chain. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 21:7-17. |
| 87.   In one Redbubble TV video, Arnaud Deshais states: "Redbubble's supply chain is quite unique in the sense that we do not have our own operating operations. We rely on a third-party network of partners that are very good at what they do." | Wesley Dec., Ex. 40. |
| 88.   In one Redbubble TV video, Arnaud Deshais states: "Control of quality and service goes through a constant measurement on the different metrics that we have.  We measure every single step of the experience. We measure the speed of delivery, we measure the quality score, we measure the feedback from customers. . . . And based on the data for a particular country, for a particular product, or a combination of product and country, we realize where we have our highs and lows, and we try to benefit from that understanding to take action in the field whether it's with a better carrier or better printing partners." | Wesley Dec., Ex. 40. |
| 89.   In one Redbubble TV video, Arnaud Deshais states: "We also have our quality manager physically visit every single fulfiller and perform quality controls at the location of printing to make sure that the blank products, whether it's a tee-shirt or a phone case, or the printing performs to our expectations." | Wesley Dec., Ex. 40. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ████████████████████████████<br>███████████████████████ | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 56:2-6; Kelly Dec., Exs. 74, 76. |
| 91.    When a customer returns an item, the item goes to Redbubble, where Redbubble either donates or destroys the item. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 65:15-21. |
| ███████████████████████████████<br>███████████████ | Kelly Dec., Ex. 74. |
| ████████████████████████████<br>███████████████ | Kelly Dec., Ex. 75. |
| ███████████████████████████<br>██████████████████████████<br>██████████████████████████<br>████████████████████████ | Kelly Dec., Ex. 75. |
| ███████████████████████████████<br>██████████████████████████<br>███████████████████████<br>██████████████████████████<br>████████████ | Kelly Dec., Ex. 75. |
| 96.    The Redbubble Partner Program is a program whereby Redbubble collaborates with third-party intellectual-property-rights holders so that users can use those right holders' intellectual property on the Redbubble Website. | Wesley Dec., Ex. 10; Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 106:4-12. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 97.    One of the purposes of the Redbubble Partner Program was to enable artists to create officially licensed designs for their favorite brands. | Wesley Dec., Ex. 10; Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 109:1-8. |
| 98.    Redbubble developed the Redbubble Partner Program in response to intellectual-property-rights holders sending Redbubble takedown notices. | Wesley Dec., Ex. 10; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 136:3-17. |
| 99.    Redbubble developed the Redbubble Partner Program to allow intellectual-property-rights holders to participate in Redbubble's platform in a way other than "just having to say 'Take it down,' because [Redbubble] – it's very, I think – 'binary[.]'" | Wesley Dec., Ex. 10; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 136:3-17. |
| 100.    Redbubble developed the Redbubble Partner Program because some intellectual-property-rights holders said, "well, we are -- you know, We don't want to it stay up there, but if you --but if there were a way to take it down, do you have a way to give us royalties, or something like that, to make it permissible, you know, under their brand guidelines, so that it's not just a free-for-all with the user-generated content that gets uploaded every day." | Wesley Dec., Ex. 10; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 136:3-137:6. |
| 101.    Individual intellectual-property-rights holders who participate in the Redbubble Partner Program receive a licensing fee. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 139:2-5. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ██████████████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 22:16-23:12. |
| ██████████████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 153:13-154:22, 219:22-220:9; Kelly Dec., Ex. 68. |
| 104.   Redbubble increases the visibility of designs on the Redbubble Website by purchasing advertising space through digital marketing platforms, like Google Ads and YouTube, so that the designs can be found when people search for them. | Wesley Dec., Exs. 12, 13, 14, 15, 16, 17; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 155:4-156:7. |
| ██████████████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 118:24-120:1; Wesley Dec., Exs. 12, 13. |
| ██████████████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 124:18-21, 127:6-19. |
| ██████████████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 123:16-124:2. |
| 108.   Redbubble's online advertisement asks customers "Why Buy From Redbubble?" | Wesley Dec., Ex. 19. |

PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 109.   Redbubble is paid a service fee for each customer transaction. | Wesley Dec., Ex. 9; Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 30:24-31:3, 31:20-22. |
| ███████████████████████████ ██████████████████████ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 14:16-21; Kelly Dec., Ex. 90 (Toy Dep.) at 13:25-14:8. |
| 111.   Redbubble's Australian parent company files annual reports with securities regulators that relate to the consolidated group of companies owned by the parent, including Redbubble. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 14:16-21, 59:4-9. |
| 112.   In its annual reports, Redbubble Ltd. attempts to convey accurate information and does not attempt to mislead any shareholders. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 16:17-20, 17:16-18. |
| 113.   Redbubble Ltd.'s 2019 Annual Report discloses that, in 2019, Redbubble's product revenue from authentic sellers grew by 39%, representing 76% of Redbubble's product revenue, whereby "product revenue" is defined as "the portion of Marketplace revenue derived from Product sales" (excluding shipping revenue) and "authentic sellers" is defined as "those artists that tend to upload high-quality original works." | Wesley Dec., Ex. 47 at 5; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 49:18-50:11, 52:13-21. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 114.   Redbubble Ltd.'s 2018 Annual Report discloses that "when the customer contracts there is only one performance obligation for goods bearing the artists' designs.  Both the artists and the Group are involved in satisfying the performance obligation.  However, as the Group controls a substantial part of the process and is construed to be the party primarily responsible for satisfying the performance obligation, the Group is seen as the principal in the sale." | Wesley Dec., Ex. 46 at 77. |
| 115.   Redbubble Ltd.'s 2019 Annual Report discloses that when "the customer contracts with the Group, there is only one performance obligation for goods bearing the artists' designs.  Both the artist and the Group are involved in satisfying the performance obligation.  However, as the Group controls a substantial part of the process it is construed to be the party primarily responsible for satisfying the performance obligation, the Group is determined (for accounting purposes) to be the principal in the sale." | Wesley Dec., Ex. 47 at 54; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 58:3-17. |
| 116.   Redbubble collects and remits sales taxes on the sales made to customers in the states where it has a physical presence, including in California. | Wesley Dec., Ex. 46 at 69; Wesley Dec., Ex. 47 at 83; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 17:19-19:6, 20:8-13, 20:23-25. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 117.   Redbubble Ltd.'s 2018 Annual Report discloses that, for accounting purposes, Redbubble "is acting as a principal with respect to fulfillers as opposed to as an agent." | Wesley Dec., Ex. 46 at 51; Kelly Dec., Ex. 93 (Toy Atari Dep.) at 25:15-26:2. |
| 118.   Redbubble recognizes that "an agent can bind the principal to a contract." | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 57:14-25. |
| 119.   A prolonged decline in content volume growth as a result of the removal of problematic content following content management activities is a key risk that may impact Redbubble's financial and operating result in future periods. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 36:7-14. |
| 120.   The removal of problematic content following content management activities means the removal of listings because of the intellectual-property rights of third parties. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 36:15-25. |
| ███████████████████████████████ | Kelly Dec., Ex. 67 at RBBM214323. |

