KENNETH B. WILSON (SBN 130009)
ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
jmasur@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
 zdavidson@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>Plaintiff,<br><br>v.<br><br>REDBUBBLE INC.,<br><br>Defendant. | Case No. 2:19-cv-04618-RGK-FFM<br><br>**DEFENDANT REDBUBBLE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Statement of Uncontroverted Facts and Conclusions of Law, supporting Declarations, and [Proposed] Judgment]*<br><br>Hearing Date: June 1, 2020<br>Time:  9:00 a.m.<br>Courtroom:  850 |

1

**TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 1, 2020, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable R. Gary Klausner, located in the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor, defendant Redbubble Inc. ("Redbubble") will and hereby does move this Court for entry of Summary Judgment on plaintiff Y.Y.G.M. SA dba Brandy Melville ("Brandy Melville's") Complaint, on issues of counterfeiting and willful infringement, or for an Order granting partial summary adjudication on each claim in Brandy Melville's Complaint and on its prayer for statutory damages. The Motion is made on the grounds that there is no genuine issue of any material fact and that Redbubble is entitled to judgment on Brandy Melville's Complaint and each claim therein, as well as on its prayer for statutory damages, as a matter of law. This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the supporting Declarations of Anuj Luthra ("Luthra Decl."), Arnaud Deshais ("Deshais Decl."), James Toy ("Toy Decl."), Kate Rickert ("Rickert Decl."), and Joshua M. Masur ("Masur Decl.") filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

This motion is made following the conference of counsel pursuant to L.R.7-3 which took place on April 27, 2020.

Dated:  May 4, 2020

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR
ZACHARY S. DAVIDSON

By:  ___/s/ Joshua M. Masur_____
Attorneys for Defendant
REDBUBBLE INC.

1

## **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF FACTS....................................................................................1

        A.      Background of Defendant Redbubble......................................................1

        B.      Redbubble Does Not Design or Upload Content Sold on the
                Marketplace.............................................................................................2

        C.      Redbubble Did Not Sell or Offer to Sell the Accused Products............3

        D.      Redbubble Does Not Print, Package, Manufacture or Ship
                Products...................................................................................................4

        E.      Redbubble's Substantial Efforts to Combat Piracy ..............................5

        F.      Background of This Dispute ...................................................................7

III.    ARGUMENT .......................................................................................................9

        A.      Redbubble Has No Liability to Brandy Melville...................................9

                1.      Direct Trademark Infringement..................................................10

                2.      Contributory Trademark Infringement .......................................13

                3.      Vicarious Trademark Infringement Claims................................15

                4.      Common Law Unfair Competition..............................................16

        B.      Because Brandy Melville Cannot Establish that Redbubble Used
                a Counterfeit Mark, It Cannot Recover the Enhanced Statutory
                Remedies for Trademark Counterfeiting .............................................16

IV.     CONCLUSION ..................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.,*
   2015 WL 5311085 (C.D. Cal. 2015)................................................................14

*Arcona, Inc. v. Farmacy Beauty, LLC,*
   No. 2:17-cv-07058-ODW, 2019 WL 1260625
   (C.D. Cal., Mar. 19, 2019).............................................................................18

*Brookfield Comms., Inc., v. West Coast Enter. Corp.,*
   174 F.3d 1036 (9th Cir. 1999)........................................................................10

*Clearline Technologies Ltd. v. Cooper B-Line, Inc.,*
   871 F. Supp. 2d 607 (S.D. Tex. 2012) ..........................................................15

*Corbis Corp. v. Amazon.com, Inc.,*
   351 F. Supp. 2d 1090 (W.D. Wash. 2004)......................................................16

*Evergreen Safety Council v. RSA Network, Inc.,*
   697 F.3d 1221 (9th Cir. 2012)..................................................................19, 20

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
   76 F.3d 259 (9th Cir. 1996)......................................................................10, 11

*GMA Accessories, Inc. v. BOP, LLC,*
   765 F. Supp. 2d 457 (S.D.N.Y. 2011)............................................................13

*Gucci Am., Inc. v. Guess?, Inc.,*
   868 F. Supp. 2d 207 (S.D.N.Y. 2012) ...........................................................17

*Idaho Potato Comm'n v. G&T Terminal Pack, Inc.,*
   425 F.3d 708 (9th Cir. 2005)....................................................................17, 18

*Int'l Olympic Comm. v. San Francisco Arts & Athletics,*
   781 F.2d 733 (9th Cir. 1986)..........................................................................19

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,*
   456 U.S. 844 (1982) .......................................................................................13

*Kaloud, Inc. v. Shisha Land Wholesale, Inc.,*
   No. 15-3706-RGK, 2016 WL 7444600
   (C.D. Cal. July 11, 2016), *aff'd*, 741 F. App'x 393
   (9th Cir. 2018) ................................................................................................17

*Ketab Corp. v. Mesriani Law Group,*
   2015 WL 2084469 (C.D. Cal. May 5, 2015) ..................................................17

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
   194 F.3d 980 (9th Cir. 1999)....................................................................13, 14

*Lorillard Tobacco Co. v. Amouri's Grand Foods,* Inc.,
   453 F.3d 377 (6th Cir. 2006)..........................................................................10

*LTTB, LLC v. Redbubble Inc.*,
  385 F. Supp. 3d 916 (N.D. Cal. 2019) ...........................................................20

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  2015 WL 4394673 (W.D. Wash. July 16, 2015)
  *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) ..................................................12, 13

