KENNETH B. WILSON (SBN 130009)
ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
jmasur@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
*zdavidson@zuberlawler.com*
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>REDBUBBLE INC.,<br><br>          Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANT REBUBBLE INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Notice of Motion and Motion, supporting Declarations, and [Proposed] Judgment]*<br><br>Hearing Date:  June 1, 2020<br>Time:          9:00 a.m.<br>Courtroom:     850 |

Pursuant to the Federal Rule of Civil Procedure 56 and Local Rule 56-1, Defendant Redbubble Inc. ("Redbubble") respectfully submits the following Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment.

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 1. Like the Amazon Marketplace and eBay, Redbubble is a global online marketplace platform, hosted at redbubble.com (the "Redbubble Marketplace"). | Toy Decl. Exh. A |
| 2. Artists use the Redbubble Marketplace platform to upload and sell designs on high-quality, everyday products such as apparel, stationery, housewares, bags, and wall art. | Toy Decl. Exh. A |
| 3. The Redbubble Marketplace automatically performs various online services to facilitate transactions. | Luthra Decl. ¶¶ 2; Deshais Decl. ¶¶ 2-6 |
| 4. The Marketplace software connects third-party artists or "Sellers" automatically to third-party manufacturers, who print and pack the products, before third-party shippers pick up the products and deliver them to customers. | Luthra Decl. ¶¶ 2; Deshais Decl. ¶¶ 2-6 |
| 5. Redbubble did not make the Accused | Deshais Decl. ¶¶ 2-11 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| Products; that was done exclusively by third-party manufacturers. Redbubble did not even see those products at any point during the manufacturing, sale and shipping process. | |
| 6. Redbubble did not offer or sell the Accused Products; that was done exclusively by the third-party Sellers who uploaded and listed the products and transferred title to the purchasers. | Luthra Decl. ¶¶ 4-8; Toy Decl. ¶ 5, Exh. C |
| 7. Redbubble did not place the mark on "advertisements" for the Accused Products; that was done by the third-party Sellers who created the web page listings. | Luthra Decl. ¶¶ 4-8 |
| 8. The Redbubble Marketplace platform also provides Sellers access to third-party payment processors who collect and process customer payments. | Luthra Decl. ¶ 3 |
| 9. The transaction process is entirely Seller-directed and automated by the Redbubble Marketplace software. | Luthra Decl. ¶¶ 2-3, 11-12 |
| 10. No Redbubble personnel designed or uploaded, manufactured, offered for sale, sold, handled, distributed, | Deshais Decl. ¶ 11 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| advertised, or for that matter even viewed any of the Accused Products prior to their sale. | |
| 11. Currently, there are more than 2,160,000 third-party Sellers, who have uploaded more than 27,000,000 product listings to the Redbubble Marketplace. | Rickert Decl. ¶¶ 2-3 |
| 12. Redbubble did not design or upload any of the designs for the Accused Products. Rather, all listings advertising products on the Redbubble Marketplace are designed and uploaded solely by third-party Sellers, without any participation by Redbubble. | Deshais Decl. ¶¶ 9, 11 |
| 13. Redbubble was unaware of the content of the listings on its Marketplace prior to their upload and had no involvement with the Sellers' decisions to offer the Accused Products. | Deshais Decl. ¶¶ 9, 11 |
| 14. Before Sellers can upload and sell creative products on the Redbubble Marketplace, they must become registered users. | Luthra Decl. ¶ 4 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 15. All registered users are required to comply with the Redbubble User Agreement and published policies that specify that the third-party Sellers, not Redbubble, (1) must possess the applicable rights to upload and sell their content; and (2) are responsible for such content. | Toy Decl. ¶ 5, Exh. C |
| 16. Third-party Sellers uploading designs to the Redbubble Marketplace have exclusive control over the designs; must specify the physical product type(s) to which each design may be applied and set the price; and may also input a title, one or more keyword "tags," and a description. | Luthra Decl. ¶ 6 |
| 17. Potential customers may search listings containing content of interest, and search results are based on these keyword tags and title, which are created solely by the uploading Seller – not Redbubble. | Luthra Decl. ¶ 7 |
| 18. Third-party Sellers must also check a box each time a design is uploaded to the Redbubble Marketplace verifying they "have the right to sell products | Luthra Decl. ¶ 5 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| containing this artwork, including (1) any featured company's name or logo, (2) any featured person's name or face, and (3) any featured words or images created by someone else." | |
| 19. Once third-party Sellers upload content and confirm their right to upload each design, their content is displayed automatically for sale among the tens of millions of product listings on the Marketplace, without any knowledge or involvement by Redbubble. | Luthra Decl. ¶ 8; Deshais Decl. ¶ 11 |
| 20. The agreements between Redbubble and the Sellers using the Marketplace platform specify that the Seller, not Redbubble, offers and sells the products listed on the Marketplace. | Toy Decl. Exh. C |
| 21. Redbubble's User Agreement describes how the Redbubble Marketplace enables Sellers "to publish, sell, discuss and purchase art;" it includes a section entitled "Offering your art for sale on a physical product" that describes how a Seller "may offer their art for sale | Toy Decl. Exh. C |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| on a physical product on the website by appointing Redbubble to facilitate the transaction….;" it repeatedly refers to Sellers offering their products for "sale," not Redbubble. | |
| 22. In the Redbubble Services Agreement, Appendix A to the User Agreement, Sellers acknowledge that they "wish to use Redbubble's services to facilitate marketing and sale of [their] art on a physical product….;" they agree in a section entitled "Sale of your products" that the Seller determines the price for products; and they expressly confirm they are "the seller of the merchandise." | Toy Decl. Exh. C |
| 23. The product listing pages confirm that the products sold via the Marketplace are offered by third-party Sellers, not Redbubble. In particular, the search results pages specify that each listing is "by" the third-party Seller. | Toy Decl. ¶¶ 31-32, Exh. H |
| 24. The listing pages themselves identify the third-party Seller both below and to the right of the image, followed by | Toy Decl. ¶¶ 31, 33, Exh. I |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| a selection of additional listings by the same Seller, if available, and a link to "View [Seller's] Shop." | |
| 25. Like Amazon and other marketplaces, the Redbubble Marketplace software facilitates payment processing for Sellers. Third-party payment processors like PayPal, Stripe, or Amazon Payments receive payment directly from customers through the Redbubble Marketplace. | Luthra Decl. ¶ 11 |
| 26. The Redbubble Marketplace software automatically facilitates the payment of the Seller-established margin to the Seller's account, less Redbubble's fixed service fee, which varies by product type but is independent of the price set by the Seller. | Luthra Decl. ¶ 11; Toy Decl. ¶¶ 28-29 |
| 27. Redbubble never took control of or title to the Accused Products. Rather, as specified at Section 3.5 of Redbubble's Services Agreement, "[a]ll items purchased from the website are manufactured pursuant to arrangements with third party suppliers under [Seller's] instructions. | Toy Decl. Exh. C |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| This means that title and risk for loss for such items pass from [Seller] to the customer/purchaser without passing through [Redbubble] . . . ." | |
| 28. Once an order is placed, the Redbubble Marketplace software automatically forwards the order information on behalf of the Seller to a third-party manufacturer or printer ("Manufacturer") based on criteria like the delivery location and product type. | Luthra Decl. ¶ 12 |
| 29. Manufacturers of orders placed through the Redbubble Marketplace are independent of Redbubble; they are not affiliates of Redbubble, and Redbubble neither owns the manufacturing facilities or equipment nor employs any of the personnel. | Deshais Decl. ¶¶ 4-5, 11 |
| 30. Upon receipt of an order, the Manufacturer imprints the design onto the product type chosen by the customer, without any input or involvement from Redbubble. | Deshais Decl. ¶ 2 |
| 31. Redbubble personnel do not review product artwork prior to printing, | Deshais Decl. ¶ 11 |

| | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| | participate in the manufacturing process, pack or ship the printed products, or perform pre-shipment quality control. | |
| | 32. After a product is printed, a third-party shipper picks it up from the Manufacturer and ships the product directly to the customer. | Deshais Decl. ¶ 6 |
| | 33. At all times between completion of manufacturing and the time the product is picked up by the shipper, the product remains with the third-party Manufacturer; Redbubble does not possess, physically handle, or even see the finished products. | Deshais Decl. ¶¶ 7, 9, 11 |
| | 34. Redbubble has taken significant steps to prevent abuses of its Marketplace, and has devoted substantial resources toward eliminating third-party infringement on the Marketplace and improving existing anti-piracy measures. | Toy Decl. ¶¶ 8-22 |
| | 35. Redbubble requires Sellers to confirm that they own and/or have the right to sell the content that they upload and "will not infringe the intellectual | Toy Decl. Exh. C; Luthra Decl. ¶ 5 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| property rights or any other rights of any person or entity…," both at the time they sign up as users and again each time they upload listings to the Marketplace. | |
| 36. Under Redbubble's IP/Publicity Rights Policy, which is modeled on the Digital Millennium Copyright Act (17 U.S.C. § 512), if Redbubble receives notice that particular listings infringe a third-party's intellectual property rights, Redbubble promptly (typically within one business day) removes those listings and notifies the third-party Seller who uploaded them. | Toy Decl. ¶¶ 6-7, Exh. D |
| 37. Per its IP/Publicity Rights Policy, Redbubble will "disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights, trademark rights, other intellectual property rights or publicity rights of others." | Toy Decl. ¶ 7, Exh. D |
| 38. In accordance with its IP/Publicity Rights Policy, Redbubble has received over 91,500 takedown | Rickert Decl. ¶ 4 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| requests from content owners, and pursuant to those requests, Redbubble removed more than 755,000 listings. | |
| 39. Redbubble proactively polices the Redbubble Marketplace for potentially infringing content. | Toy Decl. ¶ 22 |
| 40. Redbubble employs a 13-person Marketplace Integrity ("MPI") Team that proactively polices the Marketplace for potential infringement of marks belonging to Brandy Melville and over 300 other content owners, including some of the largest content owners in the world. Many of these content owners have large and diverse portfolios of intellectual property rights (i.e., copyrights, trademarks and publicity rights) in properties like TV shows and individual movies, or represent large rosters of musical artists. | Toy Decl. ¶ 22 |
| 41. Using information provided by content owners, Redbubble's MPI team uses proprietary software tools to search for potentially infringing listings based on the Seller-generated | Luthra Decl. ¶¶ 13-14; Toy Decl. ¶ 10, 12 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| titles, tags and descriptions. | |
| 42. Redbubble's MPI Team manually reviews search results, including images of the artwork for the listing, to identify content that matches policing guidelines created by Redbubble, typically with the assistance of the content owner. | Luthra Decl. ¶¶ 13-14; Toy Decl. ¶ 12-18 |
| 43. Redbubble's MPI Team promptly removes or prevents any listing content matching its policing guidelines from appearing on the site proactively and without receiving a specific takedown notice from the rightsholder. | Luthra Decl. ¶¶ 13-14; Toy Decl. ¶ 12-18 |
| 44. A third-party Seller whose works are removed through proactive policing is automatically notified upon removal and is otherwise treated in accordance with the IP/Publicity Rights Policy. | Toy Decl. ¶ 15 |
| 45. Only if a content owner collaborates with Redbubble by providing a complete list of what it believes its protected content is –logos, trademarks, characters, etc. – can Redbubble most effectively search for | Toy Decl. ¶ 11 |

| | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| | it and remove it from the Marketplace. | |
| | 46. When content owners like Brandy Melville do not cooperate with Redbubble in its proactive policing process, Redbubble is forced to use its best judgment as to what terms a content owner might use to identify colorable infringement. | Toy Decl. ¶ 11 |
| | 47. Redbubble uses a combination of proprietary and third-party software to identify scaled and/or repeated abusers of the Redbubble user agreement. These tools look for Seller behavior or characteristics that may indicate that a Seller is a scaled abuser or repeat infringer, and when it finds a high-risk account, it may automatically disable the account and remove it from the Marketplace or put it on a watch list to by monitored by the MPI Team. | Toy Decl. ¶¶ 19-20 |
| | 48. Redbubble's MPI team currently proactively policies for approximately 2,300 individual properties for content owners, and on any given | Toy Decl. ¶ 22; Rickert Decl. ¶ 6 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| day, the MPI Team will typically review and compare over 6,000 individual designs to its policing guidelines. | |
| 49. To date, the proactive policing efforts of the MPI Team have resulted in the disabling or removal of approximately 3,700,000 listings from the Redbubble Marketplace. And Redbubble has disabled and/or terminated almost 670,000 Seller accounts for violation of Redbubble policies, including its IP/Publicity Rights Policy. | Rickert Decl. ¶¶ 9-10 |
| 50. Redbubble has disabled or removed approximately 400 listings under its proactive removal guidelines for Brandy Melville, covering around 7,200 products. | Rickert Decl. ¶ 8 |
| 51. The "Brandy Heart" mark was registered on July 11, 2017 as U.S. Trademark Registration No. 5,238,856. That registration covers a variety of products, including stickers and apparel, "consists of the wording 'BRANDY MELVILLE' in black | Masur Decl. Exh. B |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| with a pink heart between BRANDY and MELVILLE." "The color(s) black and pink is/are claimed as a feature of the mark." | |
| 52. Brandy Melville does not use the Brandy Heart mark on stickers. | Masur Decl. Exh. F at 109:22-110:8; 119:21-22; 127:1-11 |
| 53. The "Brandy Flags" mark was registered on January 9, 2018 as U.S. Trademark Registration No. 5,373,397. That registration "consists of 'BRANDY MELVILLE' with a pair of crisscrossed flags between the 'Y' and 'M.'" | Masur Decl. Exh. C |
| 54. The "LosAngeles Lightning" mark was registered on May 14, 2019 – two weeks before this suit was filed – as U.S. Trademark Registration No. 5,748,883. That registration "consists of [t]he word 'LOSANGELES' as one word without a space. The first letter of the word is stylized to resemble a lightning bolt. Below 'LOSANGELES' is the word 'CALIFORNIA' and the number '1984'. All of the words are in yellow. No claim is made to the | Masur Decl. Exh. D |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| exclusive right to use the following apart from the mark as shown: LOS ANGELES CALIFORNIA 1984." | |
| 55. The LosAngeles Lightning mark only covers "clothing, namely, T-shirts, tank tops and sweatshirts." | Masur Decl. Exh. D |
| 56. Brandy Melville claims common law trademark rights for its Brandy Melville name and graphic logo and "variations thereof (e.g., Brandy LA, www.brandymelvilleusa.com, etc.)," as well as variations of the LA Lightning logo "(e.g., different colors)" although Brandy Melville has not provide any further information on specifically what those "variations" might be. | Masur Decl. Exh. A |
| 57. On May 14, 2018, Redbubble received correspondence complaining that the phrase "Brandy Melville" was being used as a tag, and identifying a handful of specific potentially infringing listings. | Toy Decl. ¶ 23, Exh. E |
| 58. By May 15, 2018, Redbubble had removed the listings that Brandy Melville complained about in its May | Toy Decl. ¶ 24, Exh. F; Rickert Decl., Ex. A |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| 14, 2018 correspondence, and advised Brandy Melville that "if there are any additional specific designs hosted on the marketplace that you would like removed, please identify those for us, and we will ensure that they are promptly removed in a manner consistent with Redbubble's IP and publicity rights policy." | |
| 59. Brandy Melville did not identify additional designs, and after May 15, 2018, Redbubble did not hear again from Brandy Melville for over a year, when it learned that Brandy Melville had filed this lawsuit. | Toy Decl. ¶ 24 |
| 60. Each time that Brandy Melville identified specific listings that it alleged were infringing its marks (including in the Complaint), Redbubble promptly removed the designs identified by Brandy Melville. | Toy Decl. ¶ 25; Rickert Decl., Exh. A |
| 61. Upon receiving notice of the Complaint, Redbubble also began proactively policing for the intellectual property that Brandy | Toy Decl. ¶ 26; Rickert Decl., ¶¶ 8-10 |

