KENNETH B. WILSON (SBN 130009)
ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
jmasur@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
*zdavidson@zuberlawler.com*
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>Plaintiff,<br><br>v.<br><br>REDBUBBLE INC.,<br><br>Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br><br>**DECLARATION OF JAMES TOY IN SUPPORT OF DEFENDANT REBUBBLE INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Notice of Motion and Motion, Statement of Uncontroverted Facts and Conclusions of Law, supporting Declarations, and [Proposed] Judgment]*<br><br>Hearing Date: June 1, 2020<br>Time:         9:00 a.m.<br>Courtroom:    850 |

1

## DECLARATION OF JAMES TOY

I, James Toy, declare:

1. I am the Assistant General Counsel of Redbubble Inc. ("Redbubble"), the defendant in this lawsuit. I am directly responsible for the implementation of Redbubble's IP/Publicity Rights Policy and other intellectual property matters. I also work closely with the Marketplace Integrity Team ("MPI Team") and have direct supervisory involvement in their activities, including their proactive activities. I have personal knowledge of the facts set forth in this Declaration and can testify competently to those facts.

2. I am familiar with the products that plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville ("Brandy Melville") has identified as allegedly infringing in its Complaint and discovery responses (the "Accused Products").

3. Attached to this Declaration as Exhibit A is a true and correct copy of the current version of the "Our Business" page from the Redbubble Investor Centre web site, which is publicly available at http://shareholders.redbubble.com/site/about-us/our-business.

4. Attached to this Declaration as Exhibit B is a true and correct copy of the "About" page from Redbubble's web site, which is publicly available at https://www.redbubble.com/about.

5. Attached to this Declaration as Exhibit C is a true and correct copy of Redbubble's User Agreement, which includes the Redbubble Services Agreement, which was produced in this litigation under Bates numbers RBBM214887-902, and the current version of which is publicly available at https://www.redbubble.com/agreement. Each registered Redbubble user must consent to this Agreement to be able to use the Redbubble Marketplace.

6. Attached to this Declaration as Exhibit D is a true and correct copy of the Redbubble IP/Publicity Rights Policy, which was produced in this litigation

under Bates numbers RBBM214881-86, and the current version of which is publicly available at https://help.redbubble.com/hc/en-us/articles/201579195-Redbubble-IP-Publicity-Rights-Policy. Redbubble enforces this Policy with the goal of minimizing the improper use of the Redbubble Marketplace.

7. If a content owner like Brandy Melville provides notice that particular listings infringe their intellectual property or publicity rights, Redbubble promptly (i.e., typically within one business day) removes those listings and notifies the third-party Seller who uploaded them. In accordance with that practice, Redbubble will also "disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights, trademark rights, other intellectual property rights or publicity rights of others."

8. In addition to enforcing the notice and takedown provisions of the IP/Publicity Rights Policy, for certain content owners, Redbubble's 13-person MPI Team provides further assistance by proactively policing the Redbubble Marketplace for potentially infringing content, using screening criteria established by Redbubble, based on information from content owners, and almost always created in collaboration with those content owners.

9. Redbubble performs this type of proactive screening for Brandy Melville, but Brandy Melville has refused to reasonably cooperate in the process, making implementation of effective screening criteria more difficult.

10. In Redbubble's proactive policing process, a member of the MPI Team creates a list of terms to use to search for potentially infringing listings that are related to protected words or images provided by a content owner, such as trademarks, copyright-protected images, name and likeness. Redbubble selects proactive search terms in this way, because the terms may be used by third-party Sellers in listings they create on the Redbubble Marketplace. This list of search terms is typically based on a list of claimed trademarks and other protected content provided by the content owner for this purpose, and the content owner sometimes

assists in providing common misspellings of its trademarks to make the search keywords more effective.

11. It is important that the content owner collaborate with Redbubble by providing it with a complete list of what it believes its protected content is, whether that be logos, trademarks, characters, etc., so that Redbubble can most effectively search for it and remove it from the Marketplace. For content owners like Brandy Melville who have refused to provide a reasonable level of cooperation with Redbubble in this process, however, Redbubble is forced to use its best judgment as to what terms a content owner might use to identify colorable infringement.

12. During the proactive policing process, search terms are input into a proprietary software tool, which automatically and continuously monitors for changes in a dynamic database of Seller-generated titles, tags and descriptions in the Redbubble Marketplace, and displays the results of its searches in a user interface for the MPI Team to review and access. The MPI Team manually reviews these search results, which include images of the artwork for the listing, to identify content that matches the policing guidelines, and is therefore potentially infringing, based on information provided by the content owner.

