BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Ryan Q. Keech (State Bar No. 280306)
  rkeech@bgrfirm.com
Jason Y. Kelly (State Bar No. 274144)
  jkelly@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff Y.Y.G.M. SA d.b.a.
Brandy Melville

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>REDBUBBLE, INC., a Delaware corporation,<br><br>            Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br>Judge:  Hon. R. Gary Klausner<br><br>**PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO DEFENDANT REDBUBBLE, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       June 1, 2020<br>Time:       9:00 a.m.<br>Crtrm.:     850<br><br>Pre-Trial Conference:    June 15, 2020<br>Trial Date:                    June 30. 2020 |

**REDACTED VERSION OF**

**DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................1

II.   STATEMENT OF FACTS ....................................................................2

    A.   Brandy Melville and Its Trademarks ........................................2

    B.   Redbubble and Its Infringement of Brandy Melville's Trademarks .................................................................................3

    C.   Redbubble's Infringement of Brandy Melville's Trademarks ...............5

III.  ARGUMENT .......................................................................................6

    A.   Redbubble Cannot Escape Liability or Statutory Damages for Its Counterfeiting and Direct Infringement. ...............................6

        1.   The Motion Fails Because Redbubble Counterfeits Brandy Melville Products. ...............................................6

        2.   *Ohio State* Does Not Advance Redbubble's Case. ......12

        3.   Because Redbubble Is a Counterfeiter, Statutory Damages are Available. .........................................13

    B.   Redbubble Is Liable For Contributory Infringement. ...........15

    C.   Redbubble Is Liable For Vicarious Infringement. ................18

    D.   Brandy Melville's Unfair Competition Claim Is Viable. .....19

IV.   CONCLUSION ................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

**FEDERAL CASES**

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
   573 U.S. 431 (2014) (Scalia, J., dissenting) ........................................7

*Atari Interactive, Inc. v. SunFrog, LLC*,
   No. 18-cv-4949, 2019 WL 3804462 (N.D. Cal. Aug. 13, 2019) ........................20

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009) ............................................................19

*BMW of N. Am., LLC v. Barreira*,
   633 F. App'x 882 (9th Cir. 2015) ......................................................11

*C & L Intern. Trading Inc. v. Am. Tibetan Health Institute, Inc.*,
   No. 13-cv-2638, 2015 WL 1849863 (S.D.N.Y. Apr. 22, 2015) ...........................8

*Coach, Inc. v. Goodfellow*,
   717 F.3d 498 (6th Cir. 2013) .............................................. 15, 16, 17

*Craigslist, Inc. v. Naturemarket, Inc.*,
   694 F.Supp.2d 1039 (N.D. Cal. 2010) ...............................................10

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
   806 F.2d 392 (2d Cir. 1986) ...............................................................8

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008) ............................................................20

*GMA Accessories, Inc. v. BOP, LLC*,
   765 F. Supp. 2d 457 (S.D.N.Y. 2011) ...........................................7, 11

*H-D U.S.A., LLC v. SunFrog, LLC*,
   311 F. Supp. 3d 1000 (E.D. Wis. 2018) .................................. 7, 8, 9, 10

*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*,
   955 F.2d 1143 (7th Cir. 1992) ............................................................14

1
2

# <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page</u>

3
4
*Johnson & Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*,
  No. 08-cv-1297, 2014 WL 12558573 (E.D.N.Y. Apr. 4, 2014)............................8

5
6
*Levi Strauss & Co. v. Diaz*,
  778 F. Supp. 1206 (S.D. Fla. 1991).....................................................................14

7
*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997).....................................................................10, 11

8
9
*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  591 F. Supp. 2d 1098 (C.D. Cal. 2008) ..............................................................18

10
11
*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011)...............................................................................15

12
13
*Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*,
  452 F. Supp. 429 (W.D.N.Y. 1978)......................................................................10

14
15
*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  No. 13-cv-1932, 2015 WL 4394673 (W.D. Wash. July 16, 2015).......................8

16
17
*Parisi v. Sinclair*,
  774 F. Supp. 2d 310 (D.D.C. 2011).....................................................................19

18
19
*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017).................................................................................7

20
*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007)...............................................................................18

21
22
*Phillip Morris USA Inc. v. Shalabi*,
  352 F. Supp. 2d 1067 (C.D. Cal. 2004) ..........................................................6, 15

23
24
*Rissetto v. Plumbers & Steamfitters Local 343*,
  94 F.3d 597 (9th Cir. 1996).................................................................................16

25
26
*SAS v. Sawabeh Info. Servs. Co.*,
  No. 11-cv-4147, 2013 WL 12126742 (C.D. Cal. Oct. 8, 2013) .........................10

27
28
*SunL Grp. (L.A.), Inc. v. Seaseng, Inc.*,
  No. 07-cv-807, 2007 WL 4144992 (C.D. Cal. Sept. 14, 2007)............................8

1
2

**TABLE OF AUTHORITIES**
(Continued)

**Page**

3
4
*Symantec Corp. v. CD Micro, Inc.*,
   286 F. Supp. 2d 1278 (D. Or. 2003) ................................................................14

5
6
*The Ohio State Univ. v. Redbubble, Inc.*,
   369 F. Supp. 3d 840 (S.D. Ohio 2019) ..................................................... 12, 13

7
*The Ohio State Univ. v. Redbubble Inc.*,
   No. 19-3388 (6th Cir.) ...................................................................................12

8
9
*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010)................................................................ 8, 14, 16

10
11
*Tommy Bahama Grp., Inc. v. Sexton*,
   No. 07-cv-6360, 2009 WL 4673863 (N.D. Cal. Dec. 3, 2009) .........................11

12
13
*Transamerica Corp. v. Moniker Online Servs., LLC*,
   672 F. Supp. 2d 1353 (S.D. Fla. 2009) ..........................................................10

14
**STATE CASES**

15
16
*So v. Shin*,
   212 Cal. App. 4th 652 (2013) ..........................................................................7

17
18
*Tre Milano, LLC v. Amazon.com, Inc.*,
   No. B234753, 2012 WL 3594380 (Cal. Ct. App. 2012) ......................................7

19
**FEDERAL STATUTES**

20
15 U.S.C. § 1114(1)(a), (1)(b) ...........................................................................9

21
15 U.S.C. § 1117(b), (c)(2) ..............................................................................14

