# EXHIBIT 3

No. 19-3388

# In the
# United States Court of Appeals
## for the Sixth Circuit

THE OHIO STATE UNIVERSITY,

*Plaintiff-Appellant,*

v.

REDBUBBLE, INC.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Ohio at Columbus, No. 2:17-cv-01092.
The Honorable **Algenon L. Marbley**, Judge Presiding.

## BRIEF OF *AMICUS CURIAE*
## INTERNATIONAL TRADEMARK ASSOCIATION
## IN SUPPORT OF NEITHER PARTY

DAVID H. BERNSTEIN*
KATHRYN C. SABA
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
Tel. (212) 909-6696

*Counsel for Amicus Curiae*
*International Trademark Association*

*\*Counsel of Record*



COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER



## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae*
International Trademark Association ("INTA") states that it is not a publicly-held
corporation or other publicly-held entity.  INTA does not have any parent
corporation and no publicly-held corporation or other publicly-held entity holds
10% or more of INTA's stock.

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF AUTHORITIES .................................................................. iii

STATEMENT OF INTEREST OF *AMICUS CURIAE* ..........................................1

ARGUMENT ...............................................................................7

I.   The district court erred as a matter of law by failing to
     acknowledge that "use in commerce," pursuant to Section 32(1) of
     the Lanham Act, includes more than the mere act of selling goods. ........7

     A.   The sale of allegedly infringing goods is not a prerequisite to
          establishing "use in commerce" pursuant to Section 32(1). ............7

     B.   Other courts have held that activities beyond the sale of
          allegedly infringing goods are sufficient to establish "use in
          commerce." ...................................................................10

     C.   The district court's analysis of whether Redbubble "used in
          commerce" the Ohio State Trademarks was erroneously
          restrictive...................................................................13

II.  The district court erred as a matter of law by granting summary
     judgment on an incomplete factual record. ..............................16

     A.   The factual record was incomplete as it lacked sufficient
          detail material to the district court's determination of
          whether Redbubble acted as a "seller." ...........................17

     B.   The factual record was incomplete as it lacked sufficient
          detail on the degree to which Redbubble advertises or
          encourages advertising of the allegedly infringing products. .......24

CONCLUSION...............................................................................26

CERTIFICATE OF COMPLIANCE.......................................................28

CERTIFICATE OF SERVICE ............................................................29

## TABLE OF AUTHORITIES

**Cases**

*Affliction Holdings, LLC v. Utah VAP or Smoke, LLC*,
No. 18-4146, 2019 WL 4019914 (10th Cir. 2019) ....................................................5

*Am. Broadcasting Cos., Inc. v. Aereo, Inc.*,
573 U.S. 431 (2014)............................................................................................16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................20

*Born to Rock Design Inc. v. CafePress.com, Inc.*,
No. 10-CV-8588, 2012 WL 3954518 (S.D.N.Y. Sept. 7, 2012) ........................8, 20

*Children's Miracle Network v. Miracles for Kids, Inc.*,
No. 8:18-CV-01227, 2018 WL 8243998 (C.D. Cal. Dec. 6, 2018)........................25

*GMA Accessories, Inc. v. BOP, LLC*,
765 F. Supp. 2d 457 (S.D.N.Y. 2011) ....................................................... 12, 24, 27

*H-D U.S.A., LLC v. SunFrog, LLC*,
311 F. Supp. 3d 1000 (E.D. Wis. Apr. 12, 2018) ........................................... 21, 27

*In re Sones*,
590 F.3d 1282 (Fed. Cir. 2009).............................................................................12

*Ins. Co. of N. Am. v. Nw. Nat. Ins. Co.*,
494 F.2d 1192 (6th Cir. 1974) ...........................................................................6, 18

*Kennedy v. Silas Mason Co.*,
334 U.S. 249 (1948)............................................................................................18

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*,
453 F.3d 377 (6th Cir. 2006) ...................................................................... 8, 13, 19

*Lyons v. The Bilco Co.*,
No. 3:01-CV-1106, 2003 WL 22682333 (D. Conn. Sept. 30, 2003) ....................18

Ex. 3
Page 146

*Milo & Gaby LLC v. Amazon.com, Inc.*,
693 Fed. App'x 879 (Fed. Cir. 2017) ...................................................................22

*N. Amer. Med. Corp. v. Axiom Worldwide, Inc.*,
522 F.3d 1211 (11th Cir. 2008) ...........................................................................11

*Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) ................................................................. 10, 12, 14

*Nola Spice Designs, LLC v. Haydel Enters., Inc.*,
783 F.3d 527 (5th Cir. 2015) ..................................................................................5

*Ohio State Univ. v. Redbubble*,
No. 2:17-CV-01092 (S.D. Ohio Mar. 29, 2019)......................................... 14, 29

*Ohio State Univ. v. Skreened Ltd.*,
16 F. Supp. 3d 905 (S.D. Ohio 2014) .....................................................................7

*Propps v. 9008 Grp., Inc.*,
No. 03-71166, 2006 WL 2124242 (E.D. Mich. July 27, 2006)............................18

*Reed v. General Mills, Inc*.,
No. C19-0005-JCC, 2019 WL 2475706 (W.D. Wash. June 13, 2019) .................25

