KENNETH B. WILSON (SBN 130009)
ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
jmasur@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
 zdavidson@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,

Plaintiff,

v.

REDBUBBLE INC.,

Defendant.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Case No. 2:19-cv-04618-RGK-FFM

**DEFENDANT REDBUBBLE INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*[Filed concurrently with Statement of Genuine Disputes of Material Fact, Declaration of Joshua M. Masur, and [Proposed] Order]*

Hearing Date:  June 1, 2020
Time:              9:00 a.m.
Courtroom:      850

1

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................................ 1

II.  STATEMENT OF FACTS ............................................................................. 1

    A.  Defendant Redbubble's Business ......................................................... 2

    B.  Background of This Dispute ................................................................. 3

III.  ARGUMENT .................................................................................................. 4

    A.  Brandy Melville Has Not Proven Direct Trademark Infringement ........ 5

    B.  Brandy Melville Has Not Proven Contributory Infringement ............... 9

    C.  Brandy Melville Has Not Proven Vicarious Infringement ................... 12

    D.  Brandy Melville Cannot Establish Counterfeiting ............................... 14

    E.  The *Sleekcraft* Factors Preclude Summary Judgment for Plaintiff ...... 16

        1.  Strength of the Marks .............................................................. 16

        2.  Proximity of the Goods ........................................................... 16

        3.  Similarity of the Marks ........................................................... 17

        4.  Evidence of Actual Confusion ................................................. 17

        5.  Marketing Channels Used ....................................................... 19

        6.  Type of Goods and Purchaser's Likely Degree of Care ............. 19

        7.  Defendant's Intent in Selecting the Mark ................................. 20

        8.  Likelihood of Expansion of the Product Lines .......................... 20

IV.  CONCLUSION ............................................................................................ 20

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.,*
    2015 WL 5311085 (C.D. Cal. 2015).....................................................9, 10, 11

*AMF, Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979)....................................................................passim

*Arcona, Inc. v. Farmacy Beauty, LLC,*
    No. 2:17-cv-07058-ODW, 2019 WL 1260625 (C.D. Cal., Mar. 19,
    2019)............................................................................................................15

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.,*
    174 F.3d 1036 (9th Cir. 1999)......................................................................19

*Entrepreneur Media, Inc. v. Smith,*
    279 F. 3d 1135 (9th Cir. 2002)......................................................................16

*GMA Accessories, Inc. v. BOP, LLC,*
    765 F. Supp. 2d 457 (S.D.N.Y. 2011).............................................................7

*Gucci America, Inc. v. Frontline Processing Corp.,*
    721 F. Supp. 2d 228 (S.D.N.Y. 2010)...........................................................13

*Hero Nutritionals LLC v. Nutraceutical Corp.,*
    SACV 11-1195, 2013 WL 4480674 (C.D. Cal. Aug. 16, 2013.....................18

*Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.,*
    08-CV-1297(SLT) (SMG) 2014 WL 12558573
    (E.D.N.Y. Mar. 8, 2014)................................................................................8

*Kaloud, Inc. v. Shisha Land Wholesale, Inc.,*
    No. 15-3706-RGK, 2016 WL 7444600,
    (C.D. Cal. July 11, 2016), *aff'd,* 741 F. App'x 393 (9th Cir. 2018) ..............15

*Kelly-Brown v. Winfrey,*
    2012 WL 701262 (S.D.N.Y. Mar. 6, 2012),
    *aff'd in relevant part,* 717 F.3d 295 (2d Cir. 2013)........................................13

*Lockheed Martin Corp. v. Networks Solutions, Inc.,*
    985 F. Supp. 949 (C.D. Cal 1997)...........................................................10, 12

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
    591 F.Supp.2d 1098 (N.D. Cal. 2008) ..........................................................13

*Matrix Motor Co. v. Toyota Jidosha Kabushiki,*
    290 F. Supp. 2d 1083 (C.D. Cal. 2003).........................................................18

*Milo & Gabby, LLC v. Amazon.com, Inc.,*
    2015 WL 4394673 (W.D. Wash. July 16, 2015),
    *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) ................................................7, 8, 9

*Multi Time Machine, Inc. v. Amazon.com, Inc.*,
        804 F.3d 930 (2015) ........................................................................ 18

*Network Automation, Inc. v. Advanced Systems Concepts, Inc.*,
        638 F.3d 1137 (9th Cir. 2011) ........................................................ 19

*Ohio State University v. Redbubble*,
        369 F. Supp. 3d 840 (S.D. Ohio 2019) ....................................... passim

*Perfect 10, Inc. v. CCBill LLC*,
        488 F.3d 1102 (9th Cir. 2007) ......................................................... 5

*Perfect 10, Inc. v. Giganews, Inc.*,
        847 F. 3d 657 (9th Cir. 2017) ...................................................... 5, 6

*Perfect 10, Inc. v. VISA International Service Ass'n*,
        494 F.3d 788 (9th Cir. 2007) ......................................................... 12

*Playboy Enters. v. Netscape Comms. Corp.*,
        354 F.3d 1020 (9th Cir. 2004) ...................................................... 18

*Rearden LLC v. Rearden Commerce, Inc.*,
        683 F.3d 1190 (9th Cir. 2012) ...................................................... 16

*Rookard v. Mexicoach*,
        680 F.2d 1257 (9th Cir. 1982) ...................................................... 14

*Rosenshine v. A. Meshi Cosmetics Indus. Ltd.*,
        No. 18-CV-3572 (LDH), 2020 WL 1914648 (E.D.N.Y., Mar. 30, 2020) ...... 13

*Rosetta Stone Ltd. v. Google, Inc.*,
        730 F.Supp.2d 531 (E.D. Va. 2010), *aff'd in relevant part,* 676 F.3d
        144 (4th Cir. 2012) ........................................................................ 14

