KENNETH B. WILSON (SBN 130009)
ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
jmasur@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
zdavidson@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>REDBUBBLE INC.,<br><br>    Defendant. | Case No. 2:19-cv-04618-RGK-FFM<br><br>**DEFENDANT REDBUBBLE INC.'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT OPINIONS OF JAMIE GOLDBERG GERSON**<br><br>*[Filed concurrently with Declaration of Joshua M. Masur and [Proposed] Order]*<br><br>Hearing Date: June 30, 2020<br>Time:        9:00 a.m.<br>Courtroom:  850<br>Hon R. Gary Klausner |

1

**TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 30, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard, defendant Redbubble Inc. ("Redbubble") will move, and hereby moves, for an Order excluding all opinions of Plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville's ("Brandy Melville") expert, Jamie Goldberg Gerson, offered in Plaintiff's Initial Expert Disclosure dated April 1, 2020, a copy of which is attached to the supporting Declaration of Joshua Masur as Exh. A ("Gerson Report"). This motion will be heard in the courtroom of the Honorable R. Gary Klausner, located in the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor. The motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the supporting Declaration of Joshua M. Masur, and the pleadings, papers and other documents on file in this action, along with any evidence and argument presented at the hearing on this matter. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 8, 2020.

## MEMORANDUM OF POINTS AND AUTHORITIES

Brandy Melville's sole purported expert, Jamie Goldberg Gerson, seeks to offer the opinion that "Redbubble is one of the worst violators when it comes to policing their marketplace for intellectual property infringements when compared to other print-on-demand sites," without ever connecting it to the specific facts of this case. [Masur Decl. Exh. A ¶ 25] This opinion and the report containing it repeatedly violate the disclosure requirements of Federal Rule Civil Procedure 26(a)(2)(B), and fail to comport with Federal Rule of Evidence 702 and case law applying that rule.

Despite Rule 26(a)(2)(B)(ii)'s explicit requirement that an expert report "contain … the facts or data considered by the witness in forming" her opinions, Gerson purports to compare Redbubble to other marketplaces without disclosing her facts and data regarding either. Her testimony should be excluded for this reason alone.

Gerson's testimony should also be excluded because (among other things) she did not review the most relevant discovery in this case, including the report containing every single listing removed from redbubble.com due to Brandy Melville's intellectual property claims, and Redbubble's deposition testimony. The centrality of this evidence is not genuinely contestable; indeed, they are repeatedly cited in Brandy Melville's own summary judgment motion. Gerson's failure even to review this evidence makes her testimony unreliable and inadmissible.

The Court should not permit Gerson to testify at trial and should disregard her testimony in connection with the summary judgment motions in this case.

## I.     LEGAL STANDARDS

The proponent of expert opinions has the burden of proving that the proposed expert opinions are admissible under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. *See Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The pertinent admissibility requirements must be met by a preponderance of the evidence pursuant to Federal Rule of Evidence 104(a). *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Through the *Daubert* line of cases, the Supreme Court has made clear that Rule 702 imposes a "gatekeeping" obligation on the district court to ensure that all proposed expert opinions, not just scientific opinions, are relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-149 (1999); *see also United*

*States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000). Relevancy requires that "[t]he evidence ... logically advance a material aspect of the party's case." *Cooper v. Brown,* 510 F.3d 870, 942 (9th Cir.2007).

The issue typically before courts is reliability: whether an expert's opinions have "a reliable basis in the knowledge and experience of the relevant discipline." *See Kumho Tire,* 526 U.S. at 149. We are concerned "not [with] the correctness of the expert's conclusions but the soundness of his methodology." *See Primiano v. Cook,* 598 F.3d 558, 564 (9th Cir.2010) (citations and quotations omitted). The Supreme Court has recognized that the reliability inquiry is "a flexible one." *Kumho Tire,* 526 U.S. at 150.

The Supreme Court has suggested several factors that can be used to determine the reliability of expert opinions: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Hankey,* 203 F.3d at 1167 (citing *Daubert,* 509 U.S. at 592–94, 113 S.Ct. 2786). Whether these specific factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire,* 526 U.S. at 153. Nevertheless, Rule 702 "clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786 (emphasis added).

