BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
   kwesley@bgrfirm.com
Ryan Q. Keech (State Bar No. 280306)
   rkeech@bgrfirm.com
Jason Y. Kelly (State Bar No. 274144)
   jkelly@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff Y.Y.G.M. SA d.b.a.
Brandy Melville

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>REDBUBBLE, INC., a Delaware corporation,<br><br>       Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br>Judge:  Hon. R. Gary Klausner<br><br>**PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:    June 1, 2020<br>Time:    9:00 a.m.<br>Crtrm.: 850<br><br>Pre-Trial Conference:    June 15, 2020<br>Trial Date:                June 30, 2020 |

## <u>REDACTED VERSION OF</u>

## <u>DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>

## I.   __INTRODUCTION__

Brandy Melville demonstrated in its Motion for Partial Summary Judgment (Dkt. No. 36; the "Motion") that there is no genuine dispute that Redbubble solicited, advertised, offered to sell, manufactured, delivered, and coordinated customer service for counterfeit Brandy Melville products.  Most of the evidence of Redbubble's integral role in the counterfeiting came from Redbubble itself (*e.g.*, Redbubble investor presentations, marketing videos, and deposition testimony).  Here, there is no disputed material fact that could allow a reasonable juror to find non-infringement.

In a desperate attempt to try to manufacture a genuine issue of fact, Redbubble ignores and contradicts its prior admissions, as well as misinterprets key governing legal principles.  For example, Redbubble argues there is "no evidence that Redbubble is a partner with" its manufacturers; but Redbubble's own investor disclosures and informational videos repeatedly represent that they are Redbubble's "partners" and "agents."  (Dkt. No. 47-2 at 12-13; SUF[1] ¶¶ 81-89, 117-118, 233-247.)  Redbubble also argues "the case law immunizing Amazon" excuses Redbubble's infringement (Dkt. No. 47-2 at 1); but Amazon is not Redbubble, courts have not "immuniz[ed]" Redbubble (or, for that matter, Amazon), and there is no record evidence about what Amazon specifically does and whether it is similar to Redbubble for purposes of trademark infringement.  And Redbubble attempts to add a "knowledge" requirement to direct trademark infringement claims; but it conceded to the Sixth Circuit last year that the Lanham Act has no such requirement.  (*Id.* at 1, 10; SUF ¶ 229.)

"[I]t would be difficult to imagine a more directly engaged participant than one deploying the business model adopted by Redbubble."  (SUF ¶ 228 (*Hells Angels Motorcycle Corp. (Aust.) Pty Ltd. v Redbubble Ltd.*, [2019] FCA 355).)  Redbubble is responsible as a matter of law for its counterfeiting.  The Court should grant the Motion and save trial for the issue of damages.

---

[1]  "SUF" is the concurrently filed Reply Separate Statement of Uncontroverted Facts.

## II.    ARGUMENT

### A.    Redbubble Is a Counterfeiter, Liable for Direct Infringement

The Motion proves that Redbubble has engaged in counterfeiting: the Marks are "valid and protectable trademarks" owned by Brandy Melville that Redbubble uses, without authorization, to hawk knockoff Brandy Melville products (it, *inter alia*, commissions, advertises, offers to sell, and sells the counterfeit Brandy Melville designs emblazoned on goods that it manufactures), thereby resulting in **both** likely **and** actual customer confusion.

Redbubble **does not dispute** that, under California law, Redbubble is the "seller" of counterfeit goods on the Redbubble website. (*See* Dkt. No. 36 at 12.) Nor could it: in California, an order "to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods." Cal. Com. Code § 2206(1)(b); *see also Starbucks Corp. v. Amcor Packaging Dist.*, No. 13-cv-1754, 2016 WL 3543371, at *5 (E.D. Cal. June 23, 2016). Here, when a customer purchases a knockoff Brandy Melville product on Redbubble's website, Redbubble collects the customer's payment, assures the customer that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (SUF ¶¶ 55-69, 93-95, 179-180.) This amounts to "use" under the Lanham Act.

Instead, Redbubble responds with arguments recycled from Redbubble's own summary judgment motion (Dkt. No. 40). But as Plaintiff explained in its opposition to that motion (Dkt. No. 45; the "Opposition"), Redbubble's arguments lack merit and cannot manufacture a genuine issue of material fact where no such issue exists.

