KENNETH B. WILSON (SBN 130009)
ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
jmasur@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
 zdavidson@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>REDBUBBLE INC.,<br><br>                    Defendant. | Case No. 2:19-cv-04618-RGK-FFM<br><br>**DEFENDANT REDBUBBLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Reply to Plaintiff's Statement of Genuine Disputes, Response to Plaintiff's Objections to Evidence, and Supplemental Declaration of Kate Rickert]*<br><br>Hearing Date:  June 1, 2020<br>Time:          9:00 a.m.<br>Courtroom:      850<br>Hon. R. Gary Klausner |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.    ARGUMENT ................................................................................................ 2

    A.    Redbubble Did Not Use A Counterfeit Mark and Therefore Cannot be Liable for Trademark Counterfeiting ................................... 2

    B.    Redbubble Has No Liability to Brandy Melville ................................... 4

        1.    Direct Trademark Infringement ................................................. 4

        2.    Contributory Trademark Infringement Claims ............................ 7

        3.    Vicarious Trademark Infringement Claims ................................. 9

        4.    Common Law Unfair Competition ............................................. 10

    C.    Redbubble Cannot Be Liable for Willful Infringement ....................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.,*
  2015 WL 5311085 (C.D. Cal. 2015) ...........................................................8

*Arcona, Inc. v. Farmacy Beauty, LLC,*
  No. 2:17-cv-07058-ODW, 2019 WL 1260625
  (C.D. Cal., Mar. 19, 2019)..........................................................................2

*Coach, Inc. v. Goodfellow,*
  717 F.3d 498 (6th Cir. 2013) ......................................................................8

*Corbis Corp. v. Amazon.com, Inc.,*
  351 F. Supp. 2d 1090 (W.D. Wash. 2004) ...............................................10

*Free Kick Master LLC v. Apple Inc.,*
  140 F. Supp. 3d 975 (N.D. Cal. 2015) ......................................................10

*Gucci America, Inc. v. Frontline Processing Corp.,*
  721 F. Supp. 2d 228 (S.D.N.Y. 2010).........................................................9

*H-D U.S.A., LLC v. SunFrog, LLC,*
  311 F. Supp.3d 1000 (E.D. Wis. 2018) .......................................................5

*Johnson & Johnson v. South Pointe Wholesale, Inc.,*
  2014 WL 12558573 (E.D.N.Y. Mar. 8, 2014) ............................................6

*Kaloud, Inc. v. Shisha Land Wholesale, Inc.,*
  No. 15-3706-RGK, 2016 WL 7444600 (C.D. Cal. July 11, 2016),
  *aff'd*, 741 F. App'x 393 (9th Cir. 2018) .....................................................2

*Kelly-Brown v. Winfrey,*
  2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) .................................................9

*Lockheed Martin Corp. v. Network Solutions, Inc.,*
  985 F. Supp. 949 (C.D. Cal. 1997),
  *aff'd* 194 F.3d 980 (9th Cir. 1999) .............................................................8

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
  591 F.Supp.2d 1098 (N.D. Cal. 2008) ........................................................9

*Milo & Gabby, LLC v. Amazon.com, Inc.,*
  2015 WL 4394673 (W.D. Wash. July 16, 2015),
  *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) ................................................5, 6

*Ohio State v. Redbubble,*
  369 F. Supp. 3d 840 (S.D. Ohio 2019)..................................................5, 6, 7

*Perfect 10, Inc. v. Giganews, Inc.,*
  847 F. 3d 657 (9th Cir. 2017) ....................................................................4

*Perfect 10, Inc. v. VISA International Service Ass'n,*
    494 F.3d 788 (9th Cir. 2007)......................................................................9, 10

*Rookard v. Mexicoach,*
    680 F.2d 1257 (9th Cir. 1982).........................................................................9

*Rosetta Stone Ltd. v. Google, Inc.,*
    730 F.Supp.2d 531 (E.D. Va. 2010), *aff'd in relevant part,*
    676 F.3d 144 (4th Cir. 2012)...........................................................................10

*Spy Phone Labs LLC v. Google Inc.,*
    2016 WL 6025469 (N.D. Cal. 2016).................................................................8

*Tiffany Inc. v. eBay, Inc.,*
    600 F.3d 93 (2nd Cir. 2010).................................................................4, 5, 7, 8

*Tre Milano, LLC v. Amazon.com, Inc.,*
    No. B234753, 2012 WL 3594380 (Cal. App. 2012)....................................5, 6

*VHT, Inc. v. Zillow Group, Inc.,*
    918 F.3d 723 (9th Cir. 2019)..........................................................................5, 10

**STATUTES**

15 U.S.C. § 1116(d)(1)(B)(i) ....................................................................................2

47 U.S.C. § 230(c)(1) ...............................................................................................10

TMEP § 1401.02.........................................................................................................3

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Brandy Melville has failed to contradict the evidence underlying Redbubble's core showings, as detailed in Redbubble's Reply to Plaintiff's Statement of Genuine Disputes of Material Fact filed herewith.[1] And much of the "evidence" that Brandy Melville cites says nothing resembling the principle for which it is cited.

Brandy Melville cannot establish direct infringement because the Accused Products were "designed and uploaded solely by third-party Sellers"; "Redbubble was unaware of the content of those listings" and "had no involvement with the decision to offer the Accused Products"; and "no Redbubble personnel participated in the manufacturing process, packed or shipped the Accused Products, performed quality control on them prior to shipment, or viewed or handled them at any time before they were picked up from the manufacturer by third-party shippers and delivered to the end customers." [SUF 5-7, 10, 12-13, 30-31] Brandy Melville cannot prove contributory infringement because Redbubble always promptly removed purportedly infringing Brandy Melville listings upon receiving notice of them. [SUF 58, 60] And Redbubble is not liable for vicarious infringement because, setting aside out-of-context "puffery," there is no evidence that Redbubble has the requisite relationship with participants in the Redbubble Marketplace. [SUF 67-68]

Moreover, none of the Accused Products sold through the Redbubble Marketplace are "counterfeits," since they are not stitch for stitch copies of products both listed in the trademark registrations and on which Brandy Melville uses its registered trademarks. [SUF 51-55, 64-66] This issue is paramount, since Brandy Melville's $6,000,000 statutory damages claim depends on a finding of counterfeiting; with that issue gone, this case is worth at most roughly $28,000, Redbubble's service fees on the universe of potentially infringing products at today's exchange rate. [DE# 36-71 (reported in Australian dollars)] Brandy Melville tries to salvage its

---

[1] This document identifies and explains where (if anywhere) cited evidence actually conflicts, making this the best document for identifying any actual factual disputes.

1

counterfeiting charge by alleging that Redbubble "offered for sale" products that Brandy Melville sells and that are covered by its registrations. But the listings it identified either were not "counterfeit" for the reasons mentioned above, or were never publicly available and thus never actually offered for sale. [DE# 40-15; Rickert Supp. Decl. at ¶¶3-8]

As there are no ***genuinely*** disputed material facts regarding these issues, Redbubble is entitled to entry of summary judgment on plaintiff's Complaint.

## I.   <u>ARGUMENT</u>

### A.   <u>Redbubble Did Not Use A Counterfeit Mark and Therefore Cannot be Liable for Trademark Counterfeiting</u>

Counterfeiting requires a showing that Redbubble used ***stitch for stitch*** copies of a Brandy Melville trademarked product that falls within the ***listed product classes*** on a federal trademark registration. 15 U.S.C. § 1116(d)(1)(B)(i); *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 15-3706-RGK, 2016 WL 7444600 (C.D. Cal. July 11, 2016), *aff'd*, 741 F. App'x 393 (9th Cir. 2018); *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058-ODW, 2019 WL 1260625 (C.D. Cal., Mar. 19, 2019). Brandy Melville does not genuinely dispute that Redbubble never made, advertised or sold such products. Opp. at 14. Instead, Brandy Melville now argues that Redbubble ***offered*** counterfeit products for sale. Setting aside that Redbubble has never offered *any* products for sale, Brandy Melville presented no evidence that counterfeits were ever offered by anyone through the Redbubble Marketplace.

Brandy Melville claims that Redbubble offered to sell clothing bearing the LA Lightning Mark (Opp. p. 14), but the cited evidence[2] does not show that this mark was ever offered on stitch for stitch copies of Brandy Melville apparel (or in most

---

[2] The only cited evidence suggesting that anything resembling the LosAngeles Lightning mark was listed for clothing on the Redbubble Marketplace, DE# 36-32 and 36-33, depicts shirts with only the letters LOSA and CALIFOR; they are not in yellow as expressly claimed in the registration; and the logo location is at the side of the bottom third of the shirt, not the middle as on the Brandy Melville products.

instances on apparel at all). And the November 16, 2019 "listing" that Brandy Melville refers to was never publicly accessible, and thus never offered for sale. To the contrary, this listing was held for review by Redbubble's ACE tool and disabled before it could be viewed on the site. [DE# 40-15;[3] Rickert Supp. Decl. ¶ 3]

Brandy Melville similarly argues that Redbubble offered counterfeit clothing bearing the Brandy Heart logo mark on April 28, 2020, but the cited evidence does not show that this mark was ***ever*** offered ***on apparel*** through the Redbubble Marketplace. And once again, before the cited listing became publicly accessible through the Marketplace, it was caught by Redbubble's ACE tool. [*Id.* ¶ 4]

Brandy Melville also argues that Redbubble "offered to counterfeit signs and other pieces of furniture and home goods" bearing the Brandy Heart logo, citing to exhibits showing variants of the logo used by Brandy Melville on wood or metal signs or wall hangings, and separately on a wall hanging offered on the Redbubble Marketplace. But Brandy Melville's registration does not these products. While the registration claims products in Class 20 (Furniture), the PTO separately classifies non-textile wall hangings in Class 27 (Floor Coverings). TMEP § 1401.02. There is no colorable argument that either the Brandy Melville signs or the decorative wall hanging offered through the Redbubble Marketplace are covered by this registration.

Finally, Brandy Melville argues that Redbubble offered products bearing the Brandy Flags logo, without evidence that the cited listings were for products on which Brandy Melville itself used the Brandy Flag logo or that were covered by the registration. And these listings too were either caught by Redbubble's ACE tool and never publicly accessible (Rickert Supp. Decl. ¶¶ 5-8) or listed as a sticker, a product on which Brandy Melville explicitly testified that it deliberately never used the Flags logo. [DE# 40-15; DE# 38-1 at 109:22-110:8]

---

[3] Brandy Melville misleadingly claims that this document was not produced in discovery. The only data in this document that were not produced in RBBM16058-99 (Exh. 64 to Brandy Melville's motion [DE# 35-71]) are listings that Redbubble moderated after the produced report was generated. [Rickert Supp. Decl. ¶ 9]

In sum, there were no sales of the "counterfeit" products purportedly offered by Redbubble, and there is no evidence that Redbubble uploaded or even knew about these listings. Redbubble's only volitional conduct regarding these offers was to remove them upon learning of them, often before they were publicly viewable. That conduct can hardly serve as a basis for counterfeiting liability. For these and the other reasons set forth in Redbubble's moving papers, Redbubble is entitled to summary judgment on Brandy Melville's counterfeiting "claim," and on its prayer for statutory and enhanced damages.[4]

### B.   Redbubble Has No Liability to Brandy Melville

#### 1.   Direct Trademark Infringement

To defeat summary judgment, Brandy Melville was required to present evidence demonstrating that Redbubble made an affirmative "use in commerce" of a mark, rather than merely facilitate or enable "use" of infringing marks. See *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 103 (2nd Cir. 2010). Under the relevant case law, the only facts that Redbubble needs to establish that it did not make any such use are SUF 5-7, which state that Redbubble did not make, offer or sell Accused Products or place advertising on such products. While Brandy Melville purports to dispute these (and 150 other) facts, the evidence it relies on does not create a "genuine" dispute.

While disputing whether "use" requires some volitional act, Brandy Melville does not dispute that the types of conduct that courts have found constitute direct infringement (making, offering, selling, and advertising) all involve a volitional act as Redbubble (and this Circuit) has used the term. Brandy Melville fails to cite to any case law that would undermine Redbubble's interpretation of the Lanham Act. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657 (9th Cir. 2017) (volitional

---

[4] Brandy Melville also failed to establish that Redbubble "intentionally used a counterfeit mark in commerce knowing the mark was counterfeit," or even address the authority imposing this requirement. *State of Idaho Potato Commission v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 25:15.10 (5th ed. 2019).

conduct requirement applies to all torts, including copyright and implicitly also trademark); *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019).

Indeed, the cases analyzing direct infringement liability for online marketplaces have consistently held that they do not engage in volitional conduct that might qualify as a "use" of the marks in question, even if they haven't used those words. *See, e.g.*, *Tiffany*, 600 F. 3d at 103; *Ohio State v. Redbubble,* 369 F. Supp. 3d 840 (S.D. Ohio 2019); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) (*Milo & Gabby I*), *aff'd* 693 F. App'x 879 (Fed. Cir. 2017) (*Milo & Gabby II*); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012).[5] Inexplicably, Brandy Melville relegates its discussion of these cases to a footnote mischaracterizing their holdings.

Instead, relying solely on *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp.3d 1000 (E.D. Wis. 2018), Brandy Melville contends that even if the transactions occur automatically through the Marketplace software, Redbubble is still liable because it designed and controls that software. However, SunFrog was liable, not because it designed its marketplace software, but because it "advertises and sells infringing products, operates printers that print the products, packs them for shipping, ships them, and then processes payment." *Id.* at 1036. Redbubble does none of these.

Brandy Melville also argues that Redbubble is directly liable because it "commissions the design and manufacturing" of products and/or is "responsible for" or "profits from" their sale, but this argument effectively makes Redbubble's point: Redbubble does not itself make or sell the products. Notably, Brandy Melville has not cited any case imposing *direct* liability for "commissioning," "profiting from" or otherwise facilitating the manufacture or sale of infringing products.

---

[5] Although Brandy Melville engages in an extended discussion of Amazon's purported "original model" without any factual citation, Brandy Melville objects to Redbubble's claim to similarities with Amazon's business model as unsupported. However, such similarities were disclosed in the *Amazon* opinions themselves, in Redbubble's employee declarations (DE# 40-2, 3 and 4), and at DE# 49-1.

Brandy Melville argues that Redbubble is liable as a product "seller" without ever referencing the cases requiring that a "seller" must hold title to the products, perhaps because Redbubble never does this. [SUF 27]; *See Milo & Gabby II*, 693 F. App'x at 886; *Milo & Gabby I*, 2015 WL 4394673 at *6; *Tre Milano, supra*, 2012 WL 3594380 at *12. Instead, Brandy Melville tries to distort various unrelated public statements to fit its narrative. For example, Brandy Melville claims more than a dozen times that Redbubble has admitted that it is the "principal" for Marketplace transactions, but ignores that these statements are expressly made "for accounting purposes only" under Australian regulations. [DE# 36-51] Brandy Melville never explains how statements made to comply with foreign finance standards bear on U.S. trademark law. Brandy Melville similarly asserts that Redbubble should be deemed a seller because it "collects and remits sales tax to the State of California for each transaction," but fails to mention that laws in many states, including California, require "marketplace facilitators" like Amazon, eBay and Redbubble to "calculate, collect, and remit sales tax on behalf of sellers." [DE# 49-1][6]

Like Brandy Melville's seller argument, Brandy Melville's argument that Redbubble "advertises and offers for sale" products on its website (*i.e.*, through the listings) lacks teeth. As the record here reflects, [*e.g.*, SUF 12; DE# 40-3 ¶¶ 9, 11], "this argument ignores the fact that Redbubble is not the one placing [] marks on its website. Rather, the marks are uploaded by the independent artists," as is other product information such as product title, tags and price. *Ohio State,* 369 F. Supp.

---

[6] Brandy Melville argues (without factual support) that even if Redbubble is not the seller, it may be liable because it gives customers the impression it is the Seller. But Redbubble repeatedly advises users that the person who uploads the product is the seller. [SUF 20-24] Moreover, the only case Brandy Melville cites for this proposition, *Johnson & Johnson v. South Pointe Wholesale, Inc.*, 2014 WL 12558573 (E.D.N.Y. Mar. 8, 2014), was properly distinguished by the *Ohio State* court because the defendant there also "purchased goods from suppliers and then sold them directly to the customer or otherwise 'bore the risk of loss'" (i.e., they were the actual seller), while Redbubble "lists in several places that the product is from an 'independent artist.'" 369 F. Supp. 3d at 846.

3d at 847. Indeed, because Redbubble never takes title to the products, it cannot offer the products for sale – they aren't Redbubble's to sell.

Brandy Melville's argument that Redbubble advertises products on third-party sites or in advertising emails is equally meritless. Redbubble indisputably does not itself designate, or even have knowledge of the content of, the advertisements that run on those sites or in such emails (which are substantively identical to those sent by Amazon). [DE#40-4 ¶ 34, DE# 49-2 Exhs. E-G] Moreover, Brandy Melville has offered no evidence that the two design marks at issue in this motion ever appeared in advertisements on third-party websites or in such emails.

Finally, Brandy Melville claims that "Redbubble manufactures the counterfeit products through its partners," but this statement actually confirms that all products were made exclusively by third-party manufacturers. [DE# 40-3 ¶¶ 2-11] Where others perform the act (making, offering, advertising or selling) that gives rise to the claim, Redbubble cannot be liable for ***direct*** infringement as a matter of law.

## 2. <u>Contributory Trademark Infringement Claims</u>

Brandy Melville claims Redbubble is liable for contributory infringement, even though Redbubble promptly removed specific listings upon receiving notice, because other listings with the same or similar content remained or reappeared on the Marketplace. This position is directly contrary to the case law interpreting contributory infringement in the context of online marketplaces (authority that Brandy Melville barely mentions in its papers), which consistent holds that "[f]or contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany,* 600 F.3d at 108-09. Thus, while a marketplace has the obligation to promptly remove a listing once it specifically knows of the listing and has evidence that it is infringing, it does not have the duty to search for and remove similar content, since "[t]he use of an

identical or similar mark does not necessarily constitute infringement." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997), *aff'd* 194 F.3d 980 (9th Cir. 1999); *Spy Phone Labs LLC v. Google Inc.*, 2016 WL 6025469 (N.D. Cal. 2016) (defendant had no "duty to preemptively remove [products] that infringed on Plaintiff's trademark"); *Academy of Motion Picture Arts & Sciences v. GoDaddy, Inc.,* 2015 WL 5311085 (C.D. Cal. 2015) ("the law does not 'impose ... an affirmative duty to seek out potentially infringing uses'").

There is no dispute that Redbubble promptly (i.e., within one day) removed every listing identified in Brandy Melville's May 14, 2018 letter. [SUF 58] There is also no dispute that Redbubble promptly removed every listing identified in Brandy Melville's Complaint and began proactively policing for Brandy Melville content upon learning of that document. [SUF 60-61] That other listings, containing similar images or uploaded later, may exist on the Marketplace despite Redbubble's efforts, is irrelevant to Brandy Melville's claims. *Tiffany*, 600 F.3d at 110 (although eBay "knew as a general matter" that counterfeit products were listed on its website, failure to remove them could not create contributory liability).

Rather than address the online marketplace case law, Brandy Melville focuses on *Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013), a "willful blindness" case that is easily distinguishable on its facts, since defendant there had "notice of infringing activity" and knowledge of specific infringing vendors, yet failed to take steps to stop their illegal activities. *Id.* at 504. Here, there is no dispute that not only does Redbubble immediately remove allegedly infringing listings upon receiving notice, but it has an aggressive proactive policing program that has resulted in the disabling or removal of roughly 3,700,000 listings from the Redbubble Marketplace (including 400 Brandy Melville-related listings), and the termination of nearly 670,000 Seller accounts. [SUF 36-50, 57-60] Redbubble's active efforts to combat infringement bears no comparison to that of the flea market defendant in *Coach*, or of any other case in which "willful blindness" has been found.

### 3.   <u>Vicarious Trademark Infringement Claims</u>

Brandy Melville's one-page vicarious infringement argument would extend the scope of such a claim far beyond its current boundaries. Yet other than reciting the legal standard set forth in *Perfect 10, Inc. v. VISA International Service Ass'n*, 494 F.3d 788, 807-08 (9th Cir. 2007), Brandy Melville cites no supporting case law.

Instead of addressing the legal standards for partnerships [*See* DE# 47-2, p. 13], Brandy Melville argues that Redbubble is in a partnership with its fulfillers because its employees have occasionally referred to them as Redbubble's "partners." But "partner" is commonly used in an informal, non-legal sense; "simply 'calling an organization a partnership does not make it one.'" *Kelly-Brown v. Winfrey*, 2012 WL 701262, at *7. (S.D.N.Y. Mar. 6, 2012). Thus, courts have repeatedly and consistently held that "off-hand references to [third-parties like customers] as 'partners' is insufficient to exhibit the type of behavior and relationship that can be considered an actual or apparent partnership" for purposes of establishing vicarious liability. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F.Supp.2d 1098, 1113 (N.D. Cal. 2008); *Gucci America, Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228 (S.D.N.Y. 2010) ("vague, puffery-like references to a 'partnership' … are not enough to support vicarious liability").

Brandy Melville's assertion that Redbubble and fulfillers can bind each other in transactions with third parties is equally flawed. There is no evidence that Redbubble and fulfillers can bind each other at all, let alone in connection with Accused Products, and fulfillers decide independently whether to fulfill Marketplace orders. [SUF 67]. And even if Redbubble had acted as the Sellers' agent as Brandy Melville claims, an agent "has no liability for the torts of" and "absent fault on his part, cannot be vicariously liable for the wrongful acts of his principal." *Rookard v. Mexicoach*, 680 F.2d 1257 (9th Cir. 1982).

Finally, while Redbubble works with manufacturers to ensure that the Marketplace products meet certain standards, there is no "joint control" over the

9

"appearance and content" of the Accused Products, as required under the relevant legal standard. *Rosetta Stone Ltd. v. Google, Inc*., 730 F.Supp.2d 531, 550 (E.D. Va. 2010), *aff'd in relevant part,* 676 F.3d 144, 165 (4th Cir. 2012); *see also Perfect 10, supra* (allegations that direct infringers "operate their businesses according to defendants' rules and regulations and defendants share the profits, transaction by transaction," were insufficient to state a claim for vicarious infringement).

### 4.   Common Law Unfair Competition

Brandy Melville does not dispute that if, its direct infringement claim fails, its unfair competition claim fails with it. But the Communications Decency Act, 47 U.S.C. § 230(c)(1) bars a claim based on merely facilitating the sale of, rather than selling, products. *See, e.g., Free Kick Master LLC v. Apple Inc*., 140 F. Supp. 3d 975 (N.D. Cal. 2015) (CDA bars unfair competition claims against app stores); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004).

### C.   Redbubble Cannot Be Liable for Willful Infringement

Brandy Melville has not disputed that an online marketplace that has received representations from uploaders that they "have all necessary rights and authority to enter into the agreements," and/or that the uploaded content "will not violate the intellectual property rights" of third parties, cannot willfully infringe. *VHT, Inc. v. Zillow Group, Inc.,* 918 F.3d 723 (9th Cir. 2019) Nor has Brandy Melville disputed that Redbubble received such representations. Instead, Brandy Melville argues that Redbubble willfully infringed because it was "willfully blind," but as noted above in the Contributory Infringement section, there is no evidence to support that claim. And there is no evidence that Redbubble was "actually aware" of specific, ongoing infringing activity; when Redbubble learned of such activity, it swiftly put an end to it. Redbubble is thus entitled to a summary determination of no willful infringement.

Dated: May 18, 2020

| | |
|---|---|
| **COASTSIDE LEGAL** | **ZUBER LAWLER & DEL DUCA LLP** |
| KENNETH B. WILSON | JOSHUA M. MASUR / ZACHARY S. DAVIDSON |
| | By: */s/ Joshua M. Masur* |
| | Attorneys for Defendant Redbubble Inc. |