KENNETH B. WILSON (SBN 130009)
 *ken@coastsidelegal.com*
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
 *jmasur@zuberlawler.com*
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
 *zdavidson@zuberlawler.com*
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Avenue, 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>Plaintiff,<br><br>v.<br><br>REDBUBBLE INC.,<br><br>Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br><br>**DEFENDANT REDBUBBLE INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Final Pre-Trial Conf.: June 15, 2020<br>Time: 9:00 a.m.<br>Crtrm.: 850<br>Hon. R. Gary Klausner |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ 6

I.   BACKGROUND OF THE CASE .................................................. 10

II.   PLAINTIFF'S CLAIMS ALLEGED AGAINST DEFENDANT,
ELEMENTS REQUIRED, AND DEFENDANT'S KEY EVIDENCE
IN OPPOSITION (L.R. 16-4.1(A-C)) ........................................... 12

A.   Claim 1: [Direct] Trademark Infringement and Counterfeiting
(15 U.S.C. § 1114) .............................................................. 13

1.   *Elements Required to Establish Plaintiff's Claim for*
*[Direct] Trademark Infringement and Counterfeiting* .............. 13

2.   *Key Evidence in Opposition to Plaintiff's Claim for*
*[Direct] Trademark Infringement and Counterfeiting* .............. 14

B.   Claim 2: False Designation of Origin (15 U.S.C. § 1125(a)) .............. 16

1.   *Elements Required to Establish Plaintiff's Claim for False*
*Designation of Origin* .................................................. 16

2.   *Key Evidence in Opposition to Plaintiff's Claim for False*
*Designation of Origin* .................................................. 17

C.   Claim 3: Common Law Unfair Competition ......................................... 17

1.   *Elements Required to Establish Plaintiff's Claim for*
*Common Law Unfair Competition* ........................................ 17

2.   *Key Evidence in Opposition to Plaintiff's Claim for*
*Common Law Unfair Competition* ........................................ 18

D.   Claim 4: Contributory Trademark Infringement and
Counterfeiting ........................................................................ 18

1.   *Elements Required to Establish Plaintiff's Claim for*
*Contributory Trademark Infringement and Counterfeiting* ....... 18

2.   *Key Evidence in Opposition to Plaintiff's Claim for*
*Contributory Trademark Infringement and Counterfeiting* ....... 20

2911-1006 / 1617712 1

1       E.     Claim 5: Vicarious Trademark Infringement and Counterfeiting ........22

2            1.    *Elements Required to Establish Plaintiff's Claim for*

3                  *Vicarious Trademark Infringement and Counterfeiting*............22

4            2.    *Key Evidence in Opposition to Plaintiff's Claim for*

5                  *Vicarious Trademark Infringement and Counterfeiting*............23

6  III.  DEFENDANT'S AFFIRMATIVE DEFENSES, ELEMENTS, AND

7       KEY EVIDENCE IN SUPPORT (L.R. 16-4.1(D-F)) ................................24

8       A.     First Affirmative Defense – Failure to State a Claim ..........................24

9            1.    *Elements Required to Establish Failure to State a Claim*..........25

10           2.    *Key Evidence in Support of Failure to State a Claim* ...............25

11      B.     Second Affirmative Defense – Failure to Provide Notice ...................25

12           1.    *Elements Required to Establish Failure to Provide Notice* .......25

13           2.    *Key Evidence in Support of Failure to Provide Notice* ..............25

14      C.     Third Affirmative Defense – Lack of Knowledge of Specific

15          Infringement.................................................................................26

16           1.    *Elements Required to Establish Lack of Knowledge of*

17                 *Specific Infringement*................................................................26

18           2.    *Key Evidence in Support of Lack of Knowledge of Specific*

19                 *Infringement*.............................................................................26

20      D.     Fourth Affirmative Defense – Non-Trademark Use.............................26

21           1.    *Elements Required to Establish Non-Trademark Use*...............26

22           2.    *Key Evidence in Support of Non-Trademark Use* ....................27

23      E.     Fifth Affirmative Defense – Ornamental Use......................................28

24           1.    *Elements Required to Establish Ornamental Use* ....................28

25           2.    *Key Evidence in Support of Ornamental Use*...........................28

26      F.     Sixth Affirmative Defense – Fair Use .................................................29

27           1.    *Elements Required to Establish Fair Use* ................................29

28           2.    *Key Evidence in Support of Fair Use* ........................................29

G.    Seventh Affirmative Defense – Protected Speech................................30

    1.    *Elements Required to Establish Protected Speech*....................*30*

    2.    *Key Evidence in Support of Protected Speech* ..........................*30*

H.    Eighth Affirmative Defense – Failure to Mitigate................................31

    1.    *Elements Required to Establish Failure to Mitigate*.................*31*

    2.    *Key Evidence in Support of Failure to Mitigate*.........................*31*

I.    Ninth and Twelfth Affirmative Defenses – Unclean Hands and
Trademark Misuse.................................................................................31

    1.    *Elements Required to Establish Unclean Hands and
Trademark Misuse* ....................................................................*32*

    2.    *Key Evidence in Support of Unclean Hands and
Trademark Misuse* ....................................................................*32*

J.    Tenth Affirmative Defense – Laches/Statute of Limitations................33

    1.    *Elements Required to Establish Statute of Limitations and
Laches* ......................................................................................*33*

    2.    *Key Evidence in Support of Statute of Limitations and
Laches* ......................................................................................*33*

K.    Eleventh Affirmative Defense – Waiver, Acquiescence, or
Estoppel................................................................................................34

    1.    *Elements Required to Establish Waiver and Acquiescence* .......*34*

    2.    *Key Evidence in Support of Waiver and Acquiescence*..............*34*

L.    Thirteenth Affirmative Defense – Conduct of Third Parties ................34

    1.    *Elements Required to Establish Conduct of Third Parties*.........*35*

    2.    *Key Evidence in Support of Conduct of Third Parties* ..............*35*

M.    Fourteenth Affirmative Defense – Unilateral Proactive Conduct ........35

    1.    *Elements Required to Establish Unilateral Proactive
Conduct*....................................................................................*35*

    2.    *Key Evidence in Support of Unilateral Proactive Conduct* .......*35*

|  |  |  |
|---|---|---|
| N. | Fifteenth Affirmative Defense – Reasonable Steps | 36 |
|  | 1. Elements Required to Establish Reasonable Steps | 36 |
|  | 2. Key Evidence in Support of Reasonable Steps | 36 |
| O. | Sixteenth Affirmative Defense – Communications Decency Act Immunity | 36 |
|  | 1. Elements Required to Establish Communications Decency Act Immunity | 36 |
|  | 2. Key Evidence in Support of Communications Decency Act Immunity | 37 |
| P. | Seventeenth Affirmative Defense – Abandonment | 37 |
|  | 1. Elements Required to Establish Abandonment | 37 |
|  | 2. Key Evidence in Support of Abandonment | 38 |
| IV. | STATEMENT OF ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(H)) | 38 |
| V. | STATEMENT OF ISSUES OF LAW (L.R. 16-4.1(I)) | 39 |
| A. | Plaintiff Has Waived the Ability to Pursue Damages | 40 |
| B. | Plaintiff Cannot Obtain Redbubble's Profits | 40 |
| C. | Plaintiff Cannot Obtain Statutory Damages | 40 |
| VI. | BIFURCATION OF ISSUES (L.R. 16-4.3) | 42 |
| VII. | JURY TRIAL (L.R. 16-4.4) | 42 |
| A. | Issues Triable to a Jury as a Matter of Right | 42 |
| B. | Issues Triable to the Court | 43 |
| VIII. | ATTORNEYS' FEES (L.R. 16-4.5) | 45 |
| IX. | ABANDONMENT OF ISSUES (L.R. 16-4.6) | 46 |

## TABLE OF AUTHORITIES

**Cases**

*Adler v. Fed. Republic of Nigeria,*
    219 F.3d 869 (9th Cir. 2000)...........................................................32

*AirWair Int'l Ltd. v. Schultz,*
    84 F. Supp. 3d 943 (N.D. Cal. 2015) ...............................................34

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,*
    457 F.3d 1062 (9th Cir. 2006)...........................................................28

*Binder v. Disability Grp., Inc.,*
    772 F. Supp. 2d 1172 (C.D. Cal. 2011)............................................31

*Brookfield Comms., Inc., v. West Coast Enter. Corp.,*
    174 F.3d 1036 (9th Cir. 1999)....................................................16, 17

*Classical Silk, Inc. v. Dolan Grp., Inc.,*
    No. CV 14-09224, 2016 WL 7638112 (C.D. Cal. Mar. 21, 2016) .................43

*Corbis Corp. v. Amazon.com, Inc.,*
    351 F. Supp. 2d 1090 (W.D. Wash. 2004).......................................37

*Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.,*
    No. EDCV 11-197-RSWL, 2011 WL 3809933 (C.D. Cal. Aug. 25,
    2011).....................................................................................................32

*Doctor's Associates v. QIP Holder LLC,*
    2010 U.S. Dist. LEXIS 14687 (D. Conn. Feb. 19, 2010) ...............43

*Evergreen Safety Council v. RSA Network, Inc.,*
    697 F.3d 1221 (9th Cir. 2012)....................................................41, 42

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.,*
    778 F.3d 1059 (9th Cir. 2015)...........................................................44

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
    76 F.3d 259 (9th Cir. 1996)........................................................13, 27

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*

826 F.2d 837 (9th Cir. 1987) ........................................................................ 32

*Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*,

425 F.3d 708 (9th Cir. 2005) ............................................................ 14, 20, 23

*Int'l Olympic Comm. v. San Francisco Arts & Athletics*,

781 F.2d 733 (9th Cir. 1986) ........................................................................ 41

*International Order of Job's Daughters v. Lindeburg & Co.*,

633 F.2d 912 (9th Cir. 1980) ........................................................................ 28

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,

304 F.3d 829 (9th Cir. 2002) ........................................................................ 33

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,

No. CV 08-04310, 2009 WL 8591607 (C.D. Cal. July 14, 2009) .................. 44

*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.*

285 F.3d 848 (9th Cir. 2002) ........................................................................ 33

*Lindy Pen Co. Inc. v. Bic Pen Corp.*,

14 U.S.P.Q.2d 1528 (C.D. Cal. 1989), *aff'd* 982 F.2d 1400 (9th Cir.

1993) ........................................................................................................... 40

*Lindy Pen Co. Inc. v. Bic Pen Corp.*,

982 F.2d 1400 (9th Cir. 1993) ...................................................................... 40

*Lockheed Martin Corp. v. Network Solutions, Inc.*,

985 F. Supp. 949 (C.D. Cal 1997) ................................................................ 19

*Lorillard Tobacco Co. v. Amouri's Grand Foods*, Inc.,

453 F.3d 377 (6th Cir. 2006) ........................................................................ 13

*LTTB, LLC v. Redbubble Inc.*,

385 F. Supp. 3d 916 (N.D. Cal. 2019) .......................................................... 42

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

572 U.S. 545 (2014) ..................................................................................... 45

*Perfect 10, Inc. v. CCBill LLC*,

488 F.3d 1102 (9th Cir. 2007) ...................................................................... 37

*Perfect 10, Inc. v. Giganews, Inc.*,

    847 F. 3d 657 (9th Cir. 2017) ........................................................................ 27

*Perfect 10, Inc. v. VISA International Service Ass'n*,

    494 F.3d 788 (9th Cir. 2007) ......................................................................... 22

*Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*,

    324 U.S. 806 (1945) ...................................................................................... 32

*Quia Corp. v. Mattel, Inc.*,

    No. C 10-1902, 2011 U.S. Dist. LEXIS 76157 (N.D. Cal. July 14,

    2011) ...................................................................................................... 40, 44

*Reebok Int'l v. Marnatech Enters.*,

    970 F.2d 552 (9th Cir. 1992) ......................................................................... 44

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,

    621 F.3d 981 (9th Cir. 2010) ......................................................................... 34

*Sempra Energy v. Marsh USA, Inc.*,

    390 F. App'x 754 (9th Cir. 2010) ................................................................. 43

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,

    839 F.3d 1179 (9th Cir. 2016) ....................................................................... 45

*The Ohio State University v. Redbubble Inc.*,

    369 F. Supp. 3d 840 (S.D. Ohio 2019) ........................................ 14, 17, 18, 42

*Thrifty-Tel, Inc. v. Bezenek*,

    46 Cal. App. 4th 1559 (1996) ....................................................................... 31

*Tiffany Inc. v. eBay, Inc.*,

    600 F.3d 93 (2d Cir. 2010) ............................................................... 19, 35, 36

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,

    610 F.3d 1171 (9th Cir. 2010) ....................................................................... 44

*TSX Toys, Inc. v. 665, Inc.*,

    No. CV1402400-RGK-TBX, 2015 WL 12746211 (C.D. Cal. Sept. 23,

    2015) ............................................................................................................ 32

2911-1006 / 1617712 1

*VHT, Inc. v. Zillow Group, Inc.*,
     918 F.3d 723 (9th Cir. 2019) .................................................................27, 41

*Vuitton et fils S.A. v. J. Young Enterprises, Inc.*,
     644 F.2d 769 (9th Cir. 1981) .........................................................................28

**Statutes**

15 U.S.C. § 1114 .................................................................................................13, 43

15 U.S.C. § 1115 ........................................................................................................28

15 U.S.C. § 1117 ...........................................................................................40, 41, 45

15 U.S.C. § 1125 .................................................................................................16, 44

15 U.S.C. § 1127 ........................................................................................................13

California Code of Civil Procedure § 338 .................................................................33

Section 230 of the Communications Decency Act, 47 U.S.C. § 230 .................36, 37

**Rules**

Federal Rule of Civil Procedure 12(h)(2) .................................................................25

Federal Rule of Civil Procedure 16 ..........................................................................39

2911-1006 / 1617712 1

Pursuant to Local Rule 16-4, Defendant Redbubble Inc. ("Defendant" or "Redbubble") submits the following Memorandum of Contentions of Fact and Law.

## I.   <u>BACKGROUND OF THE CASE</u>

Redbubble is a global online marketplace platform, hosted at redbubble.com, that was founded in 2006 to give independent artists a meaningful new way to sell their creations. Over two million artists around the world use the Redbubble Marketplace platform to upload and sell their creative designs on high-quality, everyday products such as apparel, stationery, housewares, bags, and wall art.

The Redbubble Marketplace automatically performs various online services to facilitate transactions between those third-party artists (or "Sellers") and their potential customers. The Marketplace software connects Sellers automatically to third-party manufacturers, who print and pack the products, before third-party shippers pick up the products and deliver them to customers, and it provides Sellers access to third-party payment processors who collect and process customer payments. Because the transaction process is entirely Seller-directed and automated by the Redbubble Marketplace software, no Redbubble personnel designed or uploaded, manufactured, offered for sale, sold, handled, distributed, advertised, or for that matter even viewed any of the listings Plaintiff accuses of infringement.

There is a risk that bad actors will abuse any marketplace by attempting to use it to sell unauthorized, infringing, or counterfeit products. However, Redbubble has taken significant steps, in excess of its legal obligations, to prevent such abuses, and has devoted substantial resources toward eliminating third-party infringement on the Marketplace and improving existing anti-piracy measures. Redbubble requires Sellers to confirm that they own and/or have the right to sell the content that they upload and "will not infringe the intellectual property rights or any other rights of any person or entity…," both at the time they sign up as users and again each time they upload listings to the Marketplace. If Redbubble receives notice that particular

1  listings infringe a third-party's intellectual property rights, Redbubble promptly

2  (typically within one business day) removes those listings and notifies the third-

3  party Seller who uploaded them, and will also disable and/or terminate the accounts

4  of users who repeatedly infringe the intellectual property rights of others. Redbubble

5  has removed more than 755,000 listings in response to over 91,500 takedown

6  requests from content owners.

7          Although it has no legal obligation to do so, Redbubble has a dedicated

8  Marketplace Integrity ("MPI") Team that proactively polices the Marketplace for

9  problematic content, including potential infringement of marks belonging to Brandy

10 Melville and over 300 other content owners. These content owners include some of

11 the largest in the world, with large and diverse portfolios of intellectual property

12 rights (i.e., copyrights, trademarks and publicity rights) in properties like TV shows,

13 movies, and musical artists.  Based on information provided by content owners,

14 Redbubble's MPI team uses a combination of proprietary and third-party software to

15 identify potentially infringing listings and scaled or repeated abusers, and manually

16 reviews roughly one-quarter of the new content uploaded each day to identify and

17 disable listings that match Redbubble's policing guidelines.  Redbubble's proactive

18 policing efforts have disabled or removed approximately 3,700,000 listings from the

19 Redbubble Marketplace – about five times as many as in response to takedown

20 requests – and almost 670,000 Seller accounts for policy violations.

21          On May 14, 2018, Redbubble received correspondence from Plaintiff's

22 counsel complaining that certain listings on the site used the phrase "Brandy

23 Melville" as a searchable "tag," and identifying a handful of specific listings. By the

24 next day, Redbubble had removed these listings, and advised Brandy Melville that

25 "if there are any additional specific designs hosted on the marketplace that you

26 would like removed, please identify those for us, and we will ensure that they are

27 promptly removed in a manner consistent with Redbubble's IP and publicity rights

28 policy." Brandy Melville did not identify additional designs, and Redbubble did not

1  hear again from Brandy Melville for over a year, until Brandy Melville filed this

2  lawsuit.

3         Each time that Brandy Melville identified specific listings that it alleged were

4  infringing its marks (including in the Complaint), Redbubble promptly removed the

5  designs identified by Brandy Melville. Upon receiving notice of the Complaint,

6  Redbubble also began proactively policing for the intellectual property that Brandy

7  Melville had identified; Redbubble continues to do so even though Brandy

8  Melville's refusal to cooperate in these efforts to date has made it more difficult.

9         Since Redbubble began proactively policing for rights claimed by Brandy

10  Melville, it has disabled or removed approximately 400 listings, covering around

11  7,200 products, and there have been no sales through the Marketplace of products

12  bearing the images depicted in Brandy Melville's registrations.

13

14  II.    **PLAINTIFF'S CLAIMS ALLEGED AGAINST DEFENDANT,**

15         **ELEMENTS REQUIRED, AND DEFENDANT'S KEY EVIDENCE IN**

16         **OPPOSITION (L.R. 16-4.1(a-c))**

17         Plaintiff asserts USPTO Registration No. 5,238,856 (the "Brandy Heart

18  Mark"), USPTO Registration No. 5,373,397 (the "Brandy Flags Mark"), and

19  USPTO Registration No. 5,748,883 (the "LA Lightning Mark") (collectively, the

20  "Registered Marks").

21         In addition to the Registered Marks, Plaintiff asserts that it owns valid and

22  protectable trademarks in the Brandy Melville name and graphic logo identified on

23  page 3 of the Complaint, as well as variations thereof (e.g., Brandy LA,

24  www.brandymelvilleusa.com, etc.); and the LA Lightning logo depicted on page 3

25  of the Complaint in this action, as well as variations thereof (e.g., different colors).

26

27

28

**A.** **Claim 1: [Direct] Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)**

1. ***Elements Required to Establish Plaintiff's Claim for [Direct] Trademark Infringement and Counterfeiting***

To establish its claim for trademark infringement, plaintiff must establish that:

1. The Registered Marks are valid, protectable trademarks;

2. The plaintiff owns the Registered Marks as a trademark; and

3. The defendant used the Registered Marks in commerce without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.6 (2019) (modified to add "in commerce").

For trademark law purposes, "use in commerce" includes placing an infringing mark on products, via manufacture or otherwise; offering to sell or selling products bearing infringing marks; or applying infringing marks to sales displays or related advertising materials. *See, e.g.*, 15 U.S.C. § 1127; *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259, 264 (9th Cir. 1996); *Lorillard Tobacco Co. v. Amouri's Grand Foods*, Inc., 453 F.3d 377, 381 (6th Cir. 2006).

The Ninth Circuit Manual lacks model instructions for counterfeiting.  To establish its claim for counterfeiting, plaintiff must further establish that:

4. The defendant intentionally used in commerce a "counterfeit" mark;

5. The defendant knew that the mark was a counterfeit;

6. The defendant used the mark in connection with the sale, offering for sale or distribution of goods; and

7. The defendant's use was likely to cause confusion, mistake or to deceive.

For this purpose, a "counterfeit mark" is:

8. A nongenuine mark which is identical with or substantially indistinguishable from a registered mark;

9. The registered mark is registered on the Principal Register for [*and used by the holder of the mark in connection with*] the same goods in connection with which the accused mark is being used;

10. The registered mark is in use; and

11. The accused use is not on or in connection with goods of which the producer was, at the time of production, authorized by the holder of the mark to use the mark for those types of good.

*See* O'MALLEY, GRENIG, & LEE, FED. JURY. PRAC. & INSTR. CIVIL COMPANION HANDBOOK § 6:2 (2019) (bracketed italicized text added); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

To recover damages, the plaintiff has the burden of proving that defendant had either statutory or actual notice that the plaintiff's trademark was registered. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.26 (2019)

2. ***Key Evidence in Opposition to Plaintiff's Claim for [Direct] Trademark Infringement and Counterfeiting***

Redbubble's key evidence in opposition to Plaintiff's claim for direct infringement includes testimony and documents showing that Redbubble did not itself do any of the things that constitute trademark use. Third-party Sellers, not Redbubble, uploaded, listed, advertised, offered, and sold the Accused Products, and transferred title to the purchasers; third-party internet advertising platforms, not Redbubble, chose to serve advertisements for Accused Products to internet users whose histories suggested they might be interested in them; third-party manufacturers, not Redbubble, made the Accused Products; third-party shippers, not Redbubble, delivered the Accused Products to customers; and Redbubble never held title to the Accused Products. *See The Ohio State University v. Redbubble Inc.*, 369 F. Supp. 3d 840 (S.D. Ohio 2019). Redbubble will also offer testimony and

1   documents showing that there is no likelihood that consumers are confused as to
2   whether Redbubble is the source of the Accused Products, since the two registered
3   design marks have no evidence associated with them regarding their strength or
4   recognition among consumers, Brandy Melville sells to a much more narrow market
5   and through different channels than Redbubble, there are differences in the
6   registered design marks and the Accused Products, no consumers have been actually
7   confused as to the source of the Accused Products, the actual seller of the Accused
8   Products is identified on the Redbubble Marketplace search pages and listing pages,
9   and Redbubble did not intend to use (and in fact had no awareness of) Brandy
10  Melville's design marks on products.

11      In addition to the evidence that there was no trademark infringement as set
12  forth above, Redbubble's key evidence in opposition to Plaintiff's claim for
13  counterfeiting includes testimony and documents, in addition to those identified in
14  opposition to Plaintiff's claim for direct infringement of the Registered Marks,
15  showing that (a) no products were ever offered or sold through the Redbubble
16  Marketplace or advertised on or outside the Marketplace that depicted the Brandy
17  Flag logo; (b) no clothing (the only product class covered by the LosAngeles
18  Lightning registration) was ever offered, sold or advertised with the "stitch for
19  stitch" registered design; and (c) the Brandy Heart logo was never used by Brandy
20  Melville on stickers, which were the only Accused Products offered or sold in a
21  product class covered by the Brandy Heart registration. Redbubble will also offer
22  testimony and documents establishing that it did not intentionally use Brandy
23  Melville's Registered Marks, knowing that they were counterfeit, including not only
24  the evidence showing that the marks are not counterfeit, but also evidence that
25  Redbubble is unaware of specific designs uploaded and listed for sale by third-party
26  Sellers on the Marketplace, including specifically the designs for the Accused
27  Products, absent notification from rightsholders; Redbubble didn't make the
28  Accused Products, or even see those products at any point during the manufacturing,

1  sale and shipping process; whenever Brandy Melville notified Redbubble that
2  specific listings infringed Brandy Melville's rights, Redbubble promptly removed
3  them; and Redbubble went beyond its legal obligations by implementing numerous
4  proactive measures to prevent listings that Brandy Melville might consider
5  infringing from being offered for sale on the Redbubble Marketplace, despite
6  Brandy Melville's unwillingness to cooperate with that process. Brandy Melville's
7  own evidence of Redbubble's house marks also precludes a finding of
8  counterfeiting.

9  **B.    Claim 2: False Designation of Origin (15 U.S.C. § 1125(a))**

10            1.    ***Elements Required to Establish Plaintiff's Claim for False***
11                  ***Designation of Origin***

12        A claim for false designation of origin incorporates the allegations of and is
13  essentially the same as a direct trademark infringement claim. *See Brookfield*
14  *Comms., Inc., v. West Coast Enter. Corp.*, 174 F.3d 1036, 1046–47 n.8 (9th Cir.
15  1999).

16        To establish its claim for false designation of origin, plaintiff must establish
17  that:

18        1.    It has valid, protectable trademarks;
19        2.    The plaintiff owns the marks as a trademark; and
20        3.    The defendant used the marks in commerce without the consent of the
21              plaintiff in a manner that is likely to cause confusion among ordinary
22              consumers as to the source, sponsorship, affiliation, or approval of the
23              goods.

24  *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.6 (2019) (modified
25  to add "in commerce").

26        Where plaintiff's false designation of origin claim is based on an unregistered
27  trademark, plaintiff must further establish that such mark is

28        4.    inherently distinctive; or

5.     descriptive, but has acquired a secondary meaning.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.9 (2019).

2.     ***Key Evidence in Opposition to Plaintiff's Claim for False Designation of Origin***

Redbubble's key evidence in opposition to Plaintiff's claim for direct infringement includes testimony and documents showing that Redbubble did not itself do any of the things that constitute trademark use.  Third-party Sellers, not Redbubble, uploaded, listed, advertised, offered, and sold the Accused Products, and transferred title to the purchasers; third-party internet advertising platforms, not Redbubble, chose to serve advertisements for Accused Products to internet users whose histories suggested they might be interested in them; third-party manufacturers, not Redbubble, made the Accused Products; and third-party shippers, not Redbubble, delivered the Accused Products to customers.  *See Ohio State,* 369 F. Supp. 3d 840. Redbubble also incorporates the evidence identified in subsection B above relating to the Direct Trademark Infringement claim.

C.     **Claim 3: Common Law Unfair Competition**

1.     ***Elements Required to Establish Plaintiff's Claim for Common Law Unfair Competition***

A claim for common law unfair competition incorporates the allegations of and is essentially the same as its direct trademark infringement claim. *See Brookfield*, 174 F.3d at 1046–47 n.8.

To establish its claim for common law unfair competition, plaintiff must establish that:

1.     It has valid, protectable trademarks;

2.     The plaintiff owns the marks as a trademark; and

3.     The defendant used the marks in commerce without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary

1  consumers as to the source, sponsorship, affiliation, or approval of the
2  goods.

3  *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.6 (2019) (modified
4  to add "in commerce").

5  Where plaintiff's common law unfair competition is based on an unregistered
6  trademark, plaintiff must further establish that such mark is

7  4.  inherently distinctive; or

8  5.  descriptive, but has acquired a secondary meaning.

9  *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.9 (2019).

10  2.  ***Key Evidence in Opposition to Plaintiff's Claim for Common***
11  ***Law Unfair Competition***

12  Redbubble's key evidence in opposition to Plaintiff's claim for direct
13  infringement includes testimony and documents showing that Redbubble did not
14  itself do any of the things that constitute trademark use.  Third-party Sellers, not
15  Redbubble, uploaded, listed, advertised, offered, and sold the Accused Products, and
16  transferred title to the purchasers; third-party internet advertising platforms, not
17  Redbubble, chose to serve advertisements for Accused Products to internet users
18  whose histories suggested they might be interested in them; third-party
19  manufacturers, not Redbubble, made the Accused Products; and third-party
20  shippers, not Redbubble, delivered the Accused Products to customers.  *See Ohio*
21  *State,* 369 F. Supp. 3d 840. Redbubble also incorporates the evidence identified in
22  subsection B above relating to the Direct Trademark Infringement claim.

23  **D.  Claim 4: Contributory Trademark Infringement and**
24  **Counterfeiting**

25  1.  ***Elements Required to Establish Plaintiff's Claim for***
26  ***Contributory Trademark Infringement and Counterfeiting***

27  To establish its claim for contributory trademark infringement, plaintiff must
28  establish that:

1.     The defendant sold or supplied goods or services to a particular direct infringer;

2.     That particular direct infringer used the goods or services the defendant sold or supplied to infringe the plaintiff's trademark;

3.     The defendant knew or had reason to know that the particular direct infringer would use the goods to infringe the plaintiff's trademark, or that the particular direct infringer was infringing the plaintiff's trademark and the defendant continued to supply its services;

4.     The defendant providing the services to the particular direct infringer had direct control and monitoring of the instrumentality used by the particular direct infringer to infringe; and

5.     The plaintiff was damaged by the infringement.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.21 (2019).

"Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 108-09 (2d Cir. 2010). The mere assertion of infringement in a notice letter "is not sufficient to impute knowledge of infringement to [a defendant]," and "use of an identical or similar mark does not necessarily constitute infringement." *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949, 963 (C.D. Cal 1997).

The Ninth Circuit Manual lacks model instructions for counterfeiting.  To establish its claim for counterfeiting, plaintiff must further establish that:

6.     The defendant intentionally used in commerce a "counterfeit" mark;

7.     The defendant knew that the mark was a counterfeit;

8.     The defendant used the mark in connection with the sale, offering for sale or distribution of goods; and

9.     The defendant's use was likely to cause confusion, mistake or to deceive.

For this purpose, a "counterfeit mark" is:

10. A nongenuine mark which is identical with or substantially indistinguishable from a registered mark;

11. The registered mark is registered on the Principal Register for [*and used by the holder of the mark in connection with*] the same goods in connection with which the accused mark is being used;

12. The registered mark is in use; and

13. The accused use is not on or in connection with goods of which the producer was, at the time of production, authorized by the holder of the mark to use the mark for those types of good.

*See* O'MALLEY, GRENIG, & LEE, FED. JURY. PRAC. & INSTR. CIVIL COMPANION HANDBOOK § 6:2 (2019) (bracketed italicized text added); *Idaho Potato Comm'n*, 425 F.3d at 721.

### 2. ***Key Evidence in Opposition to Plaintiff's Claim for Contributory Trademark Infringement and Counterfeiting***

Redbubble's key evidence in opposition to Plaintiff's claim for contributory infringement includes testimony and documents showing that Redbubble always removed allegedly infringing listings promptly upon receiving notice of claimed infringement from Brandy Melville; Redbubble implemented proactive procedures to prevent allegedly infringing content from being sold; and Redbubble applied its repeat infringer policy to third-party sellers who listed the content in question. Redbubble will also offer testimony and documents showing that there is no likelihood that consumers are confused as to whether the third-party Sellers are the source of the Accused Products, since the two registered design marks have no evidence associated with them regarding their strength or recognition among consumers, Brandy Melville sells to a much more narrow market and through different channels than the third-party Sellers, there are differences in the registered design marks and the Accused Products, no consumers have been actually confused as to the source of the Accused Products, the actual seller of the Accused Products is

1  identified on the Redbubble Marketplace search pages and listing pages, and there is

2  no evidence that the third-party Sellers intended to use Brandy Melville's design

3  marks on products.

4        In addition to the evidence that there was no trademark infringement as set

5  forth above, Redbubble's key evidence in opposition to Plaintiff's claim for

6  counterfeiting includes testimony and documents, in addition to those identified in

7  opposition to Plaintiff's claim for direct infringement of the Registered Marks,

8  showing that (a) no products were ever sold through the Redbubble Marketplace that

9  depicted the Brandy Flag logo; (b) no clothing (the only product class covered by

10 the LosAngeles Lightning registration) was ever sold with the "stitch for stitch"

11 registered design; and (c) the Brandy Heart logo was never used by Brandy Melville

12 on stickers, which were the only Accused Products sold in a product class covered

13 by the Brandy Heart registration. Redbubble will also offer testimony and

14 documents establishing that it did not intentionally use Brandy Melville's Registered

15 Marks, knowing that they were counterfeit, including not only the evidence showing

16 that the marks are not counterfeit, but also evidence that Redbubble is unaware of

17 specific designs uploaded and listed for sale by third-party Sellers on the

18 Marketplace, including specifically the designs for the Accused Products, absent

19 notification from rightsholders; Redbubble didn't make the Accused Products, or

20 even see those products at any point during the manufacturing, sale and shipping

21 process; whenever Brandy Melville notified Redbubble that specific listings

22 infringed Brandy Melville's rights, Redbubble promptly removed them; and

23 Redbubble went beyond its legal obligations by implementing numerous proactive

24 measures to prevent listings that Brandy Melville might consider infringing from

25 being offered for sale on the Redbubble Marketplace, despite Brandy Melville's

26 unwillingness to cooperate with that process. Brandy Melville's own evidence of

27 Redbubble's house marks also precludes a finding of counterfeiting.

28

**E.      Claim 5: Vicarious Trademark Infringement and Counterfeiting**

      1.      ***Elements Required to Establish Plaintiff's Claim for Vicarious Trademark Infringement and Counterfeiting***

The Ninth Circuit Manual lacks model instructions for vicarious trademark infringement.  Ninth Circuit law provides that, to establish its claim for vicarious infringement, plaintiff must establish that the defendant and the particular direct infringer:

    1.  Have an apparent or actual partnership;

    2.      Have authority to bind one another in transactions with third parties; or

    3.      Exercise joint ownership or control over the infringing product.

*See Perfect 10, Inc. v. VISA International Service Ass'n*, 494 F.3d 788, 807-08 (9th Cir. 2007).

The Ninth Circuit Manual lacks model instructions for counterfeiting.  To establish its claim for counterfeiting, plaintiff must further establish that:

    4.      The defendant intentionally used in commerce a "counterfeit" mark;

    5.      The defendant knew that the mark was a counterfeit;

    6.      The defendant used the mark in connection with the sale, offering for sale or distribution of goods; and

    7.      The defendant's use was likely to cause confusion, mistake or to deceive.

For this purpose, a "counterfeit mark" is:

    8.      A nongenuine mark which is identical with or substantially indistinguishable from a registered mark;

    9.      The registered mark is registered on the Principal Register for [*and used by the holder of the mark in connection with*] the same goods in connection with which the accused mark is being used;

    10.     The registered mark is in use; and

11. The accused use is not on or in connection with goods of which the producer was, at the time of production, authorized by the holder of the mark to use the mark for those types of good.

*See* O'MALLEY, GRENIG, & LEE, FED. JURY. PRAC. & INSTR. CIVIL COMPANION HANDBOOK § 6:2 (2019) (bracketed italicized text added); *Idaho Potato Comm'n*, 425 F.3d at 721.

### 2. *Key Evidence in Opposition to Plaintiff's Claim for Vicarious Trademark Infringement and Counterfeiting*

Redbubble's key evidence in opposition to Plaintiff's claim for vicarious infringement includes testimony and documents showing that there is no evidence that Redbubble was apparently or actually in a legal partnership with the third-party manufacturers; the manufacturers all operated independently, were not bound by and could not bind Redbubble, and could and did decide independently whether to fulfill orders routed through the Redbubble Marketplace; and Redbubble lacked authority or joint control over any allegedly infringing products. Redbubble will also offer testimony and documents showing that there is no likelihood that consumers are confused as to whether the third-party Sellers are the source of the Accused Products, since the two registered design marks have no evidence associated with them regarding their strength or recognition among consumers, Brandy Melville sells to a much more narrow market and through different channels than the third-party Sellers, there are differences in the registered design marks and the Accused Products, no consumers have been actually confused as to the source of the Accused Products, the actual seller of the Accused Products is identified on the Redbubble Marketplace search pages and listing pages, and there is no evidence that the third-party Sellers intended to use Brandy Melville's design marks on products.

In addition to the evidence that there was no trademark infringement as set forth above, Redbubble's key evidence in opposition to Plaintiff's claim for counterfeiting includes testimony and documents, in addition to those identified in

1   opposition to Plaintiff's claim for direct infringement of the Registered Marks,

2   showing that (a) no products were ever sold through the Redbubble Marketplace that

3   depicted the Brandy Flag logo; (b) no clothing (the only product class covered by

4   the LosAngeles Lightning registration) was ever sold with the "stitch for stitch"

5   registered design; and (c) the Brandy Heart logo was never used by Brandy Melville

6   on stickers, which were the only Accused Products sold in a product class covered

7   by the Brandy Heart registration. Redbubble will also offer testimony and

8   documents establishing that it did not intentionally use Brandy Melville's Registered

9   Marks, knowing that they were counterfeit, including not only the evidence showing

10  that the marks are not counterfeit, but also evidence that Redbubble is unaware of

11  specific designs uploaded and listed for sale by third-party Sellers on the

12  Marketplace, including specifically the designs for the Accused Products, absent

13  notification from rightsholders; Redbubble didn't make the Accused Products, or

14  even see those products at any point during the manufacturing, sale and shipping

15  process; whenever Brandy Melville notified Redbubble that specific listings

16  infringed Brandy Melville's rights, Redbubble promptly removed them; and

17  Redbubble went beyond its legal obligations by implementing numerous proactive

18  measures to prevent listings that Brandy Melville might consider infringing from

19  being offered for sale on the Redbubble Marketplace, despite Brandy Melville's

20  unwillingness to cooperate with that process. Brandy Melville's own evidence of

21  Redbubble's house marks also precludes a finding of counterfeiting.

22

23  **III.   DEFENDANT'S AFFIRMATIVE DEFENSES, ELEMENTS, AND KEY**

24  **EVIDENCE IN SUPPORT (L.R. 16-4.1(d-f))**

25      **A.   First Affirmative Defense – Failure to State a Claim**

26      The Complaint, and each cause of action therein, fails to state facts sufficient

27  to state a claim on which relief may be granted.

28

1            1.      ***Elements Required to Establish Failure to State a Claim***

2      Although pled as an affirmative defense, Redbubble's first defense, failure to

3   state a claim, merely requires that Plaintiff cannot bear its burden to prove all

4   elements of its claims.  The elements required to establish trademark infringement

5   and counterfeiting, false designation of origin, common law unfair competition,

6   contributory trademark infringement and counterfeiting, and vicarious trademark

7   infringement and counterfeiting, have been set forth above.

8      Failure to state a claim is a nonwaivable defect and can be raised at any time,

9   including at trial. *See* Fed. R. Civ. P. 12(h)(2).

10            2.      ***Key Evidence in Support of Failure to State a Claim***

11      Redbubble's key evidence in support of its defense of failure to state a claim

12   includes the testimony and documents identified in Section II, above.

13      **B.      Second Affirmative Defense – Failure to Provide Notice**

14      Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to

15   provide proper notice of the alleged infringement, which is Plaintiff's burden to

16   prove.

17            1.      ***Elements Required to Establish Failure to Provide Notice***

18      Actual or statutory notice of infringement is an element of Plaintiff's claims

19   for counterfeiting, false designation of origin, common law unfair competition,

20   contributory trademark infringement and counterfeiting, and vicarious trademark

21   infringement and counterfeiting.

22            2.      ***Key Evidence in Support of Failure to Provide Notice***

23      Redbubble's key evidence in support of its defense of failure to provide

24   notice includes the trademark registrations, the testimony and documents showing

25   the use of the asserted marks, and the testimony and documents showing that

26   Plaintiff failed ever to provide a proper notice that particularly listings actually

27   infringed Plaintiff's marks (e.g. that an offer to sell a product bearing the mark

28   created a likelihood of confusion as to the source of the product), or any notice of

1  certain purported marks that it apparently intends to assert at trial, as set forth in

2  Redbubble's Motion in Limine No. 4, to Exclude Evidence and Argument

3  Regarding Trademarks Not Identified in Discovery (DE# 58).

4        **C.**     **Third Affirmative Defense – Lack of Knowledge of Specific**

5                **Infringement**

6        Plaintiff's secondary infringement claims are barred, in whole or in part,

7  because Redbubble lacked actual, specific and/or contemporary knowledge of the

8  alleged infringement.

9           1.     ***Elements Required to Establish Lack of Knowledge of Specific***

10                ***Infringement***

11        Knowledge of specific infringement is an element of Plaintiff's claims for

12  contributory trademark and vicarious trademark infringement and counterfeiting.

13           2.     ***Key Evidence in Support of Lack of Knowledge of Specific***

14                ***Infringement***

15        Redbubble's key evidence in support of its defense of lack of knowledge of

16  specific infringement includes the testimony and documents identified in Section

17  II.D.2, above.

18        **D.**     **Fourth Affirmative Defense – Non-Trademark Use**

19        Plaintiff's claims are barred, in whole or in part, because at least certain of the

20  allegedly infringing uses of Plaintiff's asserted trademark(s) were done other than as

21  a trademark or service mark and thus do not create a likelihood of confusion.

22           1.     ***Elements Required to Establish Non-Trademark Use***

23        Trademark use is an element of Plaintiff's claims for trademark infringement

24  and counterfeiting, false designation of origin, common law unfair competition,

25  contributory trademark infringement and counterfeiting, and vicarious trademark

26  infringement and counterfeiting.

27        Although the Ninth Circuit has not expressly specified the types of conduct

28  that might qualify as "uses" for purposes of direct ***trademark*** infringement, its

copyright infringement opinions provide useful guidance. For example, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017), reaffirmed that direct copyright infringement "requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant," noting that the volitional conduct requirement "stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." And to demonstrate volitional conduct, a copyright plaintiff "must provide some 'evidence showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (citing *Giganews*, 847 F.3d at 666, 670).

This requirement applies with equal force to a trademark infringement claim. Like copyright infringement, trademark infringement is a tort, and therefore should also be subject to a "volitional conduct" requirement under the rationale of *Giganews*. *See Fonovisa*, 76 F.3d at 265 (trademark infringement is a tort). And the types of volitional conduct identified in *VHT* are wholly consistent with the types of conduct that courts have traditionally required for a showing of direct trademark infringement: namely, making or placing a mark on infringing products, or directly advertising, offering or selling those products.

### 2.   *Key Evidence in Support of Non-Trademark Use*

Redbubble's key evidence in support of its defense of non-trademark use includes testimony and documents showing that third-party Sellers, not Redbubble, uploaded, listed, advertised, offered, and sold the Accused Products, and transferred title to the purchasers; third-party internet advertising platforms, not Redbubble, chose to serve advertisements for Accused Products to internet users whose histories suggested they might be interested in them; third-party manufacturers, not Redbubble, made the Accused Products; third-party shippers, not Redbubble,

1  delivered the Accused Products to customers; and Redbubble never held title to the

2  Accused Products, and generally includes the testimony and documents identified in

3  Section II, above.

4        **E.**     **Fifth Affirmative Defense – Ornamental Use**

5        Plaintiff's Lanham Act and unfair competition claims are barred, in whole or

6  in part, because at least certain of the allegedly infringing uses of Plaintiff's asserted

7  trademarks were ornamental in nature and thus do not create a likelihood of

8  confusion.

9           1.    ***Elements Required to Establish Ornamental Use***

10        Ornamental use negates each of Plaintiff's claims for trademark infringement

11  and counterfeiting, false designation of origin, common law unfair competition,

12  contributory trademark infringement and counterfeiting, and vicarious trademark

13  infringement and counterfeiting.

14        Plaintiff cannot prevail on its trademark claims against accused uses of a

15  mark that are aesthetic rather than source-identifying. Aesthetic features are those

16  which are the actual benefit that the consumer wishes to purchase. *See International*

17  *Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980);

18  *Vuitton et fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 774-75 (9th Cir.

19  1981); *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1069

20  (9th Cir. 2006); *see also* 15 U.S.C. § 1115(b)(8)

21           2.    ***Key Evidence in Support of Ornamental Use***

22        Redbubble's key evidence in support of its defense of ornamental use

23  includes testimony and documents describing or showing each allegedly infringing

24  work, including the database reports produced by Redbubble, and evidence that

25  relates to the lack of source-identification of the alleged marks, and generally

26  includes the testimony and documents identified in Section II, above.

27

28

**F.     Sixth Affirmative Defense – Fair Use**

Plaintiff's claims are barred, in whole or in part, because at least certain of the allegedly infringing uses of Plaintiff's asserted trademark(s) were fair uses.

### 1.     *Elements Required to Establish Fair Use*

Fair use negates each of Plaintiff's claims for trademark infringement and counterfeiting, false designation of origin, common law unfair competition, contributory trademark infringement and counterfeiting, and vicarious trademark infringement and counterfeiting.

The defendant makes "classic" fair use of a trademark when the defendant:

1.     Used the mark other than as a trademark or other than to distinguish the defendant's goods from the plaintiff's and to indicate the source of the defendant's goods;

2.     Used the mark fairly and in good faith; and

3.     Used the mark only to describe the defendant's goods or services or their geographic location as those of the defendant's.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.24 (2019).

A defendant makes nominative fair use of a trademark when the defendant:

1.     Uses the mark in connection with the plaintiff's product, which was not readily identifiable without use of that mark;

2.     Used only so much of the mark as was reasonably necessary to identify the product in question; and

3.     Did not do anything in connection with the trademark that would suggest sponsorship or endorsement of the defendant's product or service by the plaintiff.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.25 (2019).

### 2.     *Key Evidence in Support of Fair Use*

Redbubble's key evidence in support of its defense of fair use includes testimony and documents describing or showing each allegedly infringing work,

1  including the database reports produced by Redbubble, and that relate to the lack of

2  source-identification of the alleged marks, or to the extent that they identify

3  Plaintiff, do so for purposes of criticism, and generally includes the testimony and

4  documents identified in Section II, above.

5      **G.**    **Seventh Affirmative Defense – Protected Speech**

6      Plaintiff's claims are barred, in whole or in part, because at least some of the

7  allegedly infringing uses of Plaintiff's asserted trademark(s) were protected speech

8  under the First Amendment of the United States Constitution and the California

9  Constitution.

10          1.    ***Elements Required to Establish Protected Speech***

11      The First Amendment requires that the plaintiff can prevail on its trademark

12  infringement and counterfeiting, false designation of origin, common law unfair

13  competition, contributory trademark infringement and counterfeiting, and vicarious

14  trademark infringement and counterfeiting claims only where it proves that:

15      1.    The alleged infringement of the plaintiff's mark is explicitly misleading

16          as to the source or content of the work, meaning that it explicitly

17          misleads consumers into believing that the plaintiff sponsored or is

18          somehow associated with the allegedly infringing work; and

19      2.    The alleged infringement of the plaintiff's mark is likely to cause

20          confusion about the source of the plaintiff's or the defendant's goods.

21  *See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.19A (2019).

22          2.    ***Key Evidence in Support of Protected Speech***

23      Redbubble's key evidence in support of its defense of protected speech

24  includes testimony and documents showing that Redbubble's key evidence in

25  support of its defense of fair use includes testimony and documents describing or

26  showing each allegedly infringing work, including the database reports produced by

27  Redbubble, and the listings and search results on the Redbubble Marketplace, which

28  identify sources other than Plaintiff and therefore preclude consumer confusion

regarding whether Plaintiff sponsored or is somehow associated with the allegedly infringing work, or that relate to the lack of source-identification of the alleged marks, or to the extent that they identify Plaintiff, do so for purposes of criticism, as well as evidence that neither Redbubble nor the third-party Sellers did anything to explicitly mislead consumers into believing that Brandy Melville is somehow associated with the Accused Products, and generally includes the testimony and documents identified in Section II, above.

### H.   Eighth Affirmative Defense – Failure to Mitigate

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate its alleged damages.

#### 1.   *Elements Required to Establish Failure to Mitigate*

Defendant must show that plaintiff's losses, if any, could have been avoided through reasonable efforts. *See Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1184 (C.D. Cal. 2011) (citing *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1568 (1996)).

#### 2.   *Key Evidence in Support of Failure to Mitigate*

Redbubble's key evidence in support of its defense of failure to mitigate includes testimony and documents showing that, other than brief correspondence in May 2018, Plaintiff failed to timely identify specific alleged infringements when Plaintiff located them or to identify any specific infringements prior to filing suit; and that Plaintiff failed to cooperate with Redbubble to help Redbubble develop policing guidelines that would have facilitated identification of properties over which Plaintiff claimed rights.

### I.   Ninth and Twelfth Affirmative Defenses – Unclean Hands and Trademark Misuse

Plaintiff's claims are barred, in whole or in part, under the doctrines of unclean hands and trademark misuse.

1.   ***Elements Required to Establish Unclean Hands and Trademark Misuse***

Unclean hands and trademark misuse are closely related.  *See, e.g.*, *TSX Toys, Inc. v. 665, Inc.*, No. CV1402400-RGK-TBX, 2015 WL 12746211, at \*9 (C.D. Cal. Sept. 23, 2015).  To prevail on these defenses, a defendant must prove by a preponderance of the evidence that plaintiff's conduct (a) is inequitable and (b) relates to the subject matter of its claims.  *See Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); *Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000); *Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, No. EDCV 11-197-RSWL, 2011 WL 3809933, at \*8 (C.D. Cal. Aug. 25, 2011).

2.   ***Key Evidence in Support of Unclean Hands and Trademark Misuse***

Redbubble's key evidence in support of its defenses of unclean hands and trademark misuse includes testimony and documents showing that Plaintiff has claimed rights in works that it did not originate or create, or that it misappropriated from others (including the "Have a Nice Day" graphic that predated Plaintiff's existence and to which Plaintiff had no rights, for which Plaintiff demanded that Redbubble remove one or more listings), shirts and other materials that used intellectual property belonging to others (including a shirt bearing the famous "you can't sit with us" language misappropriated from the movie "Mean Girls"), and complaints and other materials asserting that Plaintiff's products infringed intellectual property rights of others.  Redbubble's key evidence in support of its defenses of unclean hands and trademark misuse also includes testimony and documents showing that Plaintiff registered the Registered Marks for uses that it has not made (and notwithstanding its representations to the Trademark Office, never

1  intended to make), including the registrations, Plaintiff's documentation of its own
2  products, and its deposition testimony.

3      **J.**      **Tenth Affirmative Defense – Laches/Statute of Limitations**

4      Plaintiff's claims are barred, in whole or in part, under the doctrine of laches
5  and/or the relevant statute of limitations.

6          1.     *Elements Required to Establish Statute of Limitations and*
7                 *Laches*

8      Plaintiff's claims are subject to a three-year statute of limitations. Although
9  there is no statute of limitations under the Lanham Act, courts apply the analogous
10 state statute of limitations, which here is three years under California Code of Civil
11 Procedure § 338. *See* CACI 454; *Karl Storz Endoscopy-America, Inc. v. Surgical*
12 *Technologies, Inc.* 285 F.3d 848, 857 (9th Cir. 2002) (trademark infringement);
13 *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 833-34 and 838 (9th
14 Cir. 2002).

15     Plaintiff's claims are barred by laches upon proof that

16     1.     Plaintiff unreasonably delayed in filing suit; and

17     2.     Defendant suffered prejudice as a result of plaintiff's delay.

18     There is a presumption of unreasonable delay and resulting prejudice when a
19 Plaintiff files suit after the analogous limitations period. *See Jarrow Formulas*, 304
20 F.3d at 835.

21         2.     *Key Evidence in Support of Statute of Limitations and Laches*

22     Redbubble's key evidence in support of its defenses of statute of limitations
23 and laches includes testimony and documents, including the database reports
24 produced by Redbubble that identify each allegedly infringing work and each
25 allegedly infringing sale, showing that alleged infringement predates the limitations
26 period.

27

28

**K.**     **Eleventh Affirmative Defense – Waiver, Acquiescence, or Estoppel**

Plaintiff's claims are barred, in whole or in part, under the equitable doctrines of waiver and acquiescence.  Defendant is abandoning its defense of estoppel.

1.     ***Elements Required to Establish Waiver and Acquiescence***

To prove waiver, defendant must show that plaintiff intentionally relinquished a known right. *See AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 957 (N.D. Cal. 2015).

To prove acquiescence, defendant must show that:

1.     Plaintiff gave its assent or express/implied assurance that it would not assert a right or claim;

2.     The delay between plaintiff's assent and the assertion of the right or claim was not excusable; and

3.     The delay caused the defendant undue prejudice based on defendant's reasonable reliance on plaintiff's affirmative act or deed.

*See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 988 (9th Cir. 2010).

2.     ***Key Evidence in Support of Waiver and Acquiescence***

Redbubble's key evidence in support of its defenses of waiver and acquiescence includes testimony and documents showing that Plaintiff delayed in asserting its rights, including the database reports produced by Redbubble that identify each allegedly infringing work and each allegedly infringing sale, and including the takedown notices sent to Redbubble more than a year before Plaintiff filed suit, during which time Plaintiff never contacted Redbubble, and the policing guidelines that Redbubble developed after Plaintiff filed suit.

**L.**     **Thirteenth Affirmative Defense – Conduct of Third Parties**

Plaintiff's claims are barred, in whole or in part, because the actions complained of, to the extent they occurred, were the result of the conduct of third-parties.

2911-1006 / 1617712 1

1.   ***Elements Required to Establish Conduct of Third Parties***

All of plaintiff's claims require that actions be performed by defendant, not third parties.  *See* Section II, above.

2.   ***Key Evidence in Support of Conduct of Third Parties***

Redbubble's key evidence in support of its defense of conduct of third parties includes testimony and documents identified in Section II, above.

**M.   Fourteenth Affirmative Defense – Unilateral Proactive Conduct**

Plaintiff's claims are barred, in whole or in part, because Redbubble has implemented screening procedures to identify and remove potentially infringing items as soon as reasonably practical, although Redbubble is under no legal obligation to do so.

1.   ***Elements Required to Establish Unilateral Proactive Conduct***

"For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany*, 600 F.3d at 107.  Thus, an alleged contributory infringer who engages in unilateral proactive conduct, such as measures designed to identify and remove infringing materials before receiving actual notice, does not know or have reason to know of specific instances of actual infringement, beyond those for which it received actual notice and addressed upon such receipt; that it addressed upon learning of them. *See, e.g.*, *id.*

2.   ***Key Evidence in Support of Unilateral Proactive Conduct***

Redbubble's key evidence in support of its defense of unilateral proactive conduct includes the testimony and documents identified in Section II.D.2, above.

### N.   Fifteenth Affirmative Defense – Reasonable Steps

Plaintiff's claims are barred, in whole or in part, because Defendant has taken all reasonable steps to remove all items from its website as soon as practical after being made aware of such alleged infringement and/or prohibited use by Plaintiff.

#### 1.   *Elements Required to Establish Reasonable Steps*

"For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany*, 600 F.3d at 107.  Thus, an alleged contributory infringer who takes reasonable steps to remove allegedly infringing material promptly after receiving notice, cannot be liable for contributory infringement. *See, e.g.*, *id.*

#### 2.   *Key Evidence in Support of Reasonable Steps*

Redbubble's key evidence in support of its defense of reasonable steps includes the testimony and documents identified in Section II.D.2, above.

### O.   Sixteenth Affirmative Defense – Communications Decency Act Immunity

Plaintiff's Fifth Cause of Action for Common Law Unfair Competition is barred under Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1).

#### 1.   *Elements Required to Establish Communications Decency Act Immunity*

The immunity provision of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1), states that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," and expressly preempts any state law to the contrary." The CDA provides "broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party

1  user of the service'" – including, in particular, state unfair competition claims.
2  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (affirming
3  summary judgment on unfair competition claim based on CDA); *accord, e.g.*,
4  *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004)
5  (granting summary judgment to Amazon based on CDA where third-party vendors
6  provided the images on which the claim was based)

2.  ***Key Evidence in Support of Communications Decency Act***
***Immunity***

9  Redbubble's key evidence in support of its Section 230 immunity defense
10  includes testimony and documents showing that Redbubble is unquestionably an
11  "interactive computer service," and to the extent Brandy Melville's trademarks
12  appear on the Marketplace, those marks are "provided by another information
13  content provider" – namely, the third-party Sellers.

**P.    Seventeenth Affirmative Defense – Abandonment**

15  Seventeenth Affirmative Defense (Abandonment): Plaintiff's Lanham Act
16  claims are barred because Plaintiff has abandoned the trademarks identified in the
17  Complaint through (a) significant periods of non-use; (b) naked licensing; (c) failure
18  to take any steps necessary to register and/or otherwise protect the Claimed
19  Trademarks; and/or (d) other acts and/or omissions that caused the Claimed
20  Trademarks to lose their significance as marks.

1.  ***Elements Required to Establish Abandonment***

22  The owner of a trademark abandons the right to exclusive use of the
23  trademark when the owner:

24     1.    Discontinues its use in the ordinary course of trade, intending not to
25        resume using it;

26     2.    Acts or fails to act so that the trademark's primary or principal
27        significance or meaning to prospective consumers has become the
28        product itself and not the producer of the product; or

3.   Fails to exercise adequate quality control over the goods sold under the trademark by a licensee.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.22 (2019).

2.   ***Key Evidence in Support of Abandonment***

Redbubble's key evidence in support of its defense of abandonment includes testimony and documents showing that Plaintiff registered the Registered Marks for uses that it has not made, including the registrations, Plaintiff's documentation of its own products, and its deposition testimony.

## IV.   STATEMENT OF ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(H))

The parties have filed timely motions *in limine*, *see* docket nos. 50-61, and are filing herewith their objections to the other's proposed exhibits.

Plaintiff's revised witness list, emailed to Redbubble's counsel at 4:54pm on May 21, 2020 to allow Redbubble's counsel to insert its own witnesses, lists a total of ten witnesses:  Two employees of Plaintiff (Salvatore Rianne and Madison Elkins), who were identified on Plaintiff's Initial Disclosures; three employees of Redbubble (James Toy, Jenny Greenhough, and Arnaud Deshais); Plaintiff's purported expert, Jamie Gerson, who is the subject of Redbubble's Motion in Limine No. 1; and Plaintiff's trial counsel Jason Kelly, and three of Plaintiff's counsel's employees: Philip Paley, Terri Walters, and Francisco Cuellar.

Plaintiff identified Mr. Paley and Ms. Walters during the Rule 16 meet and confer, held on May 6, 2020, and Redbubble objected at that time and again at the meet and confer regarding the parties' motions *in limine*, held two days later.  *See* Exh. A (5/6/2020 email chain).  Redbubble subsequently filed Motion in Limine #7 (DE# 61) seeking to preclude Plaintiff's undisclosed witnesses.  In addition to the reasons identified in the Motion, Redbubble submits that Plaintiff's attempt to add more undisclosed witnesses after the Rule 16 Conference is additionally improper.

1   Moreover, Plaintiff's May 21, 2020 disclosure that it intended to present

2   testimony from its own trial counsel, Jason Kelly, should also be rejected under

3   California Rule of Professional Conduct 3.7(a) (2018), which provides that:

4   A lawyer shall not act as an advocate in a trial in which the lawyer is

5   likely to be a witness unless:

6   (1)   the lawyer's testimony relates to an uncontested issue or matter;

7   (2)   the lawyer's testimony relates to the nature and value of legal

8   services rendered in the case; or

9   (3)   the lawyer has obtained informed written consent* from the

10  client….

11  Even assuming, *arguendo*, that Plaintiff's counsel has obtained informed

12  written consent from its client, as required, Comment 3 to Rule 3.7 states:

13  Notwithstanding a client's informed written consent,* courts retain

14  discretion to take action, up to and including disqualification of a lawyer who

15  seeks to both testify and serve as an advocate, to protect the trier of fact from

16  being misled or the opposing party from being prejudiced. (See, e.g., *Lyle v.*

17  *Superior Court* (1981) 122 Cal.App.3d 470 [175 Cal.Rptr. 918].)

18  Accordingly, Redbubble respectfully requests that the Court either refuse to permit

19  Mr. Kelly to testify, or disqualify him pursuant to *Lyle* and Rule 3.7(a).

20

21  **V.   STATEMENT OF ISSUES OF LAW (L.R. 16-4.1(I))**

22  The parties' legal disputes known to Redbubble are identified in their

23  respective summary judgment motions, pending at this time.  (Dkt. Nos. 36 and 40).

24  Other disputes related to liability issues are identified in sections I and III, *supra*.  In

25  addition, the parties have legal disputes regarding Plaintiff's measure of and

26  entitlement to damages.  Redbubble understands, based on Plaintiff's statements in

27  the Rule 16 meet and confer, that Plaintiff does not intend to seek its actual

28

1  damages, but intends to ask the Court to award it Redbubble's profits and statutory

2  damages.

3      **A.    Plaintiff Has Waived the Ability to Pursue Damages**

4      Redbubble contends that Plaintiff's discovery responses preclude it from

5  seeking damages.  *See generally* Redbubble's Motion in Limine No. 3, to Exclude

6  Evidence and Argument of Damages.  (DE# 59)

7      **B.    Plaintiff Cannot Obtain Redbubble's Profits**

8      Plaintiff also seeks an accounting of Redbubble's profits. Such relief is

9  equitable. *See Quia Corp. v. Mattel, Inc.*, No. C 10-1902, 2011 U.S. Dist. LEXIS

10  76157, at *22-23 (N.D. Cal. July 14, 2011). Accordingly, any accounting is for

11  determination by this Court, not the jury.

12      An accounting is not appropriate in all cases. It is well established that "where

13  there is no intent to capitalize on the trade name of another, an accounting is not

14  warranted." *See, e.g., Lindy Pen Co. Inc. v. Bic Pen Corp*., 14 U.S.P.Q.2d 1528,

15  1530 (C.D. Cal. 1989), *aff'd* 982 F.2d 1400 (9th Cir. 1993). Even assuming

16  *arguendo* that an accounting is appropriate in the present case, it is Plaintiff's

17  burden to prove those revenues reasonably attributable to proven infringements, not

18  merely all revenue. *See Lindy Pen Co. Inc. v. Bic Pen Corp*., 982 F.2d 1400, 1408-

19  09 (9th Cir. 1993). Moreover, Redbubble is entitled to prove appropriate deductions

20  of costs from the relevant revenues, as well as any appropriate apportionment of

21  revenues attributable to factors other than the alleged infringement. *See* 15 U.S.C. §

22  1117(a).

23      **C.    Plaintiff Cannot Obtain Statutory Damages**

24      15 U.S.C. 1117(c) allows a plaintiff to elect, instead of actual damages and

25  profits, statutory damages for use of a counterfeit mark in connection with the sale,

26  offering for sale, or distribution of goods or services, of not less than $1,000 or more

27  than $200,000 per counterfeit mark – or, if the court finds that the use of the

28  counterfeit mark was willful, not more than $2,000,000 per counterfeit mark – per

1  type of goods or services sold, offered for sale, or distributed, as the court considers

2  just.  *See* 15 U.S.C. 1117(c); Ninth Circuit Manual of Model Civil Jury Instructions

3  § 15.28 (2019).

4        As set forth in Section II.A.2 above, Redbubble cannot be liable for

5  counterfeiting.  But even if it could, Redbubble certainly cannot be liable for *willful*

6  counterfeiting. Courts have consistently held that infringement is not knowing or

7  willful where, as here, the defendant reasonably believes that its usage of a

8  trademark is not barred by law. *VHT,* 918 F.3d 723; *Int'l Olympic Comm. v. San*

9  *Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986). In *VHT*, for

10  example, Zillow's user agreement required that brokers, agents, and listing services

11  who uploaded photos and real property listings to its marketplace "represent that

12  they 'have all necessary rights and authority to enter into' the agreements," and that

13  the uploaded content "will not violate the intellectual property rights, or any other

14  rights of any third party." *Id.* at 732 (internal quotations omitted).  There, as here,

15  there was no "evidence showing Zillow exercised control (other than by general

16  operation of its website); selected any material for upload, download, transmission,

17  or storage; or instigated any copying, storage, or distribution of these photos."  *Id.* at

18  734. In light of its users' representations, Zillow was not "'actually aware' of its

19  [users'] infringing activity" notwithstanding having received blanket notice of

20  infringement from VHT; accordingly, the Ninth Circuit reversed the jury's

21  willfulness verdict. *Id.* at 748-49 (quoting *Evergreen Safety Council v. RSA*

22  *Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even

23  after one has been notified of his or her alleged infringement does not constitute

24  willfulness so long as one believes reasonably, and in good faith, that he or she is

25  not infringing.")

26        Like the defendants in *Zillow*, Redbubble was entitled to and did in fact

27  reasonably rely on representations made by its users that they had the right to use

28  the designs they uploaded to the site. And like those defendants, there is no evidence

that Redbubble was "actually aware" of specific, ongoing infringing activity; when Redbubble learned of such activity, it has swiftly put an end to it. Using the language from *Evergreen*, Redbubble "believes reasonably, and in good faith, that [it] is not infringing." Indeed, Redbubble has prevailed in both U.S. cases against it that have gone to judgment. *See Ohio State*, 369 F. Supp. 3d 840; *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019) (granting summary judgment to Redbubble on Lanham Act claims).

## VI.   <u>BIFURCATION OF ISSUES (L.R. 16-4.3)</u>

Redbubble does not at this time request bifurcation, but reserves the right to revisit this issue after the Court decides the pending motions for summary judgment.

## VII.   <u>JURY TRIAL (L.R. 16-4.4)</u>

### A.   Issues Triable to a Jury as a Matter of Right

The following issues are triable to a jury as a matter of right and a timely demand for jury has been made:

1.   Because Plaintiff's election not to seek actual damages leaves it seeking only equitable relief, it is not entitled to a trial by jury on its case in chief.  *See, e.g.*, *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1348 (2019) ("The remedy of an accounting and disgorgement of profits for trademark infringement is equitable in nature and has long been considered that way, so we hold that a plaintiff seeking the defendant's profits in lieu of actual damages is not entitled to a jury trial").  To the extent that Plaintiff's case in chief is tried to a jury nonetheless, Redbubble's First Affirmative Defense (Failure to State a Claim), Second Affirmative Defense (Failure to Provide Notice), Third Affirmative Defense (Lack of Knowledge of Specific Infringement), Fourth Affirmative Defense (Non-Trademark

Use), Fifth Affirmative Defense (Ornamental Use), Thirteenth Affirmative Defense (Conduct of Third Parties), Fourteenth Affirmative Defense (Unilateral Proactive Conduct), and Fifteenth Affirmative Defense (Reasonable Steps), although pled as defenses, identify or relate to elements of Plaintiff's claims on which Plaintiff bears the burden and that Redbubble asserts Plaintiff cannot meet, and should therefore be tried to a jury as well.

2. Redbubble's Sixth Affirmative Defense (Fair Use). *See, e.g.,* Model Civ. Jury Inst. 9th Cir. 15.24, 15.25.

3. Redbubble's Eighth Affirmative Defense (Failure to Mitigate). *See, e.g., Classical Silk, Inc. v. Dolan Grp., Inc.*, No. CV 14-09224, 2016 WL 7638112, at *2 n.1 (C.D. Cal. Mar. 21, 2016).

4. The portion of Redbubble's Tenth Affirmative Defense that addresses the Statute of Limitations. *See, e.g., Sempra Energy v. Marsh USA, Inc*., 390 F. App'x 754, 755 (9th Cir. 2010).

5. Redbubble's Sixteenth Affirmative Defense (Communications Decency Act).  *See, e.g.*, *Doctor's Associates v. QIP Holder LLC*, 2010 U.S. Dist. LEXIS 14687 (D. Conn. Feb. 19, 2010)

6. Redbubble's Seventeenth Affirmative Defense (Abandonment).  *See, e.g.*, Ninth Circuit Manual of Model Civil Jury Instructions § 15.22 (2019).

**B.  Issues Triable to the Court**

The following issues are triable to the Court:

1. Because Plaintiff's election not to pursue actual damages leaves it seeking only equitable relief, it is not entitled to a trial by jury on its case in chief, and the following claims may be triable to the Court:

- Claim 1: [Direct] Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)

- Claim 2: False Designation of Origin (15 U.S.C. § 1125(a)).
- Claim 3: Common Law Unfair Competition.
- Claim 4: Contributory Trademark Infringement and Counterfeiting.
- Claim 5: Vicarious Trademark Infringement and Counterfeiting.

2.   Plaintiff's request for the equitable remedies of injunctive relief and profit disgorgement, *see, e.g.*, *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074–76 (9th Cir. 2015); *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir. 1992); Ninth Circuit Manual of Model Civil Jury Instructions § 15.29 (2019).

3.   Plaintiff's request for statutory damages, *see, e.g.*, *Quia Corp.*, 2011 U.S. Dist. LEXIS 76157, at *22-23.

4.   Redbubble's Seventh Affirmative Defense (First Amendment and/or California Constitution).

5.   Redbubble's Ninth and Twelfth Affirmative Defenses (Unclean Hands; Trademark Misuse). *See, e.g.*, *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, No. CV 08-04310, 2009 WL 8591607, at *19 (C.D. Cal. July 14, 2009).

6.   The portion of Redbubble's Tenth Affirmative Defense that addresses laches. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010).

7.   Redbubble's Eleventh Affirmative Defense (Waiver and Acquiescence).

8.   The parties' requests for attorneys' fees under the Lanham Act, *see* section VIII below.

## VIII. **ATTORNEYS' FEES (L.R. 16-4.5)**

The parties each seek to recover attorneys' fees in accordance with 15 U.S.C. § 1117(a), which provides for such awards in "exceptional cases." To determine exceptionality, the Court must examine "the totality of the circumstances," considering whether the case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180-81 (9th Cir. 2016); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) (interpreting identical fee-shifting provision). *SunEarth*, 839 F.3d at 1180–81 (quoting *Octane Fitness*, 572 U.S. at 554) (internal quotation marks omitted).

Plaintiff's initiating and pursuit of this case qualifies it as exceptional for at least three reasons:

1.  Plaintiff's claims are exceptional given the law and facts set forth in Redbubble's summary judgment motion and opposition to Plaintiff's motion for partial summary judgment;

2.  Plaintiff's pursuit of those claims is exceptional given the equitable defenses presented; and

3.  Plaintiff's litigation conduct, including its failure to disclose its damages evidence or theories, its attempt to assert marks not identified in discovery, and its attempt to use witnesses who were not disclosed, was exceptional as well.

1   **IX.    ABANDONMENT OF ISSUES (L.R. 16-4.6)**

2          As set forth above, Redbubble has abandoned the estoppel component of its

3   Eleventh Affirmative Defense.

4

5   Dated:  May 22, 2020.                  COASTSIDE LEGAL

6                                          KENNETH B. WILSON

7                                          ZUBER LAWLER & DEL DUCA LLP

8                                          JOSHUA M. MASUR
                                           ZACHARY S DAVIDSON

9

10                                         By:  */s/ Joshua M. Masur*

11

12                                             Attorneys for Defendant
                                               Redbubble Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28