KENNETH B. WILSON (SBN 130009)
  ken@coastsidelegal.com
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR (SBN 203510)
  jmasur@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
2000 Broadway Street, Office 154
Redwood City, California 94063
Telephone: (650) 866-5901
Facsimile: (213) 596-5621

ZACHARY S. DAVIDSON (SBN 287041)
  zdavidson@zuberlawler.com
ZUBER LAWLER & DEL DUCA LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>REDBUBBLE INC.,<br><br>  Defendant. | Case No. 2:19-cv-04618-RGK-FFM<br><br>**DEFENDANT REDBUBBLE INC.'S OPPOSITION TO PLAINTIFF Y.Y.G.M. SA d.b.a. BRANDY MELVILLE'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OF NEGATIVE PUBLICITY**<br><br>*[Filed concurrently with [Proposed] Order]*<br><br>Judge: Hon. R. Gary Klausner<br>Date: June 30, 2020<br>Time: 9:00 a.m.<br>Crtrm.: 850 |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Brandy Melville has repeatedly and prominently highlighted its purported positive image in its pretrial filings, and has asserted that its reputation is central to this case. For example, Brandy Melville's Complaint asserts at least three times that it is entitled to relief because Redbubble has harmed its reputation, and its summary judgment motion emphasizes how its brand is purportedly "known in the minds of the consuming public." [Dkt. No. 36 at 3] Indeed, no less than twenty of the trial exhibits proffered by Brandy Melville consist of positive articles, online posts and online comments about its business and reputation. [Dkt. No. 85, Nos. 198-217] Nonetheless, Brandy Melville apparently believes that what's good for the goose is *not* good for the gander, arguing in its MIL 1 that Redbubble should not be able to counter Brandy Melville's showing by introducing negative articles, online posts and online comments contradicting its reputational claims. Indeed, Brandy Melville has asked for a broadly worded order preventing Redbubble from introducing *any* evidence of negative publicity.

To be clear, the evidence of negative conduct by Brandy Melville as reflected in the negative publicity is fairly overwhelming. At a time where body image is so important to teens that more than half of teenage girls use unhealthy weight control behaviors like skipping meals, fasting or smoking cigarettes, vomiting, or taking laxatives [Dkt. No. 50-2, 50-14], Brandy Melville does everything it can to prey on these concerns. Brandy Melville markets itself almost entirely through its Instagram feed and other youth-directed social media, featuring photos of the bodies (typically headless or at least faceless) of "strategically selected 'young, white, skinny, and long-legged' girls that the company calls 'Brandy Girls.'" [Dkt. No. 50-10 at 122] Shoppers entering a Brandy Melville store are greeted with signs that say "One Size Fits Most," a saying that describes its product line, although in reality, most young women find that the single size offered by Brandy Melville doesn't fit them. The "one size" is almost always an XS or S, designed to fit girls with a 24 or 26" waist

1

(size 0 or 2), when the average 16 year old girl has a 31" waist, the average 19 year old woman has a 33.6" waist, and the average American woman is size 16 or 18. [Dkt. No. 50-2, 50-6] The message is further reinforced by Brandy Melville's employees, young girls who are hired and paid based on their "Brandy Girl" appearance, and who have been known to disparage or discourage shoppers who don't look like them. [Dkt. No. 50-6, 50-12] As one blogger notes, "It's an exclusivity thing. Congratulations, you fit in the clothes! Join the club. There will always be the girls who will try to squeeze into it." [Dkt. No. 50-2] But according to a Brandy Melville executive, it's OK if you can't fit into the clothes; you can still buy a bag (or presumably get a sticker). [Dkt. No. 50-2]

While Brandy Melville protests that these articles are inaccurate, its own Instagram page (which Brandy Melville has identified as Trial Exhibit 145) and its website corroborate the charges made about the company's sizing and marketing practices in the exhibits Brandy Melville seeks to have excluded. *See, e.g.,* https://www.brandymelvilleusa.com/clothing/bottoms/shorts (shopping page for Brandy Melville's line of shorts, offered in a single size, S or XS, and exhibited on, in the language of one of the articles Brandy Melville seeks to exclude, "a group of strategically selected young, white, skinny, and long-legged girls"); https://www.instagram.com/brandymelvilleusa/?hl=en (Brandy Melville's Instagram feed presents a similar look.

Brandy Melville apparently recognizes that a discussion of its product strategy and marketing practices will likely (and properly) cause a jury of ordinary people to dislike the company. But Brandy Melville can't have it both ways. Having taken the position that its own press articles are relevant, Brandy Melville cannot seriously contend that Redbubble should be unable to present the same type of evidence to rebut Brandy Melville's claims.

Addressing Brandy Melville's legal arguments in turn, Brandy Melville argues that evidence about its "employees, demographics and clothing sizes" is

irrelevant, yet Brandy Melville itself has put issues concerning its reputation into play. Plaintiff has repeatedly argued that Redbubble's conduct has caused "harm to Brandy Melville's reputation." [*See, e.g.,* Dkt. No. 1 (Complaint) ¶¶ 18, 29 and 39; Dkt. No. 40-18 at 16-17 (Response to Interrogatory No. 11)] The evidence that Brandy Melville seeks to exclude shows that Brandy Melville does not have a "good reputation" to harm, and at the very least is relevant to rebut Brandy Melville's own presentation.

Brandy Melville has also made assertions about such factual issues as its demographics and clothing sizes which are undermined by the evidence in the proffered articles. For example, Brandy Melville claims in its summary judgment motion that its product line includes "a complete line of apparel" that is broadly marketed to "girls and women between the ages of 12 and 30." [Motion at 3] But as corroborated by the evidence that Brandy Melville seeks to exclude, Brandy Melville's product line actually consists of apparel that only a relatively small number of small, very thin girls can wear.

Evidence about issues like demographics and clothing sizes also goes directly to the elements of Brandy Melville's claim, as articulated in the *Sleekcraft* likelihood of confusion factors. For example, evidence of demographics and clothing sizes helps define the pertinent market, and in turn is relevant to "proximity or relatedness of goods," as well as "type of goods and consumer care." *See, e.g., Icebreaker Ltd. v. Gilmar SPA,* 911 F. Supp. 2d 1099, 1104-05, 1108-10 (D. Or. 2011); *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1150-51 (C.D. Cal. 1998). Thus, Brandy Melville's assertion that this evidence is irrelevant is unavailing.

Brandy Melville asserts that the evidence should be barred under Federal Rule of Evidence 403 because it has no probative value and may "turn the jury against" Plaintiff. While Redbubble does not dispute that exposing Brandy Melville's product strategy and marketing practices will likely reflect unfavorably on the

company, as discussed above, Brandy Melville's premise that this evidence has "no probative value" is inaccurate. And it is unlikely that Brandy Melville can or will make good on its threat to "introduce significant evidence disproving the false allegations," both because the allegations are not false, and because none the evidence that Brandy Melville threatens to produce is contained in the 3,000 pages of documents that Brandy Melville produced in this case (although the evidence relates to the *Sleekcraft* factors, and thus to issues on which Brandy Melville bears the burden of proof.)

Brandy Melville argues that Federal Rule of Evidence 404 supports excluding the evidence, but relies on a misquote of the Rule. Redbubble has no idea where Brandy Melville got the language it represents as coming from Rule 404, but the actual rule reads "[E]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that **on a particular occasion** the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the rule goes on to say that such evidence "may be admissible for another purpose." Fed. R. Evid. 404(b)(2). Here, Redbubble does not intend to use evidence of Brandy Melville's product strategy and marketing to show that because Brandy Melville generally fuels body dysmorphia with its product strategy, or "relies upon the online images of a group of strategically selected young, white, skinny, and long-legged girls" in general, that it has done so with respect to Redbubble, or on any "particular occasion." Rather, Redbubble intends to use this evidence to show that Brandy Melville's brand and recognition is much narrower (and therefore much weaker) than Brandy Melville has portrayed, and/or that its target market is different than it has portrayed. Such evidence therefore does not fall within the scope of Rule 404(b)(1).

In a single sentence and without citing to the relevant rule, Brandy Melville asserts that "these exhibits are inadmissible hearsay by third parties whom Redbubble has not identified as potential witnesses in this case." But Redbubble plans to use these documents with Brandy Melville's own identified witnesses.

1  Moreover, articles about Brandy Melville's reputation fall squarely into the
2  "reputation" exception to the hearsay rule, which permits otherwise hearsay
3  statements evidencing "[a] reputation among a person's associates or in the
4  community concerning the person's character." Fed. R. Evid. 803(21). Indeed, at
5  page 6, immediately before its hearsay argument, Brandy Melville expressly
6  characterizes the evidence it seeks to exclude as "character evidence."  And at any
7  rate, Brandy Melville should not be heard to complain about these documents as
8  "hearsay," since its own Exhibit list also contains articles, some from the same
9  sources as Redbubble's. [*See* Dkt. No. 73, Exhs. 198-217]

Finally, at page 2, Brandy Melville appears to extend its Motion beyond the specified documents, asking the Court to exclude any "evidence of negative publicity about Plaintiff," without providing more specifics. *See also* Proposed Order at 2 (seeking to exclude specific exhibits "and evidence similar to them." Brandy Melville has not offered sufficient information to enable Redbubble or the Court to ascertain what else Brandy Melville might be seeking to exclude. In any event, as discussed previously, at least as long as Brandy Melville seeks to present claims based on its reputation, there is no basis for excluding evidence that such reputation is not as stellar as Brandy Melville would like to portray.

For the foregoing reasons, Brandy Melville's Motion in Limine No.1 should be denied.

Dated: June 5, 2020	Respectfully submitted,

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER & DEL DUCA LLP
JOSHUA M. MASUR
ZACHARY S. DAVIDSON

By: */s/ Joshua M. Masur*
    Attorneys for Defendant
    REDBUBBLE INC.

5