KENNETH B. WILSON  (SBN 130009)
  *ken@coastsidelegal.com*
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR  (SBN 203510)
  *jmasur@zuberlawler.com*
ZUBER LAWLER LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

JEFFREY J. ZUBER  (SBN 220830)
  *jzuber@zuberlawler.com*
HEMING XU  (SBN 302461)
  *hxu@zuberlawler.com*
ZUBER LAWLER LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>                        Plaintiff,<br><br>        v.<br><br>REDBUBBLE INC.,<br><br>                        Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br><br>**DEFENDANT REDBUBBLE INC.'S THIRD REVISED MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>==SUBSTANTIVE CHANGES LIMITED TO WITNESS ISSUES (Sec. IV.C, at 25)==<br><br>Final Pre-Trial Conf.: May 24, 2021<br>Time:     9:00 a.m.<br>Crtrm.:   850<br>Hon. R. Gary Klausner |

# **TABLE OF CONTENTS**

**Page**

I.      BACKGROUND OF THE CASE.................................................................... 1

II.     PLAINTIFF'S CLAIMS ALLEGED AGAINST DEFENDANT,
        ELEMENTS REQUIRED, AND DEFENDANT'S KEY EVIDENCE
        IN OPPOSITION (L.R. 16-4.1(A-C))........................................................ 3

        A.      Claim 4: Contributory Trademark Infringement and
                Counterfeiting ........................................................................... 4

                1.      *Elements Required to Establish Plaintiff's Claim for*
                        *Contributory Trademark Infringement and Counterfeiting* ........ 4

                2.      *Key Evidence in Opposition to Plaintiff's Claim for*
                        *Contributory Trademark Infringement and Counterfeiting* ........ 9

III.    DEFENDANT'S AFFIRMATIVE DEFENSES, ELEMENTS, AND
        KEY EVIDENCE IN SUPPORT (L.R. 16-4.1(D-F)) ............................... 11

        A.      First Affirmative Defense – Failure to State a Claim ........................... 11

                1.      *Elements Required to Establish Failure to State a Claim* .......... 11

                2.      *Key Evidence in Support of Failure to State a Claim* ............... 11

        B.      Second Affirmative Defense – Failure to Provide Notice ................... 11

                1.      *Elements Required to Establish Failure to Provide Notice* ....... 11

                2.      *Key Evidence in Support of Failure to Provide Notice* .............. 12

        C.      Third Affirmative Defense – Lack of Knowledge of Specific
                Infringement ........................................................................... 12

1.  *Elements Required to Establish Lack of Knowledge of Specific Infringement* .................................................. 12

2.  *Key Evidence in Support of Lack of Knowledge of Specific Infringement* ................................................. 12

D.  Fourth Affirmative Defense – Non-Trademark Use ............................ 12

1.  *Elements Required to Establish Non-Trademark Use* ............... 12

2.  *Key Evidence in Support of Non-Trademark Use* .................... 13

E.  Fifth Affirmative Defense – Ornamental Use ....................................... 14

1.  *Elements Required to Establish Ornamental Use* ..................... 14

2.  *Key Evidence in Support of Ornamental Use* ........................... 14

F.  Sixth Affirmative Defense – Fair Use ................................................... 15

1.  *Elements Required to Establish Fair Use* ................................. 15

2.  *Key Evidence in Support of Fair Use* ........................................ 16

G.  Seventh Affirmative Defense – Protected Speech ................................ 16

1.  *Elements Required to Establish Protected Speech* .................... 16

2.  *Key Evidence in Support of Protected Speech* .......................... 16

H.  Eighth Affirmative Defense – Failure to Mitigate ................................ 17

1.  *Elements Required to Establish Failure to Mitigate* ................. 17

2.  *Key Evidence in Support of Failure to Mitigate* ....................... 17

I.  Ninth and Twelfth Affirmative Defenses – Unclean Hands and
    Trademark Misuse................................................................18

    1.  *Elements Required to Establish Unclean Hands and*
        *Trademark Misuse* ...............................................18

    2.  *Key Evidence in Support of Unclean Hands and*
        *Trademark Misuse* ...............................................18

J.  Tenth Affirmative Defense – Laches/Statute of Limitations................19

    1.  *Elements Required to Establish Statute of Limitations and*
        *Laches* .............................................................19

    2.  *Key Evidence in Support of Statute of Limitations and*
        *Laches* .............................................................19

K.  Eleventh Affirmative Defense – Waiver, Acquiescence, or
    Estoppel...........................................................................20

    1.  *Elements Required to Establish Waiver and Acquiescence* .......20

    2.  *Key Evidence in Support of Waiver and Acquiescence*..............20

L.  Thirteenth Affirmative Defense – Conduct of Third Parties................21

    1.  *Elements Required to Establish Conduct of Third Parties*.........21

    2.  *Key Evidence in Support of Conduct of Third Parties* ..............21

M.  Fourteenth Affirmative Defense – Unilateral Proactive Conduct ........21

    1.  *Elements Required to Establish Unilateral Proactive*
        *Conduct* ............................................................21

2. *Key Evidence in Support of Unilateral Proactive Conduct* ....... 21

N. Fifteenth Affirmative Defense – Reasonable Steps .............................. 22

1. *Elements Required to Establish Reasonable Steps* ..................... 22

2. *Key Evidence in Support of Reasonable Steps* ........................... 22

O. Seventeenth Affirmative Defense – Abandonment .............................. 22

1. *Elements Required to Establish Abandonment* ........................... 22

2. *Key Evidence in Support of Abandonment* ................................. 23

IV. STATEMENT OF ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(H)) .......................................................................................... 23

A. Plaintiff's Exhibits ................................................................. 23

B. Plaintiff's Witnesses .............................................................. 24

C. Redbubble's Witnesses .......................................................... 25

V. STATEMENT OF ISSUES OF LAW (L.R. 16-4.1(I)) ................................. 26

A. Plaintiff Has Waived the Ability to Pursue Damages .......................... 27

B. Plaintiff Cannot Obtain Redbubble's Profits ................................... 27

C. Plaintiff Cannot Obtain Statutory Damages ................................... 28

VI. BIFURCATION OF ISSUES (L.R. 16-4.3) ............................................. 29

VII. JURY TRIAL (L.R. 16-4.4) ............................................................... 29

A. Issues Triable to a Jury as a Matter of Right ................................... 29

B.      Issues Triable to the Court ................................................................... 30

VIII.  ATTORNEYS' FEES (L.R. 16-4.5) ............................................................... 31

IX.    ABANDONMENT OF ISSUES (L.R. 16-4.6) ................................................. 32

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adler v. Federal Republic of Nigeria,*
219 F.3d 869 (9th Cir. 2000)........................................................................18

*AirWair Int'l Ltd. v. Schultz,*
84 F. Supp. 3d 943 (N.D. Cal. 2015) ..........................................................20

*AMF Inc. v. Sleekcraft Boats,*
599 F.2d 341 (9th Cir. 1979)..........................................................................7

*Amusement Art, LLC v. Life is Beautiful, LLC,*
No. 214CV08290DDPJPR, 2016 WL 6998566 (C.D. Cal. Nov.
29, 2016), *aff'd*, 768 F. App'x 683 (9th Cir. 2019)........................................7

*Arcona, Inc. v. Farmacy Beauty, LLC,*
976 F.3d 1074 (9th Cir. 2020)........................................................................9

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.,*
457 F.3d 1062 (9th Cir. 2006)......................................................................14

*Binder v. Disability Grp., Inc.,*
772 F. Supp. 2d 1172 (C.D. Cal. 2011)........................................................17

*Carter-Wallace, Inc. v. Procter & Gamble Co.,*
434 F.2d 794 (9th Cir. 1970)..........................................................................7

*Chrysler Corp. v. Vanzant,*
44 F. Supp. 2d 1062 (C.D. Cal. 1999)............................................................6

*City of Carlsbad v. Shah,*
666 F. Supp. 2d 1159 (S.D. Cal. 2009) ..........................................................6

*Classical Silk, Inc. v. Dolan Grp., Inc.,*
No. CV 14-09224, 2016 WL 7638112 (C.D. Cal. Mar. 21, 2016) ...............30

*Coach, Inc. v. Asia Pac. Trading Co.,*
676 F. Supp. 2d 914 (C.D. Cal. 2009)..........................................................27

*Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.,*
No. EDCV 11-197-RSWL, 2011 WL 3809933 (C.D. Cal. Aug.
25, 2011)........................................................................................................18

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC,*
372 F. Supp. 3d 1101 (S.D. Cal. 2019) ..........................................................5

*Evergreen Safety Council v. RSA Network, Inc.,*
697 F.3d 1221 (9th Cir. 2012)..............................................................28, 29

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
    778 F.3d 1059 (9th Cir. 2015) ........................................................ 31

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,
    198 F.3d 1143 (9th Cir. 1999) .......................................................... 7

*Fleischer Studios, Inc. v. A.V.E.L.A. Inc.* (*Fleischer I*),
    772 F. Supp. 2d 1155, 1170 (C.D. Cal. 2009), *aff'd*, 636 F.3d
    1115 (9th Cir. 2011), *opinion withdrawn and superseded in part
    on other grounds*, 654 F.3d 958 (9th Cir. 2011) .......................... 5

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.* (*Fleischer II*),
    925 F. Supp. 2d 1067 (C.D. Cal. 2012) .......................................... 5

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987) .......................................................... 18

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
    921 F.3d 1343 (11th Cir. 2019) ...................................................... 29

*Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*,
    425 F.3d 708 (9th Cir. 2005) ............................................................ 9

*International Olympic Comm. v. San Francisco Arts & Athletics*,
    781 F.2d 733 (9th Cir. 1986) .......................................................... 28

*International Order of Job's Daughters v. Lindeburg & Co.*,
    633 F.2d 912 (9th Cir. 1980) .......................................................... 14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) .......................................................... 19

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,
    No. CV 08-04310, 2009 WL 8591607 (C.D. Cal. July 14, 2009) ................ 31

*Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.*
    285 F.3d 848 (9th Cir. 2002) .......................................................... 19

*Lindy Pen Co. Inc. v. Bic Pen Corp.*,
    14 U.S.P.Q.2d 1528 (C.D. Cal. 1989), *aff'd* 982 F.2d 1400 (9th
    Cir. 1993) .......................................................................................... 27

*Lindy Pen Co. Inc. v. Bic Pen Corp.*,
    982 F.2d 1400 (9th Cir. 1993) ........................................................ 27

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
    985 F. Supp. 949 (C.D. Cal 1997) .................................................... 8

*LTTB, LLC v. Redbubble Inc.*,
    385 F. Supp. 3d 916 (N.D. Cal. 2019) .................................... 14, 29

*Lyle v. Superior Court* (1981)
    122 Cal.App.3d 470 .......................................................................... 25

*Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*,
 856 F.2d 1445 (9th Cir. 1988) ................................................................ 8

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*,
 783 F.3d 527 (5th Cir. 2015) ................................................................ 6

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 572 U.S. 545 (2014) ................................................................ 32

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
 578 F.3d 1154 (9th Cir. 2009) ................................................................ 8

*Perfect 10, Inc. v. Giganews, Inc.*,
 847 F. 3d 657 (9th Cir. 2017) ................................................................ 13

*Precision Instr. Mfg. Co. v. Automotive Maint. Mach. Co.*,
 324 U.S. 806 (1945) ................................................................ 18

*Quia Corp. v. Mattel, Inc.*,
 No. C 10-1902, 2011 U.S. Dist. LEXIS 76157 (N.D. Cal. July
 14, 2011) ................................................................ 27, 31

*RDF Media Ltd. v. Fox Broad. Co.*,
 372 F. Supp. 2d 556 (C.D. Cal. 2005) ................................................................ 5

*Reebok Int'l v. Marnatech Enters.*,
 970 F.2d 552 (9th Cir. 1992) ................................................................ 31

*Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*,
 265 F. Supp. 3d 1013 (N.D. Cal. 2017), *aff'd*, 786 F. App'x 662
 (9th Cir. 2019). ................................................................ 8

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
 621 F.3d 981 (9th Cir. 2010) ................................................................ 20

*Sempra Energy v. Marsh USA, Inc.*,
 390 F. App'x 754 (9th Cir. 2010) ................................................................ 30

*Solofill, LLC v. Rivera*,
 No. CV1702956SJOAJWX, 2018 WL 6038287 (C.D. Cal. Aug.
 3, 2018) ................................................................ 7

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
 839 F.3d 1179 (9th Cir. 2016) ................................................................ 32

*The Ohio State University v. Redbubble Inc.*,
 369 F. Supp. 3d 840 (S.D. Ohio 2019) ................................................................ 29

*Thrifty-Tel, Inc. v. Bezenek*,
 46 Cal. App. 4th 1559 (1996) ................................................................ 17

*Tie Tech, Inc. v. Kinedyne Corp.*,
 296 F.3d 778 (9th Cir. 2002) ................................................................ 5, 6

*Tiffany Inc. v. eBay, Inc.*,
    600 F.3d 93 (2d Cir. 2010).............................................8, 21, 22

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
    610 F.3d 1171 (9th Cir. 2010).............................................31

*TSX Toys, Inc. v. 665, Inc.*,
    No. CV1402400-RGK-TBX, 2015 WL 12746211 (C.D. Cal.
    Sept. 23, 2015)...........................................................18

*VHT, Inc. v. Zillow Group, Inc.*,
    918 F.3d 723 (9th Cir. 2019)...........................................13, 28, 29

*Vuitton et fils S.A. v. J. Young Enterprises, Inc.*,
    644 F.2d 769 (9th Cir. 1981).............................................14

*Zobmondo Entm't, LLC v. Falls Media, LLC*,
    602 F.3d 1108 (9th Cir. 2010).............................................6

**Statutes**

15 U.S.C. § 1115(b)(8) ......................................................14

15 U.S.C. § 1117(a) ....................................................27, 31

15 U.S.C. § 1117(c) .........................................................28

15 U.S.C. § 1125(a) .........................................................27

**Rules**

California Code of Civil Procedure § 338 ...................................19

California Rule of Professional Conduct 3.7 (2018)........................24, 25

Fed. R. Civ. P. 12(h)(2) ....................................................11

Fed. R. Evid. 301 ...........................................................6

**Other Authorities**

CACI 454....................................................................19

Ninth Circuit Manual of Model Civil Jury Instructions §
    15.19A (2019)...........................................................16

Ninth Circuit Manual of Model Civil Jury Instructions § 15.21
    (2019) ..................................................................4

Ninth Circuit Manual of Model Civil Jury Instructions § 15.22
    (2019) ...............................................................23, 30

NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.24
(2019) ................................................................................................15, 30

NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.25
(2019) ................................................................................................16, 30

NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.28
(2019) ........................................................................................................28

NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.29
(2019) ........................................................................................................31

O'MALLEY, GRENIG, & LEE, FED. JURY. PRAC. & INSTR. CIVIL
COMPANION HANDBOOK § 6:2 (2019) ....................................................9

U.S. CONSTITUTION, Art. I, Sec. 8, cl. 8 ........................................................5

1   Pursuant to Local Rule 16-4 and the Court's order continuing the Pretrial
2   Conference and Jury Trial (DE#141), Defendant Redbubble Inc. ("Defendant" or
3   "Redbubble") submits the following Revised Memorandum of Contentions of Fact
4   and Law.

5   **I.      BACKGROUND OF THE CASE**

6   Redbubble is a global online marketplace platform, hosted at redbubble.com,
7   that was founded in 2006 to give independent artists a meaningful new way to sell
8   their creations. Over two million artists around the world use the Redbubble
9   Marketplace platform to upload and sell their creative designs on high-quality,
10  everyday products such as apparel, stationery, housewares, bags, and wall art.

11  The Redbubble Marketplace automatically performs various online services
12  to facilitate transactions between those third-party artists (or "Sellers") and their
13  potential customers. The Marketplace software connects Sellers automatically to
14  third-party manufacturers, who print and pack the products, before third-party
15  shippers pick up the products and deliver them to customers, and it provides Sellers
16  access to third-party payment processors who collect and process customer
17  payments. Because the transaction process is entirely Seller-directed and automated
18  by the Redbubble Marketplace software, no Redbubble personnel designed or
19  uploaded, manufactured, offered for sale, sold, handled, distributed, advertised, or
20  for that matter even viewed any of the listings Plaintiff accuses of infringement.

21  There is a risk that bad actors will abuse any marketplace by attempting to use
22  it to sell unauthorized, infringing, or counterfeit products. However, Redbubble has
23  taken significant steps, in excess of its legal obligations, to prevent such abuses, and
24  has devoted substantial resources toward eliminating third-party infringement on the
25  Marketplace and improving existing anti-piracy measures. Redbubble requires
26  Sellers to confirm that they own and/or have the right to sell the content that they
27  upload and "will not infringe the intellectual property rights or any other rights of
28  any person or entity…," both at the time they sign up as users and again each time

2911-1006 / 1797450.1

they upload listings to the Marketplace. If Redbubble receives notice that particular listings infringe a third-party's intellectual property rights, Redbubble promptly (typically within one business day) removes those listings and notifies the third-party Seller who uploaded them, and will also disable and/or terminate the accounts of users who repeatedly infringe the intellectual property rights of others. Redbubble has removed nearly 900,000 listings in response to nearly 120,000 takedown requests from content owners.

Although it has no legal obligation to do so, Redbubble has a dedicated Marketplace Integrity ("MPI") Team that proactively polices the Marketplace for problematic content, including potential infringement of marks belonging to Plaintiff and over 300 other content owners. These content owners include some of the largest in the world, with large and diverse portfolios of intellectual property rights (i.e., copyrights, trademarks and publicity rights) in properties like TV shows, movies, and musical artists.  Based on information provided by content owners, Redbubble's MPI team uses a combination of proprietary and third-party software to identify potentially infringing listings and scaled or repeated abusers, and manually reviews roughly one-quarter of the new content uploaded each day to identify and disable listings that match Redbubble's policing guidelines.  Redbubble's proactive policing efforts have disabled or removed over 4.5 million listings from the Redbubble Marketplace – over five times as many as in response to takedown requests – and nearly three-quarters of a million Seller accounts for policy violations.

On May 14, 2018, Redbubble received correspondence from Plaintiff's counsel complaining that certain listings on the site used the phrase "Brandy Melville" as a searchable "tag," and identifying a handful of specific listings. By the next day, Redbubble had removed these listings, and advised Plaintiff that "if there are any additional specific designs hosted on the marketplace that you would like removed, please identify those for us, and we will ensure that they are promptly

1  removed in a manner consistent with Redbubble's IP and publicity rights policy."

2  Plaintiff did not identify additional designs, and Redbubble did not hear again from

3  Plaintiff for over a year, when Plaintiff filed this lawsuit.

4        Each time that Plaintiff identified specific listings that it alleged were

5  infringing its marks (including in the Complaint), Redbubble promptly removed the

6  designs identified by Plaintiff. Upon receiving notice of the Complaint, Redbubble

7  also began proactively policing for the intellectual property that Plaintiff had

8  identified; Redbubble continues to do so even though Plaintiff's refusal to cooperate

9  in these efforts to date has made it more difficult.

10       Since Redbubble began proactively policing for rights claimed by Plaintiff, it

11  has disabled or removed approximately 400 listings, covering around 7,200

12  products, and there have been no sales through the Marketplace of products bearing

13  the images depicted in Plaintiff's registrations.

14  II.   **PLAINTIFF'S CLAIMS ALLEGED AGAINST DEFENDANT,**

15        **ELEMENTS REQUIRED, AND DEFENDANT'S KEY EVIDENCE IN**

16        **OPPOSITION (L.R. 16-4.1(a-c))**

17       Plaintiff asserts USPTO Registration No. 5,238,856 (the "Brandy Heart

18  Mark"), USPTO Registration No. 5,373,397 (the "Brandy Flags Mark"), and

19  USPTO Registration No. 5,748,883 (the "LA Lightning Mark") (collectively, the

20  "Registered Marks").

21       In addition to the Registered Marks, Plaintiff asserts that it owns valid and

22  protectable trademarks in the Brandy Melville name and graphic logo identified on

23  page 3 of the Complaint, as well as variations thereof (e.g., Brandy LA,

24  www.brandymelvilleusa.com, etc.); and the LA Lightning logo depicted on page 3

25  of the Complaint in this action, as well as variations thereof (e.g., different colors).

26  However, Plaintiff has refused to identify the specific unregistered trademarks that it

27  intends to assert, in discovery or otherwise, notwithstanding Redbubble's repeated

28  requests, including at the August 12, 2020 Further L.R. 16-2 Meet and Confer

1  Teleconference and in email correspondence following up thereon.  *See* Ex. A

2  (email chain confirming 8/12/2020 L.R. 16-2).

3  On July 10, 2020, the Court entered partial summary judgment for Redbubble

4  "as to Brandy Melville's claims for direct infringement, false designation of origin,

5  unfair competition, and vicarious infringement."  (DE#103 at 16.)  Accordingly,

6  Redbubble understands that the sole claim remaining to be tried is Plaintiff's Fourth

7  Claim, for Contributory Trademark Infringement and Counterfeiting; counsel for

8  Redbubble has communicated as much to counsel for Plaintiff, without any

9  indication of disagreement by Plaintiff.

10  **A.      Claim 4: Contributory Trademark Infringement and**

11  **Counterfeiting**

12  1.      ***Elements Required to Establish Plaintiff's Claim for***

13  ***Contributory Trademark Infringement and Counterfeiting***

14  To establish its claim for contributory trademark infringement, plaintiff must

15  establish that:

16  1.      The defendant sold or supplied goods or services to a particular direct

17  infringer;

18  2.      That a particular direct infringer used the goods or services the

19  defendant sold or supplied to infringe the plaintiff's trademark;

20  3.      The defendant knew or had reason to know that the particular direct

21  infringer would use the goods to infringe the plaintiff's trademark, or

22  that the particular direct infringer was infringing the plaintiff's

23  trademark and the defendant continued to supply its services;

24  4.      The defendant providing the services to the particular direct infringer

25  had direct control and monitoring of the instrumentality used by the

26  particular direct infringer to infringe; and

27  5.      The plaintiff was damaged by the infringement.

28  *See* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.21 (2019).

A registered or unregistered trademark is infringed if a plaintiff establishes:
"(1) ownership of [a valid] trademark at issue; (2) use by [a direct infringer], in
commerce, without authorization, of the plaintiff's mark; and (3) that [direct
infringer's] use of the mark is likely to cause confusion." *Fleischer Studios, Inc. v.
A.V.E.L.A., Inc.* (*Fleischer II*), 925 F. Supp. 2d 1067, 1073 (C.D. Cal. 2012).
Trademark protection does not exist simply because a visual expression has an
"artistic" or "unique style," *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 372 F.
Supp. 3d 1101, 1127 (S.D. Cal. 2019) (internal quotation marks and citations
omitted), and not "every incident of visual expression would be subject to . . .
trademark protection"; otherwise, "copyright[s]" would effectively "last in
perpetuity," in violation of Article I, Section 8, clause 8 of the U.S. Constitution.
*RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 564 (C.D. Cal. 2005).  A
valid mark must "indicate[] a single source" of goods or services.  *Fleischer Studios,
Inc. v. A.V.E.L.A. Inc.* (*Fleischer I*), 772 F. Supp. 2d 1155, 1170 (C.D. Cal. 2009),
*aff'd*, 636 F.3d 1115 (9th Cir. 2011), *opinion withdrawn and superseded in part on
other grounds*, 654 F.3d 958 (9th Cir. 2011).  Also, a plaintiff asserting infringement
of an unregistered mark "must identify" the "mark" and show its "distinctiveness"
and "nonfunctionality."  *RDF*, 372 F. Supp. 2d at 562.

A "plaintiff retains the ultimate burden of persuasion in a trademark
infringement action, namely proof of infringement." *Tie Tech, Inc. v. Kinedyne
Corp.*, 296 F.3d 778, 783 (9th Cir. 2002).  "A necessary concomitant to proving
infringement is, of course, having a valid trademark….  [T]he plaintiff in an
infringement action with a registered mark is given the prima facie or presumptive
advantage on the issue of validity, thus shifting the burden of production to the

2911-1006 / 1797450.1

defendant to prove otherwise."[1]  *Id.*  "[A]ny presumptions accompanying a federal trademark registration are applicable only when the registration holder is suing someone using the mark on goods covered by the registration."  *Chrysler Corp. v. Vanzant*, 44 F. Supp. 2d 1062, 1070 n.7 (C.D. Cal. 1999).  Where a mark is registered without evidence of secondary meaning, the mark is merely presumed to be inherently distinct, as opposed to having secondary meaning.  *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 537 n.1 (5th Cir. 2015) ("Indeed, there is no evidence in the record that the PTO examined evidence of secondary meaning. We therefore presume inherent distinctiveness.").

"If the plaintiff establishes that a mark has been properly registered, the burden [of production] shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable."  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010)."  "[A]ssuming the defendant can demonstrate through law, … facts, or a combination thereof that the mark is invalid, the evidentiary bubble bursts."  *Tie Tech*, 296 F.3d at 783.  "Once the presumption of validity is overcome … the mark's registration is merely evidence 'of registration,' nothing more."  *Id.*

"'[T]he non-registrant can rebut the presumption [that plaintiff owns a valid trademark] by showing that [plaintiff] had not established valid ownership rights in the mark at the time of registration.'"  *City of Carlsbad v. Shah*, 666 F. Supp. 2d 1159, 1167–68 (S.D. Cal. 2009) (citation omitted).  The presumption of validity may be overcome through evidence that a registered mark is not actually a "source identifier."  *Amusement Art, LLC v. Life is Beautiful, LLC*, No.

---

[1] *See also* Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.").

214CV08290DDPJPR, 2016 WL 6998566, at *7 (C.D. Cal. Nov. 29, 2016), *aff'd*, 768 F. App'x 683 (9th Cir. 2019).  "When considering the distinctiveness of a non-verbal trademark or trade dress," courts "consider whether (1) the claimed design or shape is a common, basic shape or design, (2) the trade dress is unique or unusual in a particular field, or (3) the trade dress is a mere refinement of a commonly adopted and well-known form of ornamentation for a particular class of goods which consumers view as mere ornamentation."  *Solofill, LLC v. Rivera*, No. CV1702956SJOAJWX, 2018 WL 6038287, at *3 (C.D. Cal. Aug. 3, 2018) (citation omitted).  "Courts have generally set a high bar for finding inherent distinctiveness" and inquire as to "'whether the design, shape or combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin.'"  *Id.* (citation omitted).  "The test of secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is directed towards the consumer's attitude about the mark in question: does it denote to him 'a single thing coming from a single source?'"  *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970).  "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant."  *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).  "'Copying is only evidence of secondary meaning if the defendant's intent in copying is to confuse consumers and pass off his product as the plaintiff's.'"  *Solofill*, 2018 WL 6038287, at *7 (citation and alteration omitted).

Likelihood of confusion is assessed in light of the eight factors identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979): "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual

confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines." A trademark's strength depends on "its degree of recognition in the minds of the relevant customer class" as a source-identifier for goods or services. *Miss World (UK) Ltd. v. Mrs. Am. Pageants, Inc.*, 856 F.2d 1445, 1449 (9th Cir. 1988) (internal quotation marks and citation omitted). "When similar marks permeate the marketplace, the strength of the mark decreases," *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009), and "[w]here competing marks have been in use for a significant period of time, lack of actual confusion is significant." *Sazerac Co., Inc. v. Fetzer Vineyards, Inc.*, 265 F. Supp. 3d 1013, 1036 (N.D. Cal. 2017) (internal quotation marks, alterations, and citation omitted), *aff'd*, 786 F. App'x 662 (9th Cir. 2019).

"Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 108-09 (2d Cir. 2010). The mere assertion of infringement in a notice letter "is not sufficient to impute knowledge of infringement to [a defendant]," and "use of an identical or similar mark does not necessarily constitute infringement." *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949, 963 (C.D. Cal 1997).

The Ninth Circuit Manual lacks model instructions for counterfeiting, which is not actually a separate claim, but rather separate relief that is recoverable in a small subset of infringement cases. To establish its entitlement to counterfeiting remedies, plaintiff must further establish that:

6. The defendant intentionally used in commerce a "counterfeit" mark;

7. The defendant knew that the mark was a counterfeit;

8. The mark was used in connection with the sale, offering for sale or distribution of goods; and

9. The [~~defendant's~~] use was likely to cause confusion, mistake or to deceive.

For this purpose, a "counterfeit mark" is:

10.    A nongenuine mark which is identical with or substantially indistinguishable from a registered mark;

11.    The registered mark is registered on the Principal Register for [*and used by the holder of the mark in connection with*] the same goods in connection with which the accused mark is being used;

12.    The registered mark is in use; and

13.    The accused use is not on or in connection with goods of which the producer was, at the time of production, authorized by the holder of the mark to use the mark for those types of good.

*See* O'MALLEY, GRENIG, & LEE, FED. JURY. PRAC. & INSTR. CIVIL COMPANION HANDBOOK § 6:2 (2019) (bracketed italicized text added); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).  Recent Ninth Circuit case law requires the plaintiff to prove likelihood of confusion, even where counterfeiting is alleged.  "[E]ven assuming the marks are identical, there may be no presumption of consumer confusion if the products themselves are not identical…. Further, it is implausible that a consumer would be deceived [where] products had their respective housemarks … prominently on the packaging." *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1080-81 (9th Cir. 2020) (citations omitted).

### 2.    *Key Evidence in Opposition to Plaintiff's Claim for Contributory Trademark Infringement and Counterfeiting*

Redbubble's key evidence in opposition to Plaintiff's claim for contributory infringement includes testimony and documents showing that Redbubble always removed allegedly infringing listings promptly upon receiving notice of claimed infringement from Plaintiff; Redbubble implemented proactive procedures to prevent allegedly infringing content from being sold; and Redbubble applied its repeat infringer policy to third-party sellers who listed the content in question. Redbubble will also offer testimony and documents showing that there is no

likelihood that consumers are confused as to whether the third-party Sellers are the source of the Accused Products, since the registered design marks have no evidence associated with them regarding their strength or recognition among consumers, Plaintiff sells to a much more narrow market and through different channels than the third-party Sellers, there are differences in the registered design marks and the Accused Products, no consumers have been actually confused as to the source of the Accused Products, the actual seller of the Accused Products is identified on the Redbubble Marketplace search pages and listing pages, and there is no evidence that the third-party Sellers intended to use Plaintiff's design marks on products.

In addition to the evidence that there was no trademark infringement as set forth above, Redbubble's key evidence in opposition to Plaintiff's claim for counterfeiting includes testimony and documents, in addition to those identified in opposition to Plaintiff's claim for contributory infringement of the Registered Marks, showing that (a) no products were ever sold through the Redbubble Marketplace that depicted the Brandy Flag logo; (b) no clothing (the only product class covered by the LosAngeles Lightning registration) was ever sold with the "stitch for stitch" registered design; and (c) the Brandy Heart logo was never used by Plaintiff on stickers, which were the only Accused Products sold in a product class covered by the Brandy Heart registration. Redbubble will also offer testimony and documents establishing that it did not intentionally use Plaintiff's Registered Marks, knowing that they were counterfeit, including not only the evidence showing that the marks are not counterfeit, but also evidence that Redbubble is unaware of specific designs uploaded and listed for sale by third-party Sellers on the Marketplace, including specifically the designs for the Accused Products, absent notification from rightsholders; Redbubble didn't make the Accused Products, or even see those products at any point during the manufacturing, sale and shipping process; whenever Plaintiff notified Redbubble that specific listings infringed Plaintiff's rights, Redbubble promptly removed them; and Redbubble went beyond

its legal obligations by implementing numerous proactive measures to prevent listings that Plaintiff might consider infringing from being offered for sale on the Redbubble Marketplace, despite Plaintiff's unwillingness to cooperate with that process. Plaintiff's own evidence of Redbubble's housemarks also precludes a finding of counterfeiting.

## III.   DEFENDANT'S AFFIRMATIVE DEFENSES, ELEMENTS, AND KEY EVIDENCE IN SUPPORT (L.R. 16-4.1(d-f))

### A.   First Affirmative Defense – Failure to State a Claim

The Complaint, and each cause of action therein, fails to state facts sufficient to state a claim on which relief may be granted.

#### 1.   *Elements Required to Establish Failure to State a Claim*

Although pled as an affirmative defense, Redbubble's first defense, failure to state a claim, merely requires that Plaintiff cannot bear its burden to prove all elements of its claim.  The elements required to establish contributory trademark infringement and counterfeiting have been set forth above.

Failure to state a claim is a nonwaivable defect and can be raised at any time, including at trial. *See* Fed. R. Civ. P. 12(h)(2).

#### 2.   *Key Evidence in Support of Failure to State a Claim*

Redbubble's key evidence in support of its defense of failure to state a claim includes the Complaint, as well as the testimony and documents identified in Section II, above.

### B.   Second Affirmative Defense – Failure to Provide Notice

Plaintiff's claim is barred, in whole or in part, because Plaintiff failed to provide proper notice of the alleged infringement, which is Plaintiff's burden to prove.

#### 1.   *Elements Required to Establish Failure to Provide Notice*

Actual notice of infringement is an element of Plaintiff's claim for contributory trademark infringement and counterfeiting.

2.     ***Key Evidence in Support of Failure to Provide Notice***

Redbubble's key evidence in support of its defense of failure to provide notice includes the testimony and documents showing that Plaintiff failed ever to provide a proper notice that particularly listings actually infringed Plaintiff's marks (e.g. that an offer to sell a product bearing the mark created a likelihood of confusion as to the source of the product), or any notice of certain purported marks that it apparently intends to assert at trial, as set forth in Redbubble's Motion in Limine No. 4, to Exclude Evidence and Argument Regarding Trademarks Not Identified in Discovery (DE#58).

**C.     Third Affirmative Defense – Lack of Knowledge of Specific Infringement**

Plaintiff's contributory infringement claim is barred, in whole or in part, because Redbubble lacked actual, specific and/or contemporary knowledge of the alleged infringement.

1.     ***Elements Required to Establish Lack of Knowledge of Specific Infringement***

Knowledge of specific infringement is an element of Plaintiff's claim for contributory trademark and counterfeiting.

2.     ***Key Evidence in Support of Lack of Knowledge of Specific Infringement***

Redbubble's key evidence in support of its defense of lack of knowledge of specific infringement includes the testimony and documents identified in Section II.A.2, above.

**D.     Fourth Affirmative Defense – Non-Trademark Use**

Plaintiff's claim is barred, in whole or in part, because at least certain of the allegedly infringing uses of Plaintiff's asserted trademark(s) were done other than as a trademark or service mark and thus do not create a likelihood of confusion.

1.     ***Elements Required to Establish Non-Trademark Use***

2911-1006 / 1797450.1

1   Trademark use is an element of Plaintiff's claim for contributory trademark

2   infringement and counterfeiting.

3   Although the Ninth Circuit has not expressly specified the types of conduct

4   that might qualify as "uses" for purposes of ***trademark*** infringement, its copyright

5   infringement opinions provide useful guidance. For example, *Perfect 10, Inc. v.*

6   *Giganews, Inc.*, 847 F. 3d 657, 666 (9th Cir. 2017), reaffirmed that copyright

7   infringement "requires the plaintiff to show causation (also referred to as 'volitional

8   conduct') by the defendant," noting that the volitional conduct requirement "stands

9   for the unremarkable proposition that proximate causation historically underlines

10   copyright infringement liability no less than other torts." And to demonstrate

11   volitional conduct, a copyright plaintiff "must provide some 'evidence showing [the

12   alleged infringer] exercised control (other than by general operation of [its

13   website]); selected any material for upload, download, transmission, or storage; or

14   instigated any copying, storage, or distribution." *VHT, Inc. v. Zillow Group, Inc.*,

15   918 F.3d 723, 732 (9th Cir. 2019) (citing *Giganews*, 847 F.3d at 666, 670).

16   ### 2.   *Key Evidence in Support of Non-Trademark Use*

17   Redbubble's key evidence in support of its defense of non-trademark use

18   includes testimony and documents showing the content of the accused listings

19   and/or products; that Redbubble always removed allegedly infringing listings

20   promptly upon receiving notice of claimed infringement from Plaintiff; Redbubble

21   implemented proactive procedures to prevent allegedly infringing content from

22   being sold; and Redbubble applied its repeat infringer policy to third-party sellers

23   who listed the content in question. Redbubble will also offer testimony and

24   documents showing that there is no likelihood that consumers are confused as to

25   whether the third-party Sellers are the source of the Accused Products, since the

26   registered design marks have no evidence associated with them regarding their

27   strength or recognition among consumers, Plaintiff sells to a much more narrow

28   market and through different channels than the third-party Sellers, there are

13

1    differences in the registered design marks and the Accused Products, no consumers

2    have been actually confused as to the source of the Accused Products, the actual

3    seller of the Accused Products is identified on the Redbubble Marketplace search

4    pages and listing pages, and there is no evidence that the third-party Sellers intended

5    to use Plaintiff's design marks on products.

6        **E.    Fifth Affirmative Defense – Ornamental Use**

7        Plaintiff's claim is barred, in whole or in part, because at least certain of the

8    allegedly infringing uses of Plaintiff's asserted trademarks were ornamental in

9    nature and thus do not create a likelihood of confusion.

10            1.    *Elements Required to Establish Ornamental Use*

11       Ornamental use negates Plaintiff's claim for contributory trademark

12   infringement and counterfeiting.

13       Plaintiff cannot prevail on its trademark claims against accused uses of a

14   mark that are aesthetic rather than source-identifying.  Aesthetic features are those

15   which are the actual benefit that the consumer wishes to purchase.  *See International*

16   *Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980);

17   *Vuitton et fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 774-75 (9th Cir.

18   1981); *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1069

19   (9th Cir. 2006); *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916, 920-22 (N.D.

20   Cal. 2019); *see also* 15 U.S.C. § 1115(b)(8).

21            2.    *Key Evidence in Support of Ornamental Use*

22       Redbubble's key evidence in support of its defense of ornamental use

23   includes testimony and documents describing or showing each allegedly infringing

24   listing and/or product, including the database reports produced by Redbubble, and

25   evidence that relates to the lack of source-identification of the alleged marks, and

26   generally includes the testimony and documents identified in Section II, above.

27

28

F.    **Sixth Affirmative Defense – Fair Use**

Plaintiff's claim is barred, in whole or in part, because at least certain of the allegedly infringing uses of Plaintiff's asserted trademark(s) were fair uses.

1.    ***Elements Required to Establish Fair Use***

Fair use negates each of Plaintiff's claim for contributory trademark infringement and counterfeiting.

The alleged direct infringer makes "classic" fair use of a trademark when the alleged direct infringer:

1.    Used the mark other than as a trademark or other than to distinguish the alleged direct infringer's goods from the plaintiff's and to indicate the source of the alleged direct infringer's goods;

2.    Used the mark fairly and in good faith; and

3.    Used the mark only to describe the alleged direct infringer's goods or services or their geographic location as those of the alleged direct infringer's.

*See* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.24 (2019) (modified to change "defendant" to "alleged direct infringer" to reflect that the direct infringement claims against Redbubble have been resolved at summary judgment).

An alleged direct infringer makes nominative fair use of a trademark when the alleged direct infringer:

1.    Uses the mark in connection with the plaintiff's product, which was not readily identifiable without use of that mark;

2.    Used only so much of the mark as was reasonably necessary to identify the product in question; and

3.    Did not do anything in connection with the trademark that would suggest sponsorship or endorsement of the alleged direct infringer's product or service by the plaintiff.

1    *See* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.25 (2019)

2    (modified as above).

3              2.    ***Key Evidence in Support of Fair Use***

4              Redbubble's key evidence in support of its defense of fair use includes

5    testimony and documents describing or showing each allegedly infringing listing

6    and/or product, including the database reports produced by Redbubble, and that

7    relate to the lack of source-identification of the alleged marks, or to the extent that

8    they identify Plaintiff, do so for purposes of criticism, and generally includes the

9    testimony and documents identified in Section II, above.

10         **G.    Seventh Affirmative Defense – Protected Speech**

11             Plaintiff's claim is barred, in whole or in part, because at least some of the

12   allegedly infringing uses of Plaintiff's asserted trademark(s) were protected speech

13   under the First Amendment of the United States Constitution and the California

14   Constitution.

15             1.    ***Elements Required to Establish Protected Speech***

16             The First Amendment requires that the plaintiff can prevail on its claim for

17   contributory trademark infringement and counterfeiting only where it proves that:

18         1.    The alleged infringement of the plaintiff's mark is explicitly misleading

19               as to the source or content of the work, meaning that it explicitly

20               misleads consumers into believing that the plaintiff sponsored or is

21               somehow associated with the allegedly infringing work; and

22         2.    The alleged infringement of the plaintiff's mark is likely to cause

23               confusion about the source of the plaintiff's or the alleged direct

24               infringer's goods.

25   *See* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.19A (2019)

26   (modified to reflect contributory infringement).

27             2.    ***Key Evidence in Support of Protected Speech***

28

1    Redbubble's key evidence in support of its defense of protected speech
2    includes testimony and documents showing that Redbubble's key evidence in
3    support of its defense of fair use includes testimony and documents describing or
4    showing each allegedly infringing listing and/or product, including the database
5    reports produced by Redbubble, and the listings and search results on the Redbubble
6    Marketplace, which identify sources other than Plaintiff and therefore preclude
7    consumer confusion regarding whether Plaintiff sponsored or is somehow associated
8    with the allegedly infringing work, or that relate to the lack of source-identification
9    of the alleged marks, or to the extent that they identify Plaintiff, do so for purposes
10   of criticism, as well as evidence that neither Redbubble nor the third-party Sellers
11   did anything to explicitly mislead consumers into believing that Plaintiff is
12   somehow associated with the Accused Products, and generally includes the
13   testimony and documents identified in Section II, above.

### H.    Eighth Affirmative Defense – Failure to Mitigate

15   Plaintiff's claim is barred, in whole or in part, because Plaintiff failed to
16   mitigate its alleged damages.

#### 1.    *Elements Required to Establish Failure to Mitigate*

18   Defendant must show that plaintiff's losses, if any, could have been avoided
19   through reasonable efforts. *See Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d
20   1172, 1184 (C.D. Cal. 2011) (citing *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th
21   1559, 1568 (1996)).

#### 2.    *Key Evidence in Support of Failure to Mitigate*

23   Redbubble's key evidence in support of its defense of failure to mitigate
24   includes testimony and documents showing that, other than brief correspondence in
25   May 2018, Plaintiff failed to timely identify specific alleged infringements when
26   Plaintiff located them or to identify any specific infringements prior to filing suit;
27   and that Plaintiff failed to cooperate with Redbubble to help Redbubble develop
28   policing guidelines that would have facilitated earlier identification of properties

over which Plaintiff claimed rights, and disabling listings and/or products that allegedly infringed those rights.

## I.     Ninth and Twelfth Affirmative Defenses – Unclean Hands and Trademark Misuse

Plaintiff's claim is barred, in whole or in part, under the doctrines of unclean hands and trademark misuse.

### 1.     *Elements Required to Establish Unclean Hands and Trademark Misuse*

Unclean hands and trademark misuse are closely related.  *See, e.g.*, *TSX Toys, Inc. v. 665, Inc.*, No. CV1402400-RGK-TBX, 2015 WL 12746211, at *9 (C.D. Cal. Sept. 23, 2015).  To prevail on these defenses, a defendant must prove by a preponderance of the evidence that plaintiff's conduct (a) is inequitable and (b) relates to the subject matter of its claims.  *See Precision Instr. Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987); *Adler v. Federal Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000); *Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, No. EDCV 11-197-RSWL, 2011 WL 3809933, at *8 (C.D. Cal. Aug. 25, 2011).

### 2.     *Key Evidence in Support of Unclean Hands and Trademark Misuse*

Redbubble's key evidence in support of its defenses of unclean hands and trademark misuse includes testimony and documents showing that Plaintiff has claimed rights in works that it did not originate or create, or that it misappropriated from others (including the "Have a Nice Day" graphic that predated Plaintiff's existence and to which Plaintiff had no rights, for which Plaintiff nonetheless demanded that Redbubble remove one or more listings), shirts and other materials that used intellectual property belonging to others (including a shirt bearing the famous "you can't sit with us" phrase misappropriated by Plaintiff from the movie

1    "Mean Girls"), and complaints and other materials asserting that Plaintiff's products

2    infringed intellectual property rights of others.  Redbubble's key evidence in support

3    of its defenses of unclean hands and trademark misuse also includes testimony and

4    documents showing that Plaintiff registered the Registered Marks for uses that it has

5    not made (and notwithstanding its representations to the Trademark Office, never

6    intended to make), including the registrations, Plaintiff's documentation of its own

7    products, and its deposition testimony.

8    ## J.    Tenth Affirmative Defense – Laches/Statute of Limitations

9    Plaintiff's claim is barred, in whole or in part, under the doctrine of laches

10   and/or the relevant statute of limitations.

11   ### 1.    *Elements Required to Establish Statute of Limitations and*
12   *Laches*

13   Plaintiff's claim is subject to a three-year statute of limitations. Although

14   there is no statute of limitations under the Lanham Act, courts apply the analogous

15   state statute of limitations, which here is three years under California Code of Civil

16   Procedure § 338. *See* CACI 454; *Karl Storz Endoscopy-America, Inc. v. Surgical*

17   *Technologies, Inc.* 285 F.3d 848, 857 (9th Cir. 2002) (trademark infringement);

18   *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829, 833-34 and 838 (9th

19   Cir. 2002).

20   Plaintiff's claim is barred by laches upon proof that

21   1.    Plaintiff unreasonably delayed in filing suit; and

22   2.    Defendant suffered prejudice as a result of plaintiff's delay.

23   There is a presumption of unreasonable delay and resulting prejudice when a

24   Plaintiff files suit after the analogous limitations period.  *See Jarrow Formulas*, 304

25   F.3d at 835.

26   ### 2.    *Key Evidence in Support of Statute of Limitations and Laches*

27   Redbubble's key evidence in support of its defenses of statute of limitations

28   and laches includes testimony and documents, including the database reports

1    produced by Redbubble that identify each allegedly infringing work and each

2    allegedly infringing sale, showing that alleged infringement predates the limitations

3    period.

4         **K.      Eleventh Affirmative Defense – Waiver, Acquiescence, or Estoppel**

5              Plaintiff's claim is barred, in whole or in part, under the equitable doctrines of

6    waiver and acquiescence.  Defendant is abandoning its defense of estoppel.

7              1.    ***Elements Required to Establish Waiver and Acquiescence***

8              To prove waiver, defendant must show that plaintiff intentionally relinquished

9    a known right. *See AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 957 (N.D. Cal.

10   2015).

11             To prove acquiescence, defendant must show that:

12   1.    Plaintiff gave its assent or express/implied assurance that it would not

13         assert a right or claim;

14   2.    The delay between plaintiff's assent and the assertion of the right or

15         claim was not excusable; and

16   3.    The delay caused the defendant undue prejudice based on defendant's

17         reasonable reliance on plaintiff's affirmative act or deed.

18   *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621

19   F.3d 981, 988 (9th Cir. 2010).

20             2.    ***Key Evidence in Support of Waiver and Acquiescence***

21             Redbubble's key evidence in support of its defenses of waiver and

22   acquiescence includes testimony and documents showing that Plaintiff delayed in

23   asserting its rights, including the database reports produced by Redbubble that

24   identify each allegedly infringing work and each allegedly infringing sale, and

25   including the takedown notices sent to Redbubble more than a year before Plaintiff

26   filed suit, during which time Plaintiff never contacted Redbubble, and the policing

27   guidelines that Redbubble developed after Plaintiff filed suit.

28

**L.      Thirteenth Affirmative Defense – Conduct of Third Parties**

Plaintiff's claim is barred, in whole or in part, because the actions complained of, to the extent they occurred, were the result of the conduct of third-parties.

**1.      *Elements Required to Establish Conduct of Third Parties***

Plaintiff's claim requires that actions be performed by defendant, not third parties.  *See* Section II, above.

**2.      *Key Evidence in Support of Conduct of Third Parties***

Redbubble's key evidence in support of its defense of conduct of third parties includes testimony and documents identified in Section II, above.

**M.      Fourteenth Affirmative Defense – Unilateral Proactive Conduct**

Plaintiff's claim is barred, in whole or in part, because Redbubble has implemented screening procedures to identify and remove potentially infringing items as soon as reasonably practical, although Redbubble is under no legal obligation to do so.

**1.      *Elements Required to Establish Unilateral Proactive Conduct***

"For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany*, 600 F.3d at 107.  Thus, an alleged contributory infringer who engages in unilateral proactive conduct, such as measures designed to identify and remove infringing materials before receiving actual notice, does not know or have reason to know of specific instances of actual infringement, beyond those for which it received actual notice and addressed upon such receipt; that it addressed upon learning of them. *See, e.g.*, *id.*

**2.      *Key Evidence in Support of Unilateral Proactive Conduct***

2911-1006 / 1797450.1

Redbubble's key evidence in support of its defense of unilateral proactive conduct includes the testimony and documents identified in Section II.A.2, above.

## N.    Fifteenth Affirmative Defense – Reasonable Steps

Plaintiff's claim is barred, in whole or in part, because Defendant has taken all reasonable steps to remove all items from its website as soon as practical after being made aware of such alleged infringement and/or prohibited use by Plaintiff.

### 1.    *Elements Required to Establish Reasonable Steps*

"For contributory trademark infringement liability to lie, a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary." *Tiffany*, 600 F.3d at 107.  Thus, an alleged contributory infringer who takes reasonable steps to remove allegedly infringing material promptly after receiving notice, cannot be liable for contributory infringement. *See, e.g.*, *id.*

### 2.    *Key Evidence in Support of Reasonable Steps*

Redbubble's key evidence in support of its defense of reasonable steps includes the testimony and documents identified in Section II.A.2, above.

## O.    Seventeenth Affirmative Defense – Abandonment

Seventeenth Affirmative Defense (Abandonment): Plaintiff's claim is barred because Plaintiff has abandoned the trademarks identified in the Complaint through (a) significant periods of non-use; (b) naked licensing; (c) failure to take any steps necessary to register and/or otherwise protect the Claimed Trademarks; and/or (d) other acts and/or omissions that caused the Claimed Trademarks to lose their significance as marks.

### 1.    *Elements Required to Establish Abandonment*

The owner of a trademark abandons the right to exclusive use of the trademark when the owner:

1.  Discontinues its use in the ordinary course of trade, intending not to resume using it;

2.  Acts or fails to act so that the trademark's primary or principal significance or meaning to prospective consumers has become the product itself and not the producer of the product; or

3.  Fails to exercise adequate quality control over the goods sold under the trademark by a licensee.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 15.22 (2019).

## 2.   *Key Evidence in Support of Abandonment*

Redbubble's key evidence in support of its defense of abandonment includes testimony and documents showing that Plaintiff registered the Registered Marks for uses that it has not made, including the registrations, Plaintiff's documentation of its own products, and its deposition testimony.

## IV.   STATEMENT OF ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(h))

The parties have filed timely motions *in limine*, *see* docket nos. 50-61, 109-11.

### A.   Plaintiff's Exhibits

The parties have filed their Fourth Amended Joint Exhibit List (DE#149), which includes their objections to the other's proposed exhibits.  Redbubble reiterates its objections for the record here.

At the August 12, 2020 Supplemental Rule 16 meet and confer, counsel for Plaintiff represented that it might have additional subsequently-created exhibits; counsel for Redbubble responded that it reserved its objections and rights, including pending review of the proposed exhibits, and requested that counsel provide them sooner rather than later. Notwithstanding that, at that time, the L.R 16-2.3 deadline to disclose trial exhibits was Wednesday, August 12, 2020, counsel for Plaintiff first sent a draft of the Second Amended Joint Exhibit List, without advance notice, to

counsel for Redbubble after noon on the date of filing.  Plaintiff did not provide copies of its purported additional exhibits, or of several exhibits previously on its list that had not been produced before the First Amended Joint Trial Exhibit List was filed, until September 25, 2020.  Redbubble further objects that Plaintiff did not comply with L.R. 16-6.1's requirement that "[a]n asterisk shall be placed next to the exhibits which a party may offer only if the need arises," despite Redbubble having called that failure to counsel for Plaintiff's attention repeatedly, until after business hours on November 23, 2020.  Redbubble explicitly reserves the right to further amend its portions of the Third Amended Joint Trial Exhibit List.

### B.    Plaintiff's Witnesses

Plaintiff's revised witness list lists a total of ten witnesses:  Two employees of Plaintiff (Salvatore Rianne and Madison Elkins), who were identified on Plaintiff's Initial Disclosures; three current or former employees of Redbubble (James Toy, Jenny Greenhough, and Arnaud Deshais); Plaintiff's purported expert, Jamie Gerson, who is the subject of Redbubble's Motion in Limine No. 1; and Plaintiff's trial counsel Jason Kelly, and three of Plaintiff's counsel's employees: Philip Paley, Terri Walters, and Francisco Cuellar.

Plaintiff identified Mr. Paley and Ms. Walters during the Rule 16 meet and confer, held on May 6, 2020, and Redbubble objected at that time and again at the meet and confer regarding the parties' motions *in limine*, held two days later.  *See* Exh. A (5/6/2020 email chain).  Redbubble subsequently filed Motion in Limine #7 (DE#61) seeking to preclude Plaintiff's undisclosed witnesses.  In addition to the reasons identified in the Motion, Redbubble submits that Plaintiff's attempt to add more undisclosed witnesses after the Rule 16 Conference is additionally improper.

Moreover, Plaintiff's May 21, 2020 disclosure that it intended to present testimony from its own trial counsel, Jason Kelly, should also be rejected under California Rule of Professional Conduct 3.7(a) (2018), which provides that:

> A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless:
>
> (1)     the lawyer's testimony relates to an uncontested issue or matter;
>
> (2)     the lawyer's testimony relates to the nature and value of legal services rendered in the case; or
>
> (3)     the lawyer has obtained informed written consent* from the client….

Even assuming, *arguendo*, that Plaintiff's counsel has obtained informed written consent from its client, as required, Comment 3 to Rule 3.7 states:

> Notwithstanding a client's informed written consent,* courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced. (See, e.g., *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470 [175 Cal.Rptr. 918].)

Accordingly, Redbubble respectfully requests that the Court either refuse to permit Mr. Kelly to testify, or disqualify him as trial counsel, pursuant to *Lyle* and Rule 3.7(a).

## C.     Redbubble's Witnesses

On May 22, 2020, the parties advised the Court that they expected to present as trial witnesses Anuj Luthra, then Redbubble's Head of Artists & Content and Vice President of Engineering, and Arnaud Deshais, then Redbubble's Chief Supply Chain Officer. (DE#71 at 4-5)  Because neither Mr. Luthra nor Mr. Deshais is currently employed by Redbubble or its affiliates (both having left after the original trial date), Redbubble no longer has the ability to ensure their attendance at trial; however, both remain willing to do so.

Mr. Luthra resides in Australia, whose government has banned "all overseas travel, unless travelling to New Zealand or if an exemption has been granted." Australian Government Department of Health, "Coronavirus (COVID-19) advice

for international travellers," <https://www.health.gov.au/news/health-alerts/novel-coronavirus-2019-ncov-health-alert/coronavirus-covid-19-restrictions/coronavirus-covid-19-advice-for-international-travellers#travel-out-of-australia> (visited May 3, 2021).  It appears that Mr. Luthra does not fall within any category for which an exemption could be sought, but even if he did, the Australian Government may deny an exemption; moreover, he would be subject to a 14-day quarantine upon reentry to the country after trial.

Mr. Deshais resides in Portugal, which has been designated as Level 4, "Do Not Travel," by the U.S. State Department.  Although travel restrictions between Portugal and the United States are in flux, it appears that Mr. Deshais would be subject to quarantines – potentially both when arriving in the U.S. and when returning to Portugal – and other complications.

To date, Redbubble has been unable to identify an appropriate substitute witness for either Mr. Luthra or Mr. Deshais.

Counsel for the parties have met and conferred about this issue, including by voice communication, most recently on April 28, 2021, and have agreed in principle that the most appropriate way to address this issue is to jointly request that the Court continue the trial until September 2021.

At this time, however, Redbubble's previously-filed witness lists (DE##71, 75) remain current.

V.      **STATEMENT OF ISSUES OF LAW (L.R. 16-4.1(i))**

The parties' legal disputes known to Redbubble were identified in their respective summary judgment motions (DE##36, 40) and in Redbubble's motion for partial reconsideration (DE#126).  Other disputes related to liability issues are identified in sections II and III, *supra*.  In addition, the parties have legal disputes regarding Plaintiff's measure of and entitlement to damages.  Redbubble understands, based on Plaintiff's statements in the Rule 16 meet and confer, that

1  Plaintiff does not intend to seek its actual damages, but intends to ask the Court to

2  award it Redbubble's profits and statutory damages.

3      **A.**    **Plaintiff Has Waived the Ability to Pursue Damages**

4      Redbubble contends that Plaintiff's discovery responses preclude it from

5  seeking damages.  *See generally* Redbubble's Motion in Limine No. 3, to Exclude

6  Evidence and Argument of Damages.  (DE#59)

7      **B.**    **Plaintiff Cannot Obtain Redbubble's Profits**

8      Plaintiff also seeks an accounting of Redbubble's profits. Such relief is

9  equitable. *See Quia Corp. v. Mattel, Inc.*, No. C 10-1902, 2011 U.S. Dist. LEXIS

10  76157, at *22-23 (N.D. Cal. July 14, 2011). Accordingly, any accounting is for

11  determination by this Court, not the jury.

12      An accounting is not appropriate in all cases. It is well established that "where

13  there is no intent to capitalize on the trade name of another, an accounting is not

14  warranted." *See, e.g., Lindy Pen Co. Inc. v. Bic Pen Corp*., 14 U.S.P.Q.2d 1528,

15  1530 (C.D. Cal. 1989), *aff'd* 982 F.2d 1400 (9th Cir. 1993). Even assuming

16  *arguendo* that an accounting is appropriate in the present case, it is Plaintiff's

17  burden to prove those revenues reasonably attributable to proven infringements, not

18  merely all revenue. *See Lindy Pen Co. Inc. v. Bic Pen Corp*., 982 F.2d 1400, 1408-

19  09 (9th Cir. 1993).  Because Plaintiff's sole remaining claim is for contributory

20  infringement, Plaintiff's burden to prove revenues reasonably attributable to proven

21  infringements includes proof of actual notice; Plaintiff therefore cannot receive an

22  award of profits based on alleged acts of infringement that predate notice.  *See, e.g.*,

23  *Coach, Inc. v. Asia Pac. Trading Co.*, 676 F. Supp. 2d 914, 925 (C.D. Cal. 2009)

24  ("Plaintiffs' recovery of profits or damages under [15 U.S.C.] § 1125(a) is limited to

25  that period after which Defendant had 'actual notice' of Plaintiffs' registration").

26  Moreover, Redbubble is entitled to prove appropriate deductions of costs from the

27  relevant revenues, as well as any appropriate apportionment of revenues attributable

28  to factors other than the alleged infringement. *See* 15 U.S.C. § 1117(a).

1

## C.      **Plaintiff Cannot Obtain Statutory Damages**

2      15 U.S.C. 1117(c) allows a plaintiff to elect, instead of actual damages and

3   profits, statutory damages for use of a counterfeit mark in connection with the sale,

4   offering for sale, or distribution of goods or services, of not less than $1,000 or more

5   than $200,000 per counterfeit mark – or, if the court finds that the use of the

6   counterfeit mark was willful, not more than $2,000,000 per counterfeit mark – per

7   type of goods or services sold, offered for sale, or distributed, as the court considers

8   just. *See* 15 U.S.C. § 1117(c); NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY

9   INSTRUCTIONS § 15.28 (2019).

10     As set forth in Section II.A above, Redbubble cannot be liable for

11   counterfeiting.  But even if it could, Redbubble certainly cannot be liable for *willful*

12   counterfeiting. Courts have consistently held that infringement is not knowing or

13   willful where, as here, the defendant reasonably believes that its usage of a

14   trademark is not barred by law. *VHT,* 918 F.3d 723; *International Olympic Comm. v.*

15   *San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986). In *VHT*, for

16   example, Zillow's user agreement required that brokers, agents, and listing services

17   who uploaded photos and real property listings to its marketplace "represent that

18   they 'have all necessary rights and authority to enter into' the agreements," and that

19   the uploaded content "will not violate the intellectual property rights, or any other

20   rights of any third party." *Id.* at 732 (internal quotations omitted).  There, as here,

21   there was no "evidence showing Zillow exercised control (other than by general

22   operation of its website); selected any material for upload, download, transmission,

23   or storage; or instigated any copying, storage, or distribution of these photos." *Id.* at

24   734. In light of its users' representations, Zillow was not "'actually aware' of its

25   [users'] infringing activity" notwithstanding having received blanket notice of

26   infringement from VHT; accordingly, the Ninth Circuit reversed the jury's

27   willfulness verdict. *Id.* at 748-49 (quoting *Evergreen Safety Council v. RSA*

28   *Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even

1   after one has been notified of his or her alleged infringement does not constitute

2   willfulness so long as one believes reasonably, and in good faith, that he or she is

3   not infringing.")

4          Like the defendants in *VHT*, Redbubble was entitled to and did in fact

5   reasonably rely on representations made by its users that they had the right to use

6   the designs they uploaded to the site. And like those defendants, there is no evidence

7   that Redbubble was "actually aware" of specific, ongoing infringing activity; when

8   Redbubble learned of such activity, it has swiftly put an end to it. Using the

9   language from *Evergreen*, Redbubble "believes reasonably, and in good faith, that

10  [it] is not infringing." Indeed, Redbubble has prevailed in both U.S. cases against it

11  that have gone to judgment. *See The Ohio State University v. Redbubble Inc.*, 369 F.

12  Supp. 3d 840 (S.D. Ohio 2019); *LTTB, LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916

13  (N.D. Cal. 2019) (granting summary judgment to Redbubble on Lanham Act

14  claims).

15  **VI.   BIFURCATION OF ISSUES (L.R. 16-4.3)**

16         Redbubble does not at this time request bifurcation.

17  **VII.  JURY TRIAL (L.R. 16-4.4)**

18         **A.   Issues Triable to a Jury as a Matter of Right**

19         Because Plaintiff's election not to seek actual damages leaves it seeking only

20  equitable relief, it is not entitled to a trial by jury on its case in chief.  *See, e.g.*, *Hard*

21  *Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1348 (11th Cir. 2019)

22  ("The remedy of an accounting and disgorgement of profits for trademark

23  infringement is equitable in nature and has long been considered that way, so we

24  hold that a plaintiff seeking the defendant's profits in lieu of actual damages is not

25  entitled to a jury trial").  To the extent that Plaintiff's case in chief is tried to a jury

26  nonetheless, Redbubble's First Affirmative Defense (Failure to State a Claim),

27  Second Affirmative Defense (Failure to Provide Notice), Third Affirmative Defense

28  (Lack of Knowledge of Specific Infringement), Fourth Affirmative Defense (Non-

Trademark Use), Fifth Affirmative Defense (Ornamental Use), Thirteenth Affirmative Defense (Conduct of Third Parties), Fourteenth Affirmative Defense (Unilateral Proactive Conduct), and Fifteenth Affirmative Defense (Reasonable Steps), although pled as defenses, identify or relate to elements of Plaintiff's claim on which Plaintiff bears the burden and that Redbubble asserts Plaintiff cannot meet, and should therefore be tried to a jury as well.

The following issues are triable to a jury as a matter of right and a timely demand for jury has been made by Redbubble:

1. Redbubble's Sixth Affirmative Defense (Fair Use). *See, e.g.,* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.24, 15.25.

2. Redbubble's Eighth Affirmative Defense (Failure to Mitigate). *See, e.g., Classical Silk, Inc. v. Dolan Grp., Inc.*, No. CV 14-09224, 2016 WL 7638112, at \*2 n.1 (C.D. Cal. Mar. 21, 2016).

3. The portion of Redbubble's Tenth Affirmative Defense that addresses the Statute of Limitations. *See, e.g., Sempra Energy v. Marsh USA, Inc.*, 390 F. App'x 754, 755 (9th Cir. 2010).

4. Redbubble's Seventeenth Affirmative Defense (Abandonment).  *See, e.g.*, NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.22 (2019).

However, should the Court agree that Plaintiff is not entitled to trial by jury, Redbubble hereby waives its right to a jury trial on these issues.

**B.   Issues Triable to the Court**

The following issues are triable to the Court:

1. Because Plaintiff's election not to pursue actual damages leaves it seeking only equitable relief, it is not entitled to a trial by jury on its case in chief, and its Fourth Claim for Contributory Trademark Infringement and Counterfeiting may be triable to the Court.  To the

1    extent that the Court may deem it necessary, Redbubble waives its right

2    to a jury trial.

3    2.    Plaintiff's request for the equitable remedies of injunctive relief and

4          profit disgorgement, *see, e.g.*, *Fifty-Six Hope Rd. Music, Ltd. v.*

5          *A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074–76 (9th Cir. 2015); *Reebok Int'l*

6          *v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir. 1992); NINTH

7          CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS § 15.29 (2019).

8    3.    Plaintiff's request for statutory damages, *see, e.g.*, *Quia Corp.*, 2011

9          U.S. Dist. LEXIS 76157, at *22-23.

10   4.    Redbubble's Seventh Affirmative Defense (First Amendment and/or

11         California Constitution).

12   5.    Redbubble's Ninth and Twelfth Affirmative Defenses (Unclean Hands;

13         Trademark Misuse). *See, e.g.*, *JIPC Mgmt., Inc. v. Incredible Pizza Co.*,

14         No. CV 08-04310, 2009 WL 8591607, at *19 (C.D. Cal. July 14,

15         2009).

16   6.    The portion of Redbubble's Tenth Affirmative Defense that addresses

17         laches. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171,

18         1183 (9th Cir. 2010).

19   7.    Redbubble's Eleventh Affirmative Defense (Waiver and

20         Acquiescence).

21   8.    The parties' requests for attorneys' fees under the Lanham Act, *see*

22         section VIII below.

23   ## VIII. ATTORNEYS' FEES (L.R. 16-4.5)

24        The parties each seek to recover attorneys' fees in accordance with 15 U.S.C.

25   § 1117(a), which provides for such awards in "exceptional cases."  To determine

26   exceptionality, the Court must examine "the totality of the circumstances,"

27   considering whether the case "stands out from others with respect to the substantive

28   strength of a party's litigating position (considering both the governing law and the

1    facts of the case) or the unreasonable manner in which the case was litigated."

2    *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180-81 (9th Cir.

3    2016) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545,

4    554 (2014) (interpreting identical fee-shifting provision) (internal quotation marks

5    omitted)).

6         Plaintiff's initiating and pursuit of this case qualifies it as exceptional for at

7    least three reasons:

8         1.    Plaintiff's claims were exceptional given the law and facts set forth in

9               Redbubble's summary judgment motion and opposition to Plaintiff's

10              motion for partial summary judgment, on which the Court has already

11              found almost entirely in Redbubble's favor as a matter of law;

12        2.    Plaintiff's pursuit of those claims was exceptional given the equitable

13              defenses presented; and

14        3.    Plaintiff's litigation conduct – including its failure to disclose its

15              damages evidence or theories, its attempt to assert marks not identified

16              in discovery, its attempt to use witnesses who were not disclosed, what

17              the Court has described as its "'gotcha' litigation" tactics (DE#103 at

18              14), and its election to proceed with trial after four of its five claims

19              were adjudicated against it at summary judgment, leaving its realistic

20              potential recovery below the cost of trial – was exceptional as well.

21   **IX.   ABANDONMENT OF ISSUES (L.R. 16-4.6)**

22        As set forth above, Redbubble has abandoned the estoppel component of its

23   Eleventh Affirmative Defense.  Moreover, given that the Court has granted

24   summary judgment on Plaintiff's Second Claim, for Common Law Unfair

25

26

27

28

1 Competition, Redbubble's Sixteenth Affirmative Defense, for immunity under the

2 Communications Decency Act, appears to be moot.

3

4 Dated:  May 3, 2021                                    **COASTSIDE LEGAL**
                                                        KENNETH B. WILSON
5

6                                                       **ZUBER LAWLER LLP**
                                                        JOSHUA M. MASUR
7                                                       JEFFREY J. ZUBER
                                                        HEMING XU
8

9

                                        By:      */s/ Joshua M. Masur*
10                                             _____
                                               Attorneys for Defendant
11                                             REDBUBBLE INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28