KENNETH B. WILSON  (SBN 130009)
 *ken@coastsidelegal.com*
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Telephone: (650) 440-4211

JOSHUA M. MASUR  (SBN 203510)
 *jmasur@zuberlawler.com*
ZUBER LAWLER LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

JEFFREY J. ZUBER  (SBN 220830)
 *jzuber@zuberlawler.com*
HEMING XU  (SBN 302461)
 *hxu@zuberlawler.com*
ZUBER LAWLER LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>REDBUBBLE INC.,<br><br>                    Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br><br>**DEFENDANT'S DISPUTED JURY INSTRUCTIONS**<br><br>Pre-Trial Conf.:   May 24, 2021<br>Trial Date:        June 15, 2021 |

1

Defendant Redbubble Inc. hereby submits its disputed jury instructions in this matter, together with Plaintiff's objections and Redbubble's replies, pursuant to the Court's Order for Jury Trial (DE#17), Local Rule 51, and the Court's orders continuing the Pretrial Conference and Jury Trial (DE##99, 123, 138, 141). Redbubble reserves the right to amend, modify, withdraw, and/or supplement the following instructions before or during trial of this matter.  Redbubble may submit further proposed jury instructions depending upon and based upon rulings issued in connection with motions *in limine* and other pre-trial or trial motions, as well as the evidence and theories proffered by the parties during the course of trial.

Redbubble's proposed instructions are expressly made subject to its general objection that Plaintiff's election not to seek actual damages waived any right to a jury trial on its case-in-chief.  *See* Dkt. No. 113 at 36 (citing *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1348 (11th Cir. 2019) ("The remedy of an accounting and disgorgement of profits for trademark infringement is equitable in nature and has long been considered that way, so we hold that a plaintiff seeking the defendant's profits in lieu of actual damages is not entitled to a jury trial")).

2911-1006 / 1814621

# TABLE OF INSTRUCTIONS

| No. | Title | Source | Page |
|---|---|---|---|
| 1 | Claims and Defenses | 9th Cir. 1.5 | 7 |
| 2 | Preliminary Instruction—Trademark | 9th Cir. 15.1; *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006); *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1142–43 (D. Or. 2011); *Int'l Ord. of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980); *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968) | 14 |
| 3 | Trademark Liability—Theories and Policies | 9th Cir. 15.5 | 22 |
| 4 | Derivative Liability—Contributory Infringement | 9th Cir. 15.21, 15.6; *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 107-09 (2d Cir. 2010); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 963 (C.D. Cal 1997) | 28 |
| 5 | Infringement—Elements—Presumed Validity and Ownership—Registered Trademark | 9th Cir. 15.8; *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980); *Vuitton et fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 774-75 (9th Cir. 1981); *Automotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1069 (9th Cir. 2006); *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1143 (D. Or. 2011); 15 U.S.C. § 1115(b)(8)) | 35 |
| 6 | Infringement—Elements—Validity—Unregistered Marks | 9th Cir. 15.9 | 42 |
| 7 | Infringement—Elements—Validity— | 9th Cir. 15.10 | 47 |

| No. | Title | Source | Page |
|---|---|---|---|
| | Unregistered Marks—Distinctiveness | | |
| 8 | Infringement—Elements—Validity—Distinctiveness—Secondary Meaning | 9th Cir. 15.11 | 55 |
| 9 | Infringement—Likelihood of Confusion—*Sleekcraft* Test | 9th Cir. 15.18; *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1041–42 (C.D.Cal.1998); *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal.), aff'd, 202 F.3d 278 (9th Cir. 1999); *Arcona, Inc. v. Farmacy Beauty*, LLC, 976 F.3d 1074, 1077-81 (9th Cir. 2020); *Behr Process Corp. v. RPM Int'l Inc.*, No. SACV14156JLSDFMX, 2014 WL 12581763, at *6 (C.D. Cal. Feb. 14, 2014); *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979); *Hero Nutritionals LLC v. Nutraceutical Corp.*, No. SACV 11-1195 AG MLGX, 2013 WL 4480674, at *6 (C.D. Cal. Aug. 16, 2013) | 61 |
| 10 | Infringement—Likelihood of Confusion—Factor—Strength of Trademark | 9th Cir. 15.19 | 69 |
| 11 | Expressive Works | 9th Cir. 15.19A | 75 |
| 12 | Defenses—Nominative Fair Use | 9th Cir. 15.25 | 81 |
| 13 | Statute of Limitations | CACI 454; California Code of Civil Procedure § 338(d); *Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.* 285 F.3d 848, 857 (9th Cir. 2002) | 87 |

2911-1006 / 1814621

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 14 | Defenses—Abandonment—Affirmative Defense—Defendant's Burden of Proof | 9th Cir. 15.22; *Shutemdown Sports, Inc. v. Carl Dean Lacy*, 102 U.S.P.Q.2d 1036 (T.T.A.B. 2012); *The Procter & Gamble Co. v. Sentry Chemical Co.*, 22 U.S.P.Q.2d. 1589, 1592, (T.T.A.B. 1992) | 92 |
| 15 | Statutory Damages | 9th Cir. 15.28; O'MALLEY, GRENIG, & LEE, FED. JURY. PRAC. & INSTR. CIVIL COMP HANDBOOK § 6:2; *A.C.T. 898 Prod., Inc. v. W.S. Indus., Inc.*, No. 8:16-CV-00476-JCG (C.D. Cal., April 14, 2017)); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Arcona, Inc. v. Farmacy Beauty*, LLC, No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar. 19, 2019); *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 614 (C.D. Cal. 2017) | 98 |
| 16 | Trademark Damages—Defendant's Profits | 9th Cir. 15.29; *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 18-1233, 2020 WL 1942012, at *3-4 (U.S. Apr. 23, 2020)); *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074-76 (9th Cir. 2015)." | 104 |

1

## I.     GENERAL INSTRUCTIONS

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 1.**

### **1.5  CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, Brandy Melville, asserts that the defendant, Redbubble, has engaged in contributory trademark infringement and contributory counterfeiting. Specifically, Brandy Melville claims that it owns the exclusive right to use the "Brandy Melville" and "LA Lightning" designs and the "Brandy Melville" name and variations thereof, namely "BM," "Brandy LA," "brandymelvilleusa," and "brandymelvilleusa.com," as trademarks on the products that Brandy Melville offers, and that the  products manufactured, advertised, offered for sale, and sold on or through Redbubble's Marketplace website that use those designs or words have infringed those rights.  Brandy Melville[*plaintiff's claims*].  The plaintiff has the burden of proving these claims.

Redbubble The defendant denies those claims. I have already determined that Redbubble does not itself directly infringe Brandy Melville's claimed trademarks, so any liability for Redbubble depends on proof of direct infringement by independent third-parties, such as Sellers who design products and upload product listings onto Redbubble's Marketplace, and Fulfillers who manufacture and ship products to consumers who purchase them. Redbubble contends, among other things, that there can be no infringement because there is no likelihood that consumers are confused as to the source of products sold through the Redbubble Marketplace, and moreover, that Redbubble is not liable for contributory liability infringement because it has disabled each accused infringement once actually notified about it.  Redbubble contends that Brandy Melville's policy not to actually use its registered marks in the ways claimed in its registration makes those

registrations invalid.  Redbubble also contends that because certain of the allegedly directly infringing uses of Brandy Melville's alleged trademarks are used as decoration or for another non-trademark purpose, rather than to identify the source of the product, they cannot infringe Brandy Melville's trademark rights.

Finally, Redbubble also contends that it has certain [and also contends that [*defendant's counterclaims and/or affirmative* defenses]]. that prevent a finding for Brandy Melville. Redbubble has asserted a defense known known as Nominative Fair Use, which means that Redbubble asserts that certain allegedly directly infringing listings used Brandy Melville's claimed marks only to identify Brandy Melville, not to confuse a consumer into thinking that Brandy Melville was the source of a product. Redbubble has asserted a defense known as Failure to Mitigate, because it believes that Brandy Melville could have minimized any damages it claims it sustained if it had acted differently by promptly notifying Redbubble of listings Brandy Melville believed were infringing. Redbubble has asserted a Statute of Limitations defense, which Redbubble contends prevents Brandy Melville from recovering damages for any conduct that occurred more than three years before this lawsuit was filed. And Redbubble has asserted a defense known as Abandonment, because Redbubble believes that Brandy Melville has not used its claimed trademarks in connection with certain products listed in its trademark registrations. [The defendantRedbubble has the burden of proof on these [*counterclaims and/or* affirmative defenses of Failure to Mitigate, Statute of Limitations, and Abandonment..]]

[The plaintiff denies [*defendant's counterclaims and/or affirmative defenses*].]

Authority/Source:  Ninth Circuit Model Jury Instruction 1.5 (modified to fit facts of case)

Requesting Party:  Defendant




_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**<u>Plaintiff's Objection:</u>**

Plaintiff objects to this proposed jury instruction because it misstates the law, is argumentative and misleading, and contains statements that are irrelevant to the trial.  This proposed instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 1.5 to this case.

The proposed jury instruction fails to identify or introduce Redbubble's product designers and fulfillers and lacks necessary reference to Redbubble's services (relying instead on a vague reference to "Marketplace").  The proposed jury instruction also improperly strays from the Model Civil Jury Instruction by discussing *at length* claims that are not before the jury—essentially regurgitating significant portions of Defendant's summary judgment motion—and by raising Defendant's contentions other than its "counterclaims and/or affirmative defenses."  The Ninth Circuit Model Civil Jury Instruction limits Defendant's description to its "counterclaims and/or affirmative defenses."   In particular, everything in the third paragraph after "Redbubble denies those claims." is irrelevant and entirely improper to include in the proposed jury instruction.

Plaintiff incorporates by reference its Disputed Jury Instruction No. 1.

**Defendant's Reply:**

Plaintiff has the burden of identifying the particular alleged direct infringers, along with the specific instances of infringement these third parties allegedly committed.  *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 985 (N.D. Cal. 2015); *accord Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 n.19 (1984) (The "standard for contributory trademark infringement" is "narrow"; a defendant is only liable if it "intentionally induced a merchant" to infringe or "continued to supply" an offering to a "particular merchant whom it knew was" infringing.). Plaintiff must thus also "identify every" mark it alleges was "infringed", *Louisiana Pac. Corp. v. James Hardie Bldg. Prod., Inc.*, No. C-12-3433 SC, 2012 WL 5520394, at *1 (N.D. Cal. Nov. 14, 2012), such as any particular variants of any registered marks for which it asserts common-law rights.  *Cf. Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997) ("The use of an identical or similar mark does not necessarily constitute infringement . . . [S]uch use must be in connection with [offerings] . . . competitive with . . . the [offerings] for which" claimant's mark has been used.), *aff'd*, 194 F.3d 980 (9th Cir. 1999). Plaintiff also has the burden of showing what specific Marketplace services are "instrumentalit[ies] used by a third party to infringe." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007).

A defendant is entitled to explain its theory of the case through, *inter alia*, jury instructions.  *Cf. Conde v. Henry*, 198 F.3d 734, 741 (9th Cir. 1999) ("[T]he trial court improperly . . . refused to instruct the jury on the defendant's theory."). Thus, Redbubble may properly explain why it denies liability and/or the bases for any affirmative defenses. Also, Redbubble may clarify that the jury is *not* assessing whether it is a direct infringer and may refer to prior rulings to do so.  *See, e.g.*, *ECM, Inc. v. Placer Dome U.S., Inc.*, 132 F.3d 38 (9th Cir. 1997) (The "court did not abuse its discretion by summarizing its earlier ruling in jury instruction 23" because it had "merely clarified the jury's inquiry"). Thus, for example,   *Cf.*

1   *Arnold v. Cty. of El Dorado*, No. CIV. S-10-3119 KJM, 2011 WL 902204, at *8

2   (E.D. Cal. Mar. 15, 2011) ("Any distinction between direct liability and vicarious

3   liability can be made clear in jury instructions."), *report and recommendation*

4   *adopted*, No. CIV-S-10-3119 KJM, 2011 WL 4344178 (E.D. Cal. Sept. 14, 2011).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   II.    **TRADEMARK PRELIMINARY INSTRUCTIONS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 2.</u>

2

3

## 15.1  PRELIMINARY INSTRUCTION—TRADEMARK

4

5        The plaintiff, [*name of plaintiff*],Brandy Melville, seeks damages against the

6 defendant, [*name of defendant*],Redbubble, for contributory [trademark

7 infringement] [ and unfair competitioncontributory counterfeiting]. The defendant.

8 Redbubble denies that it is liable for contributory [infringement ofing the trademark]

9 [trademarks and unfairly competing] [, and] [ contends the trademark istrademarks

10 are invalid].. To help you understand the evidence that will be presented in this

11 case, I will explain some of the legal terms you will hear during this trial.

12 ### *DEFINITION AND FUNCTION OF A TRADEMARK*

13        A trademark is a word, name, symbol, or device, or any combination of these

14 items that indicates the source of goods.  The [owner] [assignee] [licensee] of a

15 trademark has the right to exclude others from using that trademark or a similar

16 mark that is likely to cause confusion in the marketplace. The main function of a

17 trademark is to identify and distinguish goods or services as the product of a

18 particular manufacturer or merchant and to protect its goodwill.

19 ### *[HOW A TRADEMARK IS OBTAINED]*

20       [A person acquires the right to exclude others from using the same mark or a

21 similar mark that is likely to cause confusion in the marketplace by being the first to

22 use it in the marketplace, or by using it before the alleged infringer.  Rights in a

23 trademark are obtained only through commercial use of the mark.].

24 ### *[TRADEMARK INTERESTS*

25 ### *]*

26 [The owner of a trademark may transfer, give, or sell to another person the

27 owner's interest in the trademark.  This type of [agreement] [gift] is called an

28 assignment, and the person who receives the owner's interest is called an assignee

1  ~~and becomes the owner of the mark.  An assignee has the right to exclude others~~

2  ~~from using the trademark or a similar mark that is likely to cause confusion in the~~

3  ~~marketplace.  To be enforceable, the assignment must be in writing and signed.  It~~

4  ~~must also include the goodwill of the business connected with the trademark.]~~

5  [The owner of a trademark may ~~[also]~~ enter into an agreement that permits

6  another person to use the trademark.  This type of agreement is called a license, and

7  the person permitted to use the trademark is called a licensee.]

8  A trademark ~~[owner ] [assignee] [licensee]~~ may enforce the right to exclude

9  others in an action for ~~[infringement] [or] [insert applicable form of unfair~~

10  ~~competition from 15 U.S.C.  § 1125(a)]~~.

11  *[TRADEMARK REGISTRATION]*

12  [After the owner of a trademark has obtained the right to exclude others from

13  using the trademark, the owner may obtain a certificate of registration issued by the

14  United States Patent and Trademark Office.  Thereafter, when the owner brings an

15  action for infringement, the owner may rely solely on the registration certificate to

16  ~~prove~~support ~~that~~ the owner's ~~has~~ the right to exclude others from using the

17  trademark or a similar mark that is likely to cause confusion in the marketplace in

18  connection with the type of goods specified in the certificate.~~] [~~.  These

19  presumptions in favor of the owner created by the certificate of registration can be

20  overcome or rebutted only by certain types of evidence that I will describe to you

21  later as appropriate.~~]~~.

22  *[LIKELIHOOD OF CONFUSION]*

23  [To prove infringement, Brandy Melville~~the plaintiff~~ must prove, by a

24  preponderance of the evidence, that the ~~defendant~~alleged direct infringer, without

25  Brandy Melville~~the plaintiff~~'s consent, used in commerce a reproduction, copy,

26  counterfeit or colorable imitation of plaintiff's mark in connection with the

27  distribution or advertisement of goods, such that the alleged direct

28  infringer~~defendant~~'s use of the mark is likely to cause confusion as to the source of

1 the goods.  It is not necessary that the mark used by the alleged direct
2 infringer~~defendant~~ be an exact copy of Brandy Melville~~the plaintiff~~'s mark.  Rather,
3 Brandy Melville~~the plaintiff~~ must demonstrate that, viewed in its entirety, the mark
4 used by the alleged direct infringer~~defendant~~ is likely to cause confusion in the
5 minds of reasonably prudent purchasers or users as to the source of the product in
6 question~~.]~~.

### THE PLAINTIFF'S BURDEN OF PROOF

8 In this case, the plaintiff, ~~[*name of plaintiff*]~~,Brandy Melville, contends that
9 the defendant, ~~[*name of defendant*]~~,Redbubble, has contributorily infringed and
10 contributorily counterfeited Brandy Melville~~the plaintiff~~'s trademarks.  Brandy
11 Melville~~The plaintiff~~ has the burden of proving by a preponderance of the evidence
12 that Brandy Melville~~the plaintiff~~ is the owner of a valid trademark and that ~~the~~
13 ~~defendant~~Redbubble contributorily infringed ~~and~~or contributorily counterfeited that
14 trademark.  Preponderance of the evidence means that you must be persuaded by the
15 evidence that it is more probably true than not true that ~~the defendant~~Redbubble
16 contributorily infringed and contributorily counterfeited Brandy Melville~~the~~
17 ~~plaintiff~~'s trademarks.

### *[THE DEFENDANT'S BURDEN OF PROOF]*

19 ~~[The defendant~~Redbubble contends that ~~[~~the ~~[~~registered~~]~~ ~~trademark is~~
20 trademarks are invalid~~][,][,~~ the trademarks ha~~s~~ve been abandoned~~] [or] [~~*insert*
21 *other,*~~.~~ and that certain affirmative ~~defense].~~defenses——known as ~~Fair Use,~~Failure
22 to Mitigate, the Statute of Limitations, and Abandonment——prevent a finding for
23 Brandy Melville~~plaintiff~~.  ~~The defendant~~Redbubble has the burden of proving by a
24 preponderance of the evidence that ~~[~~the ~~[~~registered~~]~~ ~~trademark] is~~ trademarks are
25 invalid~~][,][,~~ the trademark has been abandoned~~][,~~ or~~]~~ ~~[~~*insert other*~~]~~ its affirmative
26 ~~defense].]~~defenses.

27
28

2911-1006 / 1814621

1        [Preponderance of the evidence means that you must be persuaded by the

2  evidence that it is more probably true than not true that ~~the [[registered] trademark is~~

3  ~~invalid] [or] [*insert other affirmative* defense].~~these defenses apply.

4        ~~[_____ is a person~~Both parties——Brandy Melville and Redbubble—

5  —are persons as that term is used in these instructions.~~].~~

Authority/Source:  Ninth Circuit Model Jury Instruction 15.1 (modified to fit case and to conform instruction to registered marks that are not incontrovertible); *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006) (trademark use); *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1142–43 (D. Or. 2011) (ornamental use); *Int'l Ord. of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir. 1980) (aesthetic functionality); *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968) (nominative fair use).

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to this proposed jury instruction because it misstates the law, is argumentative, is misleading, and contains statements that are irrelevant to the trial. This proposed instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.1 to this case.

Defendant improperly removed the section titled "Trademark Interests," which instructs the jury that "A trademark owner may enforce the right to exclude others in an action for infringement." This instruction is critical for the jury to understand that Plaintiff's trademarks provide Plaintiff specific rights, including the right to exclude others—including Defendant—in an action for contributory infringement and contributory counterfeiting.

Plaintiff objects to the proposed jury instruction's improper use of the vague term "alleged direct infringer." To avoid jury confusion, to be specific, and to clarify that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website, the proposed jury instruction should refer to "Redbubble's product designers or fulfillers."

The proposed jury instruction improperly strays from the Model Civil Jury Instruction by replacing "prove" with "assert" in the section titled "Trademark Registration." This change is unjustified, misstates the law, and lacks explanation.

Plaintiff incorporates by reference its Disputed Jury Instruction No. 2.

**Defendant's Reply:**

A mere registration cannot meet Plaintiff's "burden of persuasion" to prove infringement, even if the registration confers a "presumption of validity" to a mark; this presumption only shifts the "burden of production" on that issue, *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002), and is limited to "'the goods or services specified in the registration.'"  *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 976 n.91 (C.D. Cal. 2002) (citation omitted).  For example, Redbubble will offer evidence preventing Plaintiff from meeting its burden of proving validity by showing it has not, for certain goods, used marks (registered and unregistered) in a "public" enough way to allow buyers to identify said goods as Plaintiff's; (*Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1126 (9th Cir. 2006) (citation omitted)), because, *inter alia*, the claimed marks are "ornamental." *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1143 (D. Or. 2011). Thus, registrations are "merely evidence" thereof. *Tie Tech*, 296 F.3d at 783. Redbubble will also show Plaintiff cannot meet its burden of proving trademark use by a direct infringer and likelihood of confusion because: (1) using claimed marks for their "aesthetic appeal" is not trademark use; (*Int'l Ord. of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 919 (9th Cir. 1980)) and (2) using said marks to describe one's own offerings is neither trademark use nor confusing. *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (Party asserting assert nominative fair use . . . need only show . . . it used the mark to refer to the trademarked good . . . The burden then reverts to the plaintiff to show" confusion.).

Plaintiff has the burden of identifying the particular alleged direct infringers, along with the specific instances of infringement these third parties allegedly committed.  *See Free Kick*, 140 F. Supp. 3d at 985. Also, a counterfeiting claim requires proving infringement. *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020) (the "'first degree' of trademark infringement" is counterfeiting). One must "review the product as a whole" to assess if "an allegedly

1 counterfeit product will likely cause confusion" and there is "no presumption of"
2 confusion "if the products themselves are not identical." *Id.* at 1080. In fact, various
3 factors here (*e.g.*, use of "housemarks") render counterfeiting "implausible." *Id.* at
4 1081.

**1**  <u>**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 3.**</u>

**2**

**3**      **15.5  TRADEMARK LIABILITY—THEORIES AND POLICIES**

**4**            **(15 U.S.C. § § 1114(1), 1125(A))**

**5**

**6**      The trademark laws balance three often-conflicting goals: (1) protecting the

**7**  public from being misled about the nature and source of goods and services, so that

**8**  the consumer is not confused or misled in the market; (2) protecting the rights of a

**9**  business to identify itself to the public and its reputation in offering goods and

**10**  services to the public; and (3) protecting the public interest in fair competition in the

**11**  market.

**12**      The balance of these policy objectives ~~vary~~<u>varies</u> from case to case, because

**13**  they may often conflict.  Accordingly, each case must be decided by examining its

**14**  specific facts and circumstances, of which you are to judge.

**15**      In these instructions, I will identify types of facts you are to consider in

**16**  deciding if ~~the defendant~~<u>Redbubble</u> is liable to <u>Brandy Melville</u>~~the plaintiff~~ for

**17**  violating the trademark law.  These facts are relevant to whether ~~the~~

**18**  ~~defendant~~<u>Redbubble</u> is liable for~~:~~

**19**      ~~[1.~~   <u>contributorily </u>infringing <u>Brandy Melville</u>~~plaintiff~~'s ~~registered~~

**20**  trademark rights, by <u>supplying a service to others who </u>us~~ing~~ <u>or counterfeit a</u><u>Brandy</u>

**21**  <u>Melville</u>~~plaintiff~~'s <u>alleged </u>trademark<u>s</u> in a manner likely to cause confusion among

**22**  consumers.~~]~~~~[;]~~ ~~; or~~

**23**      ~~[2.   unfairly competing, by using a trademark in a manner likely to cause~~

**24**  ~~confusion as to the origin or quality of plaintiff's goods] [;]~~ ~~.~~

**25**          ~~[3.   unfairly competing, by using trade dress in a manner likely to~~

**26**      ~~cause confusion as to the origin or quality of plaintiff's goods] [;]~~

**27**

**28**

1      [4.    infringing plaintiff's trade name, by using similar corporate,

2  business or professional names in a manner likely to cause confusion about

3  the source of products in the minds of consumers] [;] [and]

4      [5.    false advertising, by making a false statement that was material

5  and that tended to deceive consumers, injuring the plaintiff in the market].

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority/Source:  Ninth Circuit Model Jury Instruction 15.5 (modified to conform to facts of case and correct grammatical error)

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**<u>Plaintiff's Objection:</u>**

Plaintiff objects to this proposed jury instruction because it misstates the law, is argumentative, and is misleading.   This proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.5 to this case. The proposed jury instruction fails to reference Plaintiff's claim of contributory counterfeiting, as well as Defendant's contributory infringement of Plaintiff's unregistered trademarks.

Plaintiff incorporates by reference its Disputed Jury Instruction No. 3.

**Defendant's Reply:**

Defendant has responded to Plaintiff's objection that the instruction did not cover contributory infringement of unregistered trademarks by removing the prior inadvertent limitation to registered marks.

As for Plaintiff's objection that Defendant has not explicitly identified counterfeiting each time it mentions infringement, Defendant submits that, since counterfeiting is a variety of infringement and Plaintiff chose not to plead it as a separate claim, the proposed instruction appropriately identifies the issue for the jury without undue repetition.

1

III.    **CLAIM 4: CONTRIBUTORY TRADEMARK INFRINGEMENT**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 4.**</u>

**15.21  DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT**

**[*INTEGRATING* 15.6  INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADEMARK (15 U.S.C.  § 1114(1))]**

A person is liable for trademark infringement by another if the person [sells][ or supplies][ goods][ or services] to another knowing or having reason to know that the other person will use the goods to infringe the plaintiff's trademark.

Brandy Melville~~The plaintiff~~ has the burden of proving each of the following by a preponderance of the evidence:

  1. The Brandy Heart Logo, the Brandy Flags Logo, and the LosAngeles Lightning Logo, are valid, protectable registered trademarks;

  2. The "Brandy Melville" name and variations thereof, namely "BM," "Brandy LA," "brandymelvilleusa," and "brandymelvilleusa.com," are valid, protectable, unregistered trademarks;

  3~~2~~. Brandy Melville~~The plaintiff~~ owns the Brandy Heart Logo, the Brandy Flags Logo, the LosAngeles Lightning Logo, the phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," and the words "brandymelvilleusa" and "brandymelvilleusa.com" as trademarks;

  4~~3~~. the defendantRedbubble [sold] [supplied] [goods] [ services] to [*name of direct infringer*];

  2~~5~~4. [*name of direct infringer*] used the [goods] [services] ~~the defendant~~Redbubble [sold] [supplied] to infringe Brandy Melville~~the plaintiff~~'s trademark by using Brandy Melville~~plaintiff~~'s trademarks in commerce without the consent of Brandy Melville~~the plaintiff~~ in a manner

1  that is likely to cause confusion among ordinary consumers as to the source,
2  sponsorship, affiliation, or approval of the goods;

3  365.   the defendantRedbubble knew or had reason to know [*name of*
4  *direct infringer*] [would use the goods to infringe the plaintiff's trademark]
5  [was infringing Brandy Melvillethe plaintiff's trademarktrademarks and the
6  defendantRedbubble continued to supply its services]; [; and]

7  [476.   the defendantRedbubble providing the services to [*name of direct*
8  *infringer*] had direct control and monitoring of the instrumentality used by
9  [*name of direct infringer*] to infringe; and]

10  4. [587.].   Brandy Melvillethe plaintiff was damaged by the
11  infringement.

12  For a defendant to be liable for contributory infringement, it must have had
13  some contemporary knowledge of which particular listings were infringing or would
14  infringe in the future. The mere assertion of infringement in a notice letter is not
15  sufficient to establish knowledge of infringement, and use of an identical or similar
16  mark does not necessarily constitute infringement.

17  A defendant who engages in unilateral proactive conduct, such as measures
18  designed to identify and remove infringing materials before receiving actual notice,
19  does not "know or have reason to know" of those specific instances that its proactive
20  conduct identifies unless it received actual notice of those instances.

21  If you find that each of the elements on which Brandy Melvillethe plaintiff
22  has the burden of proof has been proved, your verdict should be for Brandy
23  Melvillethe plaintiff.  If, on the other hand, Brandy Melvillethe plaintiff has failed to
24  prove any of these elements, your verdict should be for the defendantRedbubble.

25
26
27
28

Authority/Source:  Ninth Circuit Model Jury Instructions 15.21, 15.6 (modified to fit facts of case and to integrate general infringement instructions, esp. in items 1, 2, and 4); *Tiffany Inc. v. eBay, Inc.*, 600 F.3d 93, 107-09 (2d Cir. 2010); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F. Supp. 949, 963 (C.D. Cal 1997).

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to this proposed jury instruction because it misstates the law, is argumentative, is misleading, and contains statements that are irrelevant to the trial. This proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction Nos. 15.6 and 15.21 to this case.  Rather than conform to the Ninth Circuit Model Civil Jury Instructions, as this Court requires (Dkt. 17 at 5), Defendant attempts to Frankenstein together two different instructions into an entirely novel instruction that is unnecessarily lengthy, confusing, and argumentative and that misstates the law.

The proposed jury instruction is incapable of differentiating liability for registered trademarks that Defendant has contributorily counterfeited and unregistered trademarks that Defendant has contributorily infringed.  It also fails to specifically reference "Redbubble's product designers and fulfillers" that directly counterfeited and infringed Plaintiff's registered and unregistered trademarks.  The proposed jury instruction will cause jury confusion and fails to adequately identify the product designers and fulfillers for the products sold on Defendant's website.

The proposed jury instruction improperly adds several factors, requirements, and elements that misstate the law and are not provided in the Ninth Circuit Model Jury Instructions.  For example, Defendant adds an "in commerce without consent" requirement and multiple paragraphs adding "contemporary knowledge" and "unilateral proactive conduct" requirements that are argumentative and that are not in the Ninth Circuit Model Jury Instruction or in this Court's order deciding the parties' dispositive motions (Dkt. 103).  Moreover, a notice letter of infringement can establish Defendant's knowledge.  (*See* Dkt. 103 at 9.)  *E.g., Delta Air Lines, Inc. v. Wunder*, No. 13-cv-3388, 2015 WL 11347586, at *10 (N.D. Ga. Dec. 28, 2015).  And "unilateral policing" does not absolve a counterfeiting or infringing defendant from liability, particularly where the defendant is willfully blind and engages in "ostrich-like" practices.  (Dkt. 103 at 9.)  *See also Coach, Inc. v. Goodfellow*, 717 F.3d 498,

31

505 (6th Cir. 2013); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109-10 (2d Cir. 2010); *Louis Vuitton Malletier, S.A. v. Akanoc Sols, Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011).   A defendant is liable where it has "actual knowledge that the infringing activity was occurring at [its platform] over a lengthy period of time and even knew that particular vendors were selling counterfeit . . . products."  *Coach*, 717 F.3d at 505.

The proposed jury instruction also inexplicably removes instructions so as to misstate the law and improperly limit the scope of Defendant's liability.  For example, Ninth Circuit Model Jury Instruction No. 15.21 provides that Plaintiff can show Defendant knew or had reason to know one of its product designers or fulfillers "*would use the goods or services to infringe any of the plaintiff's trademarks* or was infringing any of the plaintiff's trademarks and the defendant continued to supply its goods or services."  The proposed jury instruction improperly omitted the italicized portions.

Plaintiff incorporates by reference its Disputed Jury Instruction Nos. 4 and 5.

1 **<u>Defendant's Reply:</u>**

2        Defendant has not "Frankenstein[ed] together two different instructions."

3  The Model Instructions presume that a plaintiff will not assert contributory

4  infringement in isolation.  But given that the Court's summary judgment order left

5  only contributory liability for the jury, Defendant submits that integrating the

6  relevant elements and burden of proof for infringement generally into the context of

7  contributory infringement specifically is the most efficient way to educate the jury

8  as to the relevant law. *Cf. BWP Media USA, Inc. v. Linkbucks.com, LLC*, No. CV

9  14-689-JFW (SHX), 2014 WL 12596429, at *3 (C.D. Cal. Aug. 8, 2014) (indirect

10 liability "require[s] . . . direct infringement by a third party.'" (citation omitted)).

11       The instructions need not be broken apart: they properly combine elements

12 common to claims of trademark infringement and counterfeiting.  Infringement

13 claims under 15 U.S.C. §§ 1114, 1125 have "identical elements." *Nestle USA, Inc.*

14 *v. Gunther Grant, Inc.*, No. CV-13-6754 MMM (ASX), 2014 WL 12558008, at *6

15 (C.D. Cal. May 13, 2014).  Also, a "claim for statutory damages based on willful

16 trademark counterfeiting under §§ 1114(1)(b) and 1117(c)(2) also requires" the

17 "same elements" as well as "proof that 'defendant intentionally used the trademark

18 with knowledge of its counterfeit nature'"; thus, statutory damages is dealt with in a

19 separate instruction. *Id.*  Plaintiff has the burden of identifying the particular alleged

20 direct infringers, along with the specific instances of infringement these third parties

21 allegedly committed. *See Free Kick*, 140 F. Supp. 3d at 985. Also, the additional

22 requirements are supported by cited authorities. *E.g.*, *Tiffany Inc. v. eBay, Inc.*, 600

23 F.3d 93, 107-09 (2d Cir. 2010); *Lockheed*, 985 F. Supp. at 963.  An accused

24 infringer need not be "fully successful in" policing: it merely needs to take

25 "reasonable" remedial measures.  *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 255

26 (2d Cir. 2021).

27       As for Defendant's deletion of the phrase "would use the goods to infringe the

28 plaintiff's trademark," Defendant notes that the Model Instruction explicitly uses

brackets to denote that that phrase is optional.  Defendant also submits that this phrase is intended to be used when a defendant allegedly contributes to infringement by providing goods, while the subsequent optional phrase – "was infringing the plaintiff's trademark and the defendant continued to supply its services" – is intended to be used when a defendant allegedly contributes to infringement by supplying services.  Because Plaintiff's contributory infringement claim here focuses on Defendant's supplying services, only the second phrase is appropriate.

**<u>DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 5.</u>**

**15.8  INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP—REGISTERED TRADEMARK (15 U.S.C. § § 1057, 1065 AND 1115)**

I gave you instruction number [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*] that requires Brandy Melville~~the plaintiff~~ to prove by a preponderance of the evidence ~~[~~that the trademark is valid and protectable~~] [~~ and~~] [~~ that Brandy Melville~~the plaintiff~~ owns the trademark~~]. [~~.  A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others.  A trademark becomes protectable after it is used in commerce~~].~~.

One way for Brandy Melville~~the plaintiff~~ to prove a trademark's validity is to show that the trademark is registered.  An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence ~~[~~of the validity and protectability of the trademark~~] [~~ and~~] [~~ of the certificate holder's ownership of the trademark~~]~~ covered by that certificate.

~~Exhibit ___ is a~~Exhibits 5, 6, and 7 are certificates of registration from the United States Patent and Trademark Office. ~~[It was~~ They have been submitted by Brandy Melville~~the plaintiff~~ as ~~proof~~evidence of the validity of the trademark ~~[~~and~~]~~ ~~[~~ that Brandy Melville~~the plaintiff~~ owns the trademark~~s].~~.

The law presumes that the facts ~~recited~~noted in ~~this~~the certificate are~~:~~ ~~[summarize certificate entries as to validity and ownership of trademark, as well as limitations on the~~ true, that is that:

1  • Exhibit 5, the "Brandy Flags" registration]. However, represents that it
2   was registered on January 9, 2018 and "consists of 'BRANDY
3   MELVILLE' with a pair of crisscrossed flags between the 'Y' and
4   'M.'" The Brandy Flags mark is registered for use with specific types
5   of products, including stickers, bags, and apparel.

6  • Exhibit 6, the "Brandy Heart" registration, represents that it was
7   registered on July 11, 2017 and "consists of the wording 'BRANDY
8   MELVILLE' in black with a pink heart between BRANDY and
9   MELVILLE." "The color(s) black and pink is/are claimed as a feature
10   of the mark." The Brandy Heart mark is registered for use with
11   specific types of products, including perfumes, stickers, apparel,
12   furniture, and fabrics.

13  • Exhibit 7, the "LosAngeles Lightning" registration, represents that it
14   was registered on May 14, 2019 and "consists of [t]he word
15   'LOSANGELES' as one word without a space. The first letter of the
16   word is stylized to resemble a lightning bolt. Below 'LOSANGELES'
17   is the word 'CALIFORNIA' and the number '1984'. All of the words
18   are in yellow. No claim is made to the exclusive right to use the
19   following apart from the mark as shown: LOS ANGELES
20   CALIFORNIA 1984." The LosAngeles Lightning mark is registered
21   for use only with "Clothing, namely, T-shirts, tank tops and
22   sweatshirts."

23 But this presumption can be overcome by sufficient evidence to the contrary. Here,
24 the defendantRedbubble has presented submitted evidence to dispute these
25 recitals.that because Brandy Melvillethe plaintiff has not used the Brandy Flags and
26 Brandy Heart marks on some of the products for which they were registered,
27 including in particular, on stickers, it has abandoned those marks. The
28 defendantRedbubble alleges that the certificatealso asserts that, because Brandy

Melville~~the plaintiff~~ never actually intended to make such use, the Brandy Flags and Brandy Hearts registrations were obtained fraudulently.  Redbubble also asserts that Brandy Melville's use of the LosAngeles Lightning logo is aesthetic rather than source-identifying, and therefore cannot be ~~considered proof of [[validity] [and] [ownership]]of the~~ protected by trademark ~~because [*insert § 1115(b) defense[s] raised by* law~~.  If Redbubble~~defendant, e.g.,~~ is able to show this evidence by a preponderance of the ~~*trademark had been abandoned,*~~evidence, then you cannot rely on the ~~*defendant's fair use of*~~registration as stating the ~~*trademark, etc.*]~~truth of the matters contained therein.

~~[Unless~~If Redbubble~~the defendant~~ proves ~~by a preponderance of the evidence that [*insert § 1115(b) defense[s] raised by defendant, e.g., that the trademark was abandoned*], you must consider the trademark to be conclusively proved as [[valid] [and][owned by the plaintiff]].  However, if the defendant shows that [*insert § 1115(b) defense[s] raised, e.g., the trademark was abandoned*]~~its defenses by a preponderance of the evidence, then the facts stated in the ~~certificate [*summarize certificate entries disputed by defendant's proof*]~~certificates are no longer ~~conclusively~~ presumed to be correct.  [You should then consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that the trademark is ~~[[~~valid~~][~~ and~~[~~ owned by Brandy Melville~~the plaintiff]],~~, as I explain in Instruction [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*].

Authority/Source:  Ninth Circuit Model Jury Instruction 15.8 is modified to fit facts
of case. It is also modified to reflect that, although the comments
state that the Instruction is intended for an incontestable mark, no
asserted mark is incontestable; accordingly, the paragraph
supplied in the Comment for "Other Registration Issues" /
"Disputed Contestable Registration" has been inserted per the
Comment's instruction.  This instruction is also modified to add
ornamental use.  *See International Order of Job's Daughters v.
Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980); *Vuitton et
fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 774-75 (9th
Cir. 1981); *Au-Tomotive Gold, Inc. v. Volkswagen of America,
Inc.*, 457 F.3d 1062, 1069 (9th Cir. 2006); *Bobosky v. Adidas
AG*, 843 F. Supp. 2d 1134, 1143 (D. Or. 2011); *see also* 15
U.S.C. § 1115(b)(8)).

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to this proposed jury instruction because it misstates the law, is argumentative, is misleading, and contains statements that are irrelevant. This proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.8 to this case. Instead, it is a complete re-write of the Model Civil Jury Instruction, reflecting what Defendant wishes the law in the Ninth Circuit provided.

The definition of a trademark in this proposed jury instruction is unnecessary and duplicative of Ninth Circuit Model Civil Jury Instruction No. 15.1. Defendant's replacement of "proof" with "evidence" in the third paragraph misstates the law and improperly strays from the Model Civil Jury Instruction. The proposed jury instruction also misstates the law by improperly altering the Model Civil Jury Instruction with respect to the "facts recited in" the trademark registrations, evidence that Defendant may submit "to dispute these recitals," and the consequence of Defendant's failure to prove its defenses. The proposed jury instruction contains incomplete summaries of the facts in Plaintiff's registration certificates and reflects facts and arguments that are not in the record with respect to Defendant's contentions about the registration certificates.

Plaintiff incorporates by reference its Disputed Jury Instruction No. 7.

1   **Defendant's Reply:**

2       A mere registration cannot meet Plaintiff's "burden of persuasion" to prove

3   infringement, even if the registration confers a "presumption of validity" to a mark;

4   this presumption only shifts the "burden of production" on that issue, *Tie Tech*, 296

5   F.3d at 783, and is limited to "'the goods or services specified in the registration.'"

6   *Glow*, 252 F. Supp. 2d at 976 n.91 (citation omitted).  A valid trademark requires

7   use, and Redbubble will rebut presumption(s) of validity by showing, *inter alia*,

8   Plaintiff's lack of use; thus it is proper to instruct the jury about what trademark use

9   is, which requires explaining what a trademark does.  For example, Redbubble will

10  offer evidence preventing Plaintiff from meeting its burden of proving validity by

11  showing it has not, for certain goods, used marks (registered and unregistered) in a

12  "'public'" enough way to allow buyers to identify said goods as Plaintiff's.  *Dep't of*

13  *Parks*, 448 F.3d at 1126.  This is since, *inter alia*, the claimed marks are ornamental

14  and/or have been abandoned.  *Bobosky*, 843 F. Supp. 2d at 1143 (trademarks cannot

15  be acquired via "ornamental" use); *Societe de Devs. et D'Innovations des Marches*

16  *Agricoles et Alimentaires-SODIMA-Union de Cooperatives Agricoles v. Int'l Yogurt*

17  *Co.*, 662 F. Supp. 839, 850 (D. Or. 1987) ("abandonment" invalidates registration).

18      Also, a registration's statements, such as those regarding "'establish[ment]'"

19  of "'valid ownership rights'" and "'use[]'" of "'the mark in commerce'", may be

20  rebutted through a "preponderance of the evidence."  *City of Carlsbad v. Shah*, 666

21  F. Supp. 2d 1159, 1167–68 (S.D. Cal. 2009) (quoting *Sengoku Works Ltd. v. RMC*

22  *International, Ltd.*, 96 F.3d 1217, 1219–20 (9th Cir.1996)).  Thus, if a defendant

23  successfully shows that the registrant did not acquire trademark rights through use,

24  *ibid*, the registrations is "merely evidence" thereof.  *Tie Tech*, 296 F.3d at 783. This

25  can occur if the plaintiff fails to carry its burden of showing adequate trademark use

26  to support ownership and/or if the defendant prevails in an affirmative defense like

27  abandonment.  *See, e.g.*, *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d

28  1019, 1033–35 (N.D. Cal. 2008) (defendant "overc[a]me the presumption" by

1  showing, *inter alia*, lack of use sufficient for "the public [to] associate[] the mark

2  with plaintiff"); *Societe*, 662 F. Supp. at 850 (abandonment).

3        Finally, Plaintiff's objection that "[t]he proposed jury instruction also reflects

4  facts that are not in the record with respect to Defendant's contentions about the

5  registration certificates" ignores that the instruction would be given only if

6  Defendant submits such evidence; otherwise, there would be no purpose to such

7  instruction.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 6.

## 15.9  INFRINGEMENT—ELEMENTS—VALIDITY— UNREGISTERED MARKS

[*Describe plaintiff's alleged trademark*] is not registered. Brandy Melville claims to own unregistered trademarks in the phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," and the words "brandymelvilleusa." and "brandymelvilleusa.com."  Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark. Instruction [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*] requires the plaintiff to prove by a preponderance of the evidence that [*describe plaintiff's alleged trademark*] is the phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," and the words "brandymelvilleusa" and "brandymelvilleusa.com" are valid trademarks.  A valid trademark is a [word, name, symbol, device, or any combination of these items] that is either:

      1.    inherently distinctive; or

      2.    descriptive, but has acquired a secondary meaning.

    [Only a valid trademark can be infringed.] [. Only if you determine plaintiff proved by a preponderance of the evidence that the [*describe plaintiff's alleged trademark*] is a phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," and the words "brandymelvilleusa" and "brandymelvilleusa.com" are valid trademark trademarks should you consider whether plaintiff owns it them or whether alleged direct infringer defendant's actions infringed it.] them.

    Only if you determine that [*describe plaintiff's alleged trademark*] is the phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy

LA," and the words "brandymelvilleusa" and "brandymelvilleusa.com" are not inherently distinctive should you consider whether ~~it is~~they are descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction [*insert number of instruction regarding Distinctiveness and Secondary Meaning, e.g., 15.11*].

Authority/Source:  Ninth Circuit Model Jury Instruction 15.9 (modified to fit facts of case)

Requesting Party:  Defendant




_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to Defendant's proposed jury instruction because it is argumentative and misleading.  The proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.9 to this case.  Among other things, the proposed jury instruction improperly refers to a vague "alleged direct infringer."  To avoid jury confusion, to be specific, and to clarify that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website, the proposed jury instruction should refer to "Redbubble's product designers or fulfillers."

Plaintiff incorporates by reference its Disputed Jury Instruction No. 12.

1    **<u>Defendant's Reply:</u>**

2        Plaintiff has the burden of identifying the particular alleged direct infringers,

3    along with the specific instances of infringement these third parties allegedly

4    committed.  *See Free Kick*, 140 F. Supp. 3d at 985.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 7.**

**15.10  INFRINGEMENT—ELEMENTS—VALIDITY—
UNREGISTERED MARK—DISTINCTIVENESS**

***Strength as a Likelihood of Confusion Factor***

How ~~[distinctively]~~ [strongly] a trademark indicates that a good comes from a ~~[particular]~~ [specific] source ~~[even if unknown]~~ is an important factor to consider in ~~[[assessing its validity]~~ [ and] [Instruction *insert number of instruction regarding Skeekcraft Test, e.g., 15.18* for determining whether the trademark used by the alleged direct infringer~~defendant~~ creates for consumers a likelihood of confusion with the plaintiff's trademark~~].]~~.

Brandy Melville~~The plaintiff~~ asserts ~~[insert claimed trademark] is a~~that the phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," and the words "brandymelvilleusa" and "brandymelvilleusa.com" are valid and protectable ~~trademark~~trademarks for its ~~[insert~~apparel, stickers, and home goods ~~used in connection with the trademark]~~. ~~[.~~  Brandy Melville~~The plaintiff~~ contends that the alleged direct infringer~~defendant~~'s use of ~~[those]~~[ and similar] words in connection with the ~~defendant's~~Redbubble ~~[insert the defendant's product or service or business]~~ [[Marketplace infringes Brandy Melville~~plaintiff~~'s ~~trademark]~~[trademarks and]~~[ is likely ~~to~~ cause confusion about the ~~[origin of goods]~~ [business] associated with that trademark~~.]]~~.

In order to determine if Brandy Melville~~the plaintiff~~ has met its burden of showing that ~~[insert claimed trademark] is a~~these unregistered marks are valid ~~trademark~~trademarks, you should classify it on the spectrum of trademark distinctiveness that I will explain in this instruction.

~~[~~An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in

the market.  The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.~~].~~

### *Spectrum of Marks*

Trademark law provides ~~[great]~~ protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability, you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative ~~[strength][~~ or distinctiveness~~].~~ These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction [*insert number of instruction regarding secondary meaning, e.g., 15.11*] and generic names (which are entitled to no protection).

**Arbitrary Trademarks.** The first category of "inherently distinctive" trademarks is arbitrary trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a ~~[product] [service].~~ Such a trademark is a word that in no way describes or has any relevance to the particular ~~[product] [service]~~ it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold.  The company's use of the word "apple" was arbitrary or

1  fanciful because "apple" did not describe and was not related to what the computer

2  was, its components, ingredients, quality, or characteristics.  "Apple" was being

3  used in an arbitrary way to designate for consumers that the computer comes from a

4  particular manufacturer or source.

5  **Suggestive Trademarks.** The next category is suggestive trademarks. These

6  trademarks are also inherently distinctive but are considered weaker than arbitrary

7  trademarks. Unlike arbitrary trademarks, [which are in no way related to what the

8  [product] [service] is or its components, quality, or characteristics,], suggestive

9  trademarks imply some characteristic or quality of the [product] [service] to which

10  they are attached. If the consumer must use imagination or any type of multi-stage

11  reasoning to understand the trademark's significance, then the trademark does not

12  describe the product's features, but merely suggests them.

13  A suggestive use of a word involves consumers associating the qualities the

14  word suggests to the [product] [service] to which the word is attached. For example,

15  when "apple" is used not to indicate a certain company's computers, but rather

16  "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does

17  not describe what the vitamins are. However, consumers may come to associate the

18  healthfulness of "an apple a day keeping the doctor away" with the supposed

19  benefits of taking "Apple–A–Day" Vitamins.

20  **Descriptive Trademarks.** The third category is descriptive trademarks.

21  These trademarks directly identify or describe some aspect, characteristic, or quality

22  of the [product] [service] to which they are affixed in a straightforward way that

23  requires no exercise of imagination to be understood.

24  For instance, the word "apple" is descriptive when used in the trademark

25  "CranApple"" to designate a cranberry-apple juice. It directly describes ingredients

26  of the juice. Other common types of descriptive trademarks identify where a

27  [product] [service] comes from, or the name of the person who makes or sells the

28  [product] [service].. Thus, the words "Apple Valley Juice" affixed to cider from the

49

California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.  Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "Judy's Juice" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider [and she is using her first name as a descriptive trademark.].

**Generic Names**. The fourth category is entitled to no protection at all.  They are called generic names and they refer to a general name of the [product] [service], as opposed to the plaintiff's brand for that [product] [service].  Generic names are part of our common language that we need to identify all such similar [products] [services].  A generic name is a name for the [product] [service] on which it appears.

If the primary significance of the alleged mark is to name the type of [product] [service] rather than the [manufacturer] [provider], the term is a generic name and cannot be a valid trademark.  If the majority of [relevant] consumers would understand the term to name the type of [product] [service] rather than the [manufacturer] [provider], the primary significance of the term is generic and not entitled to protection as a trademark.

The word "apple" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store.  As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

### *Mark Distinctiveness and Validity*

If you decide that [*insert* the *plaintiff's claimed trademark*] isthe phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," or the words "brandymelvilleusa" or "brandymelvilleusa.com" are arbitrary or suggestive, it isthey are considered to be inherently distinctive.  An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that [*insert the plaintiff's claimed trademark*] isthe phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," or the words "brandymelvilleusa" or "brandymelvilleusa.com" are generic, it they cannot be distinctive and therefore isare not valid nor protectable.  You must render a verdict for Redbubblethe defendant on the charge of infringement in Instruction [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*].

If you decide that [*insert* the *plaintiff's claimed trademark*] isphrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," or the words "brandymelvilleusa" or "brandymelvilleusa.com" are descriptive, you will not know if the trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction [*insert number of instruction regarding secondary meaning, e.g., 15.11*].

Authority/Source:  Ninth Circuit Model Jury Instruction 15.10 (modified to fit facts of case)

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**<u>Plaintiff's Objection:</u>**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative, and is misleading.  This proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.10 to this case. It misstates the law and strays from the Model Civil Jury Instructions by removing the Model Civil Jury Instruction's instructions about, *inter alia*, a trademark's "distinctiveness," the trademark laws' "great" protection for trademarks, and the role of providers.

Plaintiff incorporates by reference its Disputed Jury Instruction No. 13.

**Defendant's Reply:**

The language that Plaintiff complains that Defendant has proposed omitting from the Model Instruction is explicitly bracketed to denote that that phrase is optional.  Plaintiff makes no attempt to explain why such language is necessary here.  Moreover, as to the omission of "provider" from one sentence, Defendant additionally submits that that word is intended to be used when a plaintiff supplies services, while the immediately prior optional word – "manufacturer" – is intended to be used when a plaintiff manufactures goods.

**DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 8.**

**15.11  INFRINGEMENT—ELEMENTS—VALIDITY—
DISTINCTIVENESS—SECONDARY MEANING**

If you determined in Instruction [*insert number of instruction e.g. 15.10*] that [*identify plaintiff's claimed trademark*] is any of Plaintiff's claimed registered or unregistered marks – the Brandy Heart Logo, the Brandy Flags Logo, the LosAngeles Lightning Logo, the phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," and the words "brandymelvilleusa" and "brandymelvilleusa.com" – are descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive.  This market recognition is called the trademark's "secondary meaning."

A [word][, name][, symbol][, device][, or any combination of these items] acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.  You must find that the preponderance of the evidence shows that a significant number of the consuming public associates Brandy Melville the [*identify the alleged trademark*]Plaintiff's claimed registered or unregistered marks with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether [*describe symbol or term*] hasBrandy MelvillePlaintiff's claimed registered or unregistered marks have acquired a secondary meaning, consider the following factors:

1       (1)     Consumer Perception.  Whether the people who purchase the

2 [product] ~~[service]~~ that bears the claimed trademark associate the trademark

3 with <u>Brandy Melville</u>~~the [owner] [assignee] [licensee];plaintiff;~~

4       (2)     Advertisement.  To what degree and in what manner <u>Brandy</u>

5 <u>Melville</u>~~the [owner] [assignee] [licensee]~~<u>plaintiff</u> may have advertised under

6 the claimed trademark;

7       (3)     Demonstrated Utility.  Whether <u>Brandy Melville</u>~~the [owner]~~

8 ~~[assignee] [licensee]~~<u>plaintiff</u> successfully used this trademark to increase the

9 sales of its [product]~~ [service]~~<u>;</u><u>;</u>

10      (4)     Extent of Use.  The length of time and manner in which <u>Brandy</u>

11 <u>Melville</u>~~the [owner] [assignee] [licensee]~~<u>plaintiff</u> used the claimed trademark;

12      (5)     Exclusivity.  Whether <u>Brandy Melville</u>~~the [owner' s] [assignee'~~

13 ~~s] [licensee' s]~~<u>plaintiff's</u> use of the claimed trademark was exclusive;

14      (6)     Copying.  Whether the <u>alleged direct infringer</u>~~defendant~~

15 intentionally copied <u>Brandy Melville</u>~~the [[owner' s] [assignee's] [licensee'~~

16 ~~s]]~~<u>plaintiff's</u> trademark; and

17      (7)     Actual Confusion.  Whether the <u>alleged direct</u>

18 <u>infringer</u>~~defendant~~'s use of <u>Brandy Melville</u>~~the plaintiff~~'s trademark has led

19 to actual confusion among a significant number of consumers~~; and~~<u>.</u>

20      ~~(8)     [*Insert any other factors that bear on secondary meaning*].~~

21 The presence or absence of any particular factor should not necessarily

22 resolve whether ~~[*identify the alleged trademark*] has~~<u>Brandy Melville</u>~~the plaintiff~~<u>'s</u>

23 <u>claimed registered or unregistered marks have</u> acquired secondary meaning.

24 Descriptive marks are protectable only to the extent you find they acquired

25 distinctiveness ~~[through secondary meaning]~~ <u>[[</u>by the public coming to associate the

26 mark with the ~~[owner of the mark] [a particular source]]]~~<u>.plaintiff.</u> Descriptive

27 marks are entitled to protection only as broad as the secondary meaning they have

28

1   acquired, if any.  If they have acquired no secondary meaning, they are entitled to no
2   protection and cannot be considered a valid mark.

3   [Brandy MelvilleThe plaintiff has the burden of proving that the [*identify*
4   *plaintiff's trademark*] hasits claimed registered or unregistered marks have acquired
5   a secondary meaning.] [The defendant has the burden of proving that the [*identify*
6   *plaintiff's trademark*] lacks a secondary meaning.]

7   The mere fact that Brandy Melvillethe plaintiff is using [*describe symbol or*
8   *term*],the claimed registered or unregistered marks, or that Brandy Melvillethe
9   plaintiff began using itthem before the alleged direct infringerdefendant, does not
10  mean that the trademark has acquired secondary meaning. There is no particular
11  length of time that a trademark must be used before it acquires a secondary
12  meaning.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Authority/Source:  Ninth Circuit Model Jury Instruction 15.11 (modified to fit facts of case).

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

2911-1006 / 1814621

**<u>Plaintiff's Objection:</u>**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law and is argumentative and misleading. This proposed instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.11 to this case.

This proposed jury instruction needlessly and improperly refers to "Plaintiff's claimed registered . . . marks." The proposed jury instruction also improperly refers to a vague "alleged direct infringer" repeatedly. To avoid jury confusion, to be specific, and to clarify that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website, the proposed jury instruction should refer to "Redbubble's product designers or fulfillers."

Plaintiff incorporates by reference its Disputed Jury Instruction No. 14.

1   **Defendant's Reply:**

2        The reference to "claimed registered . . . marks" is proper given Redbubble's

3   intent to proffer evidence showing that: (1) Plaintiff cannot carry its burden of

4   showing that it had actually acquired trademark rights through bona fide commercial

5   use; and (2) Plaintiff abandoned claimed marks in connection with certain goods.

6   *Dep't of Parks*, 448 F.3d at 1125 ("'To acquire ownership of a trademark it is not

7   enough to have invented the mark first or even to have registered it first; the party

8   claiming ownership must have been the first to actually use the mark in the sale of

9   goods or services.'" (citation omitted)); *Bobosky*, 843 F. Supp. 2d at 1143

10  ("ornamental" use is not trademark use); *Societe*, 662 F. Supp. at 850 (D. Or. 1987)

11  ("abandonment" invalidates registration).

12       Plaintiff has the burden of identifying the particular alleged direct infringers,

13  along with the specific instances of infringement these third parties allegedly

14  committed.  *See Free Kick*, 140 F. Supp. 3d at 985.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 9.

## 15.18  INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—*SLEEKCRAFT* TEST (15 U.S.C. § § 1114(1) AND 1125(A))

You must consider whether the ~~defendant's~~ alleged direct infringer's use of the trademark is likely to cause confusion about the source of the plaintiff's or the alleged direct infringer~~defendant~~'s goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1)  Strength or Weakness of the Plaintiff's Mark.  The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the ~~defendant's~~ allegedly directly infringing goods if the ~~defendant~~ alleged direct infringer uses a similar mark.

(2)  ~~Defendant's~~ Alleged Direct Infringer's Use of the Mark.  If the ~~defendant~~ alleged direct infringer and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3)  Similarity of Plaintiff's and ~~Defendant's~~ Allegedly Directly Infringing Marks.  If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the alleged direct infringer~~defendant~~'s trademark in ~~[~~appearance~~]~~[ _sound~~]~~[ _or~~]~~[ _meaning~~],~~,. there is a greater chance [that consumers are likely to be confused by ~~defendant's~~ the alleged direct infringer's use

of a mark][ of likelihood of confusion]. [. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.].

(4) Actual Confusion. If use by the defendant alleged direct infringer of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendant's alleged direct infringer's use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the defendant alleged direct infringer creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) Defendant's Alleged Direct Infringer's Intent. Knowing use by defendant the alleged direct infringer of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant alleged direct infringer acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If the plaintiff's and defendant's alleged direct infringer's [goods][ or services] are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.

1   They may be less likely to be confused by similarities in the plaintiff's and

2   ~~defendant's~~ alleged direct infringer's trademarks.

3        (8)    Product Line Expansion. When the parties' products differ, you may

4   consider how likely the plaintiff is to begin selling the products for which the

5   alleged direct infringer~~defendant~~ is using the plaintiff's trademark. If there is a

6   strong possibility of expanding into the other party's market, there is a greater

7   likelihood of confusion.

8        [(9)    ~~Other Factors.~~ *~~Insert any other factors that bear on likelihood of~~*

9   *~~confusion.~~*]Surveys. A plaintiff is not required to offer survey evidence to establish

10  likelihood of confusion, but it is often the most persuasive evidence. Consequently,

11  a plaintiff's failure to conduct a consumer survey, assuming it has the financial

12  resources to do so, may lead to an inference that the results of such a survey would

13  be unfavorable.

14       (10)   House Marks. Whether Redbubble~~the defendant~~'s use of its own

15  "house marks" and/or identification of the artist who created each listing

16  significantly diminishes the chance for confusion.

17

18

19

20

21

22

23

24

25

26

27

28

63

1   Authority/Source:  Ninth Circuit Model Jury Instruction 15.18 (modified to address

2   alternatives and options; modified to add survey evidence, *see, e.g.*, *Cairns v.*

3   *Franklin Mint Co.,* 24 F.Supp.2d 1013, 1041–42 (C.D.Cal.1998); *accord Playboy*

4   *Enterprises, Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D.

5   Cal.), aff'd, 202 F.3d 278 (9th Cir. 1999) (citing same); modified to add effect of

6   house marks, *see, e.g.*, *Arcona, Inc. v. Farmacy Beauty*, LLC, 976 F.3d 1074, 1077-

7   81 (9th Cir. 2020) ("it is implausible that a consumer would be deceived [where]

8   products had their respective housemarks … prominently on the packaging"); *Behr*

9   *Process Corp. v. RPM Int'l Inc.*, No. SACV14156JLSDFMX, 2014 WL 12581763,

10  at *6 (C.D. Cal. Feb. 14, 2014) ("while some factors favor finding a likelihood of

11  confusion, the prominent display of house marks and product identifiers, as well as

12  the distinctive trade dress of the respective products, significantly diminishes the

13  chance for confusion"); *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th

14  Cir. 1984) ("In *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir.1979), we

15  noted that the use of a house mark and distinctive logo could reduce the likelihood

16  of confusion, but concluded that the effect was negligible where the house mark was

17  inconspicuous and the logo often absent. Here, by contrast, the marks are always

18  accompanied by prominent house marks and logos, compared to which the marks

19  are themselves inconspicuous."); *Hero Nutritionals LLC v. Nutraceutical Corp.*, No.

20  SACV 11-1195 AG MLGX, 2013 WL 4480674, at *6 (C.D. Cal. Aug. 16, 2013)

21  ("The Court concludes that while the words 'yummy' and 'yummi,' standing alone,

22  are similar in sight, sound, and meaning, the dissimilarities in the designs, themes,

23  layouts, and respective house marks between the two product labels renders the

24  marks dissimilar and easily distinguishable")).

25  Requesting Party:  Defendant

1    _____ GIVEN

2    _____ GIVEN AS MODIFIED

3    _____ REFUSED

4    _____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative, is misleading, and contains statements that are irrelevant to the trial. This proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.18 to this case.

The proposed jury instruction misstates the law by improperly straying from the Model Civil Jury Instruction and making a series of unwarranted changes and additions. The proposed jury instruction improperly refers to a vague "alleged direct infringer." To avoid jury confusion, to be specific, and to clarify that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website, the proposed jury instruction should refer to "Redbubble's product designers or fulfillers."

The proposed jury instruction also tacks on two factors that are not provided in the Model Civil Jury Instruction. These new factors are material and misstate the law. The first factor creates a punitive evidentiary presumption for not introducing evidence that Defendant concedes is "not required." Defendant's second new factor concerns Defendant's—not Plaintiff's—"house marks" in a case regarding *Plaintiff's* trademarks that Defendant has contributorily counterfeited and contributorily infringed. Further, the Ninth Circuit recognizes that house marks can aggravate the likelihood of confusion. *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1288 (9th Cir. 1992) ("Finally, the district court appeared to rely upon [defendant's] argument that the prominence of [defendant's] housemark, on temporary hang-tags, would negate any likelihood of confusion. We disagree. . . . Indeed, use by [defendant] of its housemark along with [plaintiff's] trademark may 'be an aggravation and not a justification[.]'").

Plaintiff incorporates by reference its Disputed Jury Instruction No. 8.

**Defendant's Reply:**

Plaintiff has the burden of identifying the particular alleged direct infringers, along with the specific instances of infringement these third parties allegedly committed.  *See Free Kick*, 140 F. Supp. 3d at 985.

As for Plaintiff's claim that the proposed instruction "tacks on two factors that are not provided in the Model," Model Instruction 15.18 explicitly instructs parties to "[i]nsert any other factors that bear on likelihood of confusion." Defendant also directs the Court to the authorities it cites, which Defendant has identified as relating to the survey factor and house mark factor, respectively.

It is well established that "[t]he lack of survey evidence counts against finding actual confusion."  *Oregon Arms, Inc. v. Oregon Arms Ltd.*, 246 F.3d 675 (9th Cir. 2000) (quoting *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F .3d 65, 72 (2d Cir.1994)); *Network Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08-4675-JFW RZX, 2009 WL 5908719, at *10 (C.D. Cal. Sept. 14, 2009) ("Plaintiff failed to submit a survey or expert report demonstrating confusion . . . [T]his [actual confusion] factor strongly favors Defendant." (citation omitted)).

For at least four decades, Ninth Circuit case law has noted that housemarks reduce likelihood of confusion.  *See, e.g.*, *Edge Wireless, LLC v. U.S. Cellular Corp.*, No. CIV. 03-1362-AA, 2004 WL 1661992, at *12-17 (D. Or. July 23, 2004) ("[i]t is well-established that the presence of a prominent housemark may negate the likelihood of confusion, even if the marks are similar").  More recently, the Ninth Circuit's *Arcona* decision goes even further, stating that housemarks make confusion "implausible."  *Arcona*, 976 F.3d at 1077-81.  Because *Arcona* post-dates the most recent revision of the model instruction, it is entirely appropriate to update it to reflect more recent law.  If anything, the proposed instruction that a housemark "significantly diminishes the chance for confusion" understates the current state of the law.  Plaintiff's cases, which concern *reverse* confusion, are inapposite. *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 994 F.3d 1107, 1121 (9th Cir. 2021)

1 ("While . . . a company's consistent use of a house mark can reduce the likelihood of
2 confusion, *in a reverse confusion case* the junior user's use of a house mark can also
3 aggravate confusion." (emphasis added)).

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 10.

## 15.19  INFRINGEMENT—LIKELIHOOD OF CONFUSION— FACTOR—STRENGTH OF TRADEMARK

### *Strength as a Factor for Evaluating Likelihood of Confusion*

How strongly the plaintiff's trademark indicates that the goods or services come from a particular source is an important factor to consider in determining whether the trademark used by the ~~defendant~~ alleged direct infringer is likely to create confusion with the plaintiff's mark.

Brandy Melville~~The plaintiff~~ asserts that Brandy Heart Logo, the Brandy Flags Logo, the LosAngeles Lightning Logo, the phrase "Brandy Melville," the letters "BM," the word "Brandy," the phrase "Brandy LA," and the words "brandymelvilleusa" "brandymelvilleusa.com" ~~[*insert trademark*]~~ ~~is~~ area trademarks for its ~~[goods~~ ~~or services]~~.  Brandy Melville~~The plaintiff~~ contends that the ~~defendant's~~ alleged direct infringer's use of ~~[*insert defendant's mark*]~~those marks in connection with ~~the defendant's [*insert the defendant's product or service*]~~products listed on the Redbubble Marketplace infringes Brandy Melville~~plaintiff~~'s trademark because it is likely to cause confusion.

### *The Strength of Marks*

The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:

1.    Commercial Strength: This is the amount of marketplace recognition of the mark; and

2.    Conceptual Strength: This is the placement of the mark on the spectrum of marks.

1     **Commercial Strength**: What is "commercial strength?"  Not all marks are
2 equally well known. Trademark strength is somewhat like the renown of people.
3 Only a few very famous people are widely known and recognized around the world.
4 Most people are known and recognized only by a small circle of family and friends.

5     Some trademarks are relatively "strong," in the sense they are widely known
6 and recognized.  A few trademarks are in the clearly "famous" category.  These
7 "famous" marks are those like "Apple" for computers and mobile phones, "Google"
8 for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles.  Some
9 trademarks may be strong and well known only in a certain market niche such as
10 mountain climbing gear, plumbing supplies, or commercial airplane electronics
11 equipment, but relatively weak outside that field.

12     **Conceptual Strength**: What is "conceptual strength?" All trademarks are
13 grouped into two categories: either inherently distinctive or not inherently
14 distinctive.  If a mark is inherently distinctive it is immediately protected when first
15 used.  If it is not inherently distinctive, to become a legally protected mark, a
16 designation must acquire distinctiveness in people's minds by becoming known as
17 an indication of source of goods or services. The law calls this "secondary
18 meaning."  [*See* Instruction 15.11 (Infringement—Elements—Validity—
19 Distinctiveness—Secondary Meaning).  If the plaintiff's mark is determined to be
20 inherently distinctive, there will be no need to instruct the jury on acquiring a
21 secondary meaning for the mark.]

22     For determining the conceptual strength of a mark, trademarks are grouped on
23 a spectrum according to the nature of the mark.  In the spectrum, there are three
24 categories of word marks that the law regards as being inherently distinctive:
25 coined, arbitrary and suggestive.  Descriptive word marks are regarded as not being
26 inherently distinctive and require a secondary meaning to become a valid trademark.
27
28

**Coined** and arbitrary words are regarded as being relatively strong marks. A coined word mark is a word created solely to serve as a trademark.  For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** marks are words that in no way describe or suggest the nature of the goods or services it is used with.  For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones.  It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** word marks are regarded as not being as conceptually strong as coined or arbitrary marks.  Suggestive trademarks suggest some characteristic or quality of the goods or services with which they are used.  If the consumer must use her imagination or think through a series of steps  to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features, but merely suggests them.  For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food.  As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark.  "Apple" does not describe what the vitamins are. However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** word marks are not inherently distinctive.  These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination.  For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice.  It directly describes one of ingredients of the juice.

Authority/Source:  Ninth Circuit Model Jury Instruction 15.19 (modified to fit facts of case)

Requesting Party:  Defendant




_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

1   **<u>Plaintiff's Objection:</u>**

2          Plaintiff objects to Defendant's proposed jury instruction because it is

3   argumentative and misleading, is unnecessary, and does not appropriately adapt Ninth

4   Circuit Model Civil Jury Instruction No. 15.19 to this case.  Among other things, the

5   proposed jury instruction improperly refers to a vague "alleged direct infringer."  To

6   avoid jury confusion, to be specific, and to clarify that the instruction refers to the

7   product designers and fulfillers for the products sold on Defendant's website, the

8   proposed jury instruction should refer to "Redbubble's product designers or

9   fulfillers."

10         The proposed jury instruction also refers to a vague "Redbubble

11  Marketplace."  To avoid jury confusion and to be more specific, those reference

12  should be changed to the "Redbubble website."

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2911-1006 / 1814621

73

1  **<u>Defendant's Reply:</u>**

2        Plaintiff has the burden of identifying the particular alleged direct infringers,

3  along with the specific instances of infringement these third parties allegedly

4  committed.  *See Free Kick*, 140 F. Supp. 3d at 985.

5        The phrase "Redbubble Marketplace" will be clear to the jury based on the

6  evidence to be adduced at trial.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 11.**

2

3

### **15.19A  EXPRESSIVE WORKS**

4

5   ~~The defendant's work, [*insert name of allegedly infringing work*], is~~

6   ~~an~~Certain ~~accused products~~allegedly directly infringing listings, such as shirts and

7   other apparel bearing the LosAngeles Lightning Logo, ~~are~~ may be expressive

8   ~~work~~works that ~~is~~are protected by the First Amendment.

9   Therefore, you may find for Brandy Melville~~the plaintiff~~ on [his] [her] [its]

10   trademark infringement claim only if Brandy Melville~~the plaintiff~~ proves by a

11   preponderance of the evidence that:

12       1.   the ~~defendant's~~ allegedly directly infringing use ~~of the plaintiff's~~

13   ~~mark~~ is explicitly misleading as to the source or content of [*insert name of*

14   *allegedly infringing work*];the accused apparel; and

15       2.   the allegedly directly infringing ~~the defendant's~~ use ~~of the~~

16   ~~plaintiff's mark~~ is likely to cause confusion about the source of the plaintiff's

17   or the ~~defendant's~~accused goods.

18   The ~~defendant's~~allegedly directly infringing use of the mark is explicitly

19   misleading only if it explicitly misleads consumers into believing that Brandy

20   Melville~~the plaintiff~~ sponsored or is somehow associated with [*insert name of*

21   *allegedly infringing work*].the accused apparel.

22

23

24

25

26

27

28

2911-1006 / 1814621

Authority/Source:  Ninth Circuit Model Jury Instruction 15.19A

Requesting Party:  Defendant




_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**<u>Plaintiff's Objection:</u>**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative and misleading, and is irrelevant to the trial.  This proposed jury instruction is inapplicable, unnecessary, and confusing.  This is not an "expressive work" case.  Further, this proposed instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.19A to this case (Defendant fails to note that the instruction has been modified).  Most obviously, Defendant conflates the Model Civil Jury Instruction's reference to the infringer (the "defendant") with instances of infringement ("allegedly directly infringing use").  The proposed instruction is also vague as to "Certain" products "such as shirts and other apparel."

**Defendant's Reply:**

Plaintiff wrongly asserts that "[t]his is not an 'expressive work' case." The First Amendment bars a party from "control[ling] public discourse whenever the public 'imbues his mark with a meaning beyond its source-identifying function.'" *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F. Supp. 3d 1134, 1141 (N.D. Cal. 2014) (quoting *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900–01 (9th Cir. 2002)). "It is the source-denoting function which trademark laws protect, and nothing more." *Id.*  Thus, since issues regarding the ornamental use and aesthetic functions of claimed marks have been raised at the outset, [DE#150 at 14] this case has always implicated the First Amendment. *See Job's Daughters*, 633 F.2d at 917 ("[T]rademark law is concerned only with identification . . . [It] does not prevent a person from copying so-called [aesthetically] 'functional' features.")

Also, the proposed instructions track Ninth Circuit law. "When 'artistic expression is at issue,'" courts apply an alternative likelihood-of-confusion test where the plaintiff must "show that the defendant's use of the mark is either (1) 'not artistically relevant to the underlying work' or (2) 'explicitly misleads consumers as to the source or content of the work.'" *VIP Prod. LLC v. Jack Daniel's Properties, Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (citation omitted).  A work is expressive so long as it "communicat[es] ideas or express[es] points of view'"; the work is "not rendered non-expressive simply because it is sold commercially" and need not "show great 'creative artistry.'"  *Id.* at 1174–75 (greeting cards are expressive).  Also, "any artistic relevance 'above zero' means the Lanham Act does not apply unless the use of the trademark is explicitly misleading."  *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).  Proving that a work is explicitly misleading is "a high bar" requiring "'an 'explicit indication,' 'overt claim,' or 'explicit misstatement' ' about the source of the work"; an  "'implicit[]'" suggestion is insufficient.  *Id.* (citation omitted).

1    Finally, Plaintiff's objection that "[t]he proposed instruction is vague as to
2    'certain' products," ignores that the instruction would be given only if evidence
3    regarding those products is introduced; otherwise, there would be no purpose to
4    such instruction.

1    IV.    **REDBUBBLE'S SIXTH AFFIRMATIVE DEFENSE (FAIR USE)**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 12.

### 15.25  DEFENSES—NOMINATIVE FAIR USE

The [owner] [assignee] [licensee] of a trademark cannot exclude others from making a [nominative] fair use of that trademark.  An alleged direct infringerdefendant makes [nominative] fair use of a mark when the alleged direct infringerdefendant uses it as other than a trademark, to accurately [describe][, name][, or identify] the plaintiff's goods or services.

RedbubbleThe defendant contends that itcertain Accused Productsallegedly directly infringing listings did not infringe the trademark because the alleged infringement was a nominative fair use of the trademark to [describe][, name][, or identify] Brandy Melvillethe plaintiff's product or service, even if the defendant's ultimate goal was to describe its own product..  RedbubbleThe defendant has the burden of proving its nominative fair use of the mark by a preponderance of the evidence.

An accused infringerdefendant makes [nominative] fair use of a trademark when the defendant:it:

1.     Uses the mark in connection with the plaintiff's [product][ or service],. which was not readily identifiable without use of that [trademark] [mark];:

2.     Used only so much of the [trademark] [mark] as was reasonably necessary to identify the [product][ or service] in question; and

3.     Did not do anything in connection with the trademark that would suggest sponsorship or endorsement of the alleged direct infringerdefendant's product or service by the plaintiff.

[A product is not readily identifiable without use of the trademark when there are no equally informative words describing the product.].

1    [A product cannot be effectively identified without use of its trademark when

2    there would be no other effective way to compare, criticize, refer to or identify it

3    without using the trademark.].

4    [A reasonably necessary use of a trademark occurs when no more of the

5    mark's appearance is used than is necessary to identify the product and make the

6    reference intelligible to the consumer.  For example, if a particular word or phrase is

7    Brandy Melvillethe plaintiff's trademark, the alleged direct infringerdefendant

8    reasonably uses it when the alleged direct infringerdefendant does not use any

9    distinctive color, logo, abbreviation, or graphic that Brandy Melvillethe plaintiff

10   uses to display the trademark than is necessary to identify the product.].

11   [You may consider whether the alleged direct infringerdefendant did anything

12   that would, in conjunction with the trademark suggest sponsorship or endorsement

13   by Brandy Melvillethe plaintiff.  A use of the plaintiff's trademark does not suggest

14   sponsorship or endorsement of the alleged direct infringerdefendant's product when

15   the alleged direct infringerdefendant does not attempt to deceive, or mislead, or

16   capitalize on consumer confusion, or when the alleged direct infringerdefendant

17   appropriates the cachet of the plaintiff's product for the alleged direct

18   infringerdefendant's.  An alleged direct infringerdefendant's use of Brandy

19   Melvillethe plaintiff's trademark to describe Brandy Melvillethe plaintiff's product

20   or service may not necessarily suggest Brandy Melvilleplaintiff's sponsorship or

21   endorsement, even if the alleged direct infringerdefendant's ultimate goal is to

22   describe the alleged direct infringerdefendant's own product.].

23   [The fact that the alleged direct infringerdefendant's use of the trademark may

24   bring the alleged direct infringer or Redbubbledefendant a profit or help in

25   competing with the mark owner does not mean the use was not a fair use.].

26

27

28

Authority/Source:  Ninth Circuit Model Jury Instruction 15.25 (modified to fit facts of case)

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative, is misleading, and is irrelevant to the trial. The proposed jury instruction improperly alters and strays from the Ninth Circuit's Model Civil Jury Instruction No. 15.25. Among other things, the proposed jury instruction improperly refers to a vague "alleged direct infringer." To avoid jury confusion, to be specific, and to clarify that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website, the proposed jury instruction should refer to "Redbubble's product designers and fulfillers." The proposed jury instruction also improperly conflates the Model Civil Jury Instruction's reference to the infringer (the "defendant") with instances of infringement ("otherwise-infringing use").

This proposed jury instruction is also unnecessary as this defense is not applicable in this case.

**<u>Defendant's Reply:</u>**

Plaintiff has the burden of identifying the particular alleged direct infringers, along with the specific instances of infringement these third parties allegedly committed.  *See Free Kick*, 140 F. Supp. 3d at 985.

Plaintiff insists that "this defense is not applicable."  However, this issue has been raised at the case's outset.  [DE#152-1 at 11; DE#150 at 15-16.]  Also, Plaintiff has brought this issue to the forefront with its repeated arguments regarding tagging of products on the Redbubble Marketplace with alleged marks and alleged copying of product designs.  [D.E.#103 at 9.]  *See, e.g.*, *Smith v. Chanel, Inc.*, 402 F.2d 562, 564 (9th Cir. 1968) (Defendant may, under nominative fair use, use plaintiff marks, "'Dior' and 'Christian Dior' in defendant's advertising in identifying plaintiff's dresses as the original creations from which defendant's dresses were copied"). The evidence to be placed before the jury includes listings that have been taken down from the Redbubble Marketplace because they use Plaintiff's alleged trademarks in a manner that Redbubble asserts constitutes nominative fair use.

1   V.   **REDBUBBLE'S TENTH AFFIRMATIVE DEFENSE**

2        **(STATUTE OF LIMITATIONS)**

# DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 13.

## STATUTE OF LIMITATIONS

[Name of defendant]DefendantRedbubble contends that [name of plaintiff]'s lawsuitcertain actions on which Brandy Melvilleplaintiff's claims are based are barred by the statute of limitations because Brandy Melville knew or should have known they occurred more than three years before suit was not filed within the time set by law.filed.  To succeed on this defense, [name of defendantRedbubble] must prove that [name of plaintiff]'sBrandy Melvilleplaintiff's claimed harm occurred before [insert date from applicable statute of limitation].May 28, 2016.

87

Authority/Source:  CACI 454, modified to fit facts of case and for three-year statute of limitations per California Code of Civil Procedure § 338(d), *see Karl Storz Endoscopy-America, Inc. v. Surgical Technologies, Inc.* 285 F.3d 848, 857 (9th Cir. 2002) ("Storz's Lanham Act claims are subject to a three-year statute of limitations which began to run upon Storz's actual or constructive knowledge of the wrong").

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative, is misleading, and is irrelevant to the trial. "The Lanham Act has no statute of limitations[.]" *Kiva Health Brands LLC v. Kiva Brands Inc.*, 439 F. Supp. 3d 1185, 1193 (N.D. Cal. 2020); *see also Grasshopper House, LLC v. Clean & Sober Media LLC*, 394 F. Supp. 3d 1073, 1090-91 (C.D. Cal. 2019). Even if this case "borrow[ed]" California's statute of limitations, the appropriate period would be four years, not three. *Id.* at 1193-94.

"[T]he Ninth Circuit applies the statute of limitations period in the context of the equitable defense of laches." *Grasshopper*, 394 F. Supp. 3d at 1091; *see also id.* at 1091 n.4 ("If a separate statute of limitations defense was available . . ., then the entire laches doctrine developed by *Jarrow Formulas*[*, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002),] would necessarily no longer be good law, a result which is obviously incorrect.").

The proposed jury instruction also fails to state that, for any statute of limitations defense to apply, Defendant must establish that Plaintiff had actual or constructive knowledge of Defendant's wrongful acts before the limitations period began. *E.g.*, *Karl Storz Edoscopy-America, Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (citing *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991); Cal. Code Civ. Proc. § 338(d)). The proposed jury instruction also fails to recognize Defendant's ongoing unlawful conduct and the injury it continues to cause Plaintiff.

**Defendant's Reply:**

Defendant submits that its proposed instruction is consistent with the requirements of the statute of limitations defense, and relies on the cited *Karl Storz* opinion.  Moreover, older decisions generally control.  *See, e.g.*, *Fluck v. Blevins*, 969 F. Supp. 1231, 1236 (D. Or. 1997) ("When two Ninth Circuit panel decisions conflict, the trial court ordinarily follows the older case. That is because one Ninth Circuit panel cannot overrule another; only an en banc court can overrule the prior panel decision, at least in the absence of a change in controlling authority.").

Defendant has responded to Plaintiff's "constructive use" criticism by inserting "knew or should have known" into the proposed instruction.

1   **VI.   REDBUBBLE'S SEVENTEENTH AFFIRMATIVE DEFENSE**
2   **(ABANDONMENT)**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 14.

2

3   **15.22  DEFENSES—ABANDONMENT—AFFIRMATIVE**

4   **DEFENSE—DEFENDANT'S BURDEN OF PROOF (15 U.S.C.**

5   **§ 1127)**

6

7   The [owner] ~~[assignee] [licensee]~~ of a trademark cannot exclude others from

8   using the trademark if it has been abandoned.

9   Redbubble~~The defendant~~ contends that the trademark has become

10   unenforceable because ~~the [owner] [assignee] [licensee]~~Brandy Melville abandoned

11   it~~.~~ or never intended to use it in certain registered uses.  Redbubble~~The defendant~~

12   has the burden of proving abandonment by ~~[clear and convincing]~~ [a preponderance

13   ~~of the]~~ evidence.

14   The [owner] ~~[assignor] [licensor]~~ of a trademark abandons the right to

15   exclusive use of the trademark when the [owner] ~~[assignor] [licensor]~~:~~:~~

16   1.      discontinues its [good faith] use in the ordinary course of trade,

17   intending not to resume using it~~:~~, or registers it but never actually uses it in a class of

18   products; or

19   2.      ~~[acts]~~ ~~[~~or~~]~~ ~~[~~ fails to act~~]~~ so that the trademark's ~~[primary significance]~~

20   ~~[primary meaning] [principal significance] [principal meaning]~~ to prospective

21   consumers has become the [product~~] [service]~~ itself and not the ~~[~~producer of the

22   product~~] [provider of the service]; or~~

23   ~~3.      fails to exercise adequate quality control over the [goods] [services]~~

24   ~~sold under the trademark by a licensee.~~

25

26

27

28

1   Authority/Source:  Ninth Circuit Model Jury Instruction 15.22 (modified to fit facts

2   of case); *Shutemdown Sports, Inc. v. Carl Dean Lacy*, 102 U.S.P.Q.2d 1036

3   (T.T.A.B. 2012) ("abandonment may be established by proving that a registrant is

4   not using or has *never* used its mark on certain goods" (emphasis in original) (citing

5   *The Procter & Gamble Co. v. Sentry Chemical Co.*, 22 U.S.P.Q.2d. 1589, 1592,

6   (T.T.A.B. 1992)).

7   Requesting Party:  Defendant

8

9

10

11   _____ GIVEN

12   _____ GIVEN AS MODIFIED

13   _____ REFUSED

14   _____ WITHDRAWN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

93

**Plaintiff's Objection:**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative, is misleading, and is irrelevant to the trial.  This proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.22 to this case.  Among other things, the proposed jury instruction makes improper changes to the Model Jury Instruction to misstate the law.  The proposed jury instruction adds a new basis for abandonment—plaintiff "never intended to use it in certain registered uses"—that is not in the Model Jury Instruction.  Further, Defendant does not cite any Ninth Circuit authority to justify this addition.

The proposed jury instruction also reflects the wrong standard of proof.  The proposed jury instruction uses a "preponderance of the evidence" standard; however, the Comments to Ninth Circuit Model Jury Instruction No. 15.22 recognize that (1) Ninth Circuit case law has required a defendant to "strictly prove" any abandonment defense, *Electro Source, LLC v. Brandess-Kalt-Aetna Grp.*, 458 F.3d 931, 935 n.2 (9th Cir. 2006), and (2) "Scholars note that except for the Federal Circuit, 'all' courts follow a clear and convincing standard of proof of abandonment," 3 J. Thomas McCarthy, Trademarks and Unfair Competition § 17:12 (4th ed. 2015).  Comment of Ninth Circuit Model Jury Instruction No. 15.22.

**Defendant's Reply:**

Plaintiff errs in suggesting that Defendant introduced a new basis for abandonment, which is *not* limited to situations where there was initial trademark use: "nonuse" that can show abandonment may arise if a trademark owner *never* used a designation as a mark.  *E.g.*, *Autoline Oil Co. v. Indian Ref. Co.*, 3 F.2d 457, 464 (D. Md. 1924) (use of mark solely in a "descripti[ve]" sense and never to "signify" origin constitutes "abandonment").  Otherwise, one could "indefinitely" avoid a challenge based on abandonment by never using the mark.  *Imperial Tobacco Ltd., Assignee of Imperial Grp. PLC v. Philip Morris, Inc.*, 899 F.2d 1575, 1582 (Fed. Cir. 1990).  Thus, any period of nonuse, including situations where a mark was never used, can, if long enough, trigger the statutory presumption of abandonment. *Id.* at 1581–82 ("We see no justification to adopt a different . . . interpretation of the [abandonment] statute in connection with a mark . . . which has *never* been used in this country . . . If the registrant fails to make use of the registered mark for [the statutory period], the presumption of abandonment may be invoked.").  Also, partial abandonment can "result" from "nonuse" as to "particular goods or services."  *Dak Indus., Inc. v. Daiichi Kosho Co.*, 35 U.S.P.Q.2d 1434, 1438 (Trademark Tr. & App. Bd.1995).

The preponderance of the evidence standard should govern because it is predicated "on the statutory language of the Lanham Act, not on the common law or some judicially-created hybrid standard."  *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949, 954 (9th Cir. 2007) (McKeown, J., concurring).  Also, the Federal Circuit is not the only appellate court to use a preponderance standard.  *See, e.g., Emerg. One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) ("The ultimate burden of proof [for abandonment] (by a preponderance of the evidence) remains always on the challenger."); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 938 (7th Cir. 1989) ("[D]efendant must prove by a preponderance of the evidence that plaintiff abandoned the FS trade dress.").  Thus, "[i]n light of these circuit decisions

1  and the absence of language in the [Lanham Act] expressly raising the burden of

2  proof 'beyond the traditional preponderance of the evidence standard applicable in

3  civil matters,'" parties "must prove abandonment by a preponderance of the

4  evidence." *Hallmark Hardwoods, Inc. v. Omni Wood Prod.*, LLC, No. CV 10-

5  05896 SJO (JCGx), 2011 WL 13176098, at *6 (C.D. Cal. Dec. 14, 2011).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

VII.   DAMAGES

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 15.</u>

## STATUTORY DAMAGES

If you find that Redbubble~~the defendant~~ contributorily infringed on or contributorily counterfeited Brandy Melville~~the plaintiff~~'s registered Brandy Heart, Brandy Flags, or LosAngeles Lightning trademarks after they were registered, you must determine if Brandy Melville~~the plaintiff~~ can recover statutory damages against Redbubble~~the defendant~~, and if so, the amount of those statutory damages.

To recover statutory damages, Brandy Melville~~the plaintiff~~ must prove by a preponderance of the evidence (1) that the alleged direct infringer~~defendant~~'s mark is a counterfeit of Brandy Melville~~the plaintiff~~'s registered trademark, and (2) that consumers were actually confused or deceived as a result of the alleged direct infringer~~defendant~~'s conduct. ~~Under the law, a counterfeit mark is defined as a mark that is identical to or substantially indistinguishable from Brandy Melville~~the plaintiff's trademark.~~

To prove counterfeiting, Brandy Melville must prove, in addition to the elements required to prove infringement, all of the following:

1.    The alleged direct infringer intentionally used in commerce a "counterfeit" mark;

2.    The alleged direct infringer knew that the mark was a counterfeit;

3.    The alleged direct infringer used the mark in connection with the sale, offering for sale or distribution of goods; and

4.    The alleged direct infringer's use was likely to cause confusion, mistake or to deceive.

For this purpose, a "counterfeit mark" is:

5.    A nongenuine mark which is identical with or substantially indistinguishable from a registered mark;

6.      The registered mark is registered on the Principal Register for, and used by the holder of the mark in connection with, the same goods in connection with which the accused mark is being used;

7.      The registered mark is in use; and

8.      The accused use is not on or in connection with goods of which the producer was, at the time of production, authorized by the holder of the mark to use the mark for those types of good.

A counterfeit product must be a "stitch for stitch copy" of plaintiff's own products when viewed in the marketplace, including its packaging, such that a consumer would be tricked into believing that the counterfeit is actually one of plaintiff's products.

The law permits recovery of only one award of statutory damages for each trademark infringed for each type of goods sold. This means that the statutory award cannot be multiplied by the number of counterfeit items that were sold or offered for sale.

If you find that Brandy Melville~~the plaintiff~~ is entitled to statutory damages, you must further determine whether ~~the defendant's~~ Redbubble's contributory infringement was willful. Willful infringement under the law requires proof that a person acted voluntarily and intentionally and with the specific intent to commit the act. If you find that Redbubble~~the defendant~~'s infringement was not willful, you must award statutory damages not less than $1,000 or more than $200,000 per counterfeit mark per type of goods sold. If you find that Redbubble~~the defendant~~'s infringement was willful, you can award statutory damages no more than $2,000,000 per counterfeit mark per type of goods sold.

In determining the amount of a statutory damages award, you should consider (1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful;

(6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.  Statutory damages are intended as a substitute for profits or actual damage, not to provide a windfall.

Authority/Source:  Because Ninth Circuit Model Jury Instruction 15.28 contains no instruction, only comment, redlined against O'MALLEY, GRENIG, & LEE, FED. JURY. PRAC. & INSTR. CIVIL COMP HANDBOOK § 6:2 (including instructions from *A.C.T. 898 Prod., Inc. v. W.S. Indus., Inc.*, No. 8:16-CV-00476-JCG (C.D. Cal., April 14, 2017)); *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Arcona, Inc. v. Farmacy Beauty*, LLC, No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar. 19, 2019); *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 614 (C.D. Cal. 2017).

Requesting Party:  Defendant

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Plaintiff's Objection:**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative, is misleading, and contains statements that are irrelevant to the trial.  The Proposed jury instruction, including its redline, misrepresents the Ninth Circuit's representations regarding Model Civil Jury Instruction No. 15.28—the Model Civil Jury Instruction does not contain a "comment" from any secondary source.  The Ninth Circuit's only non-statutory citation is to *Louis Vuitton Malletier, S.A. v. Akanoc Sols. Inc.*, 658 F.3d 936, 944-45 (9th Cir. 2011), which permits plaintiffs to obtain statutory damages from contributory infringers like Defendant.

The proposed jury instruction includes requirements and references that are not required by the Ninth Circuit or reflected in the relevant statutes that the Ninth Circuit's comment identifies (15 U.S.C. § 1117(c), (d)).  Defendant's repetition of requirements regarding what constitutes counterfeiting and a counterfeit mark are duplicative of other jury instructions, unnecessary, argumentative, and confusing.  To avoid jury confusion, to be specific, and to clarify that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website, the proposed jury instruction should refer to "Redbubble's product designers or fulfillers."

Plaintiff incorporates by reference its Disputed Jury Instruction No. 15.

1    **<u>Defendant's Reply:</u>**

2        Defendant reiterates that, as it has consistently stated, "counterfeiting … is

3    not actually a separate claim, but rather separate relief that is recoverable in a small

4    subset of infringement cases."  [DE#150 at 8; *see also id.* at 28-29 ("counterfeiting

5    is not a separate claim and has not been so pled by Plaintiff"]  *Cf. Sebastian*, 186 F.

6    Supp. 2d at 1063–64 ("The Lanham Act provides for greater damages for

7    counterfeit infringement . . .").

8        The "requirements and references" of which Plaintiff complains are supported

9    by the cited authorities.  *See, e.g.*, *UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d

10   596, 614 (C.D. Cal. 2017).

11       Plaintiff has the burden of identifying the particular alleged direct infringers,

12   along with the specific instances of infringement these third parties allegedly

13   committed.  *See Free Kick*, 140 F. Supp. 3d at 985.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1**

## DEFENDANT'S DISPUTED JURY INSTRUCTION NO. 16.

**2**

**3** ### 15.29  TRADEMARK DAMAGES—DEFENDANT'S PROFITS

**4** ### (15 U.S.C.  § 1117(A))

**5**

**6** ~~In addition to actual damages, the~~Brandy Melville~~The plaintiff is~~may be

**7** entitled to any profits earned by Redbubble~~the defendant~~ that are attributable to the

**8** infringement, which Brandy Melville~~the plaintiff~~ proves by a preponderance of the

**9** evidence.  ~~You may not, however, include in any award of profits any amount that~~

**10** ~~you took into account in determining actual damages.~~

**11**     Profit is determined by deducting all expenses from gross revenue.

**12**     Gross revenue is all of ~~defendant's~~ Redbubble's receipts from using the

**13** trademark in the sale of ~~a [product].~~products that you find have infringed.  Brandy

**14** Melville~~The plaintiff~~ has the burden of proving ~~a defendant~~Redbubble's gross

**15** revenue by a preponderance of the evidence.

**16**     Expenses are all ~~[~~operating~~] [,~~ overhead~~],~~ and production costs incurred in

**17** producing the gross revenue.  Redbubble~~The defendant~~ has the burden of proving

**18** the expenses ~~[~~and the portion of the profit attributable to factors other than use of

**19** the infringed trademark~~]~~ by a preponderance of the evidence.

**20**     Unless you find that a portion of the profit from the sale of the ~~[specify~~

**21** ~~goods]~~allegedly directly infringing goods using the trademark is attributable to

**22** factors other than use of the trademark, you should find that the total profit is

**23** attributable to the infringement.

**24**

**25**

**26**

**27**

**28**

2911-1006 / 1814621

1   Authority/Source:  Ninth Circuit Model Jury Instruction 15.29 (modified to fit facts

2   of case and Supreme Court authority that postdates the Model Instruction (*Romag*

3   *Fasteners, Inc. v. Fossil, Inc.,* No. 18-1233, 2020 WL 1942012, at *3-4 (U.S. Apr.

4   23, 2020)) that establishes that the plaintiff is not "entitled" to defendant's profits.

5   Submitted for completeness and subject to objection; Comments to said instruction

6   reflect that this is not properly an issue for the jury:  "The Ninth Circuit has held that

7   the Seventh Amendment does not provide a right to a jury trial on the amount of

8   profits to be disgorged.  *Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778

9   F.3d 1059, 1074-76 (9th Cir. 2015)."

10  Requesting Party:  Defendant

11

12

13

14  _____ GIVEN

15  _____ GIVEN AS MODIFIED

16  _____ REFUSED

17  _____ WITHDRAWN

18

19

20

21

22

23

24

25

26

27

28

**<u>Plaintiff's Objection:</u>**

Plaintiff objects to Defendant's proposed jury instruction because it misstates the law, is argumentative, is misleading, and contains statements that are irrelevant to the trial.  The proposed jury instruction does not appropriately adapt Ninth Circuit Model Civil Jury Instruction No. 15.29 to this case.  Plaintiff objects to revisions Defendant makes to the non-bracketed portions of the Model Civil Jury Instruction. These changes result in the proposed jury instruction improperly straying from the Model Civil Jury Instruction.  The reference to "allegedly" infringing goods is also improper in a damages instruction that the jury would rely on after finding liability.

Further, the Supreme Court's decision in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, at 1495-97 (2020), does not support or justify Defendant's changes to the Model Civil Jury Instruction.  *Romag* concluded that a plaintiff need not prove the defendant willfully infringed to obtain a profits award in a trademark infringement suit.   Model Civil Jury Instruction No. 15.29 makes no mention of willfulness. Further, "entitled"—as used in the Model Civil Jury Instruction—comes directly from the relevant statute, which even *Romag* recognizes, 140 S. Ct. at 1494-95.

Plaintiff incorporates by reference its Disputed Jury Instruction No. 16.

1 | **Defendant's Reply:**

2 |      Plaintiff's objections to changes to non-bracketed portions of the Model

3 | Instruction appear to focus on Defendant's deletion of the sentence, "You may not,

4 | however, include in any award of profits any amount that you took into account in

5 | determining actual damages."  Defendant submits that removing that sentence is

6 | appropriate here, since Plaintiff does not seek actual damages.

7 |      Otherwise, Defendant relies on the authorities it cites.

8 |

9 |

10 | Dated: May 28, 2021          COASTSIDE LEGAL
                               KENNETH B. WILSON

11 |

12 |                                ZUBER LAWLER LLP
                               JOSHUA M. MASUR

13 |                                JEFFREY J. ZUBER
                               HEMING XU

14 |

15 |                      By:  */s/ Joshua M. Masur*

16 |                                Attorneys for Defendant
                               REDBUBBLE INC.

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |