BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Keith J. Wesley (State Bar No. 229276)
   kwesley@bgrfirm.com
Ryan Q. Keech (State Bar No. 280306)
   rkeech@bgrfirm.com
Jason Y. Kelly (State Bar No. 274144)
   jkelly@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile:  (310) 275-5697

Attorneys for Plaintiff
Y.Y.G.M. SA d.b.a. Brandy Melville

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>REDBUBBLE, INC., a Delaware corporation,<br><br>              Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br>Judge:   Hon. R. Gary Klausner<br><br>**PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S DISPUTED JURY INSTRUCTIONS**<br><br>Pre-Trial Conf.:   May 24, 2021<br>Trial Date:          June 15, 2021 |

1830041

Plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville ("Plaintiff" or "Brandy Melville") hereby submits its disputed jury instructions pursuant to the Court's Order for Jury Trial (Dkt. 17). Brandy Melville requests and reserves the right to add to, amend, modify, withdraw, and/or supplement the following instructions before or during trial of this matter based on, *inter alia*, the rulings issued in connection with motions *in limine* and other pre-trial or trial motions, as well as the evidence and theories proffered by the parties during the course of trial.

1830041

**TABLE OF INSTRUCTIONS**

| NO. | TITLE | SOURCE | PAGE |
|---|---|---|---|
| 1. | CLAIM AND DEFENSES | 9th Cir.[1] 1.5, modified | 5 |
| 2. | PRELIMINARY INSTRUCTION—TRADEMARK | 9th Cir. 15.1, modified | 9 |
| 3. | TRADEMARK LIABILITY—THEORIES AND POLICIES | 9th Cir. 15.5, modified | 17 |
| 4. | DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT | 9th Cir. 15.21, modified | 22 |
| 5. | INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—TRADEMARK (15 U.S.C. § 1114(1)) | 9th Cir. 15.6, modified | 26 |
| 6. | COUNTERFEITING DEFINED | 15 U.S.C. § 1127; *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (collecting cases). | 30 |
| 7. | INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP—REGISTERED TRADEMARK (15 U.S.C. §§ 1057, 1065 and 1115) | 9th Cir. 15.8, modified | 35 |
| 8. | INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—SLEEKCRAFT TEST (15 U.S.C. §§ 1114(1) and 1125(a)) | 9th Cir. 15.18, modified | 41 |
| 9. | INFRINGEMENT—LIKELIHOOD OF CONFUSION—SOURCE, AFFILIATION, OR SPONSORSHIP | 15 U.S.C. § 1125(a)(1)(A) | 48 |
| 10. | INFRINGEMENT—LIKELIHOOD OF | *Au-tomotive Gold, Inc. v. Volkswagen of Am., Inc.,* | 52 |

---

[1] "9th Cir." is the Ninth Circuit Manual of Model Civil Jury Instructions, 2017 Edition, last updated December 2019.

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
|  | CONFUSION—POST-SALE CONFUSION | 457 F.3d 1062, 1077 (9th Cir. 2006); *Academy of Motion Picture Arts & Sciences*, 944 F.2d 1446, 1456 (9th Cir. 1991). |  |
| 11. | INFRINGEMENT—LIKELIHOOD OF CONFUSION—INITIAL INTEREST CONFUSION | *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004); *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999). | 56 |
| 12. | INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARKS | 9th Cir. 15.9, modified | 60 |
| 13. | INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—DISTINCTIVENESS | 9th Cir. 15.10, modified | 64 |
| 14. | INFRINGEMENT—ELEMENTS—VALIDITY—DISTINCTIVENESS—SECONDARY MEANING | 9th Cir. 15.11, modified | 72 |
| 15. | TRADEMARK DAMAGES—PLAINTIFF'S STATUTORY DAMAGES (15 U.S.C. § 1117(c) and (d)) | 9th Cir. 15.28, modified; 15 U.S.C. § 1117; *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944-45 (9th Cir. 2011); *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 2:15-cv-3706, Dkt. No. 106 at 13 (C.D. Cal. June 8, 2016); *Microsoft Corporation v. E & M Internet Bookstore, Inc.*, No. 06-cv-06707, 2008 WL 191346, at *3 | 78 |

PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S DISPUTED JURY INSTRUCTIONS

| NO. | TITLE | SOURCE | PAGE |
|-----|-------|--------|------|
| | | (N.D. Cal. Jan. 22, 2008); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109-10 (2d Cir. 2010); *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992); *Autodesk, Inc. v. Flores*, No. 10-cv-1917, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011). | |
| 16. | TRADEMARK DAMAGES—DEFENDANT'S PROFITS (15 U.S.C. § 1117(a)) | 9th Cir. 15.29, modified | 82 |

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 1.

### 1.5 CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff ~~asserts that [plaintiff's claims]. The plaintiff has the burden of proving these claims.~~, Brandy Melville, claims that the defendant, Redbubble, has engaged in contributory trademark infringement and contributory counterfeiting. Specifically, Brandy Melville claims that it owns the exclusive right to use the "Brandy Melville" and "LA Lightning" words and designs, and variations thereof, in connection with the creation, advertising, and sale of products, and that the "Brandy Melville" and "LA Lightning" products authorized, designed, manufactured, advertised, offered for sale, and sold by or on behalf of Redbubble's product designers and fulfillers, who use Redbubble's service, have infringed those rights. Brandy Melville has the burden of proving these claims.

The defendant, Redbubble, denies those claims ~~[and also contends that [defendant's counterclaims and/or affirmative defenses]]. [The defendant has the burden of proof on these [counterclaims and/or affirmative defenses.]]~~ and also contends that it has certain affirmative defenses including nominative fair use, failure to mitigate, statute of limitations, and abandonment. Redbubble has the burden of proof on all of its affirmative defenses.

~~[The plaintiff denies [defendant's counterclaims and/or affirmative defenses].]~~ Brandy Melville denies Redbubble's affirmative defenses.

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 1.5 (modified).

Requesting Party:  Plaintiff

_____  GIVEN

_____  GIVEN AS MODIFIED

_____  REFUSED

_____  WITHDRAWN

## Defendant's Objection to Plaintiff's Disputed Instruction No. 1

First, Plaintiff's use of the phrase "Redbubble's product designers and fulfillers, who use Redbubble's service," is fundamentally inaccurate and misleading.  The Court has already determined, in granting Redbubble summary judgment of no vicarious liability and explicitly holding that Redbubble is not a partner with, nor an agent for, nor exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at 9-12.)  Put simply, for purposes of this case, although they may fairly be described as "Redbubble users," the designers and fulfillers are not "Redbubble's."  Second, the proposed instruction is too broad as to the phrase "exclusive right to use" because plaintiff does not have such an unqualified right.  Plaintiff seeks to imply a monopoly on such use without respect to what actually constitutes "use" as well as issues of fair use, generic use, and license.  Third, Plaintiff improperly implies that Defendant actually makes "use" of the mark, for which Plaintiff provided no evidence.  Defendant provides a marketplace without actually making actual use of any of Plaintiff's alleged marks.  Fourth, Plaintiff's use of "in connection with the creation, advertising, and sale of products" is not an accurate description of trademark rights, which require source identification, not merely use.

Redbubble incorporates by reference its own Disputed Instruction No. 1, which appropriately adapts Ninth Circuit Model Instruction No. 1.5 to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 1**

This Court should overrule Defendant's objection.  Plaintiff's proposed instruction accurately and succinctly summarizes the issues at trial, including Plaintiff's relationship with the relevant marks.  Defendant's objection reflects what it wishes the law in the Ninth Circuit provided, rather than what the law actually is. The Ninth Circuit's Model Civil Jury Instruction Nos. 15.1 and 15.9 support the proposed instruction's "exclusive right to use" language.  Plaintiff's proposed instruction also does not state or imply a theory of direct infringement; it makes clear that Plaintiff "claims that the defendant, Redbubble, has engaged in contributory trademark infringement and contributory counterfeiting."

Contrary to Defendant's contention, the proposed instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone.  The proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 1.

## <u>PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 2.</u>

### 15.1 PRELIMINARY INSTRUCTION—TRADEMARK

The plaintiff, [*name of plaintiff*]Brandy Melville, seeks damages against the defendant, [*name of defendant*]Redbubble, for [contributory trademark infringement] [unfair competition] and contributory counterfeiting. The defendant denies [infringing the trademark] [unfairly competing] [and] [contends the trademark is invalid]Brandy Melville's claims. To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

### DEFINITION AND FUNCTION OF A TRADEMARK

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods. The [owner] [assignee] [licensee] of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

### [HOW A TRADEMARK IS OBTAINED]

[A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer. Rights in a trademark are obtained only through commercial use of the mark.]

### [TRADEMARK INTERESTS]

[The owner of a trademark may transfer, give, or sell to another person the owner's interest in the trademark. This type of [agreement] [gift] is called an assignment, and the person who receives the owner's interest is called an assignee

1  ~~and becomes the owner of the mark. An assignee has the right to exclude others from~~
2  ~~using the trademark or a similar mark that is likely to cause confusion in the~~
3  ~~marketplace. To be enforceable, the assignment must be in writing and signed. It must~~
4  ~~also include the goodwill of the business connected with the trademark.]~~

5  ~~[The owner of a trademark may [also] enter into an agreement that permits~~
6  ~~another person to use the trademark. This type of agreement is called a license, and~~
7  ~~the person permitted to use the trademark is called a licensee.]~~

8  A trademark [owner] ~~[assignee] [licensee]~~ may enforce the right to exclude
9  others in an action for [infringement] ~~[or]~~ ~~[*insert applicable form of unfair*~~
10  ~~*competition from 15 U.S.C. § 1125(a)*]~~ and/or false designation of origin.

11  **[TRADEMARK REGISTRATION]**

12  [After the owner of a trademark has obtained the right to exclude others from
13  using the trademark, the owner may obtain a certificate of registration issued by the
14  United States Patent and Trademark Office. Thereafter, when the owner brings an
15  action for infringement, the owner may rely solely on the registration certificate to
16  prove that the owner has the right to exclude others from using the trademark or a
17  similar mark that is likely to cause confusion in the marketplace in connection with
18  the type of goods specified in the certificate.] ~~[These presumptions in favor of the~~
19  ~~owner created by the certificate of registration can be overcome or rebutted only by~~
20  ~~certain types of evidence that I will describe to you later as appropriate.]~~

21  **[LIKELIHOOD OF CONFUSION]**

22  [To prove infringement, the plaintiff must prove, by a preponderance of the
23  evidence, that the defendant's product designers or fulfillers, without the plaintiff's
24  consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of
25  plaintiff's mark in connection with the distribution or advertisement of goods, such
26  that the ~~defendant's~~ product designers or fulfillers' use of the mark is likely to cause
27  confusion as to the source of the goods. It is not necessary that the mark used by the
28  ~~defendant~~ product designers or fulfillers be an exact copy of the plaintiff's mark.

Rather, the plaintiff must demonstrate that, viewed in its entirety, the mark used by the ~~defendant~~product designers or fulfillers is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.~~]~~

### THE PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiff, ~~[*name of plaintiff*]~~Brandy Melville, contends that the defendant, ~~[*name of defendant*]~~Redbubble, has contributorily infringed ~~the plaintiff's trademark~~and contributorily counterfeited Brandy Melville's "Brandy Melville" and "LA Lightning" trademarked words and designs, and variations thereof. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of a valid trademark and that the defendant contributorily infringed or contributorily counterfeited that trademark. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the defendant contributorily infringed or contributorily counterfeited the plaintiff's trademark.

### [THE DEFENDANT'S BURDEN OF PROOF]

~~[The defendant~~Redbubble contends that certain of [the ~~[registered] trademark is~~ trademarks are invalid ~~or] [,] [ the trademark has been abandoned] [or] [*insert other affirmative defense*]. The defendant~~abandoned and asserts certain affirmative defenses. Redbubble has the burden of proving by a preponderance of the evidence that certain of [the ~~[registered] trademark is~~ trademarks are invalid ~~or] [,] [ the trademark has been~~ abandoned~~] [or] [*insert other*~~, or its affirmative ~~defense*].]~~defenses.

~~[~~Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that ~~the [[registered] trademark is invalid] [or] [*insert other affirmative defense*].]~~a trademark is invalid or a defense applies.

~~[_____ is~~Brandy Melville and Redbubble are each a person as that term is used in these instructions.~~]~~

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.1 (modified).

Requesting Party:  Plaintiff

_____   GIVEN

_____   GIVEN AS MODIFIED

_____   REFUSED

_____   WITHDRAWN

### Defendant's Objection to Plaintiff's Disputed Instruction No. 2

As Redbubble explicitly raised in meet and confer and in its objections to Plaintiff's original proposed instructions, until 2:30pm on May 28, 2021 – the day jury instructions were required to be filed – Plaintiff failed to comply with this Court's trial preparation order requiring that: "Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification." *See* Dkt. 17 at 5.  And Plaintiff waited – again, until 2:30pm on the day jury instructions were required to be filed, and three days after the meet and confer deadline – to substantially amend its instruction, including by adding a section on Redbubble's burden of proof, thereby denying Redbubble the opportunity to meaningfully respond.  Redbubble reserves the right to amend its response promptly to account for new or altered material.

Plaintiff's use of the phrase "defendant's product designers and fulfillers," is fundamentally inaccurate and misleading.  The Court has already determined, in granting Redbubble summary judgment of no vicarious liability and explicitly holding that Redbubble is not a partner with, nor an agent for, nor exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at 9-12.)  Put simply, for purposes of this case, although they may fairly be described as "Redbubble users," the designers and fulfillers are not "defendant's."

Plaintiff identifies "counterfeiting" as a claim to support damages, but it is not a claim in itself (as reflected in the Complaint, DE# 1) but merely supports certain remedies; this language should be stricken. *State of Idaho Potato Commission v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720-21 (9th Cir. 2005) (referring to Section 1117's "special civil monetary remedies against counterfeiting"). Plaintiff's proposed instruction also misstates the law regarding counterfeiting.  For example, "variations" of a registered mark cannot be counterfeits; rather, as the Court held at

summary judgment, "[a] counterfeit is a spurious mark which is *identical with, or substantially indistinguishable from*, a registered mark."  (DE#103 at 13 (quoting *UL LLC v. Space Chariot Inc. ,* 250 F. Supp. 3d 596, 608 (C.D. Cal. 2017) (emphasis added).)

The proposed instruction also inappropriately omits the following language regarding registration:  "These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate."  This language should be included, especially since the marks are not incontestable.

Redbubble incorporates by reference its own Disputed Instruction No. 2, which appropriately adapts Ninth Circuit Model Instruction No. 15.1 to the case at hand.

### Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 2

This Court should overrule Defendant's objection.  As an initial matter, Plaintiff's original proposed jury instructions—served over a year ago—articulated Plaintiff's proposed instructions, the relevant authority and source for those instructions (including the Ninth Circuit's Manual of Model Jury Instructions), and whether the instructions were "modified" from the Model Civil Jury Instructions. Plaintiff amended this proposed jury instruction in light of Defendant's arguments, the record evidence and issues in dispute at trial, and the parties' meet-and-confer efforts with respect to the jury instructions.  Moreover, Defendant's objection fails to recognize that Defendant also made changes to its proposed jury instructions following the parties' meet-and-confer discussions this week.

Contrary to Defendant's contention, the proposed instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone.  The proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.

This Court has already rejected Defendant's tired argument regarding Plaintiff's counterfeiting claim.  (*E.g.*, Dkt. 103 at 16 ("The Court **DENIES** Redbubble's motion as to Brandy Melville's claims for contributory infringement and counterfeiting.") (emphasis in original)).)

Defendant's "variations" argument mischaracterizes the proposed jury instruction, which addresses unregistered and registered trademarks, as well as two "Brandy Melville" registered trademarks (*i.e.*, what the parties have referred to as the Brandy Heart Mark and the Brandy Flags Mark).  Moreover, the record evidence does not support any purported argument Defendant claims it can make to overcome the presumptions tied to the certificates of registration.

1    Plaintiff incorporates by reference its objection to Defendant's Disputed Jury

2 Instruction No. 2.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 3.

### 15.5 TRADEMARK LIABILITY—THEORIES AND POLICIES
### (15 U.S.C. §§ 1114(1), 1125(a))

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In these instructions, I will identify types of facts you are to consider in deciding if the defendant is liable to the plaintiff for violating the trademark law. These facts are relevant to whether the defendant is liable for:

[1. contributorily infringing plaintiff's registered and unregistered trademark rights, by ~~using~~supplying a service to someone who uses a trademark in a manner likely to cause confusion among consumers]~~[;]~~

[~~2. unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]~~

[~~3. unfairly competing, by using trade dress in a manner likely to cause confusion as to the origin or quality of plaintiff's goods] [;]~~

2. contributorily counterfeiting plaintiff's registered trademark rights, by supplying a service to someone who uses a counterfeit of plaintiff's registered trademark; or

[~~4.~~3. contributorily infringing plaintiff's trade name, by ~~using~~supplying a service to someone who uses similar corporate, business or professional names in a

1  manner likely to cause confusion about the source of products in the minds of

2  consumers] [;] [and].

3      [5. false advertising, by making a false statement that was material and that

4  tended to deceive consumers, injuring the plaintiff in the market].

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.5 (modified).

2   Requesting Party:  Plaintiff

3

4

5

6   _____ GIVEN

7   _____ GIVEN AS MODIFIED

8   _____ REFUSED

9   _____ WITHDRAWN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Defendant's Objection to Plaintiff's Disputed Instruction No. 3

As Redbubble explicitly raised in meet and confer and in its objections to Plaintiff's original proposed instructions, until 2:30pm on May 28, 2021 – the day jury instructions were required to be filed – Plaintiff failed to comply with this Court's trial preparation order requiring that: "Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification."  *See* Dkt. 17 at 5.

Pertaining to enumerated item no. 2, counterfeiting is not a claim but instead affects remedies available; this language should be stricken. *State of Idaho Potato Commission v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720-21 (9th Cir. 2005) (referring to Section 1117's "special civil monetary remedies against counterfeiting").

Pertaining to enumerated item no. 4, there are no trade name claims at issue in this proceeding; this language should be stricken.

Redbubble incorporates by reference its own Disputed Instruction No. 3, which appropriately adapts Ninth Circuit Model Instruction No. 15.5 to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 3**

This Court should overrule Defendant's objection.   Plaintiff's original proposed jury instructions—served over a year ago—provided Plaintiff's proposed instructions, the relevant authority and source for those instructions (including the Ninth Circuit's Manual of Model Jury Instructions), and whether the instructions were "modified" from the Model Civil Jury Instructions.   Plaintiff's proposed jury instruction is tailored to the circumstances of this case.   Also, this Court already rejected Defendant's tired argument regarding Plaintiff's counterfeiting claim. (*E.g.*, Dkt. 103 at 16 ("The Court **DENIES** Redbubble's motion as to Brandy Melville's claims for contributory infringement and counterfeiting.") (emphasis in original)).)

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 3.

## **PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 4.**

### **15.21 DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT**

A person is liable for trademark infringement by another if the person ~~[sells]~~ ~~[~~ or supplies~~]~~ ~~[~~ goods ~~[~~ or services~~]~~ to another knowing or having reason to know that the other person will use the goods to infringe the plaintiff's trademark.

The plaintiff has the burden of proving each of the following by a preponderance of the evidence:

1. the defendant ~~[sold]~~ ~~[~~ or supplied~~]~~ ~~[~~ goods~~]~~ ~~[~~ or services~~]~~ ~~to [name of direct infringer];~~ to the defendant's product designers or fulfillers;

2. ~~[name of direct infringer]~~Any of the defendant's product designers or fulfillers used the ~~[~~goods~~]~~ ~~[~~ or services~~]~~ the defendant ~~[~~sold~~]~~ ~~[~~ or supplied~~]~~ to infringe any of the plaintiff's ~~trademark~~trademarks;

3. the defendant knew or had reason to know ~~[name of direct infringer]~~ ~~[~~one of its product designers or fulfillers would use the goods or services to infringe any of the plaintiff's ~~trademark]~~ ~~[~~trademarks or was infringing any of the plaintiff's ~~trademark~~trademarks and the defendant continued to supply its goods or services~~]~~; ~~[~~and~~]~~

~~[4.~~ 4. the defendant providing the goods or services to ~~[name of direct infringer]~~any of its product designers or fulfillers had direct control and monitoring of the instrumentality used by ~~[name of direct infringer]~~those product designers or fulfillers to infringe; and~~]~~

4. ~~[5.]~~ the plaintiff was damaged by the infringement.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.21 (modified).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

## Defendant's Objection to Plaintiff's Disputed Instruction No. 4

As Redbubble explicitly raised in meet and confer and in its objections to Plaintiff's original proposed instructions, until 2:30pm on May 28, 2021 – the day jury instructions were required to be filed – Plaintiff failed to comply with this Court's trial preparation order requiring that: "Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification." *See* Dkt. 17 at 5.

Plaintiff's use of the phrase "defendant's product designers and fulfillers," is fundamentally inaccurate and misleading.  The Court has already explicitly determined, in granting Redbubble summary judgment of no vicarious liability, that Redbubble is not a partner with, nor an agent for, nor exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at 9-12.)  Put simply, for purposes of this case, although they may fairly be described as "Redbubble users," the designers and fulfillers are not "defendant's."

The proposed instruction fails to identify the "name of direct infringer" as required by the model instruction 15.21, instead vaguely identifying unnamed "product designers or fulfillers."

Redbubble never sold goods, and further never sold services that fall within plaintiff Brandy Melville's marks; instead, defendant Redbubble simply operates a marketplace. And there has never been any allegation that Redbubble "sold" or was "providing goods" to product designers or fulfillers.

Redbubble incorporates by reference its own Disputed Instruction No. 4, which appropriately adapts Ninth Circuit Model Instruction No. 15.21 to the case at hand.

## Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 4

This Court should overrule Defendant's objection.   As an initial matter, Plaintiff's original proposed jury instructions—served over a year ago—articulated Plaintiff's proposed instructions, the relevant authority and source for those instructions (including the Ninth Circuit's Manual of Model Jury Instructions), and whether the instructions were "modified" from the Model Civil Jury Instructions. Also, contrary to Defendant's averment, the proposed instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone. The proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 4.

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 5.**

**15.6 INFRINGEMENT—ELEMENTS AND BURDEN OF PROOF—
TRADEMARK
(15 U.S.C. § 1114(1))**

On the plaintiff's claim for contributory trademark infringement and contributory counterfeiting, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. [describe the plaintiff's symbol or term] is a The Brandy Melville Heart Mark, the Brandy Melville LA Lightning Mark, and/or the Brandy Melville Flags Mark are valid, protectable trademark trademarks;

2. the plaintiff owns [describe the plaintiff's symbol or term] as a trademark the Brandy Melville Heart Mark, the Brandy Melville LA Lightning Mark, and/or the Brandy Melville Flags Mark as trademarks; and

3. the defendant used [describe symbol or term used by the defendant] ['s product designers or fulfillers used a counterfeit of these symbols or terms or a mark similar to [describe the plaintiff's symbol or term ]]these symbols or terms without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict should be for the defendant.

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.6 (modified).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

1

## Defendant's Objection to Plaintiff's Disputed Instruction No. 5

2

3     First, as Redbubble explicitly raised in meet and confer and in its objections

4  to Plaintiff's original proposed instructions, until 2:30pm on May 28, 2021 – the day

5  jury instructions were required to be filed – Plaintiff failed to comply with this

6  Court's trial preparation order requiring that: "Modifications of instructions from the

7  foregoing sources (or any other form instructions) must specifically state the

8  modification made to the original form instruction and the authority supporting the

9  modification." *See* Dkt. 17 at 5.  Second, Plaintiff's use of the phrase "defendant's

10 product designers and fulfillers," is fundamentally inaccurate and misleading.  The

11 Court has already explicitly determined, in granting Redbubble summary judgment

12 of no vicarious liability, that Redbubble is not a partner with, nor an agent for, nor

13 exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at

14 9-12.)  Put simply, for purposes of this case, although they may fairly be described

15 as "Redbubble users," the designers and fulfillers are not "defendant's."  Third, it

16 deletes, without explanation, the final paragraph of the Model Instruction:

17          If you find that each of the elements on which the plaintiff has the

18          burden of proof has been proved, your verdict should be for the

19          plaintiff. If, on the other hand, the plaintiff has failed to prove any of

20          these elements, your verdict should be for the defendant.

21     Redbubble incorporates by reference its own Disputed Instruction No. 4,

22 which appropriately adapts Ninth Circuit Model Instruction No. 15.6 to the case at

23 hand.

24

25

26

27

28

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 5**

This Court should overrule Defendant's objection.   Plaintiff's original proposed jury instructions—served over a year ago—articulated Plaintiff's proposed instructions, the relevant authority and source for those instructions (including the Ninth Circuit's Manual of Model Jury Instructions), and whether the instructions were "modified" from the Model Civil Jury Instructions.   Plaintiff's proposed jury instruction properly removes redundancies.  And contrary to Defendant's contention, this proposed jury instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone.  The proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 4.

# PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 6.

## COUNTERFEITING DEFINED

As used for purposes of trademark law, the term "counterfeit mark" means:

A designation that is identical with, or substantially indistinguishable from, a trademark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed.

Counterfeiting may occur whether or not the person against whom relief is sought knew the plaintiff's mark was registered.

Counterfeit marks are inherently confusing.

Authority/Source:  15 U.S.C. § 1127; *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (collecting cases).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

## Defendant's Objection to Plaintiff's Disputed Instruction No. 6

As an initial matter, as pointed out in Redbubble's Memorandum of Contentions (Dkt. 113 at 15), the Ninth Circuit Manual lacks model instructions for counterfeiting because it is not actually a separate claim, but rather an additional basis for relief that is recoverable in a small subset of infringement cases.

Plaintiff provides a strategically incomplete and inaccurate definition of counterfeiting. Indeed, the final sentence of the proposed instruction – "Counterfeit marks are inherently confusing" – directly contradicts this Court's order denying Redbubble's motion for reconsideration on the grounds "that *Arcona*'s express holding 'that a counterfeit claim *requires a showing of likelihood of confusion*,' 976 F.3d at 1079, *does not amount to a change in controlling law*" in light of the Ninth Circuit's established case law. (DE#140 at 3)

Plaintiff's proposed instruction also omits several elements of counterfeiting necessary for a jury to reach an informed decision on the issue. *See* Redbubble Motion for Summary Judgement (Dkt. 40) at 16-20. In particular, a counterfeit "is something that purports to be something that it is not." *United Pac. Ins. Co. v. Idaho First Nat. Bank*, 378 F.2d 62, 69 (9th Cir. 1967) (citations omitted). A counterfeit product must be a "stitch for stitch copy" of plaintiff's own products when viewed in the marketplace (considering such factors as surrounding packaging and any house labels), such that a consumer "would be tricked into believing that the [Accused P]roduct is actually one of Plaintiff's [] products" *See Arcona, Inc. v. Farmacy Beauty*, LLC, No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar. 19, 2019) (granting summary judgment of no counterfeiting).

Importantly, to prove counterfeiting and potentially be entitled to enhanced damages, plaintiff must prove that:

1. defendant intentionally used a counterfeit mark in commerce;

2. knowing the mark was counterfeit;

3.  in connection with the sale, offering for sale, or distribution of goods; and

4.  its use was likely to confuse or deceive.

*Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012) ("As Professor McCarthy notes, counterfeiting is the 'hard core' or 'first degree' of trademark infringement that seeks to trick the consumer into believing he or she is getting the genuine article, rather than a 'colorable imitation'").

Furthermore, to even begin considering these factors to pursue remedies for counterfeiting, Brandy Melville would have to first establish all of the elements of one of its trademark infringement claims. *See Ketab Corp. v. Mesriani Law Group*, 2015 WL 2084469, at *3 n. 6 (C.D. Cal. May 5, 2015) ("a claim for 'counterfeiting' under the Lanham Act must, by necessity, first establish a claim of trademark infringement").

Redbubble incorporates by reference its own Disputed Instruction No. 15, which integrates appropriate instructions for counterfeiting into an instruction on statutory damages.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 6**

This Court should overrule Defendant's objection.  Defendant's objection is without merit, advocating for additions that would confuse the jury, are argumentative, and misrepresent the law.  Plaintiff's proposed jury instruction reflects the statutory definitions of "counterfeit" and a "registered mark."   Moreover, Defendant's citation to this Court's Order (Dkt. 140) and *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074 (9th Cir. 2020), does not advance Defendant's position.  The law is well established that "'counterfeit marks are inherently confusing.'" *Kaloud Inc. v. Shisa Land Wholesale Inc.*, No. 15-cv-3706-RGK, 2016 WL 7444604, at *3 (C.D. Cal. Apr. 26, 2016) ("'Under such circumstances, a likelihood of confusion is established, unless the [products sold] by defendants were, in fact, genuine [ ] products.'"); *see also Philips Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004).

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 15.

## **PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 7.**

## **15.8 INFRINGEMENT—ELEMENTS—PRESUMED VALIDITY AND OWNERSHIP—REGISTERED TRADEMARK**
### **(15 U.S.C. §§ 1057, 1065 and 1115)**

I gave you instruction number [insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6] that requires the plaintiff to prove by a preponderance of the evidence [that the trademark is valid and protectable] [ and] [ that the plaintiff owns the trademark]. [A valid trademark is a word, name, symbol, device, or any combination of these, that indicates the source of goods and distinguishes those goods from the goods of others. A trademark becomes protectable after it is used in commerce.].

One way for the plaintiff to prove trademark validity is to show that the trademark is registered. An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence [of the validity and protectability of the trademark] [ and] [ of the certificate holder's ownership of the trademark] covered by that certificate.

Exhibit ___ is a certificate Exhibits ___ are certificates of registration from the United States Patent and Trademark Office. [It was They were submitted by the plaintiff as proof of the validity of the trademark [trademarks and] [ that the plaintiff owns the trademark]. trademarks.

The facts recited in this certificate are: [summarize certificate entries as to validity and ownership of trademark, as well as limitations on the registration]. However, the defendant submitted evidence to dispute these recitals. The defendant alleges that the certificate cannot be considered proof of [[validity] [and] [ownership]] of the trademark because [insert § 1115(b) defense[s] raised by defendant, e.g., the trademark had been abandoned, the defendant's fair use of the trademark, etc.].

1    [Unless the defendant proves by a preponderance of the evidence that [insert §
2    1115(b) defense[s] raised by defendant, e.g., that the trademark was abandoned], you
3    must consider the trademark to be conclusively proved as [[valid] [ and][ owned by
4    the plaintiff]]. However, if the defendant shows that [insert § 1115(b) defense[s]
5    raised, e.g., the trademark was abandoned] by a preponderance of the evidence, then
6    the facts stated in the certificate [summarize certificate entries disputed by defendant's
7    proof] are no longer conclusively presumed to be correct. [You should then consider
8    whether all of the evidence admitted in this case, in addition to this certificate of
9    registration, shows by a preponderance of the evidence that the trademark is [[valid]
10   [ and] [ owned by the plaintiff]], as I explain in Instruction [insert number of
11   instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6].

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.8 (modified).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

## Defendant's Objection to Plaintiff's Disputed Instruction No. 7

As Redbubble explicitly raised in meet and confer and in its objections to Plaintiff's original proposed instructions, until 2:30pm on May 28, 2021 – the day jury instructions were required to be filed – Plaintiff failed to comply with this Court's trial preparation order requiring that: "Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification." *See* Dkt. 17 at 5.  And Plaintiff waited – again, until 2:30pm on the day jury instructions were required to be filed, and three days after the meet and confer deadline – to substantially amend its instruction, including by ***deleting the final two paragraphs of the model instruction (including information not deemed optional by the model)***, thereby denying Redbubble the opportunity to meaningfully respond.  Redbubble reserves the right to amend its response promptly to account for new or altered material.

Plaintiff's proposed instruction fails to fill in the text between the brackets for certain of the phrases. Moreover, Plaintiff's proposed instruction presumes incontestability, which has not been established for any of the marks at issue. Accordingly, Plaintiff must use the alternative fifth paragraph as set forth in the comments to model instruction 15.8:

> [Unless the defendant proves by a preponderance of the evidence that [*insert* § *1115(b) defense[s] raised by defendant, e.g., that the mark was abandoned*], you must consider the trademark to be conclusively proved as [[valid] [and] [owned by the plaintiff]], [if the mark has been in continuous use for five consecutive years after the date of registration in the certificate and other statutory formalities have been observed]. However, if the defendant shows that [*insert* § *1115(b) defense[s] raised, e.g., that the mark was abandoned*] by a preponderance of the evidence, then the facts stated in the certificate [*summarize certificate entries disputed by defendant's proof*] are no longer conclusively presumed to be correct. [You should then

consider whether all of the evidence admitted in this case, in addition to this certificate of registration, shows by a preponderance of the evidence that the mark is [[valid] [and] [owned by the plaintiff]], as I explain in Instruction] [*insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6*].]

Redbubble incorporates by reference its own Disputed Instruction No. 5, which appropriately adapts Ninth Circuit Model Instruction No. 15.8 to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 7**

This Court should overrule Defendant's objection.   Plaintiff's original proposed jury instructions—served over a year ago—provided Plaintiff's proposed instructions, the relevant authority and source for those instructions (including the Ninth Circuit's Manual of Model Jury Instructions), and whether the instructions were "modified" from the Model Civil Jury Instructions.  Plaintiff amended this proposed instruction in light of Defendant's arguments, the record evidence and issues in dispute at trial, and the parties' meet-and-confer efforts with respect to the jury instructions.   Defendant's objection fails to recognize that Defendant also made changes to its proposed jury instructions following the parties' meet-and-confer discussions this week.  This proposed instruction accurately tailors the Ninth Circuit's Model Civil Jury Instruction No. 15.8 to the circumstances of this case.

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 5.

**PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 8.**

**15.18 INFRINGEMENT—LIKELIHOOD OF CONFUSION—FACTORS—**
**SLEEKCRAFT TEST**
**(15 U.S.C. §§ 1114(1) and 1125(a))**

You must consider whether the defendant's product designers or fulfillers' use of the each trademark is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of the Plaintiff's Mark. The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendant's goods if the defendant uses product designers or fulfillers use a similar mark.

(2) Defendant's Product Designers and Fulfillers' Use of the Mark. If the defendant product designers or fulfillers and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of Plaintiff's and Defendant's Product Designers and Fulfillers' Marks. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendant's product designers or fulfillers' trademark in [appearance] [, sound] [, or] [ meaning], there is a greater chance [that consumers are likely to be confused by defendant's use of a mark] [of likelihood of

confusion]. [Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.]

(4) Actual Confusion. If use by the ~~defendant~~product designers or fulfillers of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the ~~defendant's~~product designers or fulfillers' use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the ~~defendant~~ ~~creates~~product designers or fulfillers create for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5) ~~Defendant's~~Product Designers and Product Fulfillers' Intent. Knowing use by ~~defendant~~the product designers or fulfillers of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendant acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6) Marketing/Advertising Channels. If the plaintiff's and ~~defendant's~~ [the product designers or fulfillers' goods] [services] are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7) Consumer's Degree of Care. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and ~~defendant's~~the product

designers or fulfillers' trademarks.

(8) Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendant product designers or fulfillers is using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

[(9) Other Factors. *Insert any other factors that bear on likelihood of confusion*.]

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.18 (modified).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

### Defendant's Objection to Plaintiff's Disputed Instruction No. 8

First, as Redbubble explicitly raised in meet and confer and in its objections to Plaintiff's original proposed instructions, until 2:30pm on May 28, 2021 – the day jury instructions were required to be filed – Plaintiff failed to comply with this Court's trial preparation order requiring that: "Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification." *See* Dkt. 17 at 5.  Second, Plaintiff's use of the phrase "defendant's product designers and fulfillers," is fundamentally inaccurate and misleading.  The Court has already explicitly determined, in granting Redbubble summary judgment of no vicarious liability, that Redbubble is not a partner with, nor an agent for, nor exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at 9-12.)  Put simply, for purposes of this case, although they may fairly be described as "Redbubble users," the designers and fulfillers are not "defendant's."  Third, Redbubble also objects that, contrary to controlling precedent, the proposed instruction ignores the role of house marks and other source identifiers.  *See, e.g.*, *Behr Process Corp. v. RPM Int'l Inc.*, No. SACV14156JLSDFMX, 2014 WL 12581763, at *6 (C.D. Cal. Feb. 14, 2014) ("while some factors favor finding a likelihood of confusion, the prominent display of house marks and product identifiers, as well as the distinctive trade dress of the respective products, significantly diminishes the chance for confusion"); *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1245 (9th Cir. 1984) ("In *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir.1979), we noted that the use of a house mark and distinctive logo could reduce the likelihood of confusion, but concluded that the effect was negligible where the house mark was inconspicuous and the logo often absent. Here, by contrast, the marks are always accompanied by prominent house marks and logos, compared to which the marks are themselves inconspicuous."); *Hero*

*Nutritionals LLC v. Nutraceutical Corp.*, No. SACV 11-1195 AG MLGX, 2013 WL
4480674, at *6 (C.D. Cal. Aug. 16, 2013) ("The Court concludes that while the
words 'yummy' and 'yummi,' standing alone, are similar in sight, sound, and
meaning, the dissimilarities in the designs, themes, layouts, and respective house
marks between the two product labels renders the marks dissimilar and easily
distinguishable").

      Redbubble incorporates by reference its own Disputed Instruction No. 9,
which appropriately adapts Ninth Circuit Model Instruction No. 15.18 to the case at
hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 8**

This Court should overrule Defendant's objection.  Plaintiff's original proposed jury instructions—served over a year ago—articulated Plaintiff's proposed instructions, the relevant authority and source for those instructions (including the Ninth Circuit's Manual of Model Jury Instructions), and whether the instructions were "modified" from the Model Civil Jury Instructions.  And contrary to Defendant's representation, the proposed instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone.  The proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.

Defendant's objection fails to acknowledge that the Ninth Circuit recognizes that house marks can aggravate the likelihood of confusion.  *Americana Trading Inc. v. Russ Berrie & Co.*, 966 F.2d 1284, 1288 (9th Cir. 1992) ("Finally, the district court appeared to rely upon [defendant's] argument that the prominence of [defendant's] housemark, on temporary hang-tags, would negate any likelihood of confusion.  We disagree. . . . Indeed, use by [defendant] of its housemark along with [plaintiff's] trademark may 'be an aggravation and not a justification[.]'").

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 9.

# PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 9.

## INFRINGEMENT—LIKELIHOOD OF CONFUSION—SOURCE, AFFILIATION, OR SPONSORSHIP

A "likelihood of confusion" exists when a substantial number of consumers believe that the defendant's product designers or fulfillers' goods are produced by plaintiff. A "likelihood of confusion" also exists when the product designers or fulfillers' trademark is likely to cause confusion as to an affiliation, connection, or association between the product designers or fulfillers and plaintiff, such that the plaintiff sponsors or approves of the product designers or fulfillers' goods or activities.

Authority/Source: 15 U.S.C. § 1125(a)(1)(A) ("Any person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .").

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

## Defendant's Objection to Plaintiff's Disputed Instruction No. 9

First, Plaintiff's use of the phrase "defendant's product designers and fulfillers," is fundamentally inaccurate and misleading.  The Court has already explicitly determined, in granting Redbubble summary judgment of no vicarious liability, that Redbubble is not a partner with, nor an agent for, nor exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at 9-12.)  Put simply, for purposes of this case, although they may fairly be described as "Redbubble users," the designers and fulfillers are not "defendant's."  Second, this instruction is duplicative of plaintiff's other instructions, and unduly emphasizes these elements of the action.

There is no model instruction for this topic, for good reason.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 9**

This Court should overrule Defendant's objection.  The proposed instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone.  The proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.  Further, this proposed instruction is not duplicative of other instructions.  None of the other instructions concerning "Likelihood of Confusion" addresses "affiliation, connection, or association," which comes directly from the relevant statute's text.

# PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 10.

## INFRINGEMENT—LIKELIHOOD OF CONFUSION—POST-SALE CONFUSION

"Post-sale confusion" is actionable under the "likelihood of confusion" test. "Post-sale confusion" occurs when consumers view a product after it has been sold to a consumer and are confused about whether that product was sponsored by, affiliated with, or approved by the plaintiff.

Authority/Source:  *Au-tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006) ("[T]he law in the Ninth Circuit is clear that 'post-purchase confusion,' i.e., confusion on the part of someone other than the purchaser who, for example, simply sees the item after it has been purchased, can established the required likelihood of confusion under the Lanham Act."); *Academy of Motion Picture Arts & Sciences*, 944 F.2d 1446, 1456 (9th Cir. 1991) ("'Post-sale confusion' occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product.").

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

1            **Defendant's Objection to Plaintiff's Disputed Instruction No. 10**

2

3       First, plaintiff Brandy Melville never offered evidence or argued that it would

4 pursue "post-sale confusion" to support its claims.  Second, the cases cited by

5 plaintiff all involve defendants that actually sold produced, owned, and sold the

6 goods, and not defendants similarly situated to defendant Redbubble here, who

7 merely provides a marketplace.  See *Au-tomotive Gold, Inc. v. Volkswagen of Am.*,

8 Inc., *supra*, 457 F.3d at 1065 (the plaintiff actually produced, owned, and sold the

9 license plates and key chains at issue); *Academy of Motion Picture Arts & Sciences*,

10 *supra*, 944 F.2d at 1449-50 (the defendant here produced, owned, and sold award

11 statues bearing similarities to the "Oscar" award).

12       There is no model instruction for this topic, for good reason.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 10**

This Court should overrule Defendant's objection.  Defendant mischaracterizes the arguments Plaintiff has made in this case and will make at trial, as well as the record evidence, with respect to the confusion of Defendant's customers and the public.  (*E.g.*, Dkt. 36 at 15-16; Dkt. 36-1 ¶¶ 196, 197.)  Moreover, Defendant fails to identify any authority that establishes that Plaintiff is precluded from making this argument at trial.  Defendant's response to the legal authorities supporting Plaintiff's proposed jury instruction amounts to a purported distinction without a difference.  Defendant fails to identify any basis or authority that suggests post-sale confusion is not relevant in an action asserting contributory infringement and counterfeiting.

## **PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 11.**

## **INFRINGEMENT—LIKELIHOOD OF CONFUSION—INITIAL INTEREST CONFUSION**

"Initial interest confusion" is actionable under the "likelihood of confusion" test. "Initial interest confusion" occurs when the defendant's product designers or fulfillers use the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion.

Authority/Source:  *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004) ("Initial interest confusion occurs when the defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion."); *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004) ("Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement."); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1064 (9th Cir. 1999) ("[T]he fact that there is only initial interest confusion does not alter the fact that [defendant] would be misappropriating [plaintiff's] acquired goodwill.").

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

## Defendant's Objection to Plaintiff's Disputed Instruction No. 11

First, Plaintiff's use of the phrase "defendant's product designers and fulfillers," is fundamentally inaccurate and misleading.  The Court has already explicitly determined, in granting Redbubble summary judgment of no vicarious liability, that Redbubble is not a partner with, nor an agent for, nor exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at 9-12.)  Put simply, for purposes of this case, although they may fairly be described as "Redbubble users," the designers and fulfillers are not "defendant's."  Second, plaintiff Brandy Melville never offered evidence or argued that it would pursue "initial interest confusion" to support its claims.  Third, the law of initial interest confusion has evolved in respect to internet search engines, and recent cases more fully set forth the standard.  For example, confusion "is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items."  Furthermore, "the default degree of consumer care is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes commonplace." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011).  Perhaps more importantly, "clear labeling can eliminate the likelihood of initial interest confusion in cases involving Internet search terms." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015) (*citing Playboy Enterprises, Inc. v. Netscape Commc'ns Corp*., 354 F.3d at 1030).  All of these issues were not pursued by either party because plaintiff Brandy Melville never properly raised them, nor is there any evidence of consumer confusion that doesn't occur at the point of sale, but somehow occurs sometime afterwards.  This proposed jury instruction would therefore confuse the issues to the jury.

There is no model instruction for this topic, for good reason.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 11**

This Court should overrule Defendant's objection.  Contrary to Defendant's contention, this proposed jury instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone.  This proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.  Defendant's objection also mischaracterizes the arguments Plaintiff has made in this case and will make at trial, as well as the record evidence, with respect to the confusion of Defendant's customers and the public.  (*E.g.*, Dkt. 36 at 15-16; Dkt. 36-1 ¶¶ 196, 197.)  Defendant also fails to identify any authority that suggests that Plaintiff is now precluded from making this argument at trial.  Further, Defendant's averment that it is an Internet search engine is inaccurate and misleading.

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 12.

## 15.9 INFRINGEMENT—ELEMENTS—VALIDITY— UNREGISTERED MARKS

[*Describe plaintiff's alleged trademark*] is not registered. Brandy Melville contends it owns unregistered trademarks in the "Brandy Melville" name and other unregistered variations of the Brandy Melville name, including "BM," "Brandy LA," "brandymelvilleusa," and "brandymelvilleusa.com." Unregistered trademarks can be valid and provide the trademark owner with the exclusive right to use that mark. Instruction [insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6] requires the plaintiff to prove by a preponderance of the evidence that [*describe plaintiff's alleged trademark*] is the unregistered trademarks are valid. A valid trademark is a [word, name, symbol, device, or any combination of these items] that is either:

    1. inherently distinctive; or

    2. descriptive, but has acquired a secondary meaning.

[Only a valid trademark can be infringed.] [ Only if you determine plaintiff proved by a preponderance of the evidence that the [*describe plaintiff's alleged trademark*] is a valid trademark unregistered Brandy Melville trademarks are valid trademarks should you consider whether plaintiff owns it them or whether defendant's actions infringed it them.]

Only if you determine that [*describe plaintiff's alleged trademark*] is the unregistered Brandy Melville trademarks are not inherently distinctive should you consider whether it is they are descriptive but became distinctive through the development of secondary meaning, as I will direct in Instruction [insert number of instruction regarding Distinctiveness and Secondary Meaning, e.g., 15.11].

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.9 (modified).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Defendant's Objection to Plaintiff's Disputed Instruction No. 12**

Defendant Redbubble objects to Plaintiff's Proposed Jury Instruction because it fails to identify the marks plaintiff Brandy Melville alleges are infringed, using "including" to leave the question open-ended. *See* Redbubble Motion in Limine No. 4 (Dkt. 58). Both Redbubble and the jury cannot be left to speculate as to which marks plaintiff claims are infringed. Underscoring this shifting-sands approach to the case and these instructions, Redbubble notes that Plaintiff's amended instruction changes one purportedly asserted mark from "Brandy" to "Brandy LA," and adds "brandymelvilleusa.com."

Redbubble incorporates by reference its own Disputed Instruction No. 6, which appropriately adapts Ninth Circuit Model Instruction No. 15.9 to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 12**

This Court should overrule Defendant's objection.  Defendant's Motion *in Limine* No. 4 is meritless (*see* Dkt. 95) and was tentatively denied at the Final Pretrial Conference.  Further, Defendant's averment that "Redbubble and the jury" will be "left to speculate as to" which marks were infringed is baseless.  The jury instructions will be provided to the jury after the parties have presented their evidence, at which time it will be obvious to everyone, including the jury, each mark that Defendant contributorily infringed and counterfeited.

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 6.

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 13.

## 15.10 INFRINGEMENT—ELEMENTS—VALIDITY—UNREGISTERED MARK—DISTINCTIVENESS

### Strength as a Likelihood of Confusion Factor

How [distinctively] [ or strongly] a trademark indicates that a good comes from a [particular] [ or specific] source, [even if unknown], is an important factor to consider in [[assessing its validity] [ and] [Instruction insert number of instruction regarding *Skeekcraft*Sleekcraft Test, e.g., 15.18] for determining whether the trademark used by the defendant creates for consumers a likelihood of confusion with the plaintiff's trademark].] trademarks.

The plaintiff asserts [*insert claimed trademark*] is athe "Brandy Melville" name and other unregistered variations of the Brandy Melville name, including "BM," "Brandy LA," "brandymelvilleusa," and "brandymelvilleusa.com," are valid and protectable trademarktrademarks for its [*insert goods used in connection with the trademark*]. [apparel, stickers, and home goods. The plaintiff contends that the defendant's product designers and fulfillers use of [those] [ and similar] words in connection with the defendant's [*insert the defendant's product or service or business*] [[apparel, stickers, and home goods infringes plaintiff's trademark] [trademarks and [is are likely to cause confusion about the [origin of goods] [business] associated with that trademark.]] those trademarks.

In order to determine if the plaintiff has met its burden of showing that [*insert claimed trademark*] is athese unregistered trademarks are valid trademarktrademarks, you should classify itthem on the spectrum of trademark distinctiveness that I will explain in this instruction.

[An inherently distinctive trademark is a word, symbol or device, or combination of them, which intrinsically identifies a particular source of a good in the

market. The law assumes that an inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product, and that consumers will be predisposed to equate the trademark with the source of a product.]

### Spectrum of Marks

Trademark law provides [great] protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called ""weak"" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability you must consider whether a trademark is inherently distinctive. Trademarks are grouped into four categories according to their relative [strength] [and distinctiveness]. These four categories are, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning" which I explain in Instruction [insert number of instruction regarding secondary meaning, e.g., 15.11] and generic names (which are entitled to no protection).

**Arbitrary Trademarks.** The first category of ""inherently distinctive"" trademarks is arbitrary trademarks. They are considered strong marks and are clearly protectable. They involve the arbitrary, fanciful or fictitious use of a word to designate the source of a [product] [service]. Such a trademark is a word that in no way describes or has any relevance to the particular [product] [service] it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words which are applied in a fanciful, fictitious or unfamiliar way, solely as a trademark.

For instance, the common word ""apple"" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word ""apple"" was arbitrary or fanciful

because "'apple'" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "'Apple'" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Trademarks.** The next category is suggestive trademarks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, [which are in no way related to what the [product] [service] is or its components, quality, or characteristics,] suggestive trademarks imply some characteristic or quality of the [product] [service] to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but merely suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the [product] [service] to which the word is attached. For example, when "'apple'" is used not to indicate a certain company's computers, but rather "'Apple–A–Day'" Vitamins, it is being used as a suggestive trademark. "'Apple'" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "'an apple a day keeping the doctor away'" with the supposed benefits of taking "'Apple–A–Day'" Vitamins.

**Descriptive Trademarks.** The third category is descriptive trademarks. These trademarks directly identify or describe some aspect, characteristic, or quality of the [product] [service] to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "'apple'" is descriptive when used in the trademark "'CranApple'" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a [product] [service] comes from, or the name of the person who makes or sells the [product] [service]. Thus, the words "'Apple Valley Juice'" affixed to cider from the California

town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from. Similarly, a descriptive trademark can be the personal name of the person who makes or sells the product. So, if a farmer in Apple Valley, Judy Brown, sold her cider under the label "~~"~~'Judy's Juice~~"~~'" (rather than CranApple) she is making a descriptive use of her personal name to indicate and describe who produced the apple cider [and she is using her first name as a descriptive trademark.]

**Generic Names.** The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the [product] [service], as opposed to the plaintiff's brand for that [product] [service]. Generic names are part of our common language that we need to identify all such similar [products] [services]. A generic name is a name for the [product] [service] on which it appears.

If the primary significance of the alleged mark is to name the type of [product] [service] rather than the [manufacturer] [provider], the term is a generic name and cannot be a valid trademark. If the majority of [relevant] consumers would understand the term to name the type of [product] [service] rather than the [manufacturer] [provider], the primary significance of the term is generic and not entitled to protection as a trademark.

The word "~~"~~'apple~~"~~'" can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from an apple tree.

The computer maker who uses the word "~~"~~'apple~~"~~'" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic and does not indicate any particular source of the product. As applied to the fruit, "~~"~~'apple~~"~~'" is simply a commonly used name for what is being sold.

### Mark Distinctiveness and Validity

If you decide that [*insert the plaintiff's claimed trademark*] isBrandy Melville's

unregistered trademarks are arbitrary or suggestive, ~~it is~~they are considered to be inherently distinctive. An inherently distinctive trademark is valid and protectable.

On the other hand, if you determine that [*insert the plaintiff's claimed trademark*] is Brandy Melville's unregistered trademarks are generic, ~~it~~they cannot be distinctive and therefore ~~is~~are not valid nor protectable. You must render a verdict for the defendant on the charge of infringement in Instruction [insert number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6].

If you decide that [*insert the plaintiff's claimed trademark*] is Brandy Melville's unregistered trademarks are descriptive, you will not know if the trademark is valid or invalid until you consider whether it has gained distinctiveness by the acquisition of secondary meaning, which I explain in Instruction [insert number of instruction regarding secondary meaning, e.g., 15.11].

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.10 (modified).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

### Defendant's Objection to Plaintiff's Disputed Instruction No. 13

First, Plaintiff's use of the phrase "defendant's product designers and fulfillers," is fundamentally inaccurate and misleading.  The Court has already explicitly determined, in granting Redbubble summary judgment of no vicarious liability, that Redbubble is not a partner with, nor an agent for, nor exercises joint ownership and control with, the designers and fulfillers.  (Dkt. 103 at 9-12.)  Put simply, for purposes of this case, although they may fairly be described as "Redbubble users," the designers and fulfillers are not "defendant's."

Second, although tracking the model instruction, the proposed instruction does not identify the marks at issue.  Underscoring Plaintiff's shifting-sands approach to the case and these instructions, Redbubble notes that Plaintiff's amended instruction changes one purportedly asserted mark from "Brandy" to "Brandy LA," and adds "brandymelvilleusa.com."  Furthermore, the reference to "defendant's apparel, stickers, and home goods" is improper because defendant never has an ownership interest in the goods, and such evidence of ownership simply does not exist.  This instruction is therefore misleading to the jury as stated.

Third, the explanation of generic marks is irrelevant and may confuse the issues.  Redbubble is not attacking the validity of any mark actually at issue in this action on the basis of being generic.  The language should be stricken.

Redbubble incorporates by reference its own Disputed Instruction No. 7, which appropriately adapts Ninth Circuit Model Instruction No. 15.10 to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 13**

This Court should overrule Defendant's objection.  Defendant's objection is meritless and attempts to manufacture nonexistent concerns with Plaintiff's proposed jury instruction.  Contrary to Defendant's contention, the proposed instruction makes no mention of Defendant's partners, agents, or joint ownership or control of anything or anyone.  This proposed jury instruction refers to "Redbubble's product designers or fulfillers" because that will avoid jury confusion, is specific, and clarifies that the instruction refers to the product designers and fulfillers for the products sold on Defendant's website.  And contrary to what Defendant claims, this Court already confirmed at the Final Pretrial Conference the marks at issue.  Defendant's request to strike un-bracketed portions of Model Civil Jury Instruction No. 15.10 is unwarranted too.

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 7.

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 14.

## 15.11 INFRINGEMENT—ELEMENTS—VALIDITY— DISTINCTIVENESS—SECONDARY MEANING

If you determined in Instruction [insert number of instruction e.g. 15.10] that [*identify plaintiff's claimed trademark*] isBrandy Melville's unregistered trademarks in the "Brandy Melville" name or other unregistered variations of the Brandy Melville name, including "BM," "Brandy LA," "brandymelvilleusa," and "brandymelvilleusa.com," are descriptive, you must consider the recognition that the mark hasmarks have among prospective consumers in order to determine whether it isthey are valid and protectable even though it isthey are descriptive. This market recognition is called the trademark's ""secondary meaning.""

A [word] [, name] [, symbol] [device] [, or any combination of these items] acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the [*identify the alleged trademark*]Brandy Melville's unregistered trademarks with a single source, in order to find that it hasthey have acquired secondary meaning.

When you are determining whether [*describe symbol or term*] hasBrandy Melville's unregistered trademarks have acquired a secondary meaning, consider the following factors:

(1) Consumer Perception. Whether the people who purchase the [product] [service] that bears the claimed trademark associate the trademark with the [owner] [assignee] [licensee]Brandy Melville;

(2) Advertisement. To what degree and in what manner the [owner] [assignee]

[licensee]Brandy Melville may have advertised under the claimed trademark;

(3) Demonstrated Utility. Whether the [owner] [assignee] [licensee]Brandy Melville successfully used this trademark to increase the sales of its [product] [service];

(4) Extent of Use. The length of time and manner in which the [owner] [assignee] [licensee]Brandy Melville used the claimed trademark;

(5) Exclusivity. Whether the [owner's] [assignee's] [licensee's]Brandy Melville's use of the claimed trademark was exclusive;

(6) Copying. Whether the defendant intentionally copied the [[owner's] [assignee's] [licensee's]]Brandy Melville's trademark; and

(7) Actual Confusion. Whether the defendant's use of the plaintiffBrandy Melville's trademark has led to actual confusion among a significant number of consumers; and.

(8) [Insert any other factors that bear on secondary meaning].

The presence or absence of any particular factor should not necessarily resolve whether [identify the alleged trademark] hasBrandy Melville's unregistered trademarks have acquired secondary meaning.

Descriptive marks are protectable only to the extent you find they acquired distinctiveness [through secondary meaning] [[by the public coming to associate the mark with the [owner of the mark] [a particular source]]]. Descriptive marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark.

[The plaintiff has the burden of proving that the [identify plaintiff's trademark] hasBrandy Melville's unregistered trademarks have acquired a secondary meaning.] [ The defendant has the burden of proving that the [identify plaintiff's trademark] lacksBrandy Melville's unregistered trademarks lack a secondary meaning.]

The mere fact that the plaintiff is using [describe symbol or term]the

1  unregistered trademarks, or that the plaintiff began using it before the defendant, does

2  not mean that the trademark has acquired secondary meaning. There is no particular

3  length of time that a trademark must be used before it acquires a secondary meaning.

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.11 (modified).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Defendant's Objection to Plaintiff's Disputed Instruction No. 14**

First, as Redbubble explicitly raised in meet and confer and in its objections to Plaintiff's original proposed instructions, until 2:30pm on May 28, 2021 – the day jury instructions were required to be filed – Plaintiff failed to comply with this Court's trial preparation order requiring that: "Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification." *See* Dkt. 17 at 5.  Second, it fails to identify the marks plaintiff Brandy Melville alleges are infringed.  *See* Redbubble Motion in Limine No. 4 (Dkt. 58).  Both Redbubble and the jury cannot be left to speculate as to which marks plaintiff claims are infringed.  Underscoring this shifting-sands approach to the case and these instructions, Redbubble notes that Plaintiff's amended instruction changes one purportedly asserted mark from "Brandy" to "Brandy LA," and adds "brandymelvilleusa.com."  Third, the instruction should include the phrase "through secondary meaning" after the phrase "acquired distinctiveness" in the third to last paragraph.  Finally, the sentence "The defendant has the burden of proving that Brandy Melville's unregistered trademarks lack a secondary meaning" should be stricken, as it is inconsistent with the Comment and does not accurately state the law regarding unregistered marks.  *See Self–Realization Fellowship Church v. Ananda*, 59 F.3d 902, 910-12 (9th Cir.1995) (finding that plaintiff's unregistered mark was descriptive and lacked secondary meaning, and therefore, was invalid). *See also Filipino Yellow Pages. v. Asian Journal Publications*, 198 F.3d 1143, 1151–52 (9th Cir.1999) (plaintiff bears the burden of proof).

Redbubble incorporates by reference its own Disputed Instruction No. 8, which appropriately adapts Ninth Circuit Model Instruction No. 15.11 to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 14**

This Court should overrule Defendant's objection.   Defendant's objection is without merit.   Plaintiff's original proposed jury instructions—served over a year ago—articulated Plaintiff's proposed instructions, the relevant authority and source for those instructions (including the Ninth Circuit's Manual of Model Jury Instructions), and whether the instructions were "modified" from the Model Civil Jury Instructions.   Also, Defendant's Motion *in Limine* No. 4 is meritless (*see* Dkt. 95) and was tentatively denied at the Final Pretrial Conference.

Plaintiff's proposed instructions accurately tailors the Ninth Circuit's Model Civil Jury Instruction No. 15.11 to the circumstances of this case.   Defendant's argument regarding burden is baseless, particularly in light of Defendant's Disputed Jury Instruction No. 8, which incorrectly claims that Plaintiff has the burden of proving "its claimed registered or unregistered marks have acquired secondary meaning."   The Ninth Circuit's Comment to Model Civil Jury Instruction No. 15.11 explains that, "if the mark is validly registered . . . [t]he burden is then on the defendant to prove secondary meaning has not attached . . . ."

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 8.

## PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 15.

## 15.28 TRADEMARK DAMAGES—PLAINTIFF'S STATUTORY DAMAGES FOR COUNTERFEITING
## (15 U.S.C. § 1117(c) and (d))

The plaintiff seeks a statutory damages award established by Congress for each registered mark. The purpose of these damages is to penalize the infringer and deter future violations of the counterfeiting laws.

The amount you may award as statutory damages is not less than $1,000 or more than $200,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as you consider it.

If you find the contributory infringement was willful, the amount you may award as statutory damages is not less than $1,000 or more than $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as you consider it.

Contributory infringing conduct is willful where the defendant knows that its conduct constitutes infringement, or where it shows reckless disregard of the trademark owner's rights. Willfulness may be proven by showing that the defendant was willfully blind. A defendant is willfully blind if it suspects wrongdoing and deliberately fails to investigate or fails to inquire further because it is afraid of what inquiry would yield. Willful blindness may be inferred from the facts and circumstances of the case.

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.28 (modified);
15 U.S.C. § 1117; *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d
936, 944-45 (9th Cir. 2011); *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 2:15-
cv-3706, Dkt. No. 106 at 13 (C.D. Cal. June 8, 2016); *Microsoft Corporation v. E &
M Internet Bookstore, Inc.*, No. 06-cv-06707, 2008 WL 191346, at *3 (N.D. Cal.
Jan. 22, 2008); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109-10 (2d Cir. 2010);
*Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th
Cir. 1992); *Autodesk, Inc. v. Flores*, No. 10-cv-1917, 2011 WL 337836, at *8 (N.D.
Cal. Jan. 31, 2011).

Requesting Party:  Plaintiff

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ REFUSED

_____ WITHDRAWN

**Defendant's Objection to Plaintiff's Disputed Instruction No. 15**

Plaintiffs have far exceeded the model instruction; for example, the model instruction does not reference this purported purpose, which is incomplete, and there are numerous factors that should be considered in assessing statutory damages, none of which are set forth here.  Second, plaintiff has waived its ability to pursue damages based upon its failure to disclose damages calculations in response to discovery.  *See* Redbubble's Motion in Limine No. 3 (Dkt. 59).  Third, courts have consistently held that infringement is not knowing or willful where, as here, the defendant reasonably believes that its usage of a trademark is not barred by law. See Redbubble's Contentions of Fact and Law (Dkt. 72) at 40-42; *Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986).

Finally, statutory damages are not a jury issue, nor is willfulness for purposes of statutory damages.  Because Plaintiff's election not to seek actual damages leaves it seeking only equitable relief, it is not entitled to a trial by jury on its case in chief. *See, e.g., Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1348 (2019) ("The remedy of an accounting and disgorgement of profits for trademark infringement is equitable in nature and has long been considered that way, so we hold that a plaintiff seeking the defendant's profits in lieu of actual damages is not entitled to a jury trial").

Redbubble incorporates by reference its own Disputed Instruction No. 15, which, because Ninth Circuit Model Instruction No. 15.28 consists only of a comment, adapts a Statutory Damages instruction given in *A.C.T. 898 Prod., Inc. v. W.S. Indus., Inc.*, No. 8:16-CV-00476-JCG (C.D. Cal.), reproduced in the Federal Jury Practice & Instructions Handbook to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 15**

This Court should overrule Defendant's objection.  Defendant's objection does not reflect the record evidence or arguments Defendant could possibly make at trial, and it parrots contentions that this Court has already rejected at the Final Pretrial Conference, including whether this matter can be tried to a jury.  Defendant's objection reflects what it wishes the law in the Ninth Circuit provided, rather than what the law actually is.

The very existence of Model Civil Jury Instruction No. 15.28, as well as relevant case law, confirms that statutory damages are a jury issue.  *Versace v. Awada*, No. 03-cv-3254, 2009 WL 10673371, at *1 (C.D. Cal. Sept. 4, 2009) ("With respect to the amount of statutory damages to which Plaintiff is entitled, that determination must be made by a jury and, thus, is deferred to trial.").  Defendant's Motion *in Limine* No. 3 is meritless (*see* Dkt. 94) and was tentatively denied at the Final Pretrial Conference.  And the purpose averred in Plaintiff's proposed jury instruction is from instructions this Court used in another trademark jury trial.  *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 2:15-cv-3706, Dkt. No. 106 at 13 (C.D. Cal. June 8, 2016) ("The plaintiff seeks a statutory damages award established by Congress for each registered mark.  Its purpose is to penalize the infringer and deter future violations of the counterfeiting laws.").

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 15.

## <u>PLAINTIFF'S DISPUTED JURY INSTRUCTION NO. 16.</u>

### 15.29 TRADEMARK DAMAGES—DEFENDANT'S PROFITS
### (15 U.S.C. § 1117(a))

~~In addition to actual damages, the~~The plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of defendant's receipts from using the trademark in the sale of ~~a~~ [an infringing product]. The plaintiff has the burden of proving a defendant's gross revenue by a preponderance of the evidence.

Expenses are all [operating] [overhead] and production costs incurred in producing the gross revenue. The defendant has the burden of proving the expenses [and the portion of the profit attributable to factors other than use of the infringed trademark] by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the [*specify*infringing goods] using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.

Authority/Source:  Ninth Cir. Manual of Model Jury Instructions 15.29 (modified).

Requesting Party:  Plaintiff

_____   GIVEN

_____   GIVEN AS MODIFIED

_____   REFUSED

_____   WITHDRAWN

## Defendant's Objection to Plaintiff's Disputed Instruction No. 16

First, profits are not a jury issue. *Fifty-Six Hope Road Music v. Avela, Inc.,* 778 F.3d 1059, 1074-76 (9th Cir. 2015). Second, the Supreme Court recently reiterated that "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate"; not only is this nowhere reflected in Plaintiff's instruction, but its first sentence states that "[t]he plaintiff is *entitled* to [defendant's] profits," which is not the law. *Romag Fasteners, Inc. v. Fossil, Inc.,* No. 18-1233, 2020 WL 1942012, at *3-4 (U.S. Apr. 23, 2020). Third, the language relating to "the portion of the profit attributable to factors other than use of the infringed trademark" should be removed, since Redbubble is not asserting that any of its purported profit is attributable to other factors. Fourth, the Model Instruction obligates Plaintiff to "specify [infringing] goods," which Plaintiff has not done, instead deleting the requirement.

Redbubble incorporates by reference its own Disputed Instruction No. 16, which appropriately adapts Ninth Circuit Model Instruction No. 15.29 to the case at hand.

**Plaintiff's Reply in Support of Plaintiff's Disputed Instruction No. 16**

This Court should overrule Defendant's objection.   Plaintiff's proposed instruction closely tracks the Ninth Circuit's Model Civil Jury Instruction No. 15.29. Defendant's contentions reflect what it wishes the law in the Ninth Circuit provided, rather than what the law actually is.

The Supreme Court's decision in *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1495-97 (2020), does not support or justify Defendant's changes to the Model Civil Jury Instruction.  *Romag* concluded that a plaintiff need not prove the defendant willfully infringed to obtain a profits award in a trademark infringement suit.   Model Civil Jury Instruction No. 15.29 makes no mention of willfulness. Further, "entitled"—as used in the Model Civil Jury Instruction—comes directly from the relevant statute, which even *Romag* recognizes, 140 S. Ct. at 1494-95.

Plaintiff incorporates by reference its objection to Defendant's Disputed Jury Instruction No. 16.

1  DATED:  May 28, 2021              BROWNE GEORGE ROSS
2                                    O'BRIEN ANNAGUEY & ELLIS LLP
                                          Keith J. Wesley
3                                         Ryan Q. Keech
                                          Jason Y. Kelly
4
5                                    By:   _____/s/ Keith J. Wesley_____
                                               Keith J. Wesley
6                                    Attorneys for Plaintiff
7                                    Y.Y.G.M. SA d.b.a. Brandy Melville
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28