JOSHUA M. MASUR  (SBN 203510)
 jmasur@zuberlawler.com
ZUBER LAWLER LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

JEFFREY J. ZUBER  (SBN 220830)
 jzuber@zuberlawler.com
HEMING XU  (SBN 302461)
 hxu@zuberlawler.com
ZUBER LAWLER LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

JENNIFER C. KUHN (*Admitted Pro Hac Vice*)
 jkuhn@zuberlawler.com
ZUBER LAWLER LLP
100 Congress Avenue, Suite 2000
Austin, TX 78701
Telephone: (512) 717-7430
Facsimile: (213) 596-5621

Attorneys for Defendant
REDBUBBLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation, <br><br> Plaintiff, <br><br> v. <br><br> REDBUBBLE INC., <br><br> Defendant. | Case No. 2:19-cv-04618-RGK (JPRx) <br><br> DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW <br><br> Trial Date:  June 22, 2021 <br> Time:        11:00 a.m. <br> Crtrm.:      850 |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE that, in the above-entitled Court, Honorable R.

3  Gary Klausner presiding, Defendant Redbubble Inc. ("Redbubble") will, and hereby

4  does, move this Honorable Court for judgment as a matter of law on all issues in this

5  case.

6  This motion is made pursuant to Fed.R.Civ.P. 50 and is based upon the

7  grounds that Plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville ("Brandy Melville") has

8  failed to offer evidence sufficient to permit a reasonable jury to find in its favor on

9  any issue in this case, including but not limited to the elements of its claim for

10  contributory trademark infringement, the elements of trademark counterfeiting, the

11  elements of willful infringement, and/or its claim for lost profits and statutory

12  damages.

13  This Motion will be based on this Notice of Motion, the following

14  Memorandum of Points and Authorities, the testimony and evidence adduced at

15  trial, the pleadings and other documents on file with this Court, and such other

16  argument and evidence which may be presented at the hearing on this matter.

17

18  Dated:  June 22, 2021                    Respectfully submitted,

19
                                           **ZUBER LAWLER LLP**
20                                          Joshua M. Masur
                                           Jeffrey J. Zuber
21                                          Heming Xu
22                                          Jennifer C. Kuhn

23                                By:         /s/ Joshua M. Masur
24                                          _____
                                           Attorneys for Defendant
25                                          REDBUBBLE INC.

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.      INTRODUCTION .................................................................................... 1

II.     LEGAL ARGUMENT ............................................................................. 1

      A.      Plaintiff failed to adduce sufficient evidence of counterfeiting.............. 1

            1.      There is no showing of any LA Lightning counterfeits. ............. 2

            2.      Nor is there evidence of Brandy Heart or Flag counterfeits......... 5

      B.      Plaintiff has failed to show commercial use of the LA Lightning.......... 6

      C.      Plaintiff has failed to introduce sufficient evidence that any
          rights to the Brandy Heart and Flag Marks extend to non-
          clothing items. ....................................................................... 12

      D.      Plaintiff fails to sufficiently show common-law mark rights. .............. 13

      E.      Plaintiff has failed to introduce evidence sufficient to show that
          any alleged direct infringements are not aesthetically functional. ....... 15

      F.      The evidence fails to show likelihood of confusion of any type. ......... 15

      G.      Plaintiff has failed to show initial interest confusion. ......................... 17

      H.      Redbubble was not contributorily liable. ............................................. 18

      I.       The evidence cannot support pre-notice damages. ............................... 21

      J.       Plaintiff has not introduced any evidence of mitigation....................... 21

      K.      Plaintiff Has Not Established an Entitlement to Profits ....................... 21

III.    CONCLUSION ........................................................................... 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
No. CV 10-03738 AB (CWX), 2015 WL 5311085, at *53 (C.D. Cal.
Sept. 10, 2015)................................................................................................19

*Acad. of Motion Picture Arts & Scis. v. Network Sols. Inc.*,
989 F. Supp. 1276, 1280 (C.D. Cal. 1997).....................................................20

*Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
No. CV 10-03738 AB (CWX), 2015 WL 5311085 at *35 (C.D. Cal.
Sept. 10, 2015)................................................................................................23

*Adams v. Grand Slam Club/Ovis*,
No. 12-CV-2938-WJM-BNB, 2013 WL 1444335, at *7 (D. Colo. Apr.
9, 2013)..............................................................................................................4

*Airhawk Int'l, LLC v. Ontel Prod. Corp.*,
No. 18-CV-00073-MMA-AGS, 2020 WL 2306440, at *4 (S.D. Cal.
May 8, 2020) ..............................................................................................21, 22

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
No. 18-CV-06663-TSH, 2019 WL 1586776, at *11 (N.D. Cal. Apr. 12,
2019)...............................................................................................................1, 4

*Amusement Art, LLC v. Life is Beautiful, LLC*,
No. 214CV08290DDPJPR, 2016 WL 6998566, at *7 (C.D. Cal. Nov.
29, 2016)............................................................................................................6

*Arcona, Inc. v. Farmacy Beauty, LLC*,
976 F.3d 1074(9th Cir. 2020)......................................................................2, 4

*Arcona, Inc. v. Farmacy Beauty, LLC*,
No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar.
19, 2019)............................................................................................................2

*Art Attacks Ink, LLC v. MGA Ent., Inc.*,
No. 04CV1035 J (BLM), 2004 WL 7333800, at *5 (S.D. Cal. Sept. 8,
2004).................................................................................................................13

*Atari Interactive, Inc. v. Redbubble, Inc.*,
No. 18-CV-03451-JST, 2021 WL 706790 (N.D. Cal. Jan. 28, 2021) ...........23

*Ballero v. 727 Inc.*,
No. CV 16-16098, 2017 WL 4226203, at *4 (E.D. La. Sept. 22, 2017) ........10

*Bobosky v. Adidas AG*,
843 F. Supp. 2d 1134, 1142 (D. Or. 2011).......................................6, 7, 10, 12

*Boost Beauty, LLC. v. Woo Signatures, LLC.*,
    No. 2:18-CV-02960-CAS-EX, 2019 WL 560277, at *6 (C.D. Cal. Feb.
    11, 2019)..................................................................................................1, 5

*Cf. Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
    No. CV 10-03738 AB (CWX), 2015 WL 5311085, at *26 (C.D. Cal.
    Sept. 10, 2015)...............................................................................................2

*Cf. Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A.*, Inc.,
    688 F. Supp. 2d 1148, 1158–59 (D. Nev. 2010) .....................................18, 21

*Cf. Jinni Tech, Ltd. v. Red.com, Inc.*,
    No. C17-0217JLR, 2020 WL 1932696, at *5 (W.D. Wash. Apr. 20,
    2020)..............................................................................................................16

*Cf. Lodestar Anstalt v. Bacardi & Co.*,
    No. 2:16-CV-06411-CAS-FFMx, 2019 WL 8105378, at *10 (C.D. Cal.
    July 3, 2019). ...................................................................................................3

*CG Roxane LLC v. Fiji Water Co. LLC*,
    569 F. Supp. 2d 1019(N.D. Cal. 2008) ...........................................................6

*D.C. One Wholesaler, Inc. v. Chien*,
    120 U.S.P.Q.2d 1710 (T.T.A.B. 2016)...........................................................10

*Dille Fam. Tr. v. Nowlan Fam. Tr.*,
    207 F. Supp. 3d 535, 544 (E.D. Pa. 2016) ......................................................3

*E & J Gallo v. Proximo Spirits, Inc.*,
    No. CV-F-10-411 LJO JLT, 2012 WL 273076, at *17 (E.D. Cal. Jan.
    30, 2012)........................................................................................................16

*E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632 (9th Cir.
    2014)..............................................................................................................16

*Evergreen Safety Council v. RSA Network, Inc.*,
    697 F.3d 1221 (9th Cir. 2012)..................................................................23, 24

*Exxon Corp. v. Humble Expl. Co.*,
    695 F.2d 96, 101 (5th Cir. 1983)................................................................9, 10

*Fischer v. Forrest*,
    No. 14CIV1304PAEAJP, 2017 WL 128705, at *12 (S.D.N.Y. Jan. 13,
    2017)................................................................................................................1

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 654 F.3d 958, 967 (9th Cir. 2011)..11, 14,
    15

*Ford Motor Co. v. O.E. Wheel Distributors, LLC*,
    868 F. Supp. 2d 1350(M.D. Fla. 2012) ...........................................................3

*Fruit of the Loom Inc. v. Fruit of the Earth Inc.*,
    3 USPQ2d 1531, 1534 (TTAB 1987)...........................................................10

*George & Co., LLC v. Imagination Ent. Ltd.*,
No. 1:07-CV-498-LMB-TRJ, 2008 WL 2883771, at *9 (E.D. Va. July
25, 2008) ......................................................................................................... 14

*Gibson Brands, Inc. v. John Hornby Skewes & Co.*,
No. CV-14-00609-DDP-SSX, 2016 WL 7479317, at *7 (C.D. Cal. Dec.
29, 2016) ........................................................................................................... 2

*Gibson*, 2016 WL 7479317, at *7 ........................................................................ 2

*GMA Accessories, Inc. v. BOP, LLC*,
765 F. Supp. 2d 457, 465 (S.D.N.Y. 2011) ..................................................... 19

*GMA Accessories, Inc. v. Elec. Wonderland, Inc.*,
558 F. App'x 116 (2d Cir. 2014) ..................................................................... 19

*GoDaddy.com, Inc.*,
2015 WL 5311085, at *48 ............................................................................ 20, 21

*Guichard v. Universal City Studios, LLP*,
No. C 06-6392 JSW, 2008 WL 11515186, at *4 (N.D. Cal. Feb. 13,
2008) ................................................................................................................ 14

*Hasel v. Pulpdent Corp.*,
No. CIV.01-2008-DSD-FLN, 2004 WL 5584513, at *2 (D. Minn. June
24, 2004) ............................................................................................................ 3

*Hendrickson v. eBay, Inc.*,
165 F. Supp. 2d 1082, 1095 (C.D. Cal. 2001) ................................................ 19

*Hero Nutritionals LLC v. Nutraceutical Corp.*,
SACV 11-1195, 2013 WL 4480674, at *6 (C.D. Cal. Aug. 16, 2013) ........... 16

*I.P. Lund Trading ApS v. Kohler Co.*,
118 F. Supp. 2d 92, 105 (D. Mass. 2000) ......................................................... 8

*Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*,
425 F.3d 708, 721 (9th Cir. 2005) .................................................................... 2

*In Re Astro-Gods Inc.*,
223 USPQ 621 (TTAB 1984) ........................................................................... 11

*In Re Azteca Sys., Inc.*,
102 U.S.P.Q.2d 1955 (T.T.A.B. 2012) ............................................................ 13

*In Re Eilberg*,
49 USPQ2d 1955 (T.T.A.B. 1998) ................................................................... 14

*In Re Indus. Risk Insurers*,
No. SERIAL 76097495, 2008 WL 885952, at *3 (Feb. 14, 2008) ................. 15

*In Re Jones*,
216 USPQ 328 (TTAB 1982) ........................................................................... 13

*In Re Peace Love World Live, LLC*,
    127 U.S.P.Q.2d 1400 (T.T.A.B. 2018)................................................8

*In Re Pro-Line*,
    28 U.S.P.Q.2d 1141 ..........................................................8, 10, 17

*In re Siny Corp.*,
    920 F.3d 1331, 1335 (Fed. Cir. 2019)..........................................12, 13

*Int'l Olympic Comm. v. San Francisco Arts & Athletics*,
    781 F.2d 733 (9th Cir. 1986)........................................................22

*Int'l Ord. of Job's Daughters v. Lindeburg & Co.*,
    633 F.2d 912, 918–19 (9th Cir. 1980)..........................................15, 17

*Kaloud, Inc. v. Shisha Land Wholesale, Inc.*,
    No. 15-3706-RGK, 2016 WL 7444600, at *2 (C.D. Cal. July 11, 2016).....3, 6

*Ketab Corp. v. Mesriani Law Group*,
    2015 WL 2084469, at *3 n. 6 (C.D. Cal. May 5, 2015) ........................2

*Lockheed Martin Corp. v. Network Sols., Inc.*,
    985 F. Supp. 949, 962 (C.D. Cal. 1997)......................................20, 21

*LTTB LLC v. Redbubble, Inc.*,
    840 F. App'x 148 (9th Cir. 2021) ...................................................8

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068, 1073 (9th Cir. 2013)...............................................20

*Mattel, Inc. v. MCA Recs., Inc.*,
    296 F.3d 894, 900–01 (9th Cir. 2002) .............................................17

*McKay v. Mad Murphy's, Inc.*,
    899 F. Supp. 872, 880–81 (D. Conn. 1995) ......................................9

*Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*,
    74 F. Supp. 3d 1134, 1141 (N.D. Cal. 2014) ...................................17

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
    804 F.3d 930, 937 (9th Cir. 2015)..................................................17

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788, 807 (9th Cir. 2007)..................................................18

*Pollution Denim & Co. v. Pollution Clothing Co.*,
    547 F. Supp. 2d 1132, 1141 n.35 (C.D. Cal. 2007) .........................12

*Quia Corp. v. Mattel, Inc.*,
    No. C 10-1902 JF HRL, 2011 WL 2749576, at *10 (N.D. Cal. July 14,
    2011)....................................................................................12

*Smith v. Chanel, Inc.*,
    402 F.2d 562, 564 (9th Cir. 1968)..................................................18

*Soc. Techs. LLC v. Apple Inc.*,
  No. 18-CV-05945-VC, 2019 WL 6873871, at *2 (N.D. Cal. Dec. 17,
  2019) ................................................................................................................. 10

*Sony Corp. of Am. v. Universal City Studios, Inc.*
  464 U.S. 417, 439 n.19 (1984) ................................................................. 4, 19

*Sprint Commc'ns, Inc. v. Calabrese*,
  No. 18-60788-CIV, 2018 WL 6653079, at *6–7 (S.D. Fla. July 5,
  2018), *report and recommendation adopted*, No. 18-60788-CIV, 2018
  WL 6653070 (S.D. Fla. Nov. 7, 2018) .......................................................... 11

*Spy Phone Labs LLC. v. Google Inc.*,
  No. 15-CV-03756-PSG, 2016 WL 1089267, at *3 (N.D. Cal. Mar. 21,
  2016) ................................................................................................................. 19

*Supreme Assembly, Ord. of Rainbow for Girls v. J. H. Ray Jewelry Co.*,
  676 F.2d 1079 (5th Cir. 1982) ................................................................. 7, 10

*Teal Bay Alls., LLC v. Southbound One, Inc.*,
  No. CIV.A. MJG-13-2180, 2015 WL 401251, at *10 (D. Md. Jan. 26,
  2015) ........................................................................................................ 6, 8, 11

*Tie Tech, Inc. v. Kinedyne Corp.*,
  296 F.3d 778 (9th Cir. 2002) ......................................................................... 6

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93, 109 (2d Cir. 2010) .................................................................. 20

*Tovey v. Nike, Inc.*,
  No. 1:12CV448, 2014 WL 3510975, at *9 (N.D. Ohio July 10, 2014) ...... 9, 11

*Trovan Ltd. v. Pfizer Inc.*,
  107 F. App'x 788, 791 (9th Cir. 2004) ......................................................... 15

*Warner Bros. v. Dae Rim Trading, Inc.*,
  677 F. Supp. 740, 754 (S.D.N.Y. 1988) ......................................................... 5

*Zelinski v. Columbia 300, Inc.*,
  335 F.3d 633, 642 (7th Cir. 2003) ................................................................. 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Y.Y.G.M. SA ("Plaintiff") has utterly failed to offer evidence of likelihood of confusion of its three registered trademarks, let alone meet the heightened standard required for counterfeiting and/or enhanced damages. Plaintiff has failed to offer evidence that defendant Redbubble, Inc. ("Redbubble") has turned a blind eye to specific infringements or has otherwise engaged in conduct that would subject it to contributory liability. Plaintiff has failed to establish trademark rights in its purported unregistered marks, let alone infringement of those rights. And Plaintiff has not offered evidence that Redbubble's conduct is so egregious that Plaintiff would be entitled to any monetary recovery, let alone that Redbubble has engaged in the type of willful infringement that is required for an award of enhanced statutory damages. For all of these reasons, Redbubble is entitled to have judgment entered in its favor in this action as a matter of law.

## II.    LEGAL ARGUMENT

### A.     Plaintiff failed to adduce sufficient evidence of counterfeiting.

A counterfeit item is a "stitch-for-stitch" copy of another brand's, *i.e.*, it uses a spurious mark "'with the same goods'" as "'those for which [a] mark is registered … and is in use.'"[1] *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *11 (N.D. Cal. Apr. 12, 2019) (citations omitted). Spurious and genuine marks must be "nearly identical" and have, at most, "only minor differences" not "apparent to" the "unwary." *Fischer v. Forrest*, No. 14CIV1304PAEAJP, 2017 WL 128705, at *12 (S.D.N.Y. Jan. 13, 2017). Overall, a counterfeit product must be "'identical'" to or "'substantially indistinguishable'" from genuine ones, *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV-14-

---

[1] Thus, logically, no counterfeiting claim may be based on "alleged use of plaintiff's mark as a search engine term." *Boost Beauty, LLC. v. Woo Signatures, LLC.*, No. 2:18-CV-02960-CAS-EX, 2019 WL 560277, at *6 (C.D. Cal. Feb. 11, 2019).

00609-DDP-SSX, 2016 WL 7479317, at *7 (C.D. Cal. Dec. 29, 2016), such that one is "tricked into believing" a counterfeit is "one of Plaintiff's [] products." *Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058-ODW, 2019 WL 1260625, at *2-3 (C.D. Cal., Mar. 19, 2019) (granting judgment to defendant).

Here, the evidence is legally insufficient to show any counterfeiting. Counterfeiting is "the 'hard core' or first degree' of trademark infringement." *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020). Thus, because the evidence here cannot support infringement of a registered mark because, *inter alia*, it is legally insufficient to show confusion, the evidence is necessarily insufficient to show counterfeiting.[2]

Plaintiff also fails to show that either Redbubble or one of these users "knowing[ly]" used a counterfeit mark with the "intent[]" of deceiving. *Idaho Potato Comm'n v. G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). If anything, the evidence shows that Redbubble and said users were, at most, "negligen[t]." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 642 (7th Cir. 2003). The users necessarily represented their listings were non-infringing, and there is no actual evidence of bad faith, especially since they were using the LA Lightning for aesthetic reasons that did not require Plaintiff authorization.[3] Nor has Plaintiff shown that Redbubble could not "reasonabl[y]" rely on these user's representations. *Cf. Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.,* No. CV 10-03738 AB (CWX), 2015 WL 5311085, at *26 (C.D. Cal. Sept. 10, 2015).

The record is also insufficient for additional reasons discussed below.

### 1.   There is no showing of any LA Lightning counterfeits.

---

[2] *See* Section II.F., *infra*; *Ketab Corp. v. Mesriani Law Group*, 2015 WL 2084469, at *3 n. 6 (C.D. Cal. May 5, 2015) (counterfeiting "must" show "infringement"); *Gibson*, 2016 WL 7479317, at *7 (counterfeiting requires near identicality since "anything less" may "render[] all" infringement claims counterfeiting claims).

[3] Section II.E., *infra* (aesthetic-functional use is not trademark use).

Even if the LA Lightning is a protectable trademark (which it is not)[4] there is insufficient evidence—since the trademark registration issued and notice of the mark was given in May 2019 (i.e., the earliest that Redbubble could be liable on any form of  contributory infringement claim—of any counterfeit LA Lightning item in the only field of use where it is registered, *i.e.*, "t-shirts, tank tops, and sweatshirts."[5] TE7 at 1. There is no allegedly infringing shirt in evidence, because no such shirt exists.  Plaintiff has only adduced evidence of product listing pages from users, Katie's Stickers (TE187) and haleyshore (TE369-76). Neither sales nor offers thereof were ever made via these pages, which (at most) invited, via order forms, *offers* for *goods that were never in existence*.[6] *Hasel v. Pulpdent Corp.*, No. CIV.01-2008-DSD-FLN, 2004 WL 5584513, at *2 (D. Minn. June 24, 2004) ("An 'order' … is not commonly understood as an acceptance … [It] is an offer."); *Dille Fam. Tr. v. Nowlan Fam. Tr.*, 207 F. Supp. 3d 535, 544 (E.D. Pa. 2016) (offerings were "neither 'tangible,' nor 'sold'" because "they d[id] not yet exist").

Indeed, there is no evidence of even contributory infringement with respect to this alleged counterfeiting claim, let alone contributory counterfeiting. As noted in

---

[4] Section II.B., *infra* (this purported mark fails to act as a source identifier).

[5] "LA Lightning" refers to the graphic covered by Reg. No. 5,748,883 and variations thereof asserted by Plaintiff. The graphic's registration is confined to Class 25 (clothing) and is further limited by its use of "the term 'namely,'" such that it "only" covers goods "specifically enumerated" therein. *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1371 (M.D. Fla. 2012). Thus, TE294 and 376, which concern non-apparel goods, cannot support counterfeiting remedies; also, any baby apparel depicted in TE375 cannot be counterfeit either. *See Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 15-3706-RGK, 2016 WL 7444600, at *2 (C.D. Cal. July 11, 2016), (counterfeit mark must be applied to "the same [type of] product" as in the registration), *aff'd*, 741 F. App'x 393 (9th Cir. 2018).

[6] There is also no evidence that haleyshore, a user based in Canada, "directed" any offers "at U.S. customers" for purposes of justifying the application of U.S. trademark law. *Cf. Lodestar Anstalt v. Bacardi & Co.*, No. 2:16-CV-06411-CAS-FFMx, 2019 WL 8105378, at *10 (C.D. Cal. July 3, 2019).

Ninth Circuit Model Jury Instruction 15.21, contributory infringement requires that the defendant provide services to a particular direct infringer that "the defendant knew or had reason to know … was infringing the plaintiff's trademark and the defendant continued to supply its services." There is absolutely no evidence that Redbubble knew or had reason to know that the two users identified above (*i.e.*, Katie's Stickers and haleyshore) were infringing Plaintiff's trademarks and provided services that enabled them to continue to infringe.[7] This constitutes a separate basis for granting judgment to Redbubble on this counterfeiting claim.

The product pages also show, on their face, a *lack* of intent in exploiting any purported goodwill: they do not even cater to Plaintiff's target demographic group of teenage to college-age women, and instead depict both men and women.[8]  Also, given, *inter alia*, visual differences in "shape, color, and design", there is little to no evidence of the "stitch-for-stitch copy[ing]" that reflects an intention to deceive. *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-CV-06663-TSH, 2019 WL 1586776, at *11 (N.D. Cal. Apr. 12, 2019). As even Plaintiff acknowledges, TE187 and TE22 differ markedly in terms of, *inter alia*, graphical composition and location as well as the color scheme.[9] There is also no sweatshirt in TE375 that is almost identical to the button-up one in TE221 (which, in any event, is an incomplete photo, and hence, insufficient for supporting a counterfeit clam).[10]

_____

[7] As *Sony Corp. of Am. v. Universal City Studios, Inc.* noted, contributory liability under the Lanham Act requires *knowledge* that "a particular merchant" was infringing. 464 U.S. 417, 439 n.19 (1984). *See also* Section II.G., *infra*.

[8] *See, e.g.*, TE187, TE 375, & 408 at 1 (displaying male models).

[9] *See* Tr. Vol. 1 142:1-22 (LA Lightning design was "cut off" on a "men's T-shirt" that Plaintiff "would never sell").

[10] *Adams v. Grand Slam Club/Ovis*, No. 12-CV-2938-WJM-BNB, 2013 WL 1444335, at *7 (D. Colo. Apr. 9, 2013) (dismissing counterfeit claim where plaintiff failed to provide sufficient information to allow for comparison); *cf. Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1080 (9th Cir. 2020) (assessing counterfeit

### 2.    Nor is there evidence of Brandy Heart or Flag counterfeits.

Plaintiff has also failed to proffer *any* evidence of Brandy Heart or Flag counterfeits.[11] At most, it adduced exhibits of listings on the Marketplace showing the Brandy Heart logo on stickers, metal prints, and wall tapestries[12] and testimony of similar uses on "[m]ugs, t-shirts, hats, men's t-shirts." Tr. 140:18. This vague oral testimony is legally insufficient to show counterfeiting.

Moreover, of the above accused items, the Brandy Heart is only registered for "stickers" and "tee-shirts."[13] TE6 at 1. Yet, Plaintiff has failed to adduce evidence that it has ever produced and/or offered for sale its own stickers or t-shirts featuring the Brandy Heart logo.[14] There is also nothing indicating that the Brandy Heart was ever physically "applied" to a sticker.[15] *Boost*, 2019 WL 560277, at *7 (rejecting argument that claimant "need not allege that a counterfeit mark is affixed to a product to constitute counterfeiting" (cleaned up)). As to apparel, the evidence only shows use of this mark on labels and hangtags, *not* on the front of any apparel, and there is no evidence that any product sold through Redbubble's marketplace used a counterfeit label or hashtag.

The only prominent Plaintiff use of Brandy Heart on items is decorative, wooden signs. *See* Tr. Vol. 2 62:15-17 (failing to recall any Plaintiff item that

---

claims requires "comparing the products *as a whole*" (emphasis added)).

[11] These marks are covered by Reg. Nos. are, respectively, 5,238,856 and 5,373,397.

[12] TE183 at 4 (metal print), 10 (wall tapestry) & 12 (stickers).

[13] Moreover, due to Plaintiff's chronic inability to even recall—much less show sufficient use of—many purported marks, the evidence can, at best, show valid registered rights for clothing only.

[14] Tr. Vol. 2 (Plaintiff witness never saw sticker featuring the Brandy Heart).

[15] *See also*, *e.g.*, *Warner Bros. v. Dae Rim Trading, Inc.*, 677 F. Supp. 740, 754 (S.D.N.Y. 1988) (because a "'counterfeit'" is "an item which is sold with a false trademark", an item is not a "counterfeit" if there is "no such false mark on the" goods, such that "there was nothing" deceptive concerning source).

1  prominently featured the Brandy Heart other than the "wooden sign"). But the

2  mark's registration does not cover signs; and, since even *close*, functional relations

3  between registered and accused items are insufficient, none of the items registered

4  for this mark even conceivably includes signs. *Kaloud*, 2016 WL 7444600, at *2.

5  Moreover, Plaintiff has provided no evidence that it offered or sold wooden signs; or

6  that wooden signs with the Brandy Heart were offered for sale or sold through the

7  Redbubble Marketplace, let alone wooden signs identical to Plaintiff's products.

8  And it has not so much as suggested that products bearing the Brandy Flag were

9  offered through the Redbubble Marketplace that were substantially identical to

10  products offered by Plaintiff. These failures of proof are fatal to Plaintiff's

11  counterfeiting claim.

12  **B.**     **Plaintiff has failed to show commercial use of the LA Lightning.**

13  Plaintiff has, notwithstanding its registration, failed to show it owns valid

14  trademark rights over the LA Lightning.[16] Instead of showing *bona fide* use of the

15  LA Lightning in a source-identifying way (a prerequisite for "acquir[ing] trademark

16  rights") the evidence proves that use of this graphic was "solely ornamental."

17  *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1142 (D. Or. 2011); *Teal Bay Alls.,*

18  *LLC v. Southbound One, Inc.*, No. CIV.A. MJG-13-2180, 2015 WL 401251, at *10

19  (D. Md. Jan. 26, 2015) (If "'it is not immediately obvious that" the LA Lightning "is

20  being used as an indication of origin, then probably it is not'" (quoting 1 McCarthy

21  _____

22  [16] Because alleged infringements began "before" the LA Lightning was registered, it

23  is not entitled to any "presumption" of validity. *CG Roxane LLC v. Fiji Water Co.*
   *LLC*, 569 F. Supp. 2d 1019, 1032 (N.D. Cal. 2008); *compare* TE7 at 1 (May 2019

24  registration); TE110 (alleged 2018 infringement). And, as discussed *infra*, the
   evidence: (1) satisfies Redbubble's "burden of production" to show invalidity; and

25  (1) is insufficient for Plaintiff to meet its "ultimate burden of persuasion." *Tie Tech,*

26  *Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002); *see, e.g.*, *Amusement Art,*
   *LLC v. Life is Beautiful, LLC*, No. 214CV08290DDPJPR, 2016 WL 6998566, at *7

27  (C.D. Cal. Nov. 29, 2016) (granting defendant judgment where it met its burden of

28  production by showing "ornamental" use), *aff'd*, 768 F. App'x 683 (9th Cir. 2019).

on Trademarks and Unfair Competition § 7:24 (5th ed.)). Indeed, even Plaintiff has referred to this graphic as "decorative." Tr. Vol. 125:22 – 126:2.

As shown by its evasive testimony, Plaintiff avoids "logo-oriented branding" and discretely places designations it considers its actual marks (*e.g.*, the Brandy Heart) on hangtags and labels, but not on stickers.[17] TE8 at 4. It instead plasters on apparel, signs, and stickers non-source-identifying graphics—which, of necessity, rapidly change with fashion—that buyers use to identify "membership" among the trendy and use them to decorate.[18] *Supreme Assembly, Ord. of Rainbow for Girls v. J. H. Ray Jewelry Co.*, 676 F.2d 1079, 1084 (5th Cir. 1982). Plaintiff thus uses designs, like the LA Lightning, ornamentally as a matter of law.[19] *See id.*

With one immaterial exception discussed *infra*, the evidence confirms that whereas it applies the LA Lightning as the sole "decoration" on "otherwise plain" items like apparel as well as decorative-promotional store signs and stickers, *Bobosky*, 843 F. Supp. 2d at 1146, Plaintiff uses the *Brandy Heart or Flag Mark* to "label" or otherwise try to identify itself as the source of items like apparel,[20] thus

_____

[17] *See, e.g.*, Tr. Vol. 198:20-21 (Brandy Flag and Heart marks appear on the "neck of the garment" and on "the hangtags"); *id.*  163:9-19, 183:17-25 (failing to offer any evidence of use of the Brandy Flag or Heart Marks on stickers); Tr. Vol. 2 at 63:20 (Plaintiff witness conceding that she had not seen the Brandy Heart or Flag featured in t-shirts or stickers).

[18] Tr. Vol. 1 103:10-11 (new designs put out "sometimes … twice a week"); 113:22 – 114:2 (customers use stickers to decorate, *e.g.*, laptops, cell phones, *etc.*); TE222 (LA Lightning used on apparel), Tr. Vol. 1 125:22 - 126:2 (describing TE225 "LA Lightning decorative sign" that is "place[d] … throughout" BM's "store[s]."); *id.* 126:21-23 (LA Lightning also used on stickers); Tr. Vol. 2 37:21- 38:4 (Plaintiff makes "cool, trendy clothing and accessories for younger girls and women" because its "brand" is "super popular" and "hyped", *i.e.*, customers can "buy the same authentic product as their favorite celebrities and influencers").

[19] *See also* Tr. Vol. 2 63:24 – 64:1 (conceding that unlike the Brandy Flag and Heart, Plaintiff did feature "LA Lightning on t-shirts and on stickers).

[20] Tr. Vol. 1 183:5-6 (Brandy Flag used on "neck and hangtags"); Ex. 228 (Brandy

1   further eliminating any inference that the design is a source identifier. *Teal*, 2015

2   WL 401251, at \*12; *see also In Re Pro-Line*, 28 U.S.P.Q.2d 1141 (the more another

3   mark is placed such that it is "likely to be viewed as the source indicator", the more

4   a decorative feature is "devoid of trademark significance"). Plaintiff thus cannot rely

5   on "other mark[s]", such as the Brandy Heart, to show trademark use; indeed, such

6   evidence is legally irrelevant. *Id.* This is because Plaintiff does not claim that rights

7   to the LA Lightning are limited to instances of co-use with other marks; thus, the

8   issue is "whether" the LA Lightning "functions" *alone* "as a mark." *Id.*

9         Consequently, as "corroborate[d]" by alleged "third-party uses"—which also

10  decoratively use the design—the public sees this graphic as a functional, ornamental

11  element, and *not* as a source identifier.[21] *In Re Peace Love World Live, LLC*, 127

12  U.S.P.Q.2d 1400 (T.T.A.B. 2018). Indeed, when asked whether third parties have

13  ever identified the LA Lightning as a mark, Plaintiff's witness could only state his

14  personal "belief" that it was a very "appealing design." Tr. Vol. 1 194:21 – 195:2.

15  Thus, Plaintiff's own offered testimony confirms that the design is popular because

16  it is "'aesthetically pleasing'", *not* because it "identif[ies]" Plaintiff as the "source

17  of" any goods. *LTTB LLC v. Redbubble, Inc.*, 840 F. App'x 148, 151 (9th Cir. 2021).

18  Indeed, even evidence of a "degree of association between" LA Lightning and

19  Plaintiff cannot show trademark rights because Plaintiff and its consumers "view"

20  LA Lightning "primarily as an aesthetically pleasing" design.[22] *I.P. Lund Trading

21  ApS v. Kohler Co.*, 118 F. Supp. 2d 92, 105 (D. Mass. 2000).

22  _____

23  Heart on labels and tags); Tr. Vol. 2. 50:4-7 (Plaintiff witness unable to testify whether LA Lightning was used as a label or "hang tag).

24  [21] TE294 (stickers); TE376 (various types of items, such as pins, *etc.*).

25  [22] Thus, for example, Plaintiff's testimony that it saw a design "similar" to LA

26  Lightning, which was "descri[bed]" as "brandy inspired" is unavailing. The evidence is too limited, and if anything, shows that the public primarily values the

27  design for its aesthetics, and *not* because it signifies a good coming from Plaintiff.

28  Put differently, the fact that some may understand LA Lightning as being associated

Nor can Plaintiff show any "'[c]onsistent and repetitive use'" of the design as "an indicator of source'" because it uses graphics like LA Lightning in precisely the *opposite* manner. *Tovey*, 2014 WL 3510975, at *9. Plaintiff "intentionally stop[s] using such "graphic[s]" to "build[] anticipation for" graphics, so that they are "not overplayed."[23] Tr. Vol. 2 44:3-6. Such anticipation cannot build if third parties use designs that Plaintiff wants to use; indeed, its stated purpose of the instant litigation is to "stop" others from using its graphics, such as LA Lightning, even if it some of them, like "U.S.A." clearly are not trademark rights it "claim[s] ownership" of. Tr. Vol. 1 151:16 – 152:7. The Lanham Act does not allow for Plaintiff to register and assert ownership of a mark "solely to prevent its use by others." *Exxon Corp. v. Humble Expl. Co.*, 695 F.2d 96, 101 (5th Cir. 1983). Thus, Plaintiff cannot, as it is doing here, "warehous[e]" a mark—even if said mark had "residual good will associated with [it]" *Id.* at 101. To the contrary, trademarks "must be used in order to maintain the public's identification of the mark with the proprietor" and marks are thus "lost when" they "are warehoused." *McKay v. Mad Murphy's, Inc.*, 899 F. Supp. 872, 880–81 (D. Conn. 1995) (cleaned up).

Given the above, even if there was evidence of limited non-ornamental use, such as on a single specimen submitted to the trademark office, it would not avail Plaintiff.[24] TE221. As discussed above, the Plaintiff's evidence overwhelmingly

---

with Plaintiff *does not* mean that the public understands that any item designated with this design *means* the item *comes* from Plaintiff. The fact that Plaintiff had no complaints over a "brandy inspired", highly similar design *confirms* that not even Plaintiff believes LA Lightning serves as a source identifier.

[23] This is why Plaintiff eschews logo-oriented branding: it fears overexposing what it *actually* considers its marks, *i.e.*, Brandy Heart and Flag because it actually wants these designations to hold its goodwill, and thus, does not feature them on items as it does for LA Lightning. *See* notes 18-19, *supra*.

[24] This sweatshirt is particularly suspicious given, *inter alia*, its incongruence with the "artisan manufacturing" Plaintiff affects to provide. Tr. Vol. 1 102:22-24.

shows the ornamental use.[25] *In Re Pro-Line*, 28 USPQ2d 1141 (if a designation is "*primarily* ornamental" it "is not inherently distinctive" (emphasis added)). And the specimen's "limited" aping of trademark formalities does not show the public recognizes LA Lightning as a source identifier, *Bobosky*, 843 F. Supp. 2d at 1146, especially since "widespread" ornamental use by third parties conclusively evidences the contrary.[26] *D.C. One Wholesaler, Inc. v. Chien*, 120 U.S.P.Q.2d 1710 (T.T.A.B. 2016). Also, Plaintiff and its consumers both use an LA Lightning mural to commune over social media, thus reinforcing their sense of "membership" among a fashion conscious community.[27] *Supreme*, 676 F.2d at 1084. Tr. Vol. 2 41:4-10.

Moreover, the sweatshirt specimen was not part of an "'ordinary course of trade'" and was instead, "'obviously contrived solely'" to obtain trademark rights for purposes of barring others from using similar designs. *Soc. Techs. LLC v. Apple Inc.*, No. 18-CV-05945-VC, 2019 WL 6873871, at *2 (N.D. Cal. Dec. 17, 2019). The evidence shows Plaintiff avoids plastering marks on apparel and has only indefinite plans as to a graphic it was not in "active[]" use.[28] *Exxon*, 695 F.2d at 100.

---

[25] Indeed, it refers to its graphics as "original artwork." Tr. Vol. 2 38:9-13.

[26] Tellingly, one purported accused product includes a LA Lightning sticker among many other stickers with graphics that Plaintiff does not assert are marks, such as stickers for "California", "Malibu", *etc. See* Ex. 416.

[27] This evidence cannot show trademark use either, as there is no evidence the mural provides information "'essential to a purchasing decision.'" Section II.C., *infra*.

[28] Thus, the facts also show that regardless of whether there was a "prima facie case of abandonment", "the registered mark has nevertheless been abandoned as a result of discontinued use with intent not to resume." *Fruit of the Loom Inc. v. Fruit of the Earth Inc.*, 3 USPQ2d 1531, 1534 (TTAB 1987). Plaintiff simply has not "'come forward with <u>objective</u>, hard evidence of actual concrete plans to resume use in the reasonably foreseeable future when the conditions requiring suspension abate.'" *Ballero v. 727 Inc.*, No. CV 16-16098, 2017 WL 4226203, at *4 (E.D. La. Sept. 22, 2017) (citation omitted) (emphasis in original). Tr. Vol. 1 191:19-25 (failing to offer evidence of current use or even "future" plans for the LA Lightning). Moreover, a finding of abandonment is particularly appropriate where, as here, Plaintiff is

1   Tr. Vol. 191:19-25. None of the aforesaid are those Plaintiff "normally" is "involved

2   in." *Id.* (finding token use insufficient). Nor is there, *e.g.*, evidence that it used the

3   LA Lightning on "labels" and/or  with a ™ or ® symbol.[29]  *Tovey v. Nike, Inc.*, No.

4   1:12CV448, 2014 WL 3510975, at *9 (N.D. Ohio July 10, 2014).

5        Similarly, none of Plaintiff's other proffered evidence is sufficient either for

6   showing that the public "recognize[s] the [LA Lightning] as" a "source" identifier.

7   *In Re Astro-Gods Inc.*, 223 USPQ 621 (TTAB 1984). Tellingly, Plaintiff introduced

8   no evidence that even one person outside the Brandy Melville companies ever stated

9   that they saw the graphic as a source identifier. Tr. Vol. 193:7-195:2. And, instead

10  of objective evidence like "survey[s]", Plaintiff only has its licensee's officer's

11  personal belief that the LA Lightning is a mark because it is "popular" from having

12  a "nice" and "appealing" design, and supposedly "associated with" Plaintiff's

13  "brand." Tr. Vol. 193:1-6., 195:1. Apart from actually confirming the ornamental

14  nature of this graphic, such "self-interested testimony" cannot even "withstand

15  summary judgment" and is of very "limited" value. *Fleischer Studios, Inc. v.*

16  *A.V.E.L.A., Inc.*, 654 F.3d 958, 967 (9th Cir. 2011); *see LTTB*, 840 F. App'x at 151

17  (affirming summary judgment in favor of Redbubble where plaintiff alleged that her

18  purported trademark was infringed by garments that prominently displayed that

19  purported trademark as a design in the middle of the shirt).

20       In sum, Plaintiff essentially "seeks to claim, but is by no means entitled to,

21  what amounts to patent or copyright type protection for" the LA Lightning.[30] *Teal*,

22  _____

23  engaging in "warehousing of trademark" and has failed to offer "documentary
    evidence" of "sales" for LA Lightning items "[d]espite the [purported] importance

24  of" this design. *Sprint Commc'ns, Inc. v. Calabrese*, No. 18-60788-CIV, 2018 WL

25  6653079, at *6–7 (S.D. Fla. July 5, 2018), *report and recommendation adopted*, No.
    18-60788-CIV, 2018 WL 6653070 (S.D. Fla. Nov. 7, 2018).

26  [29] *See, e.g.*, Tr. Vol. 2 50:11-13 (Plaintiff witness unable to testify regarding whether

27  LA Lightning was ever used with a  ™ or ® symbol).

28  [30] Thus, whether the graphic is an original design is irrelevant. To "'acquire

2015 WL 401251, at \*12. "There simply is no probative evidence … that purchasers perceive [the design] as an indicator of source", such that Plaintiff cannot show it ever used the LA Lightning in commerce. As a result, its registration for this design is *void ab initio* and subject to cancellation.[31] The lack of use also precludes the assertion of common-law rights. *Bobosky*, 843 F. Supp. 2d at 1142.

## C.  Plaintiff has failed to introduce sufficient evidence that any rights to the Brandy Heart and Flag Marks extend to non-clothing items.

Plaintiff's evidence—that it uses Brandy Heart and Flag Marks on clothing tags and labels, decorative signs, and online (*e.g.*, in social media)—is insufficient for showing any rights to non-clothing items.[32] Thus, for these marks, there can be no evidence of counterfeiting regarding non-clothing items and should be partially cancelled as to at least stickers.[33] *Quia*, 2011 WL 2749576, at \*10; note 20, *supra*.

Plaintiff's evidence cannot show commercial use through point-of-sale displays. No sign or website (*e.g.*, on social media)[34] shows any requisite connection

---

ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark.'" *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1141 n.35 (C.D. Cal. 2007) (citation omitted).

[31] If a single clothing item could support rights, such rights should be limited to that item, and all other items should still be cancelled. *Quia Corp. v. Mattel, Inc.*, No. C 10-1902 JF HRL, 2011 WL 2749576, at \*10 (N.D. Cal. July 14, 2011) (noting that cancellation may be "in whole or in part", lack of use renders a registration "'void ab initio'", and partially cancelling a registration).

[32] *See In re Siny Corp.*, 920 F.3d 1331, 1335 (Fed. Cir. 2019) (a mark must be "'placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels . . .'") (quoting 15 U.S.C. § 1127).

[33] Indeed, Plaintiff could not even testify as to any use of the Brandy Flag on stickers. Tr. 163:9-18. Nor could it show with any certainty, for the Brandy Heart, any examples of cleaning and preparation products, leather ad imitation leather products, picture frames, dresses, berets, footwear, etc. Tr. Vol. 1 164:6 – 166:3.

[34] In addition, social media cannot establish trademark rights because it provides no

between a mark and any particular good, like a sticker: the aforesaid does not give any "information . . . essential to a purchasing decision" (or in the case of stickers information as to how to acquire them). *In re Siny*, 920 F.3d at 1336. And generally-speaking, materials "physically separable from the product itself" are "insufficient" for "a connection between [a mark] and product." *Art Attacks Ink, LLC v. MGA Ent., Inc.*, No. 04CV1035 J (BLM), 2004 WL 7333800, at *5 (S.D. Cal. Sept. 8, 2004). Here, the ability of any signs to link a mark to even a proximate item is further weakened by the fact that Plaintiff uses its signs for "decorative purposes."[35] *In Re Jones*, 216 USPQ 328 (TTAB 1982) ("The framing . . . of a symbol representing one's business is . . . common[] . . . It has a functional as well as decorative purpose . . . it would be viewed . . . as no more than part of the office decor and would not be interpreted as a trademark for [goods] located near it."). Thus, Plaintiff's primary argument for trademark use as to products that it has failed to stamp—point-of-use display via store signs—has no merit. *See* Tr. Vol. 1 205:12 – 206:1.

### D.   Plaintiff fails to sufficiently show common-law mark rights.

Plaintiff only really adduces its licensee's officers' testimony to support its claim of common-law rights for "BM", "Brandy LA", and "brandymelvilleusa",[36] and "brandymelvilleusa.com", *i.e.*, the customers recognize the aforesaid as having

---

"'means of ordering'" any item, among other flaws. *In Re Azteca Sys., Inc.*, 102 U.S.P.Q.2d 1955 (T.T.A.B. 2012) ("[T]he mark fails to create an association with [and] serve as an indicator of source . . . [It] is distant from the [goods'] description . . . and is separated from the description by . . . text concerning marginally-related topics . . . [T]here are [also] a number of different logos and word marks on the webpage, which are not specifically for applicant's goods.").

[35] *See* Tr. 112:8 - 115:23 (Plaintiff states on direct it uses signs and "stickers" to "decorate" and that its customers do so as well).

[36] Indeed, Plaintiff's own witness stated that he was "not sure" whether Plaintiff owns "brandymelvilleusa." Tr. Vol. 1 16:8-13.

source-identifying functions. Such self-serving testimony is insufficient. *Fleischer*, 654 F.3d at 967. Moreover, the aforesaid purported marks have additional issues.

As to "BM" and "Brandy LA", there is no evidence that "Brandy Melville's" initials or the name "Brandy" are "distinct[]" enough to create confusion, *Guichard v. Universal City Studios, LLP*, No. C 06-6392 JSW, 2008 WL 11515186, at *4 (N.D. Cal. Feb. 13, 2008), much less that anyone "abbreviate[d]" the mark to associate "BM" or "Brandy" with any goods.[37] *George & Co., LLC v. Imagination Ent. Ltd*., No. 1:07-CV-498-LMB-TRJ, 2008 WL 2883771, at *9 (E.D. Va. July 25, 2008). Nor has Plaintiff shown any trademark use for "Brandy LA", *e.g.*, "copies of packaging, photographs of the product, ad[s], or invoices",[38] *id.* and instead, only points to alleged infringements, which puts the cart before the horse.

Nor is there sufficient evidence "brandymelvilleusa.com" functions as a mark. Plaintiff's sole specimen of trademark use is the inclusion of this URL on a sticker.[39] Ex. 223 at 34. Yet, as shown by the sticker's "very small and subdued typeface", the URL is simply an "Internet address … used to contact" Plaintiff, and thus "merely imparts information, in the same manner as an address, phone number or other informational statement." *In Re Eilberg*, 49 USPQ2d 1955 (T.T.A.B. 1998) Indeed, "[w]here", as here, "the substance of a term or statement is merely informational in nature", there is a "presumption that the use thereof is for merely informational

---

[37] Indeed, Plaintiff's application to register the word mark "Brandy Melville" is "dead." Tr. Vol. 2 109:14-16.

[38] *Unitek Solvent Servs., Inc. v. Chrysler Grp. LLC*, No. 12-00704DKW-RLP, 2013 WL 5503087, at *8 (D. Haw. Sept. 30, 2013) (company-officer testimony "has little or no probative value if it is otherwise uncorroborated")

[39] Plaintiff also purports to rely on alleged evidence of *infringement* to support the notion that *it has trademark rights*. This is self-defeating: uncontrolled third-party use of a purported mark, such as "naked licensing", is "inherently deceptive and constitutes abandonment" because it weakness a designation's ability to identify any offering as coming from a *single* source. *First Interstate Bancorp v. Stenquist*, No. C-89-4106 MHP, 1990 WL 300321, at *3 (N.D. Cal. July 13, 1990).

purposes." *Id.* And Plaintiff's own testimony confirms this presumption because it analogizes the URL to a physical address. Tr. 121:22 – 122:10. In sum, the URL on the sticker is purely "informational." *D.C.*, 120 U.S.P.Q.2d 1710. Plaintiff has also failed to confirm that it can assert, much less show it owns "brandymelvilleusa." Tr. Vol. 1 16:8-13. Under such circumstances, neither the URL now its domain name can be considered marks. *See In Re Indus. Risk Insurers*, No. SERIAL 76097495, 2008 WL 885952, at *3 (Feb. 14, 2008) (rejecting the notion that  URL is a mark simply because it derives from a registered mark and noting that "mere registration of a term as a domain name does not establish any trademark rights").

**E.**   **Plaintiff has failed to introduce evidence sufficient to show that any alleged direct infringements are not aesthetically functional.**

Plaintiff has not adduced any evidence to show that any alleged direct infringers used an asserted mark in a manner that was *not* "aesthetically functional," and thus, the evidence cannot support a finding of *any* direct infringement. *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1074 (C.D. Cal. 2012); *LTTB*, 840 F. App'x at 151 (The Ninth Circuit affirmed summary judgment in favor of Redbubble on this very issue.) Its own evidence show that consumers value goods with the Brandy Heart and Flag Marks, as well as the LA Lightning Logo because they function as décor and showcase membership among the trendy. Note 19, *supra*. *Int'l Ord. of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918–19 (9th Cir. 1980) ("'[O]ne can capitalize on a market or *fad created by another* provided that it is not accomplished by confusing the public"). Indeed, Plaintiff itself understands that the public may create their own "brandy inspired" graphic and appears to take no issue with this; such a position would  be incongruous if the public was using designs similar to Plaintiff's in a trademark manner sows confusion. Note 23, *supra*.

**F.**   **The evidence fails to show likelihood of confusion of any type.**

Plaintiff has failed to show likelihood of confusion, whether initial, point-of-sale, or post. *Trovan Ltd. v. Pfizer Inc.*, 107 F. App'x 788, 791 (9th Cir. 2004)

(granting judgment for defendant were, *inter alia*, there was no evidence of actual confusion, the parties used housemarks, there was no evidence of actual confusion, and purchaser care rendered confusion unlikely). Despite alleged infringements going on for years, Plaintiff has yet to point to one instance of *any* kind of actual confusion beyond self-serving testimony from its agents.[40] *Hero Nutritionals LLC v. Nutraceutical Corp.*, SACV 11-1195, 2013 WL 4480674, at *6 (C.D. Cal. Aug. 16, 2013) ("lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication" that there is no meaningful likelihood of confusion"). The presence of housemarks further renders confusion unlikely.[41] Nor has Plaintiff shown that any alleged infringer was trying to capitalize on its goodwill;  indeed, the uses of asserted marks in the record can all be explained through aesthetic functionality, (Section II.E., *supra*) and/or as discussed *infra*, nominative fair use. There is also no evidence of Redbubble users holding themselves out as being authorized by Plaintiff, and Redbubble has always publicly referred to the Marketplace as one for *indie* artists. *See, e.g.*, TE403. Testimony that Plaintiff's customers "know" its products, including the "size" for "each style" further renders confusion unlikely.[42] Tr. Vol. 2 54:1-5.

Also, the First Amendment prevents a trademark owner from "control[ling] public discourse whenever the public 'imbues his mark with a meaning beyond its source-identifying function.'"  *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74

---

[40] *Cf. Jinni Tech, Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2020 WL 1932696, at *5 (W.D. Wash. Apr. 20, 2020) ("To survive summary judgment, a plaintiff must provide" evidence of "confusion beyond self-serving conclusory statements"); *E & J Gallo v. Proximo Spirits, Inc.*, No. CV-F-10-411 LJO JLT, 2012 WL 273076, at *17 (E.D. Cal. Jan. 30, 2012) (granting defendant judgment and concluding that "[t]he lack of evidence of actual confusion [wa]s significant"), *aff'd sub nom. E. & J. Gallo Winery v. Proximo Spirits, Inc.*, 583 F. App'x 632 (9th Cir. 2014).

[41] *See* note 18, *supra* (Brandy Heart or Flag ); Ex. 173 at 2, 4 (accused items).

[42] Plaintiff thus unsurprisingly failed to testify as to any instances of confusion. *See, e.g.*, Tr. Vol. 2 57:1 – 58:2.

1  F. Supp. 3d 1134, 1141 (N.D. Cal. 2014) (quoting *Mattel, Inc. v. MCA Recs., Inc.*,

2  296 F.3d 894, 900–01 (9th Cir. 2002)). This is because "[i]t is the source-denoting

3  function which trademark laws protect, and nothing more." *Ibid*. Thus, the law does

4  not confer trademark rights in cases of ornamental use and/or aesthetic functionality.

5  *See, e.g.*, *Job's Daughters*, 633 F.2d at 917 ("[T]rademark law is concerned only

6  with identification of the maker, sponsor, or endorser of the product . . . [It] does not

7  prevent a person from copying so-called [aesthetically] 'functional' features.").

8  **G.    Plaintiff has failed to show initial interest confusion.**

9  Plaintiff has also failed to show initial interest confusion for additional

10  reasons. "In the keyword advertising context ... 'confusion'" turns on … Who is the

11  relevant reasonable consumer?; and … What would he reasonably believe based on

12  what he saw on the screen?" *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d

13  930, 937 (9th Cir. 2015) (internal quotation marks and citations omitted). Here, the

14  evidence shows, *inter alia*, that: (1) Plaintiff claims very loyal customers that are

15  very particular and know a lot about its products and retail methods; (2) the

16  Marketplace is only online and in contrast, Plaintiff sells both online and via brick-

17  and-mortar;[43] (3) the Marketplace and Plaintiff's site employ different house marks

18  and are vastly different visually; and (4) products and advertisements are always

19  clearly labeled (*e.g.*, Redbubble is identified as the service provider, the user is

20  defined as the content generator, *etc.*). *See, e.g.*, TE369. Thus, Plaintiff has proffered

21  inadequate evidence of initial confusion. *Multi Time*, 804 F.3d at 937 ("[C]lear

22  labeling can eliminate the likelihood of initial interest confusion.").

23  Nor can Plaintiff rely on purported customer recognition of non-trademark

24  *graphics* to support allegations of *trademark* confusion. *In Re Pro-Line*, 28

25  U.S.P.Q.2d 1141 (trademark rights are assessed based on what is claimed, not what

26  a mark may or may not be presented with). This theory is particularly absurd, both

27

28  43

1  legally and factually, when one considers the amorphous and numerous nature of
2  Plaintiff's purported designs, which Plaintiff acknowledges it does not necessarily
3  own in totality. Tr. Vol. 1. 151:19-20. *Cf. Fifty-Six Hope Rd. Music, Ltd. v.*
4  *A.V.E.L.A.*, Inc., 688 F. Supp. 2d 1148, 1158–59 (D. Nev. 2010) (a collection of
5  images of Tiger Woods cannot function as a source identifier because there "are
6  undoubtedly thousands of images and likenesses of Woods", such that "[n]o
7  reasonable person could believe that merely because these photographs or paintings
8  contain Woods's likeness or image, they all originated with Woods").

9       Moreover, the doctrine of nominative fair use allows a party to use another's
10  marks to describe its own products as being "copie[s]" of the latter's. *Smith v.*
11  *Chanel, Inc.*, 402 F.2d 562, 564 (9th Cir. 1968) (allowing defendant to use marks
12  "'Dior' and 'Christian Dior'" to "identify[]plaintiff's dresses as the original
13  creations from which defendant's dresses were copied"). Given Plaintiff's testimony
14  regarding how unique and popular its designs are, the fact that its purported design
15  marks are being used for their aesthetic function, and the absence of any evidence
16  showing that any asserted marks were unreasonably used, in connection with search
17  tagging and product titles, *etc*., Plaintiff has failed to show that any nominative fair
18  use of its marks was anything but reasonable. Also, there is no evidence of any
19  activity that suggested sponsorship, induced confusion, *etc.*: indeed, there has been
20  no identifiable instances of confusion.

21       **H.     Redbubble was not contributorily liable.**

22       "To be liable for contributory trademark infringement", Redbubble "must
23  have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to
24  supply" a service "to an infringer with knowledge that the infringer" was using said
25  service to infringe. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th
26  Cir. 2007). "'Some contemporary knowledge of which particular listings are
27  infringing or will infringe in the future is necessary.'" [D.E. 103 at 6.] Constructive
28  notice via a trademark registration does not satisfy this standard. *GMA Accessories,*

1 *Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 465 (S.D.N.Y. 2011), *aff'd sub nom. GMA*

2 *Accessories, Inc. v. Elec. Wonderland, Inc.*, 558 F. App'x 116 (2d Cir. 2014).

3    Plaintiff has failed to proffer evidence satisfying this standard: its entire case

4 is based on a non-existent "'affirmative duty" for Redbubble to "monitor[]" its site

5 and "determine, on its own, which" listings "infringe." *Hendrickson v. eBay, Inc.*,

6 165 F. Supp. 2d 1082, 1095 (C.D. Cal. 2001). Plaintiff wrongly claims that it did not

7 have to notify Redbubble of specific listings because it felt that it was "Redbubble's

8 responsibility to" address alleged violations. Tr. Vo. 177:18-19. However, "mark-

9 holders, not service providers, are responsible for protecting their marks." *Acad. of*

10 *Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWX),

11 2015 WL 5311085, at *53 (C.D. Cal. Sept. 10, 2015). And "[n]otice of certain acts

12 of infringements does not imply generalized knowledge of—and liability for—

13 others." *Spy Phone Labs LLC. v. Google Inc.*, No. 15-CV-03756-PSG, 2016 WL

14 1089267, at *3 (N.D. Cal. Mar. 21, 2016). This is true whether or not past notices

15 concerned the same intellectual property at issue. *Id.* (claimant failed to allege

16 "plausible actual notice" despite its prior notice regarding its mark).

17    Given the above, Plaintiff has not shown the requisite scienter.[44] When

18 Redbubble had "particular" knowledge of listings "identified" by Plaintiff, it

19 promptly removed them.[45] *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464

20 U.S. 417, 439 n.19 (1984). Nor has Plaintiff shown that Redbubble was willfully

21 blind**,** *i.e.*, with regard specific listings or merchants, (1) "subjectively believe[d]" in

22 "a high probability that" infringement "exist[ed]"; and (2) took "deliberate actions

23 to avoid learning" of "specific facts" of infringement.  *Luvdarts, LLC v. AT&T*

24

---

25 [44] Plaintif's purported evidence of deliberate keyword searches involving its mark,
26 for example, was not only pre-notice, but also not reflective of any company policy.
27 Tr. Vol. 2. 102:23-25, 111:20 – 112:12

28 [45]  *See, e.g.*, Tr. 93:5-9 (Redbubble was not aware of "new items with" Plaintiff's purported trademarks).

1   *Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013). There is no showing that

2   Redbubble "intentionally shielded itself from discovering the offending listings or

3   the identity of the sellers behind them." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93,

4   109 (2d Cir. 2010). In fact, Redbubble "goes looking for things that" rightsholders

5   "tell [it] to look for and remove." Tr. Vol. 2 108:10-15. Apart from takedowns, it

6   actively discourages repeat abuse: "[e]very time somebody uploaded something that

7   [it] remove[d]", it asks "them not to do it again." *Id.* 101:3-5. Plaintiff also has not

8   shown Redbubble had an financial motives to be willfully blind: indeed, Redbubble

9   unilaterally offered to give Plaintiff revenues generated from alleged infringements,

10  which is Redbubble's *customary* practice. Tr. Vol. 2 73:20-24.

11         Alleged failures were largely caused by Plaintiff's willful withholding of

12  information, which is particularly problematic given that there is no evidence that

13  Redbubble ever interacted in-person with the artists who created allegedly infringing

14  listings,[46] and the fact that Redbubble's alleged contributions to infringements arise

15  from largely automated processes.[47] And, given the "colorable" defenses discussed

16  *supra*, Redbubble cannot be said to have had anything other than good faith.

17  *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 962 (C.D. Cal.

18  1997). Nor has Plaintiff shown that Redbubble had to do any more. Redbubble is not

19  required to be perfect, and there is no evidence any such mistake was due to willful

20

21

_____

22  [46] *See, e.g.*, *Acad. of Motion Picture Arts & Scis. v. Network Sols. Inc.*, 989 F. Supp.

23  1276, 1280 (C.D. Cal. 1997) (domain-name registrar defendant and its clients "have

24  no physical contact" and thus, had "much less reason to be aware of the activities of its registrants than has a swapmeet owner")

25  [47] *See, e.g.*, *GoDaddy.com, Inc.*, 2015 WL 5311085, at *48 ("Given the (necessarily)

26  automated nature of GoDaddy's registration process and Parked Pages Program,

27  GoDaddy had no part in selecting any of the Accused Domains for registration and could not possibly have independent knowledge ….); *see, e.g.*, Tr. Vol. 111:8-10.

28  (discussing automated processes).

blindness.[48] Also, Redbubble need not get rid of tagging when doing so would impinge on "legitimate" business activity, including policing its site for potential infringements of Plaintiff's claimed marks.[49] *Lockheed*, 985 F. Supp. at 967.

## I.      The evidence cannot support pre-notice damages.

Contributory liability cannot arise from alleged pre-notice infringements. Section II.H., *supra*. Thus, liability relating to Brandy Heart, Brandy Flag, and from use of "Brandy Melville" in search tags cannot support any liability if they predate May 14, 2018. TE10. Liability relating to LA Lightning, "BM", "Brandy LA", and "brandymelvilleusa", and "brandymelvilleusa.com", cannot arise unless the alleged infringement post-dates, at the earliest, May 28, 2019. [D.E. 1.]

## J.      Plaintiff has not introduced any evidence of mitigation.

Plaintiff has also failed to show any evidence of mitigation efforts, much less that any such efforts wsere "reasonable." Ninth Circuit Model Jury Instruction 5.3. Indeed, it simply tried to impose on Redbubble duties that the law does not impose, including Plaintiff's *own* duty to protect its purported marks. Section II.H., *supra*.

## K.      Plaintiff Has Not Established an Entitlement to Profits

Profit disgorgement is "'an equitable remedy subject to the district court's sound discretion.'"[50] *Airhawk Int'l, LLC v. Ontel Prod. Corp.*, No. 18-CV-00073-MMA-AGS, 2020 WL 2306440, at *4 (S.D. Cal. May 8, 2020) (citation omitted). Although not an "'inflexible precondition'", it "'is a principle long reflected in equity practice where district courts have often considered a defendant's mental state, among other factors, when exercising their discretion in choosing a fitting

---

[48] *See GoDaddy.com, Inc.*, 2015 WL 5311085, at *53 (notion that defendant could "do more" should neither "bad faith" nor "subjective bad faith to profit from [claimant's] marks specifically").

[49] Tr. Vol. 2 101:18-24 (tags are used to help police).

[50] A "claim for disgorgement" is "equitable, not legal and thus does not invoke the right to a jury trial." *Fifty-Six*, 778 F.3d at 1075 (cleaned up).

remedy.'" *Id.* (citations omitted). Thus, whether a defendant "acted with a culpable mental state in infringing" a mark remains, as always, a "'highly important consideration'" in assessing whether to compel profit disgorgement. *Id.* (citation omitted). Indeed, "consideration of … mental state" is "especially appropriate here because" Plaintiff seeks disgorgement "not for compensatory purposes, but as a restitutionary measure of damages", a remedy "typically appropriate in cases involving 'conscious wrongdoers'" because of its ability to "prevent the defendant from retaining gains made possible by its wrongdoing." *Id.* at *5.

Plaintiff here has not made "any showing that disgorgement" is "appropriate" given Redubble's "mental state and the facts surrounding" alleged infringements of registered marks. *Airhawk*, 2020 WL 2306440, at *4. Redbubble should thus be granted judgment "on the issue of disgorgement." *Id.* (denying motion to reconsider grant of judgment for defendant).

In any event, Plaintiff has failed to show any post-notice profits by Redbubble on certain marks. There is no evidence of even alleged infringements of Brandy Flags,[51] and Plaintiff's registrations are wholly and/or partially invalid as to the Brandy Heart and LA Lightning.

### L.   Plaintiff Has Not Offered Evidence of Willful Infringement

Plaintiff has not offered evidence from which a reasonable jury could find willful infringement. Indeed, courts have consistently held that infringement is not knowing or willful where, as here, the defendant reasonably believes that its usage of a trademark is not barred by law. *VHT, Inc. v. Zillow Group, Inc.,* 918 F.3d 723 (9th Cir. 2019); *Int'l Olympic Comm. v. San Francisco Arts & Athletics*, 781 F.2d 733, 738-39 (9th Cir. 1986). In *VHT*, for example, Zillow's user agreement required that brokers, agents, and listing services who uploaded photos and real property

---

[51] Indeed, Plaintiff seems to have disavowed the Brandy Flags Mark as a basis for even statutory damages. [*See* D.E. 174 at 3.]

listings to its marketplace "represent that they 'have all necessary rights and authority to enter into' the agreements," and that the uploaded content "will not violate the intellectual property rights, or any other rights of any third party." *Id.* at 732 (internal quotations omitted).  There, as here, there was no "evidence showing Zillow exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of these photos."  *Id.* at 734. In light of its users' representations, Zillow was not "'actually aware' of its [users'] infringing activity" notwithstanding having received blanket notice of infringement from VHT; accordingly, the Ninth Circuit reversed the jury's willfulness verdict. *Id.* at 748-49 (quoting *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012) ("Continued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.").

Indeed, in another case where Plaintiff's counsel here is representing the plaintiff, and on very similar facts, summary judgment was granted in favor of Redbubble on willful blindness specifically and willful infringement in general. *Atari Interactive, Inc. v. Redbubble, Inc*., No. 18-CV-03451-JST, 2021 WL 706790 (N.D. Cal. Jan. 28, 2021) ("[g]iven that use of trademarked content is difficult to detect without input from the trademark owners, Atari fails to show that Redbubble's process is unreasonable"). *See also Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWX), 2015 WL 5311085 at *35 (C.D. Cal. Sept. 10, 2015) ("the uncontested evidence regarding [Defendant's] responsiveness to [Plaintiff's] notices as well as [Defendant's] extensive proactive measures aimed at minimizing instances of infringement by its [users] proves [Defendant's] conduct to be the antithesis of willful blindness or bad faith."

Like the defendants in *Zillow*, Redbubble was entitled to and did in fact reasonably rely on representations made by its users that they had the right to use

the designs they uploaded to the site. And like those defendants, there is no evidence that Redbubble was "actually aware" of specific, ongoing infringing activity; when Redbubble learned of such activity, it has swiftly put an end to it. Using the language from *Evergreen*, Redbubble "believes reasonably, and in good faith, that [it] is not infringing." Redbubble is thus entitled to a determination of no willfulness as a matter of law.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Redbubble's motion for judgment as a matter of law should be granted.

Dated:  June 22, 2021                          Respectfully submitted,

ZUBER LAWLER LLP
JOSHUA M. MASUR
JEFFREY J. ZUBER
HEMING XU
JENNIFER C. KUHN

By:          /s/ Joshua M. Masur
_____
Attorneys for Defendant
REDBUBBLE INC.