BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Ryan Q. Keech (State Bar No. 280306)
  rkeech@bgrfirm.com
Jason Y. Kelly (State Bar No. 274144)
  jkelly@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff
Y.Y.G.M. SA d.b.a. Brandy Melville

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>REDBUBBLE, INC., a Delaware corporation,<br><br>            Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br>Hon. R. Gary Klausner<br><br>**PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>PTSC Date:    May 24, 2021<br>Trial Date:    June 17. 2021 |

Case No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO
DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ........................................................................................ 1

II. LEGAL STANDARD ................................................................................. 1

III. ARGUMENT ............................................................................................. 2

    A. The Motion Should Be Stricken Based on a Violation of This Court's Standing Order ................................................................... 2

    B. The Motion Must Be Denied as to the Finding of Counterfeiting .......... 2

        1. The Brandy Melville LA Lightning Mark .................................... 4

        2. The Brandy Melville Heart Mark ................................................. 6

    C. There Is Sufficient Evidence of the LA Lightning Mark's Commercial Use ........................................................................... 8

    D. Brandy Melville's Rights Regarding Its Name and Variations of the Name ..................................................................................... 11

    E. The Evidence Shows Redbubble Was Contributorily Infringing and Exercising Willful Blindness ........................................................ 12

    F. Redbubble's Miscellaneous Arguments Lack Merit ........................... 15

IV. CONCLUSION ........................................................................................ 18

PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO
DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>FEDERAL CASES</u>

*Adidas Am., Inc. v. Skechers USA, Inc.*,
    No. 15-cv-1741, 2017 WL 3319190 (D. Or. Aug. 3, 2017) ................................... 9

*Art Attacks Ink, LLC v. MGA Ent't, Inc.*,
    No. 04-cv-1035, 2004 WL 7333800 (S.D. Cal. Sept. 7, 2004) ........................... 8

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
    457 F.3d 1062 (9th Cir. 2006) ............................................................................ 17

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
    575 U.S. 138 (2015) ............................................................................................. 5

*Ballero v. 727 Inc.*,
    No. 16-cv-16098, 2017 WL 4226203 (E.D. La. Sept. 22, 2017) ........................ 11

*California Expanded Metal Products Co. v. Klein*,
    426 F. Supp. 3d 730 (W.D. Wash. 2019) .......................................................... 12

*CG Roxane LLC v. Fiji Water Co. LLC*,
    569 F. Supp. 2d 1019 (N.D. Cal. 2008) .............................................................. 9

*Delta Air Lines, Inc. v. Wunder*,
    No. 13-cv-3388, 2015 WL 11347586 (N.D. Ga. Dec. 28, 2015) ........................ 17

*E.E.O.C. v. Go Daddy Software, Inc.*,
    581 F.3d 951 (9th Cir. 2009) ............................................................................... 1

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*,
    458 F.3d 931 (9th Cir. 2006) ............................................................................. 11

*Estate of Diaz v. City of Anaheim*,
    840 F.3d 592 (9th Cir. 2016) ............................................................................... 1

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
    394 F.3d 1368 (Fed. Cir. 2005) ......................................................................... 12

*H-D U.S.A., LLC v. SunFrog, LLC*,
    311 F. Supp. 3d 1000 (E.D. Wisc. 2018) ........................................................ 3, 4

Case No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO
DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
  994 F.3d 1107 (9th Cir. 2021) ............................................................ 15

*JL Beverage Co., LLC v. Jim Beam Brands Co.*,
  828 F.3d 1098 (9th Cir. 2016) ............................................................ 16

*Johnson v. Paradise Valley Unified Sch. Dist.*,
  251 F.3d 1222 (9th Cir. 2001) ......................................................... 1, 2

*Lands' End, Inc. v. Manback*,
  797 F. Supp. 511 (E.D. Va. 1992) ........................................................ 8

*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997) ......................................................... 5, 7

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) ............................................................ 12

*Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*,
  97 F. Supp. 3d 485 (S.D.N.Y. 2015) ..................................................... 3

*Omega SA v. 375 Canal, LLC*,
  984 F.3d 244 (2d Cir. 2021) ................................................... 13, 14, 18

*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133 (2000) ......................................................................... 2

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  140 S.Ct. 1492 (2020) ...................................................................... 18

*SAS v. Sawabeh Info. Servs. Co.*,
  No. 11-cv-4147, 2013 WL 12126742 (C.D. Cal. Oct. 8, 2013) ............................ 5

*State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*,
  425 F.3d 708 (9th Cir. 2005) ............................................................. 4

*Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*,
  No. 16-cv-5900-RGK, 2017 WL 5951881 (C.D. Cal. Nov. 13, 2017) .... 1, 2, 6, 15

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) ............................................................... 12

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Winato v. Toshiba Elecs. Components, Inc.*,
   274 F.3d 1276 (9th Cir. 2001) ................................................................ 2

*Zobmondo Ent't, LLC v. Falls Media, LLC*,
   602 F.3d 1108 (9th Cir. 2010) ................................................................ 9

**FEDERAL STATUTES**

15 U.S.C. § 1057(b) ..................................................................................... 5

15 U.S.C. § 1116(d)(1)(A) ........................................................................... 2

15 U.S.C. § 1127 ................................................................................. 2, 3, 11

Lanham Act ........................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 50 .............................................................................. 1, 11, 17

Fed. R. Civ. P. 50(a)(1) ............................................................................... 1

-iv-                                                    Case No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO
DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville ("Plaintiff" or "Brandy Melville") hereby opposes Defendant Redbubble Inc.'s ("Defendant" or "Redbubble") Motion for Judgment as a Matter of Law (the "Motion"; Dkt. No. 185).

# I.   <u>INTRODUCTION</u>

Redbubble commits the all-too-common, yet fatal, mistake of turning the Rule 50 standard of review on its head.  Rather than explain why the evidence and all inferences favorable to Brandy Melville still fail as a matter of law, Redbubble touts its own evidence and puts its own spin on any Brandy Melville evidence.  Moreover, Redbubble ignores completely certain evidence that Brandy Melville presented at trial and that this Court had previously cited to deny Redbubble summary judgment. Redbubble in effect requests this Court to ignore "bedrock principles delineating the trial judge's *limited role in reviewing a jury's factual findings*." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (emphasis added). When all the evidence and inferences are weighed in favor of Brandy Melville, and appropriate deference is given to the jury, it is clear that Redbubble's Motion should be denied.

# II.   <u>LEGAL STANDARD</u>

This Court may only grant the Motion if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).  In other words, "a post-verdict judgment as a matter of law ('JMOL') is proper if the evidence presented at trial 'permits only one reasonable conclusion, and that conclusion is contrary to' the jury's verdict." *Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*, No. 16-cv-5900-RGK, 2017 WL 5951881, at *1 (C.D. Cal. Nov. 13, 2017) (quoting *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 604 (9th Cir. 2016)); *see also E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).  Redbubble must, therefore, "show there is ***no legally sufficient evidentiary basis*** for a reasonable jury to have found as it did on a given

issue." *Strategic Partners*, 2017 WL 5951881, at \*1 (emphasis added) (citing *Winato v. Toshiba Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001)).

"The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor," and the court "must not weigh the evidence or assess the credibility of witnesses." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000)). Further, this Court "may not substitute its view of the evidence for that of the jury." *Johnson*, 251 F.3d at 1227.

## III.   ARGUMENT

### A.   The Motion Should Be Stricken Based on a Violation of This Court's Standing Order

As a threshold matter, this Court's Standing Order limits motions to 20 pages. (Dkt. No. 9 at 3 ("Memoranda of Points and Authorities in support of or in opposition to motions shall not exceed 20 pages. Replies shall not exceed 10 pages.") (emphasis omitted)).) Redbubble's Motion exceeds the limit by several pages. The Motion can and should be stricken.

### B.   The Motion Must Be Denied as to the Finding of Counterfeiting

Brandy Melville's claim of counterfeiting survived Redbubble's motions for summary judgment and for reconsideration. (Dkt. No. 103 at 12-16; Dkt. No. 140 at 2-3.) Based on the same type of evidence this Court relied on, the jury concluded that Redbubble contributorily counterfeited the Brandy Melville LA Lightning Mark and the Brandy Melville Heart Mark. (Dkt. No. 193 at 2.) Nothing in the Motion warrants disturbing the jury's findings.

"The Lanham Act prohibits a counterfeit mark from being used '*in connection with* the sale, *offering for sale*, or distribution of goods of services.'" (Dkt. No. 103 at 12 (quoting 15 U.S.C. § 1116(d)(1)(A)) (emphasis added).) "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. (*See also* Dkt. No. 103 at 13.)

The Motion misleadingly suggests liability for counterfeiting can only arise when the defendant's mark and product are something like a carbon copy of the plaintiff's mark and product.  (Dkt. No. 185 at 1-2.)  That is not true.

A plain reading of the statute belies the "carbon copy" argument.  The statute does not require exact identity of marks, but includes a spurious mark that is "substantially indistinguishable from" a registered mark.   15 U.S.C. § 1127.  Moreover, the statute says nothing about the products themselves having to be "stitch-for-stitch" copies.  *See also Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015) (noting that any requirement that "products" be exactly the same "runs counter to the plain text of the Lanham Act").

Courts too have recognized that a product can be counterfeit even when it is not a "stitch-for-stitch" copy, including when the products are of different quality or the marks on the products exhibit "a number of differences."  97 F. Supp. 3d at 499-501  (collecting cases).  In *Louis Vuitton*, for example, the designs at issue were different in several respects, including as to the number and shape of the designs' flower petals, their use of a circle, and even the letters in the symbol: the defendant's "VF symbol" used "a different letter from [plaintiff's] LV mark," but "the F [wa]s styled in such a way that it could easily be mistaken for a V."  *Id.* at 500-01.  Despite these differences, the court held that the defendant was not "entitled to judgment as a matter of law: while the differences may be apparent upon close inspection, they would not necessarily be obvious to the average purchaser."  *Id.* (acknowledging case law finding "a mark to be counterfeit even if it has 'minor differences' from the original").

And in *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wisc. 2018), the court rejected the same arguments Redbubble makes (again) in the Motion.  When evaluating the counterfeiting claims, the court explained that "[t]he more pertinent question is whether the marks, not the goods, are substantially identical."  *Id.* at 1027.  After all, the "most classic cases of counterfeiting involve a famous mark

being applied to a shoddy product" where the "quality of the goods bearing the subject marks" are different. *Id.* For this reason, the *SunFrog* court concluded that "this is a counterfeiting case" even though the "font sizes, colors, sizes, and shapes" in the defendant's products were "altered" from the plaintiff's trademarks. *Id.* at 1028. Any other decision would feed the "perverse incentives" for infringers and counterfeiters to "escape liability simply by reproducing protected marks on poor products." *Id.*

Likewise, this Court concluded it could not grant Redbubble summary judgment on the issue of whether the Brandy Heart Mark was counterfeited, even though the designs on the Brandy Melville and Redbubble products used different font types and sizes. (Dkt. No. 103 at 13-15.)

In any event, even under Redbubble's own unduly restrictive legal standard, the evidence and inferences in favor of Brandy Melville could support a finding of counterfeiting.

### 1.    <u>The Brandy Melville LA Lightning Mark</u>

The Motion seeks reconsideration of the Court's summary judgment decision concerning the LA Lightning Mark. Last year, this Court held that there was sufficient evidence for a reasonable jury to conclude that Redbubble counterfeited the LA Lightning Mark. (Dkt. No. 103 at 13-15.) Brandy Melville introduced evidence that, after it filed this lawsuit, "Redbubble user 'haleyshore' offered t-shirts and other pieces of apparel for sale on Redbubble's website imprinted with Plaintiff's LA Lightning Mark." (*Id.* at 14.) The LA Lightning Mark is registered for and used on several different products, including t-shirts and other apparel, and it was "nearly identical" to the mark on haleyshore's store. (*Id.* at 13.) Brandy Melville's counsel sought to purchase these apparel products from the Redbubble website, but Redbubble "canceled the sales before they could be completed after receiving notice from Brandy Melville." (*Id.* at 14.) This Court held that this evidence was sufficient for a jury to find counterfeiting because the Lanham Act "statute applies to items 'offered' for sale as well as sales finally transacted." (*Id.* (citing *State of Idaho Potato Comm'n v. G&T*

*Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005)).)  Moreover, an offer to sell is sufficient for counterfeiting even if the good has not yet been produced.  *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1311-12 (9th Cir. 1997); *see also SAS v. Sawabeh Info. Servs. Co.*, No. 11-cv-4147, 2013 WL 12126742, at *3 n.1 (C.D. Cal. Oct. 8, 2013).

At trial, Brandy Melville introduced the same type of evidence this Court relied on at summary judgment; and based on that evidence, the jury reasonably concluded Redbubble counterfeited the LA Lightning Mark.  The evidence shows that the LA Lightning Mark is Brandy Melville's registered trademark for t-shirts and apparel, and Brandy Melville has used the LA Lightning Mark continuously since 2018 on apparel, stickers, decorative signs, and murals.  (TE007[1]; *see also* Declaration of Jason Y. Kelly ("Kelly Dec."), filed concurrently, Ex. 1 (2021.06.17 Trial Tr.) at 123:16-127:1.)  *See also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142-43 (2015) (explaining that trademark registration "is 'prima facie evidence of . . . the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate'") (quoting 15 U.S.C. § 1057(b)).

Long after the Complaint in this case was filed, Redbubble offered for sale products—including t-shirts for women—featuring a design identical to the LA Lightning Mark.  (TE007, TE222, TE225, TE369, TE375, TE376; Kelly Dec., Ex. 1 at 144:11-147:14; *see also* Kelly Dec., Ex. 3 (2021.06.22 Trial Tr.) at 435:3-436:1.)  This evidence "le[ft] little doubt that there is a marked similarity between" the Brandy Melville and the Redbubble products using the LA Lightning Mark.  (*See* Dkt. No. 103 at 15.)  Moreover, the evidence can lead a reasonable jury to conclude

---

[1] All Trial Exhibits, identified with the "TE" prefix, are attached as exhibits to the Declaration of Jason Y. Kelly, filed concurrently, with the corresponding exhibit number.

1  that the counterfeit mark—labeled "Brandy Melville" on the Redbubble website—
2  was intended to target and deceive website users searching for Brandy Melville
3  designs (*e.g.*, TE369; TE375; TE376) and, as detailed below, Redbubble was willfully
4  blind.

### 2.   The Brandy Melville Heart Mark

6       This Court has already rejected Redbubble's arguments in opposition to Brandy
7  Melville's counterfeiting claim related to the Brandy Heart Mark.  (Dkt. No. 103 at
8  13-15.)   At trial, Brandy Melville provided even more evidence of counterfeiting,
9  confirming that the Motion's arguments (Dkt. No. 185 at 5-6) lack merit because a
10  reasonable jury could find counterfeiting.  *Strategic Partners*, 2017 WL 5951881, at
11  *1.

12       Brandy Melville introduced documentary evidence and testimony establishing
13  that the Brandy Heart Mark is a registered trademark that has been used continuously
14  since 2009 (Kelly Dec., Ex. 1 at 116:10-118:20; TE006) throughout all of Brandy
15  Melville's stores—including on signs and displays—and on its popular social media
16  (Kelly Dec., Ex. 1 at 112:5-113:21, 118:21-119:22, 205:6-206:1; TE328).   The
17  Brandy Heart Mark is also used on all Brandy Melville products, including on labels
18  stitched into the products and on the products' tags, and has been used on jewelry,
19  adhesive tape, handbags, and picture frames.  (Kelly Dec., Ex. 1 at 119:23-121:21,
20  164:6-165:16; TE288.)

21       Brandy Melville also introduced evidence that the Brandy Heart Mark was
22  available on the Redbubble website for sale on "Mugs, T-shirts, hats," and "wall
23  tapestries."  (TE183; Kelly Dec., Ex. 1 at 139:25-140:18.)  This Court has already
24  seen Redbubble's copy of the Brandy Heart Mark and concluded that it has "adequate
25  similarity" with the Brandy Heart Mark "based on their essential characteristics of
26  color and composition, to support a finding that they are sufficiently identical" (Dkt.
27  No. 103 at 14).  (*See also* TE183; Kelly Dec., Ex. 1 at 137:9-140:22.)

28

This evidence is more than sufficient to deny the Motion as to the Brandy Heart Mark. Redbubble offered for sale—and did sell (TE627)—products with a design sufficiently identical to the Brandy Heart Mark. (TE183; Kelly Dec., Ex. 1 at 139:25-140:18.) These products include apparel and wall tapestries, which are registered classes for the Brandy Heart Mark. (*Id.*; TE006.)[2] There also is no merit to Redbubble's argument that a witness's testimony describing the Redbubble products that were offered for sale on the Redbubble website using the Brandy Heart Mark is "legally insufficient to show counterfeiting." (Dkt. No. 185 at 5.) The Ninth Circuit held in *Levi Strauss* that a defendant can be liable "for an offer to sell counterfeit goods" based on an investigator-witness's testimony that the defendant offered to sell counterfeit tags, labels, and jeans. 121 F.3d at 1311-12. The testimony at trial was sufficient under *Levi Strauss*.

Brandy Melville also admitted evidence of the Brandy Heart Mark on signs and other pieces of furniture and home goods (TE328), which falls under Class 20 of the mark's registration (TE006). And a reasonable jury could conclude that Redbubble is liable for counterfeiting due to the Brandy Heart Mark's registration for "stickers." (*See id.*) Brandy Melville uses the Brandy Heart Mark in conjunction with stickers—the mark is displayed throughout each of Brandy Melville's stores, and Brandy Melville uses stickers to decorate the stores and to promote the brand by handing out stickers to its customers at the stores. (Kelly Dec., Ex. 1 at 112:5-114:24, 118:21-120:17, 205:6-206:1; TE328.) "The trademark statute does not require that the mark be affixed or have 'close physical association' to the goods. The terms of the statute are met if the mark is placed in any manner on a 'display associated' with the goods."

---

[2] Redbubble's counsel appears to have intentionally avoided asking questions about Brandy Melville's use of the Brandy Heart Mark on fabrics that can be used as a table cover or can be hung on a wall as a wall tapestry. (*See* Kelly Dec., Ex. 1 at 164:2-166:5.)

*Lands' End, Inc. v. Manback*, 797 F. Supp. 511, 513 (E.D. Va. 1992); *see also Art Attacks Ink, LLC v. MGA Ent't, Inc.*, No. 04-cv-1035, 2004 WL 7333800, at *5, 7 (S.D. Cal. Sept. 7, 2004).[3]   The evidence at trial establishing the requisite "association" between the Brandy Heart Mark and stickers is an independent basis for finding liability for counterfeiting.

A reasonable jury could also conclude that the counterfeit mark, identified with the Brandy Melville name on the Redbubble website, was intended to deceive and target users searching for Brandy Melville designs and that Redbubble was willfully blind.

Moreover, this evidence of counterfeiting—including on non-apparel—also evidences Redbubble's infringement of the Brandy Heart Mark.  Despite Redbubble's arguments to the contrary (Dkt. No. 185 at 12-13), Brandy Melville demonstrated that Redbubble has offered to sell and did sell thousands of products, including stickers and other non-apparel products, with a design infringing the registered Brandy Heart Mark.  (TE627.)

## C.    There Is Sufficient Evidence of the LA Lightning Mark's Commercial Use

Redbubble's attack on the LA Lightning Mark's validity and call for its "cancellation" are baseless.[4]   (Dkt. No. 185 at 6-12.)   At trial, Brandy Melville

---

[3] Redbubble misleadingly quotes *Art Attacks* to suggest a more restrictive holding than the court provided.  (Dkt. No. 185 at 13.)  Relying on the *Lands' End* court's conclusion that there should be "[a] 'line of demarcation' . . . between mere advertising and a display associated with the goods,'" the *Art Attacks* court explained that "*[a]dvertising* that is physically separable from the product itself is generally insufficient to establish a connection between the trademark and product."  *Art Attacks*, 2004 WL 7333800, at *5 (emphasis added).  In its Motion, however, Redbubble claims the court's conclusion regarding only advertising applies generally to all "materials."  (Dkt. No. 185 at 13.)  There is no legal basis for Redbubble's representation.

[4] Regarding "cancellation" of the registration, Redbubble did not plead a counter-

introduced the LA Lightning Mark's federal trademark registration.  (Kelly Dec., Ex. 1 at 123:9-22; TE007.)  "[F]ederal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark."  *Zobmondo Ent't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 115 (9th Cir. 2010).[5]  (*See also* Dkt. No. 36 at 8.)

Redbubble's argument that the public sees the LA Lightning Mark "*not as a source identifier*" is meritless.  (Dkt. No. 185 at 8.)  Brandy Melville introduced evidence showing that the LA Lightning Mark is not decorative, but is a source identifier.  The LA Lightning Mark is "an important" trademark that is "hugely popular" with Brandy Melville's customers and has been featured on over half a dozen of Brandy Melville's apparel products and on stickers.  (Kelly Dec., Ex. 1 at 124:1-125:18, 128:1-3; Kelly Dec., Ex. 2 (2021.06.21 Trial Tr.) at 261:19-262:16.)[6]  It is so popular that Brandy Melville's flagship store in Santa Monica "actually ha[s] a huge mural of [the LA Lightning Mark]" where customers "line up to take photos in front

---

claim or otherwise seek such relief; therefore the argument is waived.

[5] Redbubble's citation to *CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1032 (N.D. Cal. 2008), is inapposite because that case concerned validity through "secondary meaning."  (Dkt. No. 185 at 6 n.16.)  In contrast, the LA Lightning Mark was registered and is valid because it is inherently distinctive, not descriptive or decorative.  And, in any event, Brandy Melville introduced evidence that other companies have tried to copy the LA Lightning Mark (Kelly Dec., Ex. 1 at 127:6-16), which "'strongly supports an inference of secondary meaning.'"  *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 15-cv-1741, 2017 WL 3319190, at *13 (D. Or. Aug. 3, 2017).  The Motion also misrepresents a witness's testimony—the witness described a sign as "decorative," but Redbubble avers that the witness testified that the LA Lightning Mark was "decorative."  (Dkt. No. 185 at 7.)

[6] Redbubble's attempt to lump the LA Lightning Mark with other designs like "U.S.A." is unpersuasive given the design's distinctiveness, popularity, and obvious public association with the Brandy Melville brand.  (*See* Dkt. No. 185 at 7-9.)

of this graphic" and will tag their photos as "'Brandy Melville'" on Instagram.  (Kelly Dec., Ex. 2 at 261:25-262:16.)

Further, the evidence at trial shows that people unaffiliated with Brandy Melville have recognized the LA Lightning Mark's affiliation and relationship with the brand.  (*E.g.*, Kelly Dec., Ex. 2 at 262:12-21.)  The most obvious example is Redbubble's "haleyshore" user who used the "Brandy Melville" label on the LA Lightning Mark.  (TE369; *see also* Kelly Dec., Ex. 1 at 146:16-147:14, 206:13-207:17.)  Another Redbubble user acknowledged the LA Lightning Mark's relationship with the Brandy Melville brand by posting a design that was "inspired" by and is "similar to the LA Lightning Mark."  (Kelly Dec., Ex. 2 at 262:18-264:13.)  Further, there is unrebutted testimony that "Brandy Melville's customers associate[ ] the LA Lightning mark with the [Brandy Melville] brand."  (*Id.* at 262:12-16.)  It is not merely an "aesthetically pleasing" design; it is a Brandy Melville design that Brandy Melville's artists designed and that is therefore associated with the brand.  (Kelly Dec., Ex. 1 at 127:19-25.)

There also is no merit to Redbubble's argument that Brandy Melville "'warehoused'" the mark "'solely to prevent its use by others.'"  (Dkt. No. 185 at 9.)  Brandy Melville has continuously used the LA Lightning Mark "to identify the brand" since 2018, including on decorative signs, and has made several millions of dollars from products featuring the mark.  (Kelly Dec., Ex. 1 at 123:9-25, 125:19-127:5; TE225.)  Unrebutted testimony at trial showed that the LA Lightning Mark is sold in cycles and the next cycle is anticipated.  (Kelly Dec., Ex. 2 at 264:20-265:19, 268:22-269:3.)

Redbubble's abandonment argument fails too.  The evidence does not show any mark was "'discontinued . . . with intent not to resume,'" and Redbubble's argument that Brandy Melville must submit "objective" evidence, rather than its own testimony, about its own business plans is baseless.  (Dkt. No. 185 at 10 n.28.)  Redbubble relies on an unpublished district court decision from Louisiana that is

-10-

Case No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO
DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW

inapposite (*id.*) because, there, the mark was discontinued for six years, triggering a presumption of intent not to resume use.  *Ballero v. 727 Inc.*, No. 16-cv-16098, 2017 WL 4226203, at *3-5 (E.D. La. Sept. 22, 2017).   Under actual governing law, *see Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 936 (9th Cir. 2006), citing 15 U.S.C. § 1127 (no prima facie case of abandonment if use within the last three years), there is no trademark abandonment, and certainly not as a matter of law.

## D.    Brandy Melville's Rights Regarding Its Name and Variations of the Name

The jury concluded Redbubble contributorily infringed Brandy Melville's unregistered trademarks in the "Brandy Melville" name and variations of the name, including "brandymelvilleusa" and "brandymelvilleusa.com."  (Dkt. No. 193 at 3-4.) Redbubble fails to carry its burden under Rule 50 to disturb the jury's conclusion.[7]

The evidence shows that these variations are source identifying.   Contrary to Redbubble's   mischaracterizations,   the   Brandy   Melville   URL ("www.brandymelvilleusa.com") was not in "'***very*** small and ***subdued*** typeface'"[8] and is not merely an "informational statement" like a phone number or address— rather, it actually contains the Brandy Melville name in it (*e.g.*, TE408).  (*See* Dkt. No. 185 at 14 (emphasis added).)  And the Brandy LA variation, with the pink heart, resembles the Brandy Heart Mark and was marked "brandy melille" by Redbubble's own users.  (TE183; TE629.)

Moreover, as to all of these designs and variations, Brandy Melville did not rely on "self-serving testimony."  (Dkt. No. 185 at 13-14.)  Documentary evidence

---

[7] The Motion avers that Brandy Melville claimed rights to "BM" at trial.  (Dkt. No. 185 at 13.)  That is not true.  The verdict form, for example, makes no mention of "BM."  (Dkt. No. 193 at 3.)

[8] Indeed, the URL is clearly visible even from the infringing designs' thumbnails on the Redbubble store for user "Asha Tandon."  (TE403.)

shows that Redbubble's users used the Brandy Melville name to identify and tag these designs.  (*E.g.*, TE181, TE403, TE404, TE408, TE183 at 1-7.)

### E.    The Evidence Shows Redbubble Was Contributorily Infringing and Exercising Willful Blindness

An infringer's intent is a "quintessential issue of fact."  *California Expanded Metal Products Co. v. Klein*, 426 F. Supp. 3d 730, 750 (W.D. Wash. 2019).  Also generally reserved for a jury is whether an intent to induce infringement existed.  *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) (intent to induce infringement "is a factual determination particularly within the province of the trier of fact").

Redbubble incorrectly argues that it was not contributorily liable and did not willfully infringe Brandy Melville's trademarks *as a matter of law*.  (Dkt. No. 185 at 18-21, 22-24.)  These arguments effectively seek reconsideration of this Court's summary judgment order from last year.  (Dkt. No. 103 at 5-9.)  After a lengthy legal analysis of contributory infringement and relying on a record that was less fulsome than the evidence Brandy Melville presented at trial, this Court held that there "is a jury question" as to whether Redbubble engages in "willful blindness" that can be the basis for contributory liability.  (*Id.* at 9; *see also* Dkt. No. 36 at 18.)  "[A]ctual or constructive knowledge that the users of [Redbubble's] services were engaging in trademark infringement" is sufficient, *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011), and "'willful blindness is equivalent to actual knowledge for purposes of the Lanham Act,'" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109-10 (2d Cir. 2010).  Indeed, the Second Circuit confirmed this year that "a defendant may be held liable for contributory trademark infringement despite not knowing the identity of a specific vendor who was selling counterfeit goods, as long as the lack of knowledge was due to willful blindness."  *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 254 (2d Cir. 2021).

At trial, Brandy Melville provided substantial evidence of Redbubble's contributory infringement and willful blindness that Redbubble's Motion fails to acknowledge.  The evidence showed that Redbubble "generally do[es]n't go looking for similar works to remove from the marketplace" (TE065; Kelly Dec., Ex. 2 at 296:6-297:8), and Redbubble discourages users from reporting infringement (TE106 (instructing users to "resist the urge to go all vigilante crime-fighter" if they "see something on Redbubble that [they] think may infringe another's rights").). Redbubble also sent customers emails clearly identifying "Brandy Melville®" and "Brandy Melville" products (TE122, TE303, TE307; Kelly Dec., Ex. 2 at 300:7-301:10), as well as emails soliciting customers to "[l]ook" at "brandy melville stickers just for you" (TE301, TE302; Kelly Dec., Ex. 2 at 302:24-303:22).  And Redbubble sent congratulatory emails to people selling infringing Brandy Melville products on the Redbubble website.  (TE113; Kelly Dec., Ex. 2 at 318:14-319:19.)  In response to these emails, Redbubble's attorney testified that Redbubble did not bring these issues to his attention, that Redbubble "shouldn't be" "still sending out these Brandy Melville solicitations [emails]," and that he could not be certain that Redbubble had stopped.  (*E.g.*, Kelly Dec., Ex. 2 at 301:14-22, 303:23-304:2, 306:13-307:7, 319:20-23.)[9]  ***In fact, Redbubble's own witness testified that it was "probably" the case that "there are significant quantities of infringing goods on Redbubble's site as we sit here today in this trial."***  (Kelly Dec., Ex. 2 at 297:14-18 (emphasis added).)  And Redbubble's own annual report conceded that nearly a quarter of the products on the Redbubble website are from sellers that are not "authentic"—*i.e.*, the products are not "high-quality, original" designs.[10]  (TE287.)

---

[9] Indeed, Redbubble's emails with customers also acknowledged the sale of products for, *inter alia*, the show "Gossip Girl," celebrity "Blair Waldorf," the NFL "philadelphia eagles" team, and Team USA water polo.  (TE122; Kelly Dec., Ex. 2 at 311:1-312:12.)

[10] A reasonable juror, viewing the evidence and inferences in Brandy Melville's favor,

Brandy Melville sent Redbubble a notice letter on May 14, 2018 (TE010), but Redbubble's persistent infringement continued long after May 14, 2018 (*e.g.*, Kelly Dec., Ex. 2 at 317:4-318:13). Redbubble's contributory infringement and counterfeiting continued long after Brandy Melville filed its complaint—even just months before trial. (TE290, TE291, TE292, TE294, TE369, TE375, TE376, TE401, TE403, TE404, TE408, TE623, TE624, TE627.) And Redbubble did not even begin to attempt any proactive policing until May 31, 2019. (TE115; Kelly Dec., Ex. 2 at 315:1-316:7.) *See also Omega SA*, 984 F.3d at 255 ("[I]f the defendant decides to take no or little action, it will support a verdict finding liability.").

Redbubble further maintained its willful blindness by failing to give notice or warning about infringing or counterfeit Brandy Melville products to Redbubble's third-party manufacturers (Kelly Dec., Ex. 2 at 322:25-323:9) and customer service representatives (*id.* at 323:10-19). Redbubble also chose not to substantially increase the size of its content moderation team for Brandy Melville trademarks. (*Id.* at 323:25-324:3.)[11] *See also Omega SA*, 984 F.3d at 254-55 (recognizing that willful blindness can be evidenced by a defendant "tak[ing] insufficient steps to root out the counterfeiting it knew or should have known was occurring").

Redbubble could, but chose not to, block the Brandy Melville keyword that allows customers to quickly find infringing and counterfeit goods, even though some rights holders told Redbubble that such a measure had proven to be an effective way to stop the possibility of infringement on similar sites. (Kelly Dec., Ex. 2 at 324:24-

---

could conclude that sales of low-quality, unoriginal designs equates to infringing products.

[11] (*See also* Kelly Dec., Ex. 3 at 386:14-18, 399:18-25 (conceding that Redbubble only reviews 33% of the designs uploaded onto the Redbubble website and that, on average, about 12,000 designs that should be removed each day make their way onto the Redbubble website).) In fact, Redbubble spends only $2.5 million a year to keep infringing designs off its website when Redbubble's revenue in just 2019 was $307 million. (Kelly Dec., Ex. 2 at 329:7-9; Kelly Dec., Ex. 3 at 462:7-11.)

325:16.)  Such action could have been especially effective in this case because Redbubble's own internal research showed that the "Brandy Melville" keyword was one of the most effective keywords for converting Redbubble searches to potential purchases.  (Kelly Dec., Ex. 2 at 325:25-327:20; TE128.)

On this record, Redbubble cannot "show there is no legally sufficient evidentiary basis for a reasonable jury to have found as it did." *Strategic Partners*, 2017 WL 5951881, at *1.  The Motion cannot be granted and Redbubble is not "entitled to a determination of no willfulness as a matter of law." (Dkt. No. 185 at 24.)

## F.    Redbubble's Miscellaneous Arguments Lack Merit

Redbubble's throwaway arguments at the end of the Motion are meritless and do not warrant disturbing the jury's decision.

**The Evidence Did Not Show No Likelihood of Confusion as a Matter of Law.**  "Likelihood of confusion" is a "highly factual inquiry" that is usually reserved for a jury.  *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 994 F.3d 1107, 1118 (9th Cir. 2021).  Redbubble's confusion arguments ignore the record evidence.  (Dkt. No. 185 at 15-18.)  For example, evidence presented at trial showed a Redbubble customer being confused and asking Redbubble about Brandy Melville products only for Redbubble to then refer the customer to Redbubble's infringing and counterfeit products.  (Kelly Dec., Ex. 2 at 307:8-309:23; TE121.)  Redbubble's lawyer testified that this interaction would have warranted investigation if he had been made aware of it.  (*Id.* at 309:24-310:2.)  Brandy Melville's customer service team also received inquiries regarding confusion on the Redbubble site and inquired whether Redbubble was an authorized reseller of Brandy Melville products.  (Kelly Dec., Ex. 1 at 177:20-178:6.)

Redbubble further exacerbated the likelihood of confusion by, *inter alia*, soliciting customers with "brandy melville stickers" and facilitating transactions for "Brandy Melville®" products.  (*E.g.*, TE301, TE302, TE307.)  The likelihood of

confusion is also evidenced by a plain review of the designs on the Redbubble website, their use of the Brandy Melville name and keyword, and the similarity between Brandy Melville's designs and the designs on the Redbubble website. (*E.g.*, TE006, TE007, TE183, TE222, TE343, TE369, TE375, TE376, TE401, TE403, TE404, TE408, TE414, TE421, TE424.)  Indeed, this Court decided, based on less evidence than Brandy Melville presented at trial, that "there is a marked similarity between the" items Brandy Melville sells and the items on the Redbubble website. (Dkt. No. 103 at 12-15; *see also* TE006, TE007, TE110, TE183, TE222, TE375, TE376.)  Such a similarity coupled with, *inter alia*, Redbubble's efforts to divert "Brandy Melville" Internet traffic to the Redbubble website is likely to lead to actual confusion.  (TE189; Kelly Dec., Ex. 1 at 155:5-156:15.)

Redbubble's characterization of all this evidence as "self-serving testimony from [Brandy Melville's] agents" is baseless.  (Dkt. No. 185 at 16.)  Redbubble completely ignores the documentary evidence—mostly produced by Redbubble in this litigation—that was presented to the jury.  When similar products are sold in connection with the same mark, it would be clear error to hold as a matter of law that there is no likelihood of confusion.  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) ("Because the determination is based on a non-exhaustive, multi-factor, fact-intensive inquiry, [this Court has] *cautioned against granting summary judgment in these cases.*") (emphasis added).

**The Evidence Did Not Show Aesthetic Functionality as a Matter of Law.** Redbubble's aesthetic functionality argument (Dkt. No. 185 at 15) ignores the evidence, detailed above, showing that the trademarks—including those using the Brandy Melville name—are a source identifier.  And with respect to the registered trademarks, they are registered and inherently distinctive.  (TE006, TE007.) Redbubble's argument regarding the "brandy inspired" graphic for the LA Lightning Mark also misrepresents the evidence.  (Dkt. No. 185 at 15.)  Brandy Melville's claim is limited to "[t]he version [of the design] that our artist designed originally"; in no

way is Brandy Melville claiming that it is entitled to "a monopoly on the words 'Los Angeles 1984' and a lightning bolt." (Kelly Dec., Ex. 1 at 127:19-25.) Brandy Melville's witness made that clear to the jury at trial. (*Id.*)

Under *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1072-74 (9th Cir. 2006) (affirming finding that key chains and license plate covers featuring the Audi and Volkswagen logo were not aesthetically functional, even if consumers were drawn to the products because of the logo), there can be no reasonable debate that Redbubble's aesthetic functionality argument fails.

**Redbubble's Damages Arguments Lack Merit.** Neither of Redbubble's damages arguments carries its weight under Rule 50. (Dkt. No. 185 at 21.) *First*, Redbubble mischaracterizes the relevant "notice" dates for damages. The evidence shows that Redbubble had notice in 2015 that it was selling "Brandy Melville®" products. (TE307; Kelly Dec., Ex. 2 at 300:7-301:7.) A notice letter of infringement is sufficient to establish a defendant's knowledge. *E.g.*, *Delta Air Lines, Inc. v. Wunder*, No. 13-cv-3388, 2015 WL 11347586, at *10 (N.D. Ga. Dec. 28, 2015). Through Brandy Melville's letter, Redbubble had notice of the "brandymelvilleusa" and "brandymelvilleusa.com" marks on May 14, 2018. (TE010; Kelly Dec., Ex. 2 at 313:4-14.) And the Brandy Heart Mark's registration and LA Lightning Mark's registration were filed on July 7, 2016, and June 27, 2018, respectively. (TE006, TE007.) *Second*, Redbubble's mitigation argument ignores Brandy Melville's repeated requests for Redbubble to cease its infringement and counterfeiting. (*E.g.*, TE010, TE155, TE160.) Further, the jury's award of statutory damages that are in the six, rather than seven, figures arguably already accounts for Redbubble's mitigation argument.

**Brandy Melville Is Entitled to Profits.** The jury concluded Brandy Melville is entitled to $20,000 in Redbubble's profits attributable to contributory infringement. (Dkt. No. 193 at 4.) Redbubble argues that there is no evidence that it had the "culpable mental state" for the jury to find disgorgement of profits. (Dkt. No. 185 at

22.)  But the evidence shows otherwise.  As Brandy Melville detailed at summary judgment, proved at trial, and explained above, Redbubble intentionally employs a business model of willful blindness that ignores the counterfeiting and infringement that it facilitates on the Redbubble website.  (*E.g.*, Dkt. No. 36 at 18-19.)  *See also Omega SA*, 984 F.3d at 254-45.  There also is substantial evidence of Redbubble's infringement and counterfeiting occurring long after this case was filed and Redbubble had notice.  (*E.g.*, TE290, TE291, TE292, TE294, TE369, TE375, TE376, TE401, TE403, TE404, TE408, TE623, TE624, TE627.)  A jury could find, from this evidence, that Redbubble's state of mind was sufficiently culpable to warrant a profit award.  Regardless, as the Supreme Court recently held, a finding of willfulness is not a prerequisite to a profit award under the Lanham Act anyway.  *See Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S.Ct. 1492, 1497 (2020).

## IV.   <u>CONCLUSION</u>

Accordingly, this Court should deny Redbubble's Motion and leave the jury's reasonable and sufficiently supported decision undisturbed.


DATED:  July 1, 2021

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
    Keith J. Wesley
    Ryan Q. Keech
    Jason Y. Kelly


By:     */s/ Jason Y. Kelly*
       Jason Y. Kelly
Attorneys for Plaintiff
Y.Y.G.M. SA d.b.a. Brandy Melville

PLAINTIFF Y.Y.G.M. SA D.B.A. BRANDY MELVILLE'S OPPOSITION TO
DEFENDANT REDBUBBLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW