KENNETH B. WILSON  (SBN 130009)
 *ken@coastsidelegal.com*
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, California 94019
Tel: (650) 440-4211

JOSHUA M. MASUR  (SBN 203510)
 *jmasur@zuberlawler.com*
ZUBER LAWLER LLP
2000 Broadway Street, Suite 154
Redwood City, California 94063
Tel: (213) 596-5620 / Fax: (213) 596-5621

JEFFREY J. ZUBER  (SBN 220830)
 *jzuber@zuberlawler.com*
ZUBER LAWLER LLP
350 S. Grand Ave., 32nd Fl.
Los Angeles, California 90071
Tel: (213) 596-5620 / Fax: (213) 596-5621

JENNIFER C. KUHN (*Admitted Pro Hac Vice*)
 *jkuhn@zuberlawler.com*
ZUBER LAWLER LLP
100 Congress Avenue, Suite 2000
Austin, TX 78701
Tel: (512) 717-7430 / Fax: (213) 596-5621

Attorneys for Defendant
Redbubble Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>  Plaintiff,<br><br>v.<br><br>REDBUBBLE INC.,<br><br>  Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br><br>**DEFENDANT REDBUBBLE INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Trial Date:  June 22, 2021<br>Time:         11:00 a.m.<br>Crtrm.:        850 |

2911-1006 / 1839138

# TABLE OF CONTENTS

Page

I. NO REASONABLE JURY, APPLYING THE LAW AS INSTRUCTED, COULD FIND FOR PLAINTIFF ON ITS COUNTERFEITING CLAIM ................................................................... 1

    A. The Accused Products Cannot Qualify as "Counterfeits" ...................... 2

        1. LA Lightning: "Same Goods" and "Stitch for Stitch" ................. 2

        2. Brandy Heart: "Same Goods" and "Stitch for Stitch Copy" ........ 3

    B. No Evidence Supporting Knowledge or Intent of Direct Infringers ................................................................................................ 4

    C. No Evidence Supporting Likelihood of Confusion ............................... 4

    D. No Evidence Supporting Contributory Liability ................................... 6

    E. No Evidence Supporting Willful Infringement ..................................... 7

II. NO RECOVERY BEFORE PLAINTIFF PROVIDED NOTICE ................... 8

III. INSUFFICIENT LIKELIHOOD OF CONFUSION EVIDENCE ................... 9

    A. Plaintiff Has Waived Initial Interest Confusion ................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AMF Inc. v. Sleekcraft Boats,*
  599 F.3d 341 (9th Cir. 1979)..................................................................9, 10

*Arcona, Inc. v. Farmacy Beauty, LLC,*
  976 F.3d 1074 (9th Cir. 2020)..................................................................1, 2, 5

*Atari Interactive, Inc. v. Redbubble, Inc.,*
  --- F.Supp.3d ----, 2021 WL 2766893 (N.D. Cal. June 29, 2021) .....................1

*Atari Interactive, Inc. v. Redbubble, Inc.,*
  No. 18-CV-03451-JST, 2021 WL 706790 (N.D. Cal. Jan. 28, 2021) ..............6

*Cohn v. Petsmart, Inc.,*
  281 F.3d 837 (9th Cir. 2001).....................................................................9, 10

*Dille Fam. Tr. v. Nowlan Fam. Tr.,*
  207 F. Supp. 3d 535 (E.D. Pa. 2016) .............................................................2

*International Order of Job's Daughters v. Lindeburgh & Co.,*
  633 F.2d 912 (9th Cir. 1980)......................................................................10

*Kaloud, Inc. v. Shisha Land Wholesale, Inc.,*
  No. 15-3706-RGK, 2016 WL 7444600 (C.D. Cal. July 11, 2016)...................3

*Levi Strauss & Co. v. Shilon,*
  121 F.3d 1309 (9th Cir. 1997)......................................................................3

*LTTB LLC v. Redbubble Inc.,*
  385 F. Supp. 3d 916 (N.D. Cal. 2019) ........................................................6, 10

*Luvdarts, LLC v. AT&T Mobility, LLC,*
  710 F.3d 1068 (9th Cir. 2013)......................................................................6

*M2 Software, Inc. v. Madacy Ent.,*
  421 F.3d 1073 (9th Cir. 2005)......................................................................10

*Multi Time Machine, Inc. v. Amazon.com, Inc.*
  804 F.3d 930 (9th Cir. 2015)......................................................................10

*Playboy Ents. v. Netscape Commc'ns,*
  354 F.2d 1020 (9th Cir. 2004)......................................................................9

*Romag Fasteners Inc. v. Fossil Group, Inc.,*
  590 US __ (2020) ........................................................................................8

*Silberstein v. Fox Ent't Group, Inc.,*
  424 F. Supp. 2d 616 (S.D.N.Y. 2004)...........................................................3

**Statutes**

15 U.S.C. § 1111 .................................................................................................... 8

**Rules**

Fed. R. Evid. 1002 ................................................................................................. 4

**Treatises**

3 MCCARTHY ON TRADEMARKS AND UNFAIR COMP. § 19:144 (5th ed.) ..................... 8

**Regulations**

Trademark Manual of Examination Procedure § 1202.03(a) ............................ 5, 10

Trademark Manual of Examination Procedure §1401.02(a) ................................. 3

# I. NO REASONABLE JURY, APPLYING THE LAW AS INSTRUCTED, COULD FIND FOR PLAINTIFF ON ITS COUNTERFEITING CLAIM

Plaintiff's attempt to justify the jury's verdict that Redbubble willfully counterfeited the LA Lightning and Brandy Heart marks ignores or mischaracterizes the evidence of record and the relevant legal standards. Indeed, Plaintiff's Opposition omits any mention of either the jury instructions or the recent opinion in *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074 (9th Cir. 2020), clarifying the legal standards for counterfeiting and thus the availability of statutory damages.

This Court correctly instructed the jury that Redbubble could only be liable for counterfeiting if the jury first found contributory liability, and further determined 1) the mark "is registered … for, and used by the [trademark owner] in connection with, the same goods" as the alleged counterfeit; 2) the alleged counterfeit is "a 'stitch for stitch copy' of plaintiff's own products when viewed in the marketplace, including its packaging, such that a consumer would be tricked into believing that the counterfeit is actually one of plaintiff's products"; 3) "the alleged direct infringer knew that the mark was a counterfeit" and "intentionally used" it; and 4) such use "was likely to cause confusion, mistake or to deceive." (Instr. No. 23.) And to award enhanced statutory damages for willful counterfeiting, the jury was instructed that it must also find that "Redbubble acted voluntarily and intentionally and with the specific intent to perform the act." The record lacks sufficient evidence to support the verdict on any one of these issues, let alone all of them.[1]

---

[1] Even if an award of statutory damages were warranted, the amount of damages awarded is grossly excessive, given the requirement that statutory damages bear a "plausible relationship to … actual damages" and not provide a claimant with a windfall. *Atari Interactive, Inc. v. Redbubble, Inc.*, --- F.Supp.3d ----, 2021 WL 2766893, at *4 (N.D. Cal. June 29, 2021). There were no sales of arguably counterfeit LA Lightning or Brandy Hearts products; no "infringer's profits"; and no evidence of damage to Plaintiff. Redbubble had no opportunity to raise this issue in its Motion, since it was filed at the close of evidence and before the verdict. However, in the event the Court denies this Motion, Redbubble intends to address this issue in more detail pursuant to Rule 50(b) and/or Rule 59.

### A. The Accused Products Cannot Qualify as "Counterfeits"

#### 1. LA Lightning: "Same Goods" and "Stitch for Stitch"

The LA Lightning registration specifies only one field of use: "Clothing, namely, t-shirts, tank tops, and sweatshirts." TE7 at 1. And the record contains evidence of only a single post-notice clothing listing depicting an LA Lightning image, offered by "haleyshore." TE375 (the "Accused LA Lightning Listing"); *accord* DE#199 at 5. Accordingly, the Accused LA Lighting Listing is the only possible basis for a counterfeiting verdict. But there was no evidence to support a finding that the Accused LA Lightning Listing, "viewed in the marketplace, including its packaging," is a "stitch for stich copy" such that a consumer "would be tricked into believing" that the listing was one of plaintiff's products. Indeed, the listing page states that the listed items were "Designed by haleyshore," not Plaintiff. TE375. The listing page bears Redbubble's house mark, while Plaintiff sells its own LA Lightning products exclusively through its own branded stores or website. Tr. at 180:4-10. Products sold through the Redbubble Marketplace typically ship in Redbubble packaging (TE172 at 1; TE173 at 2; TE296 at 1), but Plaintiff introduced no evidence of its own packaging. (*See* Instr. No. 23.) The record therefore provides no basis for the jury to find that the Accused LA Lightning Listing was a stitch for stitch copy of Plaintiff's products. *See Arcona*, 976 F.3d at 1081.

Nor could the jury have properly determined that the accused products were counterfeits of Plaintiff's products when "viewed in the marketplace" because as Plaintiff has repeatedly argued, products offered through the Redbubble Marketplace "come into being only when ordered." [*See, e.g.,* DE#144 at 1, 5, 7-8.] But the only order ever placed in connection with the Accused LA Lightning Listing (by Plaintiff's counsel) was cancelled as soon as Redbubble learned of it, before any product could be made. Tr. at 427:25-428:10. Because there was no counterfeit product, there can be no liability. *Dille Fam. Tr. v. Nowlan Fam. Tr.*, 207 F. Supp. 3d 535, 542 (E.D. Pa. 2016) ("'there can be no confusion as to the source of a

product,'—and thus no Lanham Act claim—'if there is no product'"); *Silberstein v. Fox Ent't Group, Inc.*, 424 F. Supp. 2d 616, 633 (S.D.N.Y. 2004) (same).[2]

### 2. Brandy Heart: "Same Goods" and "Stitch for Stitch Copy"

The record does not support the jury's determination that Redbubble counterfeited Plaintiff's Brandy Heart logo, because no purported counterfeits were "stitch for stitch copies" of Plaintiff' products. The Opposition does not and cannot directly compare any such products, instead suggesting that the Court resolved this issue at summary judgment. However, the Court denied *both* parties' motions on counterfeiting of the Brandy Heart logo because it "lack[ed] sufficiently detailed evidence to make judgments regarding the similarity of items such as the wall hangings offered on Redbubble to any decorative items that Brandy Melville has actually offered for sale," deferring resolution of this issue for trial. DE#103 at 15. Because Plaintiff did not offer any evidence at trial that it "has actually offered for sale" *any* decorative items, let alone items that are "stitch for stitch" identical to any alleged counterfeit, the Court's instructions precluded finding counterfeiting.

Moreover, as is apparent from the face of the Brandy Heart registration certificate (TE6), wall hangings like those referenced in the summary judgment order are outside the registered classes as a matter of law. Fabric wall hangings are in class 24, while metal wall hangings like those depicted in TE183 are in class 27, neither of which are listed in the Brandy Heart registration. TMEP §1401.02(a). Such products therefore cannot serve as the basis for a counterfeiting claim. *See Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 15-3706-RGK, 2016 WL 7444600, at *2 (C.D. Cal. July 11, 2016) (counterfeit mark must be applied to "the same [type of] product" as in the registration), *aff'd*, 741 F. App'x 393 (9th Cir. 2018).

Plaintiff claims that it presented evidence that "the Brandy Heart Mark was

---

[2] Plaintiff's citation to *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309 (9th Cir. 1997), is inapposite; there, at least some units of the allegedly infringing products existed, and defendant actually provided plaintiff's investigator with samples of such products as part of his offer to sell them. *Id.* at 1311.

2911-1006 / 1839138　　　　　　　　　　3

1 available on the Redbubble website for sale on 'mugs, T-shirts and hats,'" citing TE183. (DE#199 at 6.) But most listings in TE183 do not show the registered "Brandy Heart" logo, including "Brandy" and "Melville" and a pink heart (TE6); they depict either a "Brandy *LA*" design, or a black heart with the words "Brandy Melville" inside of it. TE183 does not show mugs, T-shirts or hats with the Brandy Heart logo. And while Plaintiff's witness summarily testified (in violation of Fed. R. Evid. 1002) that he saw the logo on mugs, T-shirts and hats on the Marketplace, Plaintiff did not offer evidence of the appearance or packaging evidence of its products, precluding showing that accused products are "stitch for stitch copies" thereof. Indeed, Plaintiff's two witnesses testified either that they were "not certain" that Plaintiff had used the Brandy Heart logo on any apparel, or "haven't seen [any] since I have been there." Tr. at 165:25-166:3, 285:7-10.

Finally, Plaintiff misleadingly suggests that it "uses the Brandy Heart mark *in conjunction with* stickers," because it uses the Brandy Heart mark in its stores, where it hands out stickers bearing other designs. DE#199 at 7. But there is no evidence that Plaintiff ever placed the Brandy Heart mark *on stickers*, and its witnesses testified to the contrary. Tr. at 183:17-25, 285:7-10. Plaintiff's failure to introduce evidence of its own stickers prevented comparison with the accused stickers to determine "stitch for stitch" copying. The absence of evidence is fatal.

### B. No Evidence Supporting Knowledge or Intent of Direct Infringers

There is no evidence from which the jury could find that any purported direct infringer "knowing[ly]" used a counterfeit LA Lightning or Brandy Heart mark with the intent to deceive, per Instruction No. 23. Indeed, there is no evidence about any specific direct infringers other than their names and locations, and certainly no evidence regarding their state of mind. By ignoring this issue altogether, Plaintiff's Opposition essentially concedes this point, which separately supports JMOL.

### C. No Evidence Supporting Likelihood of Confusion

There was no evidence that consumers viewing listings for any purportedly

counterfeit LA Lightning or Brandy Heart products were likely to be confused or deceived as to the source of *those products*. The Court instructed that likelihood of confusion could be found if "a substantial number of consumers believe that the [purported counterfeits] are produced by Plaintiff." However, there is no evidence that anyone other than employees of Plaintiff's law firm even saw the Accused LA Lightning Listing. And Plaintiff's paralegal unequivocally affirmed that she was not confused. Tr. at 225:15-21. Evidence is similarly lacking regarding purportedly counterfeit Brandy Heart products. The Court also instructed that likelihood of confusion can be found where the *Sleekcraft* factors indicate that "the plaintiff sponsors or approves of the direct infringer's goods or services," but there was no evidence of actual confusion regarding the two registered marks, the strength of the marks or "secondary meaning." There is no overlap in marketing channels, given Plaintiff's exclusive sale through its stores and website. Tr. at 180:4-10. There is no evidence that Redbubble knew of, let alone intended to enable access to, listings advertising the alleged counterfeits; to the contrary, when Redbubble learned of the Accused LA Lightning Listing, it was immediately removed. Tr. at 427:25-428:10. And again, products offered through the Marketplace specify that they are "Designed by" a third-party seller, not Plaintiff; the listings include Redbubble's house marks, not Plaintiff's; and are shipped in packaging with Redbubble's branding, not Plaintiff's. Combined with these other factors, the use of separate labels, house marks and packaging precludes a counterfeiting finding. *See Arcona*, 976 F.3d at 1081 ("it is implausible that a consumer would be deceived because the products had their respective housemarks … prominently on the packaging").

Finally, the Accused LA Lightning Listing used the image emblazoned across the front of the garments. [TE375] However, such usage is generally deemed ornamental, not source identifying, and is therefore not likely to cause confusion. *See* TMEP § 1202.03(a) ("A small, neat, and discrete word or design feature … may be likely to create the commercial impression of a trademark, whereas a larger

rendition of the same matter emblazoned across the front of a garment … may be perceived merely as a decorative or ornamental feature of the goods); *LTTB LLC v. Redbubble Inc.*, 385 F. Supp. 3d 916 (N.D. Cal. 2019), *aff'd* 840 F. App'x 148 (9th Cir. 2021) (garments prominently displaying mark were not source-identifying and could not create likelihood of confusion). Indeed, the PTO initially refused to register the LA Lightning Mark based on a specimen with the mark across the front of a garment because the mark was "used in a merely decorative manner that would be perceived by consumers as having little or no particular source-identifying significance." [RJN Ex. B.] While the PTO ultimately issued the registration after Plaintiff submitted a substitute with a small version of the design, its initial refusal reinforces the impropriety of the jury's counterfeiting verdict on this mark.

### D. No Evidence Supporting Contributory Liability

There was no evidence (and Plaintiff has not argued) that Redbubble received notice of specific listings for the allegedly counterfeit products that it refused to remove, or received notice of specific infringers and thereafter provided services that allowed them to continue to infringe. Instead, Plaintiff bases its contributory infringement argument on willful blindness, which requires both that Redbubble "subjectively believed that infringement was likely occurring" and "took deliberate actions to avoid learning about the infringement." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013). Mere "indifferen[ce] to the risk" of infringement is legally insufficient. *Id.* There is simply no evidence that Redbubble turned a blind eye to infringement under this standard. *Atari Interactive, Inc. v. Redbubble, Inc.*, No. 18-CV-03451-JST, 2021 WL 706790 (N.D. Cal. Jan. 28, 2021) (granting summary judgment for Redbubble on willful blindness, and holding that "[g]iven that use of trademarked content is difficult to detect without input from the trademark owners, Atari fails to show that Redbubble's process is unreasonable").

Instead of addressing the relevant case law, Plaintiff suggests that this Court already found on summary judgment that "there 'is a jury question'" as to willful

blindness (DE#199 at 12), but the Court's holding was actually quite narrow:

> Redbubble could hypothetically maintain a state of "willful blindness" simply by understaffing its marketplace integrity organization relative to the amount of content on its site. This would allow such a company to simultaneously claim that its employees were doing everything in their limited power to prevent the sale of infringing products, while also enjoying the benefit of substantial revenue from the many infringing sales they were unable to catch.

DE#103 at 9. No evidence of such understaffing was adduced, however. Instead, the evidence showed that Redbubble tasked specific team members with reviewing all listings that used tags matching policing guidelines for Plaintiff's marks, so they would develop particular expertise. *See, e.g.*, Tr. at 380:16-381:17; TE115 (policing guidelines). Contrary to Plaintiff's suggestion, there was no evidence that the specific team was understaffed, or somehow lacked the capacity to review every listing whose tags suggested that it might relate to Plaintiff's marks. *Compare* Tr. at 323:25-324:3 (discussing size of content moderation team as a whole) *with* DE#199 at 14 (mischaracterizing testimony as related to team for Plaintiff's marks).

Plaintiff also erroneously focuses on TE128, which it claims shows "that the 'Brandy Melville' keyword was one of the most effective keywords for converting Redbubble searches to potential purchases." DE#199 at 15. Plaintiff ignores that there was never any testimony from a *witness* about what that exhibit meant – only statements of Plaintiff's counsel, which the Court instructed the jury was *"just not evidence*." Tr. at 327:21-328:5; 454:11-18. Thus, neither this Exhibit nor any other evidence submitted by Plaintiff can be deemed sufficient to support the jury's finding of contributory liability.

### E. No Evidence Supporting Willful Infringement

Finally, even if there had been evidence of contributory counterfeiting, there is no evidence of additional willful misconduct. As the Court instructed, willful infringement requires proof that Redbubble "acted voluntarily and intentionally with the specific intent to commit the act" of counterfeiting. The Supreme Court in

*Romag Fasteners Inc. v. Fossil Group, Inc.*, 590 US __ (2020) (slip op. at 3-4) observed that "[w]ithout doubt, the Lanham Act exhibits considerable care with *mens rea* standards. The absence of any such standard…seems all the more telling." Importing *mens rea* standards from one part of trademark law to another, with no basis in the statutory language, was explicitly rejected in *Romag*. Slip op at 4. Thus any proof of Redbubble's *mens rea* must link directly back to the statutory language of the Lanham Act. Here, there is no evidence that Redbubble was aware of the Accused LA Lightning Listing until Plaintiff brought it to Redbubble's attention. Once that happened, Redbubble immediately disabled the listing, terminated the seller and cancelled the Order. As a result of Redbubble's prompt actions, there were no sales of any purported counterfeits.

Ignoring *Romag*, Plaintiff spends four pages arguing that Redbubble was willfully blind regarding the unregistered Brandy Melville *word mark* used as a tag, without ever mentioning the two registered marks. But that unregistered mark is not the subject of the counterfeiting claim, and willfulness is only relevant to enhanced statutory damages for counterfeiting. Because Plaintiff offered no evidence of willful behavior directed at the registered marks, the verdict cannot stand.

## II. NO RECOVERY BEFORE PLAINTIFF PROVIDED NOTICE

Plaintiff asserts that Redbubble gained actual notice of Plaintiff's marks when a third party used "Brandy Melville®" in a product title years ago. DE#199 at 17 (citing TE307). Plaintiff never raised this theory before trial [*see, e.g.*, DE#115, DE#159 at 31; DE#152-1 at 6], and the Court did not instruct the jury about any requirements for actual notice. The phrase "Brandy Melville" is not registered; indeed, that application is "dead." [Tr. at 332:22-335:22; RJN Ex. D.] A finding that a *false* marking by *anyone* can create notice would be unprecedented. And Plaintiff cites no authority that notice from anyone but the trademark holder is effective. *Cf.*, 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMP. § 19:144 (5th ed.) (15 U.S.C. § 1111 "unequivocally states that … the trademark registrant must give … either …

'statutory notice' … or … 'actual notice' to the prospective defendant").

As the Court instructed (Instr. No. 24), the relevant profits are Redbubble's gross revenue, less its payments to users and fulfillers, after May 28, 2019 for the LA Lightning mark, and after May 14, 2018 for all other marks. That total was $1,631.49, against gross revenue of $4,015.04. (Tr. at 433:14-17.)

### III. <u>INSUFFICIENT LIKELIHOOD OF CONFUSION EVIDENCE</u>

Plaintiff ignores the trial testimony of its own witnesses and the legal standard required to establish actual confusion under *AMF Inc. v. Sleekcraft Boats,* 599 F.3d 341, 348-49 (9th Cir. 1979). Proof of "actual confusion among significant numbers of consumers" is persuasive evidence of likelihood of confusion. *Playboy Ents. v. Netscape Commc'ns*, 354 F.2d 1020, 1026 (9th Cir. 2004). Ms. Elkins, who had day-to-day contact with customers during her nine year career at Brandy Melville US, never received a counterfeit return, and never heard of any other Brandy Melville employee receiving one. (Tr. at 258:1-14, 278:8-23.) Plaintiff's own witness testified that she was not confused on the Redbubble site. (Tr. at 229:19-21.) After years of alleged infringement, some evidence of actual confusion "should have become available if [the accused infringer's] use had created a genuine likelihood of confusion." *Cohn v. Petsmart, Inc.*, 281 F.3d 837 (9th Cir. 2001). No reasonable juror could have found that a single ambiguous Redbubble chat transcript (TE121) and ambiguous hearsay testimony about an unknown number of possible calls to customer service showed an actual confusion in Brandy Melville's passionate customer base. (Tr. at 116:7, 195:13.)

Plaintiff argues that "a plain review of the designs" is conclusive, but ignores other *Sleekcraft* factors. *See* 599 F.3d at 348-49. Even when marks are similar or identical, consistently using a distinctive house mark (in this case, "Redbubble") mitigates the likelihood of confusion. *Cohn*, 281 F.3d at 842 (no likelihood of confusion due to house marks). The "degree of consumer care" *Sleekcraft* factor also heavily weighs towards granting this motion. Brandy Melville's "customers or

fan base know the brand. They know what they are coming to shop for. They know that each style is in one size." (Tr. at 275:11-13). These are consumers who exhibit a high degree of care and are "are likely to perceive the difference" between one-size LA Lightning products for women (TE222) and multi-size Redbubble listings for both women and men (TE375). Further, these attentive customers would see the Redbubble house mark and creator names on every page. (TE401, 403, 404). *Cohn*, 281 F.3d at 843 (attentive customers more likely to perceive differences in use).

As for *Sleekcraft*'s strength of the mark factor, the Lightning application was rejected for ornamental use. (RJN Ex. B.) The rejected specimen is TE222, the same shirt allegedly counterfeited. (RJN, Ex. A at 7.) The PTO found that the Lightning logo on the front of the shirt "does not function as a trademark to indicate the source of the applicant's clothing and to identify and distinguish applicants clothing from others." (RJN Ex. B.) Plaintiff overcame the rejection by submitting additional specimens to the USPTO, including TE221. (RJN Ex. C; TMEP § 1202.03(a).) TE222 is *ornamental*, not source-identifying. *See Int'l Order of Job's Daughters v. Lindeburgh & Co.*, 633 F.2d 912 (9th Cir. 1980); *LTTB*, 385 F.Supp.3d at 920-22.

### A. Plaintiff Has Waived Initial Interest Confusion

Plaintiff waived initial interest confusion as it failed to respond to any of the arguments in the Motion. *See M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1083 (9th Cir. 2005) (argument or evidence not raised in opposition is waived). The uncontroverted evidence shows that the tag "brandy melville" was always used along with Redbubble's house mark (TE290-92, 401, 403, 404), which, along with the name of the image creators, dispels any possible initial interest confusion. *Multi Time Machine, Inc. v. Amazon.com, Inc.* 804 F.3d 930, 937 (9th Cir. 2015).

Dated: July 8, 2021.

COASTSIDE LEGAL
KENNETH B. WILSON

ZUBER LAWLER LLP
JOSHUA M. MASUR
JENNIFER C. KUHN

By: */s/ Joshua M. Masur*
Attorneys for Defendant Redbubble Inc.