BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Ryan Q. Keech (State Bar No. 280306)
  rkeech@bgrfirm.com
Jason Y. Kelly (State Bar No. 274144)
  jkelly@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone:  (310) 274-7100
Facsimile:  (310) 275-5697

Attorneys for Plaintiff
Y.Y.G.M. SA d.b.a. Brandy Melville

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>            Plaintiff,<br><br>      vs.<br><br>REDBUBBLE, INC., a Delaware corporation,<br><br>            Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br>Hon. R. Gary Klausner<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:            September 7, 2021<br>Time:            9:00 a.m.<br>Courtroom:    850<br><br>PTSC Date.:    May 24, 2021<br>Trial Date:     June 17. 2021 |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES,
AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at 9:00 a.m. on September 7, 2021, or as soon thereafter as the matter may be heard, in Courtroom 850 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012, plaintiff Y.Y.G.M. SA d.b.a. Brandy Melville ("Plaintiff" or "Brandy Melville"), will and hereby does move this Court for a permanent injunction, as well as an award of attorney's fees and pre-judgment interest against Defendant Redbubble, Inc. ("Defendant" or "Redbubble").

This Motion is brought pursuant to 15 U.S.C. section 1116(a), which authorizes injunctions, as well as 15 U.S.C. section 1117(a), which authorizes an award of attorney's fees and case law that authorizes pre-judgment interest.  The Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Keith J. Wesley and the exhibits attached thereto, the proposed order, the files in this action, any oral argument, and all other matters properly presented to the Court prior to its ruling.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 3, 2021.

Dated:  August 10, 2021

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
   Keith J. Wesley
   Ryan Q. Keech
   Jason Y. Kelly

By     */s/  Keith J. Wesley*
       Keith J. Wesley

Attorneys for Plaintiff
Y.Y.G.M. SA d.b.a. Brandy Melville

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ............................................................................... 1

II.    RELEVANT FACTS AND PROCEDURAL HISTORY. ........................ 3

III.    ARGUMENT ..................................................................................... 3

    A.    This Court Should Grant Brandy Melville's Request for a Permanent Injunction. ..................................................... 3

        1.    Irreparable harm.......................................................... 4

        2.    No adequate remedy at law ......................................... 5

        3.    Balance of hardships................................................... 5

        4.    Public interest ............................................................. 5

    B.    This Court Should Grant Brandy Melville's Request for Attorney's Fees. .......................................................... 5

        1.    The Lanham Act authorizes a fee award in "exceptional cases" ................................................ 5

        2.    Brandy Melville would have been entitled to a fee award under the prior more stringent "exceptional" standard ............... 6

        3.    Brandy Melville should be awarded fees under the less stringent "exceptional" standard now in force ........................... 6

        4.    A finding of a willful violation creates at the least strong grounds in favor of a fee award ....................................... 6

        5.    Additional relevant factors support a fee award........................... 8

            a.    Brandy Melville achieved substantial success .................. 8

            b.    Redbubble's defense was objectively unreasonable from a legal perspective ....................................... 9

            c.    Redbubble's defense was objectively unreasonable from a factual perspective ................................. 10

            d.    A fee award would advance considerations of compensation and deterrence ........................................... 13

        6.    The amount of Brandy Melville's requested fees is reasonable ..................................... 14

            a.    Brandy Melville's counsel billed reasonable hours ......... 14

            b.    Brandy Melville's counsel's hourly rates are

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

**Page**

            reasonable, as other judges, including in this district, have found ........................................................................ 15

        c.    Conclusion:  Brandy Melville's Total Requested Fees Are Reasonable ...................................................... 16

    C.    This Court Should Award Pre-Judgment Interest at the Rate Set Forth in 26 U.S.C. § 6621(a)(2), Compounded From the First Date of Infringement .......................................................... 16

IV.    CONCLUSION ........................................................................ 19

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Am. Auto. Ass'n, Inc. v. Best Value Inn Oasis of Eden*,
  No. 12-cv-1303, 2012 WL 13012711 (C.D. Cal. July 10, 2012) ........................ 11

*Am. Honda Motor Co., Inc. v. Two Wheel Corp.*,
  918 F.2d 1060 (2d Cir. 1990) ........................................................................ 17

*Am. Mill Co. v. Brennan Marine, Inc.*,
  623 F.3d 1221 (8th Cir. 2010) ....................................................................... 19

*Amusement Art, LLC v. Life is Beautiful, LLC*,
  No. 14-cv-8290, 2017 WL 2259672 (C.D. Cal. May 23, 2017), *aff'd in part, vacated in part, remanded*, 768 F. App'x 683 (9th Cir. 2019) ................... 15

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
  No. 13-cv-5167, 2016 WL 6661178 (C.D. Cal. Jan. 25, 2016) .......................... 17

*Arcona, Inc. v. Farmacy Beauty, LLC*,
  976 F.3d 1074 (9th Cir. 2020) ......................................................................... 8

*Arista Records, Inc. v. Beker Enterprises, Inc.*,
  298 F. Supp. 2d 1310 (S.D. Fla. 2003) ............................................................ 12

*Armstrong v. Charlotte Cty. Bd. of Cty. Com'rs*,
  273 F. Supp. 2d 1312 (M.D. Fla. 2003) ........................................................... 18

*Assoc. Against Discrimination in Employ. v. Bridgeport*,
  572 F. Supp. 494 (D. Conn. 1983) .................................................................. 18

*Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ......................................................................... 9

*Autodesk, Inc. v. Flores*,
  No. 10-cv-1917, 2011 WL 337836 (N.D. Cal. Jan. 31, 2011) .......................... 10

*Barnes v. Sea Hawaii Rafting, LLC*,
  No. 13-cv-2, 2018 WL 4854662 (D. Haw. Oct. 5, 2018) ................................... 7

*Big Bus Tours Ltd. v. Half Price Tour Tickets, LLC*,
  No. 12-cv-21579, 2012 WL 13014655 (S.D. Fla. Nov. 26, 2012) ..................... 12

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*BMW of N. Am., LLC v. Rocco*,
   No. 19-cv-9285, 2020 WL 7047318 (C.D. Cal. Nov. 18, 2020)...........................5

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
   513 F. Supp. 2d 1 (S.D.N.Y. 2007) ......................................................19

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,
   No. 06-cv-01848, 2009 WL 160235 (S.D. Cal. Jan. 20, 2009)..........................16

*Car-Freshner Corp. v. Valio, LLC*,
   No. 14-cv-1471, 2016 WL 7246073 (D. Nev. Dec. 15, 2016).............................5

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986) ..........................................................14

*Choice Hotels Int'l, Inc. v. Kumar & Birla, LLC*,
   No. 11-cv-5100, 2013 WL 12097438 (E.D. Wash. Jan. 14, 2013).......................12

*Columbia Brick Works, Inc. v. Royal Ins. Co. of Am.*,
   768 F.2d 1066 (9th Cir. 1985) ..........................................................19

*Curves Int'l, Inc. v. Nash*,
   No. 11-cv-425, 2013 WL 3872832 (N.D.N.Y. July 25, 2013) ...........................11

*Dreiling ex rel. Infospace, Inc. v. Jain*,
   281 F. Supp. 2d 1234 (W.D. Wash. 2003) ..............................................19

*Dunn & Fenley, LLC v. Allen*,
   No. 02-cv-1750, 2007 WL 2973549 (D. Or. Oct. 9, 2007)............................7, 10

*Eldorado Stone LLC v. Renaissance Stone*,
   No. 04-cv-2562, 2007 WL 3308099 (S.D. Cal. Oct. 24, 2007) ..........................16

*Fischer v. SJB-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ..........................................................14

*Ford v. Alfaro*,
   785 F.2d 835 (9th Cir. 1986) ...........................................................16

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ..........................................................16

1

2

### TABLE OF AUTHORITIES
#### (Continued)

<u>Page</u>

3

*Frazier v. Se. Penn. Transp. Auth.*,
    814 F. Supp. 11 (E.D. Pa. 1993)................................................................18

4

5

*Glacier Films (USA), Inc. v. Turchin*,
    896 F.3d 1033 (9th Cir. 2018) ................................................................13

6

7

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
    874 F.2d 431 (7th Cir. 1989)................................................................17

8

9

*Great S. Co. v. Irvin*,
    No. 92-cv-5466, 1995 WL 23031 (N.D. Ill. Jan. 19, 1995) ...................... 8, 13

10

11

*Gucci Am., Inc. v. Guerrero*,
    No. 07-cv-7898, 2008 WL 11336190 (C.D. Cal. Nov. 4, 2008)........................11

12

13

*Hawkins-Dean v. Metro. Life Ins. Co*,
    No. 03-cv-1115, 2007 WL 2735684 (C.D. Cal. Sep. 18, 2007) ....................15

14

15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................14

16

17

*In re Barboza*,
    545 F.3d 702 (9th Cir. 2008) ................................................................10

18

*In re Oil Spill by the Amoco Cadiz Off the Coast of France on March 16, 1978*, 954 F.2d 1279 (7th Cir. 1992)................................................16

19

20

*In re Schwartz-Tallard*,
    803 F.3d 1095 (9th Cir. 2015) ................................................................7

21

22

*James v. Group Life & Health Benefits Plan*,
    No. 11-cv-51, 2014 WL 4684885 (D. Or. 2014)................................18

23

24

*Jerra v. United States*,
    No. 12-cv-1907, 2018 WL 1605563 (C.D. Cal. Mar. 29, 2018)........................18

25

26

*Jordan v. Multnomah Cty.*,
    815 F.2d 1258 (9th Cir. 1987) ................................................................15

27

28

*Jurgens v. CBK, Ltd.*,
    80 F.3d 1566 (Fed. Cir. 1996) ................................................................7

v

No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Kolstad v. Am. Dental Ass'n*,
   527 U.S. 526 (1999) .................................................................. 7

*Kroll-O'Gara Co. v. First Defense Int'l, Inc.*,
   No. 99-cv-4899, 2000 WL 369721 (S.D.N.Y. Apr. 11, 2000) ..................... 10, 12

*Lee v. Mike's Novelties, Inc.*,
   No. 10-cv-2225, 2014 WL 12696891 (C.D. Cal. Mar. 26, 2014) ................... 7

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ...................................................... 6

*United States ex rel. Macias v. Pac. Health Corp.*,
   No. 12-cv-960, 2016 WL 8722639 (C.D. Cal. Oct. 7, 2016) ..................... 19

*Magnuson v. Video Yesteryear*,
   85 F.3d 1424 (9th Cir. 1996) ...................................................... 13

*Maljack Productions, Inc. v. Good Times Home Video Corp.*,
   81 F.3d 881 (9th Cir. 1996) ....................................................... 8

*MetroPCS v. Devor*,
   215 F. Supp. 3d 626 (N.D. Ill. 2016) ............................................. 12

*Nelson v. EG&G Energy Measurements Group, Inc.*,
   37 F.3d 1384 (9th Cir. 1994) ................................................... 17, 18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ............................................................... 6

*Pac. Mut. Life Ins. Co. v. Haslip*,
   499 U.S. 1 (1991) ................................................................. 7

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. 11-cv-7098, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ................... 15

*Price v. Stevedoring Servs of Am., Inc.*,
   697 F.3d 820 (9th Cir. 2012) ...................................................... 18

*S.E.C. v. Platforms Wireless International Corp.*,
   617 F.3d 1072 (9th Cir. 2010) ..................................................... 18

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*S.E.C. v. World Info. Tech., Inc.*,
  590 F. Supp. 2d 574 (S.D.N.Y. 2008) ..................................................... 18

*SAS v. Sawabeh Info. Servs. Co.*,
  No. 11-cv-4147, 2015 WL 12763541 (C.D. Cal. June 22, 2015) ......................... 7

*Smith v. Chanel, Inc.*,
  402 F.2d 562 (9th Cir. 1968) ................................................................. 9

*Strategic Partners, Inc. v. Vestagen Protective Techs., Inc.*,
  No. 16-cv-5900, 2018 WL 6038275 (C.D. Cal. Jan. 17, 2018) ........................ 15

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
  839 F.3d 1179 (9th Cir. 2016) (en banc) .......................................... 6, 7, 8

*Termine ex rel. Termine v. William S. Hart Un. High Sch. Dist.*,
  288 F. App'x 360 (9th Cir. 2008) ......................................................... 18

*Tiffany & Co. v. Costco Wholesale Corp.*,
  No. 13-cv-1041, 2019 WL 120765 (S.D.N.Y. Jan. 7, 2019) ............................ 8

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) ............................................................... 10

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) ........................................................ 14, 15

*Utd. Phosporus, Ltd. v. Midland Fumigant, Inc.*,
  205 F.3d 1219 (10th Cir. 2000) ........................................................... 16

*W. Pac. Fisheries, Inc. v. SS President Grant*,
  730 F.2d 1280 (9th Cir. 1984) ...................................................... 17, 18

*Zaby v. Perfection Collection, LLC*,
  No. 19-cv-539, 2019 WL 5067184 (D. Nev. Oct. 9, 2019) ............................. 7

**FEDERAL STATUTES**

15 U.S.C. § 1116(a) ..........................................................................ii, 3, 4

15 U.S.C. § 1117(a) ....................................................................*passim*

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page</u>

15 U.S.C. § 1117(c)(1) ................................................. 9

15 U.S.C. § 1125.......................................................*passim*

17 U.S.C. § 101............................................................ 11, 12

26 U.S.C. § 6621(a)(2) ................................................ 16, 18

28 U.S.C. § 1961.......................................................... 17, 18

35 U.S.C. § 1.................................................................. 6

Consolidated Appropriations Act of 2021, Pub.L. 116-260, Div. Q, Title II,
    § 226(a), Dec. 27, 2020, 134 Stat. 2208 ................................... 4

## <u>RULES</u>

Fed. R. Civ. P. 54(d)(2)(B)(i) ................................................ 3

C.D. Cal. Local Rule 7-3 ................................................ ii

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES,
AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   <u>INTRODUCTION</u>

The jury found, and this Court upheld the finding, that defendant Redbubble is liable for willfully contributing to the counterfeiting of plaintiff Brandy Melville's registered LA Lightning trademark.  The jury also found, and this Court upheld the finding, that Redbubble is liable for willfully contributing to the infringement of the LA Lightning and Brandy Melville Heart marks and contributing to the infringement of a host of Brandy Melville's unregistered trademarks.  Accordingly, the jury awarded, and this Court upheld the award of, statutory damages equal to ten times actual damages (profits), as well as disgorgement of those profits.

Yet to this day – August 10, 2021 – despite a cease-and-desist letter, this lawsuit, a clear and unequivocal finding of liability (and willful conduct) by the jury, and this Court's JMOL order, Redbubble's website continues to contribute to the counterfeiting and infringement of Brandy Melville's trademarks unabatedly.  More specifically, a search of "Brandy Melville" on Redbubble – see www.redbubble.com/shop/?query=brandy%20melville&ref=search_box – leads to no less than 9,000 results, many of which are authentic Brandy Melville designs, and some of which were highlighted repeatedly at the trial in this case.  As just one example, the first row of the Redbubble.com page entitled "Brandy Melville Gifts & Merchandise" has the following designs:



chill since 1993 malibu konkay S...
By biancabui



Heaven Sent Angel Cherub Stic...
By jean hopkins

No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

(Declaration of Keith J. Wesley ("Wesley Dec."), Exs. 1, 10.)   Here are the corresponding authentic designs sold by Brandy Melville.  The design on the left is Trial Exhibit 223_0178, and the design on the right is Trial Exhibit 223_0185.



(*Id.*, Ex. 2; *see also* D. Roc. 199-3 (Tr. at 266:15-268:12).)  These are mere examples; there are many more.  (*See* Wesley Dec., Exs. 3, 4, 5, 6, 7, 8, 9.)

In other words, even after a jury held that Redbubble is willfully contributing to the infringement of the "Brandy Melville" trademark, a visitor to Redbubble can still find Brandy Melville designs by searching for Brandy Melville and being led to what in essence is an online Brandy Melville store.  (The tab for the store even goes so far as to say "Brandy Melville Gifts & Merchandise.")  (Wesley Dec., Ex. 10.)  Rare is an adjudged infringer so brazen.

Making matters even worse (and in need of a direct and unequivocal response from the Court), the adjudged infringer here is no fly-by-night operation or "small fry."  Redbubble is a publicly traded company with hundreds of millions of dollars in revenue, a significant portion of which comes from intellectual property infringement.  Indeed, the evidence at trial demonstrated that Redbubble's indifference to intellectual property rights is hard-wired into its corporate culture:  It spent less than a single percent (0.8% to be precise) of its $300 million in 2019 revenue to keep infringing designs off its Redbubble.com website.  (D. Roc. 199-3 (Tr. at 329:7-90); D. Roc. 199-4 (Tr. at 462:7-11).)  It is unsurprising then that Redbubble's contribution to obvious infringement persists to this day. (R. Doc. 199-7; R. Doc. 199-3 (Tr. at

317:4-318:13); R. Doc. 199-25; R. Doc. 199-26; R. Doc. 199-27; R. Doc. 199-28; R. Doc. 199-35; R. Doc. 199-36; R. Doc. 199-37; R. Doc. 199-38; R. Doc. 199-39; R. Doc. 199-40; R. Doc. 199-41; R. Doc. 199-45; R. Doc. 199-46; R. Doc. 199-47.)

Brandy Melville respectfully requests entry of a permanent injunction to prevent these ongoing harms, which nothing short of the possibility of a contempt citation will stop.  Brandy Melville also respectfully requests an award of attorney's fees and pre-judgment interest.  Absent these additional forms of monetary relief necessary to make Brandy Melville whole, infringement is nothing more than a cost of doing business for even willful infringers, and enforcing intellectual property rights will be a losing proposition even in a case that is won.

## II.   RELEVANT FACTS AND PROCEDURAL HISTORY.

As the JMOL ruling indicates (R. Doc. 204), this Court is well familiar with the facts and history of this case, which are set forth in its July 10, 2020, order (R. Doc. 103).  This timely motion for a permanent injunction, fees, and pre-judgment interest follows within 14 days of the Court's entry of final judgment.  (R. Doc. 206; Fed. R. Civ. P. 54(d)(2)(B)(i).)

## III.   ARGUMENT

### A.   This Court Should Grant Brandy Melville's Request for a Permanent Injunction.

The Lanham Act authorizes this Court to grant injunctions to prevent the violation of any right of the registrant of a mark registered with the U.S.P.T.O. or to prevent the infringement of unregistered trademarks under 15 U.S.C. section 1125. *See* 15 U.S.C. § 1116(a).  Brandy Melville seeks the entry of a permanent injunction against Redbubble and its officers, agents, servants, employees, attorneys, and all others who are in active concert or participation with them, from referencing, mentioning, and/or using in any way, and/or permitting the reference, mention, and/or use in any way, of BRANDY MELVILLE, Brandy Melville's registered trademarks with the U.S.P.T.O. Registration No. 5,748,883, No. 5,373,397, or No. 5,238,856, or

3

Brandy Melville's unregistered variations of the Brandy Melville name, including "Brandy LA," "brandymelvilleusa," and "brandymelvilleusa.com," (a) on any products that are the same as or confusingly similar to authentic Brandy Melville products or designs, or (b) on any product titles, keywords, or "tags," on the Redbubble.com website that are associated with or are used to promote or drive consumers to products that are the same as or confusingly similar to authentic Brandy Melville products or designs.

A Court may grant a permanent injunction if the plaintiff satisfies the four-factor test of *eBay, Inc. v. MercExchange, LLC*, by showing: (1) plaintiff has suffered irreparable injury; (2) there is no adequate remedy at law; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) it is in the public's interest to issue the injunction. 547 U.S. 388, 391 (2006).

## 1. <u>Irreparable harm</u>

After enactment of the Consolidated Appropriations Act of 2021, Pub.L. 116-260, Div. Q, Title II, § 226(a), Dec. 27, 2020, 134 Stat. 2208, Brandy Melville is "entitled to a rebuttable presumption of irreparable harm" because there has already been "a finding of a violation." 15 U.S.C. § 1116(a). Moreover, evidence at trial demonstrated that, even after Brandy Melville gave Redbubble notice of the infringement and after Brandy Melville filed this action, Redbubble's infringement and counterfeiting persisted.[1] Indeed, Redbubble did not even begin to attempt any proactive policing until a year after the notice and only after being sued. (R. Doc. 199-12; R. Doc. 199-3 (Tr. at 315:1-316:7).) And, as explained above and in the accompanying evidence, Redbubble's infringement persists even after a finding of willful contributory infringement!

---

[1] (R. Doc. 199-7; R. Doc. 199-3 (Tr. at 317:4-318:13); R. Doc. 199-25; R. Doc. 199-26; R. Doc. 199-27; R. Doc. 199-28; R. Doc. 199-35; R. Doc. 199-36; R. Doc. 199-37; R. Doc. 199-38; R. Doc. 199-39; R. Doc. 199-40; R. Doc. 199-41; R. Doc. 199-45; R. Doc. 199-46; R. Doc. 199-47.)

4

No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

### 2.    No adequate remedy at law

Brandy Melville has no adequate remedy at law.  *Car-Freshner Corp. v. Valio, LLC*, No. 14-cv-1471, 2016 WL 7246073, at *8 (D. Nev. Dec. 15, 2016) ("Damage to reputation and loss of customers are intangible harms not adequately compensable through monetary damages.").  Brandy Melville's Ms. Elkins testified at trial, for example, that based on her experience working at Brandy Melville, Redbubble's sale of infringing and counterfeit designs and products was harmful to the Brandy Melville brand, is unfair to Brandy Melville's customers, and negatively impacts Brandy Melville's marketing and sales strategies.  (R. Doc. 199-3 (Tr. at 268:13-269:3).)  Moreover, an award of damages relates solely to past infringement; future infringement has not been remedied.

### 3.    Balance of hardships

The balance of hardships favors Brandy Melville because it is suffering irreparable injury from the ongoing infringement, for which it has no adequate remedy at law, while "[t]here is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law."  *BMW of N. Am., LLC v. Rocco*, No. 19-cv-9285, 2020 WL 7047318, at *12 (C.D. Cal. Nov. 18, 2020) (internal quotation marks omitted).

### 4.    Public interest

Finally, "[a]n injunction is in the interest of the public because where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use."  *Id.*

### B.    This Court Should Grant Brandy Melville's Request for Attorney's Fees.

### 1.    The Lanham Act authorizes a fee award in "exceptional cases"

A party, such as Brandy Melville here, that prevails on a claim for a violation of the rights in sections 1114 and 1125 of the Lanham Act may be awarded "reasonable attorney fees" if the case is "exceptional."  15 U.S.C. § 1117(a).  This is

such a case.

### 2.   <u>Brandy Melville would have been entitled to a fee award under the prior more stringent "exceptional" standard</u>

For many years, the standard for awarding fees under the Lanham Act was stringent.  The Ninth Circuit "required that a plaintiff show that a defendant engaged in 'malicious, fraudulent, deliberate or willful' infringement."  *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180 (9th Cir. 2016) (en banc) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993)).  Even under the prior legal standard, the jury's finding of willful infringement of multiple trademarks would have rendered this case "exceptional."

### 3.   <u>Brandy Melville should be awarded fees under the less stringent "exceptional" standard now in force</u>

Five years ago, the Ninth Circuit joined the Third, Fourth, Fifth, and Sixth Circuits in lowering and loosening the standards for fee awards under the Lanham Act.  *Id.* at 1181.  Relying on a U.S. Supreme Court decision (*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)), that interpreted an identical fee-shifting provision in the Patent Act, the Ninth Circuit held that district courts no longer are limited to awarding fees in cases of "malicious, fraudulent, deliberate or willful' infringement," but instead should examine "the 'totality of the circumstances,'" *SunEarth*, 839 F.3d at 1181, with the ultimate question being whether the "case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," *id.* at 1180.

### 4.   <u>A finding of a willful violation creates at the least strong grounds in favor of a fee award</u>

While a showing of willfulness is no longer required to justify a fee award after *SunEarth*, "the Ninth Circuit has repeatedly noted that a case is properly treated as 'exceptional' for purposes of § 1117(a) where, as here, the defendant's infringement

was 'deliberate or willful.'" *SAS v. Sawabeh Info. Servs. Co.*, No. 11-cv-4147, 2015 WL 12763541, at *10 (C.D. Cal. June 22, 2015).  Indeed, "[u]pon a finding of willful infringement, a trial court should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees." *Lee v. Mike's Novelties, Inc.*, No. 10-cv-2225, 2014 WL 12696891, at *2  (C.D. Cal. Mar. 26, 2014) (quoting *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996)). Even before a liberalization of the standard in *SunEarth*, a Ninth Circuit district court could thus write:  "The parties have cited, and I have found, no reported decisions in which a plaintiff that established willful infringement was not awarded attorney fees." *Dunn & Fenley, LLC v. Allen*, No. 02-cv-1750, 2007 WL 2973549, at *3 n.1 (D. Or. Oct. 9, 2007).

All across the law – not just in the narrow confines of intellectual property cited above – willful violations entitle a party to attorneys' fees.  *E.g.*, *In re Schwartz-Tallard*, 803 F.3d 1095, 1098 (9th Cir. 2015) ("[A]n individual injured by any willful violation of a [bankruptcy] stay . . .  shall recover actual damages, including costs and attorneys' fees . . . ."); *Zaby v. Perfection Collection, LLC*, No. 19-cv-539, 2019 WL 5067184, at *2 (D. Nev. Oct. 9, 2019) ("Both the FCRA and the FDCPA allow for damages and attorneys' fees for statutory violations," with "statutory damages of $1000 and attorneys' fees for willful noncompliance"); *Barnes v. Sea Hawaii Rafting, LLC*, No. 13-cv-2, 2018 WL 4854662, at *12 (D. Haw. Oct. 5, 2018) ("Attorneys' fees and punitive damages are available under general maritime law for the willful and wanton disregard of the maintenance and cure obligation.").  Willfulness is also often the only extra requirement necessary to recover punitive damages, *e.g.*, *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 550-51 (1999) (Title VII claims); *Barnes*, 2018 WL 4854662, at *12, even though punitive damages are "described as quasi-criminal," *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991).

The fact that the conduct here found to be willful was counterfeiting, which is "the 'hard core' or first degree' of trademark infringement," makes a presumption of

fees only all the more necessary, *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020), and is the reason courts have applied Section 1117(b)'s presumption of a fee award in counterfeiting cases seeking fees under Section 1117(a).  *Great S. Co. v. Irvin*, No. 92-cv-5466, 1995 WL 23031, at *4 (N.D. Ill. Jan. 19, 1995).[2]  A finding of willfulness in this context is no longer necessary to support a fee award, but it is a sufficient and a compelling reason to award fees.

### 5.   <u>Additional relevant factors support a fee award</u>

The Ninth Circuit has suggested that courts consider the following non-exclusive factors in evaluating whether a case is "exceptional": "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *SunEarth*, 839 F.3d at 1180.  The Ninth Circuit has added "the degree of success obtained on the claim" to the list.  *See, e.g.*, *Maljack Prods., Inc. v. Good Times Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996).  Each of these factors weighs in favor of a fee award.

### a.   <u>Brandy Melville achieved substantial success</u>

Brandy Melville obtained substantial success.  It won essentially all of the claims submitted to the jury.[3]  (R. Doc. 193 [Counterfeiting and contributory

---

[2]  The Court need not decide whether Section 1117(b)'s full strength, all-but-irrebuttable presumption can be imported into Section 1117(a).  The Ninth Circuit cases employing a simple presumption that a willfulness finding justifies a fee award under Section 1117(a) are more than sufficient in this case.  But this construction of Section 1117(a) in counterfeiting cases as congruent with Section 1117(b) also implicates the rule that a finding of willfulness as to a counterfeiting claim justifies a fee award as to all Lanham Act claims in the case, including simple infringement, without any additional showing.  *Tiffany & Co. v. Costco Wholesale Corp.*, No. 13-cv-1041, 2019 WL 120765, at *8 (S.D.N.Y. Jan. 7, 2019) ("This broad language, including the statute's reference to the general Lanham Act liability provision, clearly suggests that the Court should award attorneys' fees incurred in prosecuting the Lanham Act infringement claim, not just the counterfeiting claim itself.").

[3]  When submitting the original verdict form, there was a line for infringement of a

infringement of Heart Mark; same as to LA Lightning Mark; contributory infringement as to Brandy Melville's unregistered trademarks].) It also obtained a finding of willfulness – an exceedingly high standard – on the two registered marks. (*Id.* at 2-3.)

The jury awarded 200 times the minimum statutory damages for one counterfeited mark and 300 times the minimum for the other. (*Id.*; 15 U.S.C. § 1117(c)(1).) The jury also awarded full disgorgement of all Redbubble's profits. (R. Doc. 193 at 4.)

### b.   Redbubble's defense was objectively unreasonable from a legal perspective

Redbubble took an objectively unreasonable legal stance in contesting liability on the LA Lightning Mark and the unregistered trademarks. Its argument that the counterfeiting was permitted as an "aesthetically functional" use both inverted the burden of proof on this purported defense and was legally indefensible. (R. Doc. 185 at 23; *see Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1072-74 (9th Cir. 2006) ("The doctrine of aesthetic functionality does not provide a defense against actions to enforce the trademarks against such poaching.").) Redbubble's fair use argument was frivolous against charges of counterfeiting and confusion. (R. Doc. 185 at 26; *see Smith v. Chanel, Inc.*, 402 F.2d 562, 564 (9th Cir. 1968) (permitting use only when it is "without deception as to origin").) Redbubble attempted to invert the burden of proof on the failure to mitigate damages defense. (R. Doc. 185 at 29; *see* Ninth Circuit Model Jury Instruction 5.3.) Its remaining defenses were factual and are discussed below.

Redbubble's settlement positions were also objectively unreasonable. Had it engaged in a reasonable, objective analysis of its exposure in this case, the case would have settled early on, thus sparing both sides hundreds of thousands of dollars in fees

---

third registered trademark, the Brandy Melville Flags mark; however, Brandy Melville did not pursue that claim at trial.

and costs (and the Court and jury a four-day trial).  Redbubble instead made low-ball settlement offers that failed even to cover Brandy Melville's attorney's fees – to say nothing of damages, costs, and interest – and that refused to make material changes to its contributions to the infringement.  (Wesley Dec. ¶ 14.)

Even if some of Redbubble's legal positions could be considered reasonable, its kitchen-sink approach of also asserting frivolous arguments and contesting the incontestable significantly increased the cost of litigation for Brandy Melville. Brandy Melville should not bear the costs that Redbubble could have eliminated had it taken reasonable positions.  *Dunn & Fenley, LLC v. Allen*, No. 02-cv-1750, 2007 WL 2973549, at *4 (D. Or. Oct. 9, 2007) (awarding fees in part because "defendants' persistence in arguing that its material did not infringe plaintiff's copyright," though not frivolous, was "not reasonable" in light of "the clear similarity of the works").

### c. <u>Redbubble's defense was objectively unreasonable from a factual perspective</u>

The facts underlying Redbubble's defense show that Redbubble acted unreasonably in refusing to admit it had counterfeited the registered LA Lightning Mark and infringed the registered Heart Mark and the unregistered trademarks.

<u>First</u>, as found by the jury, Redbubble *willfully* violated Brandy Melville's rights.  Thus every time Redbubble argued Brandy Melville had failed to produce any evidence of counterfeiting *simpliciter*, the jury found the evidence so strong as to show the violations were "undertaken either with knowledge that the conduct constitutes infringement or with reckless disregard for the copyright or trademark owner's rights."  *Autodesk, Inc. v. Flores*, No. 10-cv-1917, 2011 WL 337836, at *8 (N.D. Cal. Jan. 31, 2011) (citing *In re Barboza*, 545 F.3d 702, 707-08 (9th Cir. 2008)); *see also Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017). The jury thus did not merely reject Brandy Melville's factual positions; it rejected them resoundingly.  Redbubble was as willfully blind to its assertion of frivolous factual denials in this litigation as it was to its contribution to the counterfeiting and

10

infringement of Brandy Melville's trademarks that led to the litigation in the first place.

Second, Redbubble ignored Brandy Melville's takedown notice and continued to violate its rights for months, thus begging for this lawsuit. Indeed, Redbubble's infringement and use of Brandy Melville's designs is ongoing! (Wesley Dec., Exs. 8, 9.)




(See also Wesley Dec., Exs. 1, 2, 3, 4, 5, 6, 7; R. Doc. 199-3 (Tr. at 266:15-267:16) (identifying other Brandy Melville designs that are available for sale on the Redbubble website).)

In fact, Redbubble continues to willfully persist in its infringement of numerous third-parties' intellectual property rights as well. (Wesley Dec., Ex. 11.)

Courts routinely award fees under the Lanham Act (and the analogous fee-shifting provision in the Copyright Act) where, like here, the defendant continued to violate the plaintiff's rights after receiving a cease-and-desist letter or takedown notice.[4]  As Judge Scheindlin of the Southern District of New York observed:

---

[4]  *E.g.*, *Am. Auto. Ass'n, Inc. v. Best Value Inn Oasis of Eden*, No. 12-cv-1303, 2012 WL 13012711, at *2 (C.D. Cal. July 10, 2012) (ignoring cease-and-desist letters); *Gucci Am., Inc. v. Guerrero*, No. 07-cv-7898, 2008 WL 11336190, at *8 (C.D. Cal. Nov. 4, 2008) (same); *see also Curves Int'l, Inc. v. Nash*, No. 11-cv-425, 2013 WL 3872832, at *4 (N.D.N.Y. July 25, 2013) ("Courts have held that the unauthorized use of proprietary marks can give risk to an exceptional case in which an award of attorneys' fees and costs is appropriate, *especially where defendants have failed to*

11

No. 2:19-cv-04618-RGK (JPRx)
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

"Where, as here, the defendant is warned of its infringing activities and is given ample opportunity to cease and desist prior to the commencement of the lawsuit, attorneys' fees are clearly justified." *Kroll-O'Gara Co. v. First Defense Int'l, Inc.*, No. 99-cv-4899, 2000 WL 369721, at *1 (S.D.N.Y. Apr. 11, 2000).  The policy rationales for awarding fees in such cases reach their apex when, *even after losing at trial, the counterfeiter and infringer persists in its wrongful conduct* – exactly what Redbubble is doing.

Third, when confronted with its unlawful conduct, Redbubble provided excuse after excuse after excuse at every phase of the case and at trial.  Redbubble never did the reasonable, honest thing – *i.e.*, candidly admit a mistake and pledge not to make it again in the future.  It did not do so because its business model depends on allowing and indeed facilitating numerous, flagrant trademark violations. *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 638 (N.D. Ill. 2016) (awarding fees because "Defendants' entire business model is predicated on the unauthorized and willful exploitation of MetroPCS and its Marks").

This is not a case of an innocent infringer who acted reasonably when notified of the infringement or even after being sued.  Rather, this is a case of a defendant who

---

*comply with cease-and-desist letters*") (emphasis added); *Choice Hotels Int'l, Inc. v. Kumar & Birla, LLC*, No. 11-cv-5100, 2013 WL 12097438, at *4 (E.D. Wash. Jan. 14, 2013) (finding case exceptional and awarding fees under Lanham Act where "Defendants certainly knew their acts amounted to infringement and were under notice through their Franchise Agreement and the cease and desist letters"); *Big Bus Tours Ltd. v. Half Price Tour Tickets*, LLC, No. 12-cv-21579, 2012 WL 13014655, at *1 (S.D. Fla. Nov. 26, 2012) ("In the instant case, the undersigned finds that the Defendants ignored the 'cease and desist' letter sent by the Plaintiffs and continued their infringing behavior. For this reason, and based on other conduct by the Defendants set forth in the Complaint, the undersigned concludes that the Defendants' actions were willful and an award of attorneys fees under § 1117(a) is warranted."); *Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (awarding fees under Copyright Act where defendants ignored plaintiffs' cease-and-desist letters).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES,
AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

acted in willful disregard of Brandy Melville's rights and then denied and dissembled to try to escape liability.  A fee award is more than justified.

### d.      A fee award would advance considerations of compensation and deterrence

The Ninth Circuit has "expressed concern that a 'small award for damages,' without fees, may be 'insufficient to deter future copyright infringements such as the one at issue here.'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1039 (9th Cir. 2018) (quoting *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996)).  This is such a case.  If fees are not awarded, then Brandy Melville will have lost over a million dollars simply to protect its intellectual property.  That is the wrong message to send to Brandy Melville, and it is the wrong message to send to other intellectual property owners.  An intellectual property owner whose rights have been infringed – particularly as recklessly and egregiously as herein – should not suffer a substantial loss for protecting its rights.  Rather, Brandy Melville should be made whole by ordering Redbubble to pay its attorney's fees.

A fee award is also necessary to deter Redbubble and others who may consider following in Redbubble's footsteps.  Disgorgement of profits alone is not an adequate deterrent.  Many infringers – especially infringers who have shown a willingness to *willfully* disregard the rights of an intellectual property owner and engage in "hard core" or "first degree" violations – are willing to risk a disgorgement of profit alone.  After all, some infringement will go unnoticed or will not be remedied.  Therefore, the infringer in the long run will profit even if it must disgorge its profit in a particular instance.   If, however, an infringer must not just disgorge its profits but also compensate the plaintiff for the costs of enforcement, the infringer will think long and hard before assuming the risk of infringement again.  The deterrence rationales undergirding Section 1117(b)'s presumption in favor of fees in cases of willful counterfeiting apply with equal force to Section 1117(a).  *Great S. Co. v. Irvin*, No. 92-cv-5466, 1995 WL 23031, at \*4 (N.D. Ill. Jan. 19, 1995).

13

No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

**6.     The amount of Brandy Melville's requested fees is reasonable**

"To determine what fee should be awarded, the court must first determine the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate").   Important to keep in mind is that Redbubble's persistent (and willful) infringement, up to the current moment, has been a significant driver of costs.

**a.     Brandy Melville's counsel billed reasonable hours**

In determining reasonable hours, the party requesting fees generally submits its time records justifying the hours claimed to have been expended.  *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986); *cf. Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (party requesting fees meets burden "by simply listing his hours and identifying the general subject matter of his time expenditures").

Brandy Melville's has presented detailed tables summarizing the monthly billing statements from its counsel.  (Wesley Dec., Ex. 12.)   Those tables and summaries reveal the date, amount, and nature of the work performed by Brandy Melville's attorneys.  (*Id.*)   They establish that Brandy Melville's counsel billed approximately 1,871 attorney hours and 482 paralegal hours between May 22, 2019, and the present on this case.  (*Id.*)

The hours billed on this complex matter were reasonable in that they span nearly three years of litigation, including a jury trial.  As the Court may recall, Brandy Melville's counsel presented the case leanly, trying it in just four court days, which included jury selection, the presentation of all evidence, and the closing arguments of counsel.  (*E.g.*, R. Docs. 184, 186, 187, 188.)  Moreover, as explained above, the hours expended reflect in part the unreasonable nature of Redbubble's defense.  In light of

these circumstances, the hours spent by Brandy Melville's counsel in litigating this case were eminently reasonable.

        **b.**     **Brandy Melville's counsel's hourly rates are reasonable, as other judges, including in this district, have found**

"A party seeking an award of attorney's fees bears the burden of submitting evidence of the hours worked and the rate paid, as well as evidence that the rate charged is in line with the prevailing market rate in the relevant community." *Hawkins-Dean v. Metro. Life Ins. Co*, No. 03-cv-1115, 2007 WL 2735684, at *1 (C.D. Cal. Sep. 18, 2007). "The prevailing market rate is indicative of a reasonable hourly rate." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). "[R]ate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers*, 896 F.2d at 407.

Brandy Melville's attorneys billed at rates between $400 per hour and $850 per hour, for an overall blended rate of $532 per hour. (Wesley Dec. ¶¶ 15, 16, Ex. 12.) Judges in this district – and other California districts – have concluded that rates in the same range as those charged by Brandy Melville's lawyers were reasonable for experienced counsel handling complex litigation.[5]

---

[5]   *See Strategic Partners, Inc. v. Vestagen Protective Techs., Inc*., No. 16-cv-5900, 2018 WL 6038275 (C.D. Cal. Jan. 17, 2018) (Klausner, J.) (approving blended rate of $520 in a Lanham Act case); *Perfect 10, Inc. v. Giganews, Inc.,* No. 11-cv-7098, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) (approving fee award with hourly rates for partners between $705 and $930, hourly rates for associates between $360 and $690, and hourly rates for paralegal and support staff between $245 and $345 in Lanham Act dispute); *Amusement Art, LLC v. Life is Beautiful, LLC*, No. 14-cv-8290, 2017 WL 2259672 (C.D. Cal. May 23, 2017), *aff'd in part, vacated in part, remanded*, 768 F. App'x 683 (9th Cir. 2019) (approving fee award in Lanham Act dispute with attorney hourly billing rates between $450 and $865, and paralegals and support staff charging hourly rates between $215 and $380).

1
2

      **c.**      <u>**Conclusion:  Brandy Melville's Total Requested Fees Are Reasonable**</u>

3      The total lodestar of $1,251,062.50 (total of 2,352.25 hours at blended rate of

4  $532 per hour) is supported by the appended declaration and exhibits.  (Wesley Dec.,

5  ¶¶ 13-23, Exs. 12-16.)   It is well within the range normally required to take an

6  intellectual property case through discovery, a jury trial, and post-trial motions.

7  Indeed, it is on the low end of that spectrum.  *See, e.g.*, *Eldorado Stone LLC v.*

8  *Renaissance Stone,* No. 04-cv-2562, 2007 WL 3308099, at *2 (S.D. Cal. Oct. 24,

9  2007) (nearly fifteen years ago, awarding fees totaling $1,925,230 (or $2,522,775 in

10  2021 dollars) following jury verdict finding defendant infringed plaintiff's trademark

11  and copyright, and misappropriated plaintiff's trade secret); *Brighton Collectibles,*

12  *Inc. v. Coldwater Creek Inc.*, No. 06-cv-01848, 2009 WL 160235, at *5 (S.D. Cal.

13  Jan. 20, 2009) (awarding $1,235,404 (or $1,564,552 in 2021 dollars) in fees incurred

14  in copyright and trade dress case).  Therefore – subject to updates prior to the hearing

15  on the motion – the total requested amount should be found to be reasonable.

16
17
18

      **C.**      <u>**This Court Should Award Pre-Judgment Interest at the Rate Set Forth in 26 U.S.C. § 6621(a)(2), Compounded From the First Date of Infringement**</u>

19      "Money today is not a full substitute for the same sum that should have been

20  paid years ago.  Prejudgment interest therefore is an ordinary part of any award under

21  federal law." *In re Oil Spill by the Amoco Cadiz Off the Coast of France on March*

22  *16, 1978*, 954 F.2d 1279, 1331-32 (7th Cir. 1992); *accord Ford v. Alfaro*, 785 F.2d

23  835, 842 (9th Cir. 1986).   The Ninth Circuit, in a copyright case, held that

24  prejudgment interest is available on a monetary award based on a disgorgement of the

25  defendant's wrongful gain.  *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886

26  F.2d 1545, 1552 (9th Cir. 1989).

27      Although the Ninth Circuit has not yet addressed the issue, other circuits that

28  have considered it have held that prejudgment interest is available under Section

16

No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

1117(a) of the Lanham Act. *See Utd. Phosporus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236-37 (10th Cir. 2000) (trademark law) ("In the federal context, this Court has adopted a preference, if not a presumption, for prejudgment interest."); *Am. Honda Motor Co., Inc. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990) ("Although Section 1117(a) [of the Lanham Act] does not provide for prejudgment interest, such an award is within the discretion of the trial court[.]"); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436-37 (7th Cir. 1989) (Posner, J.) ("While [the Lanham Act] makes no reference to prejudgment interest, . . . [t]he time has come, we think, . . . to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations.").

That is the approach taken by courts within this district as well. *Anhing Corp. v. Thuan Phong Co. Ltd.*, No. 13-cv-5167, 2016 WL 6661178, at *5 (C.D. Cal. Jan. 25, 2016) ("Although 15 U.S.C. § 1117(a) does not provide for prejudgment interest, '[a]n award of pre-judgment interest in a case under federal law is left to the sound discretion of the trial court.' Here, the Court finds that an award of prejudgment interest is warranted to avoid incomplete compensation to Plaintiff." (internal citations omitted)).

District courts in the Ninth Circuit often enlist the post-judgment interest rate in 28 U.S.C. § 1961 – the interest rate on a one-year Treasury bill – as the rate of prejudgment interest. *E.g.*, *Nelson v. EG&G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994). The rate in § 1961, however, has been criticized as systemically low. *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989) ("[The Treasury-bill] rate is too low, because there is no default risk with Treasury bills."). In view of the fact that "an award of pre-judgment interest at below market rates does not fully compensate the prevailing party[,]" *W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1288 (9th Cir. 1984), the common use of the Treasury-bill rate is in tension with economic reality.

Therefore, although the rate in § 1961 remains the default in this circuit, this

Court has unfettered discretion to depart from that rate if it "finds, on substantial evidence, that the equities . . . require a different rate." *Nelson*, 37 F.3d at 1391.  For several years, the Treasury-bill interest rate, low to begin with, has been heavily and artificially depressed.  Because an award of Treasury-bill interest lately approaches an award of *no* interest, deviation from the § 1961 standard has become almost routine.  *See, e.g.*, *James v. Group Life & Health Benefits Plan*, No. 11-cv-51, 2014 WL 4684885, at *3-4 (D. Or. 2014) (collecting authority).

In *S.E.C. v. Platforms Wireless International Corp.*, 617 F.3d 1072 (9th Cir. 2010), the defendants disgorged money wrongfully obtained from investors.  The SEC sought pre-judgment interest on the disgorged money, not at the Treasury-bill rate set forth in 28 U.S.C. § 1961, but at the higher tax-underpayment rate set forth in 26 U.S.C. § 6621(a)(2).  Although it acknowledged the presumption in favor of § 1961, the Ninth Circuit affirmed the use of § 6621(a)(2).  *Id.* at 1099-1100.

Section 6621(a) has provided a consistently popular alternative to Section 1961, when, as here, deviation is warranted, *see, e.g.*, *S.E.C. v. World Info. Tech., Inc.*, 590 F. Supp. 2d 574, 578 (S.D.N.Y. 2008); *Armstrong v. Charlotte Cty. Bd. of Cty. Com'rs*, 273 F. Supp. 2d 1312, 1321 (M.D. Fla. 2003); *Frazier v. Se. Penn. Transp. Auth.*, 814 F. Supp. 11, 12-13 (E.D. Pa. 1993); *Assoc. Against Discrimination in Employ. v. Bridgeport*, 572 F. Supp. 494, 495 (D. Conn. 1983), including in Lanham Act cases, *Fendi Adele S.R.L.*, 689 F. Supp. 2d at 622.

If the prejudgment interest rate is to resemble a market rate – and it should, *see Platforms Wireless*, 617 F.3d at 1099; *W. Pac. Fisheries*, 730 F.2d at 1288 – compounding is essential.  *Price v. Stevedoring Servs of Am., Inc.*, 697 F.3d 820, 842 (9th Cir. 2012) ("Anyone with a savings account, credit card, mortgage, or student loan knows that the modern financial world employs compound interest as a general rule."); *see also Termine ex rel. Termine v. William S. Hart Un. High Sch. Dist.*, 288 F. App'x 360, 363 (9th Cir. 2008) ("compound prejudgment interest" is now "the norm in federal litigation"); *Jerra v. United States*, No. 12-cv-1907, 2018 WL

18

No. 2:19-cv-04618-RGK (JPRx)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES

1605563, at *13 (C.D. Cal. Mar. 29, 2018) ("The norm in federal litigation is to
compound prejudgment interest . . . . ") (citing *United States ex rel. Macias v. Pac.
Health Corp.*, No. 12-cv-960, 2016 WL 8722639, at *11 (C.D. Cal. Oct. 7, 2016)).

The date from which pre-judgment interest accrues is another factor that resides
within the district court's discretion. *Columbia Brick Works, Inc. v. Royal Ins. Co. of
Am.*, 768 F.2d 1066, 1068 (9th Cir. 1985). But a natural starting point is available.
Pre-judgment interest compensates the prevailing party for a loss of money "*from the
time of the loss* until judgment is entered." *Am. Mill Co. v. Brennan Marine, Inc.*, 623
F.3d 1221, 1226 (8th Cir. 2010) (emphasis added). Pre-judgment interest should
therefore accumulate "from the earliest ascertainable date on which the cause of
action existed." *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp. 2d 1,
5 (S.D.N.Y. 2007); *Dreiling ex rel. Infospace, Inc. v. Jain*, 281 F. Supp. 2d 1234,
1241 (W.D. Wash. 2003) (applying pre-judgment interest "from the date of the sales
which produced the profit that the [defendants] have since held"). That date is at the
latest May 14, 2018, the date of Brandy Melville's cease-and-desist notice to
Redbubble. (R. Doc. 199-7.)

## IV.   **CONCLUSION**

Brandy Melville respectfully requests an order issuing a permanent injunction
and awarding attorney's fees and pre-judgment interest.

Dated:   August 10, 2021

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Keith J. Wesley
Ryan Q. Keech
Jason Y. Kelly

By   */s/  Keith J. Wesley*
Keith J. Wesley
Attorneys for Plaintiff
Y.Y.G.M. SA d.b.a. Brandy Melville

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PERMANENT INJUNCTION, ATTORNEY'S FEES,
AND PRE-JUDGMENT INTEREST; MEMORANDUM OF POINTS AND AUTHORITIES