1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| Y.Y.G.M. SA d.b.a. BRANDY MELVILLE, a Swiss corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>REDBUBBLE INC.,<br><br>                    Defendant. | Case No. 2:19-cv-04618-RGK (JPRx)<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT REDBUBBLE INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**<br><br>*[Filed Concurrently with Renewed Motion and Declaration of Joshua M. Masur]*<br><br>Date:     September 27, 2021<br>Time:     9:00 a.m.<br>Crtrm.:   850<br>Judge:    Hon. R. Gary Klausner |

## I.     INTRODUCTION

On May 28, 2019, Y.Y.G.M. SA d.b.a. Brandy Melville ("Plaintiff') filed a complaint against Redbubble, Inc. ("Redbubble," or "Defendant") for claims arising from the unauthorized sale of goods beating Brandy Melville's trademarks through Redbubble's website. Plaintiffs complaint alleged (1) trademark infringement and

1 counterfeiting under 15 U.S.C. § 1114, (2) false designation of origin under 15

2 U.S.C. § 1125(a), (3) common law unfair competition, (4) contributory trademark

3 infringement, and (5) vicarious trademark infringement.

4      On May 4, 2020, Defendant filed a motion for summary judgment as to all

5 five of Plaintiffs claims. (ECF No. 40). On July 10, 2020, the Court granted

6 summary judgment in favor of Defendant with respect to all of Plaintiffs claims

7 except for Plaintiffs contributory infringement and counterfeiting claims. (ECF No.

8 103).

9      This case proceeded to a jury trial in June of 2021, after which the jury found

10 Redbubble liable for: (1) willful contributory counterfeiting of Plaintiff's Brandy

11 Melville Heart Mark and LA Lightning Mark; (2) contributory infringement of the

12 Brandy Melville Heart Mark and LA Lightning Mark; and (3) contributory

13 infringement of Plaintiff's unregistered trademarks in the "Brandy Melville" name or

14 other unregistered variations of the Brandy Melville name, including "Brandy LA,"

15 "brandymelvilleusa," and "brandymelvilleusa.com." (Redacted Verdict Form, ECF

16 No. 193).

17      At the close of evidence, Redbubble brought a Motion for Judgment as a

18 Matter of Law pursuant to Fed. R. Civ. P. 50(a). (ECF No. 185).  On July 27, 2021,

19 the Court granted that motion as to the jury's verdict for contributory counterfeiting

20 of the Brandy Melville Heart Mark and denied it in all other respects. (ECF No.

21 204).

22      Presently before the Court is Redbubble's Renewed Motion for Judgment as a

23 Matter of Law pursuant to Fed. R. Civ. P. 50(b). ("Motion"). For the following

24 reasons, the Court GRANTS the Motion.

25 **II.**     **FACTUAL BACKGROUND**

26      The relevant factual background is set forth in the Court's Order of July 10,

27 2020. (ECF No. 103).

28

## III.   JUDICIAL STANDARDS

Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "It is error to deny a judgment [as a matter of law] when it is clear that the evidence and its inferences cannot reasonably support a judgment in favor of the opposing party." *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).

Alternatively, Federal Rule of Civil Procedure 59(a) permits a district court to award a new trial for "any reason for which a new trial has heretofore being granted in an action at law in federal court," Fed. R. Civ. P. 59(a), including "'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citations omitted). Such motions are subjected to a lower standard of proof than motions for judgment as a matter of law; a verdict may be supported by substantial evidence, yet still be against the clear weight of evidence. *Id.* Unlike a Rule 50 motion, on a Rule 59 motion a "judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party," and may even "*sua sponte* raise its own concerns about the damages verdict." *Experience Hendrix, L.L.C., v. Hendrixlicensing.com, Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014).

If this Court deems that a new trial is warranted, it may either grant the motion or deny it conditioned upon the prevailing party accepting a remittitur. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 818-19 (9th Cir. 2001). "A remittitur must reflect 'the maximum amount sustainable by the proof.'" *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (citations omitted).

## IV.   DISCUSSION

After a three-day jury trial, the jury came back with a verdict for Plaintiff as to most issues.  Specifically, the jury found Redbubble liable for: (1) willful

1  contributory counterfeiting of the Brandy Melville Heart Mark and LA Lightning

2  Mark; (2) contributory infringement of the Brandy Melville Heart Mark and LA

3  Lightning Mark; and (3) contributory infringement of Brandy Melville's

4  unregistered trademarks in the "Brandy Melville" name or other unregistered

5  variations of the Brandy Melville name, including "Brandy LA,"

6  "brandymelvilleusa," and "brandymelvilleusa.com." (Redacted Verdict Form, ECF

7  No. 193).

8      The jury awarded Plaintiff $200,000 in statutory damages for the contributory

9  counterfeiting of the LA Lightning Mark, $300,000 in statutory damages for the

10  contributory counterfeiting of the Brandy Melville Heart Mark, and a combined

11  $20,000 for contributory trademark infringement of the LA Lightning Mark, Brandy

12  Melville Heart Mark, and Plaintiff's unregistered Marks.

13      When the Court granted Redbubble's motion for judgment as a matter of law

14  on contributory counterfeiting of the Brandy Melville Heart Mark, it reduced the

15  jury's damages verdict from $520,000 to $220,000 to eliminate the $300,000 in

16  statutory damages assessed by the jury accordingly.  (ECF No. 204).

17      Redbubble now renews its motion for judgment as a matter of law as to all of

18  Plaintiff's claims. Having read and considered Redbubble's Motion, Plaintiff's

19  Opposition thereto, and Redbubble's Reply in support, the Court GRANTS the

20  Motion.

21      **A.    The Jury's Verdict on Contributory Counterfeiting of the LA**

22          **Lightning Mark Lacks Evidentiary Basis**

23      Applying the Court's instructions and the relevant case law, the evidence of

24  record provided no basis for the jury's finding of willful contributory counterfeiting

25  of the LA Lightning Mark.

26          1.    **Only Apparel Products are Relevant to this Inquiry**

27      As the jury was properly instructed, counterfeiting liability exists only where

28  a defendant used an "identical or substantially indistinguishable" copy of a

1  registered mark "for such goods and services sold, offered for sale, or distributed."

2  (Tr. at 515:8-14; ECF No. 189 at 18); *see also* 15 U.S.C. § 1116(d)(1)(B)(i);

3  *Kaloud, Inc. v. Shisha Land Wholesale, Inc.*, No. 15-3706-RGK, 2016 WL 7444600,

4  at *2 (C.D. Cal. July 11, 2016), *aff'd*, 741 F. App'x 393 (9th Cir. 2018) (affirming

5  JMOL vacating counterfeiting statutory damages award because "defendant did not

6  apply the … Marks to the same [type of] product for which those marks were

7  registered").

8       The LA Lightning Mark is only registered for "Clothing, namely, t-shirts,

9  tank tops, and sweatshirts." (Exhibit 7).  Thus, only offers or sales of t-shirts, tank

10 tops or sweatshirts are relevant to that counterfeiting claim.

11              2.       **Summary of the Evidence re LA Lightning Apparel**

12      There is no evidence that any clothing bearing the LA Lightning mark was

13 *ever* sold through the Redbubble Marketplace; indeed, Redbubble's witnesses

14 testified that no such sales were ever made. (Tr. at 427:15-21).  And there is very

15 little evidence in the record regarding any LA Lightning products offered either by

16 Plaintiff or through the Redbubble Marketplace.

17      Plaintiff began using its LA Lightning design in 2018 and put it on "apparel

18 products from hoodies to T-shirts to hats as well as stickers." However, Plaintiff

19 identified no evidence that consumers have ever specifically associated t-shirts,

20 tanks or sweatshirts bearing an LA Lightning design with Plaintiff. (Tr. at 178:18-

21 180:3, 194:12-17). And while Plaintiff has used the LA Lightning design to decorate

22 its apparel, it offered no evidence that it ever used it on labels, hang tags or

23 packaging, or otherwise used as a source-identifier (as opposed to an ornamental

24 design). (Tr. at 271:5-23).  Nor was there any evidence offered of Plaintiff's own

25 sales of products bearing the LA Lightning Mark, or any advertising associated with

26 such products.

27      At the time Plaintiff filed this lawsuit, there was a listing for clothing with an

28 LA Lightning design (although not a "stitch for stitch copy" of Plaintiff's products)

1  offered on the Redbubble Marketplace by seller Katie's Stickers.[1] (Exh. 187).  The

2  evidence reflects that this and any other pre-existing LA Lightning listings were

3  promptly removed after the Complaint was filed. (Exh. 160 (Plaintiff's counsel

4  acknowledges that "[i]t appears that Redbubble has removed (at least for the present

5  time) items stamped with the 'Brandy Melville' and 'LA Lightning' trademarks

6  referenced in the lawsuit")). There was no evidence adduced at trial of any sales of

7  clothing products associated with this listing. (Tr. at 432:20-433:7).

8       In May 2020, Plaintiff's counsel located a listing by seller haleyshore that

9  offered certain clothing items with an LA Lightning design and, without giving prior

10  notice of the listing to Redbubble, attempted to purchase two products through that

11  listing. That order was canceled before any product could be shipped, and no sale

12  was ever consummated. (Tr. at 427:22-428:10; Exh. 633 at 128; *see also* ECF No.

13  103 at 14).

14       This is the entirety of the evidence on which any counterfeiting verdict could

15  be based, and it is plainly insufficient to support the jury's verdict.

16             3.    **The Evidence Does Not Support a Contributory**

17                   **Infringement Verdict**

18       As the Court instructed the jury per Ninth Circuit Model Jury Instruction

19  15.21, contributory infringement requires that the defendant provide services to a

20  particular direct infringer that "the defendant knew or had reason to know … was

21  infringing the plaintiff's trademark and the defendant continued to supply its

22  services." (ECF No. 189 at 16). Moreover, and unlike other types of infringement,

23  contributory infringement (or counterfeiting) cannot be found unless the defendant

24  _____

25  [1] The trademark registration is limited on its face to "[t]he color yellow [which is]
    claimed as a feature of the mark" (Exh. 7), while the design in the Katie's Stickers
26  listing is in black. Also, the listing in the accused design is (in Plaintiff's words) a
    "cut off graphic," showing only the letters "LOSA" and "CALIFOR," rather than
27  "LOSANGELES" and "CALIFORNIA 1984" as depicted on the trademark
    registration and Plaintiff's products. (Exhs. 7, 221, 222).
28

1  has "[s]ome contemporary knowledge of which particular listings are infringing or

2  will infringe" and fails to act on that knowledge. *YZ Productions, Inc. v. Redbubble*

3  *Inc.*, --- F. Supp. 3d. ----, 2021 WL 2633552, at *6 (N.D. Cal. June 24, 2021);

4  *Tiffany Inc. v. eBay Inc.*, 600 F.3d 93 (2nd Cir. 2010). There was no evidence

5  submitted on either of these elements.

6          Specifically, the evidence of record confirmed that the only "direct infringer"

7  who offered clothing with an LA Lightning design after the trademark issued, and

8  after suit was filed, was seller haleyshore. (Exh. 633 at 128).  There is no evidence

9  that Redbubble knew or had reason to know that haleyshore was offering this

10 product or otherwise infringing until Plaintiff's counsel attempted to buy her

11 product. Once that happened, the record reflects that Redbubble cancelled that order

12 and no sales were ever completed on this listing. (Tr. at 427:18-428:10).  Thus,

13 under the instruction, Redbubble did not "continue to supply its services" to

14 haleyshore once it received Plaintiff's notice of infringement.

15         There is also no evidence that Redbubble ever had notice of the LA Lightning

16 Mark or that products bearing an LA Lightning design might be infringing that mark

17 until this lawsuit was filed; indeed, the mark was not even registered until a year

18 after Plaintiff's May 2018 notice letter. (*Compare* Exhs. 7 and 10). As a result,

19 Redbubble cannot be contributorily liable for any infringement that may have

20 occurred before suit was filed. And as noted above, once Redbubble learned of

21 haleyshore's listing of an apparel product using an LA Lightning design, Redbubble

22 removed the listing, thereby precluding as a matter of law any determination that it

23 engaged in contributory infringement. *See, e.g.*, *Spy Phone Labs LLC. v. Google*

24 *Inc*., No. 15-CV-03756-KAW, 2016 WL 6025469, at *5 (N.D. Cal. Oct. 14, 2016).

25         4.      **The Evidence Does Not Support The Counterfeiting Verdict**

26         As the Court instructed the jury, "A counterfeit product must be a 'stitch for

27 stitch copy' of plaintiff's own product when viewed in the marketplace, including its

28 packaging, such that a customer would be tricked into believing that the counterfeit

1  is actually one of the plaintiff's products." (ECF No. 198 at 27-28). No jury

2  following this instruction could have concluded that the only product potentially

3  subject to Plaintiff's counterfeiting claim, the haleyshore apparel with the LA

4  Lightning design, qualifies as a counterfeit.

5         As both parties' witnesses testified, Plaintiff's products are sold in Plaintiff's

6  stores or on Plaintiff's website, surrounded by Plaintiff's Brandy Melville branding,

7  with Plaintiff's Brandy Melville tags, and shipped in Plaintiff's Brandy Melville

8  packaging. In contrast, the accused products are listed as "designed by" the third-

9  party seller; the listing is surrounded by Redbubble branding; the products do not

10 contain Brandy Melville tags; and they are shipped in Redbubble packaging. Given

11 these differences, there was no evidence or reasonable possibility that any consumer

12 would be "tricked into believing that the counterfeit is actually one of the plaintiff's

13 products." *See Arcona, Inc. v. Farmacy Beauty, LLC*, No. 2:17-cv-07058-ODW,

14 2019 WL 1260625, at \*2-3 (C.D. Cal., Mar. 19, 2019), *aff'd*, 976 F.3d 1074 (9th Cir.

15 2020) (granting summary judgment of no counterfeiting); *Beats Elecs., LLC v.*

16 *Fanny Wang Headphone Co.*, No. C-10-5680 MMC, 2011 WL 31198, at \*6 (N.D.

17 Cal. Jan. 5, 2011) (where accused products were sold exclusively on defendant's

18 website, "no reasonable potential purchaser likely would be confused, either initially

19 or at the end of a transaction, as to the source of the product").

20        Moreover, as the Court also instructed the jury, to establish contributory

21 counterfeiting, Plaintiff was required to show that the direct infringer, in this case

22 haleyshore, "intentionally used in commerce a counterfeit mark" and "knew that the

23 mark was counterfeit." (ECF No. 189 at 27).  But there is no evidence whatsoever

24 about haleyshore's knowledge or intentions. This failure of proof on an issue on

25 which the Court specifically instructed the jury also warrants entry of judgment in

26 favor of Redbubble notwithstanding the jury's verdict. *See Idaho Potato Comm'n v.*

27 *G&T Terminal Pack, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (counterfeiting requires

28

2911-1006 / 1869586.1                          8

1    proof that the alleged counterfeiter "knowing[ly]" used a counterfeit mark with the

2    "intent[]" of deceiving).

3                     5.        **The Evidence Does Not Support a Willfulness Verdict**

4         The Court instructed the jury that "[w]illful infringement under the law

5    requires proof that a person acted voluntarily and intentionally and with the specific

6    intent to commit the act" of infringement. (ECF No. 189 at 28).  Plaintiff offered no

7    evidence from which a reasonable jury could find willfulness under this instruction

8    Indeed, in another case, and on very similar facts, Redbubble prevailed against a

9    willfulness claim as a matter of law. *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F.

10   Supp. 3d 1089, 1109 (N.D. Cal. 2021) ("Given that use of trademarked content is

11   difficult to detect without input from the trademark owners, Atari fails to show that

12   Redbubble's process is unreasonable"); *see also Academy of Motion Picture Arts &*

13   *Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWX), 2015 WL 5311085 at

14   *35 (C.D. Cal. Sept. 10, 2015) ("the uncontested evidence regarding [Defendant's]

15   responsiveness to [Plaintiff's] notices as well as [Defendant's] extensive proactive

16   measures aimed at minimizing instances of infringement by its [users] proves

17   [Defendant's] conduct to be the antithesis of willful blindness or bad faith").

18        Here, the following evidence is relevant to the willfulness determination:

19   1) upon receiving notice of the LA Lightning mark when the lawsuit was filed,

20   Redbubble began proactively policing for products bearing that design; 2) thereafter

21   haleyshore managed to upload a single listing for apparel depicting the LA

22   Lightning design, from which two orders were placed by Plaintiff's law firm;

23   3) upon learning of that listing, Redbubble canceled the only orders before any

24   product shipped; and 4) that listing was disabled and there have been no other post-

25   listing notices of apparel depicting the LA Lightning Design.  (Exhs. 115; Tr. at

26   315:8-14; Exh. 633 at 128; Tr. at 427:15-428:10; *see also* ECF No. 103 at 14 n. 1

27   ("Redbubble's conduct in preventing the sale and terminating the user's account may

28   be relevant to any hypothetical assessment of statutory damages")).  On these facts,

1  no reasonable jury could have concluded that Redbubble engaged in willful

2  contributory counterfeiting with respect to the LA Lightning mark.  *Compare, e.g.*,

3  *Evergreen Safety Council v. RSA Network, Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012)

4  (even "[c]ontinued use of a work even after one has been notified of his or her

5  alleged infringement does not constitute willfulness so long as one believes

6  reasonably, and in good faith, that he or she is not infringing").

7  **B.    The Evidence Does Not Support the Statutory Damage Award**

8        If the jury verdict on counterfeiting were upheld, Plaintiff would be entitled to

9  some amount of statutory damages. However, given the absence of any evidence of

10  damage to Plaintiff or profits to Redbubble from the haleyshore listing (or from any

11  other post-lawsuit listing for apparel displaying an LA Lightning design), neither the

12  controlling case law nor Constitutional due process supports the $200,000 award

13  handed down by the jury.

14              1.    **The Amount of Statutory Damages Is Unsupported,**

15                   **Excessive, and a Violation of Due Process**

16        As the Ninth Circuit recently reaffirmed, "[s]tatutory damages are intended as

17  a substitute for profits or actual damage," not to provide plaintiffs "a windfall."

18  *Desiree, LLC v. Manna Textiles, Inc*., 986 F.3d 1253, 1271 (9th Cir. 2021). While

19  statutory damages are also intended to deter future infringement by the defendant

20  and others, courts in this Circuit have consistently held that any "statutory damages

21  award 'must bear a plausible relationship to Plaintiff's actual damages.'" *Atari*

22  *Interactive, Inc. v. Redbubble, Inc.*, --- F. Supp. 3d ----, 2021 WL 2766893, at *4

23  (N.D. Cal. June 29, 2021) (quoting *Michael Grecco Productions, Inc. v. Enthusiast*

24  *Gaming, Inc*., No. 19-CV-06399-LHK, 2020 WL 7227199, at *10 (N.D. Cal. Dec.

25  8, 2020)); *accord, e.g.*, *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal.

26  2014) (reducing statutory damages from $2,000,000 to $45,000 because lack of

27  "plausible relationship to Plaintiff's actual damages" would result in "a windfall").

28  Assessing this relationship typically includes consideration of "the revenues lost by

1  the plaintiff," as well as the value of the trademark(s) in suit (among other things).

2  *Coach Inc. v. Envy*, No. 1:11-CV-1029 LJO GSA, 2012 WL 78238, at *4 (E.D. Cal.

3  Jan. 10, 2012)[2]; see *also J&J Sports Prods. v. Ho*, No. 10-01883, 2010 WL

4  3912179, at *1 (N.D. Cal. Oct. 5, 2010) ("[a] traditional method of determining

5  statutory damages is to estimate either the loss incurred by the plaintiff or the profits

6  made by the defendants.").

7       Although its US affiliate's chief financial officer was one of its two witnesses,

8  Plaintiff here chose not to introduce any financial information whatsoever at trial.

9  As a result, there is no basis to assess any the value of the LA Lightning trademark

10  or any revenues lost by Plaintiff from infringement of that mark. The absence of any

11  revenue to Redbubble from the purported counterfeiting further militates against

12  affirming the jury's statutory damages award; indeed, the fact that there were no

13  sales of purportedly counterfeit apparel, and Plaintiff's delay in reporting the alleged

14  infringement, corroborate the absence of any harm to Plaintiff.

15       Moreover, the Supreme Court has expressly held that a statutory damage

16  award violates Constitutional due process if it is "so severe and oppressive as to be

17  wholly disproportioned to the offense or obviously unreasonable." *St. Louis, I.M. &*

18  *S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). Accordingly, courts have on several

19  occasions struck statutory damage awards under the Lanham Act or "under an

20  analogous provision of the Copyright Act," *UL LLC v. Space Chariot Inc.*, 250 F.

21  Supp. 3d 596, 614 (C.D. Cal. 2017), based on due process concerns. *See, e.g.,*

22  *Capitol Records, Inc. v. Thomas-Rassett*, 799 F. Supp. 2d 999 (D. Minn. 2011)

23

24  [2] The full set of factors set forth in *Coach v. Envy* is as follows: "(1) the expenses

25  saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff;
    (3) the value of the copyright [or trademark]; (4) the deterrent effect on others

26  besides the defendant; (5) whether the defendant's conduct was innocent or willful;

27  (6) whether a defendant has cooperated in providing particular records from which
    to assess the value of the infringing material produced; and (7) the potential for

28  discouraging the defendant."

1    (finding $62,500 per work award for willful infringement constituted a violation of

2    due process given, among other things, the absence of any evidence of damage to

3    plaintiff and the lack of any infringer's profits, and determining that $2,250 per

4    work, or three times the statutory damages minimum, was the maximum permissible

5    statutory damage award); *Sony BMG Music Entertainment v. Tenenbaum*, 721 F.

6    Supp. 2d 85 (D. Mass. 2010) (like *Thomas-Rassett*, court rejected statutory damages

7    award based on due process concerns and determined that $2,250 per work, or three

8    times the statutory damages minimum, was the maximum permissible statutory

9    damage award for defendant's willful copyright infringement).

10       The extensive discussion of due process concerns in *Thomas-Rassett* and

11   *Tenenbaum* supports the applicability of due process concerns to the case at hand,

12   but perhaps the following passage from *Tenenbaum* is the most on point:

13       In summary, the asymmetry between the relatively small harm suffered by

14       plaintiffs and benefit reaped by Tenenbaum, on the one hand, and the jury's

15       extraordinarily high award, on the other, is so extreme as to "jar [the Court's]

16       constitutional sensibilities." The award in this case is much higher than is

17       reasonably necessary to further the legitimate interests of compensating the

18       plaintiffs and deterring future infringement. It lacks any rational foundation

19       and smacks of arbitrariness.

20   721 F. Supp. 2d at 115 (citation omitted; quoting *Pacific Mut. Life Ins. Co. v.*

21   *Haslip*, 499 U.S. 1, 18 (1991)).

22       Applying these principles, and looking solely at the claim for counterfeiting

23   the LA Lightning mark (which is the only basis for the statutory damage award),

24   there is simply nothing in the record that would justify an award of $200,000 for a

25   single violation with no associated sales. While Plaintiff would be entitled to *some*

26   *amount* of statutory damages if the jury's verdict of a counterfeit offer for sale is

27   upheld, the statutory minimum of $1,000 would be more than ample to remedy this

28   technical violation.

2.   **The Absence of Evidence of Damages and Lack of Infringer's Profits Justifies No More than the Statutory Minimum of $1,000**

Where, as here, a plaintiff fails to present evidence of harm and/or there is no evidence of defendant's profit from infringement, an appropriate statutory damage award is the statutory minimum. *See, e.g., Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 987 (E.D. Pa. 1986), and cases cited therein (awarding statutory minimum and noting that "courts have held that minimum statutory damages should be assessed when a plaintiff has sustained minimal, if any, damages"). Indeed, as some courts have observed, the legislative history of the statutory damage provisions of the Copyright Act (which, as previously discussed, are substantially the same as those of the Lanham Act) "seems to contemplate that when a plaintiff does not establish that any damage has resulted from an infringement, the minimum amount of $250 will be awarded." *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, No. 19-CV-01356-VC (TSH), 2021 WL 1222492, at *2 (N.D. Cal. April 1, 2021) (quoting *Bly,* 638 F. Supp. at 987-88). Applying this measure would yield an award of $1,000 in statutory damages, which is still an infinitely greater amount than the harm to Plaintiff and Redbubble's profits from the conduct.

Other courts have held that where there are no actual damages or infringer's profits but there has been a determination of willfulness, it is appropriate to award up to three times the statutory minimum, which for purposes of a Lanham Act counterfeiting violation would be $3,000. *See, e.g., Thomas-Rassett, supra,* 799 F. Supp. 2d at 1012-14 (awarding three times statutory minimum); *Tenenbaum, supra*, 721 F. Supp. 2d at 116-18 (same); *Adobe Systems, Inc. v. Tanvir*, No. 16-cv-6844 CRB, 2017 WL 2986219 (N.D. Cal. July 13, 2017) (awarding two times statutory minimum on Lanham Act claim); *Microsoft Corp. v. Ricketts*, No. C 06-6712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007) (same). This limitation is premised on "a long tradition in the law of allowing treble damages for willful

1  misconduct," including under the Lanham Act (15 U.S.C. § 1117(b)), and the

2  existence of other statutory schemes that "explicitly allow for an increase in

3  statutory damages, up to triple statutory damages, when the statutory violation is

4  willful or demonstrates a particular need for deterrence." *Tenenbaum*, 721 F. Supp.

5  2d at 117 (citing *Capitol Records, Inc. v. Thomas-Rassett*, 680 F. Supp. 2d 1045,

6  1056-57 (D. Minn. 2011)). Such limitation is also consistent with the Supreme

7  Court's jurisprudence in the context of punitive damages awards, holding that

8  "[s]ingle-digit multipliers are more likely to comport with due process, while still

9  achieving the State's goals of deterrence and retribution." *State Farm Mutual*

10  *Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("few awards

11  exceeding a single-digit ratio between punitive and compensatory damages, to a

12  significant degree, will satisfy due process").

13       Because the jury's award violates due process, the Court need not issue a

14  remittitur or offer a new trial. *See Tenenbaum*, 721 F. Supp. 2d at 87-88. At the very

15  least, given the excessiveness of the jury's verdict, the Court would grant a

16  remittitur with a minimum statutory damages award.

17       **C.    The Evidence Does Not Support a Finding of Direct Infringement.**

18            1.    **Plaintiff's Claim Sounds in Copyright Law, Not Trademark**

19                  **Law**

20       In closing arguments, Plaintiff's counsel revealed that its claims  are "not

21  about the designs. It's about linking our designs to our trade name. So if you can

22  figure that out, we don't have to send you designs all the time."  (Tr. at 503:21-22)

23  The linking of Plaintiff's *unregistered* trade name to their designs is at, at heart, a

24  claim of unauthorized copying which is not cognizable under the Lanham Act.

25  "When the claim is more accurately conceived of as *attacking unauthorized*

26  *copying*, [*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)]

27  requires us to avoid recognizing a "species of mutant copyright law" by making

28  such claims cognizable under the Lanham Act. *Slep-Tone Ent'ment Corp. v. Wired*

2911-1006 / 1869586.1                                    14

1  *for Sound Karaoke & DJ Serv.*, LLC, 845 F.3d 1246, 1249 (9th Cir. 2017) (quoting

2  *Dastar*).  The Supreme Court has been "'careful to caution against misuse or over-

3  extension' of trademark and related protections into areas traditionally occupied by

4  patent or copyright.  *Dastar,* 539 U.S. at 34.   The Supreme Court makes clear in

5  *Dastar* that the Lanham Act does not create "a cause of action for, in effect,

6  plagiarism" which is what Plaintiff complains of here.  *Id.* at 36.

7          2.        **There Was No Infringement of the LA Lightning Mark**

8                      **Because the Evidence Does Not Support a Likelihood of**

9                      **Confusion**

10          A trademark infringement claim does not exist where the "allegedly

11  infringing activity does not deceive or mislead consumers about the source of the

12  goods but copies the designs themselves." *LTTB LLC v. Redbubble Inc.*, 840 F.

13  App'x 148, 151 (9th Cir. 2021); *Dastar*, 539 U.S. at 34; see *also International Order*

14  *of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980) (denying

15  infringement claim for copying of plaintiff's insignia on rings because there was no

16  evidence that consumers would deem defendant's use of the insignia "as a

17  designation of origin or sponsorship"); Evidence that a defendant copied without

18  authorization an 'idea, concept or communication'" is not sufficient for a trademark

19  infringement claim.  *Evox Prods. LLC v. AOL, Inc.*, --- F. Supp. 3d ----,  2021 WL

20  1536129 at 3 (C.D. Cal. March 3, 2021) (quoting *Dastar*, *supra*).

21          To distinguish "source identifying use" from an aesthetic use which sounds in

22  copyright, the Trademark Manual of Examining Procedures § 1201.03(a) identifies

23  use on the pocket area of a shirt as source identifying, and courts have followed this

24  limitation: "[a] small, neat, and discrete word or design feature (e.g., small design of

25  animal over pocket or breast portion of shirt) may be likely to create the commercial

26  impression of a trademark, whereas a larger rendition of the same matter

27  emblazoned across the front of a garment . . . may be perceived merely as a

28  decorative or ornamental feature of the goods." *Teal Bay Alls., LLC v. Southbound*

1  *One, Inc.*, No. CIV.A. MJG-13-2180, 2015 WL 401251, at *10 (D. Md. Jan. 26,

2  2015) (quoting same); *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1142 (D. Or.

3  2011) (similar). Plaintiff produced no evidence of such a use in this litigation.

4           Applying these standards, there was no evidence from which a reasonable

5  jury could find that the alleged direct infringers used the LA Lightning design on

6  their apparel in a source identifying or trademark manner, as opposed in an

7  ornamental manner. While Plaintiff presented testimony that its own products

8  bearing the LA Lightning design were a "hot seller" because it was a "nice design"

9  or "appealing" to consumers, "evidence of the popularity of [goods] does not create

10  a triable issue as to whether consumers buy the products because they identify [the

11  trademark owner] as the source of the goods. *LTTB LLC v. Redbubble, Inc.,* 840 F.

12  App'x 148, 150 (9th Cir. 2021).  And Plaintiff offered no evidence other than the

13  self-interested testimony of its company witnesses regarding any source

14  identification associated with the LA Lightning Mark or the accused products,

15  testimony that is "insufficient to establish secondary meaning" as a matter of law.

16  *Filipino Yellow Pgs. v. Asian Journal Publications*, 198 F.3d 1143, 1151-52 (9th

17  Cir. 1999) Indeed, Plaintiff's testimony that it used the Brandy Heart mark, not the

18  LA Lightning design, on its hang tags and packaging (Tr. at 120:18-121:2, Exh.

19  288) actually undermines Plaintiff's claim that it used the design for branding. *Teal*,

20  2015 WL 401251, at *12; *see also In Re Pro-Line*, 28 U.S.P.Q.2d 1141 (T.T.A.B.

21  Aug. 16, 1993) (the more another mark is placed such that it is "likely to be viewed

22  as the source indicator," the more a decorative feature is "devoid of trademark

23  significance").

24           Indeed, Redbubble prevailed on this precise issue as a matter of law and had

25  that determination affirmed on appeal in the *LTTB* case. There, the plaintiff sought

26  to hold Redbubble liable for infringement of its trademarked phrase "Lettuce Turnip

27  the Beet" because third-party sellers were offering shirts and other products copying

28  and prominently displaying that phrase. The district court granted summary

1   judgment that the plaintiff could not enforce her marks against the accused products,

2   holding that there was no evidence "that any purchaser of allegedly infringing items

3   inferred from use of the [mark] that the product was produced, sponsored, or

4   endorsed by any particular person or entity, such as [plaintiff]." 385 F.Supp.3d at

5   922. The Ninth Circuit affirmed using reasoning that is equally applicable here,

6   holding that "the evidence does not raise an issue of fact as to whether consumers

7   buy the products because they identify [plaintiff] as the source."  840 F. App'x at

8   151.

9       Here, as in *LTTB*, Plaintiff essentially "seeks to claim, but is by no means

10  entitled to, what amounts to [design] patent or copyright type protection for" the LA

11  Lightning design.[3] *Teal*, 2015 WL 401251, at *12. But as the Ninth Circuit held in

12  *Job's Daughters*, one can lawfully use a design popularized by another to

13  "capitalize on a market or fad created by another provided that it is not

14  accomplished by confusing the public." 633 F.2d at 918–19; *see also Fleischer*

15  *Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1074 (C.D. Cal. 2012)

16  ("Considering that Defendants use the words Betty Boop as an artistic design

17  element and identify themselves as the source of the goods, their use of the words

18  Betty Boop simply cannot be viewed as source identifying," particularly given that

19  "Plaintiff has not presented a single instance of a consumer who was misled about

20  the origin or sponsorship of Defendants' products." Accordingly, Plaintiff has failed

21  to establish the underlying direct infringement on which its contributory claim

22  against Redbubble necessarily rests.

23

24

25

26  [3] Thus, whether the graphic is an original design is irrelevant. To "'acquire
ownership of a trademark it is not enough to have invented the mark first or even to

27  have registered it first; the party claiming ownership must have been the first to
actually use the mark.'" *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F.

28  Supp. 2d 1132, 1141 n.35 (C.D. Cal. 2007) (citation omitted).

### 3. There Was No Infringement of the Unregistered Marks Under 15 U.S.C. § 1125(a)

Plaintiff's claim for its unregistered marks is based on 15 U.S.C. § 1125(a), false designation of origin. *Dastar* limits liability for the "origin of goods" designation in § 1125(a) to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodie[d] in those goods." 539 U.S. at 37. The Supreme Court explained that its decision in *Wal-Mart Stores, Inc. v. Samra Bros., Inc.*, 529 U.S. 205 (2000) would be moot if 15 U.S.C. § 1125(a) were applied as plaintiff would like here: "'[O]rigin of goods' in the Lanham Act refer[s] to the producer of the clothes, and not the producer of the (potentially) copyrightable or patentable designs that the clothes embodied." *Id.* Here plaintiff introduced no evidence of a "false designation of origin" which would lead to consumer confusion. *See Freecycle Network, Inc. v. Oey,* 505 F.3d 898, 902 (9th Cir. 2007). To the contrary, Redbubble's consistent use of housemarks and identification of artists (*e.g.*, Exhs. 375, 401, 403, 404), Redbubble labelling and packaging (*e.g.*, Exhs. 172 at 1, 173 at 2, 296 at 1), and the fact that the goods are produced *after they are ordered* (*e.g.*, Tr. at 409:11-16; ECF No. 103 at 7), dispels any possibility of likelihood of confusion as to the *producer* of the tangible goods that are offered for sale, requiring that the verdict for contributory infringement by false designation of origin under 15 U.S.C. § 1127(a), be overturned.

### D. Plaintiff's Counsel Committed Misconduct During Closing Arguments

Plaintiff argued in closing that the Court's "stitch-for-stitch" instruction on counterfeiting was "just not the law," and also that jurors should "tell Redbubble that a slap on the wrist isn't good enough…. Only you can send this message, but it has to be loud and clear…. The message has to be loud and clear enough to go all the way to Australia where company that's on its way to a billion dollars, much of it on the backs of counterfeit products, needs to be told that it's not okay." (Tr. at

1  501:9-14, 505:20-506:11).  Plaintiff's closing argument focuses on the foreign

2  headquarters of defendant Redbubble, and encourages the jury to ignore the Court's

3  jury instructions, and to punish Redbubble for alleged counterfeiting of third-party

4  intellectual property that was not in evidence – and that was, in fact, barred by

5  Redbubble's motion *in limine* no. 6. (ECF No. 60).  A new trial is warranted on the

6  ground of attorney misconduct where the "flavor of the misconduct … sufficiently

7  permeate[s] an entire proceeding to provide conviction that the jury was influenced

8  by passion and prejudice in reaching its verdict."  *Anheuser-Busch, Inc. v. National*

9  *Beverage Dist.*, 69 F.3d 337, 346 (9th Cir. 1995).

10        Conduct may "permeate" the trial even though it only occurs at the end of the

11  trial or in closing statement.  *Bird v. Glacier Elec. Coop., Inc.,* 255 F.3d 1136, 1145

12  n.16 (9th Cir. 2001).  In *Bird*, the Ninth Circuit held that if no contemporaneous

13  objection is made at the time of the prejudicial conduct, the court will review for

14  plain or fundamental error.  *Id.* at 1148.   The Ninth Circuit found that the closing

15  argument based on nationalist appeals and defendant's unproven responsibility for

16  other bad acts made the proceeding fundamentally unfair; "we cannot now assess

17  the amount the jury might have awarded for compensatory or for putative damages,

18  absent improper argument."  *Bird*. at 1152.  Here, as in *Bird*, the improper closing

19  rebuttal arguments based on nationalistic bias and unfounded allegations of bad

20  behavior "had the improper effect of encouraging the … jury to impose an

21  impassioned sanction against" defendant.  *Id*.  Were this Court not overturning the

22  jury's verdict and entering judgment in favor of Redbubble, it would set aside the

23  verdict and order a new trial.

24  **V.      CONCLUSION**

25        For the foregoing reasons, the Court **GRANTS** Redbubble's Motion and

26  reverses the jury's verdict in all respects.  The Court hereby **ENTERS**

27

28

1   **JUDGMENT** for Defendant on Plaintiff's remaining claim, for contributory

2   counterfeiting and infringement.

3           **IT IS SO ORDERED.**

4

5   DATED: _____, 2021       _____

6                                       Honorable R. Gary Klausner
                                        United States District Court Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2911-1006 / 1869586.1                        20