**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| Y.Y.G.M. SA, DBA Brandy Melville, a Swiss corporation, | No. 21-56150 |
| *Plaintiff-Appellant,* | D.C. No. 2:19-cv-04618-RGK-JPR |
| v. | |
| REDBUBBLE, INC., | OPINION |
| *Defendant-Appellee.* | |

| | |
|---|---|
| Y.Y.G.M. SA, DBA Brandy Melville, a Swiss corporation, | No. 21-56236 |
| *Plaintiff-Appellee,* | D.C. No. 2:19-cv-04618-RGK-JPR |
| v. | |
| REDBUBBLE, INC., | |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted January 12, 2023
Pasadena, California

Filed July 24, 2023

Before:  Consuelo M. Callahan, Ryan D. Nelson, and Holly
A. Thomas, Circuit Judges.

Opinion by Judge R. Nelson

## SUMMARY[*]

### Trademark

The panel affirmed in part and vacated in part the district
court's judgment after a jury trial in an action brought under
the Lanham Act against Redbubble, Inc., by Y.Y.G.M. SA,
doing business as Brandy Melville.

Brandy Melville, a manufacturer of its own clothing,
home goods, and other items, owns several trademarks,
including the registered Brandy Melville Heart Mark and LA
Lightning Mark.  Brandy Melville alleged infringement by
Redbubble, which owns and operates an online marketplace
where artists can upload their work to be printed on various
products and sold.  The district court granted summary
judgment to Redbubble on all of Brandy Melville's claims
except its contributory infringement and counterfeiting
claims.  The jury found Redbubble liable for (1) willful

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

contributory counterfeiting of the Heart Mark and Lightning Mark, (2) contributory infringement of those two marks, and (3) contributory infringement of unregistered trademarks that were "Brandy Melville" variations. After the jury's verdict, the district court granted Redbubble's motion for judgment as a matter of law on the contributory counterfeiting claim for the Heart Mark. The district court let the verdict stand for the remaining claims, and it denied Brandy Melville a permanent injunction, attorney fees, and prejudgment interest.

Vacating the district court's order granting in part and denying in part Redbubble's motion for judgment as a matter of law, the panel held that a party is liable for contributory infringement when it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement. A party meets this standard if it is willfully blind to infringement. Agreeing with other circuits, the panel held that contributory trademark liability requires the defendant to have knowledge of specific infringers or instances of infringement. General knowledge of infringement on the defendant's platform, even of the plaintiff's trademarks, is not enough to show willful blindness. The panel remanded for reconsideration of Redbubble's motion under the correct legal standard.

The panel held that, in granting judgment as a matter of law to Redbubble on the claim for contributory trademark counterfeiting as to the Heart Mark, the district court further erred by failing to evaluate the evidence of likelihood of confusion under the correct legal standard. The district court erroneously glossed over whether the Heart Mark was so strong and distinctive that its presence alone caused confusion. The district court also addressed whether the parties' products were "stitch-for-stitch" copies, rather than

addressing whether, based on the record, confusion could have resulted because the products on Redbubble's website bearing the Heart Mark were the kinds of trademarked goods that Brandy Melville sells.

The panel also vacated the district court's denial of Brandy Melville's motion to permanently enjoin Redbubble from referencing, mentioning, and using BRANDY MELVILLE, Brandy Melville's registered trademarks, and Brandy Melville's unregistered variations. The district court concluded that Brandy Melville's pre-litigation delay rebutted a statutory presumption of irreparable harm, and the remaining testimony from a Brandy Melville employee could not establish irreparable harm. The panel held that the district court did not err by considering the delay, but it abused its discretion in determining that the statutory presumption was rebutted and that there was no irreparable harm because it improperly discounted the relevance of future harm. The panel remanded for the district court to reconsider, after redetermining Redbubble's liability, how the existence of future harm affects irreparable harm and the other factors governing injunctive relief.

The panel affirmed the district court's denial of prejudgment interest to Brandy Melville, which elected and was awarded statutory damages under 15 U.S.C. § 1117(c), rather than actual damages and profits under § 1117(a). The panel held that allowing prejudgment interest on statutory damages would be inconsistent with the rationale underlying statutory damages, which serve more purposes than only compensating the victim.

## COUNSEL

Christopher Landau (argued), Ellis George Cipollone O'Brien Annaguey LLP, Washington, D.C.; Keith J. Wesley, Ryan Q. Keech, and Jason Y. Kelly, Ellis George Cipollone O'Brien Annaguey LLP, Los Angeles, California; for Plaintiff-Appellant.

Jospeh Gratz (argued) and Matthaeus Martino-Weinhardt, Morrison & Foerster LLP, San Francisco, California; Allyson R. Bennett, Morrison and Foerster LLP, Los Angeles, California; Kenneth B. Wilson, Coastwide Legal, Half Moon Bay, California; Daralyn J. Durie, Morrison & Foerster, San Francisco, California; for Defendant-Appellee.

## OPINION

R. NELSON, Circuit Judge:

After a jury found that Redbubble, Inc. had violated Brandy Melville's trademarks, the district court granted partial judgment as a matter of law to Redbubble on one trademark claim. Both parties appealed. Redbubble asks us to decide the knowledge standard governing contributory trademark liability, and Brandy Melville contends it was entitled to post-trial relief. We partially affirm, partially vacate, and remand.

### I

Y.Y.G.M. SA, doing business as Brandy Melville, manufactures its own clothing, home goods, and other items. It owns several trademarks, including the Brandy Melville

Heart Mark (Heart Mark) and the LA Lightning Mark (Lightning Mark). The Heart Mark consists of the words "Brandy Melville" in black font with a pink heart in between them. It is registered for use on clothing, stickers, jewelry, and ornaments, and Brandy Melville sells signs and wall hangings bearing the Heart Mark. The Lightning Mark features the words "Los Angeles" in yellow font with the "L" styled like a lightning bolt. It is registered for use on clothing, and Brandy Melville sells t-shirts and hooded sweatshirts bearing the Lightning Mark.

Redbubble owns and operates an online marketplace where artists can upload their artwork to be printed on various products and sold. Redbubble collects payment, sends the order to a manufacturer, arranges shipping, and handles refunds. Redbubble does not inspect goods before shipping, as third parties fulfill orders and ship products in Redbubble-branded packaging. Artists and consumers have no direct contact.

In 2018, Brandy Melville notified Redbubble of infringing products listed on Redbubble's website. Redbubble removed those listings and requested that Brandy Melville notify it of additional listings it wanted removed. After finding additional infringing products, Brandy Melville sent a second notice the next day.

A year later, Brandy Melville sued Redbubble under various trademark theories. The district court granted summary judgment to Redbubble on all of Brandy Melville's claims except the contributory infringement and counterfeiting claims. The parties went to trial on those claims, and a jury found Redbubble liable for (1) willful contributory counterfeiting of the Heart Mark and Lightning Mark, (2) contributory infringement of those two marks, and

(3) contributory infringement of unregistered trademarks that were "Brandy Melville" variations.

After the verdict, the district court granted Redbubble's motion for judgment as a matter of law on the contributory counterfeiting claim for the Heart Mark because Brandy Melville failed to present evidence of any products on Redbubble's website with a spurious Heart Mark similar to legitimate Brandy Melville products. The district court let the verdict stand for the remaining claims.

The district court also denied Brandy Melville a permanent injunction, attorney fees, and prejudgment interest. First, it held that Brandy Melville's one-year delay between finding infringing products on Redbubble's website and filing a lawsuit undercut the requisite irreparable harm. Second, it concluded that Brandy Melville was not entitled to attorney fees because the case was not "exceptional" under the Lanham Act, 15 U.S.C. § 1051, *et seq.* Finally, it held that 15 U.S.C. § 1117(a) does not allow prejudgment interest.

Redbubble appeals the denial of judgment as a matter of law for the contributory infringement claims and for willful contributory counterfeiting of the Lightning Mark.

Brandy Melville appeals the district court's grant of judgment as a matter of law to Redbubble on the contributory counterfeiting claim for the Heart Mark, and the denial of a permanent injunction, attorney fees, and prejudgment interest.

## II

We have jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. § 1291.

"We review de novo a district court's decision to grant or deny judgment as a matter of law." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 941 (9th Cir. 2011).

"We review a trial court's decision to deny injunctive relief for an abuse of discretion," *Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894, 903 (9th Cir. 1997), but review the "legal standards it applied . . . de novo," *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).

We review a decision whether to award fees under the Lanham Act for abuse of discretion. *Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020).

We review de novo a district court's interpretation of whether prejudgment interest is permitted under the statute, *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 716 (9th Cir. 2004), and for abuse of discretion the grant or denial of prejudgment interest, *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019).

III

A

We begin with Redbubble's argument that the district court applied the wrong standard for contributory liability under the Lanham Act, a novel question before our court.

The Lanham Act provides a civil cause of action against anyone who "without the consent of the registrant" uses in commerce a "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to

deceive."   15 U.S.C.   §   1114(1)(a).    A party that "intentionally induces another to infringe a trademark" or who "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement" is "contributorily responsible for any harm done as a result of the deceit."   *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982).  This appeal is about the second form of contributory liability recognized in *Inwood* and the meaning of the "knows or has reason to know" standard.  *Id.*

We have recognized that a party meets the "knows or has reason to know" standard if it is willfully blind to infringement.  *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996).  Willful blindness requires (1) "subjective[ ] belie[f] that infringement was likely occurring" and (2) "deliberate actions to avoid learning about the infringement."  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013).  In other words, the defendant must have "t[aken] active steps to avoid acquiring knowledge."  *Id.*  Redbubble contends that willful blindness requires knowledge of specific infringers or instances of infringement.  Brandy Melville argues that specific knowledge is not required because defendants have a duty to take reasonable corrective action upon gaining general awareness.

While this question is novel in our circuit, we do not write on a blank slate.  For contributory *copyright* infringement, we require knowledge of specific infringers or instances of infringement.  *See id.* at 1072–73.  In *Luvdarts*, we concluded that the defendant lacked specific knowledge despite receiving notices that were "150-page-long lists of titles" that the plaintiff had copyrighted.  *Id.*  We explained that these notices were insufficient because they did not

"identify which of these titles were infringed, who infringed them, or when the infringement occurred." *Id*. at 1073. "Willful blindness of specific facts would establish knowledge for contributory liability," we explained, but the plaintiff's allegation of "indifferen[ce] to the risk of copyright infringement" was legally insufficient. *Id.* And because "trademark infringement liability is more narrowly circumscribed than copyright infringement," the standard for contributory trademark infringement would be at least as demanding. *See Fonovisa*, 76 F.3d at 265.

Such a rule also accords with our sister circuits. In a case involving counterfeit Tiffany jewelry being sold on eBay, the Second Circuit held that "a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods" to be liable for contributory trademark infringement. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010). Instead, defendants must have "contemporary knowledge of which *particular* listings are infringing or will infringe in the future." *Id.* (emphasis added); *see also Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 255 (2d Cir. 2021) ("[C]ontributory trademark infringement based on willful blindness does not create liability simply because of a defendant's 'general knowledge as to counterfeiting on its' property . . . or because a defendant 'fail[ed] to anticipate that others would use its service to infringe a protected mark.'" (quoting *Tiffany*, 600 F.3d at 107, 110 n.15)). Because Tiffany "did not identify particular sellers" who were offering counterfeit goods and eBay removed counterfeit listings identified by other sources, eBay was not liable for contributory trademark infringement. *Tiffany*, 600 F.3d at 109.

The Fourth Circuit reached a similar conclusion.
"[G]eneral knowledge that some percentage of the
purchasers of a product or service is using it to engage in
infringing activities" is insufficient for contributory
trademark infringement because "the defendant must supply
its product or service to 'identified individuals' that it knows
or has reason to know are engaging in trademark
infringement." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d
144, 163 (4th Cir. 2012).   There, the plaintiff survived
summary judgment with evidence of "the dates when
Rosetta Stone advised Google that a Sponsored Link was
fraudulent, the domain names associated with each such
Sponsored Link, the text of each Sponsored Link, and the
date and substance of Google's response." *Id.* (citation
omitted).   This amounted to over 200 instances of
infringement, and Google apparently allowed the same
advertisers to use the Rosetta Stone mark after these notices.
*Id.*  This evidence precluded summary judgment because it
established a question of fact as to whether Google refused
to act upon specific knowledge. *Id*. at 165.

So too in the Tenth Circuit.   That court's decision
concerned Google's AdWords program, which allowed
advertisers to bid on keywords that, when entered into
Google's search engine, returned the advertiser's sponsored
links. *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d
1229, 1235 (10th Cir. 2013).   1-800 Contacts owned the
mark "1800CONTACTS." *Id.*   After discovering that
Google searches for its own mark resulted in paid ads for
Lens.com websites, 1-800 Contacts sued Lens.com for

service-mark infringement.[1]  *Id.*   Discovery revealed that Lens.com did not bid on 1-800 Contacts's service mark, but two Lens.com affiliates (third parties who publish ads on its behalf) had bid on the keyword "1800Contacts" and its close variants.  *Id.* at 1237.  One of those affiliates had published an ad for a Lens.com website that used the phrase "1800 Contacts."  *Id.*

The Tenth Circuit concluded, on summary judgment, that "a rational juror could find that Lens.com knew that at least one of its affiliates was using 1-800's service mark in its ads yet did not make reasonable efforts to halt the affiliate's practice." *Id.* at 1252.  The identity of the affiliate did not matter because Lens.com did not need to "know the identity of the infringer to stop the allegedly infringing practice without affecting legitimate conduct[.]" *Id.* at 1254.  Rather, once Lens.com "learned that one of its affiliates had used 1-800's mark in the content of an ad," sending an email blast to all affiliates forbidding such use would stop infringement without interfering with lawful conduct.  *Id.* That said, the court recognized that the defendant "has no obligation under contributory-infringement doctrine to stop a practice . . . simply because the practice might be exploited by infringers." *Id.* at 1253–54.  But because Lens.com knew of a specific instance of infringement and was uniquely positioned to stop infringement without shutting down lawful business, its failure to do so could result in contributory liability.

---

[1] A service mark is "similar to a trademark," *1-800 Contacts*, 722 F.3d at 1238, and is used "to identify and distinguish the services of one person . . . from the services of others and to indicate the source of the services," 15 U.S.C. § 1127.

Common to these cases is that willful blindness requires the defendant to be aware of specific instances of infringement or specific infringers.  Without that knowledge, the defendant need not search for infringement.  General knowledge of infringement on the defendant's platform—even of the plaintiff's trademarks—is not enough to show willful blindness.  *See Tiffany*, 600 F.3d at 110 ("eBay appears to concede that it knew as a general matter that counterfeit Tiffany products were listed and sold through its website. . . .  Without more, however, this knowledge is insufficient to trigger liability.").  We hold that willful blindness for contributory trademark liability requires the defendant to have specific knowledge of infringers or instances of infringement.

As for Brandy Melville's contention that Redbubble had a duty to look for infringement, persuasive decisions from other circuits hold that the defendant has no such duty until it gains the specific knowledge necessary to trigger liability.  "There is no inherent duty to look for infringement by others on one's property."  *Omega SA*, 984 F.3d at 255; *see also Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) (The willful blindness standard "does not impose any duty to seek out and prevent violations.").  Instead, willful blindness arises when a defendant was "made aware that there was infringement on its site but . . . ignored that fact."  *Omega SA*, 984 F.3d at 255 (quoting *Tiffany*, 600 F.3d at 110 n.15).

Once a defendant knows about specific instances of infringement, "bona fide efforts to root out infringement" could "support a verdict finding no liability, even if the defendant was not fully successful in stopping infringement."  *Id.*  The duty to stop (or root out) infringement does not kick in, however, until the defendant

has that specific knowledge. And, again, that duty only covers specific instances of infringement the defendant knows or has reason to know about. *See Tiffany,* 600 F.3d at 109–10 (holding that addressing specific notices of counterfeit Tiffany products was sufficient, even though eBay "knew as a general matter that counterfeit Tiffany products were listed and sold through its website.").

What constitutes bona fide efforts will vary based on the context. For instance, a reasonable response for a flea market might not be reasonable for an online marketplace with millions of listings. *Cf. Coach, Inc. v. Goodfellow*, 717 F.3d 498, 504 (6th Cir. 2013) (affirming contributory liability where defendant, the owner and operator of a flea market, "had actual knowledge that the infringing activity was occurring" and knew of "particular vendors" that were infringing yet failed to "deny access to offending vendors or take other reasonable measures"). Removing infringing listings and taking appropriate action against repeat infringers in response to specific notices may well be sufficient to show that a large online marketplace was not willfully blind. *See Tiffany*, 600 F.3d at 109 ("[A]lthough [notices of claimed infringement] and buyer complaints gave eBay reason to know that certain sellers had been selling counterfeits, those sellers' listings were removed and repeat offenders were suspended from the eBay site.").

We accordingly vacate and remand for reconsideration of Redbubble's motion for judgment as a matter of law under the correct legal standard.[2]

---

[2] We do not reach whether Brandy Melville showed willfulness to warrant heightened damages for the Lightning Mark. *See* § 1117(c)(2).

B

We next consider Brandy Melville's appeal. Brandy Melville asserts that the district court erred by granting judgment as a matter of law to Redbubble on its contributory trademark counterfeiting claim as to the Heart Mark and denying a permanent injunction, attorney fees, and prejudgment interest.

1

The district court set aside the jury verdict and granted judgment as matter of law to Redbubble on one trademark claim. It held that a contributory trademark counterfeiting violation had to occur with similar products. The district court held that Brandy Melville failed to show that any product bearing the Heart Mark from Redbubble's website was similar to legitimate Brandy Melville products. Brandy Melville argues that it only needs to show that Redbubble used the trademark on goods of the type for which the Heart Mark is registered, rather than on goods comparable to Brandy Melville products being sold. Redbubble defends the district court's reasoning and argues that counterfeiting requires comparison of the whole product, not just the marks. Although the district court may reach a different conclusion when it reconsiders contributory liability under the specific knowledge standard, a separate error independently warrants vacating and remanding here.

---

We instead vacate the district court's willfulness finding and the damages awarded consistent with that finding. We remand for the district court to reconsider that issue after it revisits the motion for judgment as a matter of law, as its determination of liability precedes damages.

Like trademark infringement claims, trademark counterfeiting requires the plaintiff to show a likelihood of confusion. *See Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1079 (9th Cir. 2020). The use of a counterfeit "is obviously intended to confuse consumers," and we have described a counterfeiting claim as "merely the hard core or first degree of trademark infringement." *Id.* (cleaned up). The likelihood of confusion standard requires trial courts to "review the product as a whole." *Id.* at 1080. Even identical marks may be unlikely to confuse if the geographic market, industry, or product design sufficiently differentiates the counterfeit from the original. *Id.* On the other hand, "[t]here may be times the mark itself is so strong in the marketplace that the use of an identical mark by itself may cause consumer confusion, even if other aspects of the products are different." *Id.* at 1080 n.4.

The district court erred by glossing over whether the Heart Mark was so strong and distinctive that its presence alone causes confusion. It also erred because it analyzed the wrong question. The question is not, as the district court concluded, whether products are "stitch-for-stitch" copies; it is whether, based on the record, confusion could have resulted because the products on Redbubble's website bearing the Heart Mark are the kinds of trademarked goods Brandy Melville sells.

The Lanham Act defines a counterfeit as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. And a "trademark" is "any word, name, symbol, or device, or any combination thereof" that is "used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by

others . . . ." *Id.*  The text does not require counterfeit goods to be exact replicas of existing merchandise.

This makes sense given that a "strong and distinctive" trademark may "have acquired great fame" on its own, to the point that its mere presence confuses, even on different products. *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1274 (9th Cir. 1982); *see also Arcona*, 976 F.3d at 1080 n.4.  Confusion is more likely here because Redbubble's website sells "exact copies" of the Heart Mark on trademarked goods that Brandy Melville sells (home décor) and other goods for which its trademark is only registered (stickers).  *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).  The key inquiry is whether there is likelihood of confusion, not whether the products are seemingly identical.  *See State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720–22 (9th Cir. 2005) (likelihood of confusion from unlicensed use of service mark where mark owner sells nothing).

The district court failed to evaluate the evidence of confusion under the correct legal standard.  The evidence that Brandy Melville produced at trial could support a jury finding of likelihood of confusion.  Brandy Melville offered screenshots from Redbubble's website of a metal print of the Heart Mark, a wall tapestry featuring the Heart Mark repeated over multiple rows, and a sticker with the Heart Mark.  Brandy Melville's executive Vice President and Chief Financial Officer testified that he saw the Heart Mark on t-shirts and hats on Redbubble.  Brandy Melville also introduced a spreadsheet of Redbubble items substantially like the Heart Mark, including stickers.  As for Brandy Melville's own products, it submitted photos of its signs and wall hangings bearing the Heart Mark.  The Patent and

Trademark Office Registration for the Heart Mark says that it is used with "stickers," "hats," and "tee-shirts," among other items.  The district court should have evaluated whether this evidence supported a likelihood of confusion without requiring a stitch-for-stitch copy.

Because we conclude that the district court must reevaluate whether to enter judgment as a matter of law on the contributory liability claims, the district court may reevaluate the likelihood of confusion in light of those rulings on remand.  We therefore vacate the district court's partial grant of judgment as a matter of law to Redbubble and remand for further proceedings consistent with this opinion.

2

Next, Brandy Melville appeals the district court's denial of a permanent injunction.  Separate from the need to reevaluate the merits on remand, the district court's analysis on remand requires correction of errors in its evaluation of whether Brandy Melville experienced irreparable harm.

Normally, a party seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (applying *eBay* factors in trademark infringement case).  The Lanham Act adds a statutory layer to the irreparable harm analysis for trademark infringement.  The Act benefits

trademark holders by creating "a rebuttable presumption of irreparable harm" when a permanent injunction is sought to remedy an established trademark violation.   15 U.S.C. § 1116(a).

Brandy Melville sought to permanently enjoin Redbubble from referencing, mentioning, and using BRANDY MELVILLE, Brandy Melville's registered trademarks, and Brandy Melville's unregistered variations. The district court concluded that Brandy Melville's pre-litigation delay rebutted the statutory presumption. Lacking the benefit of the presumption, the district court found that the remaining testimony from a Brandy Melville employee could not establish irreparable harm. Brandy Melville argues that pre-litigation delay is legally irrelevant to the permanent injunction irreparable harm analysis and alternatively that the district court abused its discretion.

Certainly, the movant's delay is relevant to a permanent injunction. Extreme delay in seeking relief, for example, can give rise to laches, an affirmative defense to a permanent injunction. *See Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1027 (9th Cir. 2018); *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 989–90 (9th Cir. 2009) ("[Laches] embodies the principle that a plaintiff cannot sit on the knowledge that another company is using its trademark, and then later come forward and seek to enforce its rights."). And delay in seeking a preliminary injunction may also undermine a permanent injunction.  *See Simon Prop. Grp., LP v. mySIMON, Inc.*, 282 F.3d 986, 990–91 (7th Cir. 2002) (considering voluntary abandonment of a preliminary injunction in determining irreparable harm for a permanent injunction).  The district court did not err by considering the delay.

That said, the district court abused its discretion in determining that the statutory presumption was rebutted and that there was no irreparable harm.  An abuse of discretion occurs "where the district court applied the incorrect legal rule or where the district court's application of the law to the facts was: (1) illogical; (2) implausible; or (3) without support in inferences that may be drawn from the record." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010).

Generally, "delay is but a single factor to consider in evaluating irreparable injury; courts are 'loath to withhold relief solely on that ground.'" *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984)).  A successful trademark plaintiff "is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [infringer], which has shown by its conduct that it is not to be trusted." *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532 (1924); *accord Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1314 (9th Cir. 1997).

The significance of the delay depends on context.  For example, "tardiness is not particularly probative in the context of ongoing, worsening injuries." *Arc of Cal.*, 757 F.3d at 990.  Meanwhile, delay can be dispositive when its length substantially outweighs any upsides from the injunction.  For instance, in the context of a preliminary injunction, a three-year delay between when the trademark holder learned of the infringement and when it filed suit revealed that "[a]ny injury that [the trademark holder] would suffer before trial on the merits would be a relatively short extension of the injury that [the trademark holder]

knowingly suffered for three years before it filed suit." *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984).

We have emphasized that the Lanham Act's statutory presumption underscores the trademark holder's ability to control its trademark's use. In *AK Futures LLC v. Boyd Street Distro, LLC*, we affirmed the district court's finding that the trademark holder had shown irreparable harm. 35 F.4th 682, 694 (9th Cir. 2022). There, the infringer submitted a declaration that it would stop selling the infringing products and argued that the declaration rebutted the presumption and the showing of irreparable harm. *Id.* Because the declaration "contain[ed] a number of admissions that call into question [the infringer's] ability to adequately control the flow of products through its store," suggesting "a business structure without safeguards against selling counterfeit products," we concluded that the declaration did not rebut the presumption. *Id.*

The district court did not explain how a delay has equal bearing in the permanent injunction context (where the injunction protects established rights that a jury found were violated) rather than the preliminary injunction context (where the injunction preserves the status quo pending litigation). *See Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam) ("The purpose of [a preliminary injunction] is not to conclusively determine the rights of the parties . . . but to balance the equities as the litigation moves forward."). Nor did it explain how the one-year delay indicates that no *future* harms would result despite the jury's verdict in Brandy Melville's favor on its infringement claims and Brandy Melville's testimony about future harms arising from a loss of control. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("Evidence of loss of control over business

reputation and damage to goodwill could constitute irreparable harm."). A Brandy Melville employee testified that Brandy Melville "take[s] pride in [the] authenticity of our product, and it seems that Redbubble is just making knockoffs of our brand, and that is not fair for our customers receiving a knockoff item that is not actually Brandy Melville." Counterfeits also affect Brandy Melville's sales strategies because some marks, like the Lightning Mark, go in and out of circulation and are not always available for purchase. This testimony goes exactly to harms that arise from losing control of a trademark. *See Herb Reed*, 736 F.3d at 1250; *see also adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756–57 (9th Cir. 2018) (affirming irreparable harm finding based on employee testimony about efforts to control reputation and supply of products). The district court abused its discretion by discounting the relevance of future harm. *See La Quinta Worldwide*, 762 F.3d at 879 (failure to consider a relevant factor is an abuse of discretion).

We thus vacate the district court's denial of a permanent injunction. We remand for the district court to reconsider, after redetermining Redbubble's liability, how the existence of future harm affects irreparable harm and the other factors governing injunctive relief consistent with this opinion. *See id.* at 880 (remanding for reconsideration where "district court's analysis does not discuss a fact we think relevant to weighing the equities").

3

Finally, Brandy Melville contends that the district court erred in denying prejudgment interest. Brandy Melville elected statutory damages under § 1117(c) but sought prejudgment interest under § 1117(a). The district court denied prejudgment interest because § 1117(a) does not

expressly provide for it.  Noting that this is a novel issue in the Ninth Circuit, the district court explained that the express inclusion of prejudgment interest under § 1117(b)—the treble damages provision—suggests that Congress intentionally excluded prejudgment interest from § 1117(a). We affirm the district court, but for different reasons.

Section 1117 sets out three types of remedies.  When a plaintiff establishes a violation of any registered mark, subsection (a) makes available to the plaintiff, subject to equitable considerations, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." § 1117(a).  For intentional violations, subsection (b) provides for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" and further specifies that "the court may award prejudgment interest on such amount[.]"   § 1117(b).   Subsection (c) allows a plaintiff to elect, "instead of actual damages and profits under subsection (a), an award of statutory damages" between $1,000 and $200,000 per counterfeit mark, or for a willful violation, up to $2,000,000 per counterfeit mark. § 1117(c).  Only § 1117(b) mentions prejudgment interest.

Brandy Melville elected and was awarded statutory damages under § 1117(c).  Though the district court did not address the effect of electing damages under § 1117(c), we find the rationale underlying statutory damages to be dispositive.  "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."  *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987); *see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 n.7 (1995).  Statutory damages differ meaningfully from actual damages: while

actual damages only compensate the victim, statutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all those purposes. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994); *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1114–15 (9th Cir. 2012) (reversing enhancement of actual damages because district court enhanced damages to punish rather than compensate).

Allowing prejudgment interest on statutory damages may inflate them to amounts disproportionate to what Congress thought fit to remedy those harms. *Cf. Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1270 (9th Cir. 2021) (expressing concern about "potentially astronomical statutory damages awards" resulting from the district court's interpretation). Given the lack of textual authority and the potential to upset the balance Congress struck in setting the statutory amounts, we hold that prejudgment interest is not allowed under § 1117(c). *Cf. Matter of Marshall*, 970 F.2d 383, 385–86 (7th Cir. 1992) ("There is no reason to think that adding prejudgment interest improves upon the accuracy of [a statutory damages provision's] rough guess [on the actual damages].").

The express allowance of prejudgment interest in § 1117(b) supports our conclusion. When Congress created a remedy that operates differently—in that subsection, treble damages—it specified the availability of prejudgment interest. Section 1117(c), like § 1117(b), changes the calculation of damages by substituting a statutory amount, yet makes no mention of prejudgment interest. This variation is meaningful, and we presume that Congress's

lack of express inclusion amounts to intentional exclusion.[3] *See Bittner v. United States*, 143 S. Ct. 713, 720 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning (*expressio unius est exclusio alterius*).").

We thus affirm the district court's denial of prejudgment interest. *See Dittman v. California*, 191 F.3d 1020, 1027 n.3 (9th Cir. 1999) ("[T]his court may affirm on any ground supported by the record.").[4]

IV

We hold that contributory trademark liability requires knowledge of specific infringers or instances of infringement and accordingly vacate the district court's order granting in part and denying in part judgment as a matter of law for Redbubble and remand for the district court to reconsider under that standard. We vacate and remand the denial of a permanent injunction and attorney fees for the district court to reconsider consistent with this opinion. We affirm the denial of prejudgment interest. Each party shall bear its own costs on appeal.

---

[3] Despite electing statutory damages under § 1117(c), Brandy Melville argues that it is entitled to prejudgment interest under § 1117(a) because subsection (a) is the general remedial section. Even if subsection (a) permits prejudgment interest, Brandy Melville elected to recover statutory damages under subsection (c) "*instead of* actual damages and profits under subsection (a)." § 1117(c) (emphasis added). Thus, § 1117(a) is inapplicable.

[4] We vacate the district court's order denying Brandy Melville attorney fees and remand for the district court to reconsider whether to award such fees following its evaluation of Redbubble's motion for judgment as a matter of law.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**