1546331 1

PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 122.   On the Redbubble Website, Redbubble publicly discloses on the "Someone is Infringing My Rights or the Rights of Another" webpage: "First, resist the urge to go all vigilante crime-fighter" in response to the question, "What should I do if I see something on Redbubble that I think may infringe another's rights?" | Wesley Dec., Ex. 43 at RBBM214335; Kelly Dec., Ex. 90 (Toy Dep.) at 44:17-45:20. |
| 123.   On the Redbubble Website, Redbubble publicly discloses on the "Redbubble IP/Publicity Rights Policy" webpage: "It is Redbubble's policy, in appropriate circumstances, to disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights, trademark rights, other intellectual property rights or publicity rights of others." | Wesley Dec., Ex. 7 at 3. |
| 124.   On the Redbubble Website, Redbubble publicly discloses on the "Trademark" webpage:  "It can even be trademark infringement if you modify a company's logo before using it in your art.  Changing the color, shape, or font of [a] logo may still be similar enough to the original and amount to trademark infringement or a similar violation of someone's rights, like unfair competition or passing off." | Wesley Dec., Ex. 42. |
| 125.   In October 2019, Teespring—one of Redbubble's fulfillers—expressed concern that a product it was manufacturing in response to an order on the Redbubble Website was a counterfeit. | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 70:20-71:24. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ███ ██████████████████████████ ███████████████████████████ ████████████ | Kelly Dec., Ex. 91 (Deshais Atari Dep.) at 110:5-111:11. |
| 127.   Compared to other print-on-demand websites, Redbubble is one of the worst violators with respect to policing its marketplace for intellectual-property infringement. | Declaration of Jamie Goldberg Gerson, Ex. 4 ¶¶ 25-37. |
| 128.   On December 22, 2019, Emancipation Capital Master Ltd.—a long-term shareholder of Redbubble Ltd.—wrote a letter to Redbubble Ltd. stating:  "No one wants the bad press of being associated with illegal art, which is also why we are confident that marketplaces, such as Amazon, will ultimately suspend the accounts of the individuals selling copyrighted logo sticker packs and other infringing products on their marketplace, which by tolerating such illegal activity, hurt Redbubble's own topline." | Wesley Dec., Ex. 11 at 2; *see also* Kelly Dec., Ex. 90 (Toy Dep.) at 210:17-211:8. |
| 129.   The Federal Court of Australia decided in *Pokémon Co. Int'l, Inc. v Redbubble Ltd.*, [2017] FCA 1541, that Redbubble was liable for infringement of Pokémon's intellectual property rights. | Request for Judicial Notice, Ex. 2. |

| | |
|---|---|
| 130.   The Federal Court of Australia decided in *Hells Angels Motorcycle Corporation (Australia) Pty Limited v Redbubble Limited* [2019] FCA 355 that: "The business model as described by Mr Hosking and its working operation as described by Mr Kovalev makes it plain that Redbubble is not in the nature of an ISP linking a user to remote websites.  It is not an intermediary providing a transmission service between particular participants.  It owns, operates, manages and controls the website and conducts a transactional enterprise in which it facilitates the uploading of images, the interrogation of those images in Australia, relevantly, by users, with a view to enabling sales to consumers of articles bearing the relevant images.  It has a detailed business model in which it derives revenue from each transaction and controls every step of the transactional engagement between an artist and a buyer.  It confirms the sale.  It facilitates payment.  It organises a fulfiller to apply the work to the relevant goods. It facilitates delivery of the goods to the buyer.  It generates email responses which not only confirm the order but track every step of the transaction.  It affixes its own trade marks to the goods. It says that it does not directly do that but there is no doubt that an essential part of its business model is ensuring that fulfillers affix the Redbubble trade marks to the goods.  The labels bearing the trade marks are on the goods as delivered to each | Request for Judicial Notice, Ex. 1 ¶ 435. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| buyer." | |
| 131.   Redbubble has responded to a takedown notice with the representation that it has removed infringing content from the Redbubble Website even though infringing content remained on the Redbubble Website. | *E.g.*, Wesley Dec., Ex. 54; Kelly Dec., Ex. 71. |
| ███████████████████████████████████████████████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 109:14-110:9. |
| 133.   Jenny Greenhough has been Redbubble's Head of Marketplace Integrity since June 11, 2018. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 15:17-21, 101:8-11. |
| 134.   Ms. Greenhough could not identify a single product on the Redbubble Website that infringed upon a third party's intellectual-property rights. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 28:13-22. |
| ███████████████████████████████████████████████████████████ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 39:7-40:6. |
| ███████████████████████████████████████████████████████████ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 40:8-41:15. |
| 137.   Ms. Greenhough could not recall any specific instances of any internal communications at Redbubble discussing that the Redbubble Website displayed infringing products. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 29:17-30:4. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 138.   Ms. Greenhough does not know whether Redbubble ever evaluated whether intellectual property is owned by a particular third party. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 32:5-16. |
| ████████ ██████████████████<br>████████████████████████<br>███████████████████████<br>█████████████████ | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 39:6-11. |
| ████ ███████████████████████<br>███████████████████████<br>██████████████ | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 36:14-18. |
| 141.   The number of designs displayed on the Redbubble Website is "in the millions." | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 38:7-11. |
| 142.   It is not Redbubble's goal to stop intellectual property infringement on the Redbubble Website. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 38:21-39:4. |
| ████ █████████████████████<br>██████████████████████████<br>██████████████████<br>██████████ | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 39:13-40:3. |
| ████ ████████████████████<br>████████████████████████<br>███████████████████<br>████████████ | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 40:4-9. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ███████ ████████████████ ████████████████████████ ████████████████████████ ████████████████ | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 72:5-17. |
| 146.   Mr. James Toy is Redbubble's in-house attorney, Vice President, Assistant Secretary, and Assistant Treasurer. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 11:5-7, 31:6-32:2. |
| 147.   Mr. Toy testified that he has never seen a counterfeit product or counterfeit design on the Redbubble Website. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 43:8-22, 44:21-45:7. |
| 148.   Ms. Greenhough was not aware that, if a customer searches "Pepsi" on the Redbubble Website, the customer would see the Pepsi trademark. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 79:3-10. |
| 149.   The Pepsi logo is the first search result that appears when someone searches "Pepsi" on the Redbubble Website. | Wesley Dec., Ex. 25. |
| 150.   Ms. Greenhough was not aware that, if a customer searches "Coca-Cola" on the Redbubble Website, the customer would see the Coca-Cola logo. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 78:22-24. |
| 151.   A search for "Coca-Cola" on the Redbubble Website results in several designs featuring the Coca-Cola logo. | Wesley Dec., Ex. 24. |
| 152.   Ms. Greenhough estimates that Redbubble receives hundreds of takedown notices per week from third-party owners of intellectual property. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 91:13-19. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 153.   Only five people at Redbubble are responsible for handling takedown notices Redbubble receives each week. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 91:20-25. |
| 154.   Redbubble does not notify its Head of Marketplace Integrity every time Redbubble is sued for intellectual property infringement. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 103:10-13. |
| 155.   Ms. Greenhough has no understanding of how many cease-and-desist letters Redbubble receives weekly from brand owners. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 104:7-10. |
| 156.   Redbubble does not have a deadline for responding to a third-party intellectual-property-rights holder's takedown notice for trademark infringement on the Redbubble Website. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 131:24-132:10. |
| ███ ███████████████████████████████ ████████████████████████████████ ██████████████████████████ ████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 49:2-18. |
| 158.   The Redbubble Website does not advise its users to contact Redbubble when they see content on the Redbubble Website that appears to infringe someone's intellectual property rights. | Wesley Dec., Ex. 43 at RBBM214335. |
| 159.   Redbubble has used advertisements on third-party websites that contain marks substantially similar to the LA Lightning Mark to promote Redbubble and products on the Redbubble Website that reflect the LA Lightning Mark. | Wesley Dec., Exs. 14, 15, 16, 17. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 160.   Redbubble has advertised, offered for sale, and sold products with marks substantially similar to the LA Lighting Mark and the Brandy Melville Mark on the Redbubble Website. | Request for Judicial Notice, Ex. 3; Wesley Dec., Exs. 5, 6, 27, 28, 29, 30, 31, 33, 48, 49, 56; Paley Dec., Exs. 57, 58, 59, 60, 61, 63; Kelly Dec., Ex. 64, 85, 86. |
| 161.   Redbubble has advertised, offered to sell, and sold products bearing a mark that is identical with, or substantially indistinguishable from, the LA Lightning Mark on the Redbubble Website. | Wesley Dec., Exs. 6, 14, 15, 16, 17, 27, 28, 33; Paley Dec., Exs. 57, 58, 59, 60, 61, 62, 63; Kelly Dec., Exs. 64, 86. |
| 162.   Redbubble has advertised, offered to sell, and sold products bearing a mark that is identical with, or substantially indistinguishable from, the Brandy Melville Mark on the Redbubble Website | Request for Judicial Notice, Ex. 3; Wesley Dec., Exs. 5, 29, 30, 31, 33, 56; Kelly Dec., Exs. 64, 85. |
| ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ | Kelly Dec., Ex. 68. |
| ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ | Kelly Dec., Ex. 68. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 165.   Redbubble uses the Brandy Melville name to advertise on Google the Redbubble Website, as well as the products Redbubble offers for sale and sells on the Redbubble Website. | Wesley Dec., Exs. .1, 37. |
| 166.   Redbubble keeps track of search terms that visitors use on the Redbubble Website. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 165:23-166:5. |
| 167.   Redbubble's Design Engineering Product Team ("DEP") keeps track of the number of search terms used on the Redbubble Website. | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 166:9-14. |
| ███████ ██████████████████████████ ████████████████████████████████ ██████ | Kelly Dec., Ex. 66 at RBBM148690. |
| ███████ ██████████████████████████ ████████████████████████████████ ██████████ | Kelly Dec., Ex. 84 at RBBM185671. |
| 170.   On May 14, 2018, Brandy Melville's counsel provided Redbubble notice that the Redbubble Website offered for sale products using Brandy Melville trademarks, including the Brandy Melville Mark and a design that features Brandy Melville's web address. | Wesley Dec., Ex. 53. |
| 171.   On May 15, 2018 and June 26, 2019, Brandy Melville's counsel provided Redbubble notice that the Redbubble Website still offered for sale many products that specifically incorporated the Brandy Melville name or contained Brandy Melville designs. | Wesley Dec., Ex. 54. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 172.   On May 28, 2019 and July 19, 2019, Brandy Melville's counsel provided Redbubble notice that the Redbubble Website still offered for sale products that contained Brandy Melville designs, used the Brandy Melville name in advertisements on Google, and used the LA Lightning Mark in advertisements on third-party websites. | Wesley Dec., Ex. 55; Dkt. No. 1. |
| ██ ███████████████ ████████████████████ ██████████ | Kelly Dec., Ex. 73. |
| ██ ██████████████████ ████████████████████ | Kelly Dec., Ex. 69; Kelly Dec., Ex. 90 (Toy Dep.) at 108:18-109:6, 115:15-22. |
| █ █████████████████ ██████████████ ████████████████ ████████████████ ████████████████ ████████████ ████████████ | Kelly Dec., Ex. 64; Kelly Dec., Ex. 90 (Toy Dep.) at 190:2-22, 196:20-197:132, 205:22-206:18. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 176.   The Redbubble User Agreement provides that: "Redbubble provides a range of services (the 'Redbubble service') which, amongst other things, enable you to . . . receive the benefits of Redbubble's facilitation of product fulfilment, including payment processing, customer services, third party product manufacturing.  In addition, Redbubble will arrange for the deliver[y] of the physical product to your customer." | Wesley Dec., Ex. 8 at 11. |
| 177.   The Redbubble User Agreement provides that: "3.5 All items purchased from the website are manufactured pursuant to arrangements with third party suppliers under your instructions." | Wesley Dec., Ex. 8 at 11. |
| 178.   Appendix A of the Redbubble User Agreement provides that: "Whilst Redbubble's capacity is one of independent contractor in relation to the Services, it acts your agent specifically in relation to the sales transaction between you and the customer who buys your product – see further clause 5.2 below." | Wesley Dec., Ex. 8 at 10. |
| 179.   The Redbubble User Agreement provides that: "4.1 You authorize Redbubble to collect, hold and distribute the retail price ('sale proceeds') from customers on the terms set out in this clause 4. Redbubble will also charge the customer for the shipping which will be retained by us and not affect the amount to be distributed to you." | Wesley Dec., Ex. 8 at 12. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 180.   The Redbubble User Agreement provides that: "you authorize us to complete any transactions in progress in relation to your products, which we will do on the terms of this Services Agreement." | Wesley Dec., Ex. 8 at 12. |
| ███████████████████████████ ██████████████████████████ ██████████████████████ ████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 31:3-23. |
| ████████████████████████ ███████████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 103:14-21. |
| 183.   "Unusual tags" at Redbubble is a blacklist of terms that Redbubble does not want to use to actively advertise works on the Redbubble Website. | Kelly Dec., Ex. 92 (Greenhough Atari Dep.) at 135:24-136:17. |
| ███████████████████████████ ██████████████████████████ ████████████████████████ ████████ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 143:15-144:13. |
| ██████████████████████ ██████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 166:8-20. |
| ████████████████████████████ ██████████████████████████ █████████████ | Kelly Dec., Ex. 90 (Toy Dep.) at 172:17-173:17. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 146:15-20, 151:21-25. |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 149:16-25. |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 150:14-18. |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 184:1-4. |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 186:20-24. |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 187:4-10. |
| 193.   Redbubble has been sued for intellectual-property infringement "somewhere between ten and twenty times, worldwide." | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 190:16-20. |
| ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 192:6-15, 192:21-193:5. |

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ███████ ████████████████████████████ ████████████████████████████████ ████████████████████████████ ███████████████████████████████ ██████ | Kelly Dec., Ex. 93 (Toy Atari Dep.) at 193:6-15. |
| ████ ████████████████████████████ ████████████████████████████ ███████████████████ | Kelly Dec., Exs. 77, 82; Kelly Dec., Ex. 90 (Toy Dep.) at 157:21-158:5. |
| ████ ██████████████████████████████ █████████████████████████████ ██████████████ | Kelly Dec., Exs. 65, 75, 79, 80; Kelly Dec., Ex. 90 (Toy Dep.) at 161:19-162:11. |
| 198.   During oral argument in *The Ohio State University v. Redbubble Inc.*, No. 19-3388 (6th Cir.), counsel for Redbubble represented: "The Redbubble software does facilitate the transaction and there is no dispute about that, but the facilitation of a transaction is not direct trademark infringement. Facilitation in the words of the Coach case is contributory trademark infringement." | Request for Judicial Notice at 2. |

PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| ███████ ████████████ ████████████ ████████████ ████████  | Kelly Dec., Ex. 69; Dkt. No. 1 at 4. |
| 200.   Redbubble's parent reported revenue of $307 million AUD in Fiscal Year 2019. | Wesley Dec., Ex. 47 at 4. |
| 201.   Redbubble encourages users who "[l]ike money" to upload their designs onto the Redbubble website "and leave the rest to us.  We arrange for all the printing (on over 60 qualify products) and shipping to almost everywhere on earth." | Kelly Dec., Ex. 94. |
| 202.   Redbubble has advertised, offered, for sale, and sold goods with a mark identical to the LA Lightning Mark in April 2020. | Paley Dec., Exs. 57-63. |

## II.   CONCLUSIONS OF LAW

1.     Summary judgment is appropriate if the moving party shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).

2.     The defendant is liable for trademark infringement and counterfeiting, false designation of origin, and common law unfair competition if the plaintiff owns a valid and protectable interest/trademark and the defendant subsequently and without

authorization used a similar mark likely to cause consumer confusion, deception or mistake." *Phillip Morris USA Inc. v. Shalabi*, 352 F.Supp.2d 1067, 1072-73 (C.D. Cal. 2004).

3.     Federal registration is "'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010).

4.     Use of a trademark includes the sale, offering for sale, distribution, or advertising of any goods bearing the mark, as well as the application of the mark on any advertisements intended to be used in commerce." 15 U.S.C. § 1114(1)(a), (b).

5.     Counterfeiting is a more specialized case of trademark infringement; a counterfeit is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark. *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 608 (C.D. Cal. 2017).

6.     The following factors determine likelihood of confusion between marks: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *S. Cal. Darts*, 762 F.3d at 930.

7.     The defendant is liable for contributory trademark infringement if it continued to supply its services to one whom it knew or had reason to know was engaging in trademark infringement, and it had direct control and monitoring of the instrumentality a third party used to infringe the mark. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011).

8.     For purposes of the Lanham Act, willful blindness is equivalent to actual knowledge. *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992); *see also Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109-10 (2d Cir. 2010).

1       9.     The defendant is liable for vicarious trademark infringement if the

2 defendant and the infringer have an apparent or actual partnership, have authority to

3 bind one another in transactions with third parties, or exercise joint ownership or

4 control over the infringing product. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d

5 788, 807-08 (9th Cir. 2007).

6

7 DATED:  May 4, 2020            BROWNE GEORGE ROSS LLP

8                                   Keith J. Wesley

9                                   Ryan Q. Keech
                                  Jason Y. Kelly

10

11                 By:       */s/ Keith J. Wesley*

12                                Keith J. Wesley
                Attorneys for Y.Y.G.M. SA d.b.a. Brandy

13                 Melville

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28