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007)........................................................................16

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F. 3d 657 (9th Cir. 2017) .........................................................................11

*Perfect 10, Inc. v. VISA International Service Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ..........................................................................15

*Rosetta Stone Ltd. v. Google, Inc.*,
  730 F.Supp.2d 531 (E.D. Va. 2010) ...............................................................15

*Spy Phone Labs LLC v. Google Inc.*,
  2016 WL 6025469 (N.D. Cal. 2016).................................................................14

*The Ohio State University v. Redbubble Inc.*,
  369 F. Supp. 3d 840 (S.D. Ohio 2019)................................................1, 12, 13, 20

*Tiffany Inc. v. eBay, Inc.*,
  600 F.3d 93 (2nd Cir. 2010) ..........................................................10, 12, 13, 14

*Tre Milano, LLC v. Amazon.com, Inc.*,
  No. B234753, 2012 WL 3594380 (Cal. App. 2012)....................................13

*United Pac. Ins. Co. v. Idaho First Nat. Bank*,
  378 F.2d 62 (9th Cir. 1967)............................................................................17

*VHT, Inc. v. Zillow Group, Inc.*,
  918 F.3d 723 (9th Cir. 2019) ....................................................................11, 19

**<u>STATUTES</u>**

15 U.S.C. § 1114(1) ..........................................................................................10

15 U.S.C. § 1116(d)(1)(B)(i) ..........................................................................17

15 U.S.C. § 1117(c)(2) ......................................................................................20

15 U.S.C. § 1127..............................................................................................10

Communications Decency Act
  47 U.S.C. § 230(c)(1) ...................................................................................16

Digital Millennium Copyright Act
  17 U.S.C. § 512 ...............................................................................................6

## <u>OTHER AUTHORITIES</u>

4 J. Thomas McCarthy,
  McCarthy on Trademarks & Unfair Competition § 25:15.10
  (5th ed. 2019)..................................................................................................18

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

As a matter of law, Redbubble is not liable for trademark infringement or counterfeiting based on the conduct of independent third-party sellers who upload and sell allegedly infringing products through Redbubble's online marketplace ("Accused Products"), without Redbubble's knowledge or direct involvement.

At least one court has already held that Redbubble cannot be liable for direct trademark infringement, because Redbubble does not make or sell Accused Products or otherwise use the marks in question. *See The Ohio State University v. Redbubble Inc.,* 369 F. Supp. 3d 840 (S.D. Ohio 2019) (granting summary judgment on direct trademark infringement and unfair competition).  Redbubble cannot be liable for contributory trademark infringement because it has uniformly removed allegedly infringing listings promptly upon receiving notice of alleged infringement. Redbubble cannot be liable for vicarious infringement because it lacks the requisite relationship with participants in the Redbubble Marketplace. And Redbubble cannot be liable for counterfeiting or willful trademark infringement for the third-party sale of Accused Products, given that 1) Redbubble never handles or even sees the products; 2) the third-party sellers have represented that they own all rights to sell the designs on the products; and 3) none of the Accused Products are copies of products on which Brandy Melville uses its registered trademarks.

As there are no disputed material facts pertaining to any of these issues. Redbubble is entitled to entry of summary judgment on plaintiff's Complaint.

## II.   STATEMENT OF FACTS

### A.   Background of Defendant Redbubble

Like the Amazon Marketplace and eBay, Redbubble is a global online marketplace platform, hosted at redbubble.com (the "Redbubble Marketplace"). [Toy Decl. Exh. A] Founded in 2006, and publicly traded on the Australian Securities Exchange since May 2016, Redbubble was formed with the goal to

1

"[g]ive independent artists a meaningful new way to sell their creations." [Toy Decl. Exhs. A-B] These artists use the Redbubble Marketplace platform to upload and sell their creative designs on high-quality, everyday products such as apparel, stationery, housewares, bags, and wall art. [Toy Decl. Exh. A]

The Redbubble Marketplace also automatically performs various online services to facilitate transactions. In particular, the Marketplace software connects third-party artists or "Sellers" automatically to third-party manufacturers, who print and pack the products, before third-party shippers pick up the products and deliver them to customers. [*See* Luthra Decl. ¶¶ 2; Deshais Decl. ¶¶ 2-6] The platform also provides Sellers access to third-party payment processors who collect and process customer payments. [Luthra Decl. ¶ 3] This transaction process is entirely Seller-directed and automated by the Redbubble Marketplace software. [Luthra Decl. ¶¶ 2-3, 11-12] No Redbubble personnel designed or uploaded, manufactured, offered for sale, sold, handled, distributed, advertised, or for that matter even viewed any of the Accused Products prior to their sale. [Deshais Decl. ¶ 11] Currently, there are more than 2,160,000 third-party Sellers, who have uploaded more than 27,000,000 product listings to the Redbubble Marketplace. [Rickert Decl. ¶¶ 2-3]

## B.   Redbubble Does Not Design or Upload Content Sold on the Marketplace

Redbubble did not design or upload any of the designs for the Accused Products. Rather, all listings advertising products on the Redbubble Marketplace are designed and uploaded solely by third-party Sellers, without any participation by Redbubble. [Deshais Decl. ¶¶ 9,11] Redbubble was unaware of the content of those listings prior to their upload and had no involvement with the Sellers' decisions to offer the Accused Products. [*Id.*]

Before Sellers can upload and sell creative products on the Redbubble Marketplace, they must become registered users. [Luthra Decl. ¶ 4] All registered users are required to comply with the Redbubble User Agreement and published

1   policies that specify that the third-party Sellers, not Redbubble, (1) must possess the

2   applicable rights to upload and sell their content; and (2) are responsible for such

3   content. [Toy Decl. ¶ 5, Exh. C]

4        Third-party Sellers uploading designs to the Redbubble Marketplace have

5   exclusive control over the designs; must specify the physical product type(s) to

6   which each design may be applied and set the price; and may also input a title, one

7   or more keyword "tags," and a description.  [Luthra Decl. ¶ 6] Potential customers

8   may search listings containing content of interest, and search results are based on

9   these keyword tags and title, which are created solely by the uploading Seller – not

10  Redbubble. [Luthra Decl. ¶ 7]

11       Third-party Sellers must also check a box each time a design is uploaded to

12  the Redbubble Marketplace verifying they "have the right to sell products

13  containing this artwork, including (1) any featured company's name or logo, (2) any

14  featured person's name or face, and (3) any featured words or images created by

15  someone else." [Luthra Decl. ¶ 5] Once these Sellers upload content and confirm

16  their right to upload each design, their content is displayed automatically for sale

17  among the tens of millions of product listings on the Marketplace, without any

18  knowledge or involvement by Redbubble. [Luthra Decl. ¶ 8; Deshais Decl. ¶ 11]

19      **C.**    **Redbubble Did Not Sell or Offer to Sell the Accused Products**

20       The agreements between Redbubble and the Sellers using the Marketplace

21  platform specify that the Seller, not Redbubble, offers and sells the products listed

22  on the Marketplace. For example, Redbubble's User Agreement describes how the

23  Redbubble Marketplace enables Sellers "to publish, sell, discuss and purchase art;"

24  it includes a section entitled "Offering your art for sale on a physical product" that

25  describes how a Seller "may offer their art for sale on a physical product on the

26  website by appointing Redbubble to facilitate the transaction….;" it repeatedly

27  refers to Sellers offering their products for "sale," not Redbubble. [Toy Decl.

28  Exh. C] Similarly, in the Redbubble Services Agreement, Appendix A to the User

Agreement, Sellers acknowledge that they "wish to use Redbubble's services to facilitate marketing and sale of [their] art on a physical product….;" they agree in a section entitled "Sale of your products" that the Seller determines the price for products; and they expressly confirm they are "the seller of the merchandise." [*Id.*]

The product listing pages further confirm that the products sold via the Marketplace are offered by third-party Sellers, not Redbubble. In particular, the search results pages specify that each listing is "by" the third-party Seller. [Toy Decl. ¶¶ 31, 32, Exh. H] Similarly, the listing page itself identifies the third-party Seller both below and to the right of the image, followed by a selection of additional listings by the same Seller, if available, and a link to "View [Seller's] Shop." [Toy Decl. ¶¶ 31, 33, Exh. I]

Like Amazon and other marketplaces, the Redbubble Marketplace software facilitates payment processing for Sellers. Third-party payment processors like PayPal, Stripe, or Amazon Payments receive payment directly from customers through the Redbubble Marketplace. [Luthra Decl. ¶ 11] The marketplace software then automatically facilitates the payment of the Seller-established margin to the Seller's account, less Redbubble's fixed service fee, which varies by product type but is independent of the price set by the Seller. [*Id.*; Toy Decl. ¶¶ 28-29]

Redbubble never took control of or title to the Accused Products. Rather, as specified at Section 3.5 of Redbubble's Services Agreement, "[a]ll items purchased from the website are manufactured pursuant to arrangements with third party suppliers under [Seller's] instructions. This means that title and risk for loss for such items pass from [Seller] to the customer/purchaser without passing through [Redbubble] . . . ." [Toy Decl. Exh. C]

## D.    <u>Redbubble Does Not Print, Package, Manufacture or Ship Products</u>

Once an order is placed, the Redbubble Marketplace software automatically forwards the order information on behalf of the Seller to a third-party manufacturer

or printer ("Manufacturer") based on criteria like the delivery location and product type. [Luthra Decl. ¶ 12] These Manufacturers are independent of Redbubble; they are not affiliates of Redbubble, and Redbubble neither owns the manufacturing facilities or equipment nor employs any of the personnel. [Deshais Decl. ¶¶ 4-5, 11]

Upon receipt of an order, the Manufacturer imprints the design onto the product type chosen by the customer, without any input or involvement from Redbubble. [Deshais Decl. ¶ 2] Redbubble personnel do not review product artwork prior to printing, participate in the manufacturing process, pack or ship the printed products, or perform pre-shipment quality control. [Deshais Decl. ¶ 11] After a product is printed, a third-party shipper picks it up from the Manufacturer and ships the product directly to the customer. [Deshais Decl. ¶ 6] At all times between completion of manufacturing and the time the product is picked up by the shipper, the product remains with the third-party Manufacturer; Redbubble does not possess, physically handle, or even see the finished products.  [Deshais Decl. ¶¶ 7, 9, 11]

### E.       Redbubble's Substantial Efforts to Combat Piracy

There is a risk that bad actors will abuse any marketplace by attempting to use it to sell unauthorized or counterfeit products. However, Redbubble has taken significant steps, in excess of its legal obligations, to prevent such abuses, and has devoted substantial resources toward eliminating third-party infringement on the Marketplace and improving existing anti-piracy measures. [Toy Decl. ¶¶ 8-22]

As an initial matter, and as discussed in detail above, Redbubble requires Sellers to confirm that they own and/or have the right to sell the content that they upload and "will not infringe the intellectual property rights or any other rights of any person or entity…," both at the time they sign up as users and again each time they upload listings to the Marketplace. [Toy Decl. Exh. C; Luthra Decl. ¶ 5]

Redbubble aggressively enforces these commitments in accordance with a detailed IP/Publicity Rights Policy.  [Toy Decl. ¶ 6, Exh. D] Under Redbubble's Policy, which is modeled on the Digital Millennium Copyright Act (17 U.S.C.

§ 512), if Redbubble receives notice that particular listings infringe a third-party's intellectual property rights, Redbubble promptly (typically within one business day) removes those listings and notifies the third-party Seller who uploaded them. Per that policy, Redbubble will also "disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights, trademark rights, other intellectual property rights or publicity rights of others." [Toy Decl. ¶¶ 6-7, Exh. D] In accordance with this policy, Redbubble has received over 91,500 takedown requests from content owners, and pursuant to those requests, Redbubble removed more than 755,000 listings. [Rickert Decl. ¶ 4]

In addition, although it has no legal obligation to do so, Redbubble provides further assistance by proactively policing the Redbubble Marketplace for potentially infringing content. In particular, Redbubble employs a 13-person Marketplace Integrity ("MPI") Team that proactively polices the Marketplace for potential infringement of marks belonging to Brandy Melville and over 300 other content owners, including some of the largest content owners in the world. [Toy Decl. ¶ 22] Many of these content owners have large and diverse portfolios of intellectual property rights (i.e., copyrights, trademarks and publicity rights) in properties like TV shows and individual movies, or represent large rosters of musical artists. [*Id.*]

Using information provided by content owners, Redbubble's MPI team uses proprietary software tools to search for potentially infringing listings based on the Seller-generated titles, tags and descriptions.[1] [Luthra Decl. ¶¶ 13-14; Toy Decl. ¶ 10] The MPI Team manually reviews these search results, including images of the artwork for the listing, to identify content that matches policing guidelines created

---

[1] Only if the content owner collaborates with Redbubble by providing a complete list of what it believes its protected content is –logos, trademarks, characters, etc. – can Redbubble most effectively search for it and remove it from the Marketplace. [Toy Decl. ¶ 11] When content owners like Brandy Melville do not cooperate with Redbubble in this process, however, Redbubble is forced to use its best judgment as to what terms a content owner might use to identify colorable infringement. [*Id.*]

by Redbubble, typically with the assistance of the content owner. [Luthra Decl. ¶¶ 13-14; Toy Decl. ¶ 12-18] The MPI Team then promptly removes or prevents any listing containing such content from appearing on the site proactively and without receiving a specific takedown notice from the rightsholder. [*Id.*] The third-party Seller is automatically notified upon removal and is otherwise treated in accordance with the IP/Publicity Rights Policy. [Toy Decl. ¶ 15]

Redbubble also uses a combination of proprietary and third-party software to identify scaled and/or repeated abusers of the Redbubble user agreement. [Toy Decl. ¶ 19-20] These tools look for Seller behavior or characteristics that may indicate that a Seller is a scaled abuser or repeat infringer, and when it finds a high-risk account, it may automatically disable the account and remove it from the Marketplace or put it on a watch list to by monitored by the MPI Team.  [*Id.* ¶ 21]

Redbubble's MPI team currently proactively policies for approximately 2,300 individual properties for these content owners, and on any given day, the MPI Team will typically review and compare over 6,000 individual designs to its policing guidelines. [Toy Decl. ¶ 22; Rickert Decl. ¶ 6]

To date, the proactive policing efforts of the MPI Team have resulted in the disabling or removal of approximately 3,700,000 listings from the Redbubble Marketplace. [Rickert Decl. ¶ 9] And Redbubble has disabled and/or terminated almost 670,000 Seller accounts for violation of Redbubble policies, including its IP/Publicity Rights Policy.  [*Id.* ¶ 10] Redbubble has disabled or removed approximately 400 listings under its proactive removal guidelines for Brandy Melville, covering around 7,200 products. [Rickert Decl. ¶ 8]

**F.**   **Background of This Dispute**

Brandy Melville asserts three recently federally-registered design marks in this case.  [*See* Masur Decl. Exh. A (Response to Interrogatory No. 1)]

The "Brandy Heart" mark, registered on July 11, 2017 for a variety of products, including

Brandy ♥ Melville

7

1  stickers and apparel, "consists of the wording 'BRANDY MELVILLE' in black

2  with a pink heart between BRANDY and MELVILLE." [Masur Decl. Exh. B] "The

3  color(s) black and pink is/are claimed as a feature of the mark."  [*Id.*] However,

4  Brandy Melville does not use this mark on stickers. [*Id.,* Exh. F at 109:22-110:8;

5  119:21-22; 127:1-11]

6       The "Brandy Flags" mark, registered on

7  January 9, 2018, "consists of 'BRANDY MELVILLE'

8  with a pair of crisscrossed flags between the 'Y' and 'M.'"  [Masur Decl. Exh. C]

9       The "LosAngeles Lightning" mark, registered on May 14, 2019 – two weeks

10  before this suit was filed – "consists of [t]he word

11  'LOSANGELES' as one word without a space. The

12  first letter of the word is stylized to resemble a

13  lightning bolt. Below 'LOSANGELES' is the word 'CALIFORNIA' and the

14  number '1984'. All of the words are in yellow. No claim is made to the exclusive

15  right to use the following apart from the mark as shown: LOS ANGELES

16  CALIFORNIA 1984." [Masur Decl. Exh. D] This registration only covers "clothing,

17  namely, T-shirts, tank tops and sweatshirts." [*Id.*]

18       Brandy Melville also claims common law trademark rights for its Brandy

19  Melville name and graphic logo and "variations thereof (e.g., Brandy LA,

20  www.brandymelvilleusa.com, etc.)," as well as variations of the LA Lightning logo

21  "(e.g., different colors)" although Brandy Melville has not provide any further

22  information on specifically what those "variations" might be. [Masur Decl. Exh. A]

23       On May 14, 2018, Redbubble received correspondence complaining that the

24  phrase "Brandy Melville" was being used as a tag, and identifying a handful of

25  specific potentially infringing listings. [Toy Decl. ¶ 23, Exh. E] By the next day,

26  Redbubble had removed these listings, and advised Brandy Melville that "if there

27  are any additional specific designs hosted on the marketplace that you would like

28  removed, please identify those for us, and we will ensure that they are promptly

removed in a manner consistent with Redbubble's IP and publicity rights policy." [Toy Decl. ¶ 24, Exh. F] Brandy Melville did not identify additional designs, and after May 15, 2018, Redbubble did not hear again from Brandy Melville for over a year, when it learned that Brandy Melville had filed this lawsuit. [Toy Decl. ¶ 24]

Each time that Brandy Melville identified specific listings that it alleged were infringing its marks (including in the Complaint), Redbubble promptly removed the designs identified by Brandy Melville. [Toy Decl. ¶ 25] Upon receiving notice of the Complaint, Redbubble also began proactively policing for the intellectual property that Brandy Melville had identified and continues to do so, although Brandy Melville has not cooperated in these efforts to date, rendering Redbubble's policing efforts more difficult. [Toy Decl. ¶ 26] Since these efforts began, there have been no sales through the Marketplace of products bearing the images depicted in Brandy Melville's registrations. [*See* Rickert Decl. Exh. B]

In fact, no product bearing the Brandy Flags mark has ever been sold through the Redbubble Marketplace. [Rickert Decl. Exhs. A-B; Toy Decl. ¶ 35] Nor has there been a sale of any product displaying the LosAngeles Lightning mark on clothing, the only goods that mark was registered for. [*Id.*] And while just over $5,000 of products featuring the Brandy Hearts mark have been sold through the Marketplace, those sales were either stickers (on which Brandy Melville doesn't actually use the mark) or products that are not covered by that trademark registration. [*Id.*]

## III.  ARGUMENT

### A.  Redbubble Has No Liability to Brandy Melville

Redbubble has not itself made *any* "use," let alone a potentially infringing trademark use, of the marks at issue as required for Brandy Melville to prevail on its direct liability claims. Whenever Brandy Melville notified Redbubble of specific alleged infringements, Redbubble promptly removed those alleged infringements, thus negating Brandy Melville's contributory infringement claim. And Redbubble

lacks the type of relationship with or control over third-party Sellers that sell products through the Redbubble Marketplace and/or third-party fulfillers that manufacture such products to subject Redbubble to vicarious liability for trademark infringement. There is no dispute as to any of these core facts, all of which are part of Brandy Melville's prima facie case. These undisputed facts compel entry of summary judgment in Redbubble's favor on Brandy Melville's Complaint.

### 1.   **Direct Trademark Infringement**

To prevail on its First Claim for Direct Trademark Infringement, Brandy Melville must show that Redbubble made an affirmative "use in commerce" of a mark "in connection with the sale, offering for sale, distribution or advertising of goods.[2] 15 U.S.C. § 1114(1). This "use" requirement covers those who themselves place an infringing mark on products, via manufacture or otherwise; who offer to sell or sell products bearing infringing marks; or who apply infringing marks to sales displays or related advertising materials. See, e.g., 15 U.S.C. § 1127 (defining an infringing "use in commerce" as occurring when a mark "is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto"); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *Lorillard Tobacco Co. v. Amouri's Grand Foods*, Inc., 453 F.3d 377, 381 (6th Cir. 2006). On the other hand, while those who merely facilitate or enable "use" of infringing marks may be secondarily liable for contributory or vicarious infringement, they cannot directly infringe because they do not themselves "use" the marks. See *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2nd Cir. 2010).

---

[2] Brandy Melville's Second and Third Claims for false designation of origin and common law unfair competition claims incorporate the allegations of and are essentially the same as its direct trademark infringement claim. *See Brookfield Comms., Inc., v. West Coast Enter. Corp.*, 174 F.3d 1036, 1046–47 n.8 (9th Cir. 1999). Accordingly, and for the same reason Redbubble is entitled to judgment in its favor on the direct trademark infringement claim, summary judgment is also warranted on these derivative claims.

10

Although this Circuit has not expressly specified the types of conduct that might qualify as "uses" for purposes of direct **trademark** infringement, its copyright infringement opinions provide useful guidance. For example, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017), reaffirmed that direct copyright infringement "requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant," noting that the volitional conduct requirement "stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." And to demonstrate volitional conduct, a copyright plaintiff "must provide some 'evidence showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (citing *Giganews*, 847 F.3d at 666, 670).

This requirement should apply with equal force to a trademark infringement claim. Like copyright infringement, trademark infringement is a tort, and therefore should also be subject to a "volitional conduct" requirement under the rationale of *Giganews*. *See Fonovisa*, 76 F.3d at 265 (trademark infringement is a tort). And the types of volitional conduct identified in *VHT* are wholly consistent with the types of conduct that courts have traditionally required for a showing of direct trademark infringement: namely, making or placing a mark on infringing products, or directly advertising, offering or selling those products.

Applying these principles here, there is no dispute that Redbubble did not itself use Brandy Melville's trademarks. Redbubble did not make the Accused Products; that was done exclusively by third-party manufacturers. [Deshais Decl. ¶¶ 2-11] Redbubble did not offer or sell the Accused Products; that was done exclusively by the third-party Sellers who uploaded and listed the products and transferred title to the purchasers. [Luthra Decl. ¶¶ 4-8; Toy Decl. ¶ 5, Exh. C] Redbubble did not place the mark on "advertisements" for the Accused Products;

that was done by the third-party Sellers who created the web page listings.[3] [*See*
Luthra Decl. ¶¶ 4-8] And Brandy Melville has not identified any other manner in
which Redbubble might use the Brandy Melville marks.

Indeed, Redbubble recently prevailed on summary judgment on a virtually
identical direct infringement claim. In *Ohio State v. Redbubble,* 369 F. Supp. 3d
840, the court held as a matter of law that Redbubble is not the seller of products
offered through the Marketplace and does not otherwise engage in conduct that
could subject it to liability for direct trademark infringement. The court noted that
unlike print-on-demand companies like CafePress and SunFrog, which have been
held liable for direct infringement because they print and sell the products offered
via their website, "Redbubble essentially offers to 'independent artists' an online
platform through which to sell their goods…. Redbubble is not directly producing
the goods…." *Id.* at 846. Instead, the district court analogized Redbubble's business
model to that of the Amazon Marketplace, which the court observed "has generally
not been found directly liable for direct trademark or copyright infringement
because it merely facilitates sales between other parties." *Id.* at 844.

This ruling is consistent with other cases assessing liability for online
marketplaces or transactional intermediaries like Redbubble, which have uniformly
held that such entities are immune from direct infringement liability because they do
not "use" the marks in question. *See, e.g.*, *Tiffany, supra*, 600 F. 3d at 103 (no direct
trademark infringement where defendant never took possession of items sold
through its marketplace and did not directly sell allegedly infringing products to
customers); *Milo & Gabby, LLC v. Amazon.com, Inc*., 2015 WL 4394673 (W.D.
Wash. July 16, 2015) *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) (defendant was not
liable for direct trademark infringement based on sale of products listed by third

---

[3] Redbubble does *facilitate* advertising on behalf of artists by connecting the
Redbubble platform to third party ad platforms (like Google and FB) through
APIs/product feeds, but does not itself select or use the content displayed in those
third-party advertisements. [Toy Decl. ¶ 34]

parties on its site); *Tre Milano, LLC v. Amazon.com, Inc*., No. B234753, 2012 WL 3594380 (Cal. App. 2012) (citations omitted) ("it is clear that 'a transactional intermediary is not treated as a seller,' that is, 'parties [who] act as intermediaries for a transaction and do not buy and resell the commodities' are not direct sellers and are not directly liable for infringement under the [Lanham Act]."); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011) (if the definition of a "seller" in the trademark context is not clear, "in other contexts a transactional intermediary is not treated as a seller," and "[w]hen parties act as intermediaries for a transaction…, no sale between them has occurred").

Thus, as the district court specifically held in the *Ohio State v. Redbubble* case, and as the *eBay* and *Amazon* cases confirm, Redbubble did not sell or otherwise "use" the Brandy Melville trademarks at issue in this case, and therefore cannot be liable for direct infringement as a matter of law.

### 2.   Contributory Trademark Infringement

To prevail on its Fourth Claim, for Contributory Trademark Infringement, Brandy Melville must prove that Redbubble provided products or services "to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982). Because Redbubble provides services to the alleged direct infringers, Brandy Melville must also show that Redbubble had "direct control and monitoring of the instrumentality used by a third party to infringe . . . ." *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir. 1999).

In the specific context of online marketplaces, courts have held that "[s]ome contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 108-09 (2nd Cir. 2010). The mere assertion of infringement in a notice letter "is not sufficient to impute knowledge of infringement to [a defendant]," and "use of an identical or

1   similar mark does not necessarily constitute infringement." *Lockheed Martin*

2   *Corp. v. Networks Solutions, Inc.,* 985 F. Supp. 949, 963 (C.D. Cal 1997).

3         The Second Circuit's opinion in *Tiffany v. eBay* is particularly instructive, and

4   its rationale has been consistently followed by courts in this Circuit. *See, e.g, Spy*

5   *Phone Labs LLC v. Google Inc.*, 2016 WL 6025469 (N.D. Cal. 2016) (applying

6   *Tiffany* analysis); *Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.,*

7   2015 WL 5311085 (C.D. Cal. 2015) (offering several page analysis and application

8   of the *Tiffany* opinion). In *Tiffany*, defendant eBay, like Redbubble, had a policy of

9   removing allegedly infringing product listings upon receipt of a takedown notice,

10  and had adopted extensive proactive policing measures designed to minimize

11  infringement on its marketplace. Plaintiff Tiffany argued that eBay was nonetheless

12  liable for contributory infringement because Tiffany had sent thousands of notices

13  of claimed infringement, yet infringing listings continued to appear for sale on the

14  marketplace. The district court rejected this argument, reasoning that eBay had only

15  generalized knowledge of infringement, and that to prevail, plaintiff would have to

16  show that eBay "knew or had reason to know of specific instances of actual

17  infringement beyond those that it addressed upon learning of them." 600 F.3d at

18  107. The Court of Appeals affirmed, holding that "[f]or contributory trademark

19  infringement liability to lie, a service provider must have more than a general

20  knowledge or reason to know that its service is being used to sell counterfeit goods.

21  Some contemporary knowledge of which particular listings are infringing or will

22  infringe in the future is necessary." *Id.* at 107.

23        The undisputed evidence shows that Redbubble always removed allegedly

24  infringing listings promptly upon receiving notice of claimed infringement from

25  Brandy Melville. [Toy Decl., ¶ 25; Rickert Decl., Exh. A] Redbubble also

26  implemented proactive procedures to prevent allegedly infringing content from

27  being sold. [Toy Decl., ¶¶ 9-22; Rickert Decl., ¶¶ 8-10] And Redbubble applied its

28  repeat infringer policy to third-party sellers who listed the content in question. [Toy

Decl., ¶¶ 7, 19; Rickert Decl., ¶ 7] Redbubble therefore cannot be liable for contributory trademark infringement.

### 3. <u>Vicarious Trademark Infringement Claims</u>

To prevail on its Fifth Claim, for Vicarious Trademark Infringement, Brandy Melville must establish "that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. VISA International Service Ass'n*, 494 F.3d 788, 807-08 (9th Cir. 2007) (citations omitted). "Courts have strictly applied the test for vicarious trademark liability based on agency principles, and, unlike vicarious copyright liability, courts do not recognize vicarious liability in the trademark context based on ability to supervise in combination with a financial interest. *Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, 871 F. Supp. 2d 607, 613-14 (S.D. Tex. 2012).

Under this standard, Redbubble cannot be liable for vicarious infringement. There is no evidence that Redbubble is a partner with the third-party manufacturers; there is certainly no legally registered partnership, and the manufacturers all operate independently, and can and do decide independently whether to fulfill orders routed through the Redbubble Marketplace. [Deshais Decl. ¶¶ 4, 11; Toy Decl. ¶ 30] Redbubble does not have the authority to bind manufacturers in transactions with third-parties, or vice versa. [Toy Decl. ¶ 30] And Redbubble cannot be deemed to have the type of authority or joint control over any allegedly infringing products that is required for a finding of vicarious liability. *See Rosetta Stone Ltd. v. Google, Inc.*, 730 F.Supp.2d 531, 550 (E.D. Va. 2010) (rejecting vicarious liability claim against Google for the use of plaintiff's marks in Sponsored Link titles because plaintiff failed to prove Google "controls the appearance and content" of the infringing products or the use of the marks in those products). Thus, Brandy Melville cannot meet its burden on this issue.

### 4.    Common Law Unfair Competition

Brandy Melville's unfair competition claim is barred both as a derivative claim of the direct infringement claim, *see* footnote 2 above, and by the immunity provision of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), which "states that 'no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider,' and expressly preempts any state law to the contrary." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007). The CDA provides "broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service'" – including, in particular, state unfair competition claims. *Id.* (citations omitted) (affirming summary judgment on unfair competition claim based on CDA).

Redbubble is unquestionably an "interactive computer service," and to the extent Brandy Melville's trademarks appear on the Marketplace, those marks are "provided by another information content provider" – namely, the third-party Sellers. *See Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) (granting summary judgment to Amazon based on CDA where third-party vendors provided the images on which the claim was based). Accordingly, the CDA requires that Brandy Melville's Third Claim for Unfair Competition be dismissed.

### B.    Because Brandy Melville Cannot Establish that Redbubble Used a Counterfeit Mark, It Cannot Recover the Enhanced Statutory Remedies for Trademark Counterfeiting

Brandy Melville cannot establish the elements of trademark counterfeiting, which is its sole basis for claiming enhanced or statutory damages.[4] A "counterfeit

---

[4] Moreover, Brandy Melville has no admissible evidence of actual damages. Rule 26(a)(1)(A)(iii) required that Plaintiff disclose "a computation of each category of damages [and produce] the evidentiary material … on which each computation is based." But Plaintiff merely provided a laundry list of damages categories available

is something that purports to be something that it is not." *United Pac. Ins. Co. v. Idaho First Nat. Bank*, 378 F.2d 62, 69 (9th Cir. 1967) (citations omitted). Thus, to prevail on a counterfeiting claim, a plaintiff must prove that "(1) [defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to confuse or deceive." *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) ("As Professor McCarthy notes, counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation'").

     As an initial matter, to establish trademark counterfeiting, Brandy Melville would have to first establish all of the elements of one of its trademark infringement claims. *See Ketab Corp. v. Mesriani Law Group*, 2015 WL 2084469, at *3 n. 6 (C.D. Cal. May 5, 2015) ("a claim for 'counterfeiting' under the Lanham Act must, by necessity, first establish a claim of trademark infringement"). As discussed elsewhere in this brief, Brandy Melville cannot make such a showing.

     In addition, counterfeiting requires a showing that defendant used an "identical or substantially indistinguishable" copy of a mark that is "registered on the principal register … for such goods or services sold, offered for sale, or distributed and that is in use." 15 U.S.C. § 1116(d)(1)(B)(i); *see also Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 15-3706-RGK, 2016 WL 7444600, at *2 (C.D. Cal. July 11, 2016), *aff'd*, 741 F. App'x 393 (9th Cir. 2018) (reversing statutory damages verdict for counterfeiting because "Defendant did not apply the … Marks to the same [type of] product for which those marks were registered"). A counterfeit

for trademark infringement, followed by an averment that "Plaintiff is unable to compute the foregoing categories of damages at this time," claiming that it lacked relevant documents and pointing to a possible expert report that it never served. Redbubble intends to move the Court *in limine* accordingly.

product must be a "stitch for stitch copy" of plaintiff's own products when viewed in the marketplace (considering such factors as surrounding packaging and any house labels), such that a consumer "would be tricked into believing that the [Accused P]roduct is actually one of Plaintiff's [] products" *See Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar. 19, 2019) (granting summary judgment of no counterfeiting).

Here, Brandy Melville has asserted three registered marks. There is no dispute that no products were ever sold through the Redbubble Marketplace that depicted the Brandy Flag logo. [Rickert Decl., Exh. B] Similarly, no clothing was sold with the design from the LosAngeles Lightning registration, although clothing is the only product class covered by the registration. [*Id.*] And the third mark, the Brandy Heart logo, is not used by Brandy Melville on stickers. [Masur Decl., Ex. F (Elkins Depo. Tr.) at 109:22-110:8] Other than products that fall outside the scope of plaintiff's registration – iPhone cases, mugs, tapestries, throw pillows and tote bags – the only products sold through the Marketplace with designs similar to the Brandy Heart logo were stickers. [Rickert Decl., Exh. B] Because those products are not identified in Brandy Melville's registration, they cannot be counterfeits as a matter of law.

Finally, Brandy Melville cannot demonstrate that Redbubble "intentionally used a counterfeit mark in commerce knowing the mark was counterfeit." *State of Idaho, supra*; *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:15.10 (5th ed. 2019) (counterfeiting is "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark"). To the contrary, there is no genuine dispute that Redbubble is unaware of specific designs uploaded and listed for sale by third-party Sellers on the Marketplace, including specifically the designs for the Accused Products, absent notification from rightsholders. [*See* Deshais Decl. ¶ 11] Redbubble didn't make the Accused Products, or even see those products at any point during the manufacturing, sale and shipping process. [Deshais Decl. ¶ 11]

Whenever Brandy Melville notified Redbubble that specific listings infringed Brandy Melville's rights, Redbubble promptly removed them. [Toy Decl. ¶ 29] And Redbubble went beyond its legal obligations by implementing numerous proactive measures to prevent listings that Brandy Melville might consider infringing from being offered for sale on the Redbubble Marketplace, despite Brandy Melville's unwillingness to cooperate with that process. [Toy Decl. ¶¶ 8-23]

Indeed, courts have consistently held that infringement is not knowing or willful where, as here, the defendant reasonably believes that its usage of a trademark is not barred by law. *VHT, Inc. v. Zillow Group, Inc.,* 918 F.3d 723 (9th Cir. 2019); *Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986). In *VHT*, for example, Zillow's user agreement required that brokers, agents, and listing services who uploaded photos and real property listings to its marketplace "represent that they 'have all necessary rights and authority to enter into' the agreements," and that the uploaded content "will not violate the intellectual property rights, or any other rights of any third party." *Id.* at 732 (internal quotations omitted).  There, as here, there was no "evidence showing Zillow exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of these photos."  *Id.* at 734. In light of its users' representations, Zillow was not "'actually aware' of its [users'] infringing activity" notwithstanding having received blanket notice of infringement from VHT; accordingly, the Ninth Circuit reversed the jury's willfulness verdict. *Id.* at 748-49 (quoting *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.")

Like the defendants in *Zillow*, Redbubble was entitled to and did in fact reasonably rely on representations made by its users that they had the right to use

the designs they uploaded to the site. And like those defendants, there is no evidence that Redbubble was "actually aware" of specific, ongoing infringing activity; when Redbubble learned of such activity, it has swiftly put an end to it. Using the language from *Evergreen*, Redbubble "believes reasonably, and in good faith, that [it] is not infringing." Indeed, Redbubble has prevailed in both U.S. cases against it that have gone to judgment. *See Ohio State*, 369 F. Supp. 3d 840; *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019) (granting summary judgment to Redbubble on Lanham Act claims). Redbubble is thus entitled to a determination of no willfulness or counterfeiting (and a concomitant ruling that Redbubble cannot be liable for regular or enhanced statutory damages) as a matter of law.[5]

## IV.  <u>CONCLUSION</u>

The legal issues in this lawsuit go far beyond the instant trademark dispute between Brandy Melville and Redbubble. Indeed, the resolution of this motion could impact the very viability of online marketplaces like the Amazon Marketplace, Craigslist, and eBay. The case law involving Internet marketplaces in general, and Redbubble in particular, overwhelmingly supports granting Redbubble's Motion for Summary Judgment. The Court should thus enter judgment in favor of Redbubble on Brandy Melville's Complaint and of each claim therein.

Dated: May 4, 2020              COASTSIDE LEGAL
                                KENNETH B. WILSON

                                ZUBER LAWLER & DEL DUCA LLP
                                JOSHUA M. MASUR
                                ZACHARY S. DAVIDSON

                                By:  */s/ Joshua M. Masur*   

                                Attorneys for Defendant
                                REDBUBBLE INC.

---

[5] At the very least, this evidence establishes that Brandy Melville is not entitled to enhanced statutory damages for willful counterfeiting under 15 U.S.C. § 1117(c)(2).