| **Uncontroverted Facts** | **Supporting Evidence** |
|---|---|
| Melville had identified and continues to do so, although Brandy Melville has not cooperated in these efforts to date, rendering Redbubble's policing efforts more difficult. | |
| 62. Redbubble applied its repeat infringer policy to third-party sellers who listed the designs identified by Brandy Melville. | Toy Decl., ¶¶ 7, 19; Rickert Decl., ¶ 7 |
| 63. Since Redbubble began proactively policing for Brandy Melville content, there have been no sales through the Marketplace of products bearing the images depicted in Brandy Melville's registrations. | Rickert Decl. Exh. B |
| 64. No product bearing the Brandy Flags mark has ever been sold through the Redbubble Marketplace. | Rickert Decl. Exhs. A-B; Toy Decl. ¶ 35 |
| 65. There has been no sale through the Redbubble Marketplace of any product displaying the LosAngeles Lightning mark on clothing, the only goods that mark was registered for. | Rickert Decl. Exhs. A-B; Toy Decl. ¶ 35 |
| 66. Although just over US$5,000 of products featuring the Brandy Hearts mark have been sold through the | Rickert Decl. Exhs. A-B; Toy Decl. ¶ 35 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| Marketplace, those sales were either stickers (on which Brandy Melville doesn't actually use the mark) or products that are not covered by that trademark registration. | |
| 67. There is no evidence that Redbubble is a partner with the third-party manufacturers; there is certainly no legally registered partnership, and the manufacturers all operate independently, and can and do decide independently whether to fulfill orders routed through the Redbubble Marketplace. | Deshais Decl. ¶¶ 4, 11; Toy Decl. ¶ 30 |
| 68. Redbubble does not have the authority to bind manufacturers in transactions with third-parties, or vice versa. | Toy Decl. ¶ 30 |
| 69. Redbubble is unaware of specific designs uploaded and listed for sale by third-party Sellers on the Marketplace, including specifically the designs for the Accused Products, absent notification from rightsholders. | Deshais Decl. ¶ 11 |
| 70. Whenever Brandy Melville notified Redbubble that specific listings | Toy Decl. ¶ 29 |

| Uncontroverted Facts | Supporting Evidence |
|---|---|
| infringed Brandy Melville's rights, Redbubble promptly removed them. | |
| 71. Redbubble implemented numerous proactive measures to prevent listings that Brandy Melville might consider infringing from being offered for sale on the Redbubble Marketplace, despite Brandy Melville's unwillingness to cooperate with that process. | Toy Decl. ¶¶ 8-23 |

## CONCLUSIONS OF LAW

| Conclusion of Law | Authority |
|---|---|
| **I.       DIRECT INFRINGEMENT** | |
| 1. To prevail on its First Claim for Direct Trademark Infringement, Brandy Melville must show that Redbubble made an affirmative "use in commerce" of a mark "in connection with the sale, offering for sale, distribution or advertising of goods. | 15 U.S.C. § 1114(1). |
| 2. This "use" requirement covers those who themselves place an infringing mark on products, via manufacture or otherwise; who offer to sell or sell | 15 U.S.C. § 1127 (defining an infringing "use in commerce" as occurring when a mark "is placed in any manner on the goods or their |

| Conclusion of Law | Authority |
|---|---|
| products bearing infringing marks; or who apply infringing marks to sales displays or related advertising materials. | containers or the displays associated therewith or on the tags or labels affixed thereto"); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006). |
| 3. While those who merely facilitate or enable "use" of infringing marks may be secondarily liable for contributory or vicarious infringement, they cannot directly infringe because they do not themselves "use" the marks. | *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2nd Cir. 2010). |
| 4. Although this Circuit has not expressly specified the types of conduct that might qualify as "uses" for purposes of direct **trademark** infringement, its copyright infringement opinions provide useful guidance. Direct copyright infringement "requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant," noting that the volitional conduct requirement "stands for the | *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017) |

| Conclusion of Law | Authority |
|---|---|
| unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." | |
| 5.   To demonstrate volitional conduct, a copyright plaintiff "must provide some 'evidence showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution." | *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (citing *Giganews*, 847 F.3d at 666, 670). |
| 6.   The volitional conduct requirement should apply with equal force to a trademark infringement claim. Like copyright infringement, trademark infringement is a tort, and therefore should also be subject to a "volitional conduct" requirement. And the types of volitional conduct identified in *VHT* are wholly consistent with the types of conduct that court have traditionally required for a showing of direct trademark infringement: namely, making or placing a mark on | *Fonovisa*, 76 F.3d at 265; *VHT*, 918 F.3d at 732 |

| Conclusion of Law | Authority |
|---|---|
| infringing products, or directly advertising, offering or selling those products. | |
| 7.  Redbubble did not itself use Brandy Melville's trademarks. Redbubble did not make the Accused Products; that was done exclusively by third-party manufacturers. [Deshais Decl. ¶¶ 2-11] Redbubble did not offer or sell the Accused Products; that was done exclusively by the third-party Sellers who uploaded and listed the products and transferred title to the purchasers. [Luthra Decl. ¶¶ 4-8; Toy Decl. ¶ 5, Exh. C] Redbubble did not place the mark on "advertisements" for the Accused Products; that was done by the third-party Sellers who created the web page listings. [*See* Luthra Decl. ¶¶ 4-8] And Brandy Melville has not identified any other manner in which Redbubble might use the Brandy Melville marks. | *Ohio State v. Redbubble,* 369 F. Supp. 3d 840 (S.D. Ohio 2019); *Fonovisa*, 76 F.3d at 265; *VHT*, 918 F.3d at 732 |
| 8.  Unlike print-on-demand companies like CafePress and SunFrog, which have been held liable for direct | *Ohio State,* 369 F. Supp. 3d at 844, 846 |

| Conclusion of Law | Authority |
|---|---|
| infringement because they print and sell the products offered via their website, "Redbubble essentially offers to 'independent artists' an online platform through which to sell their goods…. Redbubble is not directly producing the goods…." Redbubble's business model is more like the Amazon Marketplace, which "has generally not been found directly liable for direct trademark or copyright infringement because it merely facilitates sales between other parties." | |
| 9.   Case law uniformly holds entities like Redbubble immune from direct infringement liability because they do not "use" the marks in question. | *See, e.g.*, *Tiffany*, 600 F. 3d at 103; *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) *aff'd* 693 F. App'x 879 (Fed. Cir. 2017); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011). |
| **II.   FALSE DESIGNATION OF ORIGIN** | |
| 10.   Brandy Melville's Second Claim for | *Brookfield Comms., Inc., v. West* |

| Conclusion of Law | Authority |
|---|---|
| false designation of origin incorporates the allegations of and is essentially the same as its direct trademark infringement claim. | *Coast Enter. Corp.*, 174 F.3d 1036, 1046–47 n.8 (9th Cir. 1999). |

**III.   COMMON LAW UNFAIR COMPETITION**

| | |
|---|---|
| 11.   Brandy Melville's Third Claim for common law unfair competition incorporates the allegations of and is essentially the same as its direct trademark infringement claim. | *Brookfield Comms., Inc., v. West Coast Enter. Corp.*, 174 F.3d 1036, 1046–47 n.8 (9th Cir. 1999). |
| 12.   The immunity provision of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), "states that 'no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider,' and expressly preempts any state law to the contrary." | 47 U.S.C. § 230(c)(1); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007). |
| 13.   Redbubble is unquestionably an "interactive computer service," and to the extent Brandy Melville's trademarks appear on the Marketplace, those marks are "provided by another information | *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) (granting summary judgment to Amazon based on CDA where third-party vendors provided the images on which the claim was |

| Conclusion of Law | Authority |
|---|---|
| content provider" – namely, the third-party Sellers. | based). |
| 14. The CDA requires that Brandy Melville's Third Claim for Unfair Competition be dismissed. | 47 U.S.C. § 230(c)(1); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004) |
| **IV.     CONTRIBUTORY INFRINGEMENT** | |
| 15. To prevail on its Fourth Claim, for Contributory Trademark Infringement, Brandy Melville must prove that Redbubble provided products or services "to one whom it knows or has reason to know is engaging in trademark infringement." | *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982). |
| 16. Because Redbubble provides services to the alleged direct infringers, Brandy Melville must also show that Redbubble had "direct control and monitoring of the instrumentality used by a third party to infringe . . . ." | *Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 984 (9th Cir. 1999) |
| 17. To prevail on a contributory infringement claim, "a service provider must have more than a general knowledge or reason to know that its service is being used to sell | *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 107-09 (2nd Cir. 2010); *see, e.g, Spy Phone Labs LLC v. Google Inc.*, 2016 WL 6025469 (N.D. Cal. 2016) (applying *Tiffany* analysis); *Academy* |

| **Conclusion of Law** | **Authority** |
|---|---|
| counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." | *of Motion Picture Arts & Sciences v. GoDaddy, Inc.,* 2015 WL 5311085 (C.D. Cal. 2015) (offering several page analysis and application of the *Tiffany* opinion). |
| 18.  The mere assertion of infringement in a notice letter "is not sufficient to impute knowledge of infringement to [a defendant]," and use of an identical or similar mark does not necessary constitute infringement." | *Lockheed Martin Corp. v. Networks Solutions, Inc.,* 985 F. Supp. 949, 963 (C.D. Cal 1997). |
| 19.  Redbubble cannot be liable for contributory trademark infringement. The undisputed evidence shows that Redbubble always removed allegedly infringing listings promptly upon receiving notice of claimed infringement from Brandy Melville. [Toy Decl., ¶ 25; Rickert Decl., Exh. A] Redbubble also implemented proactive procedures to prevent allegedly infringing content from being sold. [Toy Decl., ¶¶ 9-22; Rickert Decl., ¶¶ 8-10] And Redbubble applied its repeat infringer policy to third-party sellers who listed | *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999); *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 107-09 (2nd Cir. 2010); *Spy Phone Labs LLC v. Google Inc.*, 2016 WL 6025469 (N.D. Cal. 2016); *Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.*, 2015 WL 5311085 (C.D. Cal. 2015) |

| Conclusion of Law | Authority |
|---|---|
| the content in question. [Toy Decl., ¶¶ 7, 19; Rickert Decl., ¶ 7] | |
| **V.     VICARIOUS INFRINGEMENT** | |
| 20.   To prevail on its Fifth Claim, for Vicarious Trademark Infringement, Brandy Melville must establish "that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." | *Perfect 10, Inc. v. VISA International Service Ass'n*, 494 F.3d 788, 807-08 (9th Cir. 2007) (citations omitted). |
| 21.   "Courts have strictly applied the test for vicarious trademark liability based on agency principles, and, unlike vicarious copyright liability, courts do not recognize vicarious liability in the trademark context based on ability to supervise in combination with a financial interest. | *Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, 871 F. Supp. 2d 607, 613-14 (S.D. Tex. 2012). |
| 22.   Redbubble cannot be liable for vicarious infringement. There is no evidence that Redbubble is a partner with the third-party manufacturers; there is certainly no legally registered partnership, and the manufacturers all | *Perfect 10, Inc. v. VISA International Service Ass'n*, 494 F.3d 788, 807-08 (9th Cir. 2007); *Rosetta Stone Ltd. v. Google, Inc.*, 730 F.Supp.2d 531, 550 (E.D. Va. 2010) (rejecting vicarious liability claim against Google for the |

| **Conclusion of Law** | **Authority** |
|---|---|
| operate independently, and can and do decide independently whether to fulfill orders routed through the Redbubble Marketplace. [Deshais Decl. ¶¶ 4, 11; Toy Decl. ¶ 30] Redbubble does not have the authority to bind manufacturers in transactions with third-parties, or vice versa. [Toy Decl. ¶ 30] And Redbubble cannot be deemed to have the type of authority or joint control over any allegedly infringing products that is required for a finding of vicarious liability. Thus, Brandy Melville cannot meet its burden on this issue. | use of plaintiff's marks in Sponsored Link titles because plaintiff failed to prove Google "controls the appearance and content" of the infringing products or the use of the marks in those products). |

## VI.    STATUTORY DAMAGES

| | |
|---|---|
| 23.   A "counterfeit is something that purports to be something that it is not." Thus, to prevail on a counterfeiting claim, a plaintiff must prove that "(1) [defendant] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or | *United Pac. Ins. Co. v. Idaho First Nat. Bank*, 378 F.2d 62, 69 (9th Cir. 1967) (citations omitted); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). |

| Conclusion of Law | Authority |
|---|---|
| distribution of goods; and (4) its use was likely to confuse or deceive." | |
| 24. Counterfeiting is "the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation.'" | *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). |
| 25. To establish trademark counterfeiting, Brandy Melville has to first establish all of the elements of one of its trademark infringement claims. | *Ketab Corp. v. Mesriani Law Group*, 2015 WL 2084469, at *3 n. 6 (C.D. Cal. May 5, 2015) ("a claim for 'counterfeiting' under the Lanham Act must, by necessity, first establish a claim of trademark infringement"). |
| 26. Even assuming that Brandy Melville could prove the threshold question of infringement, counterfeiting requires a showing that defendant used an "identical or substantially indistinguishable" copy of a mark that is "registered on the principal register … for such goods or services sold, offered for sale, or distributed and that is in use." | 15 U.S.C. § 1116(d)(1)(B)(i); *see also Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 15-3706-RGK, 2016 WL 7444600, at *2 (C.D. Cal. July 11, 2016), *aff'd*, 741 F. App'x 393 (9th Cir. 2018) (reversing statutory damages verdict for counterfeiting because "Defendant did not apply the … Marks to the same [type of] product for which those marks were registered"). |
| 27. A counterfeit product must be a | *Arcona, Inc. v. Farmacy Beauty,* |

| Conclusion of Law | Authority |
|---|---|
| "stitch for stitch copy" of plaintiff's own products when viewed in the marketplace (considering such factors as surrounding packaging and any house labels), such that a consumer "would be tricked into believing that the [Accused P]roduct is actually one of Plaintiff's [] products." | *LLC*, No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar. 19, 2019) |
| 28. Because no products were ever made or sold through the Redbubble Marketplace that depicted the Brandy Flag logo, Redbubble is not liable as a matter of law for counterfeiting of the Brandy Flag logo. | *United Pac. Ins. Co. v. Idaho First Nat. Bank*, 378 F.2d 62, 69 (9th Cir. 1967) (citations omitted); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). |
| 29. Although clothing is the only product class covered by the LosAngeles Lightning registration, no clothing was made or sold through the Redbubble Marketplace with that logo. Redbubble is therefore not liable as a matter of law for counterfeiting of the LosAngeles Lightning logo. | *United Pac. Ins. Co. v. Idaho First Nat. Bank*, 378 F.2d 62, 69 (9th Cir. 1967) (citations omitted); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). |
| 30. The only products allegedly sold | *United Pac. Ins. Co. v. Idaho First* |

| Conclusion of Law | Authority |
|---|---|
| through the Redbubble Marketplace that might be covered by the Brandy Heart registration are stickers. Because Brandy Melville does not use the Brandy Heart logo on stickers, Redbubble is not liable as a matter of law for counterfeiting of the Brandy Heart registration. | *Nat. Bank*, 378 F.2d 62, 69 (9th Cir. 1967) (citations omitted); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). |
| 31.  Brandy Melville cannot demonstrate that Redbubble "intentionally used a counterfeit mark in commerce knowing the mark was counterfeit." To the contrary, there is no genuine dispute that Redbubble is unaware of specific designs uploaded and listed for sale by third-party Sellers on the Marketplace, including specifically the designs for the Accused Products, absent notification from rightsholders. [*See* Deshais Decl. ¶ 11] Redbubble didn't make the Accused Products, or even see those products at any point during the manufacturing, sale and shipping process. [Deshais Decl. ¶ 11] Whenever Brandy Melville notified Redbubble that specific listings | *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:15.10 (5th ed. 2019) (counterfeiting is "the act of producing or selling a product with a sham trademark that is an intentional and calculated reproduction of the genuine trademark"). |

| Conclusion of Law | Authority |
|---|---|
| infringed Brandy Melville's rights, Redbubble promptly removed them. [Toy Decl. ¶ 29] And Redbubble went beyond its legal obligations by implementing numerous proactive measures to prevent listings that Brandy Melville might consider infringing from being offered for sale on the Redbubble Marketplace, despite Brandy Melville's unwillingness to cooperate with that process. [Toy Decl. ¶¶ 8-23] | |
| 32. Infringement cannot be knowing or willful where, as here, the defendant reasonably believes that its usage of a trademark is not barred by law. | *VHT, Inc. v. Zillow Group, Inc.,* 918 F.3d 723, 732, 734, 748-49 (9th Cir. 2019); *Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986); *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.") |

| Conclusion of Law | Authority |
|---|---|
| 33. "Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." | *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) |
| 34. Redbubble was entitled to and did in fact reasonably rely on representations made by its users that they had the right to use the designs they uploaded to the site. | *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Ohio State*, 369 F. Supp. 3d 840; *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019). |
| 35. There is no evidence that Redbubble was "actually aware" of specific, ongoing infringing activity; when Redbubble learned of such activity, it has swiftly put an end to it. | *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Ohio State*, 369 F. Supp. 3d 840; *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019). |
| 36. Redbubble "believes reasonably, and in good faith, that [it] is not infringing." | *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Ohio State*, 369 F. Supp. 3d 840; *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019). |
| 37. Redbubble has prevailed in both U.S. cases against it that have gone to | *Ohio State*, 369 F. Supp. 3d 840; *LTTB, LLC v. Redbubble Inc.*, 385 F. |

| Conclusion of Law | Authority |
|---|---|
| judgment. | Supp. 3d 916 (N.D. Cal. 2019). |
| 38.  Redbubble is entitled to a determination of no counterfeiting (and a concomitant ruling that Redbubble cannot be liable for regular or enhanced statutory damages) as a matter of law. | *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). |
| 39.  Because Brandy Melville cannot establish that Redbubble used a counterfeit mark, it cannot recover the enhanced statutory remedies for trademark counterfeiting. | *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:15.10 (5th ed. 2019) |
| 40.  Brandy Melville is not entitled to enhanced statutory damages for willful counterfeiting. | 15 U.S.C. § 1117(c)(2). |

Dated:  May 4, 2020.

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR
ZACHARY S DAVIDSON

By:  */s/ Joshua M. Masur*
        Attorneys for Defendant
        Redbubble Inc.