13. Like the search terms, these guidelines are typically created in collaboration with the content owner, because policing functions most effectively if Redbubble has a full understanding of what designs a content owner considers infringing and how broadly the content owner wishes to enforce any rights it has in such content, in part because various content owners have different approaches to policing, particularly as it relates to fan art, mashups, artwork that makes critical commentary on the content owner's brand, and sensitivity to upsetting the content owner's fans when their artwork is removed.

14. If (as in the case of Brandy Melville) a content owner is unwilling to work with Redbubble to create policing guidelines, Redbubble typically attempts to use its best judgment as to what the content owner might consider colorably

infringing and therefore might want removed.

15. If the policing tool displays user-generated content that matches the content contained in policing guidelines, the MPI Team will promptly remove the listing containing such content proactively and without receiving a specific takedown notice from the rightsholder. In addition, the third-party Seller is automatically notified upon removal and is otherwise treated in accordance with the IP/Publicity Rights Policy.

16. In 2017, Redbubble began testing a new internally developed tool that allows a small volume of listings to be screened for potentially infringing titles or tags immediately after upload but before they become publicly visible on the Redbubble Marketplace, which Redbubble refers to as the "ACE" tool. This tool has limitations, because it is keyword based and does not rely on image matching. Thus, an objectionable image that lacks the applicable search keywords may get through, and even if the uploaded content is caught by the ACE tool, a human must still review each upload prior to removal to determine whether the design matches any of the protected words or images in the policing guidelines created in collaboration with the content owner.

17. The content offered for sale on the Redbubble Marketplace, including those designs displayed on the Accused Products, is designed and uploaded to the Redbubble Marketplace by third-party Sellers. Because content is uploaded by third parties without participation by Redbubble, and content is uploaded by these Sellers at such a high volume, any pre-screening on a broad scale is currently logistically impractical. The ACE Tool would not mitigate this impracticability. Broad pre-upload screening of all uploaded content with the ACE Tool could not be accomplished within a reasonable time frame. And even if Redbubble were able to use this technology to attempt to pre-screen all content uploaded to the Marketplace, it would still need information from content owners regarding what content to remove and the scope of their rights.

18. Redbubble has also attempted to develop image matching and optical character recognition software. While Redbubble has not yet been able to create a viable scalable solution, and therefore has not used any such application on a significant scale, it continues to work toward such a solution in the hope that its efforts will bear fruit.

19. Redbubble also uses a combination of proprietary and third-party software tools that seek to identify scaled and/or repeated abusers of the Redbubble user agreement. For instance, Redbubble uses third-party machine learning software called Sift Science to search for user accounts that are linked to other accounts that have already been restricted or deleted for repeat infringement, as the existence of such accounts might indicate that the applicable Sellers have attempted to circumvent Redbubble Policies by simply creating new accounts. These tools also look for other Seller behavior that may indicate that a Seller is a scaled abuser or repeat infringer, such as high content upload rates, which might indicate that the user is not a legitimate human artist, but rather a software robot designed to upload content in bulk.

20. When Sift Science detects a high-risk account, it may automatically disable the account or put it on a watch list to be monitored by the MPI Team. When an account is disabled, all listings offered for sale by that account are automatically removed from the Redbubble Marketplace.

21. Redbubble's MPI Team currently conducts proactive policing for marks belonging to Brandy Melville and roughly 335 other content owners, including some of the largest content owners in the world. Many of these companies have a large and diverse portfolio of properties (i.e., copyrights, trademarks and publicity rights), like TV shows and individual movies, and some represent a large roster of musical artists. In total, Redbubble's MPI team proactively polices for more than 2,350 individual properties for these content owners, and on any given day, the MPI Team will typically review over 6,000 individual designs and compare

them against the policing and removal guidelines established (in the vast majority of cases) in collaboration with these content owners.

22. I understand that if listings in user accounts disabled by Sift Science are accounted for, then Redbubble's proactive policing efforts to date have resulted in the disabling or removal of approximately 3,692,040 listings from the Redbubble Marketplace, covering just over 87,000,000 products. These removals were accomplished by detecting and predicting patterns of abuse at the account level, rather than via the MPI Team's manual review of each listing. Redbubble always strives to increase the scalability of its proactive measures, so it can more efficiently police the Redbubble Marketplace for violations of its user agreement.

23. Attached to this Declaration as Exhibit E is a true and correct copy of correspondence from Brandy Melville to Redbubble dated May 14, 2018, and which was produced in this litigation under Bates numbers BRANDY_0000099-102.

24. Attached to this Declaration as Exhibit F and G are a true and correct copy of additional correspondence between Brandy Melville and Redbubble on May 14-15, 2018, and which were produced in this litigation under Bates numbers RBBM176733-35 and RBBM175967. After May 15, 2018, Redbubble did not hear from Brandy Melville again until after this lawsuit was filed.

25. In each instance in which Brandy Melville provided Redbubble with notice of specific allegedly infringing content, Redbubble promptly removed any listings containing the images identified in the notice. Redbubble also repeatedly offered to work with Brandy Melville to establish proactive policing criteria. However, Brandy Melville has never agreed to work with Redbubble on reasonable criteria for proactively policing the Redbubble Marketplace on an ongoing basis.

26. Despite Brandy Melville's unwillingness to reasonably cooperate with Redbubble, immediately after receiving notice of this lawsuit, Redbubble unilaterally implemented proactive screening for the content identified by Brandy Melville. Redbubble subsequently expanded its policing criteria based on additional

information provided by Brandy Melville regarding what it considered its trademark rights to be.

27. Third party payment processors like PayPal, Stripe, or Amazon Payments receive payment directly from customers who purchase products through the Redbubble Marketplace and forward those funds directly to Redbubble.

28. After the purchaser's funds are collected, Redbubble's platform software then automatically facilitates the payment of the Seller's margin to the Seller, with such margin being determined entirely by the Seller.

29. Redbubble retains a fixed service fee for its facilitation services, which varies by product type but not by the price set by the Seller.

30. Redbubble does not enter a legally-registered partnership with any third-party manufacturers of products purchased through the Redbubble Marketplace. The manufacturers operate independently, and can and do decide unilaterally whether to fulfill orders routed to them by platform software. Redbubble does not have the authority to bind the manufacturers in transactions with third parties, and the manufacturers do not have the authority to bind Redbubble in transactions with third parties.

31. Product listing pages on the Redbubble Marketplace are dynamically generated by automated platform software when a third-party Seller fills in a generic electronic template with information specific to the Seller's particular listing. As a result, the entire listing page consists of (i) information input by the Seller, (ii) information automatically generated by platform software based on information input by the Seller or other users of the Marketplace, and (iii) generic listing page features. For example, the listing's image is uploaded by the Seller; the title, tags, price, and description are input by the Seller; the "Similar designs" carousel is dynamically generated based on tagging behavior of the Seller and other Marketplace users; and the banners, footers, and functional buttons are generic page features that are consistent irrespective of the information input by the Seller or the

behavior of other Marketplace users. The images of products that appear on listing pages (such as a shirt bearing the Seller's design being worn by a model) are dynamically generated by automated platform software from a generic template (such as a stock model wearing a blank shirt) when the third-party Seller uploads a design and chooses the product type(s) they want to sell, without any involvement or intervention by Redbubble.

32. Attached to this Declaration as Exhibit H is a true and correct copy of a search results page on the Redbubble Marketplace for the search term "brandy heart." The content within the green boxes is content directly input by the applicable Seller of a corresponding listing. The content within the dotted blue boxes is dynamically generated by automated platform software based on information input by Marketplace users; and in particular, the image within the dotted blue box is generated from a generic template of a blank sticker when the third-party Seller uploads a design and chooses to sell stickers printed with their design, without any involvement or intervention by Redbubble.. The content within the pink "double boxes" is content input by the user conducting the search.

33. Attached to this Declaration as Exhibit I is a true and correct copy of a product listing page on the Redbubble Marketplace for a product located using the search term "brandy heart." The content within the green boxes is content directly input by the user. The content within the dotted blue boxes is content dynamically generated by automated platform software based on information input by the Seller. The remaining content on this page is generic listing page features, some of which is also displayed automatically by the Marketplace software in response to user-generated information. For example, the "Features" section is generic information displayed for all stickers, but the sticker Features are displayed in response to the user's decision to sell stickers printed with their design, without any involvement or intervention by Redbubble.

34. Redbubble facilitates advertising on behalf of artists by connecting the Redbubble platform to third-party advertising platforms, such as Google, through a continually-updating "product feed" of Seller listings hosted on the Marketplace. The third-party advertising platform—not Redbubble—determines the specific listing that gets displayed in an advertisement.

35. The sales data attached as Exhibits A and B to the Rickert declaration confirm that no product bearing the Brandy Flags mark has ever been sold through the Redbubble Marketplace. Those data also confirm that there has never been a sale through the Marketplace of any product displaying the LosAngeles Lightning mark on clothing. Those data establish that AU$7,830.17 (approximately US$5,000 at today's exchange rates) of products featuring the Brandy Hearts mark have been sold through the Marketplace, and those sales were limited either to stickers or to products that are not covered by the Brandy Hearts trademark registration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and to the best of my knowledge and information.

Executed this 4th day of May, 2020 at Fairfax, California.

James Toy