22
23
15 U.S.C. § 1117(c)(1) ....................................................................................13

24
Communications Decency Act, 47 U.S.C. § 230(c)(1) .................................. 6, 19, 20

25
**STATE STATUTES**

26
Cal. Com. Code § 2206(1)(b) ...........................................................................11

27
Cal. Rev. & Tax Code § 6203(a) .......................................................................11

28

1

## **TABLE OF AUTHORITIES**
### (Continued)

2

**Page**

3

## **OTHER AUTHORITIES**

4

4 *McCarthy on Trademarks and Unfair Competition* § 25:26 (5th ed. 2020) 9, 10, 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   __INTRODUCTION__

As originally conceived during the early days of the Internet, online marketplaces were the matchmakers for sellers of used products with potential buyers across the world.  In other words, if a man in Los Angeles wanted to sell his old 1988 Dodgers World Series Champs T-shirt, the Angeleno was no longer limited to finding potential buyers at his garage sale or via an ad in a local newspaper.  Instead, the Angeleno seller could connect with a Dodger faithful as close as Orange County and as far away as Timbuktu.  And to help connect the right buyers with the right sellers, these online marketplaces used search engine optimization techniques to ensure that a buyer looking for Dodgers gear was directed to Dodgers products rather than having to wade through, for example, lawn mowers or camping tents.

Defendant Redbubble has a far different business model, as the evidence in this case, including myriad documents and deposition testimony from Redbubble itself, makes obvious.  First off, unlike the original eBay and Amazon marketplace models,[1] Redbubble does not advertise, offer for sale, or sell any used products.  Rather, every design offered for sale on the Redbubble website is newly created.  In other words, unless Redbubble obtains a license, if there is a T-shirt with the Los Angeles Dodgers logo on the Redbubble website, there is no question whether the product is a used authentic product or a counterfeit; it is a counterfeit.  Therefore, when Redbubble optimizes its search engine (and third-party search engines like Google) to direct persons looking for a "Brandy Melville T-shirt" to a catalogue of Brandy Melville designs (including those with the Brandy Melville name and logo) on the Redbubble website, Redbubble is not connecting a seller with a buyer interested in an authentic, used Brandy Melville T-shirt.  Rather, Redbubble is counterfeiting.

---

[1]   We intentionally specify the "original" eBay and Amazon marketplace models because the models of those websites has evolved, for example with Amazon in particular now distributing and selling its own products with appropriate licenses to do so to the extent such distributions and sales implicate the intellectual property of others.

Second, in the original eBay and Amazon marketplace models, no "eBay" or "Amazon" products were being sold.  In contrast, the record shows that consumers on the Redbubble website are looking for and purchasing "Redbubble products."  And if the buyer has a question about the product, he contacts Redbubble.  And when the buyer is wondering where his product is, he contacts Redbubble.  And when the buyer receives the product, the product is wrapped in Redbubble packaging with a Redbubble tag.  And if the buyer does not like the product, he returns it to Redbubble.  And when Redbubble receives money from the buyer, Redbubble (*i.e.*, the seller) pays sales tax.  It would come as quite a shock for anyone who has purchased a product from Redbubble to hear Redbubble claims it has nothing to do with that process at all.

The jig is up.  Redbubble can no longer, out of one side of its mouth, cast itself as a "passive intermediary"—among other things, blaming its software for "automatically" performing just as Redbubble programmed it to perform—for purposes of avoiding liability for trademark infringement while, out of the other side of its mouth, disclosing to its investors and governmental authorities that (a) it is "the principal in the sale" of its products, (b) the manufacturers of its products are its "agent[s]," and (c) it paid taxes in California because that is the location of the seller (*i.e.*, itself).   (SUF[2] ¶¶ 114-118.)   Redbubble sold counterfeit Brandy Melville products as a matter of law.  At the very least, there are issues of fact as to Redbubble's soliciting the design of, manufacturing, advertising, offering for sale, and selling the Brandy Melville counterfeits.  Redbubble's Motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Brandy Melville and Its Trademarks

As detailed in its pending motion for partial summary judgment and

---

[2]  Brandy Melville's Response to Redbubble's Statement of Uncontroverted Facts is the "SDF," and Brandy Melville's Additional Uncontroverted Facts therein— including the facts it incorporates by reference from its Statement of Uncontroverted Facts (Dkt. No. 36-1)—is the "SUF."

accompanying separate statement (Dkt. Nos. 36, 36-1), Brandy Melville is a popular fashion and lifestyle brand that has been known in the minds of the consuming public for selling high-quality, unique, and trendy clothing. (SUF ¶¶ 1, 6, 11-13.) Brandy Melville owns several registered trademarks, including the distinctive "Brandy Melville Mark," "LA Lighting Mark," and "Brandy Flag Mark."[3] (*Id.* ¶ 24-28; SDF ¶ 53.) The Brandy Melville Mark bears the Registration No. 5,238,856:

(*Id.* ¶¶ 24, 25.) The LA Lightning Mark (below left) bears the Registration No. 5,748,883, and the Brandy Flag Mark (below right) Registration No. 5,373,397:

(*Id.* ¶¶ 26-30, 203; SDF ¶ 53.) Brandy Melville also owns several unregistered trademarks for its name and graphic logos. (SDF ¶ 56; SUF ¶ 204.) Brandy Melville sells its goods online and in retail locations nationwide. (SUF ¶ 6.)

**B. <u>Redbubble and Its Infringement of Brandy Melville's Trademarks</u>**

Redbubble owns and operates a website (www.redbubble.com) that solicits users to upload designs—often, as here, counterfeits—that Redbubble then emblazons on products for customers to purchase. (SUF ¶¶ 36-38, 201.) All Redbubble sales are made on its website. (*Id.* ¶¶ 39-40, 52.) Redbubble does not sell used products and its products are created after a customer makes a purchase on the Redbubble website. (*Id.* ¶ 205; SDF ¶ 11.) As one Australian court concluded, Redbubble's infringement-dependent business model "controls ***every step*** of the transactional engagement between [a user] and a buyer." (SUF ¶ 130 (emphasis added).)

**Solicitation.** Redbubble solicits infringing designs from users (sometimes

[3] Neither the Brandy Flag Mark nor Brandy Melville's unregistered trademarks are the subject of Brandy Melville's pending partial summary judgment motion, but the evidence that will be adduced at trial will show that Redbubble has infringed them.

1  called "artists") and maintains them on servers for which it pays.  (*Id.* ¶¶ 37, 41, 43-

2  47, 201; SDF ¶ 33.)  The designs are public on Redbubble's website.  (SUF ¶ 42.)

3        **Advertising and Offer to Sell.**  On its website, Redbubble advertises that a

4  design was "Designed by"—*not "Advertised by," "For Sale by," or "Sold by"*—the

5  user,[4] superimposes the design on Redbubble stock photos of products that Redbubble

6  manufactures, discloses "Features" that are consistent across Redbubble products, and

7  includes keyword tags that contain identifying terms (*e.g.*, "Brandy Melville").  (*Id.*

8  ¶¶ 42-47, 202, 206.)  Customers can search and browse the solicited designs on the

9  Redbubble website and purchase products that Redbubble will then manufacture.  (*Id.*;

10  *see also* SDF ¶ 6.)  Redbubble also advertises these designs on third-party websites,

11  including Google and YouTube, through advertising space that it purchases.  (SUF

12  ¶¶ 104-107, 165, 172, 207.)  These advertisements are entirely digital and feature

13  designs available on Redbubble's website.  (*Id.*; *see also id.* ¶ 102.)  ▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  (*Id.* ¶¶ 103, 163-164.)

15        **Orders and Sales.**  When a customer purchases a product on Redbubble's

16  website, Redbubble collects the customer's payment, sends the order information to

17  a "partner" fulfiller, and holds the user's portion of the sale until the order is shipped.

18  (*Id.* ¶¶ 55-69, 179-180; SDF ¶¶ 6, 11.)  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮▮▮▮▮▮▮  (SUF ¶ 63; SDF ¶ 9.)  Redbubble, alone, selects the

20  fulfiller for the order.  (SUF ¶¶ 61-70; SDF ¶ 9.)  ***Redbubble also collects and remits***

21  ***the sales taxes, is the principal in the sale, and acts as the fulfiller's principal.***  (SUF

22  ¶¶ 71, 114-118; SDF ¶¶ 6, 11.)  The retail price that the customer pays includes a

23  "service fee" that Redbubble charges for every transaction.  (SUF ¶¶ 48-51.)

24  Redbubble *does not* get paid unless a sale is made.  (*Id.* ¶ 208.)  All communications

25  related to the transaction go through Redbubble.  (*Id.* ¶¶ 53-60, 69-72, 78-79.)

26        **Manufacturing.**  Redbubble manufactures the products ordered on its website

27

28  [4]  The Motion repeatedly suggests that the Redbubble website refers to users as the
"Seller" (*e.g.*, Mot. at 4); but the website does not.  It displays the user's username.

1  through a network of fulfillers that it has "arrangements" with and it "partner[s] with
2  [them] to produce [its] goods." (*Id.* ¶¶ 82, 94; SDF ¶ 4.) Redbubble ensures the goods
3  they create "fit to the Redbubble standard" by, *inter alia*, having the "quality manager
4  physically visit every single fulfiller and perform quality controls at the location of
5  printing to make sure that . . . the printing performs to our expectations." (SUF ¶¶ 83,
6  89; SDF ¶ 5.) These requirements include using ethically sourced materials. (SUF
7  ¶ 209.)

8      **Delivery and Payment.** The Redbubble products are delivered to the customer
9  with Redbubble-themed packaging, stickers, and tags. (*Id.* ¶¶ 74-76; SDF ¶ 30.)
10  Redbubble arranges for the products to be delivered per agreements it has with
11  shippers and ensures the user and the fulfiller get paid from the payment Redbubble
12  processed. (SUF ¶¶ 55, 73, 77-80; SDF ¶ 4.) Redbubble also is ▇▇▇▇▇▇▇▇▇▇
13  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (SUF ¶ 78-79, 90-95.)

14      C.   <u>**Redbubble's Infringement of Brandy Melville's Trademarks**</u>

15      Redbubble has advertised on its website and third-party websites, offered for
16  sale, and sold products that infringe Brandy Melville's registered and unregistered
17  trademarks. (*E.g.*, *id.* ¶¶ 160-162, 202, 210-211.) For example, the two products
18  below (left and center) incorporate the Brandy Melville Mark and LA Lightning
19  Mark, and the "los angeles 1984" sticker incorporates the designation,
20  www.brandymelvilleusa.com (*i.e.*, Brandy Melville's web domain).









27  Redbubble is notorious for intellectual property infringement, which is plainly
28  obvious from browsing the Redbubble website (*Id.* ¶¶ 127-130, 149, 151, 193, 212).

III.   **ARGUMENT**

Redbubble's Motion must be denied in its entirety.  Redbubble is Redbubble: it is not Amazon, or eBay, or a "global online marketplace platform."  (*Cf.* Mot. at 1.) It is a counterfeiter that, on this record, is liable for direct infringement.  Its disclosures also concede it is liable for contributory and vicarious infringement.  And the state law claim is not immunized by the CDA because, *inter alia*, Redbubble sells infringing goods.

### A.   Redbubble Cannot Escape Liability or Statutory Damages for Its Counterfeiting and Direct Infringement.

Claiming that the Court should accept its implausible self-characterization as just another "eBay" or "Amazon Marketplace," the Motion raises **only one issue** with respect to the direct trademark infringement claim:  Redbubble's "use" of Brandy Melville's trademarks.  (Mot. at 9; *see also id.* at 10-13.)  This argument fails.[5]

### 1.   The Motion Fails Because Redbubble Counterfeits Brandy Melville Products.

According to the Motion, Redbubble's conclusion—that it did not "use Brandy Melville's trademarks"—only follows if specific "principles" are applied.  (Mot. at 11 ("[a]pplying these principles here").)  These "principles" include Brandy Melville satisfying a new, unprecedented requirement for a trademark infringement claim: "volitional conduct" causation.  Putting aside that Redbubble's conclusion has not been applied in the trademark context, such a requirement simply cannot apply where—as here—Redbubble itself "uses" Brandy Melville's trademarks at every step of the commercial transaction and thus engages in counterfeiting.

The Motion concedes Redbubble's new, proposed requirement comes from

---

[5]  Redbubble does not dispute the other elements of this claim (*e.g.*, Brandy Melville owns protectable trademarks and there is a likelihood of confusion).  *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072-73 (C.D. Cal. 2004) (identifying elements of trademark infringement claim) (collecting cases).

"copyright infringement opinions."[6] (Mot. at 11.) Redbubble points to no authority—let alone from the Ninth Circuit—applying such requirement to trademark claims. (Mot. at 11 (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017)).)[7] This is unsurprising, as trademark infringement claims have no such element.

And even if such a requirement could be read into the law, it is satisfied here: the record confirms that Redbubble's claim to be a passive "transactional intermediary" or non-"volitional" "online marketplace[ ]" (Mot. at 12-13) is baseless. Redbubble is far more. Even though "the website users actually craft the designs that incorporate the [trademarks]," *see H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1030 (E.D. Wis. 2018), it is Redbubble that: vigorously advertises, offers for sale, and sells goods bearing the marks on its website; advertises the goods on third-party websites; has a principal-agent relationship with the fulfillers that create the products to Redbubble's quality standards; decides who fulfills the order and provides them with the order information; dictates the product's base cost, charges a service fee, and decides when the user gets paid; is the customer's point of contact for the sale, including for cancellations, refunds, and returns; and arranges for the order to be shipped to the customer with Redbubble-themed packaging and tags. (*E.g.*, SUF ¶¶ 36-95, 102-197, 201-202; SDF ¶ 16.) But for Redbubble, there is no product and none of this occurs. (*Cf.* Mot. at 13 (citing *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. Ct. App. 2012)).)[8]

---

[6]  Whether this requirement even applies to copyright claims is in question. *See Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 456 (2014) (Scalia, J., dissenting).

[7]  Despite being rooted in different statutes, Redbubble argues trademark and copyright infringement claims should have the same elements because they are both "tort" claims. (Mot. at 11.) Per this logic, a trademark infringement plaintiff should also be required to prove Redbubble touched Plaintiff "with the intent to harm or offend plaintiff." *So v. Shin*, 212 Cal. App. 4th 652, 669 (2013) (tort of battery).

[8]  The remaining cases cited in the Motion are inapposite. (Mot. at 12.) eBay was not

These same facts also demonstrate that Redbubble is not an intermediary because it gives the customer every impression that the infringing product comes from Redbubble. *Johnson & Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*, No. 08-cv-1297, 2014 WL 12558573, at \*19 (E.D.N.Y. Apr. 4, 2014) (defendant was not a "transactional intermediary" where customers "had no knowledge about the source of the [infringing products] other than that they were acquired from [defendant]"); *SunFrog*, 311 F. Supp. 3d at 1030 (defendant was "actively involved in the infringing conduct"). Redbubble's website states that individual designs were "Designed by" users, not "Sold by" them. (SUF ¶ 206.) Furthermore, as the moving party, Redbubble is obligated to—but has not—put forward evidence of what an "analogous" intermediary (*e.g.*, Amazon) does and how it is like or unlike Redbubble. In fact, Redbubble's own expert averred that Amazon and other "large marketplaces" are "in very different businesses than Redbubble." (SUF ¶ 213.)

Redbubble cannot sidestep its "use" by blaming or distancing itself from its partners. "It is no defense to trademark infringement that someone else made the product that bears the infringing mark." *SunL Grp. (L.A.), Inc. v. Seaseng, Inc.*, No. 07-cv-807, 2007 WL 4144992, at \*3 (C.D. Cal. Sept. 14, 2007).[9] Redbubble also cannot divorce itself from its software, claiming the software does the infringing on

_____

liable in *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010), because it used Tiffany's mark to describe "genuine Tiffany goods offered for sale on its website"; here, Redbubble does not offer genuine Brandy Melville goods. (SUF ¶ 214.) And *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. 13-cv-1932, 2015 WL 4394673, at \*12 (W.D. Wash. July 16, 2015), turned on the lack of "evidence of a valid, enforceable mark entitled to protection"; here, Redbubble does not challenge the protectability of Brandy Melville's trademarks. (Mot. at 9-13 (arguing "use").)

[9] *See also El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986) ("Even though Shoe World was involved neither in the manufacture nor the affixing of the CANDIE'S trademark to the shoes, its sale of the shoes was sufficient 'use' for it to be liable for the results of such infringement . . . ."); *C & L Intern. Trading Inc. v. Am. Tibetan Health Institute, Inc.*, No. 13-cv-2638, 2015 WL 1849863, at \*5 (S.D.N.Y. Apr. 22, 2015).

1  its own.  *See SunFrog*, 311 F. Supp. 3d at 1038 (liability where defendant infringed

2  through its software's "entirely automated" process).  ████████████████

3  ████████████████████████████████████████████

4  ████████████████  (SUF ¶¶ 36, 41, 63; SDF ¶ 9.)

5       Instead, as detailed in Plaintiff's pending motion, what Redbubble does is "use"

6  Brandy Melville's registered trademarks to counterfeit.  "Use" includes "the sale,

7  offering for sale, distribution, or advertising of" goods bearing the infringing mark,

8  as well as the application of an infringing mark on any "advertisements intended to

9  be used in commerce."  15 U.S.C. § 1114(1)(a), (1)(b).  Under the Lanham Act's

10  "broad definition" of "use" (4 *McCarthy on Trademarks and Unfair Competition*

11  § 25:26 (5th ed.)), Redbubble "uses" the trademarks in several respects, each of which

12  requires denying the Motion.  (*E.g.*, SUF ¶ 44-47, 159-162, 176-180, 202; SDF ¶ 10.)

13       **Redbubble Commissions the Design and Manufacturing of Its Counterfeit**

14  **Goods.**  Redbubble owns and operates the website where users upload counterfeit

15  designs and customers purchase Brandy Melville counterfeits.  (SUF ¶ 36-38, 201;

16  SDF ¶ 9.)  Redbubble is "the party primarily responsible for" the sale of counterfeit

17  goods because it "controls a substantial part of the process."  (SUF ¶¶ 114, 115; SDF

18  ¶ 29.)  It provides "payment processing, customer services, third party product

19  manufacturing," and "arrange[s] for the deliver[y] of the physical product."  (SUF

20  ¶¶ 176, 179-180; SDF ¶ 9.)  Redbubble also decides which one of its "global network

21  of fulfillers"—whom it "partner[s] with to produce [its] goods"—creates the

22  counterfeits, and it ensures these knockoffs "fit to the Redbubble standard" by, *inter*

23  *alia*, having the "quality manager physically visit" each fulfiller to ensure "the

24  printing performs to [its] expectations."  (SUF ¶¶ 61-70, 82, 85, 89; SDF ¶ 67.)

25       **Redbubble Advertises Its Counterfeits Outside Its Website.**  Redbubble

26  purchases space on third-party websites for advertisements to direct customers to

27  Redbubble's counterfeit designs.  (SUF ¶¶ 104-108; SDF ¶ 7.)  These advertisements

28  promote designs that Redbubble offers to put on its counterfeits.  (SUF ¶¶ 104-108,

159-162, 202.)  *See Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1362 (S.D. Fla. 2009) ("use of a trademark to draw consumers to a particular website not belonging to the trademark holder constitutes use").  ██████████████ ████████████████████████████████████████████ and uses the Brandy Melville name in Google advertisements.  (SUF ¶ 103, 164-165.)  This all amounts to use.  *E.g.*, *SunFrog*, 311 F. Supp. 3d at 1030 ("[Defendant] vigorously advertised and offered for sale goods bearing those marks."); *Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*, 452 F. Supp. 429, 443 (W.D.N.Y. 1978).[10]

**Redbubble Advertises and Offers for Sale Its Counterfeit Goods on Its Website.**  Redbubble advertises and offers for sale counterfeit Brandy Melville products on its website.  (SUF ¶¶ 44, 160-162, 202.)  Redbubble maintains the designs on servers it pays to use.  (*Id.* ¶ 41.)  It also promotes the products' characteristics and features in order to market the counterfeit designs.  (*Id.* ¶¶ 43-47, 202.)  *SunFrog*, 311 F. Supp. 3d at 1029 (finding "use" where defendant "maintains the [ ] database" that housed the user-uploaded designs).  Such "[a]n offer to sell [infringing goods] without more will suffice to establish liability."  *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997); *see also SAS v. Sawabeh Info. Servs. Co.*, No. 11-cv-4147, 2013 WL 12126742, at *3 (C.D. Cal. Oct. 8, 2013) (same).

**Redbubble Profits From Selling Its Counterfeit Goods.**  Redbubble sells the Brandy Melville counterfeits.  Redbubble's customers pay for the counterfeits and select a delivery option on the website.  (SUF ¶¶ 42-43, 48, 55, 108, 114, 115, 130, 176.)  ████████████████████████████████████████████████████ ██████████████████ (SUF ¶¶ 56-57 (emphasis added).)  When the product is shipped, ████████████████████████████████████████████████████

---

[10]  *See also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1058 (N.D. Cal. 2010) ("displaying the mark in the text and in the headings of sponsored links on internet search engines to advertise their [products]"); 4 *McCarthy on Trademarks and Unfair Competition* § 25:26 (5th ed. 2020) ("[M]erely advertising an infringing mark itself is an act of infringement, apart from any manufacturing or sale.").

1    ████████████ (SUF ¶ 79; *see also* SUF ¶¶ 93-95.)  Indeed, Redbubble has disclosed

2    to its shareholders that it is "principal in the sale" because, *inter alia*, it is "the party

3    primarily responsible for satisfying the performance obligation."  (SUF ¶¶ 114, 115.)

4          Redbubble also collects and remits sales tax to the State of California for each

5    transaction.  (*Id.* ¶ 116; SDF ¶ 6.)  In California, "every retailer engaged in business

6    in this state and ***making sales of tangible personal property*** . . . shall, at the time of

7    making the sales . . . collect the tax from the purchaser[.]"  Cal. Rev. & Tax Code

8    § 6203(a) (emphasis added).  And "[a]n order . . . to buy goods for prompt or current

9    shipment shall be construed as inviting acceptance either by a prompt promise to ship

10   or by the prompt or current shipment of conforming or nonconforming goods[.]"  Cal.

11   Com. Code § 2206(1)(b).  This is another independent basis to hold Redbubble liable.

12   *GMA*, 765 F. Supp. 2d at 463 ("[D]irect sale of an infringing product is sufficient to

13   create liability.").  Redbubble cannot nullify its use of the trademarks by contending

14   it does not actually "sell" the infringing products[11] or touting that it does not hold title

15   of, or possess, the infringing products.[12]

16          **Redbubble Makes the Counterfeits.**  Redbubble manufactures the counterfeit

17   products through its partners.  (SUF ¶¶ 82-89, 177.)  Redbubble "is acting as a

18   principal with respect to fulfillers as opposed to as an agent," and this relationship

19   allows "an agent [to] bind the principal to a contract."  (*Id.* ¶¶ 117, 118; SDF ¶ 11.)

20   Redbubble also exercises joint and substantial control over the products that its

21   fulfillers create.  (*E.g.*, SUF ¶¶ 114, 115, 130.)  It tracks "different metrics" that

22

23   ――――――――――――
     [11] *E.g.*, *BMW of N. Am., LLC v. Barreira*, 633 F. App'x 882, 884 (9th Cir. 2015)
24   (Lanham Act violation even though infringer "did not actually *complete* any sales");
     *Tommy Bahama Grp., Inc. v. Sexton*, No. 07-cv-6360, 2009 WL 4673863, at *5 (N.D.
25   Cal. Dec. 3, 2009) ("evidence of an actual sale" not required).

26   [12] *E.g.*, *Levi*, 121 F.3d at 1312 ("[The Lanham Act] does not require that the defendant
     be in possession of counterfeit goods at the time of the offer[.]"); 4 *McCarthy on*
27   *Trademarks and Unfair Competition* § 25:26 (5th ed.) ("[T]he defendant need not be
     proven to be in possession of infringing or counterfeit goods at the time of the offer
28   to sell or that the defendant made an actual sale.").

"measure every single step of the experience" so that Redbubble can "take action in the field whether it's with a better carrier or better printing partners." (SUF ¶ 88; SDF ¶ 67.) Redbubble even has "our quality manager physically visit every single fulfiller and perform quality controls at the location of printing to make sure . . . the printing performs to our expectations." (SUF ¶ 89.) At bottom, Redbubble makes "sure that all Redbubble products fit to the Redbubble standard." (*Id.* ¶ 85.) Redbubble's control is no secret: the products are packaged and delivered to customers in Redbubble-branded materials, and any returns of the products go to Redbubble. (*Id.* ¶¶ 74-76, 91, 93-95.)

### 2. *Ohio State* Does Not Advance Redbubble's Case.

Redbubble claims that it "recently prevailed on summary judgment on a virtually identical direct infringement claim" in *The Ohio State Univ. v. Redbubble, Inc.*, 369 F. Supp. 3d 840 (S.D. Ohio 2019). (Mot. at 12.) Not so. In *Ohio State*, a public university claimed trademark rights in the university's name and images and asserted claims of direct trademark infringement against Redbubble. 369 F. Supp. 3d at 841-42. The plaintiff moved for summary judgment, "admittedly very early" and without taking any depositions (SUF ¶ 215), arguing Redbubble used the trademarks by selling infringing products: the plaintiff did not advance claims—as Brandy Melville has here—for counterfeiting arising out of solicitation, offering for sale, and advertising (*see* Dkt. No. 36 at 9-12). *Cf.* 369 F. Supp. 3d at 845 ("Redbubble contends that it does not use Ohio State's trademarks . . . because it is not the 'seller' of the goods."). Nor did the *Ohio State* plaintiff raise contributory and vicarious infringement claims. *See id.* at 842. The district court held that, "on these facts" and under Sixth Circuit precedent, Redbubble was not a seller because, between being an auction house and a company that "manufacture[s] and ship[s] infringing products to the customer," Redbubble was "closer" to an auction house. *Id.* at 845-46. The case is now on appeal to the Sixth Circuit. *The Ohio State Univ. v. Redbubble Inc.*, No. 19-3388 (6th Cir.).

The *Ohio State* decision is not persuasive in this case.  Putting aside the dispositive reality that the claims in the *Ohio State* case were different (and Redbubble conceded liability on the contributory liability claim that Brandy Melville asserts here (SUF ¶ 224)), the district court evaluated only one form of "use" under the Lanham Act and did not evaluate the several other forms that Brandy Melville has proved in this case.  (*Id.* ¶ 216.)  *See also* 369 F. Supp. 2d at 845.  Also, the district court's decision was made on an incomplete record.  *See id.*  (SUF ¶¶ 215-218.)  In fact, the record was so deficient that Redbubble's counsel had to rely on facts outside the record to make his oral argument before the Sixth Circuit.  (SUF ¶ 217; *see also id.* ¶ 218 ("The factual record was incomplete" with respect to "whether Redbubble acted as a 'seller'" and "the degree to which Redbubble advertises or encourages advertising of the allegedly infringing products.")  Here, there is evidence that, *inter alia*, Redbubble is the principal of and partners with its fulfillers, is the "principal in the sale," and "controls a substantial part of the process and is construed to be the party primarily responsible for satisfying the performance obligation." (*Id.* ¶¶ 82-89, 114-118; SDF ¶ 6.)  In other words, this Court has the evidence that the Sixth Circuit panel found lacking.[13]

### 3. Because Redbubble Is a Counterfeiter, Statutory Damages are Available.

Redbubble claims that "Brandy Melville cannot establish the elements of trademark counterfeiting" (Mot. at 16), but this, too, is incorrect.[14]

*First*, even without a showing of willfulness, statutory damages are available for each counterfeit mark "per type of goods or services sold, offered for sale, or distributed[.]"  15 U.S.C. § 1117(c)(1).  Willfulness simply increases the amount of

---

[13] Another court that actually had evidence—*e.g.*, testimony from Redbubble—about the details of Redbubble's business held unequivocally that Redbubble is as directly involved in the sale of Redbubble products as one could imagine.  (SUF ¶ 130.)

[14] Redbubble's meritless claim that Plaintiff did not comply with its discovery obligations (Mot. at 16 n.4) will be appropriately briefed in motions *in limine*.

statutory damages that may be awarded.  It is not required to receive such damages.

*Second*, Redbubble is incorrect that it did not engage in counterfeiting of the types of products for which Brandy Melville's marks are registered.  Redbubble's Motion only discusses products Redbubble *sold* that bear the Brandy Melville Mark, LA Lighting Mark, and Brandy Flag Mark.  It lacks mention of products Redbubble *offered for sale*.  (*See* Mot. 16-20.)  And for good reason:  Redbubble's own documents—which they **never** produced in this litigation (SUF ¶ 219)—leave no doubt that Redbubble offered to sell several counterfeit products bearing the Brandy Melville Mark, LA Lighting Mark, and Brandy Flag Mark.  For example, Plaintiff registered the LA Lightning Mark on May 14, 2019, and Redbubble offered for sale counterfeit "T-shirts, tank tops or sweatshirts" bearing the LA Lightning Mark on November 16, 2019.  (*Id.* ¶¶ 26, 159-161, 220; *see also* SDF ¶ 7.)  Brandy Melville also places the Brandy Melville Mark—which was registered on July 11, 2017 and protects clothing—on its apparel, and the record confirms that Redbubble offered for sale counterfeit clothing bearing the mark on, *inter alia*, April 28, 2020.  (SUF ¶¶ 24, 221.)  Redbubble also offered to counterfeit signs and other pieces of furniture and home goods bearing the Brandy Melville Mark.  (*Id.* ¶¶ 32, 160, 162.) And Redbubble concedes that, after the Brandy Flag Mark was registered on January 9, 2018, Redbubble offered for sale goods bearing the mark.  (*Id.* ¶¶ 203, 222; SDF ¶ 64.)

*Finally*, contrary to Redbubble's averments, the question of whether Brandy Melville is entitled to more substantial statutory and treble damages (15 U.S.C. § 1117(b), (c)(2)) is also a triable issue.  Even "'[w]illful blindness"—which is less than what Redbubble has engaged in here—"is equivalent to actual knowledge for purposes of the Lanham Act" and results in liability for statutory and treble damages. *Tiffany*, 600 F.3d at 109-10 (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992)); *see also Levi Strauss & Co. v. Diaz*, 778 F. Supp. 1206, 1208 (S.D. Fla. 1991) ("Willful blindness is knowledge enough" and "renders [defendant] liable for treble damages and attorneys' fees."); *Symantec*

1    *Corp. v. CD Micro, Inc.*, 286 F. Supp. 2d 1278, 1281-82 (D. Or. 2003).

2         Redbubble directly controls and monitors its website that serves as a hotspot

3    for pervasive and ongoing trademark infringement. (*E.g.*, SUF ¶¶ 36-42, 49-50, 109-

4    113, 130, 132, 153, 200, 212.) ██████████████████████████████

5    ██████████████████████████████████████████████████████

6    ████████████████████████████ (SUF ¶ 223.)[15] Redbubble cannot create

7    an infringement machine, profit from it, and then claim ignorance. *See Shalabi*, 352

8    F. Supp. 2d at 1073 ("[I]gnorance is no defense to violations of the Lanham Act.").

9    On this record, this Court cannot hold, as a matter of law, that Redbubble's

10   counterfeiting was not intentional or willful.

11        **B.    <u>Redbubble Is Liable For Contributory Infringement.</u>**

12        The undisputed facts also confirm that Redbubble cannot skirt liability for its

13   contributory trademark infringement as a matter of law.  Redbubble has "continued

14   to supply its services to one who it knew or had reason to know was engaging in

15   trademark infringement" and it "had '[d]irect control and monitoring of the

16   instrumentality used by a third party to infringe' [Plaintiff's] marks." *Louis Vuitton*

17   *Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011) (defendants

18   provided and operated servers and Internet services for infringing websites).

19   Redbubble's counsel conceded to the Sixth Circuit:  "To the extent Redbubble has a

20

21   _____

     [15]  Redbubble's contention that Brandy Melville has not cooperated is laughable and

22   unsupported. (Mot. at 8.)  Brandy Melville gave Redbubble notice of its infringement

23   of the Brandy Melville Mark on May 14, 2018, but that mark was still on Redbubble's
     website in September 2018.  (SUF ¶¶ 44, 45, 170.)  Brandy Melville has brought

24   several designs and instances of infringement to Redbubble's attention, and yet
     Redbubble was still selling counterfeits of the LA Lightning Mark in April 2020—a

25   year after this litigation started.  (*Id.* ¶¶ 159-161, 171, 172, 202; SDF ¶ 7.) ██████

26   ████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████

28   █████████████████ (SUF ¶¶ 174, 199.)

role, the role is as a facilitator, and under the law, as set forth in *Coach*, which set forth these distinctions, to the extent there might be liability as a facilitator, it's under a doctrine of contributory infringement."  (SUF ¶ 224.)  Redbubble is judicially estopped from denying liability as a contributory infringer in this case.  *E.g.*, *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).

The Sixth Circuit's decision in *Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013), is instructive here.  The *Coach* defendant provided booths to vendors that it knew or had reason to know were engaging in trademark infringement; and although the defendant received notice and was raided by law enforcement, he continued to rent space to vendors he knew, or should have known, were selling infringing products.  *Coach*, 717 F.3d at 503.  Like Redbubble does in the Motion, the *Coach* defendant relied on *Tiffany* to argue that he could not be contributorily liable because he responded reasonably to the notice of infringing activity by, *inter alia*, attempting to notify vendors that selling counterfeits was prohibited.  *Id.* at 504-05.  But the *Coach* court rejected this argument because, unlike eBay in *Tiffany*, the defendant had actual knowledge that the infringing activity was occurring for a lengthy period of time and knew that certain vendors were selling counterfeit products.  *Id.* at 504.  The defendant responded to the infringement with only "ostrich-like practices," continuing to supply resources to vendors with the knowledge of, and willful blindness towards, their ongoing infringing activities.  *Id.* at 505.

Much like *Coach*, Redbubble has engaged in "ostrich-like" practices of willful blindness.  The Redbubble website is a hotbed for trademark infringement.  (SUF ¶¶ 44-47, 148-151, 160-162, 202, 212.)  Redbubble regularly receives take-down notices from intellectual property owners, but fails to timely remove infringing designs and ██████████████████████████████████████████ ████████████████  (*E.g.*, *id.* ¶¶ 125-127, 131, 135-145, 152-153, 170-174, 194-195.)  Redbubble also embraces infringing designs on its website, ***actively discouraging users from reporting infringement*** and allowing repeat offenders to continue to use

1  the website.  (*Id.* ¶¶ 121-123, 142, 225-227.)  Whereas eBay took substantial, active

2  steps to find infringing works, Redbubble "generally [does not] go looking for similar

3  [infringing] works to remove from the marketplace."  (*Id.* ¶¶ 121, 144.)  And in

4  contrast to the millions of dollars, approximately 200 individuals, and software eBay

5  devoted to find and remove infringing products, Redbubble uses only five people to

6  handle takedown notices and ████████████████████████  (*Id.* ¶¶ 136, 153.)

7       Further, ███████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████  (SUF ¶ 223.)  And many of the infringing designs on the

10  Redbubble website contain keyword tags that contain identifying terms (*e.g.*, "Brandy

11  Melville") to distinguish it from Redbubble's other designs.  (*E.g.*, *id.* ¶¶ 149, 151,

12  160-162, 182, 202.) ██████████████████████████████████████████████

13  ████████  (*Id.* ¶¶ 182-189.)  Redbubble still does not moderate any of the counterfeit

14  Brandy Melville products.  (Mot. at 2 ("No Redbubble personnel . . . even viewed any

15  of the Accused Products prior to their sale.").)  Redbubble also does not timely

16  remove infringing designs on its website and has implemented a woefully deficient

17  policing practice.  (*E.g.*, SUF ¶¶ 127, 131, 152, 160-162, 170-174, 194, 195, 199,

18  202.)

19       But even more, Redbubble goes further than just looking the other way—as

20  was the case in *Coach*.  It solicits the creation of infringing products and then profits

21  from those sales by charging a service fee.  (*Id.* ¶¶ 37, 41-51, 57, 64, 66, 201; SDF

22  ¶ 65.) ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████  (SUF ¶¶ 163, 164.)  Redbubble runs

25  point on every transaction that occurs on its website, maintaining the point of contact

26  between the seller, buyer, and fulfiller.  (*E.g.*, *id.* ¶¶ 37, 39, 41-64, 66-72, 78-79.)  It

27  ████████████████████████████ offers them for sale on its website and controls which

28  fulfiller creates the product.  (*E.g.*, *id.* ¶¶ 41, 44-47, 82-89, 125-127, 148-151, 160-

162.)  Without Redbubble, there would be no infringing product and no wrongful advertising.  In fact, Redbubble has advertised, offered for sale, and counterfeits of the LA Lighting Mark, as recently as *April 2020*.  (*Id.* ¶¶ 160-161, 202; SDF ¶ 7.) Redbubble cannot be granted summary judgment on this record.

## C.  Redbubble Is Liable For Vicarious Infringement.

As detailed in Plaintiff's own pending motion, Redbubble is liable for vicarious trademark infringement.  (Dkt. No. 36 at 19-20.)  Redbubble and its fulfillers "'have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807-08 (9th Cir. 2007).  Three independent reasons warrant denying Redbubble's Motion.

*First*, Redbubble partners with the fulfillers who create the infringing products purchased on Redbubble's website—"It's actually really important for us to have a global network of fulfillers. *These are companies that we partner with to produce our goods*"—and Redbubble constantly reevaluates whether to select "better printing partners."  (SUF ¶¶ 82-89, 177 (emphasis added).)  Redbubble also serves as their principal for each transaction, and it "is acting as a principal with respect to fulfillers as opposed to as an agent."  (*Id.* ¶¶ 114, 115, 117, 118; SDF ¶ 68.)  Redbubble's averment that "[t]here is no evidence that Redbubble is a partner with the third-party manufacturers" is baseless. (Mot. at 15.)  Redbubble "work[s] really closely with [its] suppliers to make sure the product is suitable" and even sends its quality manager to "physically visit every single fulfiller and perform quality controls[.]"  (SUF ¶¶ 83, 89; SDF ¶ 68.)  In addition, Redbubble sends orders placed on the Redbubble website directly to its fulfillers, answers any questions that fulfillers may have about orders, and splits the payment with fulfillers.  (SUF ¶¶ 57, 70, 73.)  This partnership is further publicized through the fulfiller's use of Redbubble-themed tags and packaging for products purchased on the website.  (*Id.* ¶¶ 74-76.)  *Cf. Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1113 (C.D. Cal. 2008) (finding no

PLAINTIFF'S OPPOSITION TO DEFENDANT REDBUBBLE, INC.'S MOTION FOR SUMMARY JUDGMENT

partnership where defendants "do not deal directly with those [w]ebsite operators, do not receive money from them, and have no connection to them whatsoever").

*Second*, Redbubble has the authority to bind its fulfillers in transactions with third-parties, or vice versa.  Redbubble is the "principal with respect to fulfillers as opposed to as an agent," and it acts as the user's "agent specifically in relation to the sales transaction" of counterfeit designs and goods on the Redbubble website.  (SUF ¶¶ 117, 178; SDF ¶ 4.)  Redbubble and its partner fulfillers also share the proceeds of the sale from the same "Base Price" category.  (SUF ¶¶ 49, 73.)

*Third*, Redbubble cites **no evidence whatsoever** to support the conclusory statement that it "cannot be deemed to have the type of authority or joint control over any allegedly infringing products[.]"  (Mot. 15.)  This alone is fatal to the Motion.  The record actually confirms Redbubble exercises substantial control over infringing products:  the orders are made on Redbubble's website, Redbubble sends the order information to its partner fulfillers to manufacture, and arranges for the infringing products to be delivered to customers.  (*E.g.*, SUF ¶¶ 39, 57, 61-62, 77; SDF ¶ 5.)  Redbubble also works "really closely" with its suppliers "to design and develop" the infringing products and to ensure they "fit to the Redbubble standard."  (SUF 83-89.)

### D.  Brandy Melville's Unfair Competition Claim Is Viable.

Redbubble's only other argument is that Brandy Melville's unfair competition claim is not viable because it is barred by the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1).  (Mot. at 16.)  This is not true because Brandy Melville's claims are based on the manufacture and sale of infringing goods.  The CDA preempts a state law claim that "inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).  But "[l]iability for sales of a product do not . . . fall under the province of the CDA because such claims do not treat the defendants 'as the publisher or speaker' of third-party information."  *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 318 n.3 (D.D.C. 2011).  Where companies do more than just "provide[ ] the online

marketplace where third-parties [can] list and sell goods to customers" (*e.g.*, they actually are "distributors" of the goods), they "cannot rely on CDA immunity as a defense to plaintiffs' distributor-based claims." *Id.; see also Atari Interactive, Inc. v. SunFrog, LLC*, No. 18-cv-4949, 2019 WL 3804462, at *2 (N.D. Cal. Aug. 13, 2019); *accord also Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th Cir. 2008) (one who is "directly involved in the alleged illegality" is not entitled to CDA immunity).

The undisputed facts demonstrate Redbubble is not, as it claims, merely "an 'interactive computer service.'" (Mot. at 16.) Redbubble is "the principal in the sale" of products purchased on the Redbubble website. (SUF ¶¶ 114, 115; SDF ¶ 6.) It also is "the party primarily responsible for" the sale of counterfeit goods because it "controls a substantial part of the process." (*Id.*) Indeed, once a purchase is made on Redbubble's website, Redbubble decides which of Redbubble's "agent" fulfillers to use. (SUF ¶¶ 61, 64, 66, 68, 117.) Redbubble concedes that its fulfillers are "companies that we partner with to produce our goods" and that it "has a team of product developers whose job it is to make sure that all Redbubble products fit to the Redbubble standard." (SUF ¶¶ 82-85.) These fulfillers include Redbubble-branded hang tags, stickers, and packaging on the products sold on Redbubble's website. (SUF ¶¶ 74-76; SDF ¶ 30.) Further, all communications between the user, customer, and fulfiller go through Redbubble, and Redbubble handles the payment and arranges for the products to be delivered to the customers. (SUF ¶¶ 53-60, 69-73, 78-80.) On this record, the CDA does not preempt the state law claim.

## IV.    CONCLUSION

Accordingly, this Court should deny Defendant's Motion in its entirety.

/ / /
/ / /
/ / /
/ / /

1    DATED:  May 11, 2020                  BROWNE GEORGE ROSS LLP
2                                              Keith J. Wesley
                                               Ryan Q. Keech
3                                              Jason Y. Kelly
4
                                          By:       */s/ Keith J. Wesley*
5                                                   Keith J. Wesley
6                                          Attorneys for Plaintiff Y.Y.G.M. SA d.b.a.
                                           Brandy Melville
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28