*Rescuecom Corp. v. Google Inc.*,
562 F.3d 123 (2d Cir. 2009)..................................................................... 10, 12, 16

*Sazerac Brands, LLC v. Peristyle. LLC*,
892 F.3d 853 (6th Cir. 2018) ..................................................................................5

*Sorensen v. WD-40 Co.*,
792 F.3d 712 (7th Cir. 2015) ..................................................................................5

*Taubman Co. v. Webfeats*,
319 F.3d 770 (6th Cir. 2003) ..................................................................................7

*Transamerica Corp. v. Moniker Online Servs., LLC*,
672 F. Supp. 2d 1353 (S.D. Fla. 2009) .................................................................11

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
888 F.3d 651 (4th Cir. 2018) ...................................................................5

*Wiley v. U.S.*,
20 F.3d 222 (6th Cir. 1994) ...................................................................20

*WNET, Thirteen v. Aereo*,
712 F.3d 676 (2d Cir. 2013)...................................................................16

**Statutes**

15 U.S.C. § 1114(1) (2005) ..................................................... 4, 7, 9, 17

15 U.S.C. § 1127 (2006) .........................................................................10

**Other Authorities**

EBAY, Registration No. 4,408,423 ........................................................25

Redbubble, Inc. (Aug. 31, 2019), https://www.redbubble.com ............15

REDBUBBLE, Registration No. 3,910, 313 .............................................25

REDBUBBLE, Registration No. 4,782,482 ..............................................24

REDBUBBLE, Registration No. 5,766,498 ..............................................25

**Rules**

Fed. R. App. P. 29 ....................................................................................1

Fed. R. Civ. P. 16 ....................................................................................6

Fed. R. Civ. P. 56 ..................................................................................17

Fed. R. Evid. 201 ...................................................................................25

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

Founded in 1878, INTA is a not-for-profit organization dedicated to the support and advancement of trademarks and related intellectual property concepts as essential elements of trade and commerce.  INTA has more than 7,200 member organizations from 191 countries.  Its members include trademark and brand owners, law firms, and other professionals who regularly assist brand owners in the creation, registration, protection, and enforcement of their trademarks.  All of INTA's members share the goal of promoting an understanding of the essential role that trademarks play in fostering informed decisions by consumers, effective commerce, and fair competition.

INTA's members are frequent participants in litigations brought under the Lanham Act, as both plaintiffs and defendants and, therefore, are interested in the development of clear, consistent, and equitable principles of trademark, advertising, and unfair competition law.  INTA has substantial expertise and has

---

[1] Pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure, *amicus curiae* certifies that all parties have consented to the filing of this brief. Additionally, in accordance with Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, *amicus curiae* states that this brief was authored solely by INTA and its counsel, and no part of this brief was authored by counsel to a party.  No party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than *amicus curiae*, its members, and its counsel made such a monetary contribution to its preparation or submission.

1

participated as *amicus curiae* in numerous cases involving significant Lanham Act

issues.[2]

_____

[2]    Cases in which INTA has filed *amicus* briefs include:  *Iancu v. Brunetti*, 588 U.S. __, 139 S. Ct. 2294 (2019); *Mission Prod. Holdings, Inc. v. Tempnology*, LCC, 587 U.S. __, 139 S. Ct. 1652 (2019); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. __, 139 S. Ct. 881 (2019); *Matal v. Tam*, 582 U.S. __, 137 S. Ct. 1744 (2017); *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418 (2015); *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. __, 135 S. Ct. 1293 (2015); *Pom Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014); *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013); *KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003); *Moseley v. V. Secret Catalogue, Inc.*, 537 U.S. 418 (2003); *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000); *Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627 (1999); *Dickinson v. Zurko*, 527 U.S. 150 (1999); *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281 (1988); *Christian Louboutin S.A. v. Yves Saint Laurent Am.*, 696 F.3d 206 (2d Cir. 2012); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958 (9th Cir. 2011); *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158 (9th Cir. 2011); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009); *ITC Ltd v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007), *certified questions accepted*, 870 N.E.2d 151 (N.Y. 2007), *cert. denied*, 552 U.S. 827 (2007), *certified questions answered*, 880 N.E.2d 852 (N.Y. 2007), *later proceedings*, 518 F.3d 159 (2d Cir. 2008); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252 (4th Cir. 2007); *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005); *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259 (2d Cir. 1996); *Preferred Risk Mut. Ins. Co. v. United States*, 86 F.3d 789 (8th Cir. 1996); *Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556 (Fed. Cir. 1994); *Ralston Purina Co. v. On-Cor Frozen Foods, Inc.*, 746 F.2d 801 (Fed. Cir. 1984); *Anti-Monopoly, Inc. v. Gen. Mills Fun Grp., Inc.*, 684 F.2d 1316 (9th Cir. 1982), *cert. denied*, 459 U.S. 1227 (1983); *In re Borden, Inc.*, 92 F.T.C. 669 (1978), *aff'd sub nom. Borden, Inc. v. Fed. Trade Comm'n*, 674 F.2d 498 (6th Cir. 1982), *vacated and remanded*, 461 U.S. 940 (1983); *Redd v. Shell Oil*

INTA (formerly known as the United States Trademark Association) was founded in part to encourage the enactment of federal trademark legislation after the invalidation on constitutional grounds of the United States' first trademark act. Since then, INTA has been instrumental in making recommendations and providing assistance to legislators in connection with almost all major federal trademark and advertising legislation including the Lanham Act, which is at issue in this appeal.

INTA and its members have a particular interest in this case because the district court's analysis of the conduct that can constitute direct trademark infringement is inconsistent with the Lanham Act and existing case law. The district court held that Redbubble, Inc. ("Redbubble") – which displays designs by independent artists, arranges for manufacture and shipping of a myriad of products featuring those designs, processes payment for sale of such products, and handles returns and other post-sale issues – was not technically a "seller" and therefore could not, as a matter of law, be liable for direct infringement even if the products sold through the Redbubble website bore counterfeits of others' trademark rights. The trademarks at issue in this case are those of The Ohio State University ("Ohio

---

*Co.*, 524 F.2d 1054 (10th Cir. 1975), *cert. denied*, 425 U.S. 912 (1976); *Century 21 Real Estate Corp. v. Nev. Real Estate Advisory Comm'n*, 448 F. Supp. 1237 (D. Nev. 1978), *aff'd*, 440 U.S. 941 (1979); *Penguin Grp. (USA) Inc., v. Am. Buddha*, 16 N.Y.3d 295 (2011).

State"), including "BUCKEYES," "OHIO STATE," "OHIO STATE UNIVERSITY," and "URBAN MEYER" (the "Ohio State Trademarks"), but INTA's interest is in the protection of all trademarks in order to ensure that consumers are not deceived as to the source or sponsorship of products sold, whether through brick-and-mortar or online retailers.

In concluding as a matter of law that Redbubble could not be liable for direct infringement, the district court considered and interpreted the Lanham Act's regulation of marks "used in commerce."  *See* 15 U.S.C. § 1114(1) (2005).  INTA has an interest in ensuring that courts conduct a fulsome analysis of the activities that might constitute "use in commerce," that goes beyond consideration of only whether a defendant acted as a "seller."  Actions other than the sale of a branded product can constitute "use in commerce" and can therefore give rise to liability for direct infringement of the mark.  Although it is not clear from the limited record developed below whether Redbubble did "use" the Ohio State Trademarks "in commerce" and whether it may be liable for direct infringement, INTA has a strong interest in participating as *amicus curiae* in this case so that it may urge the Court, in considering the decision below, to address broadly what it means to "use" a mark "in commerce" and to identify the contours of a claim of direct trademark infringement.

Ex. 3
Page 152

INTA has another interest in this case.  INTA has noted in recent years an increasing number of cases in which district courts have granted summary judgment in trademark cases where there were disputed facts, which has resulted in reversals on appeal.  *E.g.*, *Affliction Holdings, LLC v. Utah VAP or Smoke, LLC*, No. 18-4146, 2019 WL 4019914 (10th Cir. 2019); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651 (4th Cir. 2018); *Rosetta Stone, Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012).  INTA supports summary judgment as a way to efficiently dispose of trademark cases and conserve the resources of the judiciary and litigants.  *E.g., Sazerac Brands, LLC v. Peristyle. LLC*, 892 F.3d 853 (6th Cir. 2018); *Sorensen v. WD-40 Co.*, 792 F.3d 712 (7th Cir. 2015); *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527 (5th Cir. 2015).  However, summary judgment is appropriate only if there are no disputed issues of fact and if the record includes the necessary material facts for the court to reach a decision.  District courts should not grant summary judgment where the court does not have the necessary material facts or where there remain seriously disputed facts on such issues as the assessment of trademark validity, trademark priority, use in commerce, and whether confusion is likely, even if both parties seek summary judgment through cross motions.[3]

---

[3]   If all parties in a litigation want to obtain a ruling from a court on a paper record, there is nothing stopping them from stipulating to a factual record or stipulating to allow the court to resolve factual disputes on a written record

Here, the parties did not submit sufficient evidence on key facts. Specifically, the underlying factual record remains uncertain as to Redbubble's exact role with respect to the products sold through its website and whether Redbubble's role might give rise to a finding that Redbubble did "use" the Ohio State Trademarks "in commerce" in connection with the sale of those products. In these circumstances summary judgment was inappropriate because the factual record was too sparse.

---

without trial.  Fed. R. Civ. P. 16(c)(2)(C); *see also Ins. Co. of N. Am. v. Nw. Nat. Ins. Co.*, 494 F.2d 1192, 1195-96 (6th Cir. 1974).  That is not what the parties did in this case.

6

## ARGUMENT

I.    **The district court erred as a matter of law by failing to acknowledge that "use in commerce," pursuant to Section 32(1) of the Lanham Act, includes more than the mere act of selling goods.**

    A.    **The sale of allegedly infringing goods is not a prerequisite to establishing "use in commerce" pursuant to Section 32(1).**

A plaintiff asserting claims of direct liability for trademark infringement under the Lanham Act must establish that the "[d]efendant used the [allegedly infringing] trademark 'in commerce' and without [p]laintiff's authorization." *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 910-11 (S.D. Ohio 2014) (citing 15 U.S.C. § 1114(1)(a)); *see also Taubman Co. v. Webfeats*, 319 F.3d 770, 776 (6th Cir. 2003) (in a dispute involving the <shopsatwillowbend.com> and <shopwillowbend.com> domain names, the court analyzed whether the defendant engaged in commercial use of the domain names and used the domain names "in connection with the sale or advertising of any goods or services") (internal citation omitted).  One type of conduct that constitutes "use in commerce" and that can, therefore, support claims of direct infringement is the sale of allegedly infringing goods.  *See, e.g., Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377 (6th Cir. 2006) (noting that sellers bear strict liability for trademark infringement and finding that a seller of counterfeit cigarettes was liable even though it did not produce the counterfeit product); *Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10-CV-8588, 2012 WL 3954518 (S.D.N.Y. Sept. 7,

Ex. 3
Page 155

2012) (denying defendant's motion for summary judgment and holding that

defendant, a print-on-demand business, was directly liable for infringement

because it produced and sold products bearing the "Born to Rock" trademark).  As

Professor Thomas McCarthy has explained,

> A dealer who does not make the goods bearing the
> infringing mark, but merely sells them, is liable as an
> infringer.  Thus, even an innocent dealer who sells goods
> bearing the infringing mark is liable for trademark
> infringement and may even be required to account for his
> profits.  It is no defense that a distributor did not actually
> affix the infringing mark to the goods, since actual sale of
> goods with an infringing mark is itself infringement.

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION

§25:27 (5th ed. 2019) [hereinafter *McCarthy*].

     The Lanham Act, however, also provides for direct liability based on other

activities as well.  In particular, Section 32(1) of the Lanham Act provides that:

> any person who shall, without the consent of the
> registrant –
>
> (a) use in commerce any reproduction, counterfeit, copy,
> or colorable imitation of a registered mark in connection
> with the ***sale, offering for sale, distribution, or
> advertising*** of any goods or services on or in connection
> with which such use is likely to cause confusion, or to
> cause mistake or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a
> registered mark and ***apply such reproduction,
> counterfeit, copy, or colorable imitation to labels, signs,***

8

> ***prints, packages, wrappers, receptacles, or
> advertisements intended to be used in commerce*** upon
> or in connection with the sale, offering for sale,
> distribution, or advertising of goods or services on or in
> connection with which such use is likely to cause
> confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action….

15 U.S.C. § 1114 (1)(a)-(b) (emphasis added).  The plain language of the statute

provides that users other than "sellers" can be directly liable for infringement.  For

example, liability also can be found against those who, *inter alia*, distribute or

advertise goods bearing an infringing mark.  Furthermore, the Act specifically

provides for liability against those who apply an allegedly infringing mark to

"labels, signs, prints, packages, wrappers, receptacles or advertisements intended

to be used in commerce."  *Id*.  This statutory language directly conflicts with the

district court's holding that a party must "sell" allegedly infringing goods in

commerce in order to be held directly liable for trademark infringement.

It is true that Section 45 of the Lanham Act has a somewhat more restrictive

definition of "use in commerce."  Section 45 defines "use in commerce" as being

when a mark,

> is placed in any manner on the goods or their containers
> or the displays associated therewith or on the tags or
> labels affixed thereto . . . and the goods are sold or
> transported in commerce.

9

15 U.S.C. § 1127 (2006).  But that definition applies only to the kind of use that is sufficient to justify registration of a mark; it does not limit the kind of use that can give rise to claims for direct infringement under Section 32(1).  *See generally, Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 138-39 (2d Cir. 2009) (dictum appendix analyzing the meaning of the phrase "use in commerce" and concluding that Section 45 applies only to the requirements for registration of a mark, and Section 32(1) more broadly applies to infringement claims); *see also Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1144-45 (9th Cir. 2011) (citing, with approval, Professor McCarthy's characterization that the "more restrictive view of 'use'" is "an erroneous interpretation of the Lanham Act").  Accordingly, when considering whether a party has used a mark in commerce in a way that could give rise to claims for direct infringement, courts should apply the more expansive definition of "use in commerce" from Section 32(1) of the Lanham Act.

B. **Other courts have held that activities beyond the sale of allegedly infringing goods are sufficient to establish "use in commerce."**

In keeping with this broader view of "use in commerce" pursuant to Section 32(1), courts have held that an array of actions – not just the sale of products – can constitute "use in commerce" for the purpose of establishing direct liability.  For example, courts have found that the use of a mark on a webpage or in a metatag

drawing consumers to a webpage can constitute use in commerce. *Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1362 (S.D. Fla. 2009) (noting that "the use of a trademark to draw consumers to a particular website not belonging to the trademark holder constitutes use in commerce under the Lanham Act"); *N. Amer. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) (finding that the "use in commerce" prong of an infringement claim was satisfied because even though consumers did not see the trademark, it still helped to draw customers to the website); *In re Sones*, 590 F.3d 1282, 1288 (Fed. Cir. 2009) (explaining that use on a webpage from which consumers can order goods could support use for the purpose of establishing rights in a trademark – a more difficult type of use to establish than use for the purpose of direct liability). Similarly, courts have found that the recommendation and sale of keyword advertising can constitute use in commerce. *Rescuecom Corp.*, 562 F.3d at 123 (holding that Google's recommendation and sale of trademarks as search terms in its AdWords program and Keyword Suggestion Tool constituted "use in commerce" under the Lanham Act); *Network Automation, Inc.,* 638 F.3d at 1144-45 (similarly holding that use of a trademark as a search engine keyword constituted use in commerce).

Relatedly, courts also have found that use of a trademark in connection with the advertising or display of goods for sale can constitute use in commerce. *See,*

*e.g., GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) (explaining that "[a] mark is 'deemed to be in use in commerce' when 'it is placed in any manner on the goods or their containers or *the displays associated therewith* or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale,' and the goods are transported or sold in commerce. . . . This definition applies to claims under Section 32 of the Lanham Act…") (emphasis added) (internal citations omitted).  Additionally, courts have noted that parties who manufacture or produce goods bearing an infringing mark can be held liable for direct infringement.  *See, e.g., Lorillard Tobacco Co.*, 453 F.3d at 377 (imposing direct liability on the seller of counterfeit cigarettes and noting that creating, manufacturing, or packaging products can constitute use).

Leading trademark scholars have adopted a similarly broad view of "use in commerce" for the purpose of establishing direct liability.  For example, according to Professor McCarthy,

> [t]he Lanham Act imposes liability for infringement of a registered mark upon any person who uses an infringing mark in interstate commerce in connection with the sale or advertising of goods or services.  This broad definition includes any manufacturer, supplier, dealer, printer, publisher or broadcaster who in fact has used the infringing mark in connection with the "sale, offering for sale, distribution or advertising of any goods or services," when such use is likely to cause confusion.

12

*McCarthy*, § 25:26.  Although it is not clear from these authorities whether

Redbubble's conduct constitutes "use in commerce," these examples illustrate that

for the purpose of establishing direct liability, courts and leading scholars have

embraced uses that go well beyond the act of selling goods.

> **C.**    **The district court's analysis of whether Redbubble "used in
> commerce" the Ohio State Trademarks was erroneously
> restrictive.**

By focusing solely on whether Redbubble was a "seller," the district court

adopted an "erroneously restrictive" view of "use in commerce" under Section

32(1).  *Network Automation*, *Inc.*, 638 F.3d at 1145 (citing Professor McCarthy for

the proposition that "cases taking a more restrictive view of 'use' in this context

are based on an erroneous interpretation of the Lanham Act") (internal citation

omitted).  The district court specifically noted that "whether Redbubble is a

'seller,' [was] an essential question that [the] Court must answer prior to making a

finding on Redbubble's liability" and focused its analysis on whether Redbubble

acted as a "seller" of goods bearing the Ohio State Trademarks.  *Ohio State Univ.*

*v. Redbubble*, No. 2:17-CV-01092, p. 11 (S.D. Ohio Mar. 29, 2019).  Although the

question of whether Redbubble is a "seller" of the goods at issue is an informative

component of a Section 32(1) "use in commerce" analysis, it should not be the

only component of that analysis.  The district court erred by failing to consider

additional factors that might constitute "use in commerce," such as whether

Redbubble engaged in the distribution or advertising of goods bearing the Ohio

State Trademarks, or whether Redbubble applied the Ohio State Trademarks to

advertisements used in commerce.  The district court also should have considered

whether Redbubble's role in selecting the items that are sold through its website

(*e.g.,* apparel, stickers, device cases, wall art, home décor, accessories, and

stationery; *see generally*, REDBUBBLE, INC. (Aug. 31, 2019),

https://www.redbubble.com), arranging for the manufacture of items, arranging for

the shipping of those items, having those items shipped in Redbubble packaging

with Redbubble hangtags, managing the payment process, and managing any

returns or complaints are activities that are sufficient to establish that Redbubble

used the Ohio State Trademarks in commerce.

One reason that this Court should reject the approach adopted by the district

court is that the lower court's decision would create a roadmap for parties to evade

direct liability for trademark infringement without fully accounting for the full text

of Section 32(1) and the intent of the Lanham Act.  Although Redbubble may not

be a bad actor and may be acting in good faith (issues on which INTA takes no

position and that likely would need to be explored through discovery), the district

court's decision would allow willful infringers and counterfeiters to immunize

their misconduct so long as they carefully structure their business arrangements to

technically avoid acting as a "seller," such as by purporting to contract with other

14

parties for the provision of the designs, manufacturing, and other activities related to the production and sale of products.  Such a loophole, if endorsed by this Court, would render entire portions of Section 32(1) meaningless, would contravene the "Lanham Act's intent to make actionable the deceptive and misleading use of marks in commerce," *Rescuecom Corp.*, 562 F.3d at 138, and would leave room for the type of "over-engineered" avoidance of liability that other courts have criticized.  *Cf. WNET, Thirteen v. Aereo*, 712 F.3d 676, 697 (2d Cir. 2013) (Chen, J., dissenting) (noting that Aereo's use of mini-antennas to capture broadcasts and stream them to consumers is a "sham," a "Rube Goldberg-like contrivance, over-engineered in an attempt to avoid the reach of the Copyright Act and to take advantage of a perceived loophole in the law"), *majority opinion rev'd*, 573 U.S. 431 (2014).[4]  Accordingly, INTA urges this Court to adopt a broader view of "use in commerce," pursuant to Section 32(1), rather than cabin its analysis to whether Redbubble acted as a "seller."

---

[4]   Notably, clarity with respect to the types of conduct that can lead to direct liability for trademark infringement would be beneficial.  However, any sort of roadmap that outlines how to avoid violations of the Lanham Act that can lead to direct liability should account for the full text of Section 32(1), which includes as examples of "use in commerce," "the sale, offering for sale, distribution, or advertising of any goods or services…" as well as the application of "reproduction[s], counterfeit[s], cop[ies], or colorable imitation[s] [of trademarks] to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce. . . ."  15 U.S.C. § 1114 (1) (a)-(b).

Ex. 3
Page 163

II.  **The district court erred as a matter of law by granting summary judgment on an incomplete factual record.**

In addition to improperly analyzing whether Redbubble used the Ohio State Trademarks in commerce, the district court erred by granting summary judgment on an incomplete factual record.

As this Court knows well, summary judgement is appropriate only "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Here, although both parties moved for summary judgment before engaging in any fact discovery, it remains the district court's obligation to assess whether key material facts are missing from the record such that summary judgment is inappropriate to either party. *Ins. Co. of N. Am.*, 494 F.2d at 1195-96 (highlighting the trial court's determination that "the stipulated facts [were] too meager for a proper resolution of the issues presented," and agreeing with that finding, explaining that "the facts of the stipulation were largely bare-bones and that the additional proof… added flesh and life to them, and in doing so presented an understandable controversy to which the judge could apply the law and his appropriate judicial fact-finding function in a bench trial."); *Lyons v. Bilco Co.*, No. 3:01-CV-1106, 2003 WL 22682333, at * 1 & fn. 1 (D. Conn. Sept. 30, 2003) (explaining that "[j]udicial discretion to deny summary judgment in favor of a full trial has been approved by most courts of

Ex. 3
Page 164

appeals," denying cross-motions for summary judgment on "intensely factual

matters," and citing to *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948) to show

that the Supreme Court has "recognized that summary judgment may not be the

most appropriate way to resolve complex matters, even if the motion for summary

judgment technically satisfies the requirements of Rule 56."); *Propps v. 9008 Grp.,*

*Inc.*, No. 03-71166, 2006 WL 2124242, at *1 (E.D. Mich. July 27, 2006)

(explaining that, even if the movants carry their burden, "the [c]ourt has discretion

to deny the motion [for summary judgment].").

      A.    **The factual record was incomplete as it lacked sufficient detail material to the district court's determination of whether Redbubble acted as a "seller."**

Although the district court's analysis of whether Redbubble acted as a

"seller" was erroneously restrictive, it is still informative.  The sale of goods is one

type of activity that can constitute a "use in commerce" for the purpose of

establishing direct liability for trademark infringement.  *See, e.g., Lorillard*

*Tobacco Co.*, 453 F.3d at 377.

In deciding whether Redbubble acted as a "seller" and could be liable for

direct infringement, the district court explained:

> The caselaw sets up a spectrum against which to measure Redbubble's
> conduct.  At one end are companies that function like auction houses
> and are not liable for direct infringement.  At the other end are
> companies like CafePress and SunFrog that themselves manufacture

> and ship infringing products [bearing artwork provided by
> independent artists] to the customer [which is sufficient to support
> liability for direct infringement].

*Ohio State Univ.*, No. 2:17-CV-01092, at p. 10.  Facts illuminating where upon this

spectrum Redbubble falls are material, as they could impact a court's analysis as to

whether Redbubble acted as a seller and, therefore, "might affect the outcome of

the lawsuit under the governing substantive law."  *Wiley v. U.S.*, 20 F.3d 222, 224

(6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

     For example, facts regarding the precise nature of Redbubble's contractual

relationships with third-party manufacturers and shippers are material to the

determination of whether Redbubble is more akin to a print-on-demand service like

CafePress, which actively creates merchandise itself, or an auction house like eBay

or Amazon which plays no role in the production of merchandise.  For instance, in

*Born to Rock Design Inc. v. CafePress.com, Inc.*, in finding that CafePress was

directly liable for trademark infringement of the Born to Rock trademark, the court

highlighted CafePress's involvement in the manufacturing process.  The court

explained that "it is undisputed that [CafePress] imprints the designs on

merchandise and ships that merchandise to customers. . . . That activity constitutes

'use in commerce.'" *Born to Rock Design Inc.*, 2012 WL 3954518 at *1.

Additionally, in *H-D U.S.A., LLC v. SunFrog, LLC*, the court imposed direct

liability for trademark infringement on a defendant print-on-demand service that

did its own printing of allegedly infringing designs on products for sale on its

website. *H-D U.S.A., LLC*, 311 F. Supp. 3d 1000,1029-30 (E.D. Wis. Apr. 12,

2018) (noting the defendant's production of the products at issue and

demonstrating a willingness to look at the realities of the arrangement by calling

out that the "[defendant] hid[ ] behind the 'user-generated' nature of its products

[and] the automation of its printers"). Accordingly, the more control Redbubble

exercises over and the more involved Redbubble is in the manufacturing process,

the more Redbubble begins to shift toward the print-on-demand-business end of

the district court's spectrum. These are issues of fact that are ill-suited to

resolution on summary judgment.

        To be fair, Redbubble claims that third-party manufacturers "imprint[ ] the

seller's design onto the product chosen by the customer" and "print and pack the

products before third-party shippers pick up the products and deliver them to

customers." (Deshais Decl., ECF Doc. No. 25, ¶¶ 3-4 [hereinafter *Deshais Decl.*]).

The record below is devoid, however, of detail as to the nature of the contractual

arrangements with third-party manufacturers and the precise degree to which

Redbubble is involved in this process. It is possible, for example, that Redbubble

is so intimately involved in the selection of the items to be manufactured and the

process of arranging for manufacture that a court should treat Redbubble as using

the mark in commerce for the purposes of establishing direct liability. Without

access to the actual contracts with third-party manufacturers and without a more
meaningful understanding of Redbubble's involvement in the manufacturing
process, on the record presented in this appeal, it is not possible for the court
adequately to understand on whose behalf manufacturing was performed.  Further,
additional evidence regarding the precise nature of Redbubble's role in arranging
for manufacturing and whether the individual artists play any role in the selection
of the manufacturers, the selection of the types of goods offered for sale, and the
specifications for production would aid the ultimate finder of fact.

The factual record also lacks sufficient details as to Redbubble's
involvement in the process for returning goods.  In assessing "use in commerce" in
other cases, courts have specifically looked to whether a party held title to
allegedly infringing goods as an indicator of whether that party acted as a seller
susceptible to direct infringement liability.  *See, e.g., Milo & Gaby LLC v.
Amazon.com, Inc.*, 693 Fed. App'x 879 (Fed. Cir. 2017) (holding that defendant
company, which never held title to the allegedly infringing Cozy Companion
pillow cases, was not liable for direct intellectual property infringement).
Accordingly, the more Redbubble interacts with and retains control over the goods
returned to the company, the more a fact finder might find that Redbubble is more
like a seller on the district court's spectrum.

20

The factual record lacks this necessary information on Redbubble's role in the return process and on the extent to which Redbubble has possession over returned products.  Redbubble has indicated that its address is sometimes listed as the return address on shipping labels and that "returns and customer service for products sold via Redbubble Marketplace are handled by Redbubble as a service to Sellers."  (Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, ECF Doc. No. 23, p. 14 (citing Deshais Decl., ¶ 8) [hereinafter *Defendant's Opposition Memorandum*]).  The exact, material details of the process, however, are missing from the record.  For example, the extent to which Redbubble receives and retains title to returned goods is an important detail missing from the factual record.  Accordingly, the record could benefit from further factual development of the manner in which Redbubble processes and engages with returned products.

Finally, the record lacks sufficient detail on how Redbubble characterizes its own services.  Although it is not necessarily conclusive to the assessment of whether a party has used a mark in commerce, courts have considered the manner in which parties describe their own services or hold out their own services to the public in making this assessment.  *See, e.g., GMA Accessories, Inc.*, 765 F. Supp. 2d at 463-64 (considering how defendant characterized its showroom services).  Although Redbubble characterizes itself as an intermediary marketplace (*see, e.g.,*

21

*Defendant's Opposition Memorandum*, p. 38), the record does not include
additional detail on how Redbubble advertises its services or describes its services
in a context other than litigation.

The development of more information on how Redbubble describes its own
services could allow a fact finder to perform a more thorough analysis as to
whether Redbubble acted as a seller and used the Ohio State Trademarks in
commerce.  In considering this issue, a fact finder might find it relevant to consider
how Redbubble has described its services in its trademark registrations.
Redbubble has registered its "Redbubble" trademark for use in connection with
classes including the various products offered for sale on the Redbubble website,
as well as for use in connection with "online retail services."  *See, e.g.,*
REDBUBBLE, Registration No. 4,782,482 (covering, *inter alia*, electronic cases,
artworks, luggage, home furnishings, dinnerware, apparel, and online retail store
services); REDBUBBLE, Registration No. 3,910, 313 (covering, *inter alia*, art
works); and REDBUBBLE, Registration No. 5,766,498 (covering, *inter alia*
apparel).[5]  In contrast, eBay, which would be at the opposite end of the spectrum

---

[5]   Rule 201(b)(2) of the Federal Rules of Evidence permits federal courts to take
judicial notice of "a fact that is not subject to reasonable dispute because it …
can be accurately and readily determined from sources whose accuracy cannot
be readily questioned."  Fed. R. Evid. 201(b)(2).  Courts have determined that
this rule allows for judicial notice of federal trademark registrations. *See, e.g.*,
*Reed v. General Mills, Inc*., No. C19-0005-JCC, 2019 WL 2475706 (W.D.

from sellers, has registered its "eBay" trademark for use in connection with "online trading services, namely, operating online marketplaces for sellers and buyers of goods and services." EBAY, Registration No. 4,408,423. The fact that eBay (which courts have found is not using marks for purposes of direct infringement) specifically notes that its mark is being used for operating a marketplace through which third parties can transact, but that Redbubble claims that its mark is used for online retail services and for the sale of specific products such as electronic cases, artworks, luggage, home furnishings, dinnerware, apparel, and art works, should be taken into account in deciding whether Redbubble is more like the sellers in *Born to Rock Design Inc.* and *H-D U.S.A., LLC* or more like marketplaces like eBay. At this stage of the litigation, the record lacks sufficient detail as to how Redbubble holds itself out to the public.

Finally, it is worth noting that, even if Redbubble were found to be "using" the Ohio State Trademarks in commerce, that finding would not result in an automatic finding of liability, nor would it dictate what remedies might be appropriate if liability were found. Redbubble may have defenses to liability – such as possible fair use defenses or defenses that confusion is not likely – and it may have defenses against any request for monetary relief (such as a showing that

---

Wash. June 13, 2019); *Children's Miracle Network v. Miracles for Kids, Inc.*, No. 8:18-CV-01227, 2018 WL 8243998 (C.D. Cal. Dec. 6, 2018).

23

it acted promptly and in good faith to remove infringing items in response to notices of infringement). Those, too, are issues that can and should be considered by the finder of fact after appropriate discovery.

> B. **The factual record was incomplete as it lacked sufficient detail on the degree to which Redbubble advertises or encourages advertising of the allegedly infringing products.**

As discussed in Section I *supra*, courts have held that the Lanham Act allows for the imposition of direct liability for trademark infringement premised upon uses in commerce other than the sale of allegedly infringing products. For example, courts have imposed direct liability where the defendant advertised or encouraged others to advertise the sale of infringing designs. *See, e.g.*, *H-D U.S.A., LLC*, 311 F. Supp. 3d at 1029-30 (noting that defendant "advertises infringing designs and trains and encourages others to do so"); *see also GMA Accessories, Inc.*, 765 F. Supp. 2d at 463. In *Defendant's Opposition Memorandum*, Redbubble asserts that the "third-party Sellers" advertise their own products. *Defendant's Opposition Memorandum*, p. 32 ("Redbubble's platform is a 'global communications network' that enables third-party Sellers to 'list' (i.e., advertise their products for sale"). The factual record lacks sufficient detail to test the veracity of this assertion, including detailed information on the degree of control Redbubble has over user-uploaded content, how Redbubble itself engages in promotions of its services, and whether promotions of Redbubble services ever

Ex. 3
Page 172

involve promotion of particular products sold through the Redbubble website. These additional details are key to the fact finder's analysis of whether Redbubble engaged in conduct other than the sale of allegedly infringing goods (such as advertising infringing or counterfeit products) that could constitute "use in commerce" for the purpose of establishing direct liability.

At the minimum, Ohio State's assertions in its complaint and in its summary judgment briefing that Redbubble has advertised for sale products that infringe the Ohio State Trademarks should be sufficient to avoid dismissal at this stage of the proceedings.  In both its complaint and summary judgment briefing, Ohio State points to display of allegedly infringing products as a potential form of use in commerce.  (Complaint, ECF Doc. No. 1, ¶ 38; ECF Doc. No. 35, p. 5). Additionally, in its summary judgment briefing, Ohio State alleges that Redbubble "advertis[es] the counterfeit goods on its site" (Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment, ECF Doc. No. 39, p. 10 [hereinafter *Plaintiff's Reply*]) and "advertises the infringing goods for sale." (*Plaintiff's Reply*, p. 11).  At this stage of the litigation, before the parties have conducted fact discovery, these assertions should be sufficient to avoid dismissal, as they provide Redbubble with notice of the arguments Ohio State intends to make.[6]  The district

---

[6]   "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific

Ex. 3
Page 173

court's conclusions that these allegations are "too conclusory," *Ohio State Univ.*, No. 2:17-CV-01092 at 12, merely suggests that the record is lacking sufficient detail for the court to make an informed decision and that a decision on summary judgment was not appropriate. Without the benefit of discovery, it is not clear that any additional facts on Redbubble's advertising policies and practices would render Ohio State's argument any more persuasive than Redbubble's assertions that any infringing marks are uploaded to the Redbubble website by independent artists. The district court should, however, consider a complete record that provides sufficient detail on Redbubble's advertising practices for the court to make an informed decision.

## <u>CONCLUSION</u>

The district court judgment should be vacated and remanded because of the court's erroneous limitation of the "use in commerce" analysis to an inquiry into whether Redbubble acted as a "seller." Additionally, the parties should be given the opportunity to engage in discovery and to build the factual record so that the ultimate trier of fact will have a more complete factual record from which it can decide whether to hold Redbubble directly liable for trademark infringement.

---

facts are not necessary; the statement need only 'give the defendant fair notice for what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)).

Dated:  September 5, 2019

Respectfully submitted,

/s/ David H. Bernstein

David H. Bernstein *
Kathryn C. Saba
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
Tel. (212) 909-6696

*Counsel for Amicus Curiae*
 *International Trademark Association*

*Counsel of Record*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), contains 5,463 words.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated:    September 5, 2019

*/s/David H. Bernstein*
David H. Bernstein

*Counsel of Record for Amicus Curiae*
*International Trademark Association*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 5, 2019, an electronic

copy of the Brief of *amicus curiae* International Trademark Association was filed

with the Clerk of the Court for the United States Court of Appeals for the Sixth

Circuit by using the CM/ECF system. The undersigned also certifies that all

participants are registered CM/ECF users and will be served via the CM/ECF

system.

*/s/David H. Bernstein*
David H. Bernstein

*Counsel of Record for Amicus Curiae*
*International Trademark Association*

Ex. 3
Page 177