*Spy Phone Labs LLC v. Google Inc.*,
        2016 WL 1089267 (N.D. Cal. 2016) ............................................. 9, 10

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
        305 F.3d 894 (9th Cir. 2002) ......................................................... 18

*Tiffany Inc. v. eBay, Inc.*,
        600 F.3d 93 (2nd Cir. 2010) ...................................................... passim

*Tre Milano, LLC v. Amazon.com, Inc.*,
        No. B234753, 2012 WL 3594380
        (Cal. App. 2012) ......................................................................... 7, 8

*VHT, Inc. v. Zillow Group, Inc.*,
        918 F.3d 723 (9th Cir. 2019) ...................................................... 6, 20

**STATUTES**

15 U.S.C. § 1114(1) ......................................................................... 5

15 U.S.C. § 1127 ............................................................................. 5

1

47 U.S.C. § 230(c)(1) ............................................................................................5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

Brandy Melville's Motion for Partial Summary Judgment is as notable for what it omits as it is for what it says. Plaintiff does not and cannot claim that Redbubble engages in any knowing, volitional conduct with respect to any product offered through its marketplace, as required for a finding of direct trademark infringement, let alone any products that potentially infringe the two specific registered marks at issue in this motion. It fails to dispute that Redbubble has never handled or even seen the specific designs for any of the Accused Products before they are delivered. It offers no evidence that anyone has been actually confused about whether any Accused Product was made or endorsed by Brandy Melville. It never claims that Redbubble failed or refused to remove any particular listing for an Accused Product after receiving notification of alleged infringement. And it never mentions Amazon or the case law immunizing Amazon for the same conduct it complains of here, although Redbubble has obtained summary judgment in another case based on the similarities between its business model and Amazon's. *See Ohio State University v. Redbubble,* 369 F. Supp. 3d 840 (S.D. Ohio 2019).

As set forth in Redbubble's motion for summary judgment [DE# 40], Redbubble, not Brandy Melville, is entitled to judgment on Brandy Melville's claims as a matter of law. While Brandy Melville identifies numerous "facts" that it claims support a contrary decision, virtually all of them are unsupported, taken out of context, or immaterial. And although there are disputed facts pertaining to the *Sleekcraft* likelihood of confusion test that provide an alternative basis to deny Brandy Melville's motion, they do not preclude summary judgment for Redbubble.

There is no set of undisputed facts that would entitle Brandy Melville to prevail on any of its five claims. Brandy Melville's Motion must be denied.

## II.     STATEMENT OF FACTS

Redbubble refers the Court to DE# 40 for a more detailed statement of facts.

## A.    Defendant Redbubble's Business

Like the Amazon Marketplace and eBay, Redbubble offers a global online marketplace platform (the "Marketplace") for third-party artists to upload and sell their creative designs on high-quality, everyday products such as apparel, stickers, bags, and wall art, which Marketplace automatically performs various online services to facilitate these transactions. [DE# 40-5, -6] Once an order is placed, the Marketplace software automatically forwards the order information on behalf of the Seller to an independent third-party Manufacturer. [DE# 40-2 ¶ 12; DE# 40-3 ¶¶ 4-5, 11] The Manufacturer then imprints the design onto the product type chosen by the customer, without input or involvement from Redbubble. [DE# 40-3 ¶ 2] After a product is printed, a third-party shipper picks it up from the Manufacturer and ships it directly to the customer, without involvement by Redbubble. [*Id.* ¶ 6] This transaction is entirely Seller-directed and automated by the Marketplace software. [DE# 40-2 ¶¶ 2-3, 11-12] No Redbubble personnel designed, uploaded, manufactured, offered, sold, handled, distributed, advertised, or even viewed any of the Accused Products prior to their sale. [DE# 40-3 ¶ 11]

All listings for the Accused Products were designed and uploaded by third-party Sellers, without any participation by Redbubble; those Sellers provided all listing-specific content, such as product type, price, title, and keyword tags; the Sellers are repeatedly required to confirm that they have the right to upload the designs depicted in their listings; and Redbubble was unaware of the content of those listings and had no involvement with the Sellers' decisions to offer the Accused Products. [DE# 40-3 ¶¶ 9-11; 40-2 ¶¶ 5-8; 40-4 ¶ 5; 40-7]

The agreements between Redbubble and Sellers repeatedly specify that the Seller, not Redbubble, offers and sells the products listed on the Marketplace. [DE# 40-7] The product listing pages also expressly make clear that the products sold via the Marketplace are offered by third-party Sellers, not Redbubble. [DE# 40-4 ¶¶ 31-33; 40-12; 40-13] And Redbubble never takes control of or title to products,

1  including the Accused Products. [DE# 40-7 § 3.5]

2      Redbubble has also taken significant steps to prevent unscrupulous sellers

3  from abusing the Marketplace and has devoted substantial resources toward

4  eliminating third-party infringement on the Marketplace by improving existing anti-

5  piracy measures. [DE# 40-4 ¶¶ 6-22; 40-7; 40-8] These steps include consistently

6  requiring its users to confirm their right to use designs uploaded to the Marketplace;

7  creating and aggressively enforcing an IP/Publicity Rights Policy modeled after the

8  DMCA; immediately removing allegedly infringing listings upon receiving notice of

9  potential infringement; and employing a 13-person Marketplace Integrity ("MPI")

10 Team that proactively polices the Marketplace for potential infringement of marks

11 belonging to Brandy Melville and over 300 other content owners. *[Id.*; DE# 40-2 ¶¶

12 13-14] These efforts have resulted in the disabling or removal of approximately

13 3,700,000 listings from the Marketplace, including approximately 400 listings for

14 Brandy Melville, as well as the disabling and/or termination of almost 670,000

15 Seller accounts. [DE# 40-14 ¶¶ 6-10]

16      **B.      Background of This Dispute**

17      Brandy Melville seeks partial summary judgment of infringement with

18 respect to two of its three registered marks (depicted to

19 the right): the "Brandy Heart" mark, which "consists of

20 the wording 'BRANDY MELVILLE' in black with a

21 pink heart between BRANDY and MELVILLE;" and the



22 "LosAngeles Lightning" mark, which "consists of [t]he word 'LOSANGELES' as

23 one word without a space. The first letter of the word is stylized to resemble a

24 lightning bolt. Below 'LOSANGELES' is the word 'CALIFORNIA' and the

25 number '1984'. All of the words are in yellow." [DE# 40-19, 40-21]

26      Although the Brandy Hearts registration lists several covered products,

27 Brandy Melville does not use this mark on stickers, which are the only relevant

28 products that were sold through the Marketplace. [DE# 38-1 at 109:22-110:8;

119:21-22; 127:1-11] And although the LosAngeles Lightning mark covers "clothing, namely, T-shirts, tank tops and sweatshirts," no clothing has been sold through the Marketplace depicting that mark. [DE# 40-21]

Each time that Brandy Melville identified specific listings that it alleged were infringing its marks, Redbubble promptly removed the designs identified by Brandy Melville. [DE# 40-4 ¶ 25] Upon receiving notice of the Complaint, Redbubble also began proactively policing for the intellectual property that Brandy Melville had identified and continues to do so, although Brandy Melville has not cooperated in these efforts to date, rendering Redbubble's policing efforts more difficult. [*Id.* ¶ 26] These efforts have been extremely successful; since proactive policing began, there have been no sales through the Marketplace of products bearing the designs portrayed in the two marks at issue in Brandy Melville's motion. [DE# 40-16]

## III.   **ARGUMENT**

Brandy Melville presented no evidence whatsoever that Redbubble itself made ***any*** "use," let alone a potentially infringing trademark use, of the two design marks at issue as required for Brandy Melville to prevail on its direct liability claims. Whenever Brandy Melville notified Redbubble of specific alleged infringements relating to those marks, Redbubble promptly removed the allegedly infringing listings, negating Brandy Melville's contributory infringement claim. And Redbubble lacks the type of relationship with or control over third-party Sellers that sell products through the Marketplace and/or third-party fulfillers that manufacture such products to subject Redbubble to vicarious liability for trademark infringement. There is no dispute as to any of these core facts, all of which establish Brandy Melville's failure make a prima facie case that would permit it to prevail.

Brandy Melville repeatedly obfuscates the limited nature of its Motion, arguing that Redbubble is liable because "Brandy Melville designs" remain on the Marketplace. But this Motion is not about "Brandy Melville designs," whatever those are, nor is it about use of the phrase "Brandy Melville." Indeed, plaintiff does not

even hold a trademark registration on "Brandy Melville" as a word mark. Rather, the only two marks at issue in this motion are design marks that are not as a matter of law infringed by uses of the phrase "Brandy Melville" without the specific designs displayed in the registration. As the Court will note, very little of Brandy Melville's argument or supporting evidence has anything to do with these specific marks or products, or listings that might infringe those marks.

At the very least, there are triable issues of fact relating to whether there is any likelihood of confusion regarding Accused Products sold through the Marketplace, requiring that Brandy Melville's motion be denied.

### A.    Brandy Melville Has Not Proven Direct Trademark Infringement

To prevail on direct infringement, Brandy Melville must present undisputed facts demonstrating that Redbubble made an affirmative "use in commerce" of a mark "in connection with the sale, offering for sale, distribution or advertising" of the Accused Products.[1] 15 U.S.C. § 1114(1). This "use" requirement covers offering, selling or manufacturing products bearing infringing marks, or applying infringing marks to sales displays or related advertising materials (*see* 15 U.S.C. § 1127, those who merely facilitate or enable "use" of infringing marks cannot directly infringe because they do not themselves "use" the marks. See *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2nd Cir. 2010).

In the copyright context, this Circuit has held that direct infringement "requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant," noting that the volitional conduct requirement "stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017). Thus, a plaintiff "must provide some 'evidence

---

[1] Brandy Melville concedes that false designation of origin and unfair competition rise or fall with direct infringement. [DE# 36 at 2, 8, 17] Its unfair competition claim is also barred by 47 U.S.C. § 230(c)(1). *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (granting summary judgment of no unfair competition).

showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) Since trademark infringement, like copyright infringement, is a tort, direct trademark infringement claims should also be subject to a "volitional conduct" requirement under the rationale of *Giganews* and *VHT*.

Brandy Melville has not shown and cannot show that Redbubble "used" Brandy Melville's registered trademarks. Redbubble did not make the Accused Products; that was done exclusively by third-party manufacturers. [DE# 40-3 ¶¶ 2-11] Redbubble did not deliver allegedly infringing products; that was done exclusively by third-party fulfillers. [*Id.* ¶¶ 3, 11] Redbubble did not offer or sell the Accused Products; that was done exclusively by the third-party Sellers who uploaded and listed the products and transferred title to the purchasers. [DE# 40-2 ¶¶ 4-8; 40-4 ¶ 5;40-7] Redbubble did not place the mark on "advertisements" for the Accused Products; that was done by the third-party Sellers who created the web page listings.[2] [DE# 40-2 ¶¶ 4-8] Finally, Brandy Melville has not identified any other conduct that the law considers a "use" of the Brandy Melville marks.

Indeed, in *Ohio State v. Redbubble,* 369 F. Supp. 3d 840, the court granted summary judgment that Redbubble is not the seller of products offered through the Marketplace and does not otherwise engage in conduct that could subject it to liability for direct trademark infringement. The court noted that unlike print-on-demand companies like CafePress and SunFrog, which have been held liable for direct infringement because they print and sell the products offered via their website, "Redbubble essentially offers to 'independent artists' an online platform through which to sell their goods…. Redbubble is not directly producing the goods…." *Id.* at 846. Instead, the district court analogized Redbubble's business

---

[2] Redbubble *facilitates* advertising on behalf of artists by connecting its platform to third party ad platforms (like Google) through APIs/product feeds, but does not itself select or use the content displayed in those third-party ads. [DE# 40-4 ¶ 34]

model to that of the Amazon Marketplace, which the court observed "has generally not been found directly liable for direct trademark or copyright infringement because it merely facilitates sales between other parties." *Id.* at 844.

Other cases assessing liability for online marketplaces or transactional intermediaries like Redbubble have similarly held such entities immune from direct infringement liability because they do not sell or otherwise "use" the marks in question. *See, e.g.*, *Tiffany*, 600 F. 3d at 103 (no direct infringement where eBay never took possession of items and did not directly sell to customers); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) (*Milo & Gabby I*), *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) (*Milo & Gabby II*) (defendant was not liable for direct infringement based on sale of products listed by third parties); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012) (citations omitted) ("'parties [who] act as intermediaries for a transaction and do not buy and resell the commodities' are not direct sellers and are not directly liable for infringement under the [Lanham Act]."); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011) ("When parties act as intermediaries…, no sale between them has occurred").

Brandy Melville argues that Redbubble "commissions the design and manufacturing" or products and/or is "responsible for" or "profits from" the sale of counterfeit goods, and is therefore directly liable, but this argument effectively makes Redbubble's point: Redbubble does not itself engage in the conduct (i.e., making or selling products) that gives rise to liability for direct infringement. While facilitating transactions, coupled with other elements, could rise to a contributory infringement claim, it cannot support a direct infringement claim. *Tiffany,* 600 F.3d at 103 (expressly defining contributory infringement as "culpably facilitating the infringing conduct of the counterfeiting vendors"). Notably, Brandy Melville has not cited any case imposing *direct* liability for "commissioning," "profiting from" or

1   otherwise facilitating the manufacture or sale of infringing products.[3]

2         Brandy Melville has also ignored the Amazon cases and others that hold

3   unequivocally that a "seller" must hold title to the products, which Redbubble never

4   does. *See Milo & Gabby II*, 693 F. App'x at 886 (Amazon was not a seller of

5   products listed on its marketplace by third-parties under copyright law because it

6   "never held title to the accused products" and "did not control what information or

7   pictures were put on the product-detail page, nor … the price"); *Milo & Gabby I,*

8   2015 WL 4394673 at *6 ("Amazon was not the seller of the products at issue"

9   where "third-party sellers retain full title to and ownership of the inventory"); *Tre*

10  *Milano, supra*, 2012 WL 3594380 at *12 (Amazon is not liable for direct trademark

11  infringement because "Amazon is a service provider, not the seller").

12        Brandy Melville asserts, without legal support, that Redbubble should be

13  deemed a seller because it "collects and remits sales tax to the State of California for

14  each transaction." In fact, laws in many states, including California, require

15  "marketplace facilitators" like Amazon, eBay and Redbubble to "calculate, collect,

16  and remit sales tax on behalf of sellers."[4] [Masur Opp. Decl., Exh. J]

17        Brandy Melville's argument that Redbubble "advertises and offers for sale"

18  products on its website (*i.e.*, through the listings) was also properly rejected by the

19  Court in *Ohio State*. As that court correctly observed, and as confirmed in this case

20  [*e.g.*, DE# 40-3 ¶¶ 9, 11], "this argument ignores the fact that Redbubble is not the

21  one placing Ohio State's marks on its website. Rather, the marks are uploaded by

22  the independent artists," as is other product information such as product title, tags

23  _____

24  [3] *Johnson & Johnson and Lifescan, Inc. v. South Pointe Wholesale, Inc.*, 08-CV-1297(SLT) (SMG) 2014 WL 12558573 (E.D.N.Y. Mar. 8, 2014) is unavailing.

25  Indeed, *Ohio State* expressly found that opinion inapposite because the purported intermediaries "were not intermediaries at all [but] purchased goods from suppliers

26  and then sold them directly to the customer or otherwise 'bore the risk of loss.'" 369 F. Supp. 3d at 846. Unlike the defendants in *Johnson*, who concealed the identity of

27  the true product sellers, "Redbubble lists in several places that the product is from an 'independent artist,' and in some places names the artist directly." *Id.*

28  [4] Brandy Melville alleges that Redbubble's Australian accounting disclosures " disclosed that it is the 'principal in the sale,'" but not how that affects U.S. law.

1  and price. 369 F. Supp. 3d at 847. Indeed, because Redbubble never takes title to the

2  products, it cannot offer the products for sale – they aren't Redbubble's to sell.

3         Brandy Melville's argument that Redbubble advertises products outside its

4  website (i.e., on third-party sites) is equally meritless. As Brandy Melville

5  concedes, "Redbubble purchases [blank] advertising space" as part of its

6  facilitation services. [DE# 36 at 10] But Redbubble itself does not itself designate,

7  or for that matter even have knowledge of the content of, the advertisements that

8  run in that space. [DE#40-4 ¶ 34] The emails automatically generated by the

9  Marketplace software (which are virtually identical to those sent by the Amazon

10 Marketplace) similarly do not show any volitional or knowing conduct in placing

11 content. [Masur Opp. Decl. Exh K (Wilson Supp. *Ohio State* Decl. and Exhs. E-G

12 thereto)] And at any rate, Brandy Melville has offered no evidence that the two

13 design marks at issue in this motion ever appeared in such emails, or that the

14 Brandy Heart mark ever appeared in advertisements on third-party websites.

15        In sum, as the district court specifically held in *Ohio State*, and as the *eBay*

16 and *Amazon* cases confirm, Redbubble did not "use" the trademarks at issue in this

17 motion, and therefore cannot be liable for direct infringement as a matter of law.

18        **B.**    **Brandy Melville Has Not Proven Contributory Infringement**

19        To prevail on its Fourth Claim, for Contributory Trademark Infringement,

20 Brandy Melville must prove that Redbubble had "more than a general knowledge or

21 reason to know that its service is being used to sell counterfeit goods. Some

22 contemporary knowledge of which particular listings are infringing or will infringe

23 in the future is necessary." *Tiffany*, 600 F.3d at 107-09 (granting summary judgment

24 to eBay even though infringing listings had continued to appear for sale on the

25 marketplace after Tiffany had sent thousands of notices of claimed infringement).

26 *See also Spy Phone Labs LLC v. Google Inc.*, 2016 WL 1089267 (N.D. Cal. 2016)

27 (applying *Tiffany* analysis); *Academy of Motion Picture Arts & Sciences v.*

28 *GoDaddy, Inc.* ("*AMPAS*")*,* 2015 WL 5311085 (C.D. Cal. 2015) (offering several

page analysis and application of the *Tiffany* opinion). Moreover, the mere assertion of infringement in a notice letter "is not sufficient to impute knowledge of infringement to [a defendant]," and "use of an identical or similar mark does not necessarily constitute infringement" because trademarks can be used in any number of ways without creating a likelihood of confusion. *Lockheed Martin Corp. v. Networks Solutions, Inc.,* 985 F. Supp. 949, 963 (C.D. Cal 1997); *Spy Phone Labs* (holding Google was not liable for failing to remove content specifically identified in a takedown notice because it was unclear if the content actually infringed).

The undisputed evidence shows that Redbubble always removed listings for the Accused Products promptly upon receiving notice of claimed infringement from Brandy Melville. [DE# 40-4 ¶ 25; DE# 40-15] Although Brandy Melville asserts that Redbubble "regularly receives take-down notices from intellectual property owners but fails to timely remove infringing designs" (Motion at 18), the cited evidence, even if it was admissible and supported this point (which it does not), is irrelevant. Brandy Melville has failed to point to ***evidence*** that Redbubble knew of "specific instances of actual infringement" ***of the two design marks at issue*** in this motion and failed to act. Brandy Melville asserts that designs that its counsel had generally identified in correspondence (without listing number or URL) had not been promptly removed. But every listing it actually identified was disabled within 24 hours of notice. [*Compare, e.g.*, DE# 36-59 (5/15/18 email identifying work_id 23886270), *with* DE# 36-71 at 28 (listing was removed 5/15/18 due to takedown notice)] Brandy Melville has not argued and cannot argue that 24 hours is an unreasonable amount of time to respond to a takedown notice. *See, e.g., Tiffany*, 600 F.3d at 99 (practice of removing listings within 24 hours of takedown notice was reasonable); *AMPAS*, 2015 WL 5311085 at *10 (same for average of 2.75 days).

Brandy Melville also argues that Redbubble is liable because it knows that "that users upload infringing designs" to the marketplace" and that manufacturers "create infringing products."  But *Tiffany,* like every other court to subsequently

consider the issue, rejected this argument, holding that a defendant who merely "knew or should have known that its product or service was being used to further illegal counterfeiting activity" is not liable for contributory infringement. 600 F.3d 107. Rather, liability attaches only if the defendant knows of "specific instances of actual infringement." *Id.* at 107-09. Brandy Melville has proffered no such evidence with respect to the two design marks on which it moves.

Brandy Melville also suggests that Redbubble is "willfully blind" to infringement, claiming (without support) that Redbubble is "understaffing its content-moderation team" and "reviewing a meager number of designs for infringement." [DE# 36 at 17-18] Willful blindness may give rise to liability for contributory infringement, but only if a defendant "intentionally shielded itself from discovering the offending listings or the identity of the sellers behind them." *Tiffany*, 600 F.3d at 109. Brandy Melville has not offered any evidence of this type of conduct, nor could it. Instead, Brandy Melville argues that Redbubble had reason to believe that Brandy Melville content might be for sale on the Marketplace and failed to search for it and remove it. But as *Tiffany* makes clear, this general knowledge cannot subject Redbubble to liability; that eBay admittedly "knew as a general matter that counterfeit Tiffany products were listed and sold through its website" was "insufficient to trigger liability" without something more. *Id.* at 110.

Indeed, contrary to Brandy Melville's willful blindness assertions, Redbubble voluntarily expends significant resources to prevent infringement by implementing extensive proactive policing procedures to locate and remove potentially infringing listings. [DE# 40-3 ¶¶ 9-22; DE# 40-14 ¶¶ 8-10] Courts have repeatedly held that eBay and other marketplaces have no obligation to proactively search for infringing listings, and have refused to hold defendants liable for "failing to do the policing work that [plaintiff] was required (and in the better position) to do itself." *AMPAS*, 2015 WL 5311085 at *48; *see also Tiffany, supra* (rejecting the argument that eBay had the obligation to proactively search for infringing listings); *Lockheed Martin*,

985 F. Supp. at 966 (holding that defendant "has no affirmative duty to police the Internet in search of potentially infringing uses of domain names"). Yet, over the year ending April 28, 2020, the Redbubble MPI team manually reviewed over 6,000 of the approximately 24,000 listings uploaded on an average day. [DE# 40-14 ¶¶ 5-6] Redbubble's extensive proactive policing efforts preclude any finding of "willful blindness," notwithstanding any alleged minor imperfections in its process.

Finally, Brandy Melville's assertion that Redbubble admitted at an appellate argument that it engaged in contributory infringement is frivolous. In *Ohio State*, plaintiff alleged that Redbubble was liable only for direct infringement based on its facilitation of transactions through the Redbubble Marketplace. As is clear from the argument as a whole, Redbubble's counsel merely observed that that plaintiff could have chosen to state a claim for contributory infringement, but elected to proceed only on direct infringement. The cited portion of the argument merely distinguished the requirements of those two types of claims. [DE# 36-2 at 1] Redbubble never conceded that it was liable for contributory infringement in that case – the issue was not even before that court. And Redbubble certainly never made a blanket admission that it was liable for contributory infringement in general, much less in this case. Brandy Melville's claim to the contrary is baseless, and should be disregarded.

## C.   Brandy Melville Has Not Proven Vicarious Infringement

To prevail on its Fifth Claim, for Vicarious Trademark Infringement, Brandy Melville must establish "that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. VISA International Service Ass'n*, 494 F.3d 788, 807-08 (9th Cir. 2007) (citations omitted). Brandy Melville has not established Redbubble's liability under this standard. Indeed, other than citing *Perfect 10* for the bare legal standard, Brandy Melville has not cited a single legal authority to support its arguments on this claim.

Brandy Melville has offered no evidence that Redbubble is a partner with the

third-party manufacturers; there is certainly no legally registered partnership, and
the manufacturers all operate independently, and independently decide whether to
fulfill orders routed through the Marketplace. [DE# 40-3 ¶¶ 4, 11; DE# 40-4 ¶ 30]
While Brandy Melville has asserted that Redbubble and its manufacturers are
"partners" because Redbubble serves as their "principal for each transaction," such
assertion, even if true, fails to meet the partnership test. "[T]o demonstrate the
existence of a partnership, a plaintiff must prove four elements: (1) the parties'
sharing of profits and losses; (2) the parties' joint control and management of the
business; (3) the contribution by each party of property, financial resources, effort,
skill, or knowledge to the business; and (4) the parties' intention to be partners."
*Kelly-Brown v. Winfrey*, 2012 WL 701262, at *7 (S.D.N.Y. Mar. 6, 2012) ("*Kelly
I*"), *aff'd in relevant part*, 717 F.3d 295 (2d Cir. 2013); *see also Rosenshine v. A.
Meshi Cosmetics Indus. Ltd.*, No. 18-CV-3572 (LDH), 2020 WL 1914648, at *9–10
(E.D.N.Y., Mar. 30, 2020) (dismissing vicarious liability claim for failure to plead
same). But Brandy Melville has not even offered evidence on any of these elements.

Brandy Melville's claim that Redbubble is liable because its employees have
said on occasion that Redbubble "partners" with its fulfillers equally lacks merit.
The term is commonly used in a colloquial rather than legal sense, and "simply
'calling an organization a partnership does not make it one.'" *Kelly I*, 2012 WL
701262, at *7. Courts have repeatedly held that "off-hand references to [third-parties
like customers] as 'partners' is insufficient to exhibit the type of behavior and
relationship that can be considered an actual or apparent partnership" for purposes
of establishing vicarious liability. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions,
Inc.*, 591 F.Supp.2d 1098, 1113 (N.D. Cal. 2008); *see also Gucci America, Inc. v.
Frontline Processing Corp.,* 721 F. Supp. 2d 228 (S.D.N.Y. 2010) ("vague, puffery-
like references to a 'partnership' … are not enough to support vicarious liability").

Brandy Melville argues that that Redbubble has the authority to bind Sellers
in transactions with third-parties because it purportedly "acts as its users' agent" and

1   is authorized to collect the sales price for distribution and complete transactions. But

2   Brandy Melville never asserts that Redbubble's Sellers can also bind Redbubble, as

3   required under *Perfect 10*, nor does it explain how acting as an agent falls within the

4   *Perfect 10* vicarious liability test or would otherwise give rise to vicarious liability.

5   Indeed, while a principal may be liable for the acts of its agent, an agent is not liable

6   for the acts of its principal. *Rookard v. Mexicoach*, 680 F.2d 1257 (9th Cir. 1982)

7   (an agent "has no liability for the torts of" and "absent fault on his part, cannot be

8   vicariously liable for the wrongful acts of his principal").

9         Finally, Redbubble does not exercise authority or joint control over the

10   Accused Products as required for a finding of vicarious liability. Apparently hoping

11   that if it throws out enough theories one ultimately might stick, Brandy Melville

12   contends that Redbubble has asserted "joint control" over the product by visiting

13   manufacturers to assess the quality of their raw materials and printing process. But

14   this evidence merely establishes that Redbubble has a role in determining who can

15   participate in the marketplace. It does not prove the type of "joint control" over the

16   "appearance and content" or the Accused Products, as required under the relevant

17   legal standard. *See Rosetta Stone Ltd. v. Google, Inc*., 730 F.Supp.2d 531, 550 (E.D.

18   Va. 2010), *aff'd in relevant part,* 676 F.3d 144, 165 (4th Cir. 2012) (rejecting

19   vicarious liability claim because plaintiff failed to prove Google "controls the

20   appearance and content" of the infringing products or the use of the marks in those

21   products); *Perfect 10, supra* (allegations that direct infringers "operate their

22   businesses according to defendants' rules and regulations and defendants share the

23   profits, transaction by transaction," were insufficient to state a claim for vicarious

24   infringement). Thus, Brandy Melville cannot meet its burden on this issue.

25       **D.**    **Brandy Melville Cannot Establish Counterfeiting**

26         To prevail its claims, Brandy Melville must also show that Redbubble's use

27   of the two marks at issue causes a likelihood of confusion, which is usually analyzed

28   using the eight factors identified by the Ninth Circuit in *AMF, Inc. v. Sleekcraft*

*Boats*, 599 F.2d 341 (9th Cir. 1979).[5] Brandy Melville attempts to bypass *Sleekcraft* by incorrectly arguing that Redbubble is a counterfeiter. Redbubble's own Motion explains in detail why counterfeiting is inapplicable here. [DE# 40 at 16-20]

For one thing, counterfeiting requires that defendant 1) used an "identical or substantially indistinguishable" copy of a registered mark, that is 2) applied to "the same [type of] product for which those marks were registered, and 3) is a "stitch for stitch copy" of plaintiff's own products when viewed in the marketplace (considering such factors as surrounding packaging and any house labels), such that a consumer "would be tricked into believing that the [Accused P]roduct is actually one of Plaintiff's [] products." *See Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 15-3706-RGK, 2016 WL 7444600, at *2 (C.D. Cal. July 11, 2016), *aff'd*, 741 F. App'x 393 (9th Cir. 2018) (reversing verdict where "Defendant did not apply the … Marks to the same [type of] product for which those marks were registered"); *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar. 19, 2019) (discussing "stitch for stitch" requirement). Here, no clothing was sold with the design from the LosAngeles Lightning registration, although clothing is the only product class covered by the registration. [DE# 40-16] And there were no "stitch for stitch" copies sold of products with the Brandy Heart logo; the only type of products with designs similar to the Brandy Heart logo that were both listed in the Brandy Hearts registration and sold through the Marketplace were stickers, but the Brandy Heart logo is not used by Brandy Melville on stickers, [DE# 40-19, -16; DE# 38-1 at 109:22-110:8] Thus, for this and the other reasons identified in Redbubble's own summary judgment motion, the Accused Products cannot be counterfeits as a matter of law.[6] *Arcona, supra.*

---

[5] Those factors are "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8)likelihood of expansion of the product lines." *Sleekcraft*, 599 F.2d at 348-49.

[6] Brandy Melville also ignores that its own evidence of Redbubble's house marks

### E.       The *Sleekcraft* Factors Preclude Summary Judgment for Plaintiff

"Given the open-ended nature of [the *Sleekcraft*] multi-factor inquiry,… summary judgment on 'likelihood of confusion' grounds is generally disfavored." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012). Numerous factual issues preclude entry of summary judgment for Brandy Melville. Indeed, to the extent the *Sleekcraft* factors are undisputed, they favor Redbubble.

### 1.       Strength of the Marks

Brandy Melville argues that its two registered design marks are strong based largely on evidence regarding the Brandy Melville "brand," but that evidence is irrelevant. And the evidence that is specific to the marks –registrations, uses of the marks on products without corresponding financial data on sales or advertising, and its witnesses' own self-serving testimony about popularity without any supporting documents – is of limited use.  *See, e.g., Entrepreneur Media, Inc. v. Smith,* 279 F. 3d 1135, 1144 (9th Cir. 2002) (commercial strength may be measured by "such factors as extensive advertising, length of exclusive use, [and] public recognition").

Indeed, the only putative evidence of strength that was not created by Plaintiff itself are images of apparel bearing the LosAngeles Lightning mark on websites that allow users to figure out what particular apparel items were worn by celebrities or on TV shows.  [DE# 36-1, ¶¶ 5, 28; DE# 36-37, -56, -57]  But these websites exist to help readers determine the source of an item that is not readily apparent.  That consumers must research where to find apparel that bears the LosAngeles Lightning graphic suggests, if anything, that they do not associate it with Plaintiff.

### 2.       Proximity of the Goods

Brandy Melville argues in generalities that there is proximity in goods based on similarities because "Brandy Melville and Redbubble both sell clothing on the Internet at similar price points and both offer stickers as part of brand awareness,"

---

precludes summary judgment of counterfeiting. *See, e.g., Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984) ("prominent house marks and logos" weighed against likelihood of confusion); *Sleekcraft*, 599 F.2d at 351 (same).

1  but that characterization is misleading at best. [DE# 36 at 14] Putting aside that

2  Redbubble does not itself sell *anything*, Brandy Melville has not offered evidence of

3  a single product sold **both** through the Marketplace with the Brandy Heart logo and

4  by Brandy Melville with that same logo. Moreover, Brandy Melville's controversial

5  "one size fits most" approach, which caters to small, slender girls and has been

6  widely criticized for limiting accessibility to a very narrow range of female body

7  types [*see, e.g.*, Masur Opp. Decl., Exh. L], means that it mass-produces a single

8  size and shape of each apparel product it sells.  [*Id.*, Exh. M (Elkins Tr.) at 128:4-5]

9  By contrast, a purchaser of a uniquely-produced apparel item through the

10  Marketplace can choose to have a Seller-uploaded graphic applied to a wide variety

11  of sizes and cuts, for men and women, not customized for a graphic. And as for

12  stickers (which Brandy Melville distributes with the LosAngeles Lightning mark but

13  not with the Brandy Heart logo), while Brandy Melville "offer[s] stickers as part of

14  brand awareness" by giving them away for free as part of their marketing [*Id.* at

15  34:10-35:1], the accused sticker products are sold through the Marketplace, not

16  given away. Thus, there is at least a triable issue as to whether this factor weighs in

17  Brandy Melville's favor.

18  **3.**     **Similarity of the Marks**

19       Brandy Melville misleadingly asserts that "Redbubble publicly concedes" that

20  the Accused Products feature similar marks.  [DE# 36 at 14] In reality, the cited

21  Redbubble webpage is simply a general primer on what "*may* still be similar enough

22  to the original and amount to trademark infringement or a similar violation of

23  someone's rights, like unfair competition or passing off;" it makes no mention of the

24  Accused Products.  [DE# 36-47 (emphasis added)]. And to the extent there may be

25  similarities between Brandy Melville's two design marks and Accused Products,

26  they are outweighed by other facts that preclude a finding of likely confusion.

27  **4.**     **Evidence of Actual Confusion**

28       "Actual confusion can be established by (1) producing the testimony of

consumers that have been confused; or (2) producing a consumer survey that shows consumers are actually confused." *Hero Nutritionals LLC v. Nutraceutical Corp.*, SACV 11-1195, 2013 WL 4480674, at *6 (C.D. Cal. Aug. 16, 2013) (citing *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002)). Brandy Melville offers no such evidence, instead relying on a handful of vague third-party emails to Redbubble. These emails are not only inadmissible hearsay, but they fail to reflect any source confusion: an email asking "so you don't have any stickers that [Brandy Melville] specifically made?" [DE# 36-84, 36-89], *presumes* that Redbubble does not itself "make" Brandy Melville stickers. As a matter of law, this "evidence" is insufficient as a matter of law to establish actual confusion. *See Matrix Motor Co. v. Toyota Jidosha Kabushiki*, 290 F. Supp. 2d 1083, 1094 (C.D. Cal. 2003) (vague third-party communications are unreliable hearsay insufficient to establish confusion); *Playboy Enters. v. Netscape Comms. Corp.*, 354 F.3d 1020, 1026 (9th Cir. 2004) (requiring "significant numbers of consumers" to show actual confusion).

Moreover, it is hard to imagine how consumer might be confused, since both the search results and listings on the site explicitly identify each third-party Seller. [DE# 40-12, 40-13] There is no actual confusion under *Sleekcraft* where, as here, a site "respond[s] to a customer's inquiry about a brand it does not carry by doing no more than stating clearly (and showing pictures of) what brands it does carry." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935-36 (2015).

While the absence of actual confusion can sometimes be an insignificant factor, where, as here, products sold with the mark(s) in question have been sold concurrently for years,[7] "lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication" that there is no meaningful likelihood of confusion. *Hero Nutritionals*, 2013 WL 4480674, at *6; *see also Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d

---

[7] The first alleged infringing sale of products covered by the marks at issue in this motion was four years ago, in March 2016. [DE# 40-16]

1036, 1050 (9th Cir. 1999) ("no likelihood of confusion between … marks … simultaneously used for five years without causing any consumers to be confused").

### 5.   <u>Marketing Channels Used</u>

Brandy Melville argues that it and Redbubble both use similar marketing channels because they both use the Internet. But "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011). A more nuanced look at marketing channels reveals that while Brandy Melville markets primarily on Instagram and other social media [DE# 36-1 ¶¶ 19-20], Redbubble purchases ad space into which Google and other ad vendors, based on their knowledge of the user's search and browsing history, select listings on redbubble.com that match the viewer's existing interests.  [*Compare* Masur Opp. Decl., Exh. M (Elkins Tr.) at 31:6-35:17 *with* DE# 40-4 ¶ 34] Brandy Melville's other marketing efforts involve giving away stickers for free, while the accused stickers are sold, not given away.  [Masur Opp. Decl., Exh. M (Elkins Tr.) at 34:10-35:17] ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████  [DE# 38-1 (Elkins Tr.) at 101:9-102:7] Thus, this factor favors Redbubble.

### 6.   <u>Type of Goods and Purchaser's Likely Degree of Care</u>

Brandy Melville purports to address *Sleekcraft*'s analysis of type of goods and degree of care by asserting that purchasers of inexpensive products and on the Internet do not exercise care, and the fact that certain licensed products are available through redbubble.com may lead purchasers to believe that all products are licensed.  MSJ at 16.  But there is literally no evidence that consumers purchasing through redbubble.com believe that they are buying products from Brandy Melville.  The likelihood that customers might be confused is, if anything, lessened by the

availability of accused apparel that Brandy Melville emphatically does not sell – in multiple sizes, or for men, or printed with the Brandy Heart logo – and the fact that both the search results and listings on the site explicitly identify each third-party Seller, which is never "Brandy Melville."  [DE# 40-12, 40-13]

### 7.   Defendant's Intent in Selecting the Mark

As discussed in more detail above on Direct Infringement, Redbubble does not "select" any of the designs offered through the Marketplace. Indeed, Redbubble indisputably is unaware of the specific content uploaded to the Marketplace; at the very least, there is no evidence that Redbubble had any "intent" for products bearing Brandy Melville's two design marks to be offered through the Marketplace. Accordingly, this factor strongly weighs in Redbubble's favor.

Brandy Melville makes various arguments suggesting that Redbubble generally knows that there may be infringing content on the Marketplace, or doesn't do enough to prevent infringement (i.e., Redbubble does not tell users to report suspected infringement), but offers no authority suggesting that Redbubble directed any acts or omissions toward the marks at issue. Thus, Brandy Melville's purported showing is insufficient to establish wrongful intent. *See, e.g.*, *VHT, Inc. v. Zillow Group, Inc.,* 918 F.3d 723, 748-49 (9th Cir. 2019) (reversing jury verdict where plaintiff had identified specific listings only by physical address, rather than URL).

### 8.   Likelihood of Expansion of the Product Lines

Brandy Melville concedes that this factor is irrelevant.  [DE# 36 at 17]

## IV.   CONCLUSION

Under *Sleekcraft* and other precedent, Brandy Melville is not entitled to summary judgment – Redbubble is. Brandy Melville's Motion should be denied.

Dated: May 11, 2020

| COASTSIDE LEGAL | ZUBER LAWLER & DEL DUCA LLP |
|---|---|
| KENNETH B. WILSON | JOSHUA M. MASUR / ZACHARY S. DAVIDSON |

By: */s/ Joshua M. Masur*
Attorneys for Defendant Redbubble Inc.