## II. **PLAINTIFF'S EXPERT OPINIONS ON REDBUBBLE ARE INADMISSIBLE UNDER FRE 702 BECAUSE THEY ARE NOT RELEVANT**

As a threshold matter, in her expert report, Gerson did not offer a single opinion regarding the Brandy Melville marks at issue in this case, or Redbubble's treatment of *any* Brandy Melville trademark or of any alleged violator of Brandy Melville's intellectual property. As a result, she did not offer any opinions that

4

"logically advance a material aspect of the party's case," which relates solely to Redbubble's alleged infringement of Brandy Melville's trademarks. *Cooper,* 510 F.3d at 942. Based on Gerson's failure to offer any opinions pertaining to Brandy Melville or the marks at issue in the present litigation, her opinions should be excluded as irrelevant under FRE 702.

### III. GERSON'S OPINIONS BASED ARE INADMISSIBLE UNDER FRE 702 BECAUSE SHE FAILS TO DISCLOSE THE FACTS AND DATA SHE CONSIDERED

In her expert report, Plaintiff's expert Gerson lists the documents she relied on for the opinions in her report, which comprised selected Redbubble documents; the initial pleadings in this case; and unspecified "analytical data" allegedly maintained by her own company, Counterfind. [Masur Decl. Exh. A ¶¶ 20-22].

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) requires that an expert's report contain "the facts or data considered by the witness in forming" her opinions. Federal Rule of Civil Procedure 37(c)(1) provides for automatic exclusion for failure to so disclose: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1) also provides for alternative or additional sanctions.

Gerson bases her opinions exclusively on *undisclosed* internal records from Counterfind, her own company. For example, paragraph 22 of her report identifies:

> analytical data maintained by CounterFind on behalf of its clients in policing infringements on websites such as Redbubble, Sunfrog, Spreadshirt, Amazon, Facebook, and Etsy. Because of CounterFind's role representing many brands, it has compiled a large amount of analytical data related to the most visible print-on-demand platforms. With respect to this aggregate data, I have considered data related to the number of product listings submitted by users to

5

each of the individual websites and the time between when a client reported a listing to each marketplace and how long it took that marketplace to remove the product for sale. I also looked at data that shows sellers who were able to sell products multiple times after a successful infringement report had been submitted against them.

Despite relying on purported analytical data from her own company to support the vast majority of her opinions, neither Gerson nor Brandy Melville ever disclosed a single document from Counterfind that discloses the analytical data cited and purportedly relied on by Gerson as required by Rule 26(a)(2)(B)(ii). Rule 37(c)(1) requires that her testimony be excluded as a result.

## IV. PLAINTIFF'S EXPERT OPINIONS ON REDBUBBLE'S PROACTIVE POLICING OF ITS MARKETPLACE ARE INADMISSIBLE UNDER FRE 702 BECAUSE THEY ARE BASED ON INSUFFICIENT FACTS AND DATA

In addition to her failure to disclose her own facts or data, Gerson failed to consider the most relevant evidence produced in this case. Federal Rule of Evidence 702 provides that expert testimony is admissible if "… (b) the testimony is based on sufficient facts or data …." FED. R. EVID. 702(b).

Gerson has not relied on sufficient facts or data in forming her opinions on Redbubble's proactive policing of content on its Marketplace; notably, prior to making the opinions in the Gerson Report, she did not consider or rely on any of the most relevant documents or deposition testimony from Redbubble regarding its implementation of its proactive policing policies. [Masur Decl. Exh. A ¶¶ 20-22]. This information is notable because it includes the December 13, 2019 deposition of Redbubble's Rule 30(b)(6) designee, James N. Toy ("30(b)(6) Deposition"); the December 11, 2019 deposition testimony of Jenny Greenhough ("Greenhough Deposition"), the head of Redbubble's in-house proactive policing division called the Marketplace Integrity ("MPI") team; and Redbubble production documents

RBBM016058-RBBM016099 ("One Row Per Work document"), which identifies every listing that Redbubble has removed for a Brandy Melville-related issue (in response to a takedown notice or Brandy Melville's Complaint or through proactive policing), the name of the third-party Seller that uploaded it, the date it was uploaded, and the date it was removed.  Notably, each of these documents was significant enough that Brandy Melville has submitted them in support of its summary judgment motion.  [DE# 36-99 (Greenhough Excerpts), 36-100 (12/13/19 12(b)(6) Excerpts); 36-71 (One Row Per Work report)].

Even a cursory review of these documents would have resulted in opinions that directly *conflicted* with the opinions Brandy Melville wanted her to advance in her report.  In paragraph 27 of her report, Gerson states, "Redbubble does not proactively remove designs … without receiving a specific takedown notice from the IP owner at the individual listing level," but Gerson did not review some of the most relevant evidence, which undermines this conclusion.

Gerson's failure to review either the Greenhough or 30(b)(6) Deposition is inexcusable.  Redbubble's designee, in addition to testifying on behalf of Redbubble on noticed topics related to policing redbubble.com, is in-house counsel who has testified to his substantial involvement in the development and implementation of its relevant policies; and Ms. Greenhough is the head of the MPI Team responsible for implementing Redbubble's proactive policing policies.  Indeed, Brandy Melville's own summary judgment motion and opposition rely heavily on testimony from these depositions.  [DE# 36-99 (56 pages of Greenhough Tr. Excerpts), 36-100 (90 pages of 30(b)(6) Tr. Excerpts)].

Gerson's failure to review the One Row Per Work document is also inexcusable.  That document clearly contradicts Gerson's opinions because it shows the removal of listings from the Redbubble Marketplace based on *both* takedown notices and "proactive moderation," distinguishing which of these is the basis for each removal.  [DE# 36-71 (Plaintiff's Exh. 64; One Row Per Work document)]

Because Gerson never reviewed the key documents and testimony required to reach her opinions, her opinions in paragraph 27 are inadmissible under FRE 702(b).

In paragraph 28 of her report, Gerson provides an opinion that "setting aside Redbubble's failure to proactively police its platform, at a minimum, it is an industry standard that once a single report of a clear intellectual property violation is reported, the website should then proactively search and remove all additional similar infringement on their site in order to be compliant." Gerson Report, ¶ 28. This opinion is again inadmissible because she did not review the Greenhough deposition testimony, which explained how Redbubble's written policies are actually implemented. Thus, the opinions in paragraph 28 are also inadmissible under FRE 702(b) because Gerson never reviewed the key documents and testimony required to reach her opinions and never produced a document that identified the alleged "industry standard."

Based on the above two examples, the Court should exclude any opinions of Gerson relating to whether or not Redbubble proactively polices its Marketplace under FRE 702(b) because she did not review the key documents and deposition testimony regarding Redbubble's efforts to proactively police suspected intellectual property violations, therefore her opinions are based on insufficient facts and data.

## V. GERSON'S OPINIONS BASED ON THE COUNTERFIND DATA ARE INADMISSIBLE UNDER FRE 702 BECAUSE THEY ARE BASED ON INSUFFICIENT DISCLOSED FACTS AND DATA

Gerson bases her opinions expressed in paragraphs 29-37 solely on *undisclosed* internal records from Counterfind, her own company, which neither Redbubble nor the Court can evaluate because they were never produced in this case. Indeed, based on Gerson's failure to review Redbubble documents that contradicted the opinions that Brandy Melville hired her to present, this Court can infer that Gerson has also not reviewed any internal Counterfind documents that conflicted with Brandy Melville's desired opinions.

8

### A. Average Turnaround Time Opinions

In paragraphs 29-31, Gerson refers to Counterfind data to support her opinions regarding the "average" time it takes Redbubble to remove content after receiving a takedown notice. Although she claims to have derived an "average turnaround time" for Redbubble, this could not be true because she admits that she had an incomplete data set by allegedly only considering data for 10,936 products reported to Redbubble, while stating in paragraph 24 that her clients have submitted over 30,000 listings to Redbubble. [Masur Declaration, Exh. A, ¶¶ 24, 29] By her own estimation, at least 19,064 listings are missing from the data set used to derive the average turnaround time, which means this opinion is based on incomplete data *even* if limited to only Counterfind clients (though she does not limit her opinions to any particular set of listings or marks). Redbubble has also admitted in public documents to receiving over 60,000 takedown notices through April 2019, therefore approximately 11,000 listings are insufficient to derive an "average turnaround time" for Redbubble because the data set is missing over 49,000 points of information so any average is based on insufficient data.

Paragraph 31 states that the average turnaround time for "similar platforms including Sunfrog.com, Moteefe.com and Spreadshirt.com ranges from 24-48 hours." None of these platforms are similar in size to Redbubble as explained in the Redbubble's Rebuttal Expert Report of Michael Masnick ("Masnick Report"). [Masur Declaration, Exh. B, ¶¶19-21, 33] According to SimilarWeb, a web analytics platform, Redbubble is the 906th website in the U.S. by traffic and $2,219^{th}$ website in the World by traffic. By comparison, Sunfrog.com is the $41,973^{rd}$ in U.S. and $160,087^{th}$ in the world; Moteefe.com is the $27,236^{th}$ in the U.S. and $53,682^{nd}$ in the world; and Spreadshirt.com is the $5,164^{th}$ in the U.S. and $18,049^{th}$ in the world. [*Id.*, ¶¶ 20, 33]. Conveniently, Gerson does not provide any information regarding the data sets she considered for these "similar platforms," which prevents Redbubble and the Court from assessing the sufficiency of the data used to support the opinions

offered by Gerson or judge the "soundness of [her] methodology." *See* FED. R. EVID. 702(b); *see also Primiano,* 598 F.3d at 564.

Paragraph 32 does not even mention whether or not Gerson reviewed *any* data to reach her opinion. She makes a general statement about Redbubble allowing users to search for trademarked terms, which does not indicate infringing or wrongful conduct. The real problem with the reliability of this opinion is based on her opinion about the actions of other sites, which she claims remove all similar products and disable searching for the terms and internal tags so such products cannot even *be uploaded*. This type of hyperbolic opinion is divorced from any data or facts, and she does not present any for Redbubble or the Court's consideration. This opinion is also divorced from reality because if this statement was true, there would be no need for a company like Counterfind. Intellectual property owners would only have to deliver one takedown notice to completely remove any potential infringing content using their IP from a site forever. This is simply untrue and clearly based on insufficient data. Using her same example of the Dallas Cowboys, a cursory search of Etsy shows thousands of results for products that do not appear to be officially licensed products, such as knitted tissue box covers and hundreds of sellers of face masks. [Masur Declaration, Exh. C].

Based on the above, the Court should exclude the opinions in paragraphs 29-32 under FRE 702(b) because they are based on insufficient data.

### B. Serial Violator Opinions

In paragraphs 33-36, Gerson puts forth her opinions that Redbubble allows "repeat violators and sellers to continuously post and sell products using the same trademarks and copyrights that were reported previously." She devotes four paragraphs to this data and still leaves out key information points that do not fit her narrative that Redbubble has a large issue with repeat violators being allowed to stay on the site. By her own numbers in paragraph 35, 75% of the sellers reported by her clients (3,275) were banned after a single violation, although she emphasizes the

other ~25% (1,081) to draw her conclusion that Redbubble has a problem with repeat violations. [Masur Declaration, Exh. A, ¶ 35]. In paragraph 36, she again only uses the numbers that suit her narrative that Redbubble has a problem with serial violators. Gerson has shown repeatedly that she only used the data that fit Brandy Melville's preferred narrative and ignored conflicting data.

Based on the above, the Court should exclude the opinions in paragraphs 33-36 under FRE 702(b) because they are based on insufficient data.

Finally, the Court should exclude all of Gerson's opinions expressed in paragraph 37 for the same reasons outlined above because it is simply a summary of her previous inadmissible opinions.

## VI. CONCLUSION

Gerson's failure to disclose her facts and data violates the disclosure requirements of Federal Rule Civil Procedure 26(a)(2)(B), mandating exclusion. Even if she were otherwise permitted to testify, Gerson's failure to consider the most relevant discovery makes her testimony insufficiently reliable to comport with Federal Rule of Evidence 702 and case law applying that rule. The Court should not permit Gerson to testify.

Dated: May 15, 2020

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR
ZACHARY S. DAVIDSON

By: */s/ Joshua M. Masur*
 Joshua M. Masur
 Attorneys for Defendant
 REDBUBBLE INC.