**First**, trademark infringement claims do not have a "volitional conduct"-causation element; but even if they did, Plaintiff satisfied that here. Redbubble uses the Marks by, *inter alia*, commissioning, advertising, offering to sell, and selling the counterfeit Brandy Melville designs emblazoned on goods that Redbubble manufactures through partner fulfillers who create each Brandy Melville knockoff to

1   meet Redbubble's quality standards, and arranges the delivery of the products to its
2   customers.  (Dkt. No. 45 at 6-12; *see also* SUF ¶¶ 36-95, 102-197, 201-202.)[2]

3       ***Second***, Redbubble disingenuously claims *The Ohio State Univ. v. Redbubble,*
4   *Inc.*, 369 F. Supp. 3d 840 (S.D. Ohio 2019), held Redbubble did not "engage in
5   conduct that could subject it to liability."  (Dkt. No. 47-2 at 6.)  That, too, is false.
6   The *Ohio State* court only considered—on a record without the assistance of any
7   discovery—one form of "use."  (Dkt. No. 45 at 12-13 (citing 369 F. Supp. 3d at 845).)
8   Plaintiff has proved several forms of use on a record that is substantially more
9   complete than in *Ohio State*.  (*Id.* at 13; *see also* SUF ¶¶ 82-89, 114-118, 215-218.)

10      ***Third***, Redbubble's reliance on "the *eBay* and *Amazon* cases" is entirely
11  misplaced and does not excuse Redbubble's infringement or make it a transactional
12  intermediary.  (Dkt. No. 47-2 at 7-8.)  Redbubble's sweeping and unsupported claim
13  of blanket "transactional intermediary" immunity and deliberate use of "Marketplace"
14  to sanitize its business model does not make it so, let alone transform a soliciter,
15  manufacturer, advertiser, seller, and fulfiller of knockoff Brandy Melville goods like
16  Redbubble into a business that it is not.  No admissible evidence supports Redbubble's
17  attempt to masquerade as Amazon, which should be rejected.[3]

18      At bottom, Redbubble is—as it has publicly disclosed—partners with its
19  fulfillers and the "principal in the sale" of its products.  (SUF ¶¶ 114-118.)  Redbubble

20

---

21  [2]  Redbubble's claim that it does not "select . . . the content displayed in . . . third-
22  party ads" is false.  (Dkt. No. 47-2 at 6 n.2.)  Redbubble advertises its designs on,
    *inter alia*, its two social-media Instagram accounts.  (SUF ¶¶ 230-232.)
23  [3]  Amazon is not "immun[e]" from the Lanham Act (Dkt. No. 47-2 at 1).  *E.g.*,
24  *Williams-Sonoma, Inc. v. Amazon.com, Inc.*, No. 18-cv-7548, 2019 WL 7810815, at
    *1 (N.D. Cal. May 2, 2019) (denying motion to dismiss claims that "Amazon
25  infringed and diluted [plaintiff's] service mark and engaged in unfair competition").
    But even if Amazon were, there is no record evidence about what Amazon specifically
26  does, how it operates, or whether its characteristics are similar to Redbubble's for
27  purposes of trademark infringement.  Indeed, Redbubble's own expert admitted that
    Amazon is a "very different business than Redbubble."  (SUF ¶ 213.)
28

is telling the truth when it gives its customers every impression that the counterfeit products bought on the Redbubble website are being acquired from Redbubble. *Johnson & Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*, No. 08-cv-1297, 2014 WL 12558573, at *19 (E.D.N.Y. Apr. 4, 2014) (defendant is not a "transactional intermediary" where customers' "knowledge about the source of" the infringing products was "that they were acquired from [defendant]").[4]  Redbubble is not telling the truth when it argues before this Court that, for example, its own software infringes on its own without Redbubble's knowledge.  *See H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1038 (E.D. Wis. 2018) (defendant infringed through its software's "entirely automated" process).  Redbubble owns ██████████ its website, and ████████████████████████████████████ (SUF ¶¶ 36, 41, 63.)[5]

### 1.   Redbubble's Counterfeiting Presumes Consumer Confusion

Likelihood of confusion is presumed in "cases involving counterfeit marks." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004).  As Plaintiff detailed in its Motion and its Opposition, Redbubble is a counterfeiter that, *inter alia*, offered for sale products that bear the Marks.  (Dkt. No. 36 at 9-12; Dkt. No. 45 at 13-15.)   Redbubble offered for sale counterfeit "T-shirts, tank tops or sweatshirts" bearing the LA Lightning Mark (SUF ¶¶ 26, 29, 159-161, 220; Dkt. No. 45-1 ¶ 7), as well as counterfeit clothing, signs, and other pieces of furniture and home goods bearing the Brandy Melville Mark (SUF ¶¶ 24, 32, 160, 162, 221).

---

[4] *Johnson* is not "unavailing."  (Dkt. No. 47-2 at 8 n.3.)  The products are purchased on Redbubble's website, and Redbubble represents that designs were "Designed by," rather than "For sale by" or "Sold by," a user.  (*E.g.*, SUF ¶¶ 42, 206.)

[5] Redbubble's claim that its conduct is somehow immunized by purported agreements with its customers and manufacturers whereby they represent, *inter alia*, that they have the right to use Brandy Melville's Marks (Dkt. No. 47-2 at 2) is equally wrong: if anything, such agreements prove Redbubble's liability, as there would be no need to obtain such representations (and thus potential indemnification from these individuals) if Redbubble thought that what it was going to do with the solicited designs and was going to manufacture would not amount to "use" and counterfeiting.

The presumption here is well-justified, as the *Sleekcraft* factors universally favor Plaintiff, confirming—as a matter of law—that consumer confusion is both likely and is actually occurring despite Redbubble's repeated misstatements of the applicable standards and evidence. (*See* Dkt. No. 36 at 12-17.) *DC Comics v. Towle*, 989 F. Supp. 2d 948, 956 (C.D. Cal. 2013) (noting likelihood of confusion can be "a question of law . . . depend[ing] on the circumstances of" the case). Specifically:

Strength and Similarity of the Marks, and Proximity of Goods.[6] Redbubble does not dispute Plaintiff's evidence of the Marks' strength, rebut the Marks' presumed strength (*Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1121 (9th Cir. 2010)), or identify evidence of dissimilarity. (*See* Dkt. No. 47-2 at 16-17.) Instead, without legal citation, Redbubble incorrectly argues there is "a triable issue" regarding the proximity of goods because Redbubble and Plaintiff do not always sell the same products in the same size and at the same price. (*Id.*) But case law shows Redbubble is misconstruing the "proximity of goods" factor. *E.g.*, *Towle*, 989 F. Supp. 2d at 959 (factor favored plaintiff at summary judgment where plaintiff offered, *inter alia*, toy versions of car, while defendant made full-size replica cars).

Degree of Consumer Care. This factor also favors Plaintiff. Redbubble does not dispute that its infringement takes place on the Internet and that the products at issue are comparable and affordable. (Dkt. No. 36 at 16; Dkt. No. 47-2 at 19-20.)

Marketing Channels Used. This factor further favors Plaintiff because the parties use "[c]onvergent marketing channels." *Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079, 1092 (C.D. Cal. 2006). Both parties rely on digital marketing, including Instagram (Redbubble has *two* Instagram accounts (SUF ¶ 230)). Further, Redbubble's claim that it helps Plaintiff's marketing by selling counterfeit Brandy Melville stickers (Dkt. No. 47-2 at 19) is not only absurd, but concedes Redbubble's stickers are indistinguishable counterfeits of Brandy Melville's stickers.

---

[6]  Similarity of the marks and proximity of the goods are "particularly probative." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017).

1   <u>Defendant's Intent.</u>  Redbubble advertised, offered for sale, and sold infringing

2   Brandy Melville products █████████████████████████████

3   (SUF ¶¶ 170-173, 202.)  This amounts to knowing infringement,[7] which "is 'strong

4   evidence of a likelihood of confusion.'"  *Towle*, 989 F. Supp. 2d at 960.  Further,

5   "ignorance is no defense to violations of the Lanham Act," *Shalabi*, 352 F. Supp. 2d

6   at 1073, and "willful blindness is equivalent to actual knowledge," *Hard Rock Café*

7   *Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992).

8   <u>Evidence of Actual Confusion.</u>  Contrary to Redbubble's misrepresentation,

9   "'[e]vidence of actual confusion constitutes persuasive proof that future confusion is

10  likely.'"  *Conversive*, 433 F. Supp. 2d at 1092.  Here, Plaintiff submitted admissible

11  documents proving actual customer confusion.  (SUF ¶¶ 196-197.)  *Conversive*, 433

12  F. Supp. 2d at 1091; *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F. Supp.

13  2d 772, 786 (W.D. Mich. 2006).[8]  Evidence of actual confusion in the marketplace

14  only further emphasizes the harm that Redbubble's conduct is causing Plaintiff.

15  **B.   <u>Redbubble Is Liable for Contributory Trademark Infringement</u>**

16  Plaintiff's Motion, as well as its Opposition, prove that Redbubble is ***also*** liable

17  for contributory infringement, which it virtually admits to the Court when it

18  concedes—in opposing liability for direct infringement—that the Court should focus

19  on its "facilitat[ion]" and "enabl[ing] 'use' of infringing marks." (Dkt. No. 36 at 17-

20  19; Dkt. No. 45 at 15-18.; *cf.* Dkt. No. 47-2 at 5.)  Redbubble owns ████████ the

21  _____

22  [7] *See Delta Air Lines v. Wunder*, No. 13-cv-3388, 2015 WL 11347586, at *10 (N.D.

23  Ga. Dec. 28, 2015) (defendant knowingly infringed trademark when its use of the trademark continued after receiving the markholder's cease-and-desist letter).

24  [8] Redbubble's cited cases do not stand for their stated proposition or support Redbubble. *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1026

25  (9th Cir. 2004) (not requiring "significant numbers" to show actual confusion); *Matrix*

26  *Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093-94 (C.D. Cal. 2003) (plaintiff lacked "documentary evidence" of confusion); *Multi Time*

27  *Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) (no evidence of "actual confusion by anyone"); *Hero Nutritionals LLC v. Nutraceutical Corp.*,

28  No. 11-cv-1195, 2013 WL 4480674, at *6 (C.D. Cal. Aug. 16, 2013) (same).

1   Redbubble website, which it uses to commission, advertise, offer to sell, and sell

2   counterfeit Brandy Melville designs. (*E.g.*, SUF ¶¶ 36-61, 159-162, 176, 180, 202.)

3   This results in direct and contributory trademark infringement liability.

4          Seeking to avoid this necessary conclusion, Redbubble goes outside the Ninth

5   Circuit and "selectively rel[ies] on *Tiffany* [*(NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d

6   Cir. 2010)] without acknowledging other relevant circuit authority addressing

7   contributory liability in" the proper context. *Luxottica Grp., S.p.A. v. Airport Mini

8   Mall, LLC*, 287 F. Supp. 3d 1338, 1341-42 (N.D. Ga. 2017) (recognizing *Tiffany*

9   adopts "a narrow interpretation" of contributory infringement).[9]  The Fourth Circuit

10  recognized that *Tiffany* is "of limited application" at summary judgment because it

11  "involved an appeal of judgment rendered after a lengthy bench trial." *Rosetta Stone

12  Ltd. v. Google, Inc.*, 676 F.3d 144, 165 (4th Cir. 2012) (district court's "heavy reliance

13  on *Tiffany* was misplaced" because "the *Tiffany* court did not view the evidence

14  through the len[s] of summary judgment").

15         *Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013), applies the standard

16  appropriately at summary judgment.[10]  The *Coach* plaintiff was granted summary

17  judgment because, unlike in *Tiffany*, the defendant "had actual knowledge that the

18  infringing activity was occurring . . . over a lengthy period of time and even knew that

19  particular vendors were selling counterfeit[s.]" 717 F.3d at 504.  Here, Redbubble's

20  infringement was knowing as Redbubble received Plaintiff's repeated notices and

21  letters describing the infringement.  (SUF ¶¶ 170-173; Dkt. No. 1.)  *Delta Air*, 2015

22

23  ────────────────
    [9]  Redbubble's other cited cases are unpersuasive. *Academy of Motion Picture Arts
24  & Sciences v. GoDaddy.com, Inc.*, No. 10-cv-3738, 2015 WL 5311085 (C.D. Cal.
    Sept. 10, 2015) (following a bench trial, like in *Tiffany*); *Spy Phone Labs LLC. v.
25  Google Inc.*, No. 15-cv-3756, 2016 WL 1089267 (N.D. Cal. Mar. 21, 2016) (motion
    to dismiss); *Lockheed Martin Corp. v. Networks Sols., Inc.*, 985 F. Supp. 949, 966
26  (C.D. Cal. 1997) (regarding policing the Internet, not just a website, for infringement).
    [10]  Indeed, Redbubble's own counsel recently averred in another case that the law as
27  to Redbubble's "facilitator" role is "set forth in *Coach*." (SUF ¶ 224.)
28

1  WL 11347586, at \*10.  Redbubble's infringement is also obvious.  (*E.g.*, SUF ¶ 44.)

2  Redbubble's unsupported claim it lacked knowledge amounts to willful blindness.

3      Courts have granted plaintiffs summary judgment on contributory infringement

4  claims on similar records involving similar conduct.  (*Cf.* Dkt. No. 47-2 at 10-11.)  In

5  *Slep-Tone Entm't Corp. v. Golf 600 Inc.*, 193 F. Supp. 3d 292 (S.D.N.Y. 2016),

6  summary judgment was granted because defendant's relationship with "identified

7  individuals known by it to be engaging in continuing infringement" was "sufficient

8  evidence that [defendant] knew of specific instances of actual infringement."  *Id.* at

9  298.[11]  Likewise, Redbubble routinely allows users to repeatedly infringe Plaintiff's

10  trademarks, including the Marks.  (Dkt. No. 45-1 ¶¶ 13, 62; SUF ¶¶ 127, 225-227.)

11      Redbubble also is contributorily liable for supplying the infringing designs to

12  its fulfillers and maintaining control of their work to ensure they "fit to the Redbubble

13  standard."  (SUF ¶¶ 81-89.)  *E.g.*, *Days Inns Worldwide, Inc. v. Lincoln Park Hotels,*

14  *Inc.*, 500 F. Supp. 2d 770, 778 (N.D. Ill. 2007) (granting plaintiff summary judgment

15  where defendants "supplied [marks] to [infringer] and knew that [infringer] was going

16  to use the [marks] to infringe upon [plaintiff's] trademarks"); *see also SAS v. Sawabeh*

17  *Info. Servs. Co.*, No. 11-cv-4147, 2013 WL 12126742, at \*6-7 (C.D. Cal. Oct. 8,

18  2013) (summary judgment for plaintiff after applying Ninth Circuit precedent, not

19  *Tiffany*); *Univ. Furniture Intern., Inc. v. Frankel*, 835 F. Supp. 2d 35, 48 (M.D. N.C.

20  2011) (summary judgment for plaintiff on Lanham Act; defendant "was responsible

21  for order fulfillment, flow of product, invoicing, and handling customers' order

22  inquiries").  Redbubble is correct: this is contributory infringement.  (SUF ¶ 224.)

23      **C.    Redbubble Is Liable for Its Vicarious Trademark Infringement**

24      Redbubble agrees vicarious infringement arises where "'the defendant and the

25

26  _____

27  [11]  *See also Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 168-69 (E.D.N.Y. 2016) (granting plaintiff summary judgment where

28  defendant "supplied its product to one whom it . . . has reason to know is" infringing).

infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" (Dkt. No. 47-2 at 12.)[12]  Redbubble is liable in all three respects.

*First*, Redbubble does not dispute that it has, at a minimum, an apparent partnership with its fulfillers.  "Liability may be imposed . . . based on an apparent partnership which arises 'because of the actions of a principal or employer in somehow misleading the public into believing that the relationship or the authority exists.'"  *Camowraps, LLC v. Quantum Digital Ventures LLC*, No. 13-cv-6808, 2015 WL 546724, at *4 (E.D. La. Feb. 10, 2015); *see also Deicher v. Corkery*, 205 Cal. App. 2d 654, 662 (1962) ("[T]he law imposes liability upon one who either represents himself or consents to another representing him as a partner in an actual or apparent partnership.").  Through its highest officials and to its investors, Redbubble repeatedly disclosed that its fulfillers are its partners and agents.  (SUF ¶¶ 81-89, 233-247.)  These are not stray, off-hand comments by unspecified employees.  *Cf. Camowraps*, 2015 WL 546724, at *4 ("a single press release" was insufficient evidence).

*Second*, "[v]icarious liability arises when common-law principles of agency impose liability on the defendant for the infringing acts of its agent."  *Navajo Nation v. Urban Outfitters, Inc.*, No. 12-cv-195, 2013 WL 12161826, at *7 (D. N.M. Nov. 6, 2013); *see also ZP No. 314, LLC v. ILM Capital, LLC*, No. 16-cv-521, 2019 WL 4924029, at *12 (S.D. Ala. Sept. 30, 2019) (defendants liable for acting as infringer's "agents with respect to the matters alleged in" the complaint).  Redbubble agrees "a principal may be liable for the acts of its agent." (Dkt. No. 47-2 at 14.)  It admittedly is the "principal," and the fulfiller is the "agent."  (SUF ¶¶ 117, 236, 241-242.)  Redbubble makes the sale on its website, and the fulfiller manufactures the Redbubble product and, per Redbubble's instructions, includes Redbubble-branded hang tags and

---

[12]  *See also David Berg & Co. v. Gatto Intern. Trading Co., Inc.*, 884 F.2d 306, 311 (7th Cir. 1989) ("Every person actively partaking in, lending aid to, or ratifying and adopting such acts is liable equally with the party itself performing these acts.").

1  stickers on the product.  (SUF ¶¶ 38-39, 61-62, 74-75.)

2      ***Third***, Redbubble has joint ownership or control over the infringing products.

3  Redbubble, alone, selects the fulfiller and provides the Redbubble order information

4  to the fulfiller.  (SUF ¶¶ 57, 61, 64-68; *cf.* Dkt. No. 47-2 at 14.)  Redbubble also

5  performs in-person quality checks, visits its fulfillers, ensures the products they make

6  "fit to the Redbubble standard," and instructs them to use Redbubble-branded hang

7  tags and stickers on products shipped to customers.  (SUF ¶¶ 74-75, 84-89.)  This

8  control over the infringing products and the "displays, hangtags, [and] receipts" is

9  sufficient for vicarious infringement.  *Navajo Nation*, 2013 WL 12161826, at *7;

10  *Robinson v. Delicious Vinyl Records Inc.*, No. 13-cv-4111, 2013 WL 3983014, at *6

11  (C.D. Cal. Aug. 1, 2013) (defendant "directly engages" the infringers and "appears to

12  have complete control over the content of all promotional materials").

13      *Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469 (9th

14  Cir. 2015), is instructive.  The plaintiff claimed telemarketers acting on defendant's

15  behalf infringed plaintiff's trademark.  *Id.* at 471-72.  The Ninth Circuit held that the

16  defendant "directs, induces, is aware of, and can control the infringing telemarketing,"

17  as it had the power to approve the telemarketers' scripts, could review certain of their

18  calls, and had the right to stop using their services.  *Id.* at 472-73.  The Ninth Circuit

19  rejected the defendant's claim that "any infringement is traceable to actions by

20  telemarketers for which it has no responsibility."  *Id.* at 474.  Likewise, Redbubble

21  selects which fulfiller to use for an order and then dictates to that fulfiller what product

22  to create, what design to use, what portion of the "base price" the fulfiller will receive,

23  and where the product will be sent.  (SUF ¶¶ 48-49, 61, 64-68.)  Redbubble also visits,

24  monitors, and inspects the fulfillers to ensure "all Redbubble products fit to the

25  Redbubble standard."  (*Id.* ¶¶ 81-89).  Summary judgment is warranted.

26  ## III.   CONCLUSION

27      Accordingly, this Court should grant Plaintiff's Motion in its entirety.

28  Redbubble is liable for counterfeiting and contributory and vicarious infringement.

1   DATED:  May 18, 2020

BROWNE GEORGE ROSS LLP
Keith J. Wesley
Ryan Q. Keech
Jason Y. Kelly

By:    /s/ Keith J. Wesley
        Keith J. Wesley
Attorneys for Plaintiff Y.Y.G.M. SA d.b.a.
Brandy Melville

1